IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:04 CV-146-V-99HTS

SEA STAR LINE, LLC,
a limited liability company,

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING,
INC., a corporation,

    Defendant.
_____/

## AFFIDAVIT

CITY OF PHILADELPHIA     :
                                   : SS
COMMONWEALTH OF PENNSYLVANIA   :

I, Thomas Holt, Sr., of full age, duly deposes and says as follows:

1.   I am the President of Emerald Equipment Leasing, Inc. ("Emerald"), and have personal knowledge of the matters stated herein.

2.   This affidavit is submitted in response to the Motion for Partial Summary Judgment filed by Sea Star Line, LLC ("Sea Star") in these proceedings.

3.   On March 21, 2001, Emerald filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Delaware, along with various affiliated entities. This bankruptcy case is still pending.

4.   Emerald's primary asset is its interest in its claim against Sea Star Line, LLC ("Sea Star") in an amount in excess of $4,000,000.00 arising from unpaid rent and

charges owed for equipment used and/or never returned pursuant to a post-petition written lease agreement entered into between Emerald and Sea Star. Such claim is based on various records gathered from Sea Star and third parties which Emerald has reviewed, reflecting "moves" of the Emerald Equipment. The "moves" of the Emerald Equipment evidence use of the equipment by Sea Star.

5. In its Memorandum in Support for Partial Summary Judgment, Sea Star asserts certain "Undisputed Material Facts" at pages 3 – 11. In response to each alleged "Undisputed Material Fact" set forth in Sea Star's Memorandum, I aver as follows:

(1) I have no personal knowledge as to the corporate status of Sea Star. It is my understanding, however, that Sea Star is an ocean carrier which transports cargo in interstate commerce.

(2) Emerald is a Delaware Corporation and a named Debtor under Chapter 11 of the United States Bankruptcy Code. Emerald has conducted business with Sea Star relating to Sea Star's rental of in excess of 5,000 pieces of equipment used in the transport of cargo (i.e. containers, chassis, and gensets).

(3) Without admitting the various characterizations asserted by Sea Star in paragraph 3 of its "Undisputed Material Facts", it is not disputed that Sea Star entered into an Asset Purchase Agreement with NPR, Inc. in April 2002.

(4) Upon information and belief, Sea Star and NPR representatives agreed to certain payment and claim procedures with respect to "shipments and process". To my knowledge, any issue with respect to "shipments and process" limited to the equipment on board the ships purchased by Sea Star pursuant to the Sale Order, is not in

dispute between Sea Star and Emerald and therefore the remaining allegations in this paragraph are not material to this dispute.

(5) Without admitting the various characterizations asserted by Sea Star in paragraph 5 of its "Undisputed Material Facts", it is not disputed that the Sale Order was entered by the Bankruptcy Court on April 26, 2002. The Sale Order is a writing which speaks for itself.

(6) I do not disagree with the assertion that the closing of the Asset Purchase Agreement occurred on April 27, 2002. The assertion, however, that Sea Star stored equipment located on or returned to premises of acquired and leased by Sea Star at final port of destination pursuant to the Asset Purchase Agreement, is misleading. Immediately subsequent to the closing on the Asset Purchase Agreement, Sea Star entered into an agreement with Emerald whereby it was agreed that Sea Star would lease the equipment which Emerald had previously leased to NPR for the transportation of cargo at an agreed upon per diem rate. Accordingly, rather than Sea Star storing the Emerald Equipment, Sea Star began using substantially all of the equipment which has previously leased to NPR.

(7) An order was entered in the Bankruptcy Court on July 22, 2002 which terminated the automatic stay in regard to the Emerald Equipment in favor of MBC, Emerald's secured creditor. Said order is a writing, which speaks for itself.

(8) The documents referred to in paragraph 8 are writings which speak for themselves. Without admitting the various characterizations asserted by Sea Star in paragraph 8 of its "Undisputed Material Facts", it is not disputed that MBC had substantial control over decisions concerning the Emerald Equipment.

(9) The June 19, 2002 letter set forth in paragraph 9 is a writing which speaks for itself.

(10) The averments set forth in paragraph 10 of Sea Star's "Undisputed Material Facts" relating to shipments and process, are not at issue. As such, the facts asserted therein are not "material" to the partial summary judgment motion.

(11) Without admitting the various characterizations set forth in paragraph 11 of the "Undisputed Material Facts" in Sea Star's Memorandum, the Indemnity Agreement is a writing which speaks for itself. With respect to the remaining allegations in this paragraph, it is not disputed that the "self billing reports" were issued by Sea Star; however, the self billing reports did not accurately reflect Sea Star's use of the Emerald Equipment. As such, Emerald believes the unpaid rent and other charges owed by Sea Star for its use of the Emerald Equipment exceeds $4,000,000.00.

(12) Without admitting the various characterizations set forth in paragraph 12 of the "Undisputed Material Facts", the Equipment Rental Agreement is a writing, which speaks for itself.

(13) Without admitting the various characterizations set forth in paragraph 13 of the "Undisputed Material Facts", the Equipment Rental Agreement is a writing, which speaks for itself.

(14) It is not disputed that, after the closing with NPR, Sea Star on hired Emerald Equipment not involved in shipments in process on the dates Sea Star's use began. In addition, however, Sea Star on hired Emerald Equipment used for shipments in process on the date Sea Star's use of that equipment for a new cargo movement began. This pertained not only to Emerald Equipment "delivered to Sea Star's premises", but to

Emerald Equipment, wherever located. In addition, "on hired" Emerald Equipment was deemed returned to Emerald only when such equipment was returned to Emerald at the following locations:

    i. At Greenwich in Philadelphia PA;

    ii. At Greenwich Terminal in Jacksonville, FL;

    iii. At J Lot or Showroom in the Sea Star Terminal in San Juan, PR; and

    iv. Other terminals only wherever specifically agreed to by Emerald pursuant to the terms agreed to by the parties in connection therewith.

(15) The Greenwich Terminal did exist before August 1, 2002; however, upon information and belief, the Greenwich Terminal was locked after NPR ceased operations prior to August 1, 2002. The Greenwich Terminal was reopened as of August 1, 2002.

(16) It is not disputed that certain Emerald Equipment was stored on Sea Star premises by Sea Star and that Emerald utilized Sea Star facilities for the storage of Emerald Equipment while Emerald was trying to sell said equipment to third parties. It is denied that any Emerald Equipment is still being stored by Sea Star. All of the Emerald Equipment should have been returned to Emerald at the time of the Equipment Rental Agreement was terminated. Any Emerald Equipment which is remaining in Sea

Star's facilities are, at Emerald's election, deemed "lost" equipment, for which Sea Star owes to Emerald stipulated loss value.

THOMAS HOLT, SR.

Sworn to and subscribed before me this 31st day of March, 2005

NOTARY PUBLIC

**LINDA M. HANDY**
**Notary Public**
**Commission Expires**
**December 17, 2007**