**EXHIBIT "C"**

```
                IN THE UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        JACKSONVILLE DIVISION

              CASE NO.: 3:04 CV-146-V-99HTS


SEA STAR LINE, LLC.,
a limited liability company,

         Plaintiff,

vs.


EMERALD EQUIPMENT LEASING,
INC., a corporation,

         Defendant.
_____


         Deposition of LISA FLORENCE, taken on behalf
of the Plaintiff, on Thursday, January 13th, 2005,
beginning at 9:44 a.m., pursuant to Renotice of Taking
Deposition in the above-entitled action, at the offices
of Powers Reporting, 220 East Forsyth Street,
Jacksonville, Florida, as recorded by Jennifer
Alligood, a Court Reporter and Notary Public in and for
the State of Florida at Large.
```

**CERTIFIED COPY**

1  mark it as Florence 2, hold on. I ask this to be
2  marked as Florence 2 and ask if you can identify it for
3  me.
4      (Florence Exhibit Number 2 was marked for
5  identification.)
6      Q   Can you identify Florence 2?
7      A   Okay. This a report that I created. It's an
8  Excel spreadsheet and it's a list of Emerald Equipment
9  that were on the first voyages. And what we did was go
10 through the manifests, pull out just the Emerald
11 Equipment and then look at our -- look at IQ Ship to
12 see when we used this equipment a second time and then
13 I calculated what per diem we would owe for the second
14 trip for this equipment, from the time we used it until
15 it was off-hired.
16     Q   Okay. Looking at Florence 2 was it your job
17 to find each and every piece of Emerald Equipment in
18 preparing -- let me rephrase that question.
19     In preparing Florence 2 did you first attempt
20 to determine each and every piece of Emerald Equipment
21 that was in transit at the time of the NPR acquisition?
22     A   Yes.
23     Q   And is it your testimony that Florence 2
24 would identify each and every piece of Emerald
25 Equipment that was in transit at the time of the NPR

```
 1   acquisition?
 2             MR. ARMSTRONG:  Object to the form.
 3        A    Yes.
 4        Q    Okay.  You talked about calculations that you
 5   looked at and you said you looked at this then and then
 6   you looked at the second time that Sea Star used the
 7   equipment?
 8        A    For a booking.
 9        Q    So tell me what you mean when you did that,
10   you knew it was on the ship?
11        A    Right.
12        Q    And then the second time you used it for a
13   booking what did you use that date to do?  How did you
14   use that date in preparing this report?
15        A    Okay.  Well, for example, you'll see the
16   column that says second trip from and there's a date,
17   that would be the date that the equipment went out,
18   that it was sent out on the booking.
19        Q    Right.
20        A    After it came back from that first trip.
21        Q    Does this then show -- this report then show
22   monies that would be owed to someone other than NPR
23   because it shows the use after it came off the first
24   ship?
25             MR. ARMSTRONG:  Object to the form.
```

1   for the last time. So it probably sat on the yard from
2   June 24th until July 17th when it went back to Emerald.
3      Q    Did IQ Ship provide the date of the return to
4   Emerald?
5      MR. ARMSTRONG: Object to the form.
6      Q    Let me rephrase that question. Were you able
7   to get from IQ Ship the date that piece of equipment
8   was returned to Emerald?
9      MR. ARMSTRONG: Object to the form.
10     A    Yeah, usually in IQ Ship the date they would
11   put in for the off-hire is the date it actually goes to
12   the Emerald -- returned to them but not the last date
13   we used it.
14      Q    Can you explain that answer?
15      MR. ARMSTRONG: Object to the form.
16     A    Well, for example, the equipment in
17   Jacksonville would be sitting on the yard and then it
18   would go over to GTS is where it would be returned for
19   Emerald to pick it up, so when it went out the gate to
20   GTS is usually when the equipment group would input it
21   as an off-hire.
22      Q    Let's talk a little bit about input into the
23   IQ Ship system, you used the term off-hire?
24     A    Uh-huh.
25      Q    What information -- strike that.

