IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,

       Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

       Defendant.

CASE NO. 05-CV-00245 (JJF)

---

## SEA STAR LINES, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS EMERALD EQUIPMENT LEASING, INC.'S COUNTERCLAIM

SMITH, KATZENSTEIN & FURLOW, LLP
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (courier 19801)
Phone: (302) 652-8400
Fax: (302) 652-8405
E-mail: KMiller@skfdelaware.com

Of Counsel:
Charles C. Robinson
Garvey Schubert Barer
1191 Second Avenue, #1800
Seattle, WA 98101-2939

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134

Attorneys for Sea Star Lines, LLC

May 11, 2005

{10002615.DOC}

# TABLE OF CONTENTS

Page #

TABLE OF CITATIONS ............................................................................... (iii)

STATEMENT OF CASE .................................................................................1

SUMMARY OF ARGUMENT .........................................................................4

ARGUMENT....................................................................................................6

    A. Standard of Review...............................................................................6

    B. Subject Matter Jurisdiction.................................................................6

    C. Contract Claims...................................................................................8

        1. Breach of Contract (Count I) .............................................................9

        2. *Quantum Meruit* (Count II) ) ............................................................10

        3. Turnover (Count III) ) .......................................................................12

        4. Accounting (Count IV [first]) ) ..........................................................12

    D. "Tort" Claims (Count IV [second]-Count VIII) .....................................13

        1. Independent Legal Duty/Economic Loss Doctrine .............................13

        2. Pleading Defects ...............................................................................16

CONCLUSION..................................................................................................18

# TABLE OF CITATIONS

**CASES** Page(s)

ABT Assocs., Inc. v. JHPIEGO Corp.,
  104 F. Supp. 2d 523 (D. Md. 2000),
  aff'd, 9 Fed. Appx. 172 (4th Cir. 2001)...................................................11

Artesian Water Co. v. Lynch,
  283 A.2d 690 (Del. Ch. 1971)...................................................................12

Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,
  735 A.2d 1081 (1999)..............................................................................11

B&P Enterprises v. Overland Equip. Co.,
  758 A.2d 1026 (Md. Ct. Spec. App. 2000).........................................11, 17

Calomiris v. Woods,
  727 A.2d 358 (Md. 1999)..........................................................................10

Ciena Corp. v. Jarrard,
  203 F.3d 312 (4th Cir. 2000)......................................................................8

Competrol Acquisition Partnership, L.P. v. Flag Wharf, Inc.,
  203 B.R. 914 (Bankr. D. Del. 1996)............................................................7

Corning Inc. v. SRU Biosystems, LLC,
  292 F. Supp. 2d 583 (D. Del. 2003)..........................................................13

County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.,
  747 A.2d 600 (Md. 2000)..........................................................................11

CTI-Container Leasing Corp. v. Oceanic Operations Corp.,
  682 F.2d 377 (2d Cir. 1982)........................................................................6

Dairy Queen, Inc. v. Wood,
  369 U.S. 469 (1962)..................................................................................12

David B. Lilly Co., Inc. v. Fisher,
  18 F.3d 1112 (3d Cir. 1994).......................................................................13

Day & Zimmermann, Inc. v. Challoner,
  423 U.S. 3 (1975) (*per curiam*)................................................................13

{1000269e.DOC}

Duquesne Light Co. v. Westinghouse Elec. Corp.,
    66 F.3d 604 (3d Cir. 1995). …………………..………………………....15

E.I. Dupont De Nemours & Co. v. Pressman,
    679 A.2d 436 (Del. 1996) …………………………………….…………..17

Fike v. Ruger,
    754 A.2d 254 (Del. Ch. 1999),
    aff'd. 752 A.2d 112 (Del. 2000) ……………………………………………12

First Nat'l Bank v. Burton, Parsons & Co.,
    470 A.2d 822 (Md. Ct. Spec. App. 1984) ………………………………..11

Halper v. Halper,
    164 F.3d 830 (3d Cir. 1999) ……………………………………………..7

Harrison v. Westinghouse Savannah River Co.,
    176 F.3d 776 (4th Cir. 1999)…………………………………………….16

Harte-Hanks Direct Marketing/Baltimore, Inc.
v. Varilease Technology Finance Group, Inc.,
    299 F. Supp. 2d 505 (D. Md. 2004)….………………………………….8

Heckrotte v. Riddle,
    168 A.2d 879 (Md. 1961)…………………….…………………………15

Heston v. Miller,
    No. CIV.A. 5820, 1979 WL 174446
    (Del. Ch. Oct 11, 1979)………………….………………………………13

Huron Tool & Eng'g Co. v. Precision Consulting Services, Inc.,
    532 N.W. 2d 541
    (Mich. Ct. App. 1995)….……………………………….………………14

Indemnity Ins. Co. of N.A. v. American Aviation, Inc.,
    891 So.2d 532 (Fla. 2004)…………………….………….………………15

