IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC, a limited liability company, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| -vs- | : : | |
| EMERALD EQUIPMENT LEASING, INC., a corporation, | : : : | |
| Defendant/Plaintiff on the Counterclaim | : : : | Case No. 05-CV-00245-(JJF) |
| -vs- | : : | |
| SEA STAR LINE, LLC | : : | |
| Defendant on the Counterclaim | : : | |

**EMERALD EQUIPMENT LEASING, INC.'S ANSWERING BRIEF IN
OPPOSITION TO SEA STAR LINE, LLC'S MOTION TO DISMISS
EMERALD EQUIPMENT LEASING, INC.'S COUNTERCLAIM**

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Bradford J. Sandler, Esq. (No. 4142)
Jonathan M. Stemerman, Esq (No. 4510)
919 North Market Street, Suite 710
Wilmington, DE 19801
302-654-8200

-and-

Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Suite 900, Four Penn Center
Philadelphia, PA 19103-2808
215-568-7515
Counsel for Emerald Equipment Leasing,
Inc.

May 31, 2005

## **TABLE OF CONTENTS**

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.......v

II.   SUMMARY OF COUNTERARGUMENT...........................................x

III.  ARGUMENT ..........................................................................1

    A.    Standard of Review ....................................................................1

    B.    Given The Divergent Views of The Parties as to The Meaning And
         Application of Various Provisions of The Equipment Rental Agreement,
         Together With Performance of The E-Mail Agreement By The Parties
         For Approximately Five Months Prior to Execution of The Equipment
         Rental Agreement, The E-Mail Agreement is Pertinent to This Case,
         And to The Extent Applicable, Count I States a Cause of Action For Its
         Breach..............................................................................1

    C.    Count II States A Claim For Relief Based On Quantum Meruit
         Notwithstanding Sea Star's Contention That Emerald's Claims Are
         Covered By The Equipment Rental Agreement ...............................4

    D.    Count III States a Claim For "Turnover" Relief Pursuant to 11 U.S.C.
         Section 542.......................................................................5

    E.    A Cause of Action For Accounting Is Properly Stated ......................6

    F.    Emerald's Counterclaim Alleges Obligations Independent from Contract,
         Giving Rise to Tort Claims; As Such Counts IV Through
         VIII of the Counterclaim State Valid Causes of Action And Should
         Not Be Dismissed..............................................................8

         1.    Emerald Pleaded Independent Torts ...................................8

         2.    Existence of Independent Tort Claims Precludes Application of
             Economic Loss Doctrine.................................................11

         3.    Emerald Has Met the Threshold for Stating Fraud with
             Particularity..............................................................12

    IV.   CONCLUSION..................................................................13

## TABLE OF CITATIONS

**CASES**

ABT Assoc., Inc. v. Jhpiego Corp., 104 F.Supp. 2d 523 (D. Md. 2000),
aff'd, 9 Fed. Appx. 142 (4th Cir. 2001)...............................................................4

ARB v. F-Systems, Inc., 663 F.2d 189 (U.S. App. D.C. 1980)...............................2

Bradney v. Cakelson, 473 A.2d 189 (Pa. Super 1984).........................................2

Calomiris v. Woods, 727 A.2d 358 (Md. 1999).....................................................3

Conley v. Gibson, 355 U.S. 41 (1957)..................................................................1

County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.,
747 A.2d, 600, (Md. 2000)................................................................................4,5

Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962)..............................................7,8

First Nat'l Bank v. Burton, Parsons & Co.,
470 A.2d 822 (Md. Ct. Spec. App. 1984)............................................................4

Franz Tractor Co. v. J.I. Case Co., 566 So.2d 524 (Fla. App. 2 Dist., 1990)................2

F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc.,
1994 WL 594592 (D. N.J. Oct. 24, 1994)....................................................8,9,10

HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,
685 So.2d 1238 (Fla. 1996)..............................................................................12

In re Chomat, 216 B.R. 681 (Bankr. S.D. Fla.1997).........................................11

Insteel Indus., Inc. v. Costanza Contracting Co, Inc.,
276 F. Supp.2d 479 (E.D. Va. 2003)..................................................................10

Jefferson Island Salt Min. Co. v. Empire Box Corp.,
23 A.2d 106 (Del. Super.1941)...........................................................................3

Kost v. Kozakiewicz, 1 F.2d 176 (3d Cir.1993)....................................................1

Lee Builders, Inc. v. Wells, 92 A.2d 710 (Del. Ch. 1952).....................................2

Matter of Marchiando, 13 F.3d 1111 (7th Cir. 1994)..........................................11

g:\393\10\pleading\sea star brief-resp to ss mtn dismiss

Mass Transit Admin. v. Granite Constr. Co.,
471 A.2d 1121 (Md. Ct. Spec. App. 1984)..............................................................4

Neitzke v. Williams, 490 U.S. 319 (1989)..............................................................1

