IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC, | ) | |
| a limited liability company, | ) | |
| | ) | Civil Action No. 05-245 JJF |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| EMERALD EQUIPMENT LEASING, INC., | ) | |
| a corporation, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| SEA STAR LINE, LLC, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| _____ | ) | |

## SEA STAR LINE, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS EMERALD EQUIPMENT LEASING, INC.'S COUNTERCLAIM

SMITH, KATZENSTEIN & FURLOW, LLP
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (courier 19801)
Phone: (302) 652-8400
Fax:   (302) 652-8405
E-mail: KMiller@skfdelaware.com
Attorneys for Sea Star Lines, LLC

OF COUNSEL:
Charles C. Robinson
Garvey Schubert Barer
1191 Second Avenue, #1800
Seattle, WA 98101-2939

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111, Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134

June 10, 2005

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CITATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

SUMMARY OF REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    **Subject Matter Jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Contract Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    Breach of Contract (Count I) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            2.    *Quantum Meruit* (Count II) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            3.    Turnover (Count III) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            4.    Accounting (Count IV [first]) . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    "Tort" Claims (Count IV [second]-Count VIII) . . . . . . . . . . . . . . . . . 12

            1.    Independent Legal Duty/Economic Loss Doctrine . . . . . . . . . . 13

            2.    Pleading Defects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF CITATIONS

**Cases**                                                                          **Page(s)**

Aly Handbags, Inc. v. Rosenfeld
    334 So.2d 124 (Fla. Dist. Ct. App. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARB (American Research Bureau), Inc. v. E-Sys., Inc.
    663 F.2d 189 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Beard v. Braunstein
    914 F.2d 434 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bennett v. Wright (In re Wright)
    282 B.R. 510 (Bankr. M.D. Ga. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bradney v. Sakelson
    473 A.2d 189 (Pa. Super. Ct. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Calomiris v. Woods
    727 A.2d 358 (Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

Canaras v. Lift Truck Serv.
    322 A.2d 866 (Md. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cole v. Hartford Acc. & Indem. Co.
    46 N.W.2d 811 (Iowa 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

County Commissioners of Caroline Cnty. v.
J. Roland Dashiell & Sons, Inc.
    747 A.2d 600 (Md. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Dairy Queen, Inc. v. Wood
    369 U.S. 469 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Duquesne Light Co. v. Westinghouse Elec. Corp.
    66 F.3d 604 (3 Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

East River S.S. Corp. v. Transamerica Delaval
    476 U.S. 858 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc.,
    CIV.A.No. 92-3900, 1994 WL 594592 (D.N.J. Oct. 24, 1994) . . . . . . . . . . . . . 14

First Fin. Ins. Co. v. Allstate Interior Demolition Corp.
    493 F.3d 109 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Franz Tractor Co. v. J.I. Case Co.
    566 So.2d 524 (Fla. Dist. Ct. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Halper v. Halper
    164 F.3d 830 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Harrison v. Westinghouse Savannah River Co.
    176 F.3d 776 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.
    685 So.2d 1238 (Fla. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.
    532 N.W.2d 541 (Mich. Ct. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Marchiando'
    13 F.3d 1111 (7th Cir.), cert. denied sub nom.,
    Illinois Dep't of Lottery v. Marchiando, 512 U.S. 1205 (1994) . . . . . . . . . . . . . 15

Insteel Indus., Inc. v. Costanza Contracting Co.
    276 F. Supp. 2d 479 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

International Business Machines Corp. v. Condisco, Inc.
    602 A.2d 74 (Del. Ch. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

J.T. Moran Fin. Corp. v. American Consol. Fin. Corp.
(In re J.T. Moran Fin. Corp.)
    124 B.R. 931 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

Jefferson Island Salt Mining Co. v. Empire Box Corp.
    22 A.2d 106 (Del. Super. Ct. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kost v. Kozakiewicz
    1 F.3d 176 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lee Builders, Inc. v. Wells
    92 A.2d 710 (Del. Ch. 1952), rev'd,
    99 A.2d 620 (Del. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lum v. Bank of America
    361 F.3d 217 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

Mass Transit Admin. v. Granite Constr. Co.
57 Md. App. 766, 471 A.2d 1121 (Md. Ct. Spec. App. 1984) . . . . . . . . . . . . . . . . . . . . 11

McMahon v. New Castle Assocs.
    532 A.2d 601 (Del. Ch. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

