IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEA STAR LINE, LLC, a limited      :
liability company,                 :
                                   :
              Plaintiff,           :
                                   :
        v.                         :   Civ. Act. No. 05-245-JJF
                                   :
EMERALD EQUIPMENT LEASING, INC.,   :
a corporation,                     :
                                   :
              Defendant.           :

---

Kathleen M. Miller, Esquire of SMITH, KATZENSTEIN & FURLOW, LLP,
Wilmington, Delaware.
Of Counsel:  Charles C. Robinson, Esquire of GARVEY SCHUBERT
BARER, Seattle, Washington.
Timothy J. Armstrong, Esquire of ARMSTRONG & MEJER, P.A., Coral
Gables, Florida.
Attorneys for Plaintiff.

Bradford J. Sandler, Esquire and Jonathan M. Stemerman, Esquire
of ADELMAN LAVINE GOLD AND LEVIN, A Professional Corporation,
Wilmington, Delaware.
Of Counsel:  Gary M. Schildhorn, Esquire and Alan I. Moldoff,
Esquire of ADELMAN LAVINE GOLD AND LEVIN, A Professional
Corporation, Philadelphia, Pennsylvania.
Attorneys for Defendant.

---

**MEMORANDUM OPINION**

January 26, 2006
Wilmington, Delaware

*Joseph J. Farnan, Jr.*

**Farnan, District Judge.**

Pending before the Court is a Motion To Dismiss Emerald Equipment Leasing, Inc.'s Counterclaim (D.I. 56) filed by Plaintiff, Sea Star Line, LLC ("Sea Star"). For the reasons discussed, Sea Star's Motion To Dismiss will be granted with respect to Count I of the Counterclaim to the extent it alleges a breach of the E-Mail Agreement, Count II pertaining to quantum meruit, Count III alleging turnover to the extent that rent is sought, and Counts V through VIII alleging tort claims for failure to plead in accordance with the requirements of Federal Rule of Civil Procedure 9(b). The Motion To Dismiss will be denied in all other respects. Emerald Equipment Leasing, Inc. will be granted leave to file an Amended Counterclaim.

**BACKGROUND**

On March 1, 2004, Sea Star filed a Complaint against Defendant, Emerald Equipment Leasing, Inc. ("Emerald"), in the United States District Court for the Middle District of Florida seeking declaratory judgment as to the parties' rights and liabilities under an Equipment Rental Agreement dated September 28, 2002 (the "Equipment Rental Agreement"). Sea Star also asserted claims for breach of other maritime contracts and for money owed as a result of goods delivered and services provided to Emerald.

1

Emerald is a debtor-in-possession in a pending Chapter 11 case in the United States Bankruptcy Court for the District of Delaware.  Unaware of the action Sea Star filed in the Middle District of Florida, Emerald filed an adversary proceeding against Sea Star in the United States Bankruptcy Court for the District of Delaware on March 17, 2004.  In the adversary proceeding, Emerald asserted claims against Sea Star based on the Equipment Rental Agreement for (1) post-petition account receivable/breach of lease, (2) post-petition quantum meruit, (3) turnover/conversion, and (4) accounting.  Sea Star moved to dismiss, stay or abate the adversary proceeding.

The Bankruptcy Court held a hearing on May 27, 2004, and concluded that Emerald's adversary proceeding was a non-core proceeding and that the Bankruptcy Court had "related to" jurisdiction over the action.  D.I. 59 at A11.  However, the Bankruptcy Court acknowledged that under 28 U.S.C. § 959, concomitant jurisdiction existed with the federal district court, because a party doing business with a debtor-in-possession has the right to file suit regarding that dispute in any jurisdiction.  Id.  For purposes of its decision, the Bankruptcy Court assumed that the Florida District Court had jurisdiction, and the Bankruptcy Court applied the "first filed rule" to conclude that the adversary proceeding should be dismissed.  Id. at A12.  However, the Bankruptcy Court's dismissal was without

2

prejudice so that "if the Florida Court determines that it doesn't have jurisdiction or its action should be dismissed, the debtor is free to file here." Id. at A13.

In the meantime, in the Florida action, Emerald had moved to dismiss the Complaint, to transfer venue or to abstain.  Emerald disputed the Florida District Court's jurisdiction on the grounds that a declaratory judgment was inappropriately sought by Sea Star because the Equipment Rental Agreement had been terminated. The Florida District Court concluded that this case should be transferred to Delaware, primarily because Sea Star's Complaint references proceedings that took place in the Delaware Bankruptcy Court, the Delaware Bankruptcy Court was familiar with the parties, and Emerald is a debtor undergoing reorganization in the Delaware Bankruptcy Court.  D.I. 59 at A18-19.

