UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC,<br>a limited liability company, | : | CIVIL ACTION |
| Plaintiff, | : | |
| -vs- | : | |
| EMERALD EQUIPMENT LEASING,<br>INC., a corporation, | : | |
| Defendant/Plaintiff<br>on the Counterclaim | : | Case No. 05-CV-00245-(JJF) |
| -vs- | : | |
| SEA STAR LINE, LLC | : | |
| Defendant on the<br>Counterclaim | : | |

**EMERALD EQUIPMENT LEASING, INC.'S ANSWERING BRIEF IN OPPOSITION TO SEA STAR LINE, LLC'S MOTION TO DISMISS EMERALD EQUIPMENT LEASING, INC.'S AMENDED COUNTERCLAIM**

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Raymond H. Lemisch, Esq. (No. 4204)
Bradford J. Sandler, Esq. (No. 4142)
Jonathan M. Stemerman, Esq (No. 4510).
919 North Market Street, Suite 710
Wilmington, DE  19801
302-654-8200

-and-

Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Suite 900, Four Penn Center
Philadelphia, PA  19103-2808
215-568-7515
Counsel for Emerald Equipment Leasing, Inc.

g:\393\10\pleading\sea star brief-resp to 2nd ss mtn dismiss

# I. TABLE OF CONTENTS

I. TABLE OF CONTENTS..................................................................i

II. TABLE OF CITATIONS.................................................................ii

III. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING......iii

IV. SUMMARY OF ARGUMENT......................................................iv

V. ARGUMENT ..............................................................................1

    A. Standard of Review ............................................................1

    B. Subject Matter Jurisdiction ..................................................2

    C. Contract Claims...................................................................2

        1. A Valid Cause of Action Is Stated For Breach of Contract (Count I)...........................................................2

        2. A Valid Cause of Action Is Stated For Turnover (Count II)....................................................................4

    D. Tort Claims (Counts IV Through VII)....................................5

        1. The Fraud Allegations Are Properly Pled With Sufficient Particularity..................................................5

        2. The Statutes of Limitation Argument is Meritless Since The Amended Counterclaim Relates to The Date of The Filing of The Original Counterclaim...........................11

VI. CONCLUSION..........................................................................12

## II. TABLE OF CITATIONS

**CASES**

Alpern v. UtiliCorp. United, Inc., 84 F.3d 1525 (8th Cir. 1996)..................10

Conley v. Gibson, 355 U.S. 41 (1957).....................................................1

Cowen & Co. v. Merriam, 745 F.Supp. 925 (S.D.N.Y. 1990)......................9

In re Sunrise Securities Litigation, 793 F.Supp 1306 (E.D. Pa. 1992)........9

Kansa Reinsurance co., Ltd. v. Congressional Mortg. Corp. of Texas, 20 F.3d 1362 (5th Cir. 1994)...................................................................11

Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir.1993).........................................1

Neitzke v. Williams, 490 U.S. 319, 326 (1989).........................................1

Piecknick v. Pennsylvania, 36 F.3d 1250 (3d Cir. 1994)............................1

Toner v. Allstate Ins. Co., 829 F. Supp. 695 (D.Del. 1993).......................10

**STATUTES**

Md. Code Ann., §5-101..........................................................................11

10 Del.C. §8106....................................................................................11

**RULES**

Fed.R.Civ.P. 11(b).................................................................................iv

Fed.R.Civ.P. 15(c).................................................................................10

III. **STATEMENT OF NATURE AND STAGE OF THE PROCEEDING**

This case began when Sea Star Line, LLC ("Sea Star"), in a transparent "race to the courthouse", filed a Complaint on March 1, 2004 (under the guise of seeking a "declaratory Judgment") against Emerald Equipment Leasing, Inc. ("Emerald") in the United States District Court for the Middle District of Florida (the "Florida Court"). (D.I. 1, 50). At about the same time (but just subsequent to Sea Star's filing), Emerald filed a Complaint against Sea Star in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court') seeking damages in excess of $4,000,000.00 for unpaid rental charges and unreturned equipment (the "Emerald Complaint"). (D.I. 67 at page v). Due to Sea Star's successful race to the courthouse, the Emerald Complaint was dismissed by the Delaware Bankruptcy Court, without prejudice, in accordance with the Third Circuit's articulated "first filed rule". (D.I. 67 at pages vi-vii).

