IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEA STAR LINE, LLC,<br>a limited liability company,<br><br>    Plaintiff,<br><br>-vs-<br><br>EMERALD EQUIPMENT LEASING, INC.,<br>a corporation,<br><br>    Defendant,<br><br>-vs-<br><br>SEA STAR LINE, LLC,<br><br>    Counter-Defendant. | Civil Action No. 05C-245 JJF |

**SEA STAR LINE, LLC STATEMENT IN ACCORDANCE
WITH MAY 8, 2006 ORDER**

When the United States District Court for the Middle District of Florida closed discovery and issued its transfer order, the case *sub judice* was not at issue. Subsequently Defendant/Counter-Plaintiff, EMERALD EQUIPMENT LEASING, INC. ("Emerald"), filed an Answer and Affirmative Defenses and an Amended Counterclaim; Plaintiff/Counter-Defendant, SEA STAR LINE, LLC ("Sea Star") filed an Answer and Affirmative Defenses to Amended Counterclaim. Pursuant to this Court's Order dated May 8, 2006, Sea Star identifies the following entities and persons that Sea Star needs and intends to depose in connection with issues raised in the above-described pleadings, all of which postdate depositions taken in this case:

    1.    Emerald Equipment Leasing, Inc. pursuant to Fed. R. Civ. 30(b)(6). Among

issues presently known that will be subject to inquiry are the factual bases for Emerald's allegations:

   (a) That Sea Star purchased "NPR's bookings";

   (b) That "[a]t the inception of the lease between Emerald and Sea Star, the Emerald Equipment was not in Emerald's possession" and was "<u>inter alia,</u> in terminals, in the possession of shippers, at inland depots or on board NPR vessels purchased by Sea Star";

   (c) That "Emerald was not notified when Sea Star commenced using any particular piece of Emerald Equipment", as well as notification requirements and procedures;

   (d) That "to ascertain rental payments due for the Emerald Equipment", Sea Star "undertook the obligation to report to Emerald its 'usage' of the Emerald Equipment" in monthly 'self-billing reports'";

   (e) That "Emerald discovered that the 'self-billing reports' prepared by Sea Star were grossly understated";

   (f) That "[o]n or about October 31, 2003, Emerald exercised its right to terminate the Equipment Rental Agreement in accordance with its terms", as well as the predicates for such "right";

   (g) That "Sea Star has failed to return numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement" and "Emerald has determined that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement", as well as the equipment categories and quantities and time periods involved;

   (h) That "Emerald has incurred damages in excess of $4,000,000.00";

   (i) That "Sea Star has failed to provide an accounting of its usage of Emerald

Equipment";

(j) That "[t]he information (or lack thereof) provided by Sea Star on its 'self-billing reports', upon which Sea Star based its rental payments was false and/or misleading",

(k) That Sea Star "grossly underreported...usage on diverse dates...", "failing to properly account for the full period of time Sea Star was responsible for rental payments for numerous items of Emerald Equipment which Sea Star acknowledged using" and "for various items of Emerald Equipment which Sea Star used, but which it never acknowledged using";

(l) That "the extent of rental charges owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00" and that "Sea Star used various pieces of Emerald Equipment which it never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rental totaling approximately $1,800,000.00";

(m) That Sea Star intended to defraud Emerald or at the very least was recklessly indifferent as to the truth of the matters contained in the "self-billing reports" and that "Sea Star intended to defraud Emerald when it provided Emerald with the 'self billing reports' grossly under reporting Sea Star's use of the Emerald Equipment";

(n) That Emerald supplied to Sea Star for all types of Emerald Equipment used by Sea Star schedules which "specifically set forth the relevant equipment pieces, dates of usage, and other related information identifying the nature of the defective information contained int eh Sea Star 'self-billing reports'";

(o) That, as "indicia of fraudulent and/or misleading information", Sea Star "appears to have backdated" documents described by Emerald as "terminal inter-change receipts",

only some of which are identified; that "Sea Star subleased to a third party, CSX Line, from May 15, 2002 to July 17, 2002 various pieces of Emerald Equipment, which sublease activities were not permitted by the Equipment Rental Agreement"; that "certain documentation indicates that duplicate 'self-billing reports' were prepared by Sea Star for the month of December 2002 indicating different amounts for the same month"; that "other information pertinent to Sea Star's fraudulent conduct may be within Sea Star's exclusive control";

