# IN THE United States Bankruptcy Court
## FOR The District of Delaware

| | | | | |
|---|---|---|---|---|
| In re: | EMERALD EQUIPMENT LEASING, INC., | ) | Case No.: | 01-934 (MFW) |
| | Debtor | ) | Chapter: | 11 |
| | | ) | | |
| | EMERALD EQUIPMENT LEASING, INC., | ) | Case No. | 01-934 (MFW) |
| | | ) | | |
| | Plaintiff | ) | Chapter: | 11 |
| | v. | ) | | |
| | | ) | | |
| | SEA STAR LINE, LLC | ) | | |
| | | ) | Adv. Proc. No.: | |
| | | ) | | |
| | Defendant | ) | | |

## SUMMONS AND NOTICE OF PRETRIAL
## CONFERENCE IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of Clerk:
824 Market Street, 3rd Floor
Wilmington, DE 19801

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

ADELMAN LAVINE GOLD AND LEVIN,
a Professional Corporation
Bradford J. Sandler, Esquire
919 Market Street, Suite 710
Wilmington, DE 19801

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

Address: United States Bankruptcy Court          Room: Court Room No. 1
824 Market Street, 6th Floor
Wilmington, DE 19801                              Date and Time: April 28, 2004 at 9:30 a.m (ET)

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

United States Bankruptcy
Court for the District
of Delaware                              /s/ David D. Bird
                                         Clerk of the Bankruptcy Court

Date:  March 17, 2004

## CERTIFICATE OF SERVICE

I, Sandi Van Dyk, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint were made March 17, 2004 by:

| X |

Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

Sea Star Line LLC
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216-7202
Attn: Michael D. Shea, President

Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

Residence Service: By leaving the process with the following adult at:

Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

Publication: The defendant was served as follows: [Describe briefly]

State Law: The defendant was served pursuant to the laws of the State of _____,
    as follows: [Describe briefly]                                   (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

March 17, 2004                 _Sandi Van Dyk_____
    Date                                    Signature

Print Name:    Sandi Van Dyk

Business Address:    Adelman Lavine Gold and Levin, a Professional Corporation
                     919 Market Street, Suite 710
                     Wilmington, DE        19801

## NOTICE OF DISPUTE RESOLUTION ALTERNATIVES

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The uses of these services are often productive and effective in settling disputes. **The purpose of this Notice is to furnish general information about ADR.**

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral".

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests *de novo* review of an arbitration award, the judge will rehear the case.

**Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.**

Dated: March 17, 2004                          /s/ David D. Bird
                                                _____
                                                *Clerk of Court*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EMERALD EQUIPMENT LEASING, | : | |
| INC. | : | |
| | : | |
| Debtor | : | No. 01-934(MFW) |

| | | |
|---|---|---|
| EMERALD EQUIPMENT LEASING, | : | |
| INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adv. No. |
| | : | |
| SEA STAR LINE, LLC | : | |
| 100 Bell Tel Way | : | |
| Suite 300 | : | |
| Jacksonville, FL  32216 | : | |
| | : | |
| Defendant | : | |

### COMPLAINT OF DEBTOR FOR RECOVERY OF
### POST-PETITION ACCOUNT RECEIVABLE AND FOR
### TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. SECTION 542

Emerald Equipment Leasing, Inc., by and through its undersigned counsel, files

this Complaint against Sea Star Line, LLC, and in support, avers as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. Sections 1334 and 157 and Sections 542 of Title 11 of the United States Code (the

"Bankruptcy Code").  This adversary proceeding is a "core" proceeding to be heard and

determined by the Bankruptcy Court pursuant to 28 U.S.C. Sections 157(b)(2)(A)(E) and

(O).

2.     Venue is appropriate before this Court by virtue of, and in accordance with, 28 U.S.C. Section 1409.

## PARTIES

3.     Plaintiff is Emerald Equipment Leasing, Inc. ("Emerald"), a Debtor-in-Possession having filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date"). Emerald remains in possession of its assets and continues to operate its business under the applicable provisions of the Bankruptcy Code.

4.     Emerald was organized in October 1997 under the laws of the State of New Jersey and is engaged in business as a lessor of various equipment used in the ocean going transportation business.

5.     Defendant is Sea Star Line, LLC ("Sea Star"), a company engaged in the shipping business with a place of business located at 100 Bell Tel Way, Suite 300, Jacksonville, FL 32216.

