
UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC,<br>a limited liability company, | : | CIVIL ACTION |
| Plaintiff, | : | |
| -vs- | : | |
| EMERALD EQUIPMENT LEASING,<br>INC., a corporation, | : | |
| Defendant/Plaintiff<br>on the Counterclaim | : | Case No. 05-CV-00245-(JJF) |
| -vs- | : | |
| SEA STAR LINE, LLC | : | |
| Defendant on the<br>Counterclaim | : | |

## AMENDED COUNTERCLAIM OF EMERALD

Emerald Equipment Leasing, Inc., by and through its undersigned counsel, files this Amended Counterclaim against Sea Star Line, LLC, and in support, avers as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. Sections 1334 and 157 and Sections 542 of Title 11 of the United States Code (the "Bankruptcy Code"). In addition, this Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C.A. Section 1333.

2. Venue is appropriate before this Court by virtue of, and in accordance with, inter alia, 28 U.S.C. Section 1409.

## PARTIES

3. Counterclaimant is Emerald Equipment Leasing, Inc. ("Emerald"), a Debtor-in-Possession having filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date"). Emerald remains in possession of its assets and continues to operate its business under the applicable provisions of the Bankruptcy Code.

4. Emerald was organized in October, 1997 under the laws of the State of New Jersey and was engaged in business as a lessor of various equipment used in the ocean going transportation business.

5. Defendant on the Counterclaim is Sea Star Line, LLC ("Sea Star"), a company engaged in the shipping business, inter alia, as an ocean carrier transporting cargo, with a place of business located at 100 Bell Tel Way, Suite 300, Jacksonville, FL 32216.

## BACKGROUND

6. Prior to the Petition Date, Emerald leased all of its equipment to NPR, Inc. and Holt Cargo Systems, Inc. Said lease with NPR, Inc. and Holt Cargo Systems, Inc. of Emerald's equipment was rejected by a Consent Order entered by this Court dated May 10, 2002 (the "Consent Order"), but effective as of April 18, 2002.

7. On or about April 26, 2002, an Order was entered by the Bankruptcy Court authorizing the sale of certain NPR assets (the "Sale") to Sea Star (the "Sale Order"). As part of the Sale, Sea Star purchased certain ships and other assets of NPR, Inc., including NPR's bookings.

8. As a result of Sea Star's purchase of the NPR assets, Sea Star needed additional equipment to move cargo in the course of its business.

9. Accordingly, on or about May 1, 2002, Sea Star and Emerald entered into an agreement (the "E-Mail Agreement" attached hereto as Exhibit "A"), whereby Sea Star agreed to lease Emerald equipment previously leased by Emerald to NPR.

10. The E-Mail Agreement was effective as of May 1, 2002 and was applicable to any cargo worthy Emerald equipment, which Sea Star dispatched out of any port terminal or inland depot for customer use at agreed upon per diems (the "Emerald Equipment").

11. Sea Star used the Emerald Equipment pursuant to the E-Mail Agreement for a number of months, before the leasing arrangement was more formally documented in a written agreement executed by Sea Star and Emerald in the later part of September, 2002 (the "Equipment Rental Agreement" attached hereto as Exhibit "B").

12. At the inception of the lease between Emerald and Sea Star, the Emerald Equipment was not in Emerald's possession; instead all of the equipment was, inter alia, in terminals, in the possession of shippers, at inland depots or on board NPR vessels purchased by Sea Star.

13. Emerald was not notified when Sea Star commenced using any particular piece of the Emerald Equipment and no receipt or other document was needed from Emerald acknowledging Sea Star's use of the Emerald Equipment before Sea Star could use that equipment.

14. Under these circumstances, in order to ascertain rental payments due for the Emerald Equipment, Sea Star provided Emerald with monthly "self-billing reports", whereby Sea Star undertook the obligation to report to Emerald its "usage" of the Emerald Equipment.

15. Upon later investigation, Emerald discovered that the "self billing reports" prepared by Sea Star were grossly understated, failing, inter alia, to account for numerous pieces of Emerald Equipment which Sea Star had been using without paying rental charges to Emerald and failing to pay the appropriate amounts for usage of equipment contained in the "self-billing reports".

16. On or about October 31, 2003, Emerald exercised its rights to terminate the Equipment Rental Agreement in accordance with its terms.

## COUNT I
### (Post-Petition Account Receivable/Breach of Lease)

17. Plaintiff incorporates paragraph 1 through 16 set forth above, as fully as if set forth herein in their entirety.

18. Sea Star is in breach of its obligations under the terms of the Equipment Rental Agreement as a result of its failure to pay the following:

   (a) Rent due to Emerald;

   (b) Loss incurred as a result of the loss, damage, theft or destruction of certain equipment.

