UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:04-CV-146-99HTS

SEA STAR LINE, LLC,
a limited liability company,

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

    Defendant.
_____/

## REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, SEA STAR LINE, LLC, requests Defendant, EMERALD EQUIPMENT LEASING, INC., to produce the following documents for inspection and copying within thirty (30) days after service of this Request:

## DEFINITIONS

As used in this Request, unless the context indicates otherwise, the following definitions apply:

    1.    "PLAINTIFF" or "SEA STAR" means SEA STAR LINE, LLC.

    2.    "DEFENDANT" or "EMERALD" means EMERALD EQUIPMENT LEASING, INC. and its subsidiaries, branches, departments, divisions, and affiliates, as well as all other organizations in which DEFENDANT has a management or controlling interest. The term "DEFENDANT" or "EMERALD" also includes all present and former directors, officers, executives, and employees of EMERALD EQUIPMENT

LEASING, INC., and all agents, representatives, and other persons acting or purporting to act on behalf of DEFENDANT.

3. "MBC" means MBC LEASING CORP., and its subsidiaries, branches, departments, divisions, and affiliates, as well as all other organizations in which said entity has a management or controlling interest. The term "MBC" also includes all present and former directors, officers, exhibits, and employees of MBC LEASING CORP., and all agents, representatives, and other persons acting or purporting to act on behalf of MBC LEASING CORP.

4. "DOCUMENT" or "DOCUMENTS" mean anything which may be considered to be a DOCUMENT or tangible thing within the meaning of the Federal Rules of Civil Procedure and means the original, or any copy if the original is not available, of all written or graphic matter, drafts, originals and non-conforming copies which contain deletions, insertions, handwritten notes or comments, however produced or reproduced, and any other tangible permanent record. Without limitation such term shall include all letters, correspondence, e-mails, records of conferences, conversations, and other communications, memoranda, notes, telegrams, summaries, telephone logs and records, Blackberry and other wireless records, teletypes, telefaxes, telexes, private written messages, desk calendars, diaries, appointment books, agendas, minutes of meetings, schedules, reports, studies, appraisals, analyses, lists, surveys, budgets, financial statements, financial projections, financial calculations, contracts, agreements, proposed agreements,

notices, canceled checks, charts, graphs, transcripts of interviews, depositions, brochures, affidavits, communications with government bodies, invoices, notes and minutes of meetings of boards of directors and committees, inter-office communications, results of investigations, working papers, newspaper and magazine articles, records of payments, releases, receipts, computer data, liftings, vouchers, papers similar to any of the foregoing and other writings of every kind and description (whether or not actually used) and other records of voice recordings, film, tapes, and other data compilations from which information can be obtained. Any alterations, notes, comments, or other material contained in or attached to a copy which is not included in originals or copies to which the preceding definition refers shall be deemed a separate document within said definition.

   5. "AGREEMENT" means any contract, understanding or arrangement among two or more persons, written or oral, formal or informal, express or implied.

   6. "EMERALD Equipment" means any trailer, container, chassis, genset, or other equipment covered by and subject to any written agreement, including but not limited to the Equipment Rental Agreement dated as of July 31, 2002, and any alleged oral agreement between EMERALD and SEA STAR.

   7. "TIR" means Trailer Interchange Receipt, Equipment Interchange Receipt, and all others documents relating to and evidencing movement of EMERALD Equipment into or out of a terminal,

depot, pool, or other facility.

8. "COMMUNICATION" means correspondence, contact, discussion, and any other kind of written or oral exchange between two or more persons, including but not limited to all telephone conversations, face-to-face conversations, meetings, visits, conferences, internal and external discussions, and e-mails, memoranda, Blackberry and other wireless records, and other documents setting forth, summarizing or relating to such correspondence, contact, discussion, and other written or oral exchange.

9. "MEETING" means the contemporaneous presence of natural persons, whether or not presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

10. "PERSON" means any natural person, corporation, company, partnership, joint venture, association, joint-stock company, institution, trustee in bankruptcy, and any other entity organized for any purpose, as well as any agent of any of the foregoing.

