UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
    a limited liability company,

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
    a corporation,

    Defendant,

-vs-

SEA STAR LINE, LLC,

    Counter-Defendant.
_____/

Civil Action No. 05-CV-245-JJF

### REPLY TO EMERALD EQUIPMENT LEASING, INC.'S OBJECTION TO SEA STAR LINE, LLC STATEMENT IN ACCORDANCE WITH MAY 8, 2006 ORDER

In its Objection, Emerald Equipment Leasing, Inc. ("EMERALD") alleges that Sea Star Line, LLC ("SEA STAR") "essentially asserts it is entitled to additional protracted discovery, as if this discovery has not already been conducted at Sea Star's insistence concerning the same subject matter." D.I. 96 at 5 ¶ 11. Ignoring the specificity of Sea Star's Statement submitted pursuant to the Court's May 8, 2006 Order, EMERALD complains that Sea Star simply seeks to 'redo' all of the discovery already taken. D.I. 96 at 5 ¶ 11. The Objection raises, but does not answer, obvious questions: How can "[t]he subject matter of the Amended Counterclaim [be] the same subject matter which the parties litigated, through extensive discovery, in the Florida District Court" [D.I. 96 at 4, ¶ 10]--*i.e.,* the Middle District of Florida, which ordered transfer of the case to

this Court on April 20, 2005 before filing of the original Answer, Affirmative Defenses and Counterclaim and almost ten (10) months before filing of the Amended Counterclaim on February 15, 2006? On what basis can EMERALD represent that "Sea Star had ample opportunity to and did take discovery on these issues" [D.I. 96 at 5, ¶ 14]--*i.e.,* issues initially pled in EMERALD's Affirmative Defenses and Amended Counterclaim, all of which postdate the depositions and other discovery in this case?

EMERALD's generic references to the terms "subject matter" and "same subject matter" defy definition: Within the framework of the pleadings *sub judice*, neither the "subject matter" nor the "same subject matter" could have existed when the parties engaged in discovery in the Middle District of Florida. For example, the Amended Counterclaim alleges:

> ...Emerald has provided detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Equipment Rental Agreement. **Emerald's work on these invoices is ongoing as it continues its investigation** and discovers other Emerald Equipment which Sea Star has used, or has not returned, and has not compensated Emerald under the terms of the Equipment Rental Agreement.
> ...
> ...**Emerald's investigation, which is continuing**, has determined that it believes the extent of rental charges owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00. In addition, **Emerald believes, based upon its continuing investigation**, that Sea Star used various pieces of Emerald Equipment which it never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rental totaling approximately $1,800,000.00
> ...
> ... Similar schedules (which are voluminous), **based upon Emerald's investigation to date** have been supplied to Sea Star ....

D.I. 79 at ¶ ¶ 21, 33, 35, 37 (Emphasis added). The Amended Counterclaim also predicates tort

claims on "[o]ther indicia of fraudulent and/or misleading information supplied by Sea Star" that "include, but is not limited to" certain alleged occurrences. D.I. 79 at 7, ¶ 36. According to the Amended Counterclaim, "Emerald believes that other information pertinent to Sea Star's fraudulent conduct may be within Sea Star's exclusive control, **and, as such, subject to further investigation**." D.I. 79 at 7, ¶ 36(d). (Emphasis added). Nowhere in its Objection does EMERALD explain how SEA STAR's counsel would or should have divined the specific "subject matter" of-- and "issues" pertaining to--factual allegations, defenses, and claims that EMERALD eventually would plead and that continue to change.

Assuming *arguendo* that SEA STAR "were well aware" of "[a]ll of the 'issues' which Sea Star now says were 'raised' in the pleadings which postdate depositions" [D.I. 96 at 5, ¶ 14], SEA STAR has had no obligation to take discovery on unpled issues. Not even EMERALD represents that SEA STAR's discovery encompassed all of such issues. EMERALD merely contends that SEA STAR's original Request for Production and Fed. R. Civ. P. 30(b)(6) Notice of Taking Deposition "make clear that the discovery previously taken in this case includes substantially all, if not all of the 'issues' which Sea Star now tells the Court were 'raised' postdate depositions." D.I. 96 at 6 ¶ 16. Of course, EMERALD does not attempt to identify the issues comprising "substantially all" of those initially pled in Affirmative Defenses and the Amended Counterclaim that are included in SEA STAR "discovery previously taken in this case".

Whether "[s]ome of the named deponents have already been deposed [D.I. 96 at 5, ¶ 12] is immaterial. Authorizing the filing of the Amended Counterclaim was within the Court's sound discretion. <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330 (1971). SEA STAR could not have objected on grounds of undue prejudice or delay, although the Amended

Counterclaim would require SEA STAR to depose witnesses previously questioned and to complete further documentary discovery. *E.g.,* S.S. Silverblatt, Inc. v. East Harlem Pilot Block Bldg. 1 Housing Dev. Fund Co., 608 F.2d 28, 43 (2 Cir. 1979); Genentech, Inc. v. Abbott Laboratories, 127 F.R.D. 529, 531 (N.D. Cal. 1989); United Brands, Inc. v. M.V. "Isla Plaza", 770 F. Supp. 220, 223-24 (S.D.N.Y. 1991); *see* Arthur v. Maersk, Inc., 434 F.3d 196, 204-05 (3 Cir. 2006). In S.S. Silverblatt the Second Circuit held that "the burden of undertaking discovery, which Chemical would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits." S.S. Silverblatt, Inc. v. East Harlem Pilot Block Bldg. 1 Housing Dev. Fund Co., *supra,* 608 F.2d at 43. This Court's Memorandum Opinion denying partial dismissal of the Amended Counterclaim clearly contemplates that SEA STAR would conduct discovery with respect to EMERALD's claims. D.I. 86 at 6 n.2.

