**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,                 CIVIL ACTION
a limited liability company,

     Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING,
INC., a corporation,

         Defendant/Plaintiff          Case No. 05-CV-00245-(JJF)
         on the Counterclaim

-vs

SEA STAR LINE, LLC

         Defendant on the
         Counterclaim

## ANSWERS AND OBJECTIONS TO EMERALD EQUIPMENT LEASING, INC.'S INTERROGATORIES DIRECTED TO SEA STAR LINE, LLC, IN ACCORDANCE WITH RULE 16 SCHEDULING ORDER ISSUED ON NOVEMBER 3, 2006

Pursuant to the applicable Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant, Sea Star Line, LLC ("Sea Star"), submits the following answers and objections to the Interrogatories propounded by Defendant/Counter-Plaintiff, Emerald Equipment Leasing, Inc. ("Emerald"):

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Sea Star objects to Emerald's Definitions and Instructions as outside the scope of governing Federal Rules of Civil Procedure.

2. Sea Star objects to paragraph R of Emerald's Definitions as overbroad, contrary to the Court's rulings, and not calculated to lead to admissible evidence within the scope of the

1

Amended Counterclaim.

## INTERROGATORIES

1. As to each piece of Emerald Equipment for which Emerald has made a claim as alleged in the Counterclaim, please state whether Sea Star admits using such piece of Emerald Equipment and, if so, the date Sea Star first used the equipment, the date the piece of Emerald Equipment was returned by Sea Star to Emerald, and identify for each such piece of equipment any document which evidences Sea Star's initial use of that piece of equipment and the return of such piece of equipment to Emerald.

**ANSWER:** Objection. The Interrogatory is overbroad, harassing, and not calculated to lead to discovery of admissible evidence. Furthermore, Emerald has failed to specify or identify "each piece of Emerald Equipment for which Emerald has made a claim as alleged in the Counterclaim" as an attachment to the Amended Counterclaim or to these Interrogatories. Subject to and without waiver of its objections, Sea Star has produced and will continue to produce business records pursuant to Fed. R. Civ. P. 33(d), within a reasonable time after Sea Star receives specification of each piece of Emerald Equipment for which Emerald is making a claim in the Amended Counterclaim.

2. Identify the names and addresses of all Sea Star representatives, employees and/or agents who were authorized, on behalf of Sea Star, to sign TIRs for all Emerald Equipment used by Sea Star in San Juan, Puerto Rico.

**ANSWER:** Union checkers, not Sea Star employees, ordinarily would sign TIRs for equipment that entered or exited Sea Star's terminal in San Juan, whether or not Sea Star had used such equipment. At the request of Emerald and MBC Leasing Corp. representatives, Sea Star

2

employees or security personnel sometimes signed TIRs, gate logs, or other documents authorizing movement of equipment from Sea Star's main terminal facility to locations such as the SAHSI lot, whether or not Sea Star had used such equipment. Pursuant to Fed. R. Civ. P. 33(d), Sea Star has produced and will continue to produce business records relating to Emerald Equipment movements.

3. Identify the names and addresses of all Emerald representatives, employees and/or agents who Sea Star contends were authorized to sign TIRs on behalf of Emerald for all Emerald Equipment used by Sea Star in San Juan, Puerto Rico.

**ANSWER**: Persons known to Sea Star who were authorized to sign and signed TIRs and other documents on behalf of Emerald and MBC Leasing Corp. in connection with inventory, movement, and condition of equipment in San Juan, whether or not Sea Star had used such equipment, include: Thomas Holt, Jr., Arthur Davis, Martin McDonald, Francisco Gonzalez Rios, Tomas Flores Rios, and Joseph Maqueda. Other persons may be identified in depositions or in business records, including copies of TIRs, that Sea Star has produced and will continue to produce pursuant to Fed. R. Civ. P. 33(d). Sea Star also has named potential witnesses in its Rule 26(a)(1) Disclosures and its Statement in Accordance with May 8, 2006 Order.

