UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC, | : | CIVIL ACTION |
| a limited liability company, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| EMERALD EQUIPMENT LEASING, | : | |
| INC., a corporation, | : | |
| | : | |
| Defendant/Plaintiff | : | Case No. 05-CV-00245-(JJF) |
| on the Counterclaim | : | |
| | : | |
| -vs- | : | |
| | : | |
| SEA STAR LINE, LLC | : | |
| | : | |
| Defendant on the | : | |
| Counterclaim | : | |

**MOTION OF EMERALD EQUIPMENT LEASING, INC. TO COMPEL SEA
STAR LINE LLC'S PRODUCTION OF CERTAIN DOCUMENTS**

Defendant/Counterclaimant, Emerald Equipment Leasing, Inc. ("Emerald"), by its

attorneys, Eckert Seamans Cherin & Mellott LLC, hereby moves this Court for an Order

compelling Sea Star Line LLC ("Sea Star") to produce certain documents in accordance

with Fed.R.Civ.P. 37(a)(2)(B).

**BACKGROUND**

1.    Emerald was engaged in the business of leasing various equipment used in the

ocean going transportation business.  Sea Star is a company engaged in the shipping

business.

2.    Emerald leased to Sea Star various equipment used in the transport of cargo,

initially pursuant to an e-mail agreement, and later formalized by a written lease

agreement (the "Equipment Lease Agreement"), which, <u>inter alia</u>, is now the subject of this litigation.

3.    A dispute arose as to the amount of rent and other charges due from Sea Star to Emerald for the lease of the equipment (the "Emerald Equipment"), which involves thousands of pieces of such equipment.

4.    At the inception of the leasing arrangement between Emerald and Sea Star, the Emerald Equipment was not in Emerald's possession; instead, this equipment was located in various terminals, shipper locations, inland deposits and other locations.  Further, Emerald was not notified when Sea Star commenced using the Emerald Equipment. Rather, Sea Star simply began using the Emerald Equipment wherever it was located.

5.    Due to these circumstances, where only Sea Star knew which equipment it was using, Sea Star agreed to provide Emerald with monthly "self-billing reports" (the "Sea Star Self-Billing Reports"), which it prepared, reporting to Emerald its "usage" of the Emerald Equipment.  Sea Star paid for its reported usage of the Emerald Equipment as set forth in the Sea Star Self-Billing Reports.

6.    Emerald believes that Sea Star vastly underreported its usage of the Emerald Equipment on the Sea Star Self-Billing Reports and, accordingly, failed to pay Emerald rent charges due for Sea Star's use of such equipment.  In addition, Emerald believes that Sea Star failed to return many pieces of Emerald Equipment which it had used, for which Emerald contends Sea Star is liable for the equipment's "stipulated loss value". Emerald's claim is in excess of $4,700,000.00.

7.    Certain written discovery was exchanged between the parties pursuant to the Rule 16 Scheduling Order issued on November 3, 2006.

### SEA STAR'S FAILURE TO PRODUCE CERTAIN DOCUMENTS

8.     On or about January 30, 2007, Sea Star served its Response to Emerald's

Request For Production (see Exhibit "A").[1]

9.     On March 22, 2007, counsel for Emerald wrote to counsel for Sea Star seeking

an amicable resolution with respect to Sea Star's objections and/or failure to produce

documents in connection with Emerald's Document Request Nos. 5, 6, 8, 10, 11, 12, 23,

24, 25 and 26-42 (see Exhibit "C").  Sea Star's counsel responded to this request by letter

dated April 9, 2007 advising that its objections and responses to the foregoing requests

for documents would remain as is (see last paragraph of Exhibit "D").

10.    Document request numbers 5, 6 and 8 seek documents from Sea Star which

would disclose any instance of Sea Star's use of Emerald Equipment during the rental

period at issue.  Specifically, Emerald requested copies of "original vessel manifests"

(Request number 5), "stevedore loading and discharge reports" (Request number 6) and

"invoices" (Request number 8).  Sea Star responded to these document requests by

providing only what it calls "equipment loading manifests and vessel manifests in its

custody or control relating to equipment claims by Emerald".  (See Sea Star's responses

to request numbers 5, 6 and 8).  These documents which Sea Star produced appear to be

essentially "redacted" documents which are only portions of the original vessel manifests

limited to Sea Star's version of its use of Emerald Equipment.  Of course, this litigation

alleges that Sea Star used Emerald Equipment which it never "reported" on the Sea Star

Self Billing Reports.  The actual vessel manifests, stevedore loading and discharge

reports, and invoices specifically requested by Emerald would allow Emerald to

determine whether or not various pieces of Emerald Equipment were used by Sea Star

---

[1] Attached as Exhibit "B" is the Emerald Request For Production of Documents.

which was not "reported".  That, indeed, is what this litigation is all about and the requested documents should be produced.

11.    Similarly, Request number 10 seeks "invoices" and "bills of lading" issued by Sea Star to its customers for the period of April 27, 2002 through September 30, 2002. This period of time would also indicate Sea Star's use of Emerald Equipment since these documents would include the relevant equipment identification numbers.  These documents should be produced.

12.    Request number 11 seeks various e-mails, correspondence, business plans, or other documents.  Rather than fully respond to this request, Sea Star has limited its response only to documents which relate to Emerald Equipment.  The document request, however, is more broad in that it seeks information relating to Sea Star's need for equipment at the inception of its lease of the Emerald Equipment.  Emerald contends that Sea Star needed vast quantities of equipment, far more than the equipment Sea Star reported using in its self-billing reports.  The documents requested should be supplied.

13.    Sea Star should remove its objection to Request number 12.  Otherwise, if the documents supplied by Sea Star in response to Request number 12 are the only responsive documents, it should so state.

14.    Requests number 23, 24 and 25 seek all documents which Sea Star has which pertain to various specific pieces of Emerald Equipment.  Sea Star responds to these requests by stating that Emerald has not produced documents which Emerald has in its possession to show Sea Star's use of this equipment.  Of course, this stands this litigation on its head.  It is Sea Star that is in possession of such documents, not Emerald.  Sea Star

should remove its objections and state clearly that it has produced all documents responsive to Request numbers 23, 24 and 25.

15.    Finally, Request numbers 26 through 42 properly request documents upon which Sea Star bases any defense to the claims made by Emerald in connection with the Counterclaim, and/or documents which relate to and/or which Sea Star may introduce as evidence at the time of trial of this litigation in support of its claims in the Complaint and in support of each and every affirmative defense asserted by Sea Star to the Amended Counterclaim.  These document requests are appropriate and should be fully responded to.

## LOCAL RULE 7.1.1 STATEMENT

16.    Reasonable efforts, as indicated above, have been made to amicably resolve this discovery dispute without success.  This statement is made pursuant to Local Rule 7.1.1.

WHEREFORE, Emerald Equipment Leasing, Inc. respectfully requests that this Court grant the relief sought herein.

ECKERT SEAMANS CHERIN & MELLOTT, LLC


By:/s/ Tara L. Lattomus
    Ronald S. Gellert, Esquire (No. 4259)
    Tara L. Lattomus, Esquire (No. 3515)
    300 Delaware Avenue, Suite 1210
    Wilmington, De  19801
    Phone:  302-425-0430
    Fax:     302-425-0432

            and

Gary M. Schildhorn, Esquire
Alan I. Moldoff, Esquire
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA  19102
Phone:  215-851-8400
Fax:      215-851-8383