**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,          Civil Action No. 05-CV-245-JJF

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

    Defendant,

-vs-

SEA STAR LINE, LLC,

    Counter-Defendant.

_____/

### RESPONSE TO EMERALD'S REQUEST FOR PRODUCTION

Pursuant to the applicable Federal Rules of Civil Procedure Plaintiff/Counter-Defendant, Sea Star Line, LLC ("Sea Star"), submits the following response to the Request for Production of documents propounded by Defendant/Counter-Plaintiff, Emerald Equipment Leasing, Inc. ("Emerald"):

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.  Sea Star objects to Emerald's "Definitions" and "Instructions" as overbroad and not authorized by the Federal Rules of Civil Procedure.

2.  Sea Star objects to paragraph 6 of Emerald's Definitions as overbroad, contrary to the Court's rulings, and not calculated to lead to admissible evidence within the scope of

the Amended Counterclaim.

## RESPONSE TO REQUESTS

1.  Sea Star has produced and will continue to produce documents responsive to Request No. 1 in Sea Star's custody or control.

2.  Sea Star has produced and will continue to produce documents responsive to Request No. 2 in Sea Star's custody or control.  To Sea Star's knowledge Emerald has copied many but not all documents described in Request No. 2 and produced by Sea Star.

3.  Sea Star has produced and will continue to produce documents responsive to Request No. 3 in Sea Star's custody or control.

4.  Sea Star has produced and will continue to produce documents responsive to Request No. 4 in Sea Star's custody or control.

5.  Sea Star objects to Request no. 5 on grounds that said Request is overbroad, harassing, outside the scope of legitimate discovery, and not calculated to lead to discovery of admissible evidence.  Sea Star has produced equipment loading manifests and vessel manifests in its custody or control relating to equipment claims by Emerald.

6.  Sea Star objects to Request no. 6 on grounds that said Request if over broad, harassing, outside the scope of legitimate discovery, and not calculated to lead to discovery of

admissible evidence.    Sea Star has produced equipment loading manifest and vessel manifest in its custody or control relating to equipment claimed by Emerald.

7.    Sea Star has no documents responsive to Request No. 7.

8.    Sea Star objects to Request no. 8 on grounds that said Request is overbroad, harassing, outside the scope of legitimate discovery, and not calculated to lead to discovery of admissible evidence.    Sea Star has produced equipment loading manifests and vessel manifests in its custody or control relating to equipment claimed by Emerald.

9.    Sea Star has produced documents responsive to Request No. 9.

10.    Sea Star objects to Request No. 10 on grounds that said Request is overbroad, harassing, outside the scope of legitimate discovery, and not calculated to lead to discovery of admissible evidence.

11.    Sea Star objects to Request No. 11 on grounds that said Request is overbroad, harassing, outside the scope of legitimate discovery, and not calculated to lead to discovery of admissible evidence.    Sea Star has produced documents responsive to Request No. 11 relating to Emerald and equipment claimed by Emerald.

12.    Sea Star objects to Request No. 12 on grounds that said Request is overbroad, undefined, harassing, outside the

scope of legitimate discovery, and not calculated to lead to discovery of admissible evidence.    Sea Star has produced documents relating to rental of equipment to CSX Lines.    To its knowledge and without specification by Emerald, Sea Star has no other documents arguably responsive to Request No. 12.

13.  Sea Star objects to Request No. 13 on attorney-client privilege, work product, and trial preparation grounds. The documents filed *sub judice* speak for themselves.

14.  To Sea Star's knowledge, no documents responsive to Request No. 14 exist.  MBC Leasing Corp. caused rejection and cancellation of the NPR lease of "equipment owned by Emerald" as of April 18, 2002, prior to "the NPR Sale".  Sea Star has produced documents regarding shipments "in process", "in progress", or "in transit" when the NPR sale of certain assets closed.

15.  To Sea Star's knowledge no documents responsive to Request No. 15 exist.  MBC Leasing Corp. caused rejection and cancellation of the NPR lease of "equipment owned by Emerald" as of April 18, 2002, prior to "the NPR Sale".  Sea Star has produced documents regarding storage of equipment as of and after April 27, 2002.

16.  To Sea Star's knowledge no documents responsive to Request No. 16 exist.  MBC Leasing Corp. caused rejection and cancellation of the NPR lease of "equipment owned by Emerald" as of April 18, 2002, prior to "the NPR Sale".    Sea Star has

produced documents regarding equipment identified as "missing".