1  back or it could be on our side if it wasn't -- if it's
2  not showing up on the report, I need to look and find
3  out why and make sure it's correct in the system.
4      Q    And when you've done that has the primary
5  reason it's not been on your report been the reference
6  number issue that you've referred to before?
7      A    Yes.
8      Q    I'm sorry, the release reference.
9      A    Correct.
10          MR. SCHILDHORN:  Let's go ahead and take a
11     five minute break here.
12          (Brief recess.)
13 BY MR. SCHILDHORN:
14     Q    At the time of the NPR acquisition, were the
15 containers and equipment all in one spot?
16     A    No.
17     Q    Would you agree with me that they were all
18 over the place, they were in ports, they were on ships,
19 they were in inland depots?
20     A    Correct.
21     Q    If a container in the inland depot was
22 repositioned from one inland depot from another inland
23 depot at the request of Sea Star, would Sea Star have
24 any record of that?
25          MR. ARMSTRONG:  Object to the form.

```
 1       A    I don't want to guess.
 2       Q    Okay.  Well, on the date -- whatever date it
 3  was -- on the date that you assisted in preparing this,
 4  what did you do that caused Sea Star to conclude that
 5  the equipment was returned on 7/15/02?
 6       A    At the time I created this document, the
 7  second page, that would have been the last move.
 8  July 15th, '02, where it came in empty and sat waiting
 9  to go back to Emerald.
10       Q    How do you know it came in empty and sat
11  waiting to go back to Emerald?
12       A    Because of the TIR on that date.
13       Q    Are you aware of the existence of the 7/15 --
14       A    Unless it's this one.  It could be this 53730
15  but I can't see the date.
16       Q    When you said this may have been old has it
17  ever been corrected?
18       A    Yes, it's been updated.
19       Q    Has the updated -- has the updated Rooks'
20  response been provided to Emerald?
21       A    I don't know the latest one that you have.
22       Q    What's the latest one that you've prepared?
23            MR. ARMSTRONG:  If you know?
24       A    The last time we updated it was about three
25  months ago, based on the last claim form that they
```

```
 1  sent.  We went through and reevaluated the whole thing.
 2       Q    Right.  Did you reach a conclusion as a
 3  result of that evaluation?
 4            MR. ARMSTRONG:  Object to the form.
 5       A    Yeah, we changed a lot of data.
 6       Q    Did the change in data result in an amount
 7  either due to or due from Emerald?
 8            MR. ARMSTRONG:  Object to the form.  If you
 9       know.
10       A    I don't know.
11       Q    Well, doesn't all these reports end up with
12  the conclusion as to amounts owed and amounts paid?
13       A    Yes, it does.
14       Q    And do you recall whether the last report you
15  did came to the conclusion as to the amounts owed as to
16  the amounts paid?
17            MR. ARMSTRONG:  Object to the form.
18       A    I don't remember the amount.
19       Q    But you do recall it did reflect an amount
20  either do or owed from Emerald?
21       A    Yes.
22       Q    Do you recall producing that report in
23  response to discovery, the last report that you did?
24            MR. ARMSTRONG:  It has not been produced in
25       any response to any requests for discovery because
```

```
 1         it is part work product in the ongoing litigation,
 2         and when the document is complete at the
 3         appropriate time I'm sure we'll exchange
 4         production.
 5              MR. SCHILDHORN:  Have you indicated a work
 6         product privilege as a -- in response to document
 7         production?
 8              MR. ARMSTRONG:  This is a report that we're
 9         preparing for the litigation, for your
10         information, it is not complete.  It's not a
11         "report" that was prepared in business.  It's
12         prepared in this lawsuit at my direction and for
13         purposes of evaluation and it's in process.
14              MR. SCHILDHORN:  My only question,
15         Mr. Armstrong, was have you notified us in any
16         way, shape, or form that there was a report being
17         prepared or had been prepared that you are not
18         producing as the result of the assertion
19         privilege?
20              MR. ARMSTRONG:  There is no report that has
21         been prepared.  There is a report in the process
22         and preparation and when it is complete then we
23         will deal with it.
24    BY MR. SCHILDHORN:
25         Q    Lisa, have you worked on updating the Rooks'
```

```
 1   report in the last 90 days?
 2              MR. ARMSTRONG:  Don't testify about anything
 3       that you've done for me.  If you can answer that
 4       question, go ahead and answer it.
 5       A    Yes.