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997)………………….…………………………6

In re Guild & Gallery Trust, Inc.,
    72 F.3d 1171 (3d Cir. 1996)……………………………………………..7

iv

In *re* G-I Holdings, Inc. (International Specialty Prods., Inc.
v. Hartford Acc. & Indem. Co.),
     278 B.R. 376 (Bankr. D.N.J. 2002)...................................................7

In *re* Marcus Hook Development Park, Inc.,
     943 F.2d 261 (3d Cir. 1991)............................................................7

Interpool Ltd. v. Char Yigh Marine (Panama) S.A.
     890 F.2d 1453 (9th Cir. 1989)
     opinion amended on other grounds,
     918 F.2d 1476 (9th Cir. 1990)........................................................6

Iotex Communications, Inc. v. Defries.
     No. 15817. 1998 WL 914265
     (Del. Ch. Dec. 21. 1998)...............................................................14

Kikas v. County Comm'rs of Baltimore County.,
     89 A.2d 625 (Md. 1952).................................................................10

Klaxon Co. v. Stentor Elec. Mfg. Co..
     313 U.S. 487 (1941).......................................................................13

Konover Property Trust, Inc., v. WHE Assocs., Inc.,
     790 A.2d 720 (Md. Ct. Spec. App. 2002).........................................8

Kronovet v. Lipchin.
     415 A.2d 1096 (Md. 1980)..............................................................8

Lum v. Bank of America,
     361 F.3d 217 (3d Cir.),
     cert. denied, 125 S. Ct. 271 (2004)..............................................6. 16

Mass Transit Admin. v. Granite Constr. Co.,
     471 A.2d 1121
     (Md. Ct. Spec. App. 1984).............................................................11

Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co..
     No. CIV.A. 04C05091 CLS. 2005 WL 445710
     (Del. Super. Ct. Feb. 23. 2005).....................................................15

Norfolk Southern Ry. Co. v. James N. Kirby Pty Ltd.,
     125 S. Ct. 385 (2004).....................................................................8

{10002696.DOC}

Pinkert v. John J. Olivieri, P.A.,
No. CIV. A. 99-380-SLR, 2001 WL 641737,
(D. Del. May 24, 2001)...............................................................11, 14, 15, 17

Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co.,
722 F. Supp. 184 (D.N.J. 1989).................................................13, 14, 15

Resource Ventures, Inc. v. Resources Management Int'l, Inc.,
42 F. Supp. 2d 423 (D. Del. 1999)....................................................11

Samuel-Bassett v. Kia Motors Am., Inc.
357 F.3d 392 (3d Cir. 2004)............................................................16

Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,
742 F.2d 786 (3d Cir. 1984)............................................................16

Sterling v. Beneficial Nat'l Bank, N.A.,
No. 91C-12-005 1994 WL 315365 (Del. Super. Ct. Apr. 13, 1994),
aff'd. 650 A.2d 1307 (Del. 1994)..................................................10, 15

Travelers Indemnity Co. v. Lake,
594 A.2d 38 (Del. 1991)...............................................................13

United States v. Tug Marine Venture,
101 F. Supp. 2d 378 (D. Md. 2000)....................................................8

W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.,
746 F.2d 215 (3d Cir. 1984)............................................................16

Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,
No. CIV.A. 19875, 2005 WL 790821
(Del. Ch. Apr. 1, 2005)................................................................11

Werwinski v. Ford Motor Co.,
286 F.3d 661 (3d Cir. 2002)........................................................13, 15

STATUTES                                                    Page(s)

11 U.S.C. § 342.......................................................................4, 18

11 U.S.C. § 542.........................................................................7

28 U.S.C. § 157 .......................................................................2, 7

28 U.S.C. §§ 1333 ....................................................................1, 2

vi

28 U.S.C. § 1334.................................................................7

28 U.S.C. §§ 1337 ...........................................................1, 2

28 U.S.C. §§ 1367 ...........................................................1, 2

28 U.S.C. § 1404(a) ...........................................................2

Fed. R. Civ. P. 9(b) ...........................................................5

Fed. R. Civ. P. 12(b)(6) ...............................................4, 5, 18

{10002696.DOC}

## STATEMENT OF CASE

SEA STAR LINE. LLC ("SEA STAR") filed its Complaint against EMERALD EQUIPMENT LEASING, INC. ("EMERALD") in the United States District Court for the Middle District of Florida on March 1, 2004. Basing federal jurisdiction on 28 U.S.C. §§ 1333, 1337, and 1367, SEA STAR seeks a declaratory judgment as to the parties' rights and liabilities under an Equipment Rental Agreement dated September 28, 2002 (the "Equipment Rental Agreement"), and states claims based on breach of other maritime contracts, open account, and goods delivered and services provided. After SEA STAR effected service, EMERALD moved to dismiss the Complaint, to transfer venue, or to abstain.