Piecknick v. Pennsylvania, 36 F.3d 1250 (3d Cir.1994)........................................1

Pinkert v. John J. Olivieri, P.A.,
2001 WL 641737 (D. Del. May 24, 2001).............................................................9

Securities and Exchange Commission v. Tiffany Industries, Inc.,
535 F.Supp. 1160 (D.C. Mo. 1982).......................................................................12

Sellys v. General Motors Co., 521 F. Supp. 978, 981 (D. Del. 1981)....................8

Werwinski  v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002)............................11,12

Western Elec. Co. v. Components, Inc.,
1970 WL 458, (Del.Ch. Dec. 7, 1970)...................................................................7

## STATUTES

28 U.S.C. § 157......................................................................................................x

11 U.S.C. § 542...................................................................................................5,6

## MICELLANEOUS

1 Am. Jur. 2d. Accounts and Accounting § 54 (1994 & Supp. 2002)..................6,7

## I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

On March 21, 2001 (the "Petition Date"), Emerald Equipment Leasing, Inc.

("Emerald") filed a voluntary petition for relief under Chapter 11 (See Voluntary Petition

at B 1)[1] in the United States Bankruptcy Court for the District of Delaware (the

"Delaware Bankruptcy Court"), along with various affiliated entities (collectively, the

"Jointly Administered Debtors").  Emerald's primary asset is its interest in claims against

Sea Star Line, LLC ("Sea Star") in an amount in excess of $4,000,000.00 arising from,

inter alia, unpaid rental charges due pursuant to a post-petition written lease agreement

(the "Equipment Rental Agreement") entered into between Emerald and Sea Star which

was terminated as of November 30, 2003.

Shortly after termination of the Equipment Rental Agreement, in an effort to

amicably resolve the dispute over the amount of rent owed by Sea Star, Emerald

suggested that the parties attend a settlement meeting.  Failing to get any response,

Emerald filed a Summons and Complaint on March 17, 2004, instituting an adversary

proceeding in the Delaware Bankruptcy Court against Sea Star (the "Bankruptcy Court

Litigation").  Unknown to Emerald, however, Sea Star, in a transparent "race to the

courthouse", instituted the within proceeding by filing a Summons and Complaint in the

United States District Court for the Middle District of Florida (the "Florida District

Court") against Emerald (the "Florida Litigation"), seeking in main part, a "declaratory

judgment" as to the parties' rights and liabilities under the Equipment Rental Agreement

and a "declaration of its rights" under a Sale Order entered by the Delaware Bankruptcy

Court.

---

[1] Emerald's Appendix filed concurrently with this Brief shall be designated as "B__".  Reference by Sea
Star's Appendix are designated as "A___".

Sea Star filed a Motion to Dismiss, Stay or Abate Complaint of Emerald in the Bankruptcy Court Litigation (the "Sea Star Motion to Dismiss") invoking the Third Circuit's "first-filed rule" which generally mandates that a first-filed complaint (i.e., the Florida Litigation filed on March 1, 2004) should proceed rather than a subsequent Complaint (i.e., the Bankruptcy Court Litigation filed on March 17, 2004).[2] Emerald responded to the Florida Litigation by promptly filing a Motion to Dismiss Sea Star's Complaint For Declaratory Judgment, or Alternatively to Transfer Venue or Abstain (the "Emerald Motion to Dismiss or Transfer Venue"). In its pleading, Emerald disputed the Florida District Court's jurisdiction because Sea Star's Complaint for a "declaratory judgment" was inappropriate in that the "declaration of rights" sought by Sea Star pertained to a terminated Equipment Rental Agreement and a fully consummated Sale Order. All business activity under the Equipment Rental Agreement and the Sale Order had long since terminated and therefore there was no danger of further accrual of avoidable damages which would justify a declaratory relief action.

Meanwhile, prior to a determination by the Florida District Court on Emerald's Motion to Dismiss, the Delaware Bankruptcy Court granted the Sea Star Motion to Dismiss, without prejudice, by Order entered on May 27, 2004 (see Transcript of Hearing at A8-A14), based solely on the Third Circuit's articulation of the "first filed rule", specifically noting that it would "assume for purposes of this decision that Florida has jurisdiction", and that therefore, the Court who "first has possession of the subject must decide it." [emphasis added]. The Bankruptcy Court further ruled that entry of the Order granting the Sea Star Motion to Dismiss based on the "first filed rule" should be without

---

[2] Although the Florida Litigation was filed on approximately March 1, 2004, it was not served on Emerald until March 25, 2004. As such, Emerald was unaware of the Florida Litigation when it filed and served Sea Star with the Bankruptcy Court Litigation on March 17, 2004.

prejudice so that "if the Florida Court determines that it doesn't have jurisdiction or its action should be dismissed, the debtor is free to file here."[3]