P.F.C. Management Corp. v. Chomat (In re Chomat)
    216 B.R. 681 (Bankr. S.D. Fla. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Pinkert v. Oliveri, P.A.,
    No.CIV.A. 99-380, 2001 WL 641737
    (D. Del. May 24, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Public Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.
    722 F. Supp. 184 (D.N.J. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SEC v. Tiffany Indus., Inc.
    535 F. Supp. 1160 (E.D. Mo. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sterling v. Beneficial Nat'l Bank, N.A.
    No. 91C-12-005, 1994 WL 315365 (Del. Super. Ct. Apr. 13, 1994),
    aff'd, 650 A.2d 1307 (Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Unifoil Corp. v. Cheque Printers & Encoders Ltd.
    622 F. Supp. 268 (D.N.J. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Stanko,
    No.CIV.A. 92-7206, 1994 WL 136962 (E.D. Pa. Apr. 18, 1994),
    aff'd, 43 F.3d 1464 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Werwinski v. Ford Motor Co.
    286 F.3d 661 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Western Electric Co. v. Components, Inc.,
    C.A. No. 2820, 1970 WL 458 (Del. Ch. Dec. 7, 1970) . . . . . . . . . . . . . . . . . 11, 12

iv

## **STATUTES**

11 U.S.C.A. § 342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11 U.S.C.A. § 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C.A. § 542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

28 U.S.C.A. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

28 U.S.C.A. § 1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C.A. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

28 U.S.C.A. § 959 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **RULES**

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 18

Fed. R. Civ. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

## SUMMARY OF REPLY ARGUMENT

The contradictory Answering Brief submitted by Emerald Equipment Leasing, Inc. ("EMERALD") does not sustain its opposition to the Motion to Dismiss filed by Sea Star Line, LLC ("SEA STAR"). Despite EMERALD's protests this case is not "a 'core' proceeding." Moreover, the Counterclaim cannot survive scrutiny in light of governing precedent. Examination of the eight counts, each of which expressly incorporates all preceding paragraphs, discloses:

1.     The Equipment Rental Agreement "contains the entire agreement between the parties". No claim for breach of a prior "E-Mail Agreement" is permissible.

2.     Since the Equipment Rental Agreement covers the subject matter of EMERALD's claims, *quantum meruit* is unavailable.

3.     EMERALD has no claim for "turnover" relief.

4.     The Equipment Rental Agreement provides adequate legal remedies, precluding a claim for an equitable accounting.

5.     Arising solely from SEA STAR's alleged contractual duties, EMERALD's "tort" claims are not separate from and independent of the alleged breaches of contract and are proscribed by the economic loss doctrine.

6.     Even if EMERALD could plead tort claims, the Counterclaim does not satisfy Fed. R. Civ. P. 9(b) and 12(b)(6).

**REPLY ARGUMENT**

A fundamental flaw in the Answering Brief is that EMERALD's assertions ignore the Counterclaim as pled. Aside from its misstatements of "facts", the Answering Brief is noteworthy, not for what it says, but for what it does not say regarding SEA STAR's Motion to Dismiss. Moreover, EMERALD's allegations as to impertinent materials outside the four corners of its Counterclaim are immaterial.[1] *See* First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 116 (2d Cir. 1999) (ordinarily decision based "'on the four corners' of the pleadings, without reference to extraneous evidence"). Fed. R. Civ. P. 12(f) requires that the Court strike pages B-1 through B-24 of EMERALD's Appendix (D.I. 67) and all related arguments in the Answering Brief.

A.     **Standard of Review.**

Each of the eight counts in EMERALD's Counterclaim expressly incorporates the paragraphs in all preceding counts, including Count I, the breach-of-contract claim. A32-36, ¶¶ 22, 26, 29, 33, 39, 43, 49. Essentially the compensatory damage claims consist of "[r]ent due to Emerald" and "[l]oss incurred as a result of the loss, damage, theft or destruction of certain equipment." A31, ¶¶ 18(a), (b). The only documents attached to the Counterclaim are copies of the Equipment Rental Agreement and the "E-Mail Agreement". A30, ¶¶ 9, 11; A39-50.

In its Answering Brief, EMERALD states: "Sea Star now challenges the sufficiency of Emerald's Counterclaim raising various alleged technical shortcomings." D.I.

---

[1]For instance, issues as to EMERALD's continuing failure and refusal to remove equipment from Sea Star's premises in San Juan obviously are **not** "already encompassed by the within the litigation now pending before this Court". D.I. 66 at vii n.4.