On April 25, 2005, Emerald filed an Answer, Affirmative Defenses and Counterclaim in this action.  D.I. 53.  Emerald admits jurisdiction under 28 U.S.C. § 1333 (admiralty jurisdiction), but denies federal jurisdiction under 28 U.S.C. §§ 1337 (commerce and antitrust regulations) and 1367 (supplemental jurisdiction).  Emerald asserts a Counterclaim against Sea Star alleging eight causes of action:  (1) post-petition account receivable/breach of lease, (2) post-petition quantum meruit, (3) turnover, (4) accounting, (5) fraud, (6) constructive fraud, (7) fraudulent concealment, and (8) negligent

misrepresentation/breach of fiduciary duty.  Emerald contends
that the Court has jurisdiction over its counterclaims pursuant
to 28 U.S.C. §§ 1334 (original jurisdiction of bankruptcy cases
in the district court) and 157 (referral to bankruptcy court of
cases arising under or related to a case under Title 11) and 11
U.S.C. § 542 (turnover of property to the estate).  Emerald also
contends that this action is a "core" proceeding that should be
heard and determined by the Bankruptcy Court under 28 U.S.C. §
157(b)(2)(A),(C),(E) and (O).[1]  D.I. 53, Counterclaim at ¶ 1.

---

[1]     Core proceedings include, but are not limited to:

> (A) matters concerning the administration of
> the estate;
>
> \* \* \*
>
> (C) counterclaims by the estate against
> persons filing claims against the estate;
>
> \* \* \*
>
> (E) orders to turn over property of the
> estate;
>
> \* \* \*
>
> (O) other proceedings affecting the
> liquidation of the assets of the estate or
> the adjustment of the debtor-creditor or the
> equity security holder relationship, except
> personal injury tort or wrongful death claims
> . . . .

28 U.S.C. § 157(b)(2)(A), (C), (E) and (O).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs Sea Star's Motion To Dismiss Emerald's Counterclaim.  The purpose of a motion to dismiss is to test the sufficiency of a complaint, or in this case, a counterclaim, and not to resolve disputed facts or decide the merits of the case.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  When considering a motion to dismiss, a court must accept as true all allegations in the counterclaim and must draw all reasonable factual inferences in the light most favorable to the non-moving party.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994).  The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." Kost, 1 F.3d at 183.  Dismissal is only appropriate when it appears beyond doubt that the movant can prove no set of facts in support of its claims entitling it to relief.  Conley v. Gibson, 355 U.S. 41, 45 (1957).  The burden of demonstrating that the counterclaim fails to state a claim upon which relief may be granted rests on the movant.  Young v. West Coast Industrial Relations Assoc., Inc., 763 F. Supp. 64, 67 (D. Del. 1991) (citations omitted).

As a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss. However, a court may consider "document[s] integral to or

5

explicitly relied upon" in the pleadings without converting a
motion to dismiss to a motion for summary judgment.  In re
Rockefeller Center Properties, Inc. Securities Litigation, 184
F.3d 280, 287 (3d Cir. 1999).

### DISCUSSION

As a threshold matter, Emerald appears to raise a
jurisdictional issue.  Specifically, Emerald contends that this
case implicates the "core" jurisdiction of the Bankruptcy Court
and that this case should be referred to the Bankruptcy Court
under the Bankruptcy Court's "related to" jurisdiction under 28
U.S.C. § 1334.  D.I. 66 at X (discussing core jurisdiction) & n.6
(requesting referral to the Bankruptcy Court).  Emerald contends
that its counterclaim is a "core" matter, because it is a
"counterclaim by the estate against persons filing claims against
the estate" under 28 U.S.C. § 157(b)(2)(C).

In response, Sea Star contends that the Court should not
refer this case to the Bankruptcy Court under its "related to"
jurisdiction because Sea Star did not consent to that
jurisdiction.  In addition, Sea Star contends that the Bankruptcy
Court already concluded that this matter was "non-core" when it
dismissed Emerald's adversary proceeding, and in any event, Sea
Star has not filed a proof of claim against Emerald, and
therefore, core jurisdiction under 28 U.S.C. § 157(b)(2)(C) is
not implicated.