After approximately a year in the Florida Court, the Florida Court finally concluded that the case should, after all, be transferred back to Delaware. (D.I. 45). A day after that ruling, Sea Star filed another Complaint against Emerald, this time in Puerto Rico. When Emerald made clear, in a letter to Sea Star's counsel, the impropriety of the Puerto Rico filing, Sea Star reluctantly dismissed the Complaint it filed in Puerto Rico. (D.I. 66 at page vii, fn4).

On April 21, 2005, just after the Florida Court transferred this litigation to the Delaware jurisdiction, Emerald filed an Answer to the Sea Star Complaint and a Counterclaim (which now encompassed the claims originally asserted in the Emerald Complaint). Sea Star responded by filing a Motion to Dismiss the Counterclaim. (D.I.

56). By Order of this Court dated January 26, 2006 (the "Order Allowing Amended Counterclaim"), the Sea Star Motion to Dismiss was granted in part and denied in part. (D.I. 76). The basis for the Court's decision was set forth in a Memorandum Opinion. (D.I. 75). Among other things, the Court granted Emerald leave to file an Amended Counterclaim so as to more particularly state the allegations relevant to Emerald's fraud claims. (D.I. 76).

Pursuant to the Order Allowing Amended Counterclaim, Emerald filed its Amended Counterclaim on February 15, 2006. (D.I. 79). Rather than filing an Answer to the Amended Counterclaim, Sea Star has now chosen to file another Motion to Dismiss Emerald's Amended Counterclaim (the "Sea Star Second Motion to Dismiss"). (D.I. 80). Accordingly, it has now been more than two year since the filing of the initial complaint and the pleadings have not yet closed.

## IV. SUMMARY OF ARGUMENT

The Sea Star Second Motion to Dismiss is frivolous and, in Emerald's opinion, sanctionable.[2] Sea Star's repeated accusatory rhetoric asserting that Emerald's Amended Counterclaim "ignores" this Court's Memorandum Opinion, "disregards its Order," and fails to "pay lip service to the court's admonitions" is patently untrue and unnecessarily inflammatory. Moreover, it appears that Sea Star's latest pleading, evidences a continuation of a pattern of procedural gamesmanship, meant to impede a timely adjudication of Emerald's substantial claims.

Despite Sea Star's contentions, the Amended Counterclaim filed by Emerald fully accords with the Court's ruling on Sea Star's initial Motion to Dismiss. Sea Star's

---

[2] See Fed.R.Civ.P. 11(b).

Second Motion to Dismiss, which states otherwise, fails to meet even the slightest of scrutiny and should be denied since:

 (1) Count I of the Counterclaim was properly amended to delete any reference to "breach of the e-mail agreement" as a cause of action in total compliance with the Court's ruling in this regard;

 (2) Emerald has properly stated a claim for "turnover" in Count II of the Counterclaim as the Court previously determined. In full compliance with the Court's ruling in Sea Star's initial Motion to Dismiss, Emerald eliminated reference to a "turnover" of rent, but left remaining a claim for "turnover" of the value of the equipment not returned;

 (3) Emerald's Counterclaim more than adequately satisfies the specificity requirements of Fed.R.Civ.P. 9(b) and 12(b)(6), providing more than sufficient details of the fraud claims asserted; and

 (4) Sea Star's newly raised contention as to the statute of limitations is wholly without merit, given that the Amended Counterclaim merely states with greater particularity factual support for the causes of action previously asserted and, as such, "relates back" to the original filing of the Counterclaim pursuant to Fed.R.Civ.P. 15(c)(2).

## V.    ARGUMENT

### A.    Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the non-moving party. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255 (3d Cir.1994). The Court however, is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." Kost, 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 – 46 (1957).

### B.    Subject Matter Jurisdiction

Sea Star's assertions regarding subject matter jurisdiction are as gratuitous, as they are spurious. The Court's ruling disagreed[1] with Emerald's contention that the subject litigation implicated the Bankruptcy Court's "core" jurisdiction. In full compliance with this Court's ruling, Emerald's Amended Counterclaim eliminated the allegations asserting "core" jurisdiction. Sea Star's verbiage regarding subject matter jurisdiction in its brief are pointless. (D.I. 81 at page 3). Since Emerald is a debtor in bankruptcy, the Court's "related to" jurisdiction exists pursuant to 28 U.S.C. §1334, albeit "non core" jurisdiction. Emerald's recitation to 11 U.S.C. §542 and 28 U.S.C.