(p)  That "Sea Star prepared the 'self-billing reports' knowing that the information contained on those reports was false and misleading or prepared the reports with reckless indifference as to the veracity of the information contained in the 'self-billing reports'" and that "Sea Star prepared the inaccurate 'self-billing reports' with the intention of defrauding Emerald";

(q)  That "[a] as a result of Emerald's reliance on the fraudulent representation of Sea Star in the 'self-billing reports', Emerald suffered damages in excess of $4,000,000.00" and that "[a]s a result of Emerald's reliance upon Sea Star's fraudulently prepared 'self billing reports', Emerald suffered damages in excess of $4,000,000.00";

(r)  That Sea Star breached a "duty to accurately account for the use of Emerald's Equipment and to ensure that it ew accurately reported and compensated Emerald for the use of the Equipment;

(s)  That "Sea Star has made representations which have a tendency to deceive and undermine confidence and are injurious as to the public interest";

(t)  That that Sea Star breached "a fiduciary duty to accurately report to Emerald the equipment usage and the cost incurred as a result of said usage";

(u)  That Sea Star knew and "was aware not only would Emerald rely on the 'self-

billing report' to determine the rental fees for the Emerald Equipment but was also aware that an accurate report from Sea Star was the only reasonably available method for Emerald to determine the actual usage of the Emerald Equipment";

(v) That "Emerald's reliance upon Sea Star 'self billing reports' was not only justified, it was necessary to maintain the relationship between the parties as provided for in the Equipment Rental Agreement";

(w) That Emerald "was unable to collect the actual rents earned based on Sea Star's usage of the Emerald Equipment".

Among additional issues presently known relating to Emerald's defenses and the Amended Counterclaim as to which Sea Star needs and intends to depose Emerald are:

(a) Whether Emerald is the real party in interest and has standing to prosecute the claims asserted in the Amended Counterclaim;

(b) What restrictions and limitations MBC Leasing, Inc. imposed on Emerald representatives in regard to "Emerald Equipment" and Sea Star;

(c) When, how, and to what extent Emerald acquired an enforceable legal interest in regard to "Emerald Equipment";

(d) What the nature, extent, restrictions, limitations, and realistic value of the "carve out" allegedly granted to Emerald by Storage Transfer, LLC and disclosed to the bankruptcy court after transfer of the case from the Middle District of Florida actually are;

(e) When, where, and how particular Emerald's claims against Sea Star actually arose arise;

(f) What specific procedures Emerald has utilized in calculating and submitting

claims to Sea Star;

       (g)    What specific procedures Emerald followed in regard to notifying Sea Star prior to sale or other disposition of equipment recovered by Emerald after alleged use by Sea Star and included in the Amended Counterclaim;

       (h)    How, when, and under what circumstances Emerald acquired rights to *per diem* payments for use of Emerald containers, gen sets, and chassis;

       (i)    What are the nature and extent of Emerald's alleged "rights of setoff and/or recoupment";

       (j)    What "course of conduct" bars Sea Star from recovery against Emerald;

       (k)    How, when, and under what circumstances "[a]ny losses allegedly suffered by Sea Star were caused by its own negligence";

       (l)    How, when, and under what circumstances Sea Star became "barred from asserting any claims against Emerald under the doctrine of unclear hands" (*sic*);

       (m)    How, when, and under what circumstances "[t]he relief requested in the Complaint [became] barred, in whole or in part, due to Sea Star's breach of and/or failure to perform under applicable contracts between the parties".

       2.    Arthur Davis in the event Emerald does not produce him as a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6).

       3.    Lorraine Robins in the event Emerald does not produce her as a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6).