## BACKGROUND

6.     Prior to the Petition Date, Emerald leased all of its equipment to NPR, Inc. and Holt Cargo Systems, Inc. Said lease with NPR, Inc. and Holt Cargo Systems, Inc. of Emerald's equipment was rejected by a Consent Order entered by this Court dated May 10, 2002 (the "Consent Order"), but effective as of April 18, 2002.

7.     On or about April 26, 2002, an Order was entered by the Bankruptcy Court authorizing the sale of NPR assets (the "Sale") to Sea Star (the "Sale Order").

8.    Since the entry of the Sale Order, substantially all of the Emerald equipment which, at the time of the Sale, either had remained at Sea Star terminals, were aboard Sea Star ships, or were in use at various other locations, have been used by Sea Star in the operation of its business pursuant to the terms of an oral lease between Emerald and Sea Star (the "Oral Lease").

9.    The Oral Lease was effective as of May 1, 2002 and was applicable to any cargo worthy Emerald equipment which Sea Star dispatched out of any port terminal or inland depot for customer use at agreed upon per diems. The per diems, under the Oral Lease, were to continue for each piece of equipment until Sea Star ceased use of that equipment and notified Emerald thereof, as well as the port location of such equipment (Jacksonville, San Juan or Philadelphia) or, alternatively, until Sea Star reached an agreement to purchase said piece of equipment.

10.    The leasing arrangements under the Oral Lease with respect to Sea Star's continued use of Emerald's equipment were thereafter formalized in a written lease dated as of July 31, 2002 between Emerald and Sea Star (the "Equipment Rental Agreement"), but applicable to equipment used as of and since April 29, 2002. A copy of the Equipment Rental Agreement is attached hereto as Exhibit "A" and made part hereof.

11.    The Equipment Rental Agreement set forth the terms for Sea Star's continued use of the Emerald equipment.

12.    During the course of the Oral Lease and the Equipment Rental Agreement, Sea Star made lease payments to Emerald based on its own "self billing reports".

g:\393\10\pleading\sea star complaint

13.    Upon investigation, Emerald discovered that the "self billing reports" were grossly understated, failing to account for numerous pieces of Emerald equipment which Sea Star had been using without paying rental charges to Emerald.

14.    On or about October 31, 2002, Emerald exercised its rights to terminate the Equipment Rental Agreement in accordance with its terms.

## COUNT I
### (Post-Petition Account Receivable/Breach of Lease)

15.    Plaintiff incorporates paragraph 1 through 14 set forth above, as fully as if set forth herein in their entirety.

16.    Sea Star is in breach of its obligations under the Oral Lease and under the terms of the Equipment Rental Agreement as a result of its failure to pay the following:

(a)    Rent due to Emerald;

(b)    Loss incurred as a result of the loss, damage, theft or destruction of certain equipment.

17.    In addition, after the termination of the Equipment Rental Agreement, Sea Star was required to re-deliver the equipment to Emerald at certain designated terminals. Despite this, Sea Star has failed to deliver numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement.

18.    As a result of Sea Star's breach of the Oral Lease and Equipment Rental Agreement, Emerald has incurred damages in excess of $4,000,000.00.

19.    Emerald has provided detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Oral Lease and Equipment Rental Agreement. Emerald's work on these invoices continues as it continues its investigation and discovers other Emerald equipment which Sea Star has used, or has not returned, and has not

compensated Emerald under the terms of the Oral Lease and the Equipment Rental Agreement.

WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00, plus interest at the rate set forth in the Equipment Rental Agreement, attorneys' fees and other charges.

## COUNT II
### (Post-Petition Quantum Meruit)

20.    Plaintiff incorporates paragraph 1 through 19 set forth above, as fully as if set forth herein in their entirety.

21.    Sea Star has utilized property of Emerald and has received the economic benefit of that use without compensating Emerald.

22.    Sea Star's use of Emerald's equipment resulted in harm to Emerald and actual and material gain and benefit to Sea Star.

23.    To the extent Sea Star's use of Emerald's equipment occurred during any period not covered by a written lease agreement, Emerald is entitled to collect damages from Sea Star under the theory of quantum meruit.

24.    WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00 as damages, plus interest, attorneys' fees and other charges.