19. In addition, after the termination of the Equipment Rental Agreement, Sea Star was required to return the equipment to Emerald at certain designated terminals. Despite this, Sea Star has failed to return numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement.

20. As a result of Sea Star's breach of the Equipment Rental Agreement, Emerald has incurred damages in excess of $4,000,000.00.

21. Emerald has provided detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Equipment Rental Agreement. Emerald's work on these invoices is ongoing as it continues its investigation and discovers other Emerald Equipment which Sea Star has used, or has not returned, and has not compensated Emerald under the terms of the Equipment Rental Agreement.

WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00, plus interest at the rate set forth in the Equipment Rental Agreement, attorneys' fees and other charges.

## COUNT II
### (Turnover Action)

22. Plaintiff incorporates paragraph 1 through 21 set forth above, as fully as if set forth herein in their entirety.

23. By letter dated October 31, 2003, Emerald gave Sea Star thirty (30) days prior written notice of its termination of the Equipment Rental Agreement and demanded that Sea Star return all Emerald equipment to Emerald on or before December 1, 2003 in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement.

24. Upon investigation, Emerald has determined that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement.

WHEREFORE, Emerald, pursuant to 11 U.S.C. Section 342, or otherwise, requests the entry of an Order providing for the turnover of damages equaling the value of the unreturned equipment, together with interest and costs of suit.

## COUNT III
### (Accounting)

25. Plaintiff incorporates paragraph 1 through 24 set forth above, as fully as if set forth herein in their entirety.

26. Certain information pertaining to the usage of Emerald Equipment while in the possession of Sea Star remains solely in the possession of Sea Star.

27. Emerald has requested that Sea Star provide a full accounting of Sea Star's usage of all Emerald Equipment.

28. Sea Star, to date, has failed to provide such accounting.

WHEREFORE, Emerald requests an Order requiring that Sea Star provide to Emerald a full accounting of all Sea Star's usage of Emerald Equipment.

## COUNT IV
### (Fraud)

29. Plaintiff incorporates paragraphs 1 through 28 set forth above, as fully as if set forth herein in their entirety.

30. The total rent payments made by Sea Star for its use of Emerald Equipment from April 29, 2002 through December 31, 2003 totaled $683,686.85.

31. The information (or lack thereof) provided by Sea Star on its "self-billing reports", upon which Sea Star based its rental payments, was false and/or misleading.

32. Specifically, the self-billing reports grossly underreported Sea Star's usage of the Emerald Equipment on diverse dates between April 29, 2002 and December 31, 2003, by (i) failing to properly account for the full period of time Sea Star was responsible for rental payments for numerous items of Emerald Equipment which Sea Star acknowledged using; and (ii) by failing to account, at all, for various items of Emerald Equipment which Sea Star used, but which it never acknowledged using.

33. Emerald's investigation, which is continuing, has determined that it believes the extent of rental charges owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00. In addition, Emerald believes, based upon its continuing investigation, that Sea Star used various pieces of Emerald Equipment which it never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rental totaling approximately $1,800,000.00.

34. The shear magnitude of the huge discrepancy between Sea Star's reported usage of the Emerald Equipment (as shown on the Sea Star "self- billing reports") and what Emerald contends was the actual Sea Star usage of Emerald Equipment, evidences an intent to defraud Emerald, or at the very least, a reckless indifference as to the truth of the matters contained in the "self-billing reports".

35. Attached hereto and marked as Exhibit "C" is a schedule of certain Emerald Equipment used by Sea Star (in this case, 40 foot chassis) specifically identifying each item of equipment, the dates of usage reported by Sea Star for that specific piece of equipment, Emerald's contention as to the actual dates of Sea Star's usage of that particular piece of equipment, and the amount of rent

owed, but unpaid, for each said specific piece of equipment. Similar schedules (which are voluminous), based upon Emerald's investigation to date, have been supplied to Sea Star for other types of Emerald Equipment used by Sea Star, which includes 20 foot chassis, 45 foot chassis, 20 foot DV containers, 40 foot DV containers, 40 foot reefer containers, 40 foot HC containers, 45 foot HC containers, and gen sets. These schedules specifically set forth the relevant equipment pieces, dates of usage, and other related information identifying the nature of the defective information contained in the Sea Star "self-billing reports".