11. "IDENTIFY" or "IDENTITY" shall have the following meaning:

>a. When used with respect to a natural person, the person's name, present or last known business address (or the present or last known residence if Defendant lacks knowledge of that person's present or last known business address), and the present or last occupation and employer, if any.

b. When used with respect to a person other than a natural person, the person's full name, address of its principal place of business, and the kind of entity that it is.

c. When used with respect to documents, the document's author and each recipient, the type of document, the date of the document, and the substance of the document's contents.

d. With respect to any agreement, purchase order, on communication:

(A) Whether the agreement, purchase order, or communication was oral or written;

(B) The identity of each document that embodies, records, reflects, refers to, or summarizes such agreement, purchase order or communication;

(C) The date of the agreement, purchase order, or communication; and

(D) The identity of each natural person or persons negotiated, who made or has acknowledge of the agreement, purchase order or communication, the location or locations (i.e., address or other place) where the communication took place, the substance of what was said, and the identity of the person(s) who was/were mentioned or referred to in the contract, purchase order, or communication.

e. With respect to any meeting, act, event, occurrence, or occasion:

(A) The date on which it occurred;

(B) The location (i.e., address or other place) where it occurred;

(C) The identity of each natural person who participated or who has knowledge of the meeting, act, event, occurrence or occasion;

(D) The subject matters which were embraced by the meeting, event, act, occurrence,

      or occasion;

(E) The identity of each person mentioned or referred to at such meeting;

(F) The substance of what was said; and

(G) The identity of each document which embodies, records, reflects, refers to or summarizes each such act, meeting, event, occurrence, or occasion.

12. As is necessary to make each request inclusive rather than exclusive, the singular shall include the plural and *vice versa*; the masculine shall include the feminine and *vice versa*; and the disjunctive "or" shall include the conjunctive "and" and *vice versa*.

13. A document or communication "relating" or "pertaining" to a given subject means any document or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyzes or is in any way pertinent to that subject, including without limitation documents concerning the presentation of other documents.

14. Unless otherwise specified, this document demand runs from January 1, 2002, to the present.

### INSTRUCTIONS

1. If any document responsive to this Request cannot or will not be produced in full, produce each document to the extent possible and specify the reasons for non-production of the remainder.

2. If DEFENDANT considers any Request objectionable, state with specificity the objection and its basis and respond to the Request to the fullest extent consistent with the objection.

3. If attorney-client privilege or work product immunity is claimed by DEFENDANT with respect to a document, identify the author and each recipient of the document and the date such document was created, describe generally the nature of the document (e.g., letter, memorandum, photograph, computer printout, e-mail, wireless record, etc.) and subject matter of the document, and state the basis of the asserted claim of privilege or work product.

4. This Request is continuing in character, so as to require DEFENDANT to file supplemental responses if and as soon as DEFENDANT obtains additional or different documents which are responsive to this Request.

### DOCUMENTS REQUESTED

1. All inventories relating to EMERALD Equipment dated on and after April 1, 2002.

2. All inventories relating to EMERALD Equipment received by EMERALD on and after April 1, 2002.

3. All inventories of EMERALD Equipment prepared by or on behalf of EMERALD on and after April 1, 2002.

4. All inventories relating to EMERALD Equipment prepared by SEA STAR.

5. All inventories relating to EMERALD Equipment

prepared by or on behalf of General Transportation Service, Inc.

6. All inventories relating to EMERALD Equipment prepared by or on behalf of Greenwich Terminals, Inc.

7. All inventories relating to EMERALD Equipment prepared by or on behalf of MBC.

8. All schedules of EMERALD Equipment leased to NPR, Inc.

9. All reports prepared by or on behalf of EMERALD relating to EMERALD Equipment.

10. All documents pertaining to the locations of EMERALD Equipment on and after April 1, 2002.

11. All depot records relating to EMERALD Equipment.

12. All TIRs pertaining to EMERALD Equipment and/dated on and after April 1, 2002.

13. All "Emerald Equipment Move Histories".

14. All documents relating to sales of EMERALD Equipment.

15. All documents relating to use of EMERALD Equipment by persons other than SEA STAR.

16. All documents relating to rental of EMERALD Equipment by persons other than SEA STAR.

17. All documents, including but not limited to notices, received by EMERALD relating to termination of use of EMERALD Equipment.

18. All documents relating to claims by persons other

than SEA STAR pertaining to EMERALD Equipment.