EMERALD's efforts to justify a proscription against SEA STAR's discovery lack credence. In its Objection EMERALD does not mention that its attorneys not only participated in preparing but also signed a Case Management Report, dated June 10, 2004, that resulted in the Case Management and Scheduling Order, issued on June 16, 2004. D.I. 13, 15. Subsequently EMERALD propounded Interrogatories, Requests for Production, and Requests for Admissions. EMERALD did not object to discovery and seek a protective order until SEA STAR served deposition notices.

On the one hand, EMERALD now contends that "Sea Star refused to join in such a request" by EMERALD "that the Florida District Court alter the discovery deadlines to avoid the

potential for duplicitous[1] discovery since the pleadings have not yet been closed." D.I. 96 at 3, ¶ 4. On the other hand, EMERALD alleges that "[t]he fact that the parties were forced to undertake discovery before the pleadings were closed was precipitated by Sea Star's adamant refusal to jointly request that discovery be held in abeyance in the Florida District Court while the Emerald Motion to Dismiss was pending." D.I. 96 at 6, ¶ 16. EMERALD asserts that SEA STAR "should not now be permitted to utilize this circumstance, which was of its own creation, to unnecessarily further delay these proceedings which has been its true intent from the day more than two years ago when Sea Star filed its improper Declaratory Judgment Action". D.I. 96 at 6, ¶ 16.

Denying EMERALD's Motion for Protective Order Regarding Noticed Rule 30(b)(6) Deposition of Defendant and all Other Depositions in this Case Pending Disposition of Dismissal Motion [D.I. 21], the Florida magistrate judge pointed out:

> Discovery has been ongoing and, prior to the filing of the Motion, no stay of discovery had been sought. As a result of the extension granted by the Court after the filing of the Motion, discovery is currently set to end in approximately three (3) months, on February 1, 2005.... Additionally, it is far from clear that the Motion to Dismiss will be granted.... Under the circumstance presented, an order preventing depositions from proceeding is not warranted.

D.I. 26 at 2. Later the magistrate judge denied EMERALD's Motion for Protective Order Regarding Deposition of Third Party Witness. D.I. 29.

Though "Sea Star refused to join" in EMERALD's requests that "discovery be held in abeyance" and the Florida court repudiated its attempts to delay discovery, EMERALD

---

[1] The primary definition of "duplicitous" is "marked or characterized by deceitfulness in speech or conduct; speaking or acting in two different ways concerning the same subject matter with intent to deceive; double-dealing." Webster's New Universal Unabridged Dictionary 607 (1996). While "duplicitous" has no relevance to SEA STAR's discovery, the adjective certainly could characterize EMERALD's contentions.

nonetheless asserts that SEA STAR's "true intent from the day more than two years ago when Sea Star filed its improper Declaratory Judgment Action" has been to delay these proceedings. D.I. 96 at 3, ¶ 4; 6, ¶ 16. Evidently EMERALD has forgotten that SEA STAR's original Complaint, including the "improper Declaratory Judgment Action" that EMERALD unsuccessfully sought to dismiss, remains pending. The June 16, 2004 Case Management and Scheduling Order stated in part: "Trial term begins June 6, 2005, at 9:00 a.m." D.I. 15.

Ostensibly trial could have occurred in the Middle District of Florida in June 2005, but EMERALD's attorneys convinced the district court to transfer the case. The April 20, 2005 Order stated in part: "According to Emerald, it has a four million dollar claim against Sea Star for unpaid rental charges and its claim against Sea Star is the sole asset of the bankruptcy estate that offers a distribution to creditors in its pending bankruptcy." D.I. 45 at 1. In a September 2005 Stipulation Regarding Disposition of Certain Equipment approved by the bankruptcy court, however, the $4,000,000 claim became EMERALD's assertion "that by Agreement dated February 25, 2004 between Storage Transfer[, LLC] and [EMERALD], Storage Transfer has agreed to a 'carve out' to the [EMERALD] bankruptcy estate of fifteen percent (15%) of any proceeds, net of expenses or other amounts disbursed to third parties, it would otherwise receive on account of its secured claim as a result of any settlement of the Litigation or the collection of any judgment obtained upon prosecution of the claims against Sea Star ...." Attached as Exhibit "A" is a copy of the Stipulation.

EMERALD's position is legally and factually untenable. To deny SEA STAR's right to discovery would be improper. Therefore, SEA STAR respectfully requests that the Court overrule EMERALD's Objection.

Dated: June 8, 2006

SMITH, KATZENSTEIN & FURLOW LLP

/s/ Kathleen M. Miller
Kathleen M. Miller (ID No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-8400
Telecopy: 302-652-8405
Email: kmiller@skfdelaware.com

*Attorneys for Sea Star Line LLC*

OF COUNSEL:
Charles C. Robinson
Garvey Schubert Barer
1191 Second Avenue, #1800
Seattle, WA 98101-2939
Telephone: 206.816.1451
Facsimile: 206.464.0125
Email: crobinson@gsblaw.com

and

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Miami, FL 33134
Telephone: 305-444-3355
Fax: 305-442-4300