4. Do you contend that the documents referred to by Emerald in this litigation as "Move histories" do not accurately reflect the movement of Emerald Equipment. If so, please state in complete and full detail your contentions as to why such Move Histories are not reliable.

**ANSWER**: Objection. The Interrogatory fails to define and identify any "Move histories" to which Emerald refers, is overbroad, and demands privileged work product. Furthermore,

3

Emerald has failed and refused to produce the original writings and recordings used to compile printed and handwritten "Move histories" summaries. Such original materials are necessary to audit accuracy and reliability of secondary historical documents, whenever they were prepared and whether or not they purportedly "reflect the movement of Emerald Equipment" as defined.

5. If a Move History, or some other written document, indicates a piece of Emerald Equipment moving in or out of the Dominican Republic after April 27, 2002, do you contend the movement of that equipment could have been caused by some entity other than Sea Star. If so, please advise what other entities Sea Star believes would have been in a position to exercise control over such equipment in order to move such equipment in or out of the Dominican Republic.

**ANSWER:** Objection. The Interrogatory requires speculation and conjecture, fails to define and identify "Move histories" to which Emerald refers, demands privileged work product, and is not reasonably calculated to lead to discovery of admissible evidence. Subject to and without waiver of its objections, Sea Star believes E.T. Heinsen C por A, Priority RoRo, Interline Connection, and Marine Express, as well as repair facilities, truckers, and trucker pools, are examples of entities that would have been in positions to exercise control and to cause movement of equipment now claimed by Emerald into, out of, or within the Dominican Republic.

6. Please identify each and every inventory which Sea Star conducted in connection with Emerald Equipment at any time subsequent to April 27, 2002, stating the date or dates of such inventories, the locations of such inventories, the names and addresses of the persons who took such inventories, the reasons for such inventories, and if said inventories were provided to

4

Emerald, the date such inventories were so provided.

**ANSWER:** Objection. The Interrogatory is overbroad, harassing, and repetitive. Subject to and without waiver of its objections, Sea Star states that pursuant to Fed. R. Civ. P. 33(d), Sea Star has produced business records relating to equipment inventories. Witnesses have testified during depositions regarding inventories, and Sea Star named potential witnesses in its Rule 26(a)(1) Disclosures and its Statement in Accordance with May 8, 2006 Order.

7. Has any Sea Star employee, agent or representative ever backdated TIRs (i.e., signed and dated TIRs with a date that was not contemporaneous with the signature, but rather was a date prior to execution of the TIR), and if so, please state in detail the circumstances and basis for such document to be backdated, including the unit number of each piece of equipment corresponding to such backdated TIR.

**ANSWER:** No, from time to time, Sea Star personnel prepared equipment condition reports on "Container and Interchange Receipt/Inspection Report" forms for execution, particularly in circumstances when MBC Leasing Corp. or Emerald representatives requested movement of equipment that was in storage. Such condition reports may reference dates when such equipment entered Sea Star's terminal in the Port of San Juan. Pursuant to Fed. R. Civ. P. 33(d), Sea Star has produced business records, including but not limited to the reports.

8. Does Sea Star contend that its liability for rental payments for the use of Emerald Equipment terminated at any time prior to the date on which said piece of equipment was returned to Emerald. If so, please state in detail all circumstances under which Sea Star contends its liability for rental payments to Emerald terminated at a time prior to the date on which said

piece of equipment was returned by Sea Star to Emerald.

**ANSWER:** Objection. The Interrogatory is overbroad, harassing, not calculated to lead to discovery of admissible evidence, and demands information subject to work product privilege. Furthermore, Emerald has failed to specify or identify any "piece of Emerald Equipment" covered by the Interrogatory. For each piece of Emerald Equipment, Sea Star's duties and responsibilities have been governed and limited by express terms and conditions of the Equipment Rental Agreement and the Indemnity Agreement, bankruptcy court orders, the facts relating to alleged use, and affirmative defenses, such as those delineated in the Answer and Affirmative Defenses to Amended Counterclaim. Subject to and without waiver of its objections, Sea Star has produced and will continue to produce business records pursuant to Fed. R. Civ. P. 33(d), within a reasonable time after Sea Star receives specification of each piece of Emerald Equipment for which Emerald is making a claim in the Amended Counterclaim.