17. To Sea Star's knowledge no documents responsive to Request No. 17 exist. MBC Leasing Corp. caused rejection and cancellation of the NPR lease of "equipment owned by Emerald" as of April 18, 2002, prior to "the NPR Sale". Sea Star has produced documents regarding equipment identified as "POS".

18. Sea Star has produced and will continue to produce documents responsive to Request No. 18 in Sea Star's custody or control.

19. Sea Star has produced and will continue to produce documents responsive to Request No. 19 in Sea Star's custody or control.

20. Sea Star has produced and will continue to produce documents responsive to Request No. 20 in Sea Star's custody or control.

21. Sea Star has produced and will continue to produce documents responsive to Request No. 21 in Sea Star's custody or control.

22. Sea Star has produced and will continue to produce documents responsive to Request No. 22 in Sea Star's custody or control.

23. Sea Star objects to Request No. 23 on grounds that said Request is overbroad and harassing and demands discovery of documents relating to equipment claimed by Emerald that Sea Star has requested but Emerald has failed to produce. Exhibit "A" is

a list of equipment for which Emerald has failed and refused to provide substantiation. Subject to its objections, Sea Star has produced documents responsive to Request No. 23 in its custody or control.

24. Sea Star objects to Request No. 24 on grounds that said Request is overbroad and harassing and demands discovery of documents relating to equipment claimed by Emerald that Sea Star has requested but Emerald has failed to produce. Exhibit "B" is a list of equipment for which Emerald has failed and refused to provide substantiation. Subject to its objections, Sea Star has produced documents responsive to Request No. 24 in its custody or control.

25. Sea Star objects to Request No. 25 on grounds that said Request is overbroad and harassing and demands discovery of documents relating to equipment claimed by Emerald that Sea Star has requested but Emerald has failed to produce. Exhibit "C" is a list of equipment for which Emerald has failed and refused to provide substantiation. Subject to its objections, Sea Star has produced documents responsive to Request No. 25 in its custody or control.

26. Sea Star objects to Request No. 26 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4.

27. Sea Star objects to Request No. 27 on grounds that

said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

28. Sea Star objects to Request No. 28 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

29. Sea Star objects to Request No. 29 on grounds that said request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

30. Sea Star objects to Request No. 30 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

31. Sea Star objects to Request No. 31 on grounds that said request demands work product, trial preparation materials,

and trial exhibits and contravenes this Court's Scheduling Order
and Local Rules, including Rule 16.4.  In any event discovery is
incomplete, and no determination as to documents that Sea Star
will introduce as evidence has been made.

  32.  Sea Star objects to Request No. 32 on grounds that
said Request demands work product, trial preparation materials,
and trial exhibits and contravenes this Court's Scheduling Order
and Local Rules, including Rule 16.4.  In any event discovery is
incomplete, and no determination as to documents that Sea Star
will introduce as evidence has been made.

  33.  Sea Star objects to Request No. 33 on grounds that
said Request demands work product, trial preparation materials,
and trial exhibits and contravenes this Court's Scheduling Order
and Local Rules, including Rule 16.4.  In any event discovery is
incomplete, and no determination as to documents that Sea Star
will introduce as evidence has been made.

  34.  Sea Star objects to Request No. 34 on grounds that
said Request demands work product, trial preparation materials,
and trial exhibits and contravenes this Court's Scheduling Order
and Local Rules, including Rule 16.4.  In any event discovery is
incomplete, and no determination as to documents that Sea Star
will introduce as evidence has been made.

  35.  Sea Star objects to Request No. 35 on grounds that
said Request demands work product, trial preparation materials,
and trial exhibits and contravenes this Court's Scheduling Order

and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

36. Sea Star objects to Request No. 36 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

37. Sea Star objects to Request No. 37 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

38. Sea Star objects to Request No. 38 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

39. Sea Star objects to Request No. 39 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4. In any event discovery is

incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

40.  Sea Star objects to Request No. 40 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4.  In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

41.  Sea Star objects to Request No. 41 on grounds that said Request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4.  In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

42.  Sea Star objects to Request No. 42 on grounds that said request demands work product, trial preparation materials, and trial exhibits and contravenes this Court's Scheduling Order and Local Rules, including Rule 16.4.  In any event discovery is incomplete, and no determination as to documents that Sea Star will introduce as evidence has been made.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this _30_ day of January, 2007 to **GARY M. SCHILDHORN, ESQ.** and **ALAN I. MOLDOFF, ESQ.**, Adelman Lavine Gold and Levin, Suite 900, Four Penn Center, Philadelphia, PA 19103-

2808; and to **BRADFORD J. SANDLER, ESQ.**, Adelman Lavine Gold and Levin, P.C., 919 North Market Street, Suite 710, Wilmington, DE 19801.