 6       Q    When was the last time you updated the
 7   report?
 8       A    I'd say within the last 60 days.
 9       Q    Have you updated during the month of January?
10       A    No.
11       Q    Did you update it within the month of
12   December?
13       A    Yes.
14       Q    Do you currently have documents that you are
15   reviewing for the purpose of updating the report?
16       A    Yes.
17       Q    Do you intend to update the report again
18   within next -- strike that.
19            Are you in the process of updating the report
20   again?
21       A    Yes.
22       Q    Do you anticipate a date by which you will
23   have completed updating the report?
24       A    I don't have an answer for that one.
25       Q    Do you have deadline that has been imposed on
```

```
 1   you or that your boss has told you they want the report
 2   completed by?
 3       A   No.
 4       Q   In reviewing the Rooks' report since it was
 5   originally prepared, have had you found other instances
 6   where mistakes were made in the Rooks' response?
 7       A   Well, I wouldn't call them mistakes, but
 8   we've changed if the equipment was reused or something
 9   like that. We have changed some of the dates and
10   numbers.
11       Q   Is anyone else working with you in updating
12   the Rooks' report?
13           MR. ARMSTRONG: Object to the form.
14       A   Yes.
15       Q   Who is assisting you?
16       A   Well, we hired a contractor to come in to
17   look for the documents, but as far as updating the form
18   I'm doing that.
19       Q   Who is the contractor that was hired?
20           MR. ARMSTRONG: Object. Go ahead and answer,
21       if you know.
22       A   His name is Bill Lauderdale.
23       Q   Does he work for a company?
24       A   No, he's a contractor.
25       Q   What is his job, to the extent that you know
```

```
1   it, what's he supposed to do?
2       A   He's helping us go through boxes of TIRs to
3   look for documentation supporting this -- the
4   equipment.
5       Q   Are these -- have these boxes of TIRs been
6   produced?
7       A   Yes, the ones pertaining to the claim have
8   been produced.
9       Q   How long has he been involved in his task?
10      A   I don't remember exactly when he started.
11      Q   Has it been --
12      A   In the past year.
13      Q   Over the past year.  Does he produce reports
14  to you?
15      A   No.
16      Q   Does he produce any reports at all?
17      A   No.
18      Q   When he reviews something does he input the
19  information into the IQ Ship?
20      A   No.
21      Q   What does he do?
22      A   I give him the claim form that was supplied
23  from Emerald --
24      Q   Right.
25      A   -- I give him lists of the ones that we're
```

```
 1  looking for, he goes through boxes of TIRs that include
 2  Emerald Equipment and other equipment too, and he's
 3  looking for these TIRs.
 4       Q    And when -- if he finds them what does he do
 5  with them?
 6       A    He gives them to me.
 7            MR. SCHILDHORN:  Mr. Armstrong, is
 8       Mr. Lauderdale identified as a witness in this
 9       case?
10            MR. ARMSTRONG:  No, he has not been
11       identified as a witness.
12  BY MR. SCHILDHORN:
13       Q    Has he been instructed to pull any TIR with
14  respect to Emerald Equipment or only TIRs that appear
15  on the invoices?
16            MR. ARMSTRONG:  Object to the form.
17       A    Only the TIRs pertaining the date, the first
18  time we used the equipment for a booking and the last
19  time it was used.
20       Q    And how does he know that?
21            MR. ARMSTRONG:  Object to the form.
22       A    Because I look it up first and give him the
23  TIR number that I'm looking for.
24       Q    Would it be accurate then to say that he's
25  just trying to determine facts with respect to when
```

```
 1  equipment was on-hired and off-hired -- when Emerald
 2  Equipment was on-hired and off-hired?
 3          MR. ARMSTRONG:  Object to the form.
 4      A   He's trying to find our back-up documentation
 5  to support the on-hired and off-hired dates.
 6      Q   And that would determine what Sea Star does
 7  or does not owe under the lease, correct?
 8      A   Correct.
 9      Q   Is he being asked to give an opinion with
10  respect to the work he's doing?
11          MR. ARMSTRONG:  Object to the form.
12      A   No.
13      Q   And when you get these TIRs that he may find
14  you simply input it into IQ Ship, correct?
15      A   They're already in IQ Ship.
16      Q   Well, with respect to Florence 6, was the
17  subsequent usage dates already in IQ Ship?
18      A   At what point?
19      Q   At the point in time that the second page was
20  created?
21      A   No, it wouldn't have been in there at that
22  time.
23          MR. SCHILDHORN:  Okay.  I'm going to take a
24      two-minute break.
25          (Brief recess.)
```