On March 17, 2004, EMERALD, a debtor-in-possession in a pending Chapter 11 case, filed an adversary proceeding against SEA STAR, in the United States Bankruptcy Court for the District of Delaware. Adv. Pro. No. 04-53071 (the "Adversary Proceeding"). Premised on the Equipment Rental Agreement EMERALD asserted claims for "Post-Petition Account Receivable/Breach of Lease". "Post-Petition Quantum Meruit". "Turnover Action/Conversion", and "Accounting". SEA STAR moved to dismiss, stay or abate the Adversary Proceeding. After a hearing on May 27, 2004, the Bankruptcy Court issued an order granting SEA STAR's motion and dismissing the Adversary Proceeding, without prejudice (the "Adversary Proceeding Order"). Subsequently, SEA STAR filed a copy of the Adversary Proceeding Order in the case *sub judice*. D.I. 11, D.I. 14.[1]

---

[1] References to "D.I." are to docket entries in the case file transferred to this Court. A copy of the complete docket sheet appears in the Appendix filed concurrently with this brief. Appendix pages will be cited as "A__."

The Case Management and Scheduling Order in the Florida action scheduled trial on a calendar beginning in early June 2005. D.I. 15.    Several days before the final pretrial conference, the District Court in Florida granted EMERALD's Motion to Dismiss or Transfer Case "in Part". D.I. 45. Crafting an exception to the first-filed rule, the April 20, 2005 Order invoked 28 U.S.C. § 1404(a) to transfer the case to this Court. The Florida District Court also decided that "[a]ll pending motions are MOOT." *Id.*

EMERALD's    Answer,    Affirmative    Defenses    and    Counterclaim    (the "Counterclaim")[2], filed on April 21, 2005 (D.I. 46) admits that federal jurisdiction exists pursuant to 28 U.S.C. § 1333 but denies that federal jurisdiction exists pursuant to 28 U.S.C. §§ 1337 and 1367. A21, ¶ 1; A28 ¶ 1. Moreover, EMERALD avers that the Court has jurisdiction "pursuant to 28 U.S.C. Sections 1334 and 157 and Sections 542 of Title 11 of the United States Code ...." A28, ¶ 1. Despite the Bankruptcy Court's earlier determination, EMERALD "further assert[s] that this adversary proceeding is a 'core' proceeding to be heard and determined by a bankruptcy court pursuant to 28 U.S.C. Sections 157(b)(2)(A)(C)(E) and (O)." *Id.*

In its Counterclaim, EMERALD assert claims against SEA STAR for "Post-Petition Account Receivable/Breach of Lease", "Post-Petition Quantum Merit", "Turnover Action", "Accounting", "Fraud", "Constructive Fraud", "Fraudulent Concealment", "Negligent Misrepresentation; Breach of Fiduciary Duty". Each of the Counterclaim's eight counts expressly incorporates the paragraphs in all preceding counts, including Count I, the breach-of-contract claim. Counterclaim, ¶¶ 22, 26, 29, 33, 39, 43, 49 (A32-36). Essentially, EMERALD's compensatory damage claims consist of "[r]ent due to Emerald" and "[l]oss incurred as a result of the loss, damage, theft or destruction of certain equipment." A31, ¶¶ 18(a), (b). Attached to

---

2  A copy of the Counterclaim appears in the Appendix at A__ - A__.
{10002618.DOC}                                         2

the Counterclaim are copies of the Equipment Rental Agreement and a document that EMERALD calls the "E-Mail Agreement". A30, ¶¶ 9. 11; A39-A50.

On May 11, 2005. SEA STAR filed, contemporaneously with this brief, its Motion to Dismiss Emerald Equipment Leasing. Inc.'s Counterclaim (the "Motion").

## SUMMARY OF ARGUMENT

Simply stated, the Counterclaim concerns a maritime contract, subject to federal admiralty jurisdiction. Contrary to EMERALD's contentions, neither the case nor the contract implicates bankruptcy "core" jurisdiction. Indeed, the bankruptcy court has already decided that the issues and claims framed by the Complaint and the Counterclaim are non-core: They do not invoke substantive rights created by federal bankruptcy law and certainly exist outside the bankruptcy. The Bankruptcy Court's rulings have established the law of the case.

To consider SEA STAR's Motion under Fed. R. Civ. P. 12(b)(6), the Court concentrates on the sufficiency of EMERALD's Counterclaim, not the ultimate merits of the case. Evaluated in light of governing precedent, the pleading cannot withstand judicial scrutiny. SEA STAR is entitled to an Order dismissing EMERALD's Counterclaim. Examination of the eight counts reveals:

1.     Count I fails to state a claim for relief based on alleged breach of an "E-Mail Agreement". Confirmed by an explicit integration clause, the Equipment Rental Agreement "contains the entire agreement between the parties". A48. ¶ 15(a).