After completion of discovery in the Florida Litigation, the Florida District Court, just prior to the final pre-trial conference, granted Emerald's Motion to Dismiss or Transfer Venue, in part, by transferring the case to this Court (the "Delaware District Court") by Order dated April 20, 2005 (the "April 20, 2005 Order" at A15-A20). Sea Star, in its Opening Brief In Support Of Its Motion To Dismiss Emerald Equipment Leasing, Inc.'s Counterclaim (Op. Br. at 15), gratuitously explains the Florida District Court's decision to transfer venue to the Delaware District Court by stating as follows: "Crafting an exception to the first-filed rule, the April 20, 2005 Order invoked 28 U.S.C. Section 1404(a) to transfer the case to this Court." In fact, nowhere in the April 20, 2005 Order does the Florida District Court say or suggest that it is "crafting an exception to the first-filed rule". Rather, a fair reading of the April 20, 2005 Order suggests that the Florida District Court was dubious of Sea Star's overt "race to the courthouse" in filing it's "declaratory judgment action" in Florida in the first place.[4]

---

[3] The Delaware Bankruptcy Court made no independent analysis of the merits of the Emerald Motion to Dismiss filed in the Florida District Court, deferring any judgment on that score to the Florida District Court.

[4] A main concern of Sea Star seems to be trying to force Emerald to litigate in jurisdictions of Sea Star's choosing. The very next day after the April 20, 2005 Order, Sea Star, in an apparent pique, filed another Complaint against Emerald, this time in Puerto Rico (see B3). This Complaint (Sea Star's counsel in Puerto Rico, while refusing to provide an English translation, did give a general description of the Complaint) seeks an Order of the Puerto Rico Court compelling Emerald to remove what it allege is Emerald's equipment located on the Sea Star premises or, in the alternative, an Order authorizing Sea Star to sell Emerald's equipment in order to pay approximately $28,000.00 in storage charges (See B9). Emerald's counsel immediately advised Sea Star's Puerto Rico counsel by letter that the issues raised in the Puerto Rico Complaint are already encompassed by the within litigation now pending before this Court and further that Sea Star's actions in attempting to obtain possession of, or exercise control of, the equipment which constitutes property of the Emerald bankruptcy estate is a violation of the "automatic stay" provided by 11 U.S.C. Section 362 (See B10). Apparently "seeing the light", Sea Star voluntarily dismissed the Complaint it filed in Puerto Rico (See B12).

g:\393\10\pleading\sea star brief-resp to ss mtn dismiss

Upon the Florida District Court's disposition of the Emerald Motion to Dismiss or Transfer Venue, Emerald filed its Answer (the "Emerald Answer"), Affirmative Defenses and Counterclaim (the "Emerald Counterclaim") (See A21-A50). The Emerald Answer basically admits the existence of the various underlying documents and Court Orders and states that the controversy relates instead to how these documents apply to the facts in this case. Most importantly, Sea Star substantially underreported the amount of its usage of equipment which was leased by Emerald to Sea Star. Sea Star admits it used Emerald Equipment for time periods not included in the self-billing reports it prepared, the dispute is as to the amount. (See Sea Star's Response to Request For Admission No. 33 at B23-24).

The Emerald Counterclaim states causes of action for: (i) post-petition accounts receivable/breach of lease; (ii) post-petition quantum meruit; (iii) turnover action; (iv) an accounting; (v) fraud; (vi) constructive fraud; (vii) fraudulent concealment; and (viii) negligent misrepresentation/breach of fiduciary duty. Sea Star now challenges the sufficiency of Emerald's Counterclaim, raising various alleged technical shortcomings.

Sea Star couches its Motion as a Motion to Dismiss the Counterclaim in its entirety, wherein it avers that the Counterclaim (rather than just parts of it) is susceptible to dismissal under Rule 12(b)(6). In so doing, Sea Star fails to acknowledge that it substantially underreported its usage of Emerald equipment for an almost two year period, causing Emerald to sustain damages including, but not limited to, loss of rent.[5] Emerald has calculated its damages to be in excess of $4,000,000.00 based upon documents obtained through discovery. Despite this, Sea Star would have this Court

---

[5] Based on discussions obtained during the Florida Litigation, it appears that in certain instances Sea Star went so far as to lease some of the Emerald Equipment to third parties wholly outside of the Equipment Rental Agreement, never acknowledging its possession or use of that equipment.

believe that no claim at all has been stated in the Emerald Counterclaim upon which

Emerald may have recovery against Sea Star.