66 at viii.[2]  Whatever this means, EMERALD concedes "that to consider Sea Star's Motion under Fed. R. Civ. P. 12(b)(6), the Court concentrates on the sufficiency of Emerald's Counterclaim not the ultimate merits of the case." D.I. 66 at x.  EMERALD also recognizes that the Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." D.I. 66 at 1, *quoting* Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

Disregarding these precepts, EMERALD persists in attempts to advance its version of the merits.  EMERALD invites the Court to ignore limitations imposed by Rule 12(b)(6), "[p]utting aside the bare bones legal argument offered by Sea Star, devoid of any factual context ...." D.I. 66 at 1.  Of course, the boundaries of the "factual context" must be the well-pled allegations in the Counterclaim, together with attached Exhibits, matters of public record, and documents integral to or explicitly incorporated by reference.  Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

### B.    Subject Matter Jurisdiction.

That the Equipment Rental Agreement is a maritime contract over which this Court has admiralty jurisdiction is not merely arguable.  *See* D.I. 57 at 6; D.I. 66 at x. Moreover, the Court would have "original but not exclusive jurisdiction of all civil proceedings...related to cases under Title 11." 28 U.S.C. §1334(b).  Neither 28 U.S.C. §157 nor 11 U.S.C. §542 confers federal jurisdiction.

Articulating the law of the case, the Bankruptcy Court has decided that the contract dispute between SEA STAR and EMERALD is "not a core proceeding" and "that a party that does business with a debtor-in-possession or trustee has the right to file suit

---

[2]References to "D.I." are to docket item numbers in the case file.

regarding that dispute in any jurisdiction."  A-ll [citing Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999), and 28 U.S.C. § 959].  To enforce the first-filed rule, the judge necessarily took cognizance of SEA STAR's Complaint and the "claims asserted by Sea Star against the Emerald estate".  *See* D.I. 66 at x.  The Florida district court's Order did not reject jurisdiction; transfer under 28 U.S.C. § 1404(a) mooted "[a]ll pending motions".  A20.

EMERALD does not try to differentiate the precedent cited in SEA STAR's Opening Brief [D.I. 57 at 7] yet contends this case is "a 'core' proceeding to be heard and determined by a bankruptcy court pursuant to 28 U.S.C. Sections 157(b)(2)(A)(C)(E) and (O)."  A28, ¶ 1.  Though the Answering Brief relies on 28 U.S.C. §§157(b)(2)(B) and (C) as basis for "core" jurisdiction [D.I. 66 at x], the Counterclaim does not mention subsection (b)(2)(B).  In any event, both provisions are inapplicable: SEA STAR has not filed a Proof of Claim against the EMERALD bankruptcy estate.  *E.g.,* J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In *re* J.T. Moran Fin. Corp.), 124 B.R. 931, 938-39 (S.D.N.Y. 1991); *see* 11 U.S.C.A. §501.

Paradoxically EMERALD notes:  "Actually, since this matter involves the Delaware Bankruptcy Court's 'related to' jurisdiction pursuant to 28 U.S.C. Section 1334, this case could be 'referred to' the Delaware Bankruptcy Court pursuant to this Court's standing order dated September 6, 2001."  D.I. 66 at x n.6.  In a non-core proceeding related to a case under Title 11,

> [t]he bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).  Why EMERALD would suggest referral without SEA STAR's express consent remains unexplained.  *See* 28 U.S.C. §§ 157(c)(2), (d).

      **C.**     **Contract Claims.**

          **1.**     **Breach of Contract (Count I).**

Refuting EMERALD's allegations as to the "E-Mail Agreement", terms and conditions of the Equipment Rental Agreement "cover equipment in use at various times commencing April 29, 2002."  A40.  Undisputably coverage commenced under the Equipment Rental Agreement before May 2, 2002, the date of the "E-Mail Agreement".  A39.  The Equipment Rental Agreement's integration paragraph provides in pertinent part:

> This Agreement is binding upon the parties and their respective legal representatives, successors and assigns.  This Agreement contains the entire agreement between the parties and... may not be amended, altered, or modified, except by writing signed by the party to be bound.

A48, ¶ 15(a).