A proceeding is a core proceeding, if it invokes a substantive right provided by Title 11 or is a proceeding, which by its nature, could only arise in the context of a bankruptcy case. Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). The Bankruptcy Court has already concluded that similar claims alleged by Emerald in the context of its adversary proceeding were "non-core." However, Emerald contends that the Bankruptcy Court's decision should not be considered the law of the case, because that decision was made in a different procedural context. Specifically, Emerald contends that the Bankruptcy Court was only dealing with claims made by Emerald against Sea Star based on post-petition activities when it addressed Emerald's adversary proceeding. In contrast, Emerald contends that this case now involves claims asserted by Sea Star against the Emerald estate, and therefore, the proceeding is core under Section 157(b)(2)(C). However, Emerald has not advanced any case law supporting its assertion that its Counterclaim is core.

In considering the question of core jurisdiction under Section 157(b)(2)(C), it appears to the Court that the case law involves situations in which the debtor has filed a counterclaim in response to a proof of claim filed by a creditor. Sea Star has not filed a proof of claim against Emerald in the Bankruptcy Court, and therefore, the Court is not persuaded that Section 157(b)(2)(C) is applicable here. In addition, the Court notes

7

that the exercise of "related to" jurisdiction is not mandated in this case, particularly where, as here, Sea Star has not consented to such jurisdiction.  28 U.S.C. § 157(c)(2), (d).[2] However, the Court does have subject matter jurisdiction over this action, because it arises in connection with a maritime contract over which this Court has admiralty jurisdiction. Indeed, the parties agree that the exercise of the Court's

---

[2]      In pertinent part, 28 U.S.C. § 157(c)(2) and (d) provides:

> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

jurisdiction is appropriate under 28 U.S.C. § 1333.  D.I. 53,
Counterclaim at ¶ 1; D.I. 57 at 1, 6.  Accordingly, the Court
declines to refer this case to the Bankruptcy Court as requested
by Emerald in Footnote 6 of its Answering Brief.

**I.   Whether Emerald's Counterclaims Based On Contract Law State
       A Claim Upon Which Relief May Be Granted**

   A.   Emerald's Counterclaim for Breach of Contract

In Count I of its Counterclaim, Emerald alleges that Sea
Star breached its obligations under two agreements:  (1) the E-
Mail Agreement, and (2) the Equipment Rental Agreement.  Emerald
contends that Sea Start failed to pay Emerald rent due for the
use of the equipment and for the loss incurred as a result of
damage, theft, destruction or other loss of the equipment.
Emerald contends that its Counterclaim appropriately refers to
breach of the E-Mail Agreement, because the parties operated
under the E-Mail Agreement for more than five months while the
formal Equipment Rental Agreement was being finalized.  To the
extent Sea Star seeks dismissal of its Counterclaim based on the
E-Mail Agreement, Emerald contends that such a claim is
premature, because there has been no factual development
regarding whether the parties intended the Equipment Rental
Agreement to supersede and cancel the E-Mail Agreement.

Sea Star contends that dismissal of Emerald's Counterclaim
as it applies to the E-Mail Agreement is appropriate in light of
the Integration Clause contained in the Equipment Rental

9

Agreement.  Although executed on July 31, 2002, the Equipment Rental Agreement indicates that it "cover[s] equipment in use at various times commencing April 29, 2002."  A40.  The E-Mail Agreement did not commence until May 2, 2002, and thus, Sea Star contends that the Equipment Rental Agreement supersedes the E-Mail Agreement.  Sea Star also contends that extrinsic evidence is not required to determine the parties' intent, because the Equipment Rental Agreement is clear, and therefore, parol evidence is inadmissible.

The parties appear to agree that Maryland law governs the contracts at issue.  D.I. 57 at 8; D.I. 66 at n.7.  In determining whether a contract is ambiguous, Maryland law uses an "objective interpretation of contracts."  Calomiris v. Woods, 727 A.2d 358, 363 (Md. 1999).  Under this view, a written contract is ambiguous if it is susceptible to more than one meaning when it is read by a reasonably prudent person.  Id.  The determination of whether language is susceptible to more than one meaning includes a consideration of "'the character of the contract, its purpose and the fact and circumstances of the parties at the time of execution.'"  Id. (citations omitted).  The test for whether the contract is plain and unambiguous is "not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."  Id. (citations omitted).  Prior evidence of the parties' intentions

and negotiations is not admissible; however, the court may

consider the context of the transaction or the custom of the

trade in determining whether an ambiguity exists.   Id.