---

[1] Sea Star, of course, true to form, pejoratively characterized this in its Brief by stating that "the Court repudiated Emerald's attempt..." (D.I. 81 at page 3) [emphasis added]

§157 in the Amended Counterclaim were merely meant as statutory predicates under 28 U.S.C. §1334 jurisdiction.

### C. Contract Claims

#### 1. A Valid Cause of Action Is Stated For Breach of Contract (Count I)

The Court, in its Memorandum Opinion, determined "that Emerald has failed to state a claim for breach of the E-Mail Agreement" and dismissed Count I of Emerald's Counterclaim "to the extent that Count I alleges a breach of the Agreement…" (D.I. 75 at page 14). Fully in accordance with this ruling, Emerald's Amended Counterclaim deletes any reference to a "breach of the E-Mail Agreement". Rather, Count I now only asserts breach of the Equipment Rental Agreement. (D.I. 79, paragraphs 18-21).

Emerald's Amended Counterclaim, however, does not satisfy Sea Star. Instead, Sea Star asserts Emerald "ignored" the Memorandum Opinion. (D.I. 81 at page 4). The basis for this wholly unjustified accusation is that the "Background" section of the Amended Counterclaim recites the factual assertions of the E-Mail Agreement which was later superseded (as determined by the Court) by the Equipment Rental Agreement. (See D.I. 79, paragraphs 9-11). Apparently, Sea Star reads the Court's decision as mandating that Emerald remove any reference in its pleading to the E-Mail Agreement. Nowhere, however, does the Memorandum Opinion support such an unwarranted conclusion. Despite this, Sea Star piously asserts "whether purposeful or negligent, Count I does not comply with the Court's Order." (D.I. 81 at page 5). As a remedy, Sea Star further requests that the Court dismiss Count I of the Amended Counterclaim, apparently asking this Court to dismiss an indisputably validly asserted claim of breach of the Equipment

Rental Agreement. There are no legal authorities cited for this ridiculous proposition, nor is there any rational basis for such an outrageous request.

In the Court's Memorandum Opinion, the Court took issue with Emerald's position that "extrinsic evidence is required to determine the party's intent as to whether the Equipment Rental Agreement was meant to supersede the E-Mail Agreement, because the Equipment Rental Agreement does not expressly reference the E-Mail Agreement." (D.I. 75 at page 12). Rejecting Emerald's contention, in this regard, the Court concluded that extrinsic evidence is not required to illuminate the meaning of the Equipment Rental Agreement because it is not ambiguous when viewed from the standpoint of a reasonable person. The clear sense of the Court's Opinion was that the <u>integration clause</u> is not ambiguous and that accordingly, there was no need to consider "extrinsic evidence" in connection with the <u>integration clause</u>. Because of what the Court viewed as an unambiguous integration clause in the Equipment Rental Agreement, the Court concluded that there can be no separate cause of action for breach of the E-Mail Agreement.

The Court nowhere, however, concluded that the existence of the prior E-Mail Agreement may never be relevant or even pled in the Counterclaim, as Sea Star argues. That issue was never before the Court, was never briefed by the parties, nor could it be, under the current posture of this case. Sea Star's contentions in this regard, seeking to exclude any reference to the E-Mail Agreement in the Complaint, twists the words of this Court, in an apparent effort to obtain rulings on issues which are not properly before the Court. This conduct should not be countenanced.

There is absolutely no basis for Sea Star's outrageous contention that Count I should be dismissed. Emerald complied with the Court's ruling by eliminating a claim for breach of the E-Mail Agreement, in full accordance with this Court's ruling. The arguments raised by Sea Star, on this point, are not only meritless, they are wholly unwarranted, and in Emerald's view, sanctionable.

### 2. A Valid Cause of Action Is Stated For Turnover (Count II)

The Court's ruling in the initial Motion to Dismiss found that a "turnover" cause of action may not lie for the rent claims raised by Emerald, but may lie for "turnover" of the value of the equipment which Sea Star failed to return. (D.I. 75 at pages 18-20). In full accordance with the ruling, in the Amended Counterclaim, Emerald deleted any reference to a claim of "turnover" for the rent, limiting its "turnover" count to the value of the unreturned equipment.