       4.    Martin McDonald, representative of Emerald and MBC Leasing, Inc.: Issues presently known relate to location, recovery, storage, inventory, acquisition, use, procedures for sale,

and actual sale or other disposition of Emerald equipment in Puerto Nuevo and elsewhere in Puerto Rico, as well as the Dominican Republic.

   5. Francisco Gonzales Rios, representative of Emerald and MBC Leasing, Inc.: Issues presently known relate to location, recovery, storage, inventory, acquisition, use, procedures for sale, and actual sale or other disposition of Emerald equipment in Puerto Nuevo and elsewhere in Puerto Rico, as well as the Dominican Republic.

   6. Thomas Flores Rios, representative of Emerald and MBC Leasing, Inc.: Issues presently known relate to location, recovery, storage, inventory, acquisition, use, procedures for sale, and actual sale or other disposition of Emerald equipment in Puerto Nuevo and elsewhere in Puerto Rico, as well as the Dominican Republic.

   7. Joseph Maqueda, representative of Emerald: Issues presently known relate to location, recovery, storage, inventory, acquisition, use, procedures for sale, and actual sale or other disposition of Emerald equipment in Puerto Nuevo and elsewhere in Puerto Rico, as well as the Dominican Republic, after October 31, 2003.epublic. sale or other disposition of Emerald Equipment after December 1, 2003.

   8. E.T. Heinsen: Issues presently known relate to receipt, retention, return, sale or other disposition of Emerald equipment in the Dominican Republic.

   9. Storage Transfer, LLC pursuant to Fed. R. 30(b)(6): Among issues presently known are those relating to the relationship between Storage Transfer, LLC and Emerald; the nature, extent, restrictions, limitations, and realistic value of the "carve out" allegedly granted to Emerald and disclosed to the bankruptcy court after transfer of the case from the Middle District of Florida; the relationship between Storage Transfer, LLC and MBC Leasing, Inc.; terms and conditions of, as

well as negotiations pertaining to, a Loan Sale and Assignment Agreement and a Security Agreement between Storage Transfer, LLC and MBC Leasing, Inc., allegedly effective as of November 1, 2003; interests of Storage Transfer, LLC and MBC Leasing, Inc. in the Emerald claims.

10. MBC Leasing, Inc. pursuant to Fed. R. 30(b)(6): Among issues presently known are those relating to the interests of Storage Transfer, LLC and MBC Leasing, Inc. in the Emerald claims; the relationship between MBC Leasing, Inc. and Storage Transfer, LLC, and Emerald; terms and conditions of, as well as negotiations pertaining to, a Loan Sale and Assignment Agreement between Storage Transfer, LLC and MBC Leasing, Inc., allegedly effective as of November 1, 2003; terms and conditions of, as well as negotiations pertaining to, a Security Agreement between Storage Transfer, LLC and MBC Leasing, Inc., dated as of November 1, 2003; restrictions and limitations on Storage Transfer, LLC's rights under agreements with MBC Leasing, Inc., including but not limited to right and authority to grant Emerald a "carve out" or to assert claims against Sea Star for use of Emerald equipment; restrictions and limitations on Emerald's rights under agreements with MBC Leasing, Inc.; Emerald's alleged rights to *per diem* payments for use of Emerald containers, gensets, and chassis; terms and conditions of an Indemnity Agreement between MBC Leasing, Inc. and Sea Star; instructions given to Arthur Davis and other persons retained as MBC representatives with respect to claims for units during time periods covered by Sea Star self-billing reports.

11. Scott Krieger in the event MBC Leasing, Inc. does not produce him as a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6).

May 15, 2006                               SMITH, KATZENSTEIN & FURLOW, LLP

                                           _____
                                           Kathleen M. Miller (I.D. No. 2898)
                                           800 Delaware Avenue, 7th Floor
                                           P.O. Box 410
                                           Wilmington, DE 19899 (Courier 19801)
                                           Phone: (302) 652-8400
                                           Fax: (302) 652-8405
                                           E-mail: KMiller@skfdelaware.com

OF COUNSEL:                                Attorneys for Sea Star Lines, LLC
Charles C. Robinson
Garvey Schubert Barer
1191 Second Avenue, #1800
Seattle, WA 98101-2939


Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134