## COUNT III
### (Turnover Action/Conversion)

25.    Plaintiff incorporates paragraph 1 through 24 set forth above, as fully as if set forth herein in their entirety.

26.    By letter dated October 31, 2003, Emerald gave Sea Star thirty (30) days prior written notice of its termination of the Equipment Rental Agreement and demanded

that Sea Star redeliver all Emerald equipment to Emerald on or before December 1, 2003 in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement.

27.    Upon investigation, Emerald has determined that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement.

28.    Sea Star has refused, and still refuses, to return said equipment and has wrongfully and unlawfully converted the same to its own use.

WHEREFORE, Emerald, pursuant to 11 U.S.C. Section 342, requests the entry of an Order providing for the turnover of damages equaling unpaid rent, and the value of the equipment, together with interest and costs of suit.

## COUNT IV
### (Accounting)

29.    Plaintiff incorporates paragraph 1 through 28 set forth above, as fully as if set forth herein in their entirety.

30.    Certain information pertaining to the usage of Emerald equipment while in the possession of Sea Star remains solely in the possession of Sea Star.

31.    Emerald has requested that Sea Star provide a full accounting of Sea Star's usage of all Emerald equipment.

32.    Sea Star, to date, has failed to provide such accounting.

WHEREFORE, Emerald requests an Order requiring that Sea Star provide to

Emerald a full accounting of all Sea Star's usage of Emerald equipment.

Bradford J. Sandler, Esq. (No. 4142)
ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
919 North Market Street, Suite 710
Wilmington, DE 19801
(302) 654-8200

                    and

Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Suite 900, Four Penn Center
Philadelphia, PA 19103-2808
(215) 568-7515

Counsel to Debtor Emerald Equipment
Leasing, Inc.

EQUIPMENT RENTAL AGREEMENT   pUG.

This Agreement is made and executed this _As of 31_ day of July, 2002 between EMERALD EQUIPMENT LEASING, INC., a Delaware corporation having its principal place of business at 101 South King Street, Gloucester City, New Jersey 08030 ("Lessor"), and SEA STAR LINE, LLC, a Delaware limited liability company having its principal place of business at 100 Bell Tel Way, Suite 300, Jacksonville, Florida 32216 ("Lessee"). Terms and conditions of this Agreement cover equipment in use at various times commencing April 29, 2002. Such equipment is of the types, at daily lease rates, and with damage exclusions and stipulated loss values delineated on Schedule "A", which is attached to and incorporated into this Agreement ("Equipment"). In consideration of the mutual covenants and conditions delineated below, the Parties agree:

1. **Equipment.** Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the Equipment. Delivery of all Equipment to Lessee or its agents by Lessor shall be effected and evidenced by signed and dated equipment interchange receipts and shall be subject to the terms and conditions of this Agreement.

2. **Term.** The lease term for each item of Equipment shall begin on the date when such Equipment is delivered to Lessee or its agent and shall end on the date when such Equipment is taken off hire pursuant to section 10 below. Unless the parties otherwise agree in writing, the minimum rental period for each item of Equipment shall be thirty (30) days. All provisions of this Agreement shall apply during any extension or renewal period. Either party may terminate this Agreement on thirty (30) days' prior written notice to the other party.

3. **Rental.** Lessee shall pay rent and all other charges under this Agreement on a monthly basis. Each payment for particular Equipment will become due on the tenth day of the month following the month of use, unless the parties otherwise agree in writing. In the event Lessee fails to make timely payment, interest shall be due on any overdue amount at a rate of eighteen percent (18%) per annum, commencing ten (10) days after Lessee receives Lessor's invoice for such overdue amount. With respect to particular Equipment, Lessee's obligation to pay rent and other charges shall terminate immediately if Lessee purchases and pays for such Equipment.