36. Other indicia of fraudulent and/or misleading information supplied by Sea Star include, but is not limited to the following:

(a) Sea Star appears to have backdated certain "terminal inter-change receipts"(known as "TIRs"). Attached hereto and marked as Exhibit "D" is a schedule identifying certain of those backdated TIRs;

(b) Sea Star subleased to a third party, CSX Line, from May 15, 2002 to July 17, 2002 various pieces of Emerald Equipment, which sublease activities were not permitted by the Equipment Rental Agreement. Further, most of the equipment pieces subleased to CSX Line were never included on Sea Star's "self-billing reports". Attached hereto and marked as Exhibit "E" is a copy of Sea Star invoice to CSX Line and schedules identifying the equipment pieces involved;

(c) certain documentation indicates that duplicate "self-billing reports" were prepared by Sea Star for the month of September, 2002 indicating different amounts for the same month. (see Exhibit "F");

(d) Emerald believes that other information pertinent to Sea Star's fraudulent conduct may be within Sea Star's exclusive control, and, as such, subject to further investigation.

37. Sea Star prepared the "self billing reports" knowing that the information contained on those reports was false and misleading or prepared the reports with reckless indifference as to the veracity of the information contained in the "self billing reports".

38. Sea Star prepared the inaccurate "self billing reports" with the intention of defrauding Emerald.

39. Emerald had a right to and did in fact rely on the misrepresentations made by Sea Star in the "self billing reports".

40. As a result of Emerald's reliance on the fraudulent misrepresentation of Sea Star in the "self billing reports", Emerald suffered damages in excess of $4,000,000.00.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

## COUNT V
### (Constructive Fraud)

41. Plaintiff incorporates paragraphs 1 through 40 set forth above, as fully as if set forth herein in their entirety.

42. Sea Star, in undertaking the obligation of providing "self-billing reports", had a duty to accurately account for the use of Emerald's Equipment and to ensure that it accurately reported and compensated Emerald for the use of the equipment.

43. Sea Star breached its duty to Emerald in that it failed to accurately account for the usage of Emerald's Equipment and properly reimburse Emerald for that use.

44. As a result of Sea Star's inaccurate reporting of its use of the Emerald Equipment, whether intended to deceive Emerald or not, Sea Star has made representations which have a tendency to deceive and undermine confidence and are injurious to the public interest.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

## COUNT VI
### (Fraudulent Concealment)

45. Plaintiff incorporates paragraphs 1 through 44 set forth above, as fully as if set forth herein in their entirety.

46. Sea Star owed a duty to Emerald to disclose its use of the Emerald's Equipment.

47. Sea Star failed to accurately disclose its use of the Emerald's Equipment.

48. Sea Star intended to defraud Emerald when it provided Emerald with the "self billing reports" grossly under reporting Sea Star's use of the Emerald Equipment.

49. Emerald justifiably relied upon the fraudulently prepared "self billing reports".

50. As a result of Emerald's reliance upon Sea Star's fraudulently prepared "self billing reports", Emerald suffered damages in excess of $4,000,000.00.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

## COUNT VII
### (Negligent Misrepresentation; Breach of Fiduciary Duty)

51. Plaintiff incorporates paragraphs 1 through 50 set forth above, as fully as if set forth herein in their entirety.

52. Sea Star had a fiduciary duty to accurately report to Emerald the equipment usage and the costs incurred as a result of said usage.

53. Sea Star's actions in preparing "self-billing reports" which were false and/or misleading acted in a negligent and undue manner, thereby breaching its fiduciary duty to Emerald.

54. Sea Star knew that Emerald relied upon Sea Star to accurately report the usage of the Emerald Equipment and the costs incurred.

55. Sea Star was aware that not only would Emerald rely on the "self billing reports" to determine the rental fees for the Emerald Equipment but was also aware that an accurate report from

Sea Star was the only reasonably available method for Emerald to determine the actual usage of the Emerald Equipment.

56. Emerald's reliance upon Sea Star's "self billing reports" was not only justified, it was necessary to maintain the relationship between the parties as provided for in the Equipment Rental Agreement.

57. Emerald, having relied upon the "self billing reports" provided by Sea Star was damaged in that it was unable to collect the actual rents earned based on Sea Star's usage of the Emerald Equipment.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

ADELMAN LAVINE GOLD AND LEVIN, A Professional Corporation

By: /s/ Bradford J. Sandler
Bradford J. Sandler, Esq. (No. 4142)
919 North Market Street, Suite 710
Wilmington, DE 19801
302-654-8200
Counsel for Emerald Equipment Leasing, Inc.

-and-

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Suite 900, Four Penn Center
Philadelphia, PA 19103-2808
215-568-7515
Counsel for Emerald Equipment Leasing, Inc.