19. All agreements between EMERALD and Greenwich Terminal, Inc. pertaining to EMERALD Equipment.

20. All documents relating to agreements between EMERALD Greenwich Terminals, Inc. pertaining to EMERALD Equipment.

21. All documents pertaining to communications, including but not limited to e-mails, wireless records, and correspondence, between EMERALD and Greenwich Terminals, Inc. pertaining to EMERALD Equipment.

22. All documents relating to agreements between MBC and Greenwich Terminals, Inc. pertaining to EMERALD Equipment.

23. All agreements between EMERALD and General Transportation Service, Inc. pertaining to EMERALD Equipment.

24. All documents relating to agreements between EMERALD and General Transportation Service, Inc. pertaining to EMERALD Equipment.

25. All documents pertaining to communications, including but not limited to e-mails, wireless records, and correspondence, between EMERALD and General Transportation Service Inc. pertaining to EMERALD Equipment.

26. All documents relating to agreements between MBC and General Transportation Service, Inc. pertaining to EMERALD Equipment.

27. All agreements between EMERALD and MBC relating to EMERALD Equipment.

28. All documents pertaining to agreements between EMERALD and MBC relating to EMERALD Equipment.

29. All documents pertaining to communications, including but not limited to e-mails, wireless records, and correspondence, between EMERALD and MBC relating to EMERALD Equipment.

30. All documents pertaining to communications, including but not limited to e-mails, wireless records, and correspondence, between EMERALD and other persons relating to EMERALD Equipment.

31. All documents relating to communications, including but not limited to e-mails, wireless records, and other correspondence, between EMERALD and SEA STAR.

32. All documents pertaining to meeting between EMERALD and Greenwich Terminals, Inc. relating to EMERALD Equipment.

33. All documents pertaining to meetings between EMERALD and General Transportation Service, Inc. relating to EMERALD Equipment.

34. All documents pertaining to meetings between EMERALD and MBC relating to EMERALD Equipment.

35. All documents pertaining to meetings between EMERALD and other persons relating to EMERALD Equipment.

36. All documents pertaining to meetings between EMERALD and SEA STAR relating to EMERALD Equipment.

37. All documents pertaining to an alleged oral

agreement between EMERALD and SEA STAR relating to EMERALD Equipment.

38. All documents pertaining to the Equipment Rental Agreement between EMERALD and SEA STAR.

39. All documents pertaining to EMERALD's termination of the Equipment Rental Agreement.

40. All documents relating to invoices delivered by EMERALD to SEA STAR.

41. All documents pertaining to SEA STAR's dispatches of EMERALD Equipment out of port terminals.

42. All documents pertaining to SEA STAR's dispatches of EMERALD Equipment out of depots.

43. All documents pertaining to SEA STAR's dispatches of EMERALD Equipment for customer use.

44. All documents, including but not limited to self-billing reports, received by EMERALD from SEA STAR relating to EMERALD Equipment.

45. All documents relating to SEA STAR's alleged gross understatement of "self billing reports".

46. All documents pertaining to SEA STAR's alleged failures to account for EMERALD Equipment that SEA STAR had been using.

47. All documents pertaining to rent allegedly due to EMERALD from SEA STAR.

48. All documents pertaining to by SEA STAR's alleged

loss, damage, theft, or destruction of EMERALD Equipment.

49. All documents pertaining to SEA STAR's alleged failure to deliver chassis, gensets, and containers subject to the Equipment Rental Agreement.

50. All documents pertaining to EMERALD's determination that SEA STAR has not returned chassis, gensets, and containers to EMERALD pursuant to EMERALD's demand.

51. All documents relating to EMERALD Equipment that SEA STAR has not returned pursuant to EMERALD's demand.

52. All documents pertaining to SEA STAR's refusals to return EMERALD Equipment.

53. All documents relating to EMERALD's alleged damages in excess of $4,000,000.00.

54. All documents described in Defendant's Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure dated June 30, 2004.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this __16__ day of July, 2004 to **MICHAEL L. GORE, ESQ.**, Shutts & Bowen LLP, P.O. Box 4956, Orlando, FL 32802-4956 and **ALAN I. MOLDOFF, ESQ.**, Adelman Lavine Gold and Levin, Suite 900, Four Penn Center, Philadelphia, PA 19103-2808.

ARMSTRONG & MEJER, P.A.
Suite 1111, Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134
Telephone: (305) 444-3355
Telefax:   (305) 442-4300

By: _____
     TIMOTHY J. ARMSTRONG