9. Please describe in detail any discussions between representatives of Sea Star and representatives of Emerald which led to Sea Star's creation of "self-billing reports".

**ANSWER:** Sea Star representatives had no discussions with "Emerald" representatives that led to creation of "self-billing reports". Communications were with designated MBC Leasing Corp. representatives, such as Scott Krieger, Arthur Davis, and Thomas Holt, Jr. Pursuant to Fed. R. Civ. P. 33(d), Sea Star has produced its business records.

10. Did employees, agents or representatives of Sea Star ever input any information into the NPR or Holt computer system. If so, please set forth in complete and full detail all circumstances in connection therewith, including the names and addresses of said employees,

agents or representatives who inputted information into the NPR or Holt Computer Systems or used such computer systems in any port, terminal or depot.

**ANSWER:** Yes, Sea Star employees, agents, or representatives tried to use, and to input information into, the NPR computer system for several weeks after Sea Star purchased the system on April 27, 2002. In connection with equipment, Sea Star personnel recall that Holt, E.T. Heinsen, and MBC Leasing representatives also had access to the NPR system. Pursuant to Fed. R. Civ. P. 33(d), Sea Star has produced business records relating to its use of the NPR system. To utilize and access information in the H.O.L.T. system, Sea Star paid a rental fee after April 27, 2002. However, Sea Star employees did not input information into the H.O.L.T. system, which Holt had imported into the SJIT terminal in San Juan several months earlier. After the asset purchase, a CSX entity served as a Sea Star agent in the former NPR terminal in San Juan and contracted with former SJIT employees to input gate information into the H.O.L.T. system. In turn the H.O.L.T. system should have fed the information into the NPR system, which Sea Star personnel could access for equipment control. This practice continued for several weeks until Sea Star discontinued use of the last vessel purchased from NPR ended and closed the NPR computer system.

*[signature]*

STATE OF FLORIDA )
                 )ss
COUNTY OF DUVAL  )

BEFORE ME, the undersigned authority, personally appeared Andrew Rooks, Director of Equipment of SEA STAR LINE, LLC, who is personally known to me and who stated that he that he has read the Answers to Interrogatories, and that same are true and correct to the best of

7

his knowledge, information, and belief.

SWORN TO AND SUBSCRIBED before me this 30th day of January, 2007.

_____
NOTARY PUBLIC

My Commission Expires:

LISA M. FLORENCE
Commission DD0527907
Expires 3/13/2010
Bonded by (800)432-4254
Florida Notary Assn., Inc.

8

**EXHIBIT "B"**

## ADELMAN LAVINE GOLD AND LEVIN
A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELORS AT LAW

LEWIS H. GOLD
GARY M. SCHILDHORN
BARRY D. KLEBAN
GARY D. BRESSLER
STEVEN D. USDIN
RAYMOND H. LEMISCH
BRADFORD J. SANDLER
ALAN I. MOLDOFF
KATHLEEN E. TORBIT
MARK PFEIFFER
JENNIFER R. HOOVER
ALEXANDER MORETSKY
MARIE C. DOOLEY

SUITE 900
FOUR PENN CENTER
PHILADELPHIA, PA. 19103-2808
(215) 568-7515
FACSIMILE (215) 557-7922
susdin@adelmanlaw.com
www.adelmanlaw.com

90 John Street, Suite 701
New York, NY 10038
(212) 227-9389

919 N. Market Street,
Suite 710
Wilmington, DE 19801
(302) 654-8200

February 9, 2007

### BY FIRST-CLASS MAIL AND TELECOPIER

Timothy J. Armstrong, Esquire
Armstrong & Mejer
Suite 1111, Douglas Center
2600 Douglas Road
Coral Gables, FL 33134

    Re: **Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.**
       **U.S. District Court for the District of Delaware**
       **Case No. 05-CV-00245-(JJF)**

Dear Tim:

   I am in receipt of Sea Star's Answers and Objections to Emerald Equipment Leasing, Inc.'s Interrogatories Directed to Sea Star Line, LLC In Accordance With Rule 16 Scheduling Order Issued On November 3, 2006 (the "Sea Star Answers to Emerald's Interrogatories"). In reviewing Sea Star's Answers to Emerald's Interrogatories, I note the following deficiencies.