ARMSTRONG & MEJER, P.A.
Suite 1111, Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134
Tel: (305) 444-3355
Fax: (305) 442-4300

By: _____
TIMOTHY J. ARMSTRONG, ESQ.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this _30_ day of January, 2007 to **GARY M. SCHILDHORN, ESQ.** and **ALAN I. MOLDOFF, ESQ.**, Adelman Lavine Gold and Levin, Suite 900, Four Penn Center, Philadelphia, PA 19103-2808; and to **BRADFORD J. SANDLER, ESQ.**, Adelman Lavine Gold and Levin, P.C., 919 North Market Street, Suite 710, Wilmington, DE 19801.

ARMSTRONG & MEJER, P.A.
Suite 1111, Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134
Tel: (305) 444-3355
Fax: (305) 442-4300

By: _____
TIMOTHY J. ARMSTRONG, ESQ.

**EXHIBIT "B"**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC, | : | CIVIL ACTION |
| a limited liability company, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| EMERALD EQUIPMENT LEASING, | : | |
| INC., a corporation, | : | |
| | : | |
| Defendant/Plaintiff | : | Case No. 05-CV-00245-(JJF) |
| on the Counterclaim | : | |
| | : | |
| -vs- | : | |
| | : | |
| SEA STAR LINE, LLC | : | |
| | : | |
| Defendant on the | : | |
| Counterclaim | : | |

**EMERALD REQUEST FOR PRODUCTION OF DOCUMENTS
TO PLAINTIFF SEA STAR LINE, LLC IN ACCORDANCE WITH
RULE 16 SCHEDULING ORDER ISSUED ON NOVEMBER 3, 2006**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and in accordance

with Rule 16 Scheduling Order issued November 3, 2006, Defendant Emerald Equipment

Leasing, Inc. ("Emerald"), by its undersigned attorneys, hereby requests that the Plaintiff, Sea

Star Line, LLC ("Sea Star"), produce the documents requested below.  Such production shall be

made on or before the thirtieth (30th) day from the date of service hereof at the offices of

Adelman Lavine Gold and Levin, P.C., Suite 900, Four Penn Center, Philadelphia, PA 19103-

2808.

**DEFINITIONS**

1.  "Sea Star", "You" or "your" refers to Sea Star Line, LLC as well as to any of its

corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors-in-

interest, successors, assignees, agents, legal representatives, trustees, consultants, and all

representatives and other persons acting on its behalf, including, but not limited to, its present

and former officers, directors, servants, and employees.

2. "NPR" refers to NPR, Inc. as well as to any of its corporate affiliates, divisions,

subgroups, subsidiaries, parent corporations, predecessors-in-interest, successors, assignees,

agents, legal representatives, trustees, consultants, and all representatives and other persons

acting on its behalf, including, but not limited to, its present and former officers, directors,

servants, and employees.

3. "MBC" refers to MBC Leasing Corp., as well as to any of its corporate affiliates,

divisions, subgroups, subsidiaries, parent corporations, predecessors-in-interest, successors,

assignees, agents, legal representatives, trustees, consultants, and all representatives and other

persons acting on its behalf, including, but not limited to, its present and former officers,

directors, servants, and employees.

4. "NPR Sale" refers to Sea Star's purchase of NPR assets approved by the United

States Bankruptcy Court for the District of Delaware on or about April 26, 2002.

5. "Equipment Rental Agreement" means the Equipment Rental Agreement identified in

the Plaintiff's Complaint and the Defendant's Counterclaim.

6. "Emerald Equipment" means any container, genset, chassis, reefer or other equipment

covered by and subject to any agreement between Emerald and Sea Star, including but not

limited to the Equipment Rental Agreement.

7. "equipment" means any container, genset, chassis, reefer or other equipment used in

the transport of freight and/or cargo by vessels, trains, trucks and/or other motor vehicles.

8. "TIR" means Trailer Interchange Receipt, Equipment Interchange Receipt, and all other documents evidencing the movement of equipment into or out of a terminal, depot, pool, or other facility.