BY MR. SCHILDHORN:

    Q    Is it accurate to say that the only TIRs that he's reviewing are ones that have been produced in response to discovery?

    MR. ARMSTRONG: Object to the form.

    A    Yes.

    Q    So --

    MR. ARMSTRONG: Gary, Gary, I'll tell you that they have been produced or are being produced as to complete the review of the August -- what was the August amended claims that were produced in August or September. We have not -- I have not completely gone through those yet, so there is a possibility that there could be a few more TIRs in completing the review of the claim. But the TIRs, as John Evans knows, have been produced a multitude have been produced, and I'm hoping that I'm at the bitter end on those and the answer is there maybe more produced.

    MR. SCHILDHORN: So Bill Lauderdale is looking for TIRs that have not yet been produced?

    MR. ARMSTRONG: There's a possibility that there would be more located.

    MR. SCHILDHORN: But is he under instruction to find only additional TIRs that support the

```
 1         defense as opposed --
 2              MR. ARMSTRONG:  My instructions to him are my
 3         instructions to him.  I'm just --
 4              MR. SCHILDHORN:  I don't mean to get into
 5         litigation strategy.
 6              MR. ARMSTRONG:  You asked whether all TIRs
 7         had been produced, I think that --
 8              MR. SCHILDHORN:  The answer is possibly not.
 9              MR. ARMSTRONG:  -- I've answered that.
10              MR. SCHILDHORN:  You answered possibly not.
11              MR. ARMSTRONG:  There maybe possibly more.
12              MR. SCHILDHORN:  Okay.  So here's my next
13         question, how do we know that the universe of TIRs
14         that are being reviewed don't include TIRs that
15         support the Emerald claim and have not been
16         inputted in IQ Ship?
17              MR. ARMSTRONG:  I don't quite understand
18         you're question, but I don't think it's anything
19         that this witness can answer, but you can ask her
20         whatever you want to ask her.
21    BY MR. SCHILDHORN:
22         Q    In providing TIRs to you has Mr. Lauderdale
23    come up with any TIRs that show additional usage of
24    Emerald Equipment but not reflected on Emerald's
25    invoice?
```

```
 1            MR. ARMSTRONG:  Object to the form.
 2       A    No.
 3       Q    Do you know whether he's been asked to pull
 4  TIRs that may reflect additional usage of Emerald
 5  Equipment even if it does not appear on the Emerald
 6  invoice?
 7            MR. ARMSTRONG:  Object to the form.
 8       A    No.
 9       Q    No, he hasn't been asked to do that or no,
10  you don't know whether he's been asked to do that?
11            MR. ARMSTRONG:  Object to the form.
12       A    He's only pulling the numbers that I give him
13  for the claim forms.
14       Q    And so if he -- okay.  So we don't have a
15  completely confused record let's mark as Florence 7
16  this document.
17            (Florence Exhibit Number 7 was marked for
18  identification.)
19            MR. ARMSTRONG:  What is that?  May I see
20       that?
21       Q    Lisa, I'm going to show you what's been
22  marked as Florence 7, can you identify this document?
23       A    Yes.
24       Q    What is this document?
25       A    This is an Excel spreadsheet I had combined
```

```
 1      Q    If it was not in use -- not in use, does that
 2  equate to the same date as the off-hire date?
 3      A    Not always.
 4      Q    Okay.  This is what I'm trying to understand,
 5  when would the off-hire date and the not-in-use date
 6  not be the same?
 7           MR. ARMSTRONG:  Objection to the form.
 8      Q    What's the difference?  When can there be a
 9  difference between the off-hire date and the not in use
10  date?
11           MR. ARMSTRONG:  Object to the form.
12      A    Because for example, in answer San Juan it
13  could be out of service when it goes to the J lot, but
14  it may not be off-hired for a week or a month until
15  Emerald picks it up.  It might be a month later.
16      Q    Do rental charges only terminate on your
17  self-billing report when Emerald picks up a piece of
18  equipment?
19           MR. ARMSTRONG:  Object to the form.
20      A    Yes.
21      Q    And to the extent that the self-billing
22  report shows that charges to Emerald -- strike that.
23           To the extent the self-billing report
24  reflects that rental charges terminate at a date
25  earlier than the return of the equipment to Emerald the
```