2.     Count II fails to state a claim for relief based on *quantum meruit*. Because the subject matter of EMERALD's claims is covered by the Equipment Rental Agreement, which defines the parties' rights and remedies and includes an integration clause, the quasi-contract theory of *quantum meruit* is unavailable.

3.     Count III fails to state a claim for "turnover" relief based on 11 U.S.C. § 342.

4.    Count IV [first] fails to state a claim for an accounting.  To maintain a suit for an equitable accounting, the necessary prerequisite is the absence of an adequate legal remedy.  Certainly terms of the Equipment Rental Agreement, negotiated and executed by EMERALD, provide adequate remedies at law.

5.    Count IV [second] through Count VIII, each of which "incorporates" the breach-of-contract paragraphs, fail to state "tort" claims for relief.  The Counterclaim discloses:

(a)    EMERALD's "tort" claims are not separate from and independent of the alleged breaches of contract.  They arise solely from SEA STAR's alleged performance or non-performance of contractual duties and are, therefore, insufficient.

(b)    The economic loss doctrine proscribes EMERALD's "tort" claims.  Its alleged entitlement flows only from a contract—*i.e.*, the Equipment Rental Agreement.

(c)    Assuming *arguendo* that EMERALD could plead tort claims cognizable in this Court, its Counterclaim fails to comply with Fed. R. Civ. P. 9(b).  Therefore, EMERALD has failed to state a claim under Rule 12(b)(6); and dismissal of Counts IV [second] through VIII becomes mandatory.

## ARGUMENT

### A.    Standard of Review.

SEA STAR's Motion focuses on the sufficiency of EMERALD's Counterclaim,

not the merits of the case. Recently, the Third Circuit reiterated:

> In considering a motion to dismiss, a court must accept as true all
> of the factual allegations in the complaint and draw all reasonable
> inferences from those facts in favor of the plaintiffs. A court may
> dismiss the complaint only if it is clear that no relief could be
> granted under any set of facts that could be proved consistent with
> the allegations.

Lum v. Bank of America. 361 F.3d 217, 223 (3d Cir.), cert. denied, 125 S. Ct. 271 (2004)

(citations omitted). The Court noted:

> In deciding motions to dismiss pursuant to Rule 12(b)(6). courts
> generally consider only the allegations in the complaint, exhibits
> attached to the complaint, matters of public record. and documents
> that form the basis of a claim. A document forms the basis of a
> claim if the document is "integral to or explicitly relied upon in the
> complaint."

*Id.* at 221 n.3 (citations omitted), *quoting* In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1426 (3d Cir. 1997).

### B.    Subject Matter Jurisdiction.

The Equipment Rental Agreement is a maritime contract over which this Court

has admiralty jurisdiction.    Interpool Ltd. v. Char Yigh Marine (Panama) S.A., 890 F.2d 1453,

1457 (9th Cir. 1989) opinion amended on other grounds. 918 F.2d 1476 (9th Cir. 1990); CTI-

Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 380-81 (2d Cir. 1982).

Moreover, the Court has "original but not exclusive jurisdiction of all civil proceedings...related

to cases under title 11." 28 U.S.C. § 1334(b). Contrary to EMERALD's contention, 28 U.S.C. §
157 and 11 U.S.C. § 542 do not confer federal jurisdiction.

Furthermore, this case is not "a 'core' proceeding to be heard and determined by a
bankruptcy court pursuant to 28 U.S.C. sections 157(b)2)(A)(C)(E) and (O)." A28, ¶ 1. As
articulated by the Third Circuit, "'a proceeding is core [1] if it invokes a substantive right
provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context
of a bankruptcy case.'" Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999), quoting In re Guild
& Gallery Trust, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996), and In re Marcus Hook Development
Park, Inc., 943 F.2d 261, 267 (3d Cir. 1991). Accord, In re G-I Holdings, Inc. (International
Specialty Prods., Inc. v. Hartford Acc. & Indem. Co.), 278 B.R. 376, 379-81 (Bankr. D.N.J.
2002).

During the May 27, 2004 hearing, the Bankruptcy Court cited Halper v. Halper,
supra, and articulated the law of the case, concluding:

> I think that it's clear that this contract dispute, essentially a
> contract dispute between the parties is not something that arises
> under Title 11 or could only arise in the context of a bankruptcy
> case. So it's not a core proceeding, I would have related to
> jurisdiction over the adversary because it does involve property
> rights of the debtor but contrasted with that is also a specific
> provision. 28 U.S.C. 959 that provides that a party that does
> business with a debtor-in-possession or trustee has the right to file
> suit regarding that dispute in any jurisdiction.

A11. Consistent with the Bankruptcy Court's determination, the issues and claims framed by the
Complaint and the Counterclaim are non-core: They do not invoke substantive rights created by
federal bankruptcy law and certainly exist outside the bankruptcy. Halper, supra, 164 F.3d at
836 n.7; Competrol Acquisition Partnership, L.P. v. Flag Wharf, Inc., 203 B.R. 914, 917 (Bankr.