## II.    SUMMARY OF COUNTERARGUMENT

While the Emerald Counterclaim arguably concerns a maritime contract, which may be subject to federal admiralty jurisdiction, it is also a case related to Emerald's pending bankruptcy proceeding in the Delaware Bankruptcy Court and therefore is subject to the Delaware Bankruptcy Court's bankruptcy related jurisdiction pursuant to 28 U.S.C. Sections 1334 and 157.[6] Moreover, notwithstanding Sea Star's repeated assertions in its opening brief that the matter presented does not implicate Bankruptcy Court "core" jurisdiction, relying on an earlier Bankruptcy Court ruling, Sea Star is forgetting that the context in which that earlier ruling was made is different from the context in which the Emerald Counterclaim is now asserted.  In the earlier Bankruptcy Court ruling, the Bankruptcy Court was dealing only with a claim made by Emerald against Sea Star based on post-petition activities.  In the present posture of this case, the claim asserted by Emerald is in the context of a "counterclaim by the estate against persons filing claims against the estate", (See, 28 U.S.C. Section 157(b)(2)(C)), and which involves claims asserted by Sea Star against the Emerald estate.  (See, 28 U.S.C. Section 157(b)(2)(B)).  The Bankruptcy Court did not opine on whether core jurisdiction was appropriate in this context.  It is for that reason that Emerald has asserted the Bankruptcy Court's "core" jurisdiction.

Notwithstanding the foregoing, Emerald agrees with Sea Star that to consider Sea Star's Motion under Fed.R.Civ.P. 12(b)(6), the Court concentrates on the sufficiency of Emerald's Counterclaim, not the ultimate merits of the case.  Dismissal for failure to state a cause of action, however, is only appropriate when it appears beyond a doubt that the

---

[6] Actually, since this matter involves the Delaware Bankruptcy Court's "related to" jurisdiction pursuant to 28 U.S.C. Section 1334, this matter should be "referred to" the Delaware Bankruptcy Court pursuant to this Court's standing order dated September 6, 2001.

plaintiff can prove no set of facts in support of its claims which would entitle it to relief. In that regard, Sea Star's Motion to Dismiss fails to meet scrutiny and should be denied since:

(1) The parties operated pursuant to the E-Mail Agreement for approximately five months before the Equipment Rental Agreement was signed. Moreover, Sea Star has not definitively acknowledged the applicability of the Equipment Rental Agreement for all of its usage of Emerald Equipment. Therefore, to the extent it may be determined that all of Sea Star's usage of Emerald Equipment was not incorporated in the Equipment Rental Agreement, Count I correctly states a claim for relief based on breach of an E-Mail Agreement;

(2) Similarly, Count II states a claim for relief based on quantum meruit, notwithstanding Sea Star's contention that Emerald's claims are covered by the Equipment Rental Agreement. A quantum meruit claim is asserted, in the alternative, to the extent, either the Equipment Rental Agreement or the E-Mail Agreement is deemed ineffective (in any regard) or not applicable. In such circumstances, Sea Star's use of the Emerald equipment without compensation to Emerald for such use would amount to unjust enrichment giving rise to a quantum meruit claim;

(3)    Count III states a claim for "turnover" relief pursuant to 11 U.S.C. Section 542. The reference to 11 U.S.C. Section 342 in Count III cited by Sea Star is, what should have been, readily apparent to Sea Star, but apparently wasn't, a typographical error;

(4)    The "accounting" claim set forth in Count IV arises out of the fiduciary duty owed by Sea Star to Emerald to accurately report its usage of the Emerald

equipment. As such, breach of such fiduciary duty gives rise to equitable claims and not simply a legal claim; and

(5)     Counts IV (second) through VIII are tort claims which arise out of Sea Star's undertaking to provide "self billing reports" accurately reflecting its use of the Emerald equipment. This obligation is not found in either the E-Mail Agreement or the Equipment Rental Agreement, but rather was a separate undertaking extraneous to and independent of the contract. Sea Star's failure to accurately disclose its usage of the Emerald equipment therefore gives rise to the tort causes of action, properly stated in Counts IV through VIII for fraud, constructive fraud, fraudulent concealment, negligent misrepresentation\breach of fiduciary duty.

## III.    ARGUMENT

### A.    Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the non-moving party. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255 (3d Cir.1994). The Court however, is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." Kost, 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 – 46 (1957).

### B.    The Extent and Applicability of the Purported Integration Paragraph Requires the Development of a Factual Record Precluding Dismissal of Count I at this State of the Case. Further Sea Star's Breach of the E-Mail Agreement Prior to Execution of the Equipment Rental Agreement May Support a Cause of Action Independent of the Equipment Rental Agreement

Sea Star seeks to convince this Court that the E-Mail Agreement which governed the parties' conduct for approximately five months before the execution of the Equipment Rental Agreement has no bearing on this case. Putting aside the bare bones legal argument offered by Sea Star, devoid of any factual context, the assertion that the E-Mail Agreement has no application to this case and is somehow not to be considered, is just plain wrong.

g:\393\10\pleading\sea star brief-resp to ss mtn dismiss

Sea Star apparently contends, although not explicitly saying so, that the Equipment Rental Agreement supersedes the E-Mail Agreement and that therefore no cause of action lies for breach of the E-Mail Agreement.  In so doing, Sea Star relies on what it terms an "integration paragraph" in the Equipment Rental Agreement which simply says: that "This Agreement contains the entire agreement between the parties." Nowhere in the Equipment Rental Agreement, however, does it specifically say that all prior agreements are cancelled and/or rescinded.  In fact, it makes no mention at all of the E-Mail Agreement pursuant to which the parties had performed for approximately five months.