To nullify the integration provision, EMERALD relies on <u>Bradney v. Sakelson</u>, 473 A.2d 189 (Pa. Super Ct. 1984), and <u>Franz Tractor Co. v. J.I. Case Co.</u>, 566 So.2d 524, 525 (Fla. Dist. Ct. App. 1990), both of which are legally and factually inapposite.  In contrast to the "E-Mail Agreement" and the Equipment Rental Agreement *sub judice*, <u>Bradney</u> found:

> The oral agreement, concerning the installation of the roof, was between Dennis Sakelson and an agent of the appellee.  The written termination agreement, which delineated the debts which each partner was to assume after the joint venture ceased, involved Dennis Sakelson, William Bradney and Ervin Bender.  **The termination agreement does not contain an integration clause, and does not encompass the same obligations as, nor involve the same parties that are**

     5

> **bound by, the oral agreement.** Under the circumstances, we can discern no intention by the parties that the oral contract merged into the termination agreement.

Bradney, *supra,* 325 Pa. Super. at 526, 473 A.2d at 192 (emphasis added).  Citing Bradney, a district court has said:

> To determine whether extrinsic evidence contradicts a final agreement, courts consider whether the subject matter of that evidence is covered by the subsequent writing.  If it is, the subsequent writing was meant to represent all of the transaction on that element.

United States v. Stanko, No.CIV.A. 92-7206, 1994 WL 136962, at *2 (E.D. Pa. Apr. 18, 1994)*, aff'd*, 43 F.3d 1464 (3d Cir. 1994) (attached as Ex. 1).

In Franz Tractor Co., a Florida appellate court observed "that the modification was different from and incidental to the dealer contract", that "references to the dealer contract in the modification indicate that the dealer contract was intended to remain distinct", and that a section "expressly provides that the modification is to be a 'supplement' to the dealer contract."  Franz Tractor Co., *supra,* 566 So.2d at 525.  Thus, no merger of the two contracts occurred.  *Id.* at 526; *see* Aly Handbags, Inc. v. Rosenfeld, 334 So.2d 124, 126 (Fla. Dist. Ct. App. 1976) (1968 contract merged into 1970 contract upon execution and was extinguished).  One aspect of Franz Tractor Co. is pertinent to the Counterclaim *sub judice.* The court said:  "Any exhibit attached to a pleading is part of the pleading for all purposes, and if an attached document negates a pleader's cause of action, the plain language of the document will control and may be the basis for a motion to dismiss."  Franz Tractor Co., *supra,* at 526 (citation omitted).

ARB (American Research Bureau), Inc. v. E-Systems, Inc., 663 F.2d 189 (D.C. Cir. 1980), undermines EMERALD's position. Like the "simply" stated integration paragraph in the Equipment Rental Agreement [D.I. 66 at 2], the integration clause in ARB read: "This Contract...constitutes the entire agreement between Buyer and Seller." ARB, supra, 663 F.2d at 198. The only reasonable interpretation was that "the written contract was 'intended...as a complete and exclusive statement of the terms of the agreement.'" Id. Giving effect to the clause also was consistent with non-UCC Maryland law. Id. The D.C. Circuit concluded:

> Here, the bulk of the evidence suggests that parties intended the written contract to be the complete and exclusive statement of the terms of their agreement. The length of the contract, its exhaustive detail, and the prolonged period of negotiations preceding its signing, collectively considered, support this conclusion.

Id. at 199; see Calomiris v. Woods, 353 Md. 425, 432, 727 A.2d 358, 361 (Md. 1999).

The Answering Brief omits mention of Sterling v. Beneficial Nat'l Bank, N.A., No. 91C-12-005, 1994 WL 315365 (Del. Super. Ct. Apr. 13, 1994), aff'd, 650 A.2d 1307 (Del. 1994) (attached as Ex. 2). Similar to the provisions in the ARB contract and the Equipment Rental Agreement sub judice, the integration clause construed in Sterling "states that the 'Agreement contains the entire understanding of the parties hereto with respect to the subject matter of the Agreement...and can be amended, modified or canceled only by a written instrument executed by all parties hereto'". Id., 1994 WL 315365, at *5 n.3. The court found that "[t]he language on the face of the Agreement is clear", which "further supports a refusal to consider extrinsic evidence for the purpose of determining the parties' obligations." Sterling, supra, 1994 WL 315365, at *5 & n.3.

7

Accepting any well-pled allegations as to EMERALD's breach-of-contract claim, the Equipment Rental Agreement was the lengthy "written agreement executed by Sea Star and Emerald" that "more formally documented" the parties' "leasing arrangement". A30, ¶ 11. Because the Equipment Rental Agreement expressly "contains the entire agreement between the parties", EMERALD has failed to state a claim for breach of any prior "E-Mail Agreement". Thus, the Court must dismiss Count I.