In its Counterclaim, Emerald makes the following allegations

regarding the E-Mail Agreement:

> 9.   . . . [O]n or about May 1, 2002, Sea Star and
> Emerald entered into an agreement (the "E-Mail
> Agreement" attached hereto as Exhibit "A"), whereby Sea
> Star agreed to lease Emerald equipment previously
> leased by Emerald to NPR.
>
> 10.   The E-Mail Agreement was effective as of May
> 1, 2002 and was applicable to any cargo worthy Emerald
> equipment, which Sea Star dispatched out of any port
> terminal or inland depot for customer use at agreed
> upon per diems (the "Emerald Equipment").
>
> 11.   Sea Star used the Emerald Equipment pursuant
> to the E-Mail Agreement for a number of months, before
> the leasing arrangement was more formally documented in
> a written agreement executed by Sea Star and Emerald in
> the later part of September, 2002 (the "Equipment
> Rental Agreement" attached hereto as Exhibit "B").

D.I. 53, Counterclaim at ¶ 9-11 (emphasis added).

Reviewing Emerald's allegations in light of the terms of the

Equipment Rental Agreement which is attached to the pleadings,

the Court concludes that Emerald has failed to state a claim for

breach of the E-Mail Agreement.   The Equipment Rental Agreement

"cover[s] equipment in use at various times commencing April 29,

2002."  D.I. 53, Exh. B at introductory paragraph.   It also

contains an Integration Clause which states that "[t]his

Agreement contains the entire agreement between the parties and

subject to the provisions of section 1, may not be amended,

11

altered, or modified, except by a writing signed by the party to
be bound." Id., Exh. B at ¶ 15(a).  Based on this language, the
Court concludes that a reasonable person reading the Equipment
Rental Agreement would not find any ambiguity in its terms.   The
Equipment Rental Agreement covers the period for which the E-Mail
Agreement had applied, and as Emerald acknowledges, the Equipment
Rental Agreement constituted the parties more formal
documentation of the earlier E-Mail Agreement.  Id. at ¶ 11.

Emerald contends that extrinsic evidence is required to
determine the parties' intent as to whether the Equipment Rental
Agreement was meant to supersede the E-Mail Agreement, because
the Equipment Rental Agreement does not expressly reference the
E-Mail Agreement.  Relying on Bradney v. Sakelson, 473 A.2d 189,
199 (Pa. Super. 1984) and Franz Tractor Co. v. J.I. Case Co., 566
So.2d 524 (Fla. App. 2 Dist. 1990), Emerald contends that factual
discovery is needed because the doctrine of integration turns on
the parties' intentions.  In the Court's view, however, both
Bradney and Franz are distinguishable from the circumstances in
this case.  As the court in Bradney noted, the termination
agreement at issue did not contain an integration clause, did not
encompass the same obligations and did not involve the same
parties that were bound by the oral agreement.  473 A.2d at 192.
In light of these circumstances, the Bradney court concluded that

they could not discern any intention by the parties that the oral contract be merged into the termination agreement.  Id.

Similarly, in Franz Tractor Co., the court concluded that a modification contract was not merged into the dealer contract, because references in the modification to the dealer contract demonstrated that the parties intended the two agreements to remain separate.  In addition, the modification expressly provided that it was to "supplement" the dealer contract.  566 So. 2d at 526.

In this case, the Court concludes that extrinsic evidence is not required to illuminate the meaning of the Equipment Rental Agreement because it is not ambiguous when viewed from the standpoint of a reasonable person.  Unlike the circumstances in Bradney and Franz, the Equipment Rental Agreement here covers the same subject matter as the E-Mail Agreement for the same time period that the E-Mail Agreement had been in effect.  As Emerald acknowledges in its Counterclaim, the Equipment Rental Agreement was the parties' formal documentation of the leasing arrangement that had existed previously under the E-Mail Agreement.  Further, the Equipment Rental Agreement has an Integration Clause expressing the parties' intent that the Equipment Rental Agreement be "the entire agreement between the parties."  See e.g., ARB (American Research Bureau), Inc. v. E-Systems, Inc., 663 F.2d 189 (D.C. Cir. 1980) (applying Maryland law and

concluding that written contract was intended to be exclusive statement of the parties' agreement based primarily on presence of an integration clause).  In these circumstances, the Court concludes that extrinsic evidence is not required to determine the meaning of the Equipment Rental Agreement, and Emerald cannot maintain its Counterclaim to the extent that it alleges a breach of the E-Mail Agreement because the E-Mail Agreement was subsumed by the Equipment Rental Agreement entered into by the parties. Calomiris, 727 A.2d at 361-362 (recognizing that "[u]nder the parol evidence rule, a written agreement 'discharges prior agreements' thereby rendering legally inoperative communications and negotiations leading up to the written contract.") (quoting Restatement (Second) of Contracts § 213 (1979)).  Accordingly, the Court will grant Sea Star's motion to the extent that it seeks dismissal of Emerald's claim alleging breach of the E-Mail Agreement.[3]