This, also, apparently does not satisfy Sea Star. Sea Star contends that Count II should be dismissed because the Amended Counterclaim included a reference to Section 342 of the Bankruptcy Code which clearly was an unfortunate, but harmless repeat of an earlier typographical error in the original Counterclaim. Sea Star knows this is a typographical error. If this errant reference to Section 342, rather than Section 542 of the Bankruptcy Code, confused Sea Star, its counsel simply could have picked up the telephone and asked Emerald's counsel to replace that page of the Amended Counterclaim. Its request that this Court dismiss the turnover count (based on a typographical error), after the Court has already determined that the turnover count states a valid cause of action, is nothing short of sheer pettiness and a waste of this Court's time.

### D.  Tort Claims (Counts IV Through VII)

#### 1.  The Fraud Allegations Are Properly Pled With Sufficient Particularity.

In its Memorandum Opinion (D.I. 75 at page 27), the Court found that with respect to the self-billing allegations which form the basis of Emerald's fraud claim:

> Emerald has not pled any specific dates of the alleged fraud and to the extent Emerald is aware from the further investigation it alleges it conducted it is Counterclaim, Emerald has not disclosed which invoices were defective or which pieces of equipment were implicated. In these circumstances, the Court concludes that additional facts are required to establish the pleading requirements of Rule 9(b), if those facts are within Emerald's knowledge. To the extent that some or all of this information is within Sea Star's exclusive control, Emerald should reflect that allegation in any amended pleading it submits.

In full compliance with this ruling, in the Amended Counterclaim, Emerald added the following paragraphs to flesh out the factual underpinnings of the asserted fraudulent self-billing reports submitted by Sea Star:

> 32.  Specifically, the self-billing reports grossly underreported Sea Star's usage of the Emerald Equipment on diverse dates between April 29, 2002 and December 31, 2003, by (i) failing to properly account for the full period of time Sea Star was responsible for rental payments for numerous items of Emerald Equipment which Sea Star acknowledged using; and (ii) by failing to account, at all, for various items of Emerald Equipment which Sea Star used, but which it never acknowledged using.
>
> 33.  Emerald's investigation, which is continuing, has determined that it believes the extent of rental charges owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00. In addition, Emerald believes, based upon its continuing investigation, that Sea Star used various pieces of Emerald Equipment which it never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rental totaling approximately $1,800,000.00.
>
> 34.  The shear magnitude of the huge discrepancy between Sea Star's reported usage of the Emerald Equipment (as shown on the

Sea Star "self- billing reports") and what Emerald contends was the actual Sea Star usage of Emerald Equipment, evidences an intent to defraud Emerald, or at the very least, a reckless indifference as to the truth of the matters contained in the "self-billing reports".

35. Attached hereto and marked as Exhibit "C" is a schedule of certain Emerald Equipment used by Sea Star (in this case, 40 foot chassis) specifically identifying each item of equipment, the dates of usage reported by Sea Star for that specific piece of equipment, Emerald's contention as to the actual dates of Sea Star's usage of that particular piece of equipment, and the amount of rent owed, but unpaid, for each said specific piece of equipment. Similar schedules (which are voluminous), based upon Emerald's investigation to date, have been supplied to Sea Star for other types of Emerald Equipment used by Sea Star, which includes 20 foot chassis, 45 foot chassis, 20 foot DV containers, 40 foot DV containers, 40 foot reefer containers, 40 foot HC containers, 45 foot HC containers, and gen sets. These schedules specifically set forth the relevant equipment pieces, dates of usage, and other related information identifying the nature of the defective information contained in the Sea Star "self-billing reports".

36. Other indicia of fraudulent and/or misleading information supplied by Sea Star include, but is not limited to the following:

(a) Sea Star appears to have backdated certain "terminal inter-change receipts"(known as "TIRs"). Attached hereto and marked as Exhibit "D" is a schedule identifying certain of those backdated TIRs;

(b) Sea Star subleased to a third party, CSX Line, from May 15, 2002 to July 17, 2002 various pieces of Emerald Equipment, which sublease activities were not permitted by the Equipment Rental Agreement. Further, most of the equipment pieces subleased to CSX Line were never included on Sea Star's "self-billing reports". Attached hereto and marked as Exhibit "E" is a copy of Sea Star invoice to CSX Line and schedules identifying the equipment pieces involved;

(c) certain documentation indicates that duplicate "self-billing reports" were prepared by Sea Star for the month of September, 2002 indicating different amounts for the same month. (see Exhibit "F");

(d) Emerald believes that other information pertinent to Sea Star's fraudulent conduct may be within Sea Star's exclusive control, and, as such, subject to further investigation.