4. **Ownership; Sublease; Substitution; Encumbrances.**

Exhibit A

(a)  This Agreement shall be deemed a lease for all purposes. The Equipment shall remain Lessor's property; and Lessee shall acquire no title, ownership, or purchase rights of any nature by virtue of this Agreement.  In the event that notwithstanding the express intent of the parties, a court of competent jurisdiction determines that this Agreement is not a true lease but is rather a sale and extension of credit, a lease intended for security, a loan secured by the Equipment or other similar arrangement, the parties agree: (i) (A) to secure the prompt payment and performance as and when due of all Lessee's obligations (both now existing and hereafter arising) under this Agreement, Lessee shall be deemed to have granted, and it hereby grants, to Lessor a first priority security interest in the following (whether now existing or hereafter created): the Equipment, all replacements, substitutions, attachments, accessions, and additions thereto, all warranties and licenses relating thereto and all proceeds (cash and non-cash but without power of sale), including the proceeds of all insurance policies, insuring the Equipment; (B) with respect to the Equipment, in addition to all other rights and remedies available to Lessor under this Agreement upon the occurrence of an event of default. Lessor shall have all of the rights and remedies of a first priority secured party under the Uniform Commercial Code; and (ii) (A) the principal amount of any such loan shall be an amount equal to the aggregate of the "Stipulated Loss Values" of all outstanding Equipment; (B) the term of any such loan shall be co-extensive with the term of this Agreement; and (C) the loan payments under any such loan shall be the rental payments specified in this Agreement.

(b)  This Agreement shall be subject and subordinate to any lease or security interest in favor of a third-party lessor or lender to Lessor.  In the event any such third party becomes entitled to possession of any Equipment, Lessee shall return the Equipment to such third party at one or more delivery locations specified in paragraph 10.

(c)  Lessee shall not pledge, hypothecate, mortgage, create any security interest in, or otherwise encumber or permit the encumbrance of any Equipment.  At its own expense, Lessee promptly shall take action necessary to discharge any lien, charge, or other encumbrance asserted against any Equipment arising after delivery of such Equipment to Lessee and as a result of Lessee's act or omission.

(d)  Each item of Equipment shall have Lessor's serial number and other identifying marks affixed.  Lessee shall not obliterate, alter, conceal, or otherwise change or hide such number or marks.

(e)  Without Lessor's prior written consent, Lessee shall not assign any right or interest in this Agreement or any Equipment and shall not sublet or otherwise relinquish possession of any Equipment, except to other carriers as evidenced by interchange agreements.  Lessor may assign all or any part of its obligations, right, title, or interest in this Agreement, including all rental charges due or to become due.  Lessee expressly consents to Lessor's application of any payment credits to which it is entitled under this Agreement to payment obligations of Lessee under this Agreement.

5.  **Equipment Delivery and Interchange**.  Lessor shall make the Equipment available for delivery to Lessee at the locations agreed by the parties.  The signature of Lessee's representative on an equipment interchange receipt shall constitute conclusive evidence that the Equipment to which the receipt relates has been delivered to Lessee.

6.  **Maintenance and Repairs**.

(a)  At its own cost and expense, Lessee shall keep the Equipment in operating condition.  Lessee shall be responsible for all damages and changes in the condition of the Equipment after delivery by Lessor, subject to section 10 below and Schedule "A".  Lessee's maintenance and repair obligations include washing and cleaning the Equipment regularly to prevent corrosion, spot painting, and replacing of parts as necessary.  Lessee shall comply with all loading limitations, handling procedures, and operating instructions to prevent excessive impact or unbalanced loading.  Lessee shall not use any Equipment for storage or transportation of cargo which may damage the Equipment, including but not limited to unprotected corrosive substances, poorly secured materials, or bulk commodities which may corrode, oxidize, severely dent, puncture, contaminate, stain, or damage the Equipment.

(b)  Lessee shall make no modifications, improvements, or replacements and shall not attach accessories or additions to any Equipment, without Lessor's prior written consent, which shall not be unreasonably withheld, except as necessary to comply with this Agreement.     All improvements, repairs, accessories, and replacements made or attached to any Equipment by Lessee shall become part of the Equipment and Lessor's property without Lessor incurring any liability or, at Lessor's option, shall be removed

and the Equipment restored to its original condition at Lessee's expense. Absent written agreement, Lessee shall not change or supplement identification marks on any Equipment.

(c) Lessee shall comply with all conventions, laws, regulations, or orders of federal, state, foreign, and local governments and agencies having jurisdiction over the Equipment or its use, operation, or storage and shall be liable for all fines, penalties, and fees for failure to comply.

7. **Warranties.** Equipment subject to this Agreement is leased "AS IS", and Lessor warrants only that Lessee shall have quiet possession against any person claiming through Lessor. LESSOR MAKES NO EXPRESSED OR IMPLIED WARRANTY OF QUALITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR USE WITH RESPECT TO ANY EQUIPMENT AND HAS NOT MADE, AND SHALL NOT BE BOUND BY, ANY STATEMENT, AGREEMENT, OR REPRESENTATION NOT SPECIFIED IN A WRITING SIGNED BY LESSOR.