   Interrogatory No. 1 - Sea Star has not answered this Interrogatory at all. The objection to the Interrogatory is without merit. Sea Star's statement that Emerald has failed to specify or identify "each piece of Emerald Equipment for which Emerald has made a claim as alleged in the Counterclaim as an attachment to the Amended Counterclaim or to these Interrogatories", is pointless. Sea Star, through discovery in this matter, has been advised by Emerald of each and every piece of Emerald Equipment for which Emerald is asserting a claim in this matter. Those pieces of equipment are specifically identified in the Emerald invoices previously submitted by Emerald in discovery, and which invoices have been updated in the most recent Emerald Response to Sea Star's Discovery Request. The specific information sought in paragraph 1 should be provided now.

   Interrogatory No. 2 - This Interrogatory specifically requests the names and addresses of not only Sea Star employees who are authorized to sign TIRs for Emerald Equipment used by Sea Star in San Juan, Puerto Rico, but also any other Sea Star representatives or agents who are authorized, on behalf of Sea Star, to sign TIRs. Is Sea Star claiming the "union

checkers" were not authorized by Sea Star to sign TIRs? Assuming they were authorized by Sea Star, the requested information should be provided. Furthermore, the answer given by Sea Star admits that Sea Star employees or security personnel signed certain TIRs, but again, the requested information was not provided. The answer provided by Sea Star is not responsive. The names of the union checkers, as well as the Sea Star employees or security personnel should be provided.

Interrogatory No. 4 - This Interrogatory requests Sea Star to advise whether or not Sea Star contends the "Move Histories" accurately reflect the movement of Emerald Equipment. This requires a simple yes or no response. If Sea Star contends the "Move Histories" do not accurately reflect the movement of Emerald Equipment, then the Interrogatory request that Sea Star state in detail its contentions as to why the "Move Histories" are not reliable. This was not answered. The response provided by Sea Star simply states that Emerald "has failed and refused to produce the original and writings and recordings used to compile printed and handwritten "Move Histories" summaries. I am not sure what this means. Please advise specifically what "original writings and recording" you are referring to and when Sea Star made a request for this information.

Interrogatory No. 6 - This Interrogatory requests a list of each inventory which Sea Star conducted with specific information requested for each such inventory. This Interrogatory is not overbroad, harassing and/or repetitive. The specific information requested should be provided.

Interrogatory No. 8 - This Interrogatory simply requests whether Sea Star contends its liability for rental payments for the use of Emerald Equipment terminated at any time prior to the date on which said piece of equipment was returned to Emerald. Again, this requires a simple yes or no. If Sea Star contends its liability for rental payments to Emerald terminated at a time prior to the date on which said piece of equipment was returned by Sea Star to Emerald, the Interrogatory requests that Sea Star state in detail the circumstances for such occurrence. Sea Star's reference to various documents is not responsive to this Interrogatory.

Interrogatory No. 9 - This Interrogatory requests information regarding the details of discussions pertaining to Sea Star's creation of self-billing reports. Sea Star's *ipse dixit* assertions that the persons Sea Star representatives spoke with were representatives of MBC Leasing Corp., and not Emerald, is clearly evasive. The details of the discussions requested should be provided.

Please provide supplemental responses as requested by this correspondence within seven (7) days. If I do not hear from you, I will have no choice but to seek direction from the District Court.

Timothy J. Armstrong, Esquire
February 9, 2007
Page 3


Thank you very much.