9. "Complaint" means the Complaint filed by Sea Star Line, LLC in this litigation.

10. "Counterclaim" means the Complaint Amended Counterclaim filed by Emerald in this litigation.

11. "Document" means, without limitation, the original and all copies and translations of any information in written, recorded, graphic or electronic form, including all memoranda of oral conversations, as well as all compilations, catalogs, and summaries of information or data, whether typed, handwritten, printed, recorded, digitally coded, or otherwise produced or reproduced, and shall include, without limitation, each and every note, memorandum, letter, telegram, publication, telex, facsimile, e-mail, circular, release, article, book, report, prospectus, record, financial statement, computer disk, computer tape, microfilm, microfiche, microform, index, list, claims file, analysis chart, money order, account book, draft, summary, diary, transcript, agreement, calendar, graph, receipt, chart, business record, insurance policy, computer printout, contract, and order.

12. "Communication" means any writing or any oral conversation of any kind or character including, by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, e-mail, telegraphic and telex communications or transmittals of documents, Blackberry and other wireless records, and all notes or other documents concerning such writing or such oral conversation.

13. "Person" includes both the singular and plural and means any natural person, business entity, corporation, cooperative, bureau, public corporation, partnership, joint venture, group,

club, association, institute, society, office, organization, and any governmental or administrative entity or department, agency, bureau, or political subdivision thereof.

14. "Representative" or "representatives," used with reference to a person, means (a) any past or present officer, director, partner, associate, employee, servant, agent, subsidiary, affiliate, legal counsel, or any agent of such persons and (b) any other persons acting on behalf of, or in concert with, such persons, including, without limitation, insurance brokers or agents, auditors, actuaries, and consultants of any type.

15. "Refer" or "relate to" means refers to, relates to, comments on, reflects, mirrors, addresses, discusses, contains information on, indicates, or pertains to, in any way, directly or indirectly, a document, subject, topic, issue, act or occurrence, and includes, without limitation, comprising, constituting, analyzing, evidencing, comparing, summarizing, discussing, reflecting, showing, referring to, forming the basis of, containing, or supporting any event, act, or occurrence.

## INSTRUCTIONS

1. Whenever in the following paragraphs there is a request to produce documents, you are requested to produce all documents that are in your possession, custody or control or that of any of your representatives, or that are reasonably obtainable from other sources.

2. Each request herein for a document or documents to be produced, whether memoranda, reports, letters, minutes, or other documents of any description requires the production of the document in its entirety, without redaction or expurgation.

3. If any document covered by these requests is withheld from production, please furnish a list identifying each such document and providing the following information with respect to each such document:

(a)    the reason(s) for withholding;

(b)    the date of the document;

(c)    identification by name, job title, and the last known business and home addresses of each person who wrote, drafted, or assisted in the preparation of the document;

(d)    identification by name, job title, and the last known business and home addresses of each person who is known to have received or has custody of the document or copies thereof;

(e)    identification by name, job title, and the last known business and home addresses of each person who is known to have viewed or had access to the document or copies thereof or to whom any portion of the contents has been communicated;

(f)    a brief description of the nature and subject matter of the document;

(g)    a statement of the facts that constitute the basis for any claim of privilege, work product, or other grounds of nondisclosure; and

(h)    the paragraph(s) of these requests to which, the document is responsive.

4.  Each request for documents, and the portions thereof, are to be responded to separately, but responses to one request for documents, or portions thereof, may be incorporated by reference in responses to other requests for documents, or portions thereof.

5.  If any documents responsive to all or any part of any request for documents are not currently available, include a statement to that effect and furnish whatever documents are available.  Include in your statement when such documents were most recently in your possession or subject to your control and what disposition was made of them, and identify each person currently in possession or control of such documents by name, job title, and last known business and home address.  If any of such documents have been destroyed, state when and

where such documents were destroyed, identify each person who directed that the documents be destroyed or who actually destroyed the documents by name, job title, and last known business and home address and state the reasons the documents were destroyed.

6. Each document produced for inspection or copying shall be identified by the specific request for documents, or any portion thereof, to which it relates.

7. The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

8. The singular shall be construed to include the plural, and vice versa, to make the request inclusive rather than exclusive.

9. This Request for Production of Documents shall be deemed continuing so as to require further and supplemental production if any party to whom it is addressed identifies, obtains, received or generated any additional communications and/or documents between the time of original production and the time of the conclusion of this lawsuit.