D. Del. 1996)(determination of property rights in assets of bankruptcy estate governed by state law).

### C.    Contract Claims.

Because the Equipment Rental Agreement is within the Court's admiralty jurisdiction, federal choice-of-law rules control. United States v. Tug Marine Venture, 101 F. Supp. 2d 378, 382 (D. Md. 2000). Federal law governs interpretation of a maritime contract if the dispute is not inherently local. Norfolk Southern Ry. Co. v. James N. Kirby Pty Ltd., 125 S. Ct. 385, 392 (2004).[2] In maritime but local situations, the court initially looks for an effective choice-of-law provision in the contract. Tug Marine Venture, supra, 101 F. Supp. 2d at 382.

As to choice of law, the Equipment Rental Agreement provides:

> Applicable Law. This Agreement shall be interpreted and the rights, liabilities and duties of the parties determined in accordance with the laws of the State of Maryland.

A48, ¶ 14. Generally, Maryland adheres to the rule of *lex loci contractus--i.e.*, the law of the jurisdiction where the contract was made controls its validity and construction. Konover Property Trust, Inc., v. WHE Assocs., Inc., 790 A.2d 720, 728 (Md. Ct. Spec. App. 2002). Nevertheless, when the parties have chosen a specific state's law to govern contractual rights and duties, Maryland courts customarily apply that law. Ciena Corp. v. Jarrard, 203 F.3d 312, 323-24 (4th Cir. 2000); *see* Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Technology Finance Group, Inc., 299 F. Supp. 2d 505, 517 (D. Md. 2004); Kronovet v. Lipchin, 415 A.2d 1096, 1104-05 (Md. 1980).

---

[2] If a maritime contract "may so implicate local interests as to beckon interpretation by state law" yet "state interests cannot be accommodated without defeating a federal interest," federal substantive law governs. Norfolk Southern Ry. Co., *supra*, 125 S. Ct. at 396 (citations omitted).

1.    **Breach of Contract (Count I).**

Count I of the Counterclaim refers not only to the Equipment Rental Agreement but also to an "E-Mail Agreement". A10, ¶¶ 9-11; A11-12, ¶¶ 18, 20, 21. EMERALD alleges:

> The E-Mail Agreement was effective as of May 1, 2002 and was applicable to any cargo worthy Emerald equipment, which Sea Star dispatched out of any port terminal or inland depot for customer use at agreed upon per diems ....
>
> Sea Star used the Emerald Equipment pursuant to the E-Mail Agreement for a number of months. before the leasing arrangement was more formally documented in a written agreement executed by Sea Star and Emerald in the later part of September, 2002 (the "Equipment Rental Agreement". . .).

A30. ¶¶ 10, 11. EMERALD contends that "Sea Star is in breach of its obligations under the E-Mail Agreement and under the terms of the Equipment Rental Agreement ...." A11, ¶ 18.

Contradicting EMERALD's allegations as to the "E-Mail Agreement", the opening paragraph of the Equipment Rental Agreement states: "Terms and Conditions of this Agreement cover equipment in use at various times commencing April 29, 2002." A40. Moreover. the Equipment Rental Agreement includes an integration paragraph, which reads:

> This Agreement is binding upon the parties and their respective legal representatives, successors and assigns. This Agreement contains the entire agreement between the parties and, subject to the provisions of section 1, may not be amended, altered, or modified. except by writing signed by the party to be bound.

A48, ¶ 15(a). Referenced in paragraph 15(a), section 1 states:

> Equipment. Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the Equipment. Delivery of all Equipment to Lessee or its agents by Lessor shall be effected and evidenced by signed and dated equipment interchange receipts and shall be subject to the terms and conditions of this Agreement.

A40, ¶ 1.

The contractual language is clear. *E.g.,* Sterling v. Beneficial Nat'l Bank, N.A., No. 91C-12-005 1994 WL 315365 at *5 & n.3 (Del. Super. Ct. Apr. 13, 1994), aff'd, 650 A.2d 1307 (Del. 1994) (attached as Ex. 1). Since the Equipment Rental Agreement "contains the entire agreement between the parties". EMERALD has failed to state a claim for breach of any purported "E-Mail Agreement". Indeed, under the Maryland parol evidence rule, the "E-Mail Agreement" would be inadmissible: The Equipment Rental Agreement "'discharges prior agreements.' thereby rendering legally inoperative communications and negotiations leading up to the written contract." Calomiris v. Woods, 727 A.2d 358. 361-62 (Md. 1999) (citation omitted); *see, e.g.,* Kikas v. County Comm'rs of Baltimore County., 89 A.2d 625. 627-28 (Md. 1952).