It is generally accepted under contracts law that the doctrine of merger (or integration) is a matter of intention to be determined from the terms and the subject matter of a contract or from the conduct of the parties thereto.  Bradney v. Sakelson, 473 A.2d 189, 199 (Pa. Super 1984); Franz Tractor Co. v. J.I. Case Co., 566 So.2d 524 (Fla. App. 2 Dist. 1990).  Applying this principle, Maryland law[7] requires that the circumstances surrounding the making of a contract is to be considered to discover whether an integration clause does, in fact, express the general intention of the parties to make the written contract the complete and exclusive statement of their agreement.  ARB v. F-Systems, Inc., 663 F.2d 189, 199 (U.S. App. D.C. 1980).  Moreover, other jurisdictions, such as Delaware, have recognized that a new contract relating to the subject matter of a former agreement does not destroy the obligations of the former agreement, except as it is inconsistent therewith, unless it is shown that the parties intend that the new contract supersede the old contract entirely.  Lee Builders, Inc. v. Wells, 92

---

[7] The Equipment Rental Agreement provides that it should be interpreted in accordance with the laws of Maryland.

A.2d 710, 715 (Del. Ch. 1952); <u>Jefferson Island Salt Min. Co. v. Empire Box Corp.</u>, 23
A.2d 106 (Del. Super. 1941).

In this case, Sea Star has not addressed any of the circumstances surrounding the
formation of the Equipment Rental Agreement or shown where or how the E-Mail
Agreement is inconsistent with the Equipment Rental Agreement.  Further, Sea Star has
never definitively admitted that its use of Emerald's Equipment was at all times
compensable pursuant to the terms of the Equipment Rental Agreement.  As such, at the
very least, it is premature for this Court to rule on the meaning of the alleged "integration
clause" and its effect in this case or to determine that no claim lies under the E-Mail
Agreement.

Moreover, Sea Star's statement that the E-Mail Agreement constitutes parole
evidence which would not be admissible (Op. Br. at 10) is simply irrelevant to Sea Star's
Motion.  In fact, to the extent either party may assert that certain provisions of the
Equipment Rental Agreement are either ambiguous or simply not applicable, parole
evidence would clearly permit this Court's consideration of the E-Mail Agreement and
the parties conduct.  For example, paragraphs 1 and 5 of the Equipment Rental
Agreement (A40 and A42) speak of "delivery" of equipment to Sea Star at locations
agreed to by the parties.  As Sea Star well knows, in fact, none of the Emerald Equipment
was "delivered" to Sea Star.  Rather, all of the Emerald Equipment was situated at
various locations throughout the United States when Sea Star entered into the E-Mail
Agreement with Emerald for use of that equipment. Surely, Sea Star cannot possibly be
saying that these facts and the E-Mail Agreement itself are not admissible to explain the
parties' agreement.  As such, Sea Star's reference to <u>Calomiris v. Woods</u>, 727 A.2d 358

(Md. 1999) at Op. Br. 10 is inapposite since the rule stated therein applies only where there is no ambiguity and does not involve a prior agreement which has already been performed and which one party breached without the knowledge of the other party.

Finally, under the circumstances presented herein, Sea Star and Emerald's performance of the E-Mail Agreement prior to the execution of the Equipment Rental Agreement may give rise to a breach thereof where such breaches (i.e. the underpayment of rent) occurred without Emerald's knowledge prior to execution of the Equipment Rental Agreement. There has been no evidence presented that Emerald has waived any prior breach thereby precluding dismissal of Count I at the time.

### C.    Count II States A Claim For Relief Based On Quantum Meruit Notwithstanding Sea Star's Contention That Emerald's Claims Are Covered By The Equipment Rental Agreement

Emerald's claims, under the theory of quantum meruit, are pled at this stage of the proceedings, in the alternative, to the extent, either the Equipment Rental Agreement or the E-Mail Agreement is deemed ineffective (in any regard) or not applicable, for any use of Emerald Equipment by Sea Star for which Sea Star has not compensated Emerald. As such, Emerald is not seeking to recover compensation under quantum meruit for Sea Star's use of Emerald Equipment for which compensation is available under the E-Mail Agreement or the Equipment Rental Agreement. Accordingly, Sea Star's recitation of case law, such as First Nat'l Bank of Maryland v. Burton, Parsons & Co., 470 A.2d 822, 829 (Md. Ct. Spec. App. 1984); Mass Transit Admin. v. Granite Constr. Co., 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984); ABT Assoc., Inc. v. Jhpiego Corp., 104 F.Supp. 2d 523, 534 (D. Md. 2000), aff'd, 9 Fed. Appx. 142 (4th Cir. 2001); County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607-608 (Md. 2000),

holding that recovery under a quantum meruit theory is not applicable when compensation of the parties is covered by an express written contract, is inapposite.