EMERALD's reliance on the Court of Chancery's opinion in <u>Lee Builders, Inc. v. Wells</u>, 92 A.2d 710 (Del. Ch. 1952), *rev'd*, 99 A.2d 620 (Del. 1953), must be an inadvertent error. Reversing the Court of Chancery's judgment, the Delaware Supreme Court stated:

> The effect of the extension agreement...was to wipe out any prior anticipatory breach of the contract by the defendants, or any action on their part which tended to prevent performance by the plaintiff of its obligation. Indeed, we think the plaintiff is precluded by its recital of facts from contending to the contrary.

<u>Wells v. Lee Builders, Inc.</u>, *supra,* 99 A.2d at 622. Likewise, <u>Jefferson Island Salt Mining Co. v. Empire Box Corp.</u>, 22 A.2d 106 (Del. Super. Ct. 1941), contravenes EMERALD's contentions. Determining that plaintiff properly based its cause of action on a second "final agreement of the parties", the court overruled a demurrer and repudiated the argument that "there is nothing in the exhibits attached to the declaration to support the allegation that the original contract had been abrogated". <u>Jefferson Island Salt Mining Co.</u>, *supra,* 22 A.2d at 108.

To rule the Motion is "premature" because SEA STAR "has not addressed any of the circumstances surrounding the formation of the Equipment Rental Agreement"

outside the four corners of the Counterclaim and attached Exhibits "or shown where or how the E-Mail Agreement is inconsistent with the Equipment Rental Agreement" would be unprecedented.  *See* D.I. 66 at 3.  The Equipment Rental Agreement speaks for itself. Certainly, the Counterclaim does not "assert that certain provisions of the Equipment Rental Agreement are either ambiguous or simply not applicable ...."  *Id.*  Thus, the parol evidence rule does not "permit this Court's consideration of the E-Mail Agreement and the parties conduct."  *Id.*

In this regard EMERALD's unilateral interpretation of "delivery" is immaterial.  *See id.*  Paragraph 1 of The Equipment Rental Agreement states:

> Delivery of all Equipment to Lessee or its agents by Lessor shall be effected and evidenced by signed and dated equipment interchange receipts and shall be subject to the terms and conditions of this Agreement.

A40, ¶ 1.  In pertinent part paragraph 5 provides:

> Lessor shall make the Equipment available for delivery to Lessee at the locations agreed by the parties.  The signature of Lessee's representative on an equipment interchange receipt shall constitute conclusive evidence that the Equipment to which the receipt relates has been delivered to Lessee.

A42, ¶ 5.  What EMERALD means by saying that "[i]n fact, none of the Emerald Equipment was 'delivered' to Sea Star" [D.I. 66 at 3] is incomprehensible, unless EMERALD is attempting to create an ambiguity where none exists.  "One may not argue ambiguity in one contractual term or clause in order to gain the admittance of extrinsic evidence to contradict other terms or clauses in the contract that are unambiguous".  Calomiris v. Woods, *supra,* 727 A.2d at 366.

Calomiris is on point.  "Under the parol evidence rule, [the Equipment Rental Agreement] 'discharges prior agreements,' thereby rendering legally inoperative communications and negotiations leading up to the written contract."  *Id.,* 727 A.2d at 361-62 (citation omitted).  Calomiris further reiterated "a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardship.'"  *Id.*, 727 A.2d at 368, *quoting* Canaras v. Lift Truck Serv., 322 A.2d 866, 873 (Md. 1974).

### 2. *Quantum Meruit* (Count II).

According to the Answering Brief, "Emerald's claims, under the theory of quantum meruit, are pled at this stage of the proceedings, in the alternative, to the extent, either the Equipment Rental Agreement or the E-Mail Agreement is deemed ineffective (in any regard) or not applicable, for any use of Emerald Equipment by Sea Star for which Sea Star has not compensated Emerald."  D.I. 66 at 4 (underlining in original).  Count II, which expressly "incorporates" the paragraphs in Count I "as fully as if set forth herein in their entirety" [A32, ¶ 22], cannot be an "alternative" to Count I.  Furthermore, EMERALD does not specify any "period" when the Equipment Rental Agreement might be ineffective or inapplicable.  D.I. 66 at 4; A32, ¶ 25.