---

[3]     Emerald also directs the Court to two Delaware cases for the proposition that "a new contract relating to the subject matter of a former agreement does not destroy the obligations of the former agreement, except as it is inconsistent therewith, unless it is shown that the parties intend that the new contract supersede the old contract entirely."  D.I. 66 at 2 (citing Lee Builders, Inc. v. Wells, 92 A.2d 710, 715 (Del. Ch. 1952); Jefferson Island Salt Min. Co. v. Empire Box Corp., 23 A.2d 106 (Del. Super. 1941)).  However, Delaware law does not govern the contract at issue here.

14

B.   Emerald's Counterclaim For Quantum Meruit

In Count II of its Counterclaim, Emerald alleges a claim for post-petition quantum meruit.  Emerald alleges that Sea Star has used Emerald's property and has failed to compensate Emerald for that use resulting in harm to Emerald and actual material gain to the benefit of Sea Star.  Emerald seeks damages under the theory of quantum meruit, to the extent that Sea Star's use of Emerald's equipment occurred during any period not covered by the written lease agreement.  Thus, Emerald contends that its quantum meruit claim is properly pled in the alternative to its contract claim.

Sea Star contends that dismissal of Emerald's quantum meruit claim is warranted.  Sea Star contends that Count II is not properly pled in the alternative to Count I, because it expressly "incorporates" the paragraphs of Count I, "as fully as if set forth herein in their entirety."  D.I. 53, Counterclaim at ¶ 22. Sea Star further contends that quantum meruit does not apply for matters covered by a written contract, and Emerald has failed to allege any time period for which the Equipment Rental Agreement would not have applied.

Under Maryland law, quantum meruit is not available "when there is an express contract dealing specifically with the services rendered."  See e.g., First Nat'l Bank v. Burton, Parsons & Co., 470 A.2d 822, 829 (Md. Ct. Spec. App. 1984). Emerald contends that an action for quantum meruit may

appropriately lie if Sea Star contends that it is not liable to Emerald for compensation under the written agreement.  However, Maryland courts have rejected the use of quantum meruit in such circumstances.  As the Court in <u>Mass Transit Admin. v. Granite Constr. Co.</u>, 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984) stated:

> The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.  The reason for this rule is not difficult to discern.  When parties enter into a contract they assume certain risks with an expectation of a return. <u>Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated.  As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.</u>

(emphasis added).

In this case, Emerald has pled the existence of a written contract governing its claims, and the contract contains an integration clause.  <u>County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.</u>, 747 A.2d 600, 607-608 (Md. 2000); <u>see also</u> <u>Wal-Mart Stores, Inc. v. AIG Life Ins. Co.</u>, 872 A.2d 611, 620 (Del. Ch. 2005) (recognizing that dismissal of quantum meruit claim is appropriate where it is clear from face of complaint that written contract exists and controls).  Accordingly, the Court will dismiss Count II of the Complaint alleging recovery under the theory of quantum meruit.

C.   Emerald's Counterclaim For Turnover

In Count III of its Counterclaim, Emerald alleges a claim for turnover pursuant to 11 U.S.C. § 342.  In its briefing, Emerald alleges that its reference to Section 342 is a typographical error, and that the appropriate reference should be to 11 U.S.C. § 542.  Emerald contends that Section 542 permits it to seek the return of the equipment or the value of the equipment, and therefore, it has appropriately alleged a claim for turnover.

Sea Star contends that dismissal of Count III is warranted, because Count III alleging turnover is essentially a rephrasing of Count I's breach of contract allegations.  Specifically, Sea Star contends that Emerald does not demand turnover of the equipment, but only "damages equaling unpaid rent, and the value of the equipment together with interest and costs of suit."

In its Counterclaim, Emerald does not specify under which paragraph of Section 542 it is seeking relief.  However, in its briefing it asserts Section 542(a).  It appears to the Court, that two paragraphs of Section 542 may be applicable, paragraph (a) and paragraph (b).  In full, 11 U.S.C. § 542(a) and (b) provides:

> (a)  Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver

17

to the trustee, and account for, such property <u>or the</u>
<u>value of such property</u>, unless such property is of
inconsequential value or benefit to the estate.