Notwithstanding the foregoing detailed information supplied in the Amended Counterclaim, Sea Star, in its Brief (D.I. 81 at page 7), accuses Emerald of "disregarding" the Court's directive and Fed.R.Civ.P. 9(b), asserting that Emerald continues to make generic assertions as to "false and/or misleading" and "inaccurate information", "misrepresentations", and gross underreporting in Sea Star "self-billing reports", as well as "representations which have a tendency to deceive and undermine confidence and are injurious to the public interests". Sea Star continues by saying:

> The Amended Counterclaim does not disclose the substantive factual underpinning for these conclusory allegations. For example, Emerald has not identified the invoices-or "self-billing reports"-which were defective or the pieces of equipment which were implicated.

These contentions by Sea Star are nothing short of stunning.

Exhibit "C" attached to the Amended Counterclaim is a schedule of over 1,000 pieces of equipment which Emerald believes Sea Star used, and for which it fraudulently failed to properly account on its "self-billing" reports. This schedule details, by identification number for each piece of equipment, the date of usage reported by Sea Star for that specific piece of equipment on its "self-billing reports," or in many cases, the complete failure of Sea Star to report such usage, Emerald's contention as to the actual dates of Sea Star's usage of that particular piece of equipment, and the amount of rent owed, by unpaid for each specific piece of equipment. How Sea Star can state in a pleading (D.I. 81 at page 7) filed with this Court that "Emerald has not identified the invoices-or self-billing reports-which were defective or the pieces of equipment which were implicated" is remarkable. As the Amended Counterclaim makes clear, all of the "self-billing reports" were "defective" in that they were fraudulent by not reflecting Sea

Star's actual usage of Emerald's Equipment. Similar schedules for thousands of other pieces of equipment, based upon Emerald's investigation to date, have been supplied to Sea Star for other types of Emerald Equipment used by Sea Star, which includes 20 foot chassis, 45 foot chassis, 25 foot DV containers, 40 foot DV containers, 40 foot reefer containers, 40 foot HC containers, 45 foot HC containers, and gen sets. How Sea Star can come before this Court and tell this Court with a straight face that it does not have sufficient information with regard to Emerald's contentions that the Sea Star self-billing reports were fraudulent, is simply unbelievable.

And, that is not all. Emerald attached other schedules to its Amended Counterclaim reflecting numerous factual instances of fraud including what Emerald believes to be backdated documents (Exhibit "D" to the Amended Counterclaim), Emerald equipment which Sea Star apparently subleased to another entity without ever reporting its usage to Emerald (Exhibit "E" to the Amended Counterclaim), and duplicate "self-billing reports" prepared by Sea Star for the month of September, 2002 (Exhibit "F" to the Amended Counterclaim). These exhibits specifically identify equipment pieces, dates, places, etc. What more could Sea Star want?

In light of this, Sea Star has the temerity to accuse Emerald of "disregarding the Court's directive" and Fed.R.Civ.P. 9(b), accuses Emerald of "not even paying lip service to the Court's admonitions," and further accuses Emerald of "having failed to comply with the letter and the spirit of Rule 9(b) in the Memorandum Opinion." The Amended Counterclaim is replete with factual detail pertaining to thousands of pieces of equipment which Emerald contends Sea Star fraudulently misreported as to its usage. Sea Star has not only "notice", but exquisitely "detailed notice" as to the fraud alleged. Rule 9(b)

requiring that fraud be pled with particularity requires no more than that the Complaint give each defendant notice of precisely what he is charged with. <u>Cowen & Co. v. Merriam</u>, 745 F.Supp. 925 (S.D.N.Y. 1990). A complaint alleging fraud is not deficient for failing to state every detail that might be a proper subject for discovery. <u>In re Sunrise Securities Litigation</u>, 793 F.Supp 1306 (E.D. Pa. 1992). The District Court, in <u>Sunrise Securities</u>, supra, at page 1312, sets forth the following regarding Rule 9(b):