8. **Taxes and Other Expenses.** Lessee agrees to pay all sales, use, excise, property, gross income, gross receipts, stamp, or other taxes; levies; import duties; charges; or withholdings of any nature (together with any penalties, fines, or interest) imposed against Lessor, Lessee, or the Equipment by any governmental or taxing authority with respect to any Equipment; upon the leasing, delivery, possession, use, operation, redelivery, or other disposition of such Equipment; or upon the rentals, receipts, or earnings arising from such Equipment; excluding, however, any such taxes, levies, import duties, charges, and withholdings that are imposed or accrued with respect to any Equipment prior to its delivery to Lessee and any taxes measured by Lessor's income. Lessee shall pay all other expenses relating to Equipment arising during the rental period and resulting from Lessee's acts or omissions, including but not limited to expenses incurred in ports, depots, or storage areas.

9. **Risk of Loss.**

(a) During the term of this Agreement, Lessee shall bear all risk of loss, damage, theft, or destruction to the Equipment. No such loss, damage, theft, or destruction of Equipment, in whole or part, shall impair Lessee's obligations under this Agreement, all of which shall continue in full force and effect. At Lessor's option and subject to Schedule "A", Lessee shall (i) put the affected Equipment in the condition that existed upon delivery to Lessee or (ii) pay Lessor an amount equal to all accrued and unpaid rent due under this Agreement, together with the Stipulated Loss

Value, with respect to the affected Equipment, less the amount of all recoveries by Lessor from parties other than Lessee for such loss, damage, theft, or destruction.

(b)  Upon compliance with subparagraph (a), Lessee shall be subrogated to Lessor's rights with respect to any insurance policies and claims for reimbursement by third parties in connection with such loss, damage, theft, or destruction.

10.  Redelivery of Equipment.

(a)  At its sole expense, Lessee shall redeliver Equipment to Lessor at Greenwich Terminal, Philadelphia, Pennsylvania, Sea Star Terminal, Puerto Nuevo, San Juan, Puerto Rico, Greenwich Terminal, Port of Jacksonville, Florida, or any other location as to which the parties have agreed in writing.  Each redelivery shall be subject to Schedule "A".  At least seventy-two (72) hours prior to actual redelivery, Lessee shall give Lessor a written estimate of types and quantities of Equipment which Lessee intends to redeliver at particular ports.

(b)  Upon redelivery of particular Equipment, the receiving terminal will execute an equipment interchange receipt.  Subject to Schedule "A", Lessee shall return all Equipment to Lessor in the condition that existed upon delivery to Lessee.

(c)  Lessee shall return such Equipment with tires equal in value and condition to those delivered with the Equipment, normal wear and tear excepted.  The value of any tire damage at the time of return is included in the damage exclusion value for such Equipment, as specified in Schedule "A".

(d)  Lessor shall have the right to inspect Equipment leased under this Agreement at reasonable times during normal business hours.  Upon Lessor's reasonable request, Lessee shall furnish a list of all locations of Equipment as of the most recent date possible and take reasonable steps to make Equipment available for inspection.  On or before the seventh day of each month, Lessee shall furnish a list of all locations of Equipment as of the end of the previous month.

(e)  At the time of return, Equipment will be taken off hire; and rental charges will cease.  If Equipment is returned to a terminal with damage exceeding the damage exclusion specified in Schedule "A", Lessor will inform Lessee within seven (7) days after return.  Lessor shall have the right to require Lessee to repair Equipment or to authorize repairs at Lessee's expense.  If Lessee

fails to authorize repairs for which Lessor claims Lessee is responsible within ten (10) days after notification of damage, Lessor may promptly authorize such repair and rental charges will cease on completion of such repairs (no later than 10 business days after authorization). Lessee agrees to pay for required repairs no later than ten (10) days after receipt of invoice.

(f)  If Lessee fails to return any Equipment for more than sixty (60) days after the return date specified in a Lessor notice, Lessor may elect to treat such Equipment as lost; and Lessee shall pay Lessor the Stipulated Loss Value of such Equipment, together with all accrued rental charges at the contractual daily rate within fifteen (15) days.