Very truly yours,

*[signature]*

ALAN I. MOLDOFF

AIM:md
cc: Emerald Equipment Leasing, Inc.
Gary M. Schildhorn, Esquire

g:\393\10\letters\armstrong-md10

**EXHIBIT "C"**

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

*VIA TELEFAX AND U.S. MAIL*

February 16, 2007

TELEFAX NO. (215) 557-7922

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

    Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

In response to your letter dated February 9, 2007, the allegations as to "deficiencies" in Sea Star's Answers and Objections to Emerald Equipment Leasing, Inc's Interrogatories are unfounded:

Interrogatory No. 1 - Sea Star has objected to this Interrogatory, which is actually an unauthorized request to admit, contravening the Court's Order. Moreover, you attached no equipment list, and Sea Star has no obligation to divine what "each and every piece of Emerald Equipment for which Emerald is asserting a claim in this matter" might be in connection with the Amended Counterclaim for purposes of answering Interrogatories or responding to improper requests for admissions.

Contrary to your contention, the identities of the pieces of "Emerald Equipment" continue to change. With respect to DV and Adjusted DV claims, comparison of the schedules produced in regard to the original Counterclaim with the "Updated schedules ('invoices')" recently produced in regard to the Amended Counterclaim reveals that your client has added numerous pieces and deleted others. With respect to the *per diem* claims, we have not completed comparison of the schedules produced in

Alan I. Moldoff, Esq.
February 16, 2007
Page 2

regard to the original Counterclaim with the "Updated schedules" produced in regard to the Amended Counterclaim, since you did not furnish the documents in electronic formats. Thus, we have not ascertained what equipment identities and other particulars changed. Answering Interrogatory No. 1, Sea Star has properly stated:

> Subject to and without waiver of its objections, Sea Star has produced and will continue to produce business records pursuant to Fed. R. Civ. P. 33(d) within a reasonable time after Sea Star receives specification of each piece of Emerald Equipment for which Emerald is making a claim in the Amended Counterclaim.

Enclosed is an updated index of records produced by Sea Star pertaining to Emerald's previously disclosed equipment claims. With respect to particular pieces of equipment, Sea Star has produced e-mails and other documents showing location and movement of equipment, such as trailer interchange receipts ("TIRs"), gate logs, inventories, and depot records. As stated, Sea Star will continue to supplement production pursuant to Rule 33(d), as Sea Star reviews Emerald's "Updated schedules".

Interrogatory No. 2 - Pursuant to Rule 33(d), Sea Star has produced TIRs, gate logs, and other documents authorizing movement of equipment, whether or not Sea Star had used such equipment. Identification of the signatures on such documents and the burden or deriving or ascertaining the answer to Interrogatory No. 2 is substantially the same for Emerald as it would be for Sea Star. To our knowledge Emerald has raised no issue as to the authority of any "Sea Star representatives, employees, and/or agents who were authorized, on behalf of Sea Star, to sign TIRs" in San Juan, Puerto Rico.

Interrogatory No. 4 - Again, Sea Star has objected to this Interrogatory, which is actually an unauthorized request to admit, contravening the Court's Order. Moreover, you attached no list of "documents referred to by Emerald in this litigation as 'Move histories'", and Sea Star has no obligation to speculate as to your client's documentary references might be. Not only do you demand a blanket admission with respect to a

Alan I. Moldoff, Esq.
February 16, 2007
Page 3

generic category of unidentified documents, but also you have failed to produce the originals or duplicates of the writings used to compile the "Move histories" in compliance with applicable rules, such as Fed. R. Evid. 1002, 1003, and 1006.

   Interrogatory No. 6 - Pursuant to Rule 33(d), Sea Star has produced its voluminous inventories, as well as related e-mails and other records.