10. Sea Star need not produce documents previously Bates-numbered by Sea Star or Emerald and produced by Sea Star.

## TIME PERIOD

The time period covered (the "Relevant Time Period") by each document request is April 27, 2002 through and including the present, unless otherwise noted.

## REQUESTS

1.      All TIRs relating to Emerald Equipment from each port terminal out of which and into which Sea Star moved its cargo.

2.      All gate reports and TIRs for all Emerald Equipment from each depot, each customer and each rail yard out of which and into which Sea Star moved its cargo.

3.      Any and all inventories showing Emerald Equipment located at all depots, railroad yards, trucking yards and customer pools out of which and into which Sea Star moved its cargo.

4.      Any and all invoices for storage, repairs, maintenance and pretrip of any Emerald Equipment at all depots, railroad yards, trucking yards and customer pools out of which and into which Sea Star moved its cargo.

5.      Any and all copies of all original vessel manifests for each vessel that carried any containers, chassis or generators on Sea Star vessels directly, as an interline, or as a slot charter from or to any port.

6.      All stevedore loading and discharge reports for every vessel that carried any container, chassis or generator whether owned by Sea Star, leased by Sea Star, slot chartered by Sea Star, or chartered by Sea Star directly or through a third part from or to any port.

7.      Any and all invoices from all trucking companies and railroads for the transportation services of Emerald Equipment.

8.      Any and all invoices from any companies with which Sea Star interlined for transportation of Emerald Equipment.

9.      Any and all bills of lading and invoices issued to a third party on behalf of Sea Star for the movement of any Emerald Equipment.

10.     Any and all invoices and bills of lading issued by Sea Star to its customers for the period of April 27, 2002 through September 30, 2002.

11.     Any and all e-mails, correspondence, business plans, or other documents prepared by or on behalf of any Sea Star employee, agent or representative including, but not limited to,

Brian Bogan, Phil Bates, Robert Magee, Andy Rooks, George Cervone, Mike Last, Arturo Rodriguez, John Emery, and Lisa Florence, in regard to the following subjects:

    a.    the purchase and use of the NPR vessels.

    b.    Sea Star's service of any of the NPR customer base and Sea Star's ability to provide the large amount of equipment needed to handle NPR's customers.

    c.    the delivery of existing loaded containers at the time of the NPR Sale.

    d.    plans to move chassis, containers and generators from depots, customers pools and rail yards to customers subsequent to the NPR Sale.

    e.    analysis of quantities of containers, chassis and generators needed at each terminal to accommodate the new business subsequent to the NPR Sale for terminal requirements, customer requirements and the requirements for the expeditious loading and discharge of vessels.

12.    Any and all documents relating to Sea Star's agreements to lease equipment owned by Emerald to any third party, including, but not limited to all correspondence, e-mails, contracts and TIRs.

13.    Any and all documents referring or relating to Sea Star's determination to deposit the sum of $534,500.00 with the Court in this litigation.

14.    Any schedules, lists, or other documents which delineate any equipment owned by Emerald, which equipment had been leased by NPR from Emerald at the time of the NPR Sale which Sea Star contends was either "in process", "in progress", and/or "in transit".

15.    Any schedules, lists, or other documents which delineates any equipment owned by Emerald, which equipment had been leased by NPR from Emerald at the time of the NPR sale, which Sea Star contends they were holding in storage for Emerald as of April 27, 2002.

16.    Any schedules, lists, or other documents which delineate any equipment owned by Emerald, which equipment had been leased by NPR from Emerald at the time of the NPR sale, which Sea Star contends were identified as "missing" on any schedule or inventory prepared by NPR or anyone else.

17.    Any schedules, lists, or other documents which delineate any equipment owned by Emerald, which equipment had been leased by NPR from Emerald at the time of the NPR Sale, which Sea Star contends were identified as "POS" on any schedule or inventory prepared by NPR or anyone else.

18.    All documents pertaining to and identifying each piece of Emerald Equipment that, on April 27, 2002, was: (a) in terminals; (b) in inland depots; (c) in repair facilities; (d) in shipper pools; (e) in trucker's possession; (f) in railroad's possession; and (g) in shipper's possession.

19.    All documents pertaining to and identifying each piece of Emerald Equipment that, on or after April 27, 2002, was in the possession of Sea Star in the Dominican Republic.