### 2.    *Quantum Meruit* (Count II).

Though titled "Post-Petition Quantum Meruit", Count II "incorporates" the paragraphs in Count I "as fully as if set forth herein in their entirety." A32, ¶ 22. EMERALD alleges in pertinent part: "To the extent Sea Star's use of Emerald's equipment occurred during any period not covered by written lease agreement, EMERALD's is entitled to collect damages from Sea Star under the theory of quantum meruit." A32. ¶ 25. Nowhere does Emerald state what "period" the Equipment Rental Agreement would not have covered.

Under Maryland law, "when there is an express contract dealing specifically with the services rendered, quantum meruit is unavailable." First Nat'l Bank v. Burton, Parsons & Co., 470 A.2d 822, 829 (Md. Ct. Spec. App. 1984). Recovery under a *quantum meruit* theory "is not applicable when compensation of the parties is covered an express written contract." Mass Transit Admin. v. Granite Constr. Co., 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984). *Accord,* ABT Assocs., Inc. v. JHPIEGO Corp., 104 F. Supp. 2d 523, 534 (D. Md. 2000), aff'd, 9 Fed. Appx. 172 (4th Cir. 2001); County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607-08 (Md. 2000). In this case, the subject matter of EMERALD's claims is covered by the Equipment Rental Agreement, which defines the parties' rights and remedies and includes an integration clause. *See* County Comm'rs of Caroline County, supra, 747 A.2d at 609-10. Count II thus fails to state a claim under the quasi-contract theory of *quantum meruit. Id.,* at 611; Wal-Mart Stores, Inc. v. AIG Life Ins. Co., No. CIV.A. 19875, 2005 WL 790821, at *5 (Del. Ch. Apr. 1, 2005) (attached as Ex. 3); *see* Resource Ventures, Inc. v. Resources Management Int'l, Inc., 42 F. Supp. 2d 423, 439-40 (D. Del. 1999) (if formal contract is measure of plaintiff's right, no recovery under independent quasi-contract theory). Moreover, EMERALD has not specified any contract or statute authorizing attorney's fees in connection with a *quantum meruit* claim. B&P Enterprises v. Overland Equip. Co., 758 A.2d 1026, 1046 (Md. Ct. Spec. App. 2000) (Maryland law); *see* Bausch & Lomb, Inc. v. Utica Mut. Ins. Co., 735 A.2d 1081 (1999); Pinkert v. John J. Olivieri, P.A., No. CIV. A. 99-380-SLR, 2001 WL 641737, at *6 (D. Del. May 24, 2001) (Delaware law) (attached as Ex. 3).

3.     **Turnover (Count III).**

To substantiate the "turnover" claim in Count III, EMERALD alleges:

> By letter dated October 31, 2003, Emerald gave Sea Star thirty (30) days prior written notice of its termination of the Equipment Rental Agreement and demanded that Sea Star return all Emerald equipment to Emerald on or before December 1, 2003 in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement.

A33, ¶ 27. EMERALD does not demand turnover of the "Emerald equipment" but "damages equaling unpaid rent, and the value of the equipment, together with interest and costs of suit." *Id.* at 13. Clearly, Count III is no more than an incorporating and a rephrasing of Count I. *See* A31, ¶¶ 18, 19, 20; A33, ¶ 26. Further, EMERALD seeks turnover "pursuant to 11 U.S.C. Section 342, or otherwise"; but section 342 pertains to "notice", not turnover. Dismissal of Count III, thus, becomes appropriate.

4.     **Accounting (Count IV [first]).**

Again explicitly incorporating its breach-of-contract claim, EMERALD nonetheless "requests an Order requiring that Sea Star provide to Emerald a full accounting of all Sea Star's usage of Emerald Equipment." A33, ¶¶ 29, 31; A34. "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is...the absence of an adequate remedy at law." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962) (footnote omitted). "[W]here the relief sought in equity in a so-called complaint for an accounting is actually the mere recovery of money, as is the case here, an action for such type of relief is analogous to an action at law for the same or equivalent relief." Artesian Water Co. v. Lynch, 283 A.2d 690, 692 (Del. Ch. 1971) (citations omitted). *Accord,* Fike v. Ruger, 754 A.2d 254, 260 (Del. Ch. 1999), aff'd, 752 A.2d 112 (Del. 2000). EMERALD's Counterclaim "merely

seeks damages for breach of contract"; and "the law courts provide a complete and adequate remedy precluding [an equity court's] jurisdiction." Heston v. Miller, No. CIV.A. 5820, 1979 WL 174446, at *1 (Del. Ch. Oct 11, 1979) (attached as Ex. 4). Thus, the first Count IV does not state a claim for an equitable accounting.