In fact, the case law cited by Sea Star, although standing for the general proposition that quantum meruit actions will not lie for matters covered by a written contract, recognize exceptions to that general rule. County Comm'rs, 747 A.2d at 609-10. The County Comm'rs Court lists various exceptions to the general rule that quantum meruit action will not lie for matters covered by a written contract, except where there is evidence of fraud or bad faith, where there has been a breach of contract or a mutual rescission of the contract, where rescission is warranted, or where the express contract does not fully address a subject matter in dispute. Id.

Sea Star has not yet filed its Answer to the Emerald Counterclaim. To the extent Sea Star may assert any defense claiming that it is not liable to Emerald for compensation for its use of Emerald Equipment pursuant to the E-Mail Agreement or the Equipment Rental Agreement, a claim for unjust enrichment under quantum meruit would properly lie.

To sustain a claim based on unjust enrichment, plaintiff must establish benefits conferred upon defendant by plaintiff, appreciation or knowledge by defendant of the benefit, and acceptance or retention by defendant of benefit under such circumstances as to make it inequitable for defendant to retain benefit without payment of its value. Mass Transit, supra. These elements have been adequately pled and this Count should not be dismissed.

### D.    Count III States a Claim For "Turnover" Relief Pursuant to 11 U.S.C. Section 542

11 U.S.C. Section 542(a) provides, in relevant part:

> … an entity…in possession, custody or control, during the case, of property that the trustee may use, sell or lease under Section 363 of this Title…shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. [emphasis added]

Sea Star seems to contend that since Emerald does not demand turnover of the "Emerald Equipment", but rather damages which include "the value of the equipment" Count III somehow does not constitute an appropriate "turnover" action. A plain reading of 11 U.S.C. Section 542(a), as stated above, however, makes clear that the relief sought may include either the "property" or the "value of such property".

Moreover, Sea Star informs the Court that Emerald seeks "turnover" pursuant to 11 U.S.C. Section 342, or otherwise and that 11 U.S.C. Section 342 does not apply to "turnover" actions. What should have been obvious to Sea Star, but which apparently was not, is that the reference to 11 U.S.C. Section 342 was merely a typographical error. Reference was made to 11 U.S.C. Section 542 in the jurisdictional section of the Counterclaim (paragraph 1); however, Count III makes reference to 11 U.S.C. Section 342 in the "wherefore" clause, an obvious oversight. A claim has been stated by Emerald for "turnover" under 11 U.S.C. Section 542.

### E.    A Cause of Action For Accounting Is Properly Stated

It is within the sound discretion of this Court to determine whether equity will assume jurisdiction of this matter. As one treatise has noted:

> Equitable jurisdiction for an accounting is usually invoked in cases where: (1) there is a fiduciary relationship between the parties, accompanied by a duty of the part of the defendant to render an account; (2) there are mutual accounts, or, if the account is all on one side, the account is complicated; and (3) there is a need for discovery. A court may also assume jurisdiction where other grounds for invoking equity, such as fraud … are present.

1 Am. Jur. 2d. Accounts and Accounting § 54 (1994 & Supp. 2002).

Indeed, an accounting is proper "where there is an allegation of fraud, especially where there is an additional ground for [equity] jurisdiction, such as the existence of a fiduciary relationship, or where the accounts and transactions alleged to have been tainted with fraud were complicated." Id. at §59.  Moreover, the Supreme Court in Dairy Queen, Inc. v. Wood, cited with approval by Sea Star in its Opening Brief, the United States Supreme Court explained that "in order to maintain [a suit for an accounting] on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." Dairy Queen v. Wood, 369 U.S. 469, 478 (1962) (quoting Kirby v. Lake Shore & Michigan Southern R. Co., 120 U.S. 130, 134 (1887)). Indeed, when the accounts at issue are complicated, an accounting is a proper remedy in an action at law or equity.

> The jurisdiction of the courts of law and equity, with respect to complicated accounts, is so far concurrent, that when parties have elected to proceed at law, a court of equity would not stay such proceedings simply on the ground that it could more conveniently dispose of the suit; nor would a court of equity refuse its aid when invoked, because a court of law would completely settle the whole of the disputed account.

Western Elec. Co. v. Components, Inc., 1970 WL 458, at *4 (Del. Ch. Dec. 7, 1970) (quotations and citations omitted) (denying defendant's motion to dismiss where action was a "complex effort to recover royalties due under a patent license agreement").

As discussed more fully below, Sea Star's obligation to produce self-billing reports created a fiduciary relationship and the instant action alleges torts independent of the Equipment Rental Agreement and E-mail Agreement, not merely claims sounding in contract.  These independent torts include fraud and breach of fiduciary duty.