In the context of its Counterclaim, EMERALD misconstrues County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 609 (Md. 2000), as recognizing an exception to the "general proposition that quantum meruit actions will not lie for matters covered by a written contract".  D.I. 66 at 5.  The passage

referenced in the Answering Brief concerns unjust enrichment, not *quantum meruit*; EMERALD has pled no claim based on unjust enrichment. In any event, Maryland courts have repudiated the notion that "[t]o the extent Sea Star may assert any defense claiming that it is not liable to Emerald for compensation for its use of Emerald Equipment pursuant to the E-Mail Agreement or the Equipment Rental Agreement, a claim for unjust enrichment under quantum meruit would properly lie." *Id.*; *see, e.g.*, Mass Transit Admin. v. Granite Constr. Co., 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984).

### 3. Turnover (Count III).

Count III is no more than an incorporating and a rephrasing of Count I. A33, ¶ 26. Clearly, EMERALD has stated no claim for "turnover" under 11 U.S.C. § 542. A33. Even though its reference to 11 U.S.C. § 342 may have been "merely a typographical error" or "an obvious oversight" [D.I. 66 at 6], EMERALD cannot amend its pleading to state a bankruptcy "turnover" claim. J.T. Moran Fin. Corp., *supra*, 124 B.R. at 938; *see* Beard v. Braunstein, 914 F.2d 434, 444-45 (3d Cir. 1990).

### 4. Accounting (Count IV [first]).

Again, explicitly incorporating its breach-of-contract claim, EMERALD nonetheless "requests an Order requiring that Sea Star provide to Emerald a full accounting of all Sea Star's usage of Emerald Equipment." A33, ¶ 29; A34. "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is...the absence of an adequate remedy at law." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962) (footnote omitted). Unlike this case, Western Electric Co. v. Components, Inc.,C.A. No. 2820,  1970 WL 458, at *3 (Del. Ch. Dec. 7, 1970) (attached as

Ex. 3), concerned "a complex effort to recover royalties due under a patent license agreement". The Court of Chancery declined to relinquish jurisdiction to a law court "at this juncture", explaining:

> [S]hould it be here decided that the defendant is required to pay such royalties, the Court will be required to consider the many provisions of the license agreement here in issue. Royalties due Plaintiffs will have to be computed for a period up to ten years at rates which have to be applied to the "net selling price," and such price will have to be computed by taking the gross selling price and deducting from it, trade discounts, packing costs, shipping costs, taxes and duties, insurance costs, etc., under the specific terms of the contract. In addition to this, interest must be computed on late payments.

Western Elec. Co., *supra,* 1970 WL 458, at *3 (citations omitted).

Subsequent Court of Chancery decisions have not adopted the Western Electric rationale. "Penetrat[ing] the facade of prayers", EMERALD seeks money damages for alleged past wrongs. International Business Machines Corp. v. Condisco, Inc., 602 A.2d 74, 85 (Del. Ch. 1991). Whether or not the alleged "self-billing accounts" are "complicated" or EMERALD could plead "independent torts" [D.I. 66 at 7-8], "[d]amage remedies exist to compensate for loss engendered by tort or contract breaches which have already occurred." *Id.* There is an adequate legal remedy, and the Court does not have equity jurisdiction. *Id.* (citations omitted); *see* McMahon v. New Castle Assocs., 532 A.2d 601, 605 (Del. Ch. 1987).

> **D.**    **"Tort" Claims (Count IV [second]-Count VIII).**

With respect to its "tort" claims, EMERALD is caught in contradiction. The Answering Brief asserts: "The Emerald Counterclaim pleads allegations of duties that arise

independent of the Equipment Rental Agreement and, as such, properly plead claims sounding in tort.  D.I. 66 at 8.  Nevertheless, the Counterclaim expressly incorporates not only EMERALD's breach-of-contract claim into each "tort" count but also EMERALD's "self-billing reports" allegations into Count I, as well as the other seven counts.  A30-36, ¶ ¶ 14, 15, 17, 22, 26, 29, 33, 39, 43, 49.  On the one hand, the Answering Brief alleges that "[t]he Equipment Rental Agreement is silent as to Sea Star's obligations to create self-billing reports" and that "[t]his undertaking was not made a part of the Equipment Rental Agreement."  D.I. 66 at 8, 9.  On the other hand, the Answering Brief notes: "Emerald and Sea Star entered into an agreement whereby Emerald would charge Sea Star for the usage of equipment (as measured by the amount of time each piece of equipment was used) based on the billing records provided by Sea Star."  *Id.* at 10 n.9.