(b)   Except as provided in subsection (c) or (d) of
this section, an entity that owes a debt that is
property of the estate and that is matured, payable on
demand, or payable on order, shall pay such debts to,
or on the order of the trustee, except to the extent
that such debt may be offset under section 553 of this
title against a claim against the debtor.

(emphasis added).

To the extent Emerald seeks rent in its claim for turnover,

the Court concludes that Emerald fails to state a claim for

turnover.  Under Section 542(b), turnover is required for amounts

that are "matured, payable on demand, or payable on order."

Active disputes over the amount owed take an action outside the

realm of a turnover action.  See <u>J.T. Moran Fin. Corp. v.</u>

<u>American Consol. Fin. Corp.</u>, 124 B.R. 931, 938 (S.D.N.Y. 1991)

("Where as here, the court must resolve whether or not the debt

claimed is due, the action to collect the disputed funds cannot

be regarded as a turnover proceeding under the core jurisdiction

of the bankruptcy court."); <u>In re Teligent, Inc.</u>, 325 B.R. 134,

137-138 (Bankr. S.D.N.Y. 2005) (recognizing that turnover

provisions cannot be used to liquidate contract disputes or

demand assets whose title is in dispute and collecting cases).

Rather, the action is simply a claim for breach of contract.  <u>In</u>

<u>re National Audit Defense Network</u>, 332 B.R. 896 (Bankr. D. Nev.

2005) ("Settled and controlling law holds that the presence of an

18

active dispute over the amount owed takes the action out of the turnover area; one cannot shortcut a breach of contract action with a turnover demand."). In this case, it appears to the Court that the rental amount is in dispute, and therefore, the Court concludes that a turnover action is not properly sustained as to the rental amounts.

However, Emerald also alleges that Sea Star has failed to return numerous chassis, gen sets and containers under the Equipment Rental Agreement. The Equipment Rental Agreement does not give Sea Star any title, ownership or property rights in this equipment, and pursuant to paragraph 10 of the Equipment Rental Agreement, Sea Star is required to redeliver the equipment to certain locations identified in the contract or agreed to by the parties. The Court understands Sea Star to base its motion to dismiss this claim on the sole fact that Emerald seeks the value of the Equipment rather than the return of the Equipment itself. However, the Equipment Rental Agreement provides that if the equipment is not returned within 60 days, Emerald may elect to treat the Equipment at a loss and seek the value of the equipment, together with all accrued rental charges. Further, it appears that Section 542(a) permits Sea Star to seek the value of the equipment, and not just the return of the equipment, in a turnover action. In light of the express language of both the applicable contract and Section 542(a), Sea Star has not

explained why dismissal of this Count is warranted.  Accordingly, the Court concludes at this juncture, that Emerald has pled a claim for turnover to the extent that it seeks the value of certain property belonging to Emerald which Sea Star is alleged to have failed to return.

      D.   Emerald's Counterclaim For An Accounting

In Count IV of its Counterclaim, Emerald seeks an accounting of all Sea Star's usage of Emerald's equipment.  Emerald contends that an accounting is a proper remedy regardless of whether this action is an action at law or equity, because the accounts are complex and Sea Star had a fiduciary relationship with Emerald as a result of Sea Star's obligation to produce self-billing reports.

Sea Star seeks dismissal of this claim contending that the equitable relief of an accounting is not appropriate because there is an adequate remedy at law for Emerald, namely the recovery of money damages.  Because Emerald's counterclaim seeks damages for breach of contract, and such damages are an adequate remedy at law, Sea Star contends that the Court lacks equity jurisdiction to award an accounting.

"The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."  Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962).  Whether equitable

jurisdiction should be exercised is a decision committed to the sound discretion of the Court.  1 Am. Jur. 2d, Accounts and Accounting § 54 (1994 & Supp. 2002).

Actions for an accounting are not available when the amount in question is readily ascertainable; however, such an action may be maintained when the facts create a reasonable doubt as to whether an adequate remedy at law may be obtained.  Id. Equitable jurisdiction for an accounting is typically invoked in three circumstances:  "(1) there is a fiduciary relationship between the parties, accompanied by a duty on the part of the defendant to render an account; (2) there are mutual accounts, or, if the account is all on one side, the account is complicated; and (3) there is a need for discovery."  Id.  An action for an accounting may also be appropriate when there are allegations of fraud.  Id.