> Rule 9(b) requires a claimant to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the claimant acted upon it to his damage. Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992). The Court of Appeals for the Third Circuit has held that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Industry Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984).
>
> Despite these requirements, courts should "respect the 'general simplicity and flexibility' of the Federal Rules of Civil procedure." Shapiro, 964 F.2d at 284, quoting Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983). Thus, the standard of pleading under Rule 9(b) is a generous one. Odesser v. Continental Bank, 676 F.Supp. 1305, 1314 (E.D. Pa. 1987).
>
> Focusing exclusively on the particularity requirement is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." Craftmatic Secur. Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989). Instead, under Seville the fraud allegations must withstand a case-specific evaluation, made with a view to the policies to be served by rule 9(b). Odesser, 676 F.Supp. at 1314. In addition, "[w]hen the transactions are numerous and take place over an extended period of time, less specificity is required...[T]he rule should not be applied with such draconian strictness as to undermine the liberal spirit of the Federal Rules of Civil procedure." In re

>Catanella and E.F. Hutton and Co., Secur. Litigation, 583 F.Supp. 1388, 1398 (E.D. Pa. 1984).

The particularity requirement of Rule 9(b) is satisfied where the information provided is sufficient for the defendant to form a defense. Toner v. Allstate Ins. Co., 829 F. Supp. 695 (D.Del. 1993). Emerald has more than satisfied the particularity requirement of Rule 9(b) in the Amended Counterclaim. Sea Star's contentions otherwise are wholly frivolous.

    2.    **The Statutes of Limitation Argument is Meritless Since The Amended Counterclaim Relates Back To The Date Of The Filing Of The Original Counterclaim**

Finally, Sea Star raises a statute of limitations defense with respect to the allegations of fraud, more specifically pled in the Amended Counterclaim. How Sea Star can make such a contention without making any reference to Fed.R.Civ.P. 15(c) is unfathomable. Fed.R.Civ.P. 15(c)(2) provides that:

>An amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

The specific allegations set forth in the Amended Complaint merely state with additional specificity the fraudulent conduct asserted in the original Counterclaim. There are no added parties or causes of action. In determining whether the amended complaint relates back to date of original complaint, the basic inquiry, which is liberally construed, is whether amended complaint is related to general fact situation alleged in original pleading. Alpern v. UtiliCorp. United, Inc., 84 F.3d 1525, 1543 (8th Cir. 1996). The rationale for this rule is that, once litigation involving a particular transaction has been instituted, a party should not be protected by the statute of limitations from later asserted

claims that arose out of the same conduct set forth in the original pleadings. <u>Kansa Reinsurance co., Ltd. v. Congressional Mortg. Corp. of Texas</u>, 20 F.3d 1362, 1367 (5th Cir. 1994).

The original Counterclaim was filed on April 21, 2004. This filing was within three years of the commencement of any relationship between Sea Star and Emerald. As such, the tort causes of action asserted in the Amended Counterclaim, which relate back to the original filing of the Counterclaim, fall within the appropriate statute of limitations under both Maryland law and Delaware law. (See Md. Code Ann., §5-101, 10 Del.C. §8106). Sea Star's apparent arguments to the contrary are transparently meritless.

## VI.   CONCLUSION

The continued gamesmanship, apparently relished by Sea Star, must come to an end. The Second Motion to Dismiss is utterly devoid of any merit. The Amended Counterclaim asserted by Emerald was filed in good faith, in conformity with the Court's Memorandum Opinion and sufficiently states with particularity a substantial factual basis for the fraud counts asserted therein. The Second Motion to Dismiss should be denied, in all respects, and Sea Star's conduct in filing such a pleading should be sanctionable.

          ADELMAN LAVINE GOLD AND LEVIN,
          A Professional Corporation

By:   <u>/s/ Raymond H. Lemisch</u>
      Raymond H. Lemisch, Esq. (No. 4204)
      Bradford J. Sandler, Esq. (No. 4142)
      Jonathan M. Stemerman, Esq. (No. 4510)
      919 North Market Street, Suite 710
      Wilmington, DE 19801
      302-654-8200
      Counsel for Emerald Equipment Leasing, Inc.

-and-

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Suite 900, Four Penn Center
Philadelphia, PA  19103-2808
215-568-7515
Counsel for Emerald Equipment Leasing, Inc.