11.  Indemnification and Expenses.

(a)  Lessee shall defend, indemnify and hold Lessor, its agents and employees, harmless from all claims, causes of action, liability damage or loss (including expenses in connection with any claim or suit, such as reasonable attorneys' fees and court costs) arising out of (a) failure by Lessee to comply with its obligations under this Agreement or any attempt by a third party to impose on Lessor liability for Lessee's acts or omissions; (b) any claim for personal injury or death or for property loss or damage (including but not limited to any products liability claim) arising out of possession, leasing, operation, control, use, storage, loading, unloading, moving, maintenance, delivery, or return of any Equipment; and (c) any forfeiture, seizure, impounding of, or charge or lien imposed or asserted against any Equipment as a result of Lessee's acts or omissions.

(b)  Except for Lessee's obligation to pay interest on delinquent rent, neither party shall be liable to the other party or any other person for delay not to exceed sixty (60) days in the performance of any obligation due to events beyond its reasonable control, including but not limited to fire; storm; flood; earthquake; explosion; accidents; acts of God, governmental agencies, or public enemies; sabotage; riots; civil disorders; strikes, lockouts, and other work stoppages; labor disputes; and failure of repair facilities to complete repairs timely.  Under no circumstances shall either party be liable to the other party for exemplary damages.

12.  Insurance.  Lessee will carry and maintain insurance on the Equipment. Upon execution of this Agreement, Lessee shall furnish Lessor with insurance certificates evidencing (a) all-risk loss and damage insurance (including mysterious disappearance,

unexplained loss, war risks, strikes, riots, and civil commotions) on land, afloat, or airborne, in transit or at rest anywhere in the world, in an amount equal to the Stipulated Loss Value of all Equipment leased pursuant to this Agreement; (b) comprehensive general liability insurance, including contractual liability and broad form property damage, with combined single limits of $2,000,000; (c) automobile liability and property damage with combined single limits of $2,000,000; (d) deductibles applicable to each coverage. Each insurance coverage shall (a) name Lessor and its assigns as additional assureds, as their interests may appear; (b) include a loss payable clause in favor of Lessor and its assigns; and (c) include the insurer's undertaking to send Lessor and its assigns written notice at least thirty (30) days prior to any expiration or cancellation of such insurance. If Lessee defaults in payment of any premium under any such insurance policies, Lessor may but shall not be obliged to pay such premium; and Lessee shall repay the premium on demand. Lessee assigns to Lessor all right to insurance proceeds payable to Lessee for damage to or loss of the Equipment.

13. **Events of Default**.

(a) The following shall be events of default under this Agreement:

(i) Continuing failure to pay rent for thirty (30) days after its due date under this Agreement;

(ii) Continuing default in performance of any of Lessee's obligations under this Agreement for thirty (30) days after written notice thereof from Lessor to Lessee;

(iii) Lessee is a party to a merger or consolidation or sells, conveys, or transfers all or a substantial part of its assets or becomes insolvent or admits in writing its inability to pay its debts as they mature or applies for, consents to, or acquiesces in appointment of a trustee or a receiver for Lessee or any subsidiary or any property of either; or, in the absence of such application, consent, or acquiescence, a trustee or receiver is appointed for Lessee or any subsidiary or for a substantial part of the property of either and is not discharged within sixty (60) days; or under bankruptcy or insolvency law, any dissolution or liquidation proceeding is instituted against Lessee or any subsidiary with Lessee's or such subsidiary's consent or acquiescence or remains undismissed for sixty (60) days.

(b)  Upon the occurrence of any default by Lessee under this Agreement, Lessor shall (except to the extent otherwise required by law) be entitled to:

(i) Proceed by appropriate court action or actions to enforce performance by Lessee of the applicable covenants and terms of the Agreement or to recover damages for breach;

(ii) Terminate Lessee's right to possession of, demand return of, or repossess at Lessee's expense any or all of the Equipment without prejudice to any other remedy or claim;

(iii) Elect to sell any or all Equipment after giving thirty (30) days' notice to Lessee at one or more public or private sales and recover the sum of the Stipulated Loss Values of such Equipment, all rent owed through the rent payment immediately preceding the date of such notice, all costs and expenses incurred in searching for, taking, removing, keeping, storing, repairing and restoring and selling such Equipment, all other amounts owed by Lessee under this Agreement, whether as additional rent, indemnification, or otherwise, and all costs and expenses, including reasonable legal fees, incurred by Lessor as a result of Lessee's default under this Agreement after deducting all amounts received by Lessor in connection with such public or private sales;