   Interrogatory No. 8 - This Interrogatory represents another unauthorized request to admit, contravening the Court's Order. Furthermore, without specifying any situation or identifying particular equipment, the Interrogatory assumes that liability for rental payments arose, obviously invites speculation, demands legal conclusions, and is clearly objectionable. There are many circumstances under which Sea Star's "liability for rental payments for the use of Emerald Equipment terminated...prior to the date on which said piece of equipment was returned to Emerald" or never existed. For example, Sea Star's liability for rent terminated when Sea Star purchased, or MBC Leasing Corp. sold (in its own name or in Emerald's name), equipment that was not returned to Emerald.

   Interrogatory No. 9 - Contradicting Emerald's contention, this Interrogatory does not "request[] information regarding the details of discussions pertaining to Sea Star's creation of self-billing reports." Sea Star has answered directly that there were no "discussions between representatives of Sea Star and representatives of Emerald", as you well know. Pursuant to Rule 33(d), Sea Star has produced e-mails and other records relating to the self-billing reports, as well as the self-billing reports. What is "clearly evasive" about such an answer? That you may have meant to ask a different question is not a ground for demanding a different answer.

   If you have further questions, please contact me.

                                    Very truly yours,

                                    Timothy J. Armstrong

# BATES LABELING INDEX FOR EMERALD DOCUMENTS

**BATES NO.**

| FROM: | TO: | ITEM DESCRIPTION |
|---|---|---|
| SE1 | SE901 | SEA STAR LINE SELF BILLING REPORTS FROM 4/27/02-4/30/04 AND STORAGE/HANDLING INVOICES WITH BACKUP DOCUMENTATION |
| SE902 | SE13071 | COMPLETE MANIFESTS FROM 4/27/02-4/30/04 |
| SE13100 | SE13156 | 4/27/02 JAXPORT INVENTORY |
| SE13157 | SE13179 | 6/22/02 SJU INVENTORY SIGNED BY M. MCDONALD |
| SE13180 | SE13229 | 7/9/02 SJU SHOWROOM INVENTORY |
| SE13230 | SE13262 | 8/15/02 SJU INVENTORY SIGNED BY M. MCDONALD |
| SE13265 | SE13277 | INLAND DEPOT INVENTORIES |
| SE13278 | SE13282 | FURGONERA DOMINICAN INVENTORY |
| SE13300 | SE13313 | BILL OF LADING TO REPOSITION EMERALD EQUIPMENT TO U.S. FROM PUERTO RICO |
| SE13400 | SE13409 | LIST OF EMERALD CHASSIS SOLD TO HORIZON |
| SE13500 | SE13519 | LIST OF EMERALD CHASSIS SOLD TO SEA STAR LINE |
| SE13600 | SE13768 | PLEADINGS/ORDERS/& TRANSCRIPTS, |
| SE13769 | SE13799 | CLOSING ANALYSIS & MEMO |
| SE13800 | SE14115 | NPR AGREEMENT DATED 4/26/02 |
| SE14116 | SE14118 | ASSIGNMENT OF LEASE AS SECURITY 11/20/97 BETWEEN EMERALD AND MBC |
| SE14119 | SE14121 | LESSEES' NOTICE, CONSENT, AND ACKNOWLEDGMENT 11/20/97 BETWEEN EMERALD AND MBC |
| SE14122 | SE14162 | EQUIPMENT RENTAL AGREEMENT 3/18/99 BETWEEN MBC AND NPR |
| SE14163 | SE14173 | SALE AGREEMENT 7/23/02 BETWEEN MBC AND SSL |
| SE14174 | SE14196 | EQUIPMENT RENTAL AGREEMENT 8/1/02 BETWEEN MBC AND SSL |
| SE14197 | SE14205 | INDEMNITY AGREEMENT 9/28/02 BETWEEN MBC AND SSL |
| SE14206 | SE14214 | BANKRUPTCY NOTICE OF MOTION 6/4/04 |
| SE14215 | SE14225 | EQUIPMENT RENTAL AGREEMENT BETWEEN EMERALD AND SSL (DRAFT) |
| SE14226 | SE14234 | EQUIPMENT RENTAL AGREEMENT BETWEEN EMERALD AND SSL (DRAFT) |
| SE14235 | SE14252 | EQUIPMENT RENTAL AGREEMENT BETWEEN EMERALD AND SSL (DRAFT) |
| SE14253 | SE14263 | EQUIPMENT RENTAL AGREEMENT BETWEEN EMERALD AND SSL (FINAL) |
| | | *BACKUP DOCUMENTATION FOR EMERALD CLAIMS INCLUDING TIR'S, EMAILS, INVENTORIES, GATE LOGS:* |
| SE14300 | SE14399 | CHASSIS |