20.    All documents pertaining to and identifying each piece of Emerald Equipment that, on or after April 27, 2002, was in the possession of Sea Star in San Juan, Puerto Rico.

21.    All documents pertaining to and identifying each piece of Emerald Equipment that, on or after April 27, 2002, was in the possession of Sea Star in Jacksonville, Florida.

22.    All inventories and related documents pertaining to and identifying Emerald Equipment received by or on behalf of Sea Star in the Dominican Republic including, but not limited to, E.T. Heinsen.

23.    All documents including, but not limited to, TIRs, computer entries, and bills of lading, pertaining to on-hire, use, off-hire, and movement by Sea Star of each piece of Emerald

Equipment listed on Exhibit "A" to Sea Star's Request For Production of Documents served on Emerald on December 20, 2006.

24.    All documents including, but not limited to, TIRs, computer entries, and bills of lading, pertaining to on-hire, use, off-hire, and movement by Sea Star of each piece of Emerald Equipment listed on Exhibit "B" to Sea Star's Request For Production of Documents served on Emerald on December 20, 2006.

25.    All documents including, but not limited to, TIRs, computer entries, and bills of lading, pertaining to on-hire, use, off-hire, and movement by Sea Star of each piece of Emerald Equipment listed on Exhibit "C" to Sea Star's Request For Production of documents served on Emerald on December 20, 2006.

26.    All documents upon which Sea Star bases any defense to the claims made by Emerald in connection with the Counterclaim.

27.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its claims in the Complaint.

28.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its denials of the claims asserted in the Counterclaim set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

29.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its First Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

30.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Second Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

31.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Third Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

32.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Fourth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

33.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Fifth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

34.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Sixth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

35.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Seventh Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

36.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Eighth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

37.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Ninth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

38.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Tenth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

39.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Eleventh Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

40.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Twelfth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

41.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Thirteenth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

42.    All documents which relate to and/or which Sea Star may introduce as evidence at the time of trial in this litigation in support of its Fourteenth Defense as set forth in its Answer and Affirmative Defenses to Amended Counterclaim.

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation

BY:    _____
GARY M. SCHILDHORN, ESQUIRE
ALAN I. MOLDOFF, ESQUIRE
Suite 900, Four Penn Center
Philadelphia, PA  19103-2808
215.568.7515 (Phone)
215.557.7922 (Fax)

and

**EXHIBIT "C"**

# ADELMAN LAVINE GOLD SCHILDHORN AND KLEBAN
## A PROFESSIONAL CORPORATION

### ATTORNEYS AND COUNSELORS AT LAW

LEWIS H. GOLD
GARY M. SCHILDHORN
BARRY D. KLEBAN
GARY D. BRESSLER
STEVEN D. USDIN
RAYMOND H. LEMISCH
BRADFORD J. SANDLER
ALAN I. MOLDOFF
KATHLEEN E. TORBIT
MARK PFEIFFER
JENNIFER R. HOOVER
ALEXANDER MORETSKY
MARIE C. DOOLEY

SUITE 900
FOUR PENN CENTER
PHILADELPHIA, PA. 19103-2808
(215) 568-7515
FACSIMILE (215) 557-7922
lawyers@adelmanlaw.com
www.adelmanlaw.com

919 N. Market Street, Suite 710
Wilmington, DE  19801
(302)-654-8200

March 22, 2007

### BY FIRST-CLASS MAIL AND TELECOPIER

Timothy J. Armstrong, Esquire
Armstrong & Mejer
Suite 1111, Douglas Center
2600 Douglas Road
Coral Gables, FL  33134

Re:    **Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.**
       **U.S. District Court for the District of Delaware**
       **Case No. 05-CV-00245-(JJF)**

Dear Tim:

    I have reviewed your letter dated March 16, 2007 regarding Emerald's Responses to Sea Star's Requests For Production of Documents(which I did not receive until March 20, 2007 although the letter indicates it was sent by fax as well as regular mail).  My first reaction is one of dismay.  Your assertion that Emerald is somehow lacking in its production of documents and/or cooperation, rings quite hollow in light of your client's failure to produce one single document in response to Emerald's recent document request.

    In any event, Emerald has not refused to produce "computer versions" of the updated schedules it has provided to Sea Star.  Rather, it is my understanding that my client has suggested to your client that it would cooperate in making the updated schedules available in a format which would make it easier for Sea Star to respond in like fashion to the information provided as to each piece of equipment contained on the updated schedules.  As you know, your client did receive hard copies of the updated schedules.  You are now asking for the same information in an "electronic format".  Unfortunately, it seems that the flow of information between Emerald and Sea Star in this regard has been a one way street.  In particular, I note your client's refusal to respond to Interrogatory No. 1 which specifically asks for this information.