### D.    "Tort" Claims (Count IV [second]-Count VIII).

Since EMERALD's tort claims appear non-maritime, the Delaware conflict-of-law rules determine what state's substantive law applies. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); *see* Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (*per curiam*). With respect to tort claims, Delaware utilizes the "most significant relationship" test, requiring the court to apply the law of the state that has the most significant relationship to the occurrences and the parties. Travelers Indemnity Co. v. Lake, 594 A.2d 38, 47 (Del. 1991). *Accord*, David B. Lilly Co., Inc. v. Fisher, 18 F.3d 1112, 1118-19 (3d Cir. 1994); Corning Inc. v. SRU Biosystems, LLC, 292 F. Supp. 2d 583, 584-85 (D. Del. 2003).

#### 1.    Independent Legal Duty/Economic Loss Doctrine.

Under any state's law the Court might select, EMERALD's tort claims cannot survive. Counts IV [second] through VIII are "undergirded by factual allegations identical to those supporting [EMERALD's] breach of contract counts." Werwinski v. Ford Motor Co., 286 F.3d 661, 678 (3d Cir. 2002), *quoting* Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co., 722 F. Supp. 184, 201 (D.N.J. 1989). Indeed, the Counterclaim "incorporates" the breach-of-contract paragraphs into each tort count. A34-A36, ¶¶33, 39, 43, 49.

Moreover, the Counterclaim discloses that SEA STAR "self billing reports" comprise the foundation for the fraud and negligence claims. EMERALD alleges:

> Under these circumstances, in order to ascertain rental payments due for the Emerald Equipment. Sea Star provided Emerald with monthly "self-billing reports", whereby Sea STAR undertook the obligation to report to Emerald its "usage" of the Emerald Equipment.
>
> Upon later investigation, Emerald discovered that the "self-billing reports" prepared by Sea Star were grossly understated, failing. *inter alia*. to account for numerous pieces of Emerald Equipment which Sea Star had been using without paying rental charges to Emerald and failing to pay the appropriate amounts for usage of equipment contained in the "self-billing reports".

A30-A31. ¶¶ 14, 15. These allegations become part of all eight counts of the Counterclaim. A31-A36. ¶¶17; 22. 26, 29; 33: 39, 43; 49.

Any alleged obligation to submit self-billing reports existed solely by reason of and in relation to the Equipment Rental Agreement. *See* Pinkert v. John J. Olivieri, P.A., *supra,* 2001 WL 641737, at *5 (no violation of common law duty independent of contract). Pertinent to EMERALD's tort claims, the court pointed out in Pinkert:

> As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort. "[A breach of contract claim] cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform."

*Id.* (citations omitted). *quoting* Iotex Communications, Inc. v. Defries, No. 15817, 1998 WL 914265, at *5 (Del. Ch. Dec. 21, 1998) (attached as Ex. 5). Manifestly EMERALD's tort claims are "interwoven with" and "but another thread in the fabric of [its] contract claim." Huron Tool & Eng'g Co. v. Precision Consulting Services, Inc., 532 N.W. 2d 541, 544 (Mich. Ct. App. 1995). *quoting* Public Service Enterprise Group, *supra,* 722 F. Supp. at 201. Counts IV [second] through VIII arise solely from SEA STAR's performance or non-performance of contractual

{10002619.DOC}                                          14

duties and are. therefore. insufficient. Pinkert, *supra, 2001 WL 641737*, at *6. *Accord*, Midland

Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co., No. CIV.A. 04C05091 CLS, 2005

WL 445710, at *3 (Del. Super. Ct. Feb. 23. 2005) (dismissing fraud and negligence claims based

on contractual obligations. not "any common law duty independent of the contract terms")

(attached as Ex. 6); *see* Werwinski, *supra,* 286 F.3d at 680 & n.8 ("gist of the action" doctrine

also barring replication of claim for breach of underlying contract); Public Service Enterprise

Group, *supra,* 722 F. Supp. at 200-01; Heckrotte v. Riddle, 168 A.2d 879, 881-82 (Md. 1961).

However EMERALD might plead, the economic loss doctrine "prohibits

[EMERALD] from recovering in tort economic losses to which [its] entitlement flows only from

a contract." Werwinski, *supra,* 286 F.3d at 671, *quoting* Duquesne Light Co. v. Westinghouse

Elec. Corp., 66 F.3d 604. 618 (3d Cir. 1995). *Accord,* Sterling. *supra,* 1994 WL 315365, at *3.

In Werwinski the Third Circuit explained:

> [T]he need to provide a plaintiff additional tort remedies is
> diminished greatly when (1) the plaintiff can be made whole under
> contract law, and (2) allowing additional tort remedies will impose
> additional costs on society. As we have said previously. "when
> loss of the benefit of a bargain is the plaintiff's sole loss....the
> undesirable consequences of affording a tort remedy in addition to
> a contract-based recovery [are] sufficient to outweigh the limited
> interest of the plaintiff in having relief beyond that provided by
> warranty claims."

Werwinski. *supra,* 286 F.3d at 680, *quoting* Duquesne Light. *supra,* 66 F.3d at 618-19; *see*

Indemnity Ins. Co. of N.A. v. American Aviation. Inc., 891 So.2d 532, 536-37 (Fla. 2004).