Additionally, Emerald submits that the one-sided self-billing accounts are complicated, as they involve use by Sea Star of over 5,000 pieces of equipment, and Emerald's only remedy to fully determine the amount of its damages is through an accounting. Accordingly, the self-billing accounts in this case are of such a complicated nature, that "only a court of equity can satisfactorily unravel them." Dairy Queen, 369 U.S. at 478. Emerald has thus properly pleaded a count for an accounting.

> **F.    Emerald's Counterclaim Alleges Obligations Independent from Contract, Giving Rise to Tort Claims; As Such Counts IV Through VIII of the Counterclaim State Valid Causes of Action And Should Not Be Dismissed[8]**

1.    *Emerald Pleaded Independent Torts*

The Emerald Counterclaim pleads allegations of duties that arise independent of the Equipment Rental Agreement and, as such, properly plead claims sounding in tort. The Equipment Rental Agreement is silent as to Sea Star's obligations to create self-billing reports.  Emerald was not notified when Sea Star commenced using any particular piece of the Emerald Equipment and no receipt or other document was needed from Emerald acknowledging Sea Star's use of the Emerald Equipment before Sea Star could use that equipment.  See Emerald Ans. at 10, para. 13 (A30).  Under these circumstances, in order to ascertain rental payments due for the Emerald Equipment, Sea Star provided Emerald with monthly "self-billing reports", whereby Sea Star undertook the obligation to report to Emerald its "usage" of the Emerald Equipment.  See Emerald Ans. at 10,

---

[8] Federal Courts sitting in admiralty usually apply general principals of common law, rather than the law of any particular state, in order to foster uniformity of maritime law.  F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc., 1994 WL 594592 (D. N.J. Oct. 24, 1994).  Under Delaware's choice of law rule in tort cases, the law of the place of injury would generally apply in a diversity action.  Sellys v. General Motors Co., 521 F.Supp. 978, 981 (D. Del. 1981).

para. 14 (A30).  This undertaking was not made a part of the Equipment Rental Agreement.

Sea Star relies on <u>Pinkert v. John J. Olivieri, P.A.</u>, 2001 WL 641737 (D. Del. May 24, 2001) for the proposition that "[a]ny alleged obligation to submit self-billing reports existed solely by reason of and in relation to the Equipment Rental Agreement.  Op. Br. at page 14.  In this case, however, this is not so factually since the obligation to submit self billing reports is not mentioned in the Equipment Rental Agreement, as stated above.  The contract at issue in <u>Pinkert</u>, was a construction contract, and the fraud counts were based on allegations that the work was not properly performed according to the terms of the contract.  <u>See Pinkert.</u>, 2001 WL 641737, at * 4 (discussing counts in complaint).  In contrast, Emerald's tort counterclaims allege that Sea Star knowingly presented to Emerald self-billing reports (as to which the contract was silent) that were false or misleading or prepared with reckless indifference to the veracity of the information contained therein.  <u>See</u> Emerald Ans. at 14, para. 35 (A34).  Sea Star know that Emerald was relying on Sea Star to honestly report its usage of equipment and that Emerald could not monitor that usage.  The nature of the self-billing aspect of the relationship between Emerald and Sea Star thus "presents unique opportunities for fraud" making this matter more aptly suited to a claim sounding in tort rather than contract. <u>See F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc.</u>, 1994 WL 594592, at *10 (D. N.J. Oct. 24, 1994) (which held, <u>inter alia,</u> that fraud claims are sustainable along side contract claims).

In a relationship between the parties in which one party must rely on the honesty of the other to accurately report an amount of time for billing purposes, misrepresentation

of that time is actionable as fraud.  Id. (stating that "misrepresenting the hours of labor

spent in making the repairs ... may be actionable as fraud.").  As one court has noted:

> In contracts such as the one at bar, however, true fraudulent representations may
> occur.  This contract has no specific price term, and grants the shipyard broad
> latitude in carrying out repairs.  Thus, the vessel owner must rely on the integrity
> of the shipyard to honestly report the parts and labor used, the work actually
> performed, and the costs incurred.  Misrepresenting any of these items in order to
> inflate the amount owed by the vessel owner might constitute actual fraud.

Id.[9]; see also Insteel Indus., Inc. v. Costanza Contracting Co, Inc., 276 F. Supp.2d 479,

485-86 (E.D. Va. 2003) (holding action based on alleged false statements contained in

invoices was not a claim for negligent performance of a contract, but a claim independent

from any breach of contract and therefore properly an action for fraud).  In this case,

Emerald had to rely on the good faith of Sea Star in reporting its usage of Emerald

Equipment (including over 5,000 separate pieces) since Sea Star's initial use of that

equipment was undertaken without Emerald knowing which pieces were being used.