### 1.    Independent Legal Duty/Economic Loss Doctrine.

SEA STAR's obligation to pay for use of Emerald Equipment arose out of, and was defined by, express terms of the Equipment Rental Agreement.  Any alleged duty to create self-billing reports existed solely by reason of and in relation to the Equipment Rental Agreement.  *See* Pinkert v. Oliveri, P.A., No.CIV.A. 99-380, 2001 WL 641737, at *5 (D. Del. May 24, 2001) (attached as Ex. 4).  Nowhere in the Counterclaim or the Answering Brief does EMERALD identify the source of an "independent duty imposed by law" on SEA STAR.  Clearly, Counts IV [second] through VIII are "undergirded by factual allegations identical to those supporting [EMERALD's] breach of contract counts."  Werwinski v. Ford Motor Co., 286 F.3d 661, 678 (3d Cir. 2002), *quoting* Public Serv. Enter. Group, Inc. v. Philadelphia Elec. Co., 722 F. Supp. 184, 201 (D.N.J. 1989).  EMERALD's "tort" claims

cannot survive.

      Contrasted with the Equipment Rental Agreement, which defines billing rates and delimits use requirements, the contract examined in <u>F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc.</u>, CIV.A.No. 92-3900, 1994 WL 594592 (D.N.J. Oct. 24, 1994) (attached as Ex. 5), "has no specific price term, and grants the shipyard broad latitude in carrying out repairs." *Id.* at *10. The district court recognized: "The Supreme Court has observed that the application of tort principles to what are in substance contract disputes creates the risk that 'contract law would drown in a sea of tort.'" *Id.*, *quoting* <u>East River S.S. Corp. v. Transamerica Delaval</u>, 476 U.S. 858, 866 (1986). Furthermore, the court agreed with <u>Unifoil Corp. v. Cheque Printers & Encoders Ltd.</u>, 622 F. Supp. 268 (D.N.J. 1985), that "fraudulent performance usually is best regarded as a breach of contract rather than a tort" but justified deviation from the rule on the ground that "the nature of this contract presents unique opportunities for fraud." <u>F/V Robins Nest</u>, *supra,* at *10. While the district judge allowed plaintiffs to pursue a fraud claim, he noted that "only those statements that plaintiffs actually relied upon through payment are actionable as fraud." *Id.* at *9 n.9.

      Even assuming that <u>F/V Robins Nest</u> could be precedent for a fraud claim in an unique situation, the Equipment Rental Agreement and the <u>F/V Robins Nest</u> contract obviously are not comparable. Moreover, the Counterclaim does not–and cannot–allege that EMERALD made any payments to SEA STAR. Neither North Carolina nor Virginia law applies to this case. *See* <u>Insteel Indus., Inc. v. Costanza Contracting Co.</u>, 276 F. Supp. 2d 479, 485-87 (E.D. Va. 2003).

      To fabricate a fiduciary relationship, EMERALD may not rely on <u>P.F.C.</u>

Management Corp. v. Chomat (In _re_ Chomat), 216 B.R. 681, 685 (Bankr. S.D. Fla. 1997),

and In _re_ Marchiando, 13 F.3d 1111 (7th Cir.), _cert. denied sub nom.,_ Illinois Dep't of

Lottery v. Marchiando, 512 U.S. 1205 (1994).  In Chomat the bankruptcy court held that an

insurance broker undertook no statutory or common law fiduciary duty to an insurer with

respect to collection and segregation of premium funds.  Chomat, _supra,_ at 685.  _Accord,_

Bennett v. Wright (In _re_ Wright), 282 B.R. 510, 515-16 (Bankr. M.D. Ga. 2002).   In

Marchiando the Seventh Circuit found that [t]he inequality of relation that calls for the

imposition of fiduciary duties is wholly absent."  Marchiando, _supra,_ 13 F.3d at 1116.

 McMahon v. New Castle Associates, _supra_, repudiates EMERALD's

fiduciary relationship theory.  In Delaware, "[c]hancery jurisdiction is not conferred by the

incantation of magic words."  McMahon, _supra,_ 532 A.2d at 603.  The Court of Chancery

dismissed a breach-of-fiduciary-duty claim predicated on alleged improper estimates of

electricity usage for billing purposes, saying:

> Here the relationship between the parties is a straightforward
> commercial relationship arising from contract.  It is in all of
> its aspects an arms-length relationship.  It involves no
> element of confidentiality or joint undertaking which
> sometimes extend chancery's concern to principals and
> agents or to co-venturers.  If plaintiff entered the lease
> agreement with an expectation of honest dealing on the part
> of defendant (which expectation, one imagines, attends every
> contractual undertaking) and now wishes to characterize that
> expectation as placing trust in defendant is beside the point.
> There is no basis in our developed law to accord that
> expectation the status of "special trust" that would render the
> legal remedy for breach of contract inadequate....
>
> ...Here the relationship is not "fiduciary" in the traditional
> sense; it is wholly commercial and recourse for violation of
> the duties assumed by the parties is, in my opinion, in the law
> court not in chancery.