At this juncture, Emerald has alleged that Sea Star had an obligation to produce self-billing reports which created an independent fiduciary relationship.  Emerald has also alleged that Sea Star has used over 5,000 pieces of Emerald equipment and that the information regarding Sea Star's use of this equipment is only within the knowledge of Sea Star.  Given the complexities alleged by Emerald as a result of Sea Star's self-billing, the apparent need for discovery, and the allegations of fraud and a fiduciary relationship, all of which must be taken as true at

21

this juncture, the Court declines to dismiss Emerald's claim for
an accounting.

## II.  Whether Emerald's Counterclaims Based On Tort Law State A Claim Upon Which Relief May Be Granted

In Counts V through VIII of its Counterclaim, Emerald
alleges fraud (Count V)[4], constructive fraud (Count VI),
fraudulent concealment (Count VII), and negligent
misrepresentation/breach of fiduciary duty (Count VIII).  Sea
Star contends that these claims should be dismissed, because
Emerald's tort claims do not exist independently, but instead are
woven into the contract.  Sea Star contends that the economic
loss doctrine prohibits Emerald from recovering in tort, because
its economic losses flow only from Sea Star's alleged breaches of
a contract.  Sea Star also contends that, even if Emerald's tort
claims withstand dismissal under the economic loss doctrine, the
allegations of fraud are not pled with particularity as required
by Federal Rule of Civil Procedure 9(b), and therefore, dismissal
of Emerald's tort claims is warranted.

In response, Emerald contends that the Equipment Rental
Agreement is silent as to Sea Star's obligations to create self-
billing reports.  Emerald further contends that it was not
notified when Sea Star began using a piece of Emerald Equipment

---

[4]     The Counterclaim refers to the fraud count as Count IV,
but this appears to be an error.  Given the sequence of the other
counts asserted, the fraud count should be labeled Count V.

and no receipt or document was required to be executed in order for Sea Star to begin using that equipment.  Because Emerald was relying on Sea Star's honesty to report its usage of equipment, Emerald contends that the circumstances were rife with the opportunity for fraud.  Emerald contends that Sea Star took advantage of this self-billing to under-report its usage of Emerald's equipment.  Emerald also contends that this self-billing arrangement resulted in a fiduciary relationship between the parties created based on the "relationship of inequality" between the parties.  Specifically, Emerald contends that it placed particular reliance and confidence in Sea Star to report its usage accurately.

As for Sea Star's arguments under Rule 9(b), Emerald contends that its counterclaim is properly pled.  However, Emerald contends that, to the extent the Court concludes that further particularity is required, Emerald should have the opportunity to amend its Counterclaim.[5]

---

[5]      As a threshold matter, the parties have not specifically alleged which state's substantive law applies to Emerald's tort claims.  Sea Star alleges that the claims are non-maritime, and therefore, Delaware's conflict of law rules apply to determine which state's substantive law applies.  Although Sea Star identifies the "most significant relationship test" as the appropriate test, it is unclear which state Sea Star alleges has the most significant relationship to the occurrences and the parties.  In a footnote, Emerald alleges that federal common law should apply, because courts sitting in admiralty strive for uniformity.  In the alternative, Emerald identifies Delaware choice of law rules and contends that the law of the place of injury would apply, because this is a diversity action.  However,

23

A.   <u>Whether Emerald Has Pled Torts Existing Independently</u>
     <u>From The Contract</u>

Stated generally, the economic loss doctrine prohibits a
party from recovering in tort economic losses, the entitlement of
which, flows only from a contract.  <u>Werwinski v. Ford Motor</u>
<u>Company</u>, 286 F.3d 661, 671 (3d Cir. 2002) (predicting how the
Pennsylvania Supreme Court would rule on the viability of the
economic loss doctrine).  It appears to the Court that the
formulation of the economic loss doctrine varies depending on
which state law applies.  For example, under Delaware law, the
economic loss doctrine "'prohibits recovery in tort where a
product has damaged only itself (i.e., has not caused personal
injury or damage to other property) and, the only losses suffered
are economic in nature.'"  <u>Pinkert v. Olivieri</u>, 2001 WL 641737,
*5 n.6 (D. Del. May 24, 2001) (quoting <u>Danforth v. Acorn</u>
<u>Structures, Inc.</u>, 608 A.2d 1194, 1195 (Del. 1992)).  However,
Delaware courts have also recognized that "where an action is
based entirely on a breach of the terms of a contract between the

———————————————

it is also unclear which state Emerald alleges as the specific
place of injury.