(iv) Upon notice to Lessee, receive prompt payment from Lessee of an amount equal to the Stipulated Loss Values of all Equipment not sold by Lessor pursuant to clause (iii) above plus, to the extent not otherwise recovered from Lessee pursuant to clause (ii) above, any rent owed through the rent payment date preceding the date of such notice, all costs and expenses incurred in searching for, taking, removing, keeping, storing, repairing, and restoring such Equipment, all other amounts owed by Lessee under this Agreement, whether as additional rent, indemnification, or otherwise, and all reasonable fees and expenses incurred by Lessor as a result of Lessee's default, provided that upon receipt of payment in full of such amount, Lessor shall transfer title to such Equipment to Lessee;

(v) By notice to Lessee, declare this Agreement terminated without prejudice to Lessor's rights in respect of obligations then accrued and remaining unsatisfied; or

(vi) Avail itself of any other remedy or remedies provided by statute or otherwise available at law, in equity, or in bankruptcy or insolvency proceedings.

(c)  The remedies set forth in this Agreement are cumulative. References to additional rent in clause (iii) and (iv) of subparagraph (b) shall include interest at the rate of eighteen percent (18%) per annum to the date Lessor receives any amount payable under said clause from the due date to and including the rent payment date immediately preceding the date on which notice is given under said clause and interest at the same rate on all other costs, expenses, and losses for which Lessor is entitled to payment under said clause to the date Lessor receives any reimbursement from the respective dates Lessor incurs such costs, expenses, and losses.

14.  **Applicable Law.**  This Agreement shall be interpreted and the rights, liabilities and duties of the parties determined in accordance with the laws of the State of Maryland.

15.  **Miscellaneous.**

(a)  This Agreement is binding upon the parties and their respective legal representatives, successors and assigns. This Agreement contains the entire agreement between the parties and, subject to the provisions of section 1, may not be amended, altered, or modified, except by a writing signed by the party to be bound.

(b)  All notices under this Agreement, including but not limited to billing by Lessor for rental charges and payments by Lessee shall be addressed as follows, unless or until either party gives written notice to the contrary to the other party:

        Lessor: Emerald Equipment Leasing, Inc.
                101 South King Street
                Gloucester City, NJ 08030
                Attn.: Arthur Davis
                Telefax: 856-742-3250

        Lessee: Sea Star Line, LLC
                100 Bell Tel Way, Suite 300
                Jacksonville, FL 32216
                Attn.: Philip V. Bates
                Telefax No.: 904-724-3011

All notices shall be in writing and delivered by hand delivery, registered or certified mail, or confirmed telex or telefax.

(c)  The provisions of this Agreement are separable and any provisions found upon judicial interpretation or construction to be

prohibited by law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions of this Agreement.

(d) No waiver of any remedy or other right under this Agreement shall operate as a waiver of any other remedy or right nor shall any single or partial exercise of any remedy or right preclude any other or further exercise thereof or any other remedy or right.

IN WITNESS WHEREOF, the parties have executed this Equipment Rental Agreement as of the day and year first written above.

LESSEE:
Sea Star Line, LLC

By: _____

_____
Title

LESSOR:
Emerald Equipment Leasing, Inc.

By: _____

_____
Title

02-3523-001e

## EQUIPMENT SCHEDULE A

**EMERALD EQUIPMENT LEASING, INC.**

| EQUIPMENT TYPE | DAILY LEASE RATE | DAMAGE EXCLUSION | STIPULATED LOSS VALUE |
|---|---|---|---|
| 20' DV | $1.00 | $285.00 | $1,000.00 |
| 40' DV | $1.25 | $1,200.00 | $1,000.00 |
| 40' HV | $1.50 | $800.00 | $1,000.00 |
| 45' HV | $2.00 | $800.00 | $1,000.00 |
| 40' RV | $6.00 | $16,480.00 | $4,000.00 |
| 20' CH | $2.20 | $640.00 | $2,200.00 |
| 40' CH | $2.20 | $640.00 | $2,200.00 |
| 45' CH | $2.40 | $640.00 | $2,200.00 |
| Gen Sets | $4.50 | $640.00 | $2,200.00 |

19