| | | | | |
|---|---|---|---|---|
| SE14400 | SE14499 | | CHASSIS | |
| SE14500 | SE14944 | | REEFERS & CHASSIS | |
| SE15500 | SE16315 | | GENSETS | |
| SE16500 | SE17099 | | 20' CHASSIS | |
| SE17100 | SE17199 | | CHASSIS | |
| SE17500 | SE18099 | | 45' CHASSIS | |
| SE18100 | SE18399 | | CHASSIS | |
| SE18500 | SE18799 | | 40' CHASSIS | |
| SE19000 | SE19399 | | CHASSIS | |
| SE19400 | SE19999 | | CONTAINERS | |
| | | | **CLAIM FORMS SUBMITTED BY ART DAVIS & LORRAINE ROBINS, OF EMERALD, FROM 3/4/2003 TO 1/23/2004** | |
| | | | DATE OF SCHEDULE | CLAIM TITLE |
| SE20000 | SE20001 | 1 | 3/4/03 | A - Container and Chassis shown as at one time under lease to Sea Star still in use at terminal in San Juan |
| SE20002 | SE20003 | 2 | 3/4/03 | B – "Containers and Chassis in use by Sea Star in San Juan and not on lease Used as Fences, Storage, Guards, Office, Shop Area, Pool" |
| SE20004 | SE20005 | 3 | 3/4/03 | C – "Containers return in San Juan since 1/27/03" |
| SE20006 | SE20008 | 4 | 3/11/03 | D – "Containers & Chassis in use by Sea Star in San Juan and not on lease billings used as fences, storage guard shack, offices, shop area, pool Area, as found by Arthur Davis." |
| SE20009 | SE20009 | 5 | 3/11/03 | E – "Lease not RTD" |
| SE20010 | SE20017 | 6 | ORIG: 3/28/03 ADJUSTED: 4/28/03 | F – "Container listed on your emails 6/26/02 and 7/17/02 that were to be returned to Packer Avenue Marine Terminal Philadelphia; Adjusted 4/28/03" |
| SE20018 | SE20020 | 7 | 4/2/2003 | G – "Containers & Chassis listed on your email 6/26 & 7/17/02 that were to be returned at Jacksonville. Off/On hire information taken by us from your self billings. When not available on self billings taken from your emails" |
| SE20021 | SE20021 | 8 | ORIG: 3/25/03 ADJUSTED: 6/2/03 | H – "Chassis On hired in San Juan 4/27/02; Adjusted 6/2/03" |
| SE20022 | SE20027 | 9 | 4/8/2003 | I – "Container loaded PAMT SS Mayaguez 4/26/02 Load & Discharge" |
| SE20028 | SE20030 | 10 | 4/8/2003 | J – "Chassis returned to Jacksonville thru 2/28/03 that are on Sea Star self billing report" |
| SE20031 | SE20034 | 11 | 4/9/2003 | K – "Chassis in use by Sea Star Lines but not on self billing reports" |
| SE20035 | SE20036 | 12 | 4/16/2003 | L – "Gen Sets returned to Jacksonville that are on self billing report 4/11/03" |
| SE20037 | SE20041 | 13 | 4/16/2003 | M – "Gen Sets returned to Jacksonville that were not on self billing report; 4/14/03" |
| SE20042 | SE20042 | 14 | 4/16/2003 | N – "Containers on self billing report returned to Jax; 4/18/03" |
| SE20043 | SE20044 | 15 | 4/16/2003 | O – "Containers in use by Sea Star not on self billing report returned to Jacksonville; 4/11/03" |
| SE20045 | SE20051 | 16 | 5/19/2003 | R – "Schedule 45' CH On self billing report both terminated and not terminated; 5/19/03" |
| SE20052 | SE20053 | 17 | ORIG: 5/27/03 ADJUSTED: 10/17/03 | "DV20 Schedule DV 20' Containers On self billing report terminated and not terminated 5/27/03" |
| SE20054 | SE20055 | 18 | ORIG: 5/28/03 ADJUSTED: 10/17/03 | "DV40 Schedule DV 40' Containers on self billing report terminated and not terminated 5/28/03" |
| SE20056 | SE20059 | 19 | 8/5/2003 | "INV72203 8/5/03 Equipment not on self billing report but was used with units on self-billing report that Gi/Go PAMT" |
| SE20060 | SE20061 | 20 | 8/25/2003 | Misc Chassis – "INV62803 Fla RTD This invoice covers equipment that has been returned to Jacksonville some of which are on your self billing report and others are not" |