    Second, as to the Sea Star Responses to Emerald's Document Requests, I ask that you withdraw your objections and comply with Emerald's Request for Document Nos. 5, 6, 8, 10, 11, 12, 23, 24, 25, and 26 through 42.  In addition, Emerald requests that Sea Star make available the remainder of the documents responsive to Document Request No. 2, which documents Emerald has not yet copied.  Also, Emerald requests that Sea Star identify by Bates stamp

Timothy J. Armstrong, Esquire
March 22, 2007
Page 2

numbers the documents which Sea Star contends are responsive to Emerald Document Request Nos. 15, 16 and 17.

While you are reviewing my requests set forth in this letter with your client, I will review the requests you made in your March 16, 2007 letter with my client. In addition, under separate cover, I will provide you with additional comments/requests regarding the Interrogatories your client has failed to respond to.

After each of us has had an opportunity to review these matters with our clients, I would suggest that we attempt to discuss this matter by telephone conference some time early next week. If we cannot come to some agreement with respect to these discovery request issues, we can then submit these issues to the Court for its disposition.

Very truly yours,

ALAN I. MOLDOFF

AIM:md
cc:     Emerald Equipment Leasing, Inc.
        Gary M. Schildhorn, Esquire
g:\393\10\letters\armstrong-md10

**EXHIBIT "D"**

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE IIII DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

**VIA TELEFAX AND U.S. MAIL**

April 9, 2007

TELEFAX NO. (215) 557-7922

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

     Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

     I should not be surprised by your March 22, 2007 letter. Though you state that you did not receive my March 16 letter until March 20, I do have a telefax confirmation receipt.  In any event I agree that unfortunately the flow of information between Emerald and Sea Star "has been a one way street".  However, you view the flow from the wrong end of the thoroughfare.  Your own files contain copies of correspondence and Bates-stamped materials sent to you throughout the process of reviewing claims created and revised by your client.  You and your client have received data in both documentary and electronic forms in connection with the litigation, as well as the settlement discussions.

     In this regard, when you chose to copy only a limited number of gate and depot documents, I asked you to inform me if you wanted to copy additional materials in the boxes produced by my client. Consequently I assume your reference to "the remainder of the documents responsive to Document Request No. 2" is to these boxes. The materials, which were produced long before your Request No. 2, again will be available for copying and Bates-stamping.  Consistent with past practice, I request that you identify the copying service and the contact person so that I can advise my client.

     Unfortunately you and your client have not reciprocated in the flow of information.  Even when your client must produce documents in response to a Request for Production, simple questions remain unanswered.  For instance, I am still waiting for responses to routine requests in my February 12 and March 16, 2007 letters.

**Alan I. Moldoff, Esq.**
**April 9, 2007**
**Page 2**

Contrary to your contention, your client's representative repudiated polite requests for "computer versions" of the schedules produced to support the Amended Counterclaim, allegedly on advice of counsel. In response to the Request for Production of Documents, you have refused to produce the schedules in the "electronic format" in which they were created, contravening requirements of applicable Federal Rules of Civil Procedure. How these positions comport with your "understanding that [your] client has suggested to [my] client that it would cooperate in making the updated schedules available in a format which would make it easier for Sea Star to respond in a like fashion to the information provided as to each piece of equipment contained on the updated schedules" is incomprehensible.

You had ample opportunity to "review the requests...in [my] March 16, 2007 letter with [your] client" yet did not respond. To avoid further delay in review of the new claim schedules, I have been compelled to make alternative arrangements at substantial expense. Until analysis of the "updated" schedules is complete, neither my client nor I can identify "each piece of Emerald Equipment for which Emerald has made a claim as alleged in the [Amended] Counterclaim." Rest assured, however, that I already am aware of alterations.

Under the circumstances I must assume also that you have no intention of producing documents responsive to the other requests enumerated in my letter. So that there is no misunderstanding, the responses and objections to Emerald Request Nos. 5, 6, 8, 10, 11, 12, and 23 through 42 remain as stated. I look forward to receiving the information in regard to the gate and depot materials.

Very truly yours,

Timothy J. Armstrong

p/evie/03-3621-010