2.    **Pleading Defects.**

Assuming *arguendo* that any of the alleged torts in EMERALD's Counterclaim could withstand legal scrutiny, Counts IV [second] through VIII would remain deficient.  For example, EMERALD makes generic assertions as to "false and/or misleading" and "inaccurate" information, "misrepresentations", and gross under-reporting in SEA STAR "self-billing reports", as well as "representations which have a tendency to deceive and undermine confidence and are injurious to the public interest."  A34-A36, ¶¶  34, 36, 37; 42; 46, 51.  However, the Counterclaim does not disclose the substantive factual underpinning for these conclusory allegations.

Fed. R. Civ. P. 9(b) mandates that "the circumstances constituting fraud" be stated "with particularity".  To state a claim, EMERALD "must plead with particularity "'the circumstances' of the alleged fraud in order to place [SEA STAR] on notice of the precise misconduct with which [it is] charged, and to safeguard [SEA STAR] against spurious charges of immoral and fraudulent behavior."  Lum v. Bank of America, *supra,* 361 F.3d at 223-24, *quoting* Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  EMERALD "also must allege who made a representation to whom and the general content of the misrepresentation."  Lum, *supra,* 361 F.3d at 224 (citations omitted).  Having failed to comply with pleading requirements of Rule 9(b), EMERALD has failed to state a claim under Rule 12(b)(6).  Lum, *supra,* 361 F.3d at 224-27; Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-84 & n.5 (4th Cir. 1999).  Therefore, the Court must dismiss Counts IV [second] through VIII.  Lum, *supra,* 361 F.3d at 227.  *See also* Samuel-Bassett v. Kia Motors Am., Inc. 357 F.3d 392, 402 (3d Cir. 2004) (punitive damages not recoverable in Pennsylvania in action based on breach of contract); W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 746 F.2d 215, 218

{10002619.DOC}                                    16

(3d Cir. 1984) (punitive damages impermissible in New Jersey for bad faith or egregious breach of commercial contract); Pinkert v. John J. Olivieri, P.A., 2001 WL 641737, at *7; E.I. Dupont De Nemours & Co. v. Pressman, 679 A.2d 436, 445, 448 (Del. 1996) (punitive damages not recoverable for breach of contract unless conduct also amounts to independent tort). In no event, absent specific contractual or statutory authorization, could EMERALD claim attorney's fees. E.g., Pinkert, supra, 2001 WL 641737, at *6 (Delaware law); B&P Enterprises v. Overland Equip. Co., 758 A.2d at 1046 (Maryland law).

## CONCLUSION

As a shot across SEA STAR's bow, EMERALD's Counterclaim is a dud. EMERALD's pleading fails to state claims for relief based on alleged breach of an "E-Mail Agreement", *quantum meruit,* 11 U.S.C. § 342, or equitable accounting. Furthermore, EMERALD cannot premise claims on the alleged "torts", none of which is separate from and independent of alleged breaches of contract and all of which are within the ambit of the economic loss doctrine. Clearly, the Counterclaim is susceptible to dismissal under Rule 12(b)(6), for the Court could not grant the relief demanded under any set of facts that EMERALD could prove consistent with well-pled allegations and attached exhibits. Therefore, SEA STAR respectfully requests that the Court grant its Motion to Dismiss.

SMITH, KATZENSTEIN & FURLOW, LLP

_____

Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Phone: (302) 652-8400
Fax: (302) 652-8405
E-mail: KMiller@skfdelaware.com

Attorneys for Sea Star Lines, LLC

OF COUNSEL:
Charles C. Robinson
Garvey Schubert Barer
1191 Second Avenue, #1800
Seattle, WA 98101-2939
Telephone: 206.816.1451
Facsimile: 206.464.0125
Email: crobinson@gsblaw.com

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134
Telephone: 305-444-3355
Fax: 305-442-4300

{10002618.DOC}                    18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May, 2005 a copy of the foregoing

*Sea Star Lines, LLC's Opening Brief in Support of Its Motion to Dismiss Emerald Equipment*

*Leasing, Inc.'s Counterclaim* was served on the parties listed below by eFiling and in the

manner indicated:

*FIRST CLASS MAIL*
MICHAEL L. GORE, ESQ.
Shutts & Bowen LLP
P.O. Box 4956
Orlando, FL 32802-4956

*FIRST CLASS MAIL*
GARY M. SCHILDHORN, ESQ.
ALAN I. MOLDOFF, ESQ.
Adelman Lavine Gold and Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103-2808.

*VIA ELECTONIC MAIL*
Bradford J. Sandler, Esq.
Adelman Lavine Gold and Levin, P.C.
919 North Market Street
Suite 710
Wilmington, DE 19801
Email: adelman11@adelmanlaw.com


Kathleen M. Miller (I.D. No. 2898)