Emerald's counterclaims based on the false self-billing reports of Sea Star thus properly

sound in tort.  Accordingly, Sea Star's motion to dismiss as to Counts IV [second]-VIII

must be denied.

---

[9] In distinguishing between tort and contract actions, the F/V Robins Nest court also offered this analogy:

> Assume that an attorney and a client enter into an agreement whereby the attorney will represent
> the client for an undetermined hourly rate plus reasonable costs.  Allegations that the attorney
> rendered poor legal counsel, charged an unduly high hourly rate, or incurred unnecessary costs
> would be mere contract claims.  Claims that the attorney misrepresented the number of hours spent
> on a particular matter or billed the client for costs that were never incurred, however, would be
> actionable as fraud.

F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc., 1994 WL 594592, at *10 (D. N.J. Oct. 24, 1994).
Here, the scenario is similar to the latter example.  Emerald and Sea Star entered into an agreement
whereby Emerald would charge Sea Star for the usage of equipment (as measured by the amount of time
each piece of equipment was used) based on the billing records provided by Sea Star.  Emerald alleges that
Sea Star knowingly supplied grossly understated self-billing reports.  As noted above, such allegations are
actionable as fraud.

Additionally, Emerald has properly pleaded Sea Star's breach of its fiduciary

duties to Emerald. As noted above, the Sea Star's self-billing obligations necessitated

Emerald's reliance on the honesty and integrity of Sea Star to accurately account for its

use of the Equipment.   Courts in several jurisdictions, including Florida, have noted that

fiduciary relationships may exist in certain contexts where there are "relations of

inequality". See In re Chomat, 216 B.R. 681, 683 (Bankr. S.D. Fla.1997). The United

States Court of Appeals for the Seventh Circuit has explained that such

> cases involve a difference in knowledge or power between fiduciary and principal
> which ... gives the former a position of ascendancy over the latter ... The fiduciary
> may know much more by reason of professional status, or the relation may be one
> that requires the principal to repose a special confidence in the fiduciary ... These
> are all situations in which one party to the relation is incapable of monitoring the
> other's performance ... and therefore the law does not treat the relation as a
> relation at arm's length between equals.

Matter of Marchiando, 13 F.3d 1111, 1116 (7th Cir. 1994).

2.    *Existence of Independent Tort Claims Precludes Application of Economic Loss
      Doctrine*

Sea Star also claims that Emerald is precluded by the "economic loss" doctrine

because Emerald's tort claims plead losses which flow only from the Equipment Rental

Agreement. Op. Br. at 15. In support of their contention, Sea Star cites Werwinski v.

Ford Motor Co., 286 F.3d 661 (3d Cir. 2002). In that case, the Third Circuit predicted

that *Pennsylvania's* economic loss doctrine would preclude a plaintiff from asserting a

products liability action where the only injury was to the product itself, which injury was

covered by a warranty. Id. at 671. Nevertheless, the Werwinki Court noted the

"emerging trend in [several] jurisdictions "recogniz[ing] a limited exception to the

economic loss doctrine for fraud claims, but only where the claims at issue arise

g:\393\10\pleading\sea star brief-resp to ss mtn dismiss

independent[ly] of the underlying contract." Id. at 676 (quotations and citations omitted). Additionally, under Florida law, "the economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996). As stated above, Emerald has pleaded torts that exist independent of the Equipment Rental Agreement. Accordingly, the economic loss doctrine is inapplicable in this case and the tort cause of action set forth in Counts IV through VIII are properly pled and should not be dismissed.

3.    *Emerald Has Met the Threshold for Stating Fraud with Particularity*

Emerald believes that a fair reading of its counterclaim adequately pleads fraud with particularity. The provisions of Rule 9 of the Federal Rules of Civil Procedure requiring particularity in averments of fraud do not render the general principles of notice pleading inapplicable; the obligation to plead circumstances should not be treated as requiring allegations of fraud in the pleading. Securities and Exchange Commission v. Tiffany Industries, Inc. 535 F.Supp. 1160 (D. Mo. 1982). To the extent this Court determines otherwise, Emerald should have an opportunity to replead its fraud counts, as may be applicable.

g:\393\10\pleading\sea star brief-resp to ss mtn dismiss

## CONCLUSION

Based on the foregoing reasoning and legal authorities, Emerald respectfully requests that the Court deny Sea Star's Motion to Dismiss the Counterclaim in all respects.

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation

By:

Bradford J. Sandler, Esq. (No. 4142)
Jonathan M. Stemerman, Esq. (No. 4510)
919 North Market Street, Suite 710
Wilmington, DE  19801
302-654-8200
Counsel for Emerald Equipment Leasing,
Inc.

-and-

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Suite 900, Four Penn Center
Philadelphia, PA  19103-2808
215-568-7515
Counsel for Emerald Equipment Leasing,
Inc.

g:\393\10\pleading\sea star brief-resp to ss mtn dismiss