McMahon, *supra,* 532 A.2d at 605 (citation omitted); *see* Cole v. Hartford Acc. & Indem. Co., 46 N.W.2d 811, 817 (Iowa 1951)("logical result of this argument would be that there would be a fiduciary relation between both parties to most transactions since it is seldom one does not have knowledge of the facts superior to the other").

   Finally EMERALD's attack on the economic loss doctrine must fail.  The doctrine "prohibits [EMERALD] from recovering in tort economic losses to which [its] entitlement flows only from a contract." Werwinski, *supra,* 286 F.3d at 671, *quoting* Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995). Immediately after the Werwinski reference quoted in the Answering Brief [D.I. 66 at 11-12], the Third Circuit elaborated as to the nature and scope of the "limited exception":

> The leading case is *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, ...in which a Michigan state appellate court recognized an exception for fraud-in-the-inducement claims, but only if the fraud is "extraneous to the contract," not "interwoven with the breach of contract." The court acknowledged that "[f]raud in the inducement presents a special situation where parties to a contract negotiate freely–which normally would constitute grounds for invoking the economic loss doctrine–but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior."... The court limited the exception for fraud-in-the-inducement claims, however, stating that "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods."...

Werwinski, *supra,* 286 F.3d at 676.  Quoted by EMERALD in regard to Florida law [D.I. 66 at 12], HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla. 1996), involved a fraud-in-the-inducement claim.  The Florida supreme court agreed with the Huron

analysis.  *Id.* at 1239-40.

2.        <b><u>Pleading Defects.</u></b>

Assuming *arguendo* that any of the alleged torts in EMERALD's Counterclaim could withstand substantive scrutiny, a fair reading reveals that Counts IV [second] through VIII would remain deficient.  *E.g.,* <u>Lum</u>, *supra,* 361 F.3d at 223-24; <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 783-84 & n.5 (4th Cir. 1999). This is not an SEC enforcement action.  If <u>SEC v. Tiffany Industries, Inc.</u>, 535 F. Supp. 1160 (E.D. Mo. 1982), could be persuasive precedent, however, the decision does not sustain EMERALD's position.  Regarding Fed. R. Civ. P. 9(b) requirements, the district court pointed out:

> The reference to "circumstances" is to matters such as the time, place, and contents of the false representations.  It is the pleading of these matters that apprise the defendant of the claim against him and the acts relied upon as constituting the fraud charge.

*Id.* at 1166 (citation omitted).  "Courts require the allegations in a complaint to specify objectionable transactions, state the time, place and content of financial statements, identify allegedly misleading statements and the respects in which they are false or inaccurate." *Id.* at 1166-67.

## CONCLUSION

Actually the Answering Brief buttresses SEA STAR's Rule 12(b)(6) Motion. EMERALD's efforts to explain the Counterclaim confirm that EMERALD legitimately can plead only a breach-of-contract claim, premised on the Equipment Rental Agreement.  As the Answering Brief discloses, EMERALD cannot state *quantum meruit*, turnover, accounting, or tort counterclaims.  Therefore, SEA STAR respectfully requests that the Court dismiss Count I of the Counterclaim without prejudice and all other counts with prejudice.

June 10, 2005                    SMITH, KATZENSTEIN & FURLOW, LLP

                                 /s/ Kathleen M. Miller
                                 Kathleen M. Miller (I.D. No. 2898)
                                 800 Delaware Avenue, 7th Floor
                                 P.O. Box 410
                                 Wilmington, DE  19899
                                 Phone: (302) 652-8400
                                 Fax: (302) 652-8405
                                 E-mail: KMiller@skfdelaware.com
                                 Attorneys for Sea Star Line LLC

OF COUNSEL:
Charles C. Robinson
Garvey Schubert Barer
1191 Second Avenue, #1800
Seattle, WA 98101-2939
Telephone:  206.816.1451
Facsimile:  206.464.0125

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Miami, FL 33134
Telephone: 305-444-3355
Fax: 305-442-4300

10003639.WPD