        In the Court's view, the choice of law issue is not
sufficiently briefed for the Court to make a final decision as to
which law applies to the tort claims in this case.  The parties
cite case law from Florida, Virginia, Iowa, Georgia, Delaware and
New Jersey.  Accordingly, at this juncture, the Court will work
within the confines of the law that has been presented in the
briefing to make a determination as to whether Emerald's claims
can withstand a motion to dismiss.

parties and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." Id. at *5 (dismissing fraud claims where plaintiff alleged that defendants knowingly misrepresented the nature of their work each time they submitted an application and certification for payment where duty to submit these periodic payment applications existed solely by reason of construction contract and defendant had not violated any common law duty independent of the construction contract).

Exceptions to the economic loss doctrine have also been recognized where the claim arises independently from the contract. See e.g., HTP, Ltd. v. Lineas Aereas Constarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996). Further, in the case of allegations of fraud resulting from circumstances involving self-billing type reports, courts in other jurisdictions have permitted such claims to proceed in tort. See e.g., Insteel Indus., Inc. v. Costanza Contracting Co., Inc., 276 F. Supp. 2d 479, 484-486 (E.D. Va. 2003) (allowing claim based on false invoices to proceed in tort as a fraud claim where duty to submit invoice stemmed from contract, but contract did not require sworn and truthful statements in the invoices); F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc., 1994 WL 594592, *10 (D.N.J. Oct. 24, 1994) (allowing fraud claim to proceed where vessel owner had to rely on integrity of shipyard to honestly report parts and

labor used and work actually performed, contract had no specific price term, and shipyard had wide latitude in carrying out repairs).

Reviewing the circumstances alleged in this case in light of the case law cited by the parties, the Court concludes that dismissal of Emerald's fraud claims is not appropriate at this juncture. As Emerald points out, the Equipment Rental Agreement makes no provisions for self-billing. Rather, under the Equipment Rental Agreement, the lease term begins on the date when the equipment is delivered to the Lessee and ends when the equipment is returned pursuant to section 10. Emerald has alleged, however, that the equipment was already in place at the time Sea Star purchased the assets of NPR, Inc. Emerald has further alleged that Sea Star's usage was determined by self-billing and that Emerald relied on Sea Star to accurately report its usage. Emerald has also alleged that Sea Star intentionally under-reported its usage of Emerald's equipment. At this juncture, the Court concludes that Emerald has pled sufficient facts to establish distinct torts arising independently of the contractual obligations such that the claims are not definitively barred by the economic loss doctrine. Accordingly, the Court will deny Sea Star's Motion To Dismiss Emerald's tort claims on this ground.

B.    Whether Emerald Has Satisfied The Pleading Requirements
      Under Rule 9(b)

Sea Star contends that Emerald has failed to plead its fraud charges with particularity as required by Rule 9(b).  With respect to the self-billing allegations which form the basis of its fraud claim, Emerald has pled that (1) in order to ascertain rental payments due for equipment, Sea Star provided Emerald with monthly self-billing reports; and (2) "upon later investigation, Emerald discovered that the 'self-billing reports' prepared by Sea Star were grossly understated, failing, inter alia, to account for numerous pieces of Emerald Equipment which Sea Star has been using without paying rental charges to Emerald and failing to pay the appropriate amounts for usage of equipment contained in the 'self-billing reports.'"  D.I. 53, Counterclaim at ¶ 14, 15.  Emerald has not pled any specific dates of the alleged fraud and to the extent Emerald is aware from the further investigation it alleges it conducted in its Counterclaim, Emerald has not disclosed which invoices were defective or which pieces of equipment were implicated.  In these circumstances, the Court concludes that additional facts are required to establish the pleading requirements of Rule 9(b), if those facts are within Emerald's knowledge.  To the extent that some or all of this information is within Sea Star's exclusive control, Emerald should reflect that allegation in any amended pleadings it submits.  Accordingly, the Court will dismiss Emerald's fraud

claims, Counts V through VIII, with leave to amend to more particularly state the allegations relevant to Emerald's fraud claims.

### CONCLUSION

For the reasons discussed, Emerald's Motion To Dismiss will be granted as it pertains to (1) Count I, to the extent Count I alleges a breach of the E-Mail Agreement, (2) Count II alleging quantum meruit, (3) Count III alleging turnover to the extent that rent is sought, and (4) Counts V through VIII alleging tort claims for failure to satisfy the pleading requirements under Rule 9(b).  In all other respects, the Motion To Dismiss will be denied.  Emerald will be granted leave to file an Amended Counterclaim.

An appropriate Order will be entered.