| | | | | |
|---|---|---|---|---|
| SE20062 | SE20066 | 21 | ORIG: 12/9/03 ADJUSTED: 12/30/03 (amendment of 20'CH claim of 5/6/03) | "Emerald Equipment Leasing Invoice to Sea Star Line Inc. 12/09/03, Amended 12/30/03, Schedule 20'CH, Units both on self billing report and not on self billing report, Terminated and not terminated" |
| SE20067 | SE20073 | 22 | 12/22/2003 (amendment of 40'RF claim of 5/23/03) | "Emerald Equipment Leasing Invoice 12/22/03, Schedule 40' Reefer Containers, Units in use by SSL both on self billing report and not on self billing report, Terminated and not terminated" |
| SE20074 | SE20085 | 23 | 1/13/04 (amendment of genset claim of 5/20/03) | "Emerald Leasing Invoice to Sea Star Lines Amended 1/13/04; Gen Sets used by SSL both on self billing report and not on self billing report" |
| SE20086 | SE20096 | 24 | 1/7/04 (amendment of 45'CH claim of 10/17/03) | "Emerald Equipment Leasing Invoice to Sea Star Lines, Amended 1/7/04, Units both on self billing report and not on self billing report, Terminated and not terminated; 45' Chassis" |
| SE20097 | SE20109 | 25 | ORIG: 11/11/03 ADJUSTED: 12/16/03 (amendment of 40'CH claim of 5/13/03) | "Emerald Equipment Leasing Invoice to Sea Star Line, Inc 11/11/03, Schedule 40'CH, Units on self billing report both terminated and still on hire – Amended 12/16/03" |
| SE20500 | SE20523 | | JACKSONVILLE GTS TIR'S | |
| SE21100 | SE21244 | | ADDITIONAL CHASSIS TIRS FROM NEWEST CLAIM | |
| SE30000 | SE30471 | | NJ GATE LOGS | |
| SE35000 | SE35118 | | SJU BACK GATE LOG | |
| SE40000 | SE40360 | | DOMINICAN MANIFESTS | |
| SE41000 | SE41856 | | NPR SYSTEM RECORDS | |
| SE50000 | SE53105 | | CORRESPONDENCE & RELATED DOCS | |
| SE54000 | SE54100 | | CORRESPONDENCE & RELATED DOCS | |
| SE60000 | SE60098 | | OUTBOUND LOGS FOR 1st 3 VOYAGES | |
| SE61000 | SE61003 | | SJU INVENTORY DATED 2/23/2004 | |
| SE61100 | SE61140 | | 7/19/2002 NPR REPORT | |
| SE61142 | SE61146 | | JAN'03 IQSHIP REPORT - EMERALD EQUIPMENT | |
| SE61147 | SE61162 | | 7/20/2003 SJU INVENTORY | |
| SE61500 | SE61509 | | GTS REEFER LISTING | |
| SE620000 | SE62066 | | AUG'02 SJU INVENTORY | |