**EXHIBIT "A"**

## IN THE United States Bankruptcy Court
## FOR The District of Delaware

| | | | |
|---|---|---|---|
| In re: | EMERALD EQUIPMENT LEASING, INC., | ) | Case No.: | 01-934 (MFW) |
| | Debtor | ) | Chapter: | 11 |
| | • | ) | | |
| | EMERALD EQUIPMENT LEASING, INC., | ) | Case No. | 01-934 (MFW) |
| | | ) | | |
| | Plaintiff | ) | Chapter: | 11 |
| | v. | ) | | |
| | | ) | | |
| | SEA STAR LINE, LLC | ) | | |
| | | ) | Adv. Proc. No.: | |
| | | ) | | |
| | Defendant | ) | | |

### SUMMONS AND NOTICE OF PRETRIAL
### CONFERENCE IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of Clerk:
824 Market Street, 3rd Floor
Wilmington, DE 19801

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

ADELMAN LAVINE GOLD AND LEVIN,
a Professional Corporation
Bradford J. Sandler, Esquire
919 Market Street, Suite 710
Wilmington, DE 19801

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

Address: United States Bankruptcy Court         Room: Court Room No. 1
824 Market Street, 6th Floor
Wilmington, DE 19801                             Date and Time: April 28, 2004 at 9:30 a.m (ET)

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

United States Bankruptcy
Court for the District
of Delaware

/s/ David D. Bird
Clerk of the Bankruptcy Court

Date: March 17, 2004

## CERTIFICATE OF SERVICE

I, Sandi Van Dyk, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint were made March 17, 2004 by:

☒

    Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

    Sea Star Line LLC
    100 Bell Tel Way, Suite 300
    Jacksonville, FL 32216-7202
    Attn: Michael D. Shea, President

Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:


Residence Service: By leaving the process with the following adult at:


Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:


Publication: The defendant was served as follows: [Describe briefly]


State Law: The defendant was served pursuant to the laws of the State of _____,
        as follows: [Describe briefly]                  (name of state)


Under penalty of perjury, I declare that the foregoing is true and correct.


March 17, 2004             _Sandi Van Dyk_____
    Date                        Signature


        Print Name:    Sandi Van Dyk

        Business Address:    Adelman Lavine Gold and Levin, a Professional Corporation
                        919 Market Street, Suite 710
                        Wilmington, DE     19801

## NOTICE OF DISPUTE RESOLUTION ALTERNATIVES

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The uses of these services are often productive and effective in settling disputes. **The purpose of this Notice is to furnish general information about ADR.**

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral".

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests *de novo* review of an arbitration award, the judge will rehear the case.

**Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.**

Dated: March 17, 2004

_____/s/ David D. Bird_____
*Clerk of Court*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EMERALD EQUIPMENT LEASING, INC. | : | |
| | : | |
| Debtor | : | No. 01-934(MFW) |

---

| | | |
|---|---|---|
| EMERALD EQUIPMENT LEASING, INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adv. No. |
| | : | |
| SEA STAR LINE, LLC | : | |
| 100 Bell Tel Way | : | |
| Suite 300 | : | |
| Jacksonville, FL 32216 | : | |
| | : | |
| Defendant | : | |

**COMPLAINT OF DEBTOR FOR RECOVERY OF
POST-PETITION ACCOUNT RECEIVABLE AND FOR
<u>TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. SECTION 542</u>**

Emerald Equipment Leasing, Inc., by and through its undersigned counsel, files

this Complaint against Sea Star Line, LLC, and in support, avers as follows:

<u>**JURISDICTION AND VENUE**</u>

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. Sections 1334 and 157 and Sections 542 of Title 11 of the United States Code (the

"Bankruptcy Code"). This adversary proceeding is a "core" proceeding to be heard and

determined by the Bankruptcy Court pursuant to 28 U.S.C. Sections 157(b)(2)(A)(E) and

(O).

2.     Venue is appropriate before this Court by virtue of, and in accordance with, 28 U.S.C. Section 1409.

## PARTIES

3.     Plaintiff is Emerald Equipment Leasing, Inc. ("Emerald"), a Debtor-in-Possession having filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date"). Emerald remains in possession of its assets and continues to operate its business under the applicable provisions of the Bankruptcy Code.

4.     Emerald was organized in October 1997 under the laws of the State of New Jersey and is engaged in business as a lessor of various equipment used in the ocean going transportation business.

5.     Defendant is Sea Star Line, LLC ("Sea Star"), a company engaged in the shipping business with a place of business located at 100 Bell Tel Way, Suite 300, Jacksonville, FL 32216.

## BACKGROUND

6.     Prior to the Petition Date, Emerald leased all of its equipment to NPR, Inc. and Holt Cargo Systems, Inc.  Said lease with NPR, Inc. and Holt Cargo Systems, Inc. of Emerald's equipment was rejected by a Consent Order entered by this Court dated May 10, 2002 (the "Consent Order"), but effective as of April 18, 2002.

7.     On or about April 26, 2002, an Order was entered by the Bankruptcy Court authorizing the sale of NPR assets (the "Sale") to Sea Star (the "Sale Order").

8.    Since the entry of the Sale Order, substantially all of the Emerald equipment which, at the time of the Sale, either had remained at Sea Star terminals, were aboard Sea Star ships, or were in use at various other locations, have been used by Sea Star in the operation of its business pursuant to the terms of an oral lease between Emerald and Sea Star (the "Oral Lease").

9.    The Oral Lease was effective as of May 1, 2002 and was applicable to any cargo worthy Emerald equipment which Sea Star dispatched out of any port terminal or inland depot for customer use at agreed upon per diems. The per diems, under the Oral Lease, were to continue for each piece of equipment until Sea Star ceased use of that equipment and notified Emerald thereof, as well as the port location of such equipment (Jacksonville, San Juan or Philadelphia) or, alternatively, until Sea Star reached an agreement to purchase said piece of equipment.

10.    The leasing arrangements under the Oral Lease with respect to Sea Star's continued use of Emerald's equipment were thereafter formalized in a written lease dated as of July 31, 2002 between Emerald and Sea Star (the "Equipment Rental Agreement"), but applicable to equipment used as of and since April 29, 2002. A copy of the Equipment Rental Agreement is attached hereto as Exhibit "A" and made part hereof.

11.    The Equipment Rental Agreement set forth the terms for Sea Star's continued use of the Emerald equipment.

12.    During the course of the Oral Lease and the Equipment Rental Agreement, Sea Star made lease payments to Emerald based on its own "self billing reports".

13.    Upon investigation, Emerald discovered that the "self billing reports" were grossly understated, failing to account for numerous pieces of Emerald equipment which Sea Star had been using without paying rental charges to Emerald.

14.    On or about October 31, 2002, Emerald exercised its rights to terminate the Equipment Rental Agreement in accordance with its terms.

### COUNT I
#### (Post-Petition Account Receivable/Breach of Lease)

15.    Plaintiff incorporates paragraph 1 through 14 set forth above, as fully as if set forth herein in their entirety.

16.    Sea Star is in breach of its obligations under the Oral Lease and under the terms of the Equipment Rental Agreement as a result of its failure to pay the following:

(a)    Rent due to Emerald;

(b)    Loss incurred as a result of the loss, damage, theft or destruction of certain equipment.

17.    In addition, after the termination of the Equipment Rental Agreement, Sea Star was required to re-deliver the equipment to Emerald at certain designated terminals. Despite this, Sea Star has failed to deliver numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement.

18.    As a result of Sea Star's breach of the Oral Lease and Equipment Rental Agreement, Emerald has incurred damages in excess of $4,000,000.00.

19.    Emerald has provided detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Oral Lease and Equipment Rental Agreement. Emerald's work on these invoices continues as it continues its investigation and discovers other Emerald equipment which Sea Star has used, or has not returned, and has not

g:\393\10\pleading\sea star complaint

compensated Emerald under the terms of the Oral Lease and the Equipment Rental Agreement.

WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00, plus interest at the rate set forth in the Equipment Rental Agreement, attorneys' fees and other charges.

## COUNT II
### (Post-Petition Quantum Meruit)

20.     Plaintiff incorporates paragraph 1 through 19 set forth above, as fully as if set forth herein in their entirety.

21.     Sea Star has utilized property of Emerald and has received the economic benefit of that use without compensating Emerald.

22.     Sea Star's use of Emerald's equipment resulted in harm to Emerald and actual and material gain and benefit to Sea Star.

23.     To the extent Sea Star's use of Emerald's equipment occurred during any period not covered by a written lease agreement, Emerald is entitled to collect damages from Sea Star under the theory of quantum meruit.

24.     WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00 as damages, plus interest, attorneys' fees and other charges.

## COUNT III
### (Turnover Action/Conversion)

25.     Plaintiff incorporates paragraph 1 through 24 set forth above, as fully as if set forth herein in their entirety.

26.     By letter dated October 31, 2003, Emerald gave Sea Star thirty (30) days prior written notice of its termination of the Equipment Rental Agreement and demanded

that Sea Star redeliver all Emerald equipment to Emerald on or before December 1, 2003 in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement.

27.    Upon investigation, Emerald has determined that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement.

28.    Sea Star has refused, and still refuses, to return said equipment and has wrongfully and unlawfully converted the same to its own use.

WHEREFORE, Emerald, pursuant to 11 U.S.C. Section 342, requests the entry of an Order providing for the turnover of damages equaling unpaid rent, and the value of the equipment, together with interest and costs of suit.

**COUNT IV**
**(Accounting)**

29.    Plaintiff incorporates paragraph 1 through 28 set forth above, as fully as if set forth herein in their entirety.

30.    Certain information pertaining to the usage of Emerald equipment while in the possession of Sea Star remains solely in the possession of Sea Star.

31.    Emerald has requested that Sea Star provide a full accounting of Sea Star's usage of all Emerald equipment.

32.    Sea Star, to date, has failed to provide such accounting.

WHEREFORE, Emerald requests an Order requiring that Sea Star provide to

Emerald a full accounting of all Sea Star's usage of Emerald equipment.

Bradford J. Sandler, Esq. (No. 4142)
ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
919 North Market Street, Suite 710
Wilmington, DE 19801
(302) 654-8200

and

Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Suite 900, Four Penn Center
Philadelphia, PA 19103-2808
(215) 568-7515

Counsel to Debtor Emerald Equipment
Leasing, Inc.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:04 CV-146-V-99HTS

SEA STAR LINE, LLC,
a limited liability company,

       Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING,
INC., a corporation,

       Defendant.

_____/

## EMERALD'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM[1]

       Defendant, Emerald Equipment Leasing, Inc. ("Emerald"), by way of Answer to

the Complaint filed by Sea Star Line, LLC ("Sea Star"), states as follows:

       1.     The allegations set forth in paragraph 1 state a legal conclusion to which

no response is required.  It is specifically denied that declaratory judgment relief pursuant

to 28 U.S.C.A. Sections 2201 and 2202 is appropriate in this case.  It is further denied

that federal jurisdiction exists pursuant to 28 U.S.C.A. Sections 1337 and 1367.

       2.     Emerald has insufficient knowledge and information upon which to form a

belief as to the truth of the allegations in paragraph 2, and leaves Sea Star to its proofs.

       3.     Emerald admits that it is a Delaware corporation and a named Debtor

under Chapter 11 of the United States Bankruptcy Code.  Emerald further admits that it

---

[1] An Order was entered on April 20, 2005 transferring this case to the United States District Court for the District of Delaware (the "Delaware Court") for potential referral to the United States Bankruptcy Court for the District of Delaware.  This Answer, Affirmative Defenses and Counterclaim is being filed herein with the Clerk's Office in the United States District Court for the Middle District of Florida pending transfer of this case to the Delaware Court so as to avoid running afoul of any pertinent statute of limitations.

has done business with Sea Star in the State of Florida. Emerald denies the remaining allegations contained in paragraph 3, as stated.

4.     Emerald admits that Sea Star entered into an Asset Purchase Agreement, as amended, with NPR, Inc. ("NPR"), and other named Debtors, in proceedings pending under Chapter 11 of the United States Bankruptcy Code. Any concerns or objections raised by Emerald or MBC Leasing Corp. ("MBC") and the Bankruptcy Court's rulings thereon as set forth in paragraph 4 are contained in transcripts and are made a part of the Bankruptcy Court records, which speak for themselves. To the extent the allegations in this paragraph state otherwise, they are denied.

5.     Emerald has insufficient knowledge and information upon which to form a belief as to the truth of the allegations in paragraph 5, and leaves Sea Star to its proofs. Furthermore, the court proceedings in the Bankruptcy Court made reference to in paragraph 5 are or may be contained in transcripts and are made a part of the Bankruptcy Court records, which speak for themselves. To the extent the allegations in this paragraph state otherwise, they are denied.

6.     Emerald admits that on April 26, 2002, the Bankruptcy Court issued an Order authorizing the sale of the NPR assets free and clear of all liens, claims and encumbrances (the "Sale Order"). The Sale Order is a written document which speaks for itself. Any remaining allegations otherwise are denied.

7.     Emerald admits that closing of the asset purchase occurred on April 27, 2002 at 3:00 a.m. Emerald denies the remaining allegations contained in paragraph 7, as stated, except that it is admitted that Sea Star agreed to a thirty (30) day grace period before storage charges would begin to accrue with respect to Emerald equipment.

8.      Emerald has insufficient knowledge and information upon which to form a belief as to the truth of the allegations in paragraph 8, and leaves Sea Star to its proofs. Further, the Answers to Interrogatories dated July 9, 2002 constitute a writing, which speaks for itself. To the extent the allegations in this paragraph state otherwise, they are denied.

9.      Emerald admits that an Order was entered by the Bankruptcy Court dated July 22, 2002, but effective as of April 29, 2002, terminating the automatic stay, which Order is attached as Exhibit "B" to the Complaint. Said Order is a writing which speaks for itself. To the extent the allegations in this paragraph state otherwise, they are denied.

10.     Emerald denies the allegations contained in paragraph 10, as stated. MBC's rights as to the Emerald equipment are controlled, inter alia, by the Bankruptcy Court Order attached as Exhibit "B" to the Complaint. Further, the June 10, 2002 letter referred to in paragraph 10 attached as Exhibit "C" to the Complaint is a written document which speaks for itself. In addition, the letter attached as Exhibit "D" to the Complaint is a writing which speaks for itself. To the extent the allegations in this paragraph state otherwise, they are denied.

11.     The June 19, 2002 letter attached as Exhibit "E" to the Complaint is a writing which speaks for itself. To the extent the allegations in this paragraph state otherwise, they are denied.

12.     The Indemnity Agreement made reference to in paragraph 12, attached as Exhibit "F" to the Complaint, is a writing which speaks for itself. To the extent the allegations in this paragraph state otherwise, they are denied.

3

13.    Emerald has insufficient knowledge and information upon which to form a belief as to the truth of the allegations in paragraph 13, and leaves Sea Star to its proofs.

14.    The Emerald Agreement attached as Exhibit "G" is a writing which speaks for itself.  To the extent the allegations in this paragraph state otherwise, they are denied.  Further, to the extent the allegations contained in paragraph 14 constitute a legal conclusion, no response is required.

15.    The Emerald Agreement is a writing which speaks for itself.  To the extent the allegations in this paragraph state otherwise, they are denied.

16.    Emerald admits the allegations contained in the first sentence of paragraph 16.  Emerald denies that Sea Star on-hired Emerald equipment delivered to Sea Star's leased premises after shipments in process on the date Sea Star's use for a new cargo movement began {emphasis added].  Rather, Sea Star on-hired Emerald equipment after shipments in process on the date Sea Star's use for a new cargo movement began, whether or not the equipment was "delivered" to Sea Star's leased premises".

17.    Emerald denies the allegations contained in paragraph 17, as stated.

18.    Emerald admits that no Greenwich terminal was operating before August 1, 2002 in the Port of Jacksonville and that as of August 1, 2002, Greenwich occupied the former NPR terminal, where Emerald equipment could be returned by Sea Star and stored.  Emerald has insufficient knowledge and information upon which to form a belief as to the truth of the remaining allegations in paragraph 18, and leaves Sea Star to its profs.

19.    Emerald has insufficient knowledge and information upon which to form a belief as to the truth of the allegation that Emerald equipment located on Sea Star's

4

premises, but not on-hired by Sea Star, remained in storage pursuant to the Sale Order and Sea Star's agreement with MBC, and leaves Sea Star to its proofs. Emerald admits that throughout 2002 and 2003, MBC and/or Emerald utilized Sea Star facilities for storage of certain Emerald equipment that they were trying to sell to third parties. Emerald denies the remaining allegations contained in paragraph 19, to the extent that said allegations imply an obligation upon Emerald to remove any remaining equipment from Sea Star's terminal as set forth in paragraph 19.

20.    Emerald denies the allegations contained in paragraph 20.

## COUNT I

Emerald reiterates its answers to the allegations in paragraphs 1 through 20 above, and fully incorporate the same herein as if set forth at length.

21.    Emerald admits only that a dispute exists between Sea Star and Emerald as to the extent of Sea Star's underpayment of rent owed to Emerald, as well as damages to Emerald for non-return of equipment or otherwise. Emerald further admits that Sea Star seeks a declaration of its rights and other legal obligations under the Emerald Agreement and the Sale Order, as set forth in paragraph 21; however, Emerald denies Sea Star's entitlement to such a declaration of rights and obligations as a declaratory judgment action.

22.    Emerald admits that Sea Star makes further requests for "declarations" to be made by this Court; however, Emerald denies that Sea Star is entitled to such a declaration in the manner set forth in these proceedings.

WHEREFORE, Emerald demands judgment against Sea Star dismissing the Complaint, together with an award of costs of court.

5

## COUNT II

Emerald reiterates its answers to the allegations in paragraphs 1 through 20 above, and fully incorporate the same herein as if set forth at length.

23.    Emerald denies the allegations contained in paragraph 23, except to admit that it entered into an agreement with Sea Star for the shipment of certain equipment on board Sea Star vessels.

24.    Emerald denies the allegations contained in paragraph 24.

25.    Emerald denies the allegations contained in paragraph 25.

WHEREFORE, Emerald demands judgment against Sea Star dismissing the Complaint, together with an award of costs of court.

## COUNT III

Emerald reiterates its answers to the allegations in paragraphs 1 through 20 above, and fully incorporate the same herein as if set forth at length.

26.    Emerald denies the allegations contained in paragraph 26.

WHEREFORE, Emerald demands judgment against Sea Star dismissing the Complaint, together with an award of costs of court.

## COUNT IV

Emerald reiterates its answers to the allegations in paragraphs 1 through 20 above, and fully incorporate the same herein as if set forth at length.

27.    Emerald denies the allegations contained in paragraph 27.

WHEREFORE, Emerald demands judgment against Sea Star dismissing the Complaint, together with an award of costs of court.

### FIRST AFFIRMATIVE DEFENSE

Sea Star's Complaint, and all the Counts contained therein, fail to state a cause of action as against Emerald, upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Declaratory judgment relief sought by Sea Star is inappropriate under the circumstances of this case. Accordingly, the Complaint should be dismissed.

### THIRD AFFIRMATIVE DEFENSE

The relief requested in the Complaint is barred, in whole or in part, by Emerald's rights of setoff and/or recoupment.

### FOURTH AFFIRMATIVE DEFENSE

The relief requested in the Complaint is barred in whole or in part by the doctrines of estoppel and/or waiver.

### FIFTH AFFIRMATIVE DEFENSE

The relief requested in the Complaint is barred, in whole or in part, due to Sea Star's breach of and/or failure to perform under applicable contracts between the parties.

### SIXTH AFFIRMATIVE DEFENSE

Emerald breached no duty owed to Sea Star.

### SEVENTH AFFIRMATIVE DEFENSE

Sea Star, by its course of conduct, is barred from recovery against Sea Star in this action.

### EIGHTH AFFIRMATIVE DEFENSE

Any losses allegedly suffered by Sea Star were caused by its own negligence.

### NINTH AFFIRMATIVE DEFENSE

Sea Star is barred from asserting any claims against Emerald under the doctrine of unclear hands. Sea Star is not permitted to benefit from its own wrongdoing.

### TENTH AFFIRMATIVE DEFENSE

Venue is improper in this case. These proceedings should be transferred to the United States Bankruptcy Court for the District of Delaware which is the most appropriate forum for this litigation.

### COUNTERCLAIM OF EMERALD

Emerald Equipment Leasing, Inc., by and through its undersigned counsel, files this Counterclaim against Sea Star Line, LLC, and in support, avers as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. Sections 1334 and 157 and Sections 542 of Title 11 of the United States Code (the "Bankruptcy Code"). It is further asserted that this adversary proceeding is a "core" proceeding to be heard and determined by a bankruptcy court pursuant to 28 U.S.C. Sections 157(b)(2)(A)(C)(E) and (O). In addition, this Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C.A. Section 1333.

2.    Venue is appropriate before this Court by virtue of, and in accordance with, inter alia, 28 U.S.C. Section 1409.

### PARTIES

3.    Counterclaimant is Emerald Equipment Leasing, Inc. ("Emerald"), a Debtor-in-Possession having filed a voluntary petition for relief under Chapter 11 of the United

States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date"). Emerald remains in possession of its assets and continues to operate its business under the applicable provisions of the Bankruptcy Code.

4.    Emerald was organized in October, 1997 under the laws of the State of New Jersey and was engaged in business as a lessor of various equipment used in the ocean going transportation business.

5.    Defendant on the Counterclaim is Sea Star Line, LLC ("Sea Star"), a company engaged in the shipping business, inter alia, as an ocean carrier transporting cargo, with a place of business located at 100 Bell Tel Way, Suite 300, Jacksonville, FL 32216.

## BACKGROUND

6.    Prior to the Petition Date, Emerald leased all of its equipment to NPR, Inc. and Holt Cargo Systems, Inc.  Said lease with NPR, Inc. and Holt Cargo Systems, Inc. of Emerald's equipment was rejected by a Consent Order entered by this Court dated May 10, 2002 (the "Consent Order"), but effective as of April 18, 2002.

7.    On or about April 26, 2002, an Order was entered by the Bankruptcy Court authorizing the sale of certain NPR assets (the "Sale") to Sea Star (the "Sale Order").  As part of the Sale, Sea Star purchased certain ships and other assets of NPR, Inc., including NPR's bookings.

8.    As a result of Sea Star's purchase of the NPR assets, Sea Star needed additional equipment to move cargo in the course of its business.

9.    Accordingly, on or about May 1, 2002, Sea Star and Emerald entered into an agreement (the "E-Mail Agreement" attached hereto as Exhibit "A"), whereby Sea Star agreed to lease Emerald equipment previously leased by Emerald to NPR.

10.    The E-Mail Agreement was effective as of May 1, 2002 and was applicable to any cargo worthy Emerald equipment, which Sea Star dispatched out of any port terminal or inland depot for customer use at agreed upon per diems (the "Emerald Equipment").

11.    Sea Star used the Emerald Equipment pursuant to the E-Mail Agreement for a number of months, before the leasing arrangement was more formally documented in a written agreement executed by Sea Star and Emerald in the later part of September, 2002 (the "Equipment Rental Agreement" attached hereto as Exhibit "B").

12.    At the inception of the lease between Emerald and Sea Star, the Emerald Equipment was not in Emerald's possession; instead all of the equipment was, inter alia, in terminals, in the possession of shippers, at inland depots or on board NPR vessels purchased by Sea Star.

13.    Emerald was not notified when Sea Star commenced using any particular piece of the Emerald Equipment and no receipt or other document was needed from Emerald acknowledging Sea Star's use of the Emerald Equipment before Sea Star could use that equipment.

14.    Under these circumstances, in order to ascertain rental payments due for the Emerald Equipment, Sea Star provided Emerald with monthly "self-billing reports", whereby Sea Star undertook the obligation to report to Emerald its "usage" of the Emerald Equipment.

10

15.    Upon later investigation, Emerald discovered that the "self billing reports" prepared by Sea Star were grossly understated, failing, inter alia, to account for numerous pieces of Emerald Equipment which Sea Star had been using without paying rental charges to Emerald and failing to pay the appropriate amounts for usage of equipment contained in the "self-billing reports".

16.    On or about October 31, 2003, Emerald exercised its rights to terminate the Equipment Rental Agreement in accordance with its terms.

## COUNT I
### (Post-Petition Account Receivable/Breach of Lease)

17.    Plaintiff incorporates paragraph 1 through 16 set forth above, as fully as if set forth herein in their entirety.

18.    Sea Star is in breach of its obligations under the E-Mail Agreement and under the terms of the Equipment Rental Agreement as a result of its failure to pay the following:

(a)    Rent due to Emerald;

(b)    Loss incurred as a result of the loss, damage, theft or destruction of certain equipment.

19.    In addition, after the termination of the Equipment Rental Agreement, Sea Star was required to return the equipment to Emerald at certain designated terminals. Despite this, Sea Star has failed to return numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement.

20.    As a result of Sea Star's breach of the E-Mail Agreement and Equipment Rental Agreement, Emerald has incurred damages in excess of $4,000,000.00.

11

21.    Emerald has provided detailed invoices to Sea Star setting forth the amounts owed to Emerald under the E-Mail Agreement and Equipment Rental Agreement. Emerald's work on these invoices is ongoing as it continues its investigation and discovers other Emerald Equipment which Sea Star has used, or has not returned, and has not compensated Emerald under the terms of the E-Mail Agreement and the Equipment Rental Agreement.

WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00, plus interest at the rate set forth in the Equipment Rental Agreement, attorneys' fees and other charges.

## COUNT II
### (Post-Petition Quantum Meruit)

22.    Plaintiff incorporates paragraph 1 through 21 set forth above, as fully as if set forth herein in their entirety.

23.    Sea Star has utilized property of Emerald and has received the economic benefit of that use without compensating Emerald.

24.    Sea Star's use of Emerald's equipment resulted in harm to Emerald and actual and material gain and benefit to Sea Star.

25.    To the extent Sea Star's use of Emerald's equipment occurred during any period not covered by a written lease agreement, Emerald is entitled to collect damages from Sea Star under the theory of quantum meruit.

WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00 as damages, plus interest, attorneys' fees and other charges.

**COUNT III**
**(Turnover Action)**

26.     Plaintiff incorporates paragraph 1 through 25 set forth above, as fully as if set forth herein in their entirety.

27.     By letter dated October 31, 2003, Emerald gave Sea Star thirty (30) days prior written notice of its termination of the Equipment Rental Agreement and demanded that Sea Star return all Emerald equipment to Emerald on or before December 1, 2003 in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement.

28.     Upon investigation, Emerald has determined that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement.

        WHEREFORE, Emerald, pursuant to 11 U.S.C. Section 342, or otherwise, requests the entry of an Order providing for the turnover of damages equaling unpaid rent, and the value of the equipment, together with interest and costs of suit.

**COUNT IV**
**(Accounting)**

29.     Plaintiff incorporates paragraph 1 through 28 set forth above, as fully as if set forth herein in their entirety.

30.     Certain information pertaining to the usage of Emerald Equipment while in the possession of Sea Star remains solely in the possession of Sea Star.

31.     Emerald has requested that Sea Star provide a full accounting of Sea Star's usage of all Emerald Equipment.

32.     Sea Star, to date, has failed to provide such accounting.

WHEREFORE, Emerald requests an Order requiring that Sea Star provide to Emerald a full accounting of all Sea Star's usage of Emerald Equipment.

### COUNT IV
### (Fraud)

33.     Plaintiff incorporates paragraphs 1 through 32 set forth above, as fully as if set forth herein in their entirety.

34.     The information (or lack thereof) provided by Sea Star on its "self-billing reports" was false and/or misleading.

35.     Sea Star prepared the "self billing reports" knowing that the information contained on those reports was false and misleading or prepared the reports with reckless indifference as to the veracity of the information contained in the "self billing reports".

36.     Sea Star prepared the inaccurate "self billing reports" with the intention of defrauding Emerald.

37.     Emerald, as per the terms of the E-Mail Agreement and Equipment Rental Agreement, had a right to and did in fact rely on the misrepresentations made by Sea Star in the "self billing reports".

38.     As a result of Emerald's reliance on the fraudulent misrepresentation of Sea Star in the "self billing reports", Emerald suffered damages in excess of $4,000,000.00.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

14

## COUNT VI
### (Constructive Fraud)

39.    Plaintiff incorporates paragraphs 1 through 38 set forth above, as fully as if set forth herein in their entirety.

40.    Sea Star, in undertaking the obligation of providing "self-billing reports", had a duty to accurately account for the use of Emerald's Equipment and to ensure that it accurately reported and compensated Emerald for the use of the equipment.

41.    Sea Star breached its duty to Emerald in that it failed to accurately account for the usage of Emerald's Equipment and properly reimburse Emerald for that use.

42.    As a result of Sea Star's inaccurate reporting of its use of the Emerald Equipment, whether intended to deceive Emerald or not, Sea Star has made representations which have a tendency to deceive and undermine confidence and are injurious to the public interest.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4 million plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

## COUNT VII
### (Fraudulent Concealment)

43.    Plaintiff incorporates paragraphs 1 through 42 set forth above, as fully as if set forth herein in their entirety.

44.    Sea Star owed a duty to Emerald to disclose its use of the Emerald's Equipment.

45.    Sea Star failed to accurately disclose its use of the Emerald's Equipment.

15

46.    Sea Star intended to defraud Emerald when it provided Emerald with the "self billing reports" grossly under reporting Sea Star's use of the Emerald Equipment.

47.    Emerald justifiably relied upon the fraudulently prepared "self billing reports".

48.    As a result of Emerald's reliance upon Sea Star's fraudulently prepared "self billing reports", Emerald suffered damages in excess of $4,000,000.00.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4 million plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

## COUNT VIII
### (Negligent Misrepresentation; Breach of Fiduciary Duty)

49.    Plaintiff incorporates paragraphs 1 through 48 set forth above, as fully as if set forth herein in their entirety.

50.    Sea Star, pursuant to the terms of the E-Mail Agreement and Equipment Rental Agreement had a fiduciary duty to accurately report to Emerald the equipment usage and the costs incurred as a result of said usage.

51.    Sea Star's actions in preparing "self-billing reports" which were false and/or misleading acted in a negligent and undue manner, thereby breaching its fiduciary duty to Emerald.

52.    Sea Star knew that Emerald relied upon Sea Star to accurately report the usage of the Emerald Equipment and the costs incurred.

53.    Sea Star was aware that not only would Emerald rely on the "self billing reports" to determine the rental fees for the Emerald Equipment but was also aware that

16

an accurate report from Sea Star was the only reasonably available method for Emerald to determine the actual usage of the Emerald Equipment.

54.    Emerald's reliance upon Sea Star's "self billing reports" was not only justified it was necessary to maintain the relationship between the parties as provided for in the E-Mail Agreement and the Equipment Rental Agreement.

55.    Emerald, having relied upon the "self billing reports" provided by Sea Star was damaged in that it was unable to collect the actual rents earned based on Sea Star's usage of the Emerald Equipment.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4 million plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

**SHUTTS & BOWEN LLP**
300 S. Orange Ave., Suite 1000
Orlando, Florida 32801-3373
Mailing Address:    P.O. Box 4956
Orlando, Florida 32802-4956
Phone: (407) 423-3200
Fax: (407) 425-8316

By:    /s/ Michael L. Gore
Michael L. Gore
Florida Bar No. 441252
Joey E. Schlosberg
Florida Bar No. 0079685

- and -

Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
**ADELMAN LAVINE GOLD AND
LEVIN**
 A Professional Corporation
Suite 900, Four Penn Center
Philadelphia, PA 19103-2808
Phone: (215) 568-7515
Fax: (215) 557-7922
**Attorneys for Defendants**

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21st of April, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Timothy J. Armstrong, Esq.
Armstrong & Mejer
2600 Douglas Road
Suite 1111, Douglas Center
Coral Gables, FL 33134

/s/ Michael L. Gore
Of counsel

ORLDOCS 10315765 1

18

**EXHIBIT "B"**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC, a limited liability company, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| -vs- | : : | |
| EMERALD EQUIPMENT LEASING, INC., a corporation, | : : : | |
| Defendant/Plaintiff on the Counterclaim | : : | Case No. 05-CV-00245-(JJF) |
| -vs- | : : : | |
| SEA STAR LINE, LLC | : : | |
| Defendant on the Counterclaim | : : | |

## AMENDED COUNTERCLAIM OF EMERALD

Emerald Equipment Leasing, Inc., by and through its undersigned counsel, files this Amended Counterclaim against Sea Star Line, LLC, and in support, avers as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. Sections 1334 and 157 and Sections 542 of Title 11 of the United States Code (the "Bankruptcy Code").   In addition, this Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C.A. Section 1333.

2.    Venue is appropriate before this Court by virtue of, and in accordance with, inter alia, 28 U.S.C. Section 1409.

**PARTIES**

3.     Counterclaimant is Emerald Equipment Leasing, Inc. ("Emerald"), a Debtor-in-Possession having filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date").  Emerald remains in possession of its assets and continues to operate its business under the applicable provisions of the Bankruptcy Code.

4.     Emerald was organized in October, 1997 under the laws of the State of New Jersey and was engaged in business as a lessor of various equipment used in the ocean going transportation business.

5.     Defendant on the Counterclaim is Sea Star Line, LLC ("Sea Star"), a company engaged in the shipping business, inter alia, as an ocean carrier transporting cargo, with a place of business located at 100 Bell Tel Way, Suite 300, Jacksonville, FL  32216.

**BACKGROUND**

6.     Prior to the Petition Date, Emerald leased all of its equipment to NPR, Inc. and Holt Cargo Systems, Inc.  Said lease with NPR, Inc. and Holt Cargo Systems, Inc. of Emerald's equipment was rejected by a Consent Order entered by this Court dated May 10, 2002 (the "Consent Order"), but effective as of April 18, 2002.

7.     On or about April 26, 2002, an Order was entered by the Bankruptcy Court authorizing the sale of certain NPR assets (the "Sale") to Sea Star (the "Sale Order").  As part of the Sale, Sea Star purchased certain ships and other assets of NPR, Inc., including NPR's bookings.

8.     As a result of Sea Star's purchase of the NPR assets, Sea Star needed additional equipment to move cargo in the course of its business.

9.     Accordingly, on or about May 1, 2002, Sea Star and Emerald entered into an agreement (the "E-Mail Agreement" attached hereto as Exhibit "A"), whereby Sea Star agreed to lease Emerald equipment previously leased by Emerald to NPR.

10.     The E-Mail Agreement was effective as of May 1, 2002 and was applicable to any cargo worthy Emerald equipment, which Sea Star dispatched out of any port terminal or inland depot for customer use at agreed upon per diems (the "Emerald Equipment").

11.     Sea Star used the Emerald Equipment pursuant to the E-Mail Agreement for a number of months, before the leasing arrangement was more formally documented in a written agreement executed by Sea Star and Emerald in the later part of September, 2002 (the "Equipment Rental Agreement" attached hereto as Exhibit "B").

12.     At the inception of the lease between Emerald and Sea Star, the Emerald Equipment was not in Emerald's possession; instead all of the equipment was, inter alia, in terminals, in the possession of shippers, at inland depots or on board NPR vessels purchased by Sea Star.

13.     Emerald was not notified when Sea Star commenced using any particular piece of the Emerald Equipment and no receipt or other document was needed from Emerald acknowledging Sea Star's use of the Emerald Equipment before Sea Star could use that equipment.

14.     Under these circumstances, in order to ascertain rental payments due for the Emerald Equipment, Sea Star provided Emerald with monthly "self-billing reports", whereby Sea Star undertook the obligation to report to Emerald its "usage" of the Emerald Equipment.

15.     Upon later investigation, Emerald discovered that the "self billing reports" prepared by Sea Star were grossly understated, failing, inter alia, to account for numerous pieces of Emerald Equipment which Sea Star had been using without paying rental charges to Emerald and failing to pay the appropriate amounts for usage of equipment contained in the "self-billing reports".

16.     On or about October 31, 2003, Emerald exercised its rights to terminate the Equipment Rental Agreement in accordance with its terms.

## COUNT I
### (Post-Petition Account Receivable/Breach of Lease)

17.   Plaintiff incorporates paragraph 1 through 16 set forth above, as fully as if set forth herein in their entirety.

18.   Sea Star is in breach of its obligations under the terms of the Equipment Rental Agreement as a result of its failure to pay the following:

(a)  Rent due to Emerald;

(b)  Loss incurred as a result of the loss, damage, theft or destruction of certain equipment.

19.   In addition, after the termination of the Equipment Rental Agreement, Sea Star was required to return the equipment to Emerald at certain designated terminals.  Despite this, Sea Star has failed to return numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement.

20.   As a result of Sea Star's breach of the Equipment Rental Agreement, Emerald has incurred damages in excess of $4,000,000.00.

21.   Emerald has provided detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Equipment Rental Agreement.  Emerald's work on these invoices is ongoing as it continues its investigation and discovers other Emerald Equipment which Sea Star has used, or has not returned, and has not compensated Emerald under the terms of the Equipment Rental Agreement.

WHEREFORE, Emerald requests the entry of an Order in an amount in excess of $4,000,000.00, plus interest at the rate set forth in the Equipment Rental Agreement, attorneys' fees and other charges.

## COUNT II
### (Turnover Action)

22.   Plaintiff incorporates paragraph 1 through 21 set forth above, as fully as if set forth herein in their entirety.

G:\393\10\pleading\ss-amended answer to complaint.doc

23.    By letter dated October 31, 2003, Emerald gave Sea Star thirty (30) days prior written notice of its termination of the Equipment Rental Agreement and demanded that Sea Star return all Emerald equipment to Emerald on or before December 1, 2003 in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement.

24.    Upon investigation, Emerald has determined that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement.

WHEREFORE, Emerald, pursuant to 11 U.S.C. Section 342, or otherwise, requests the entry of an Order providing for the turnover of damages equaling the value of the unreturned equipment, together with interest and costs of suit.

### COUNT III
### (Accounting)

25.    Plaintiff incorporates paragraph 1 through 24 set forth above, as fully as if set forth herein in their entirety.

26.    Certain information pertaining to the usage of Emerald Equipment while in the possession of Sea Star remains solely in the possession of Sea Star.

27.    Emerald has requested that Sea Star provide a full accounting of Sea Star's usage of all Emerald Equipment.

28.    Sea Star, to date, has failed to provide such accounting.

WHEREFORE, Emerald requests an Order requiring that Sea Star provide to Emerald a full accounting of all Sea Star's usage of Emerald Equipment.

### COUNT IV
### (Fraud)

29.    Plaintiff incorporates paragraphs 1 through 28 set forth above, as fully as if set forth herein in their entirety.

30.     The total rent payments made by Sea Star for its use of Emerald Equipment from April 29, 2002 through December 31, 2003 totaled $683,686.85.

31.     The information (or lack thereof) provided by Sea Star on its "self-billing reports", upon which Sea Star based its rental payments, was false and/or misleading.

32.     Specifically, the self-billing reports grossly underreported Sea Star's usage of the Emerald Equipment on diverse dates between April 29, 2002 and December 31, 2003, by (i) failing to properly account for the full period of time Sea Star was responsible for rental payments for numerous items of Emerald Equipment which Sea Star acknowledged using; and (ii) by failing to account, at all, for various items of Emerald Equipment which Sea Star used, but which it never acknowledged using.

33.     Emerald's investigation, which is continuing, has determined that it believes the extent of rental charges owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00.  In addition, Emerald believes, based upon its continuing investigation, that Sea Star used various pieces of Emerald Equipment which it never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rental totaling approximately $1,800,000.00.

34.     The shear magnitude of the huge discrepancy between Sea Star's reported usage of the Emerald Equipment (as shown on the Sea Star "self- billing reports") and what Emerald contends was the actual Sea Star usage of Emerald Equipment, evidences an intent to defraud Emerald, or at the very least, a reckless indifference as to the truth of the matters contained in the "self-billing reports".

35.     Attached hereto and marked as Exhibit "C" is a schedule of certain Emerald Equipment used by Sea Star (in this case, 40 foot chassis) specifically identifying each item of equipment, the dates of usage reported by Sea Star for that specific piece of equipment, Emerald's contention as to the actual dates of Sea Star's usage of that particular piece of equipment, and the amount of rent

owed, but unpaid, for each said specific piece of equipment. Similar schedules (which are voluminous), based upon Emerald's investigation to date, have been supplied to Sea Star for other types of Emerald Equipment used by Sea Star, which includes 20 foot chassis, 45 foot chassis, 20 foot DV containers, 40 foot DV containers, 40 foot reefer containers, 40 foot HC containers, 45 foot HC containers, and gen sets. These schedules specifically set forth the relevant equipment pieces, dates of usage, and other related information identifying the nature of the defective information contained in the Sea Star "self-billing reports".

36.    Other indicia of fraudulent and/or misleading information supplied by Sea Star include, but is not limited to the following:

(a) Sea Star appears to have backdated certain "terminal inter-change receipts"(known as "TIRs"). Attached hereto and marked as Exhibit "D" is a schedule identifying certain of those backdated TIRs;

(b) Sea Star subleased to a third party, CSX Line, from May 15, 2002 to July 17, 2002 various pieces of Emerald Equipment, which sublease activities were not permitted by the Equipment Rental Agreement. Further, most of the equipment pieces subleased to CSX Line were never included on Sea Star's "self-billing reports". Attached hereto and marked as Exhibit "E" is a copy of Sea Star invoice to CSX Line and schedules identifying the equipment pieces involved;

(c) certain documentation indicates that duplicate "self-billing reports" were prepared by Sea Star for the month of September, 2002 indicating different amounts for the same month. (see Exhibit "F");

(d) Emerald believes that other information pertinent to Sea Star's fraudulent conduct may be within Sea Star's exclusive control, and, as such, subject to further investigation.

37.    Sea Star prepared the "self billing reports" knowing that the information contained on those reports was false and misleading or prepared the reports with reckless indifference as to the veracity of the information contained in the "self billing reports".

G:\393\10\pleading\ss-amended answer to complaint.doc

38.     Sea Star prepared the inaccurate "self billing reports" with the intention of defrauding Emerald.

39.     Emerald had a right to and did in fact rely on the misrepresentations made by Sea Star in the "self billing reports".

40.     As a result of Emerald's reliance on the fraudulent misrepresentation of Sea Star in the "self billing reports", Emerald suffered damages in excess of $4,000,000.00.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

## COUNT V
### (Constructive Fraud)

41.     Plaintiff incorporates paragraphs 1 through 40 set forth above, as fully as if set forth herein in their entirety.

42.     Sea Star, in undertaking the obligation of providing "self-billing reports", had a duty to accurately account for the use of Emerald's Equipment and to ensure that it accurately reported and compensated Emerald for the use of the equipment.

43.     Sea Star breached its duty to Emerald in that it failed to accurately account for the usage of Emerald's Equipment and properly reimburse Emerald for that use.

44.     As a result of Sea Star's inaccurate reporting of its use of the Emerald Equipment, whether intended to deceive Emerald or not, Sea Star has made representations which have a tendency to deceive and undermine confidence and are injurious to the public interest.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

G:\393\10\pleading\ss-amended answer to complaint.doc

## COUNT VI
### (Fraudulent Concealment)

45.    Plaintiff incorporates paragraphs 1 through 44 set forth above, as fully as if set forth herein in their entirety.

46.    Sea Star owed a duty to Emerald to disclose its use of the Emerald's Equipment.

47.    Sea Star failed to accurately disclose its use of the Emerald's Equipment.

48.    Sea Star intended to defraud Emerald when it provided Emerald with the "self billing reports" grossly under reporting Sea Star's use of the Emerald Equipment.

49.    Emerald justifiably relied upon the fraudulently prepared "self billing reports".

50.    As a result of Emerald's reliance upon Sea Star's fraudulently prepared "self billing reports", Emerald suffered damages in excess of $4,000,000.00.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

## COUNT VII
### (Negligent Misrepresentation; Breach of Fiduciary Duty)

51.    Plaintiff incorporates paragraphs 1 through 50 set forth above, as fully as if set forth herein in their entirety.

52.    Sea Star had a fiduciary duty to accurately report to Emerald the equipment usage and the costs incurred as a result of said usage.

53.    Sea Star's actions in preparing "self-billing reports" which were false and/or misleading acted in a negligent and undue manner, thereby breaching its fiduciary duty to Emerald.

54.    Sea Star knew that Emerald relied upon Sea Star to accurately report the usage of the Emerald Equipment and the costs incurred.

55.    Sea Star was aware that not only would Emerald rely on the "self billing reports" to determine the rental fees for the Emerald Equipment but was also aware that an accurate report from

Sea Star was the only reasonably available method for Emerald to determine the actual usage of the Emerald Equipment.

56.     Emerald's reliance upon Sea Star's "self billing reports" was not only justified, it was necessary to maintain the relationship between the parties as provided for in the Equipment Rental Agreement.

57.     Emerald, having relied upon the "self billing reports" provided by Sea Star was damaged in that it was unable to collect the actual rents earned based on Sea Star's usage of the Emerald Equipment.

WHEREFORE, Emerald requests the entry of an order in an amount in excess of $4,000,000.00 plus interest at the rate set forth in the Equipment Rental Agreement, attorneys fees, punitive damages and other charges.

ADELMAN LAVINE GOLD AND LEVIN, A
Professional Corporation

By:

Bradford J. Sandler, Esq. (No. 4142)
919 North Market Street, Suite 710
Wilmington, DE 19801
302-654-8200
Counsel for Emerald Equipment Leasing, Inc.

-and-

ADELMAN LAVINE GOLD AND LEVIN,
A Professional Corporation
Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Suite 900, Four Penn Center
Philadelphia, PA 19103-2808
215-568-7515
Counsel for Emerald Equipment Leasing,
Inc.

**EXHIBIT "C"**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEA STAR LINE, LLC, a limited     :
liability company,               :
                                 :
            Plaintiff,           :
                                 :
        v.                       :   Civ. Act. No. 05-245-JJF
                                 :
EMERALD EQUIPMENT LEASING, INC.,:
a corporation,                   :
                                 :
            Defendant.           :

## MEMORANDUM ORDER

Pursuant to the Court's May 8, 2006 Order, Sea Star Line,
LLC ("Sea Star") has identified eleven additional people it
wishes to depose concerning 36 issues.  Emerald Equipment
Leasing, Inc. ("Emerald") has filed an Objection contending that
the parties have already exchanged discovery and conducted
depositions concerning the same issues when this action was
before the United States District Court for the Middle District
of Florida.  In reply, Sea Star contends that the same subject
matter was not at issue in the Florida litigation, because
Emerald's Counterclaim and Amended Counterclaim were filed after
discovery in Florida closed and this case was transferred from
Florida to Delaware.

The Court has reviewed the parties' respective arguments, as
well as the letter correspondence between the parties and the
discovery requests propounded by Sea Star upon Emerald, and
concludes that, although Emerald's Amended Counterclaim post-
dates the close of the discovery period in Florida, there is some

overlap between the discovery that was conducted by Sea Star in Florida and the discovery sought by Sea Star here.  To account for the issues which may have arisen since the Florida discovery was completed and to ensure that Sea Star has the opportunity to fully explore the allegations of Emerald's Amended Counterclaims in context, while simultaneously avoiding any prejudice to Emerald that might flow from retaking discovery which may have already been completed, the Court will permit the parties to engage in a period of limited discovery consistent with the parameters set forth by the Court in a Scheduling Order to be entered by the Court contemporaneously with this Memorandum Order.

NOW THEREFORE, IT IS HEREBY ORDERED that Emerald's Objection (D.I. 96) is <u>OVERRULED</u>.  Discovery will be taken in this action consistent with the Scheduling Order to be entered by the Court.

October 26, 2006
      DATE

UNITED STATES DISTRICT JUDGE

2

**EXHIBIT "D"**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,                     Civil Action No. 05-CV-245-JJF

      Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

      Defendant,

-vs-

SEA STAR LINE, LLC,

      Counter-Defendant.

_____/

## RE-NOTICE OF TAKING DEPOSITION

TO:   **ALAN I. MOLDOFF, ESQ.**
     Eckert Seamans Cherin & Mellott, LLC
     Two Liberty Place
     50 South 16th Street
     22nd Floor
     Philadelphia, PA 19102

     **PLEASE TAKE NOTICE** that the undersigned attorneys will take the deposition of:

     EMERALD EQUIPMENT LEASING, INC. pursuant to Fed. R. Civ. P. 30(b)(6), by and through any one or more officers, directors, managing agents, or corporate designees having personal knowledge of and qualified to testify as to the matters specified in attached Exhibit "A".

DATE:     May 23, 2007

TIME:     10:00 A.M.

05130|NOD|10025567.WPD                      -1-

FILING ID# 112
DATE FILED: 05/11/07

PLACE:    Smith, Katzenstein & Furlow, LLP
800 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel: (302) 652-8400

upon oral examination before, a Notary Public, or any other Notary Public or officer authorized by law to take depositions in the State of Delaware. The oral examination will continue from day to day until completed. Each deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the applicable and governing rules.

THE SAID DEPONENT is to bring the following: All documents responsive to Sea Star Line, LLC's Request for Production of Documents dated December 19, 2006.

Dated: May 11, 2007            SMITH, KATZENSTEIN & FURLOW LLP

Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone:  302-652-8400
Facsimile: 302-652-8405
E-mail: Kmiller@skfdelaware.com

OF COUNSEL:
Charles C. Robinson          *Attorneys for Sea Star Line LLC*
Garvey Schubert Barer
1191 Second Avenue, #1800
Seattle, WA 98101-2939
Telephone:  206.816.1451
Facsimile:  206.464.0125
Email: crobinson@gsblaw.com

and

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Miami, FL 33134
Telephone: 305-444-3355

**EXHIBIT "A"**

Pursuant to Fed. R. Civ. P. 30(b)(6), Defendant, EMERALD EQUIPMENT LEASING, INC. ("EMERALD"), shall testify as to the facts relating to the following allegations in the Amended Counterclaim against SEA STAR LINE, LLC ("SEA STAR"):

1.  SEA STAR's purchase of certain NPR assets included "NPR's bookings", as alleged in paragraph 7 of the Amended Counterclaim.

2.  The specific locations of "the Emerald Equipment" involved in EMERALD claims "[a]t the inception of the lease between Emerald and Sea Star", as alleged in paragraph 12 of the Amended Counterclaim.

3.  All communications between EMERALD and SEA STAR representatives relating to SEA STAR's provision of "monthly 'self-billing reports'", described in paragraph 14 of the Amended Counterclaim.

4.  All communications between EMERALD representatives and SEA STAR relating to SEA STAR's undertaking of "the obligation to report to Emerald its 'usage' of the Emerald Equipment", alleged in paragraph 14 of the Amended Counterclaim.

5.  EMERALD's discovery "that the 'self billing reports' prepared by Sea Star were grossly understated, failing, <u>inter alia</u>, to account for numerous pieces of Emerald Equipment which Sea Star had been using without paying rental charges to Emerald and failing to pay the appropriate amounts for usage of Equipment contained in the 'self-billing reports'", as alleged in paragraph 15 of the Amended Counterclaim.

6.  EMERALD's exercise of "its right to terminate the Equipment Rental Agreement in accordance with its terms", as alleged in paragraph 16 of the

05130|NOD|10025567.WPD

Amended Counterclaim.

7.    SEA STAR's failure to pay "[r]ent due to Emerald", as alleged in paragraph 18(a) of the Amended Counterclaim.

8.    SEA STAR's failure to pay "[l]oss incurred as a result of the loss, damage, theft or destruction of certain equipment", as alleged in paragraph 18(b) of the Amended Counterclaim.

9.    SEA STAR's failure to "return numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement", as alleged in paragraph 19 of the Amended Counterclaim.

10.    EMERALD's "damages in excess of $4,000,000.00", as alleged in paragraph 20 of the Amended Counterclaim.

11.    EMERALD's "ongoing" work on "detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Equipment Rental Agreement", as alleged in paragraph 21 of the Amended Counterclaim.

12.    Each EMERALD demand "that Sea Star return all Emerald Equipment to Emerald on or before December 1, 2003, in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement", as alleged in paragraph 23 of the Amended Counterclaim.

13.    Each EMERALD's determination "that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement", as alleged in paragraph 24 of the Amended Counterclaim.

14.    Each EMERALD's determination "that it believes the extent of rental charges

owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00", as alleged in paragraph 33 of the Amended Counterclaim.

15. EMERALD's belief "based upon its continuing investigation, that Sea Star used various pieces of Emerald Equipment which had never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rental totaling $1,800,000.00, as alleged in paragraph 33 of the Amended Counterclaim.

16. SEA STAR's "intent to defraud Emerald", as alleged in paragraph 34 of the Amended Counterclaim.

17. SEA STAR's "reckless indifference as to the truth of the matters contained in the 'self-billing reports'", as alleged in paragraph 34 of the Amended Counterclaim.

18. All schedules prepared by or on behalf of EMERALD and delivered to SEA STAR that relate to "Emerald Equipment used by Sea Star" and "specifically set forth the relevant equipment pieces, dates of usage, and other related information identifying the nature of the defective information contained in the Sea Star 'self-billing reports'", as alleged in paragraph 35 of the Amended Counterclaim.

19. All information received by EMERALD and communications between EMERALD and SEA STAR representatives relating to the TIRs that "Sea Star appears to have backdated", as alleged in paragraph 36(a) of the Amended Counterclaim.

20. All information received by EMERALD and communications between EMERALD and SEA STAR representatives relating to EMERALD's determination that "Sea Star subleased to CSX Line from May 15, 2002, to July 17, 2002, various pieces of Emerald Equipment",

as alleged in paragraph 36(b) of the Amended Counterclaim.

21.     All information received by EMERALD, communications between EMERALD and SEA STAR representatives, and the "documentation" that "indicates that duplicate "self-billing reports' were prepared by Sea Star for the month of September 2002, indicating different amounts for the same month", as alleged in paragraph 36(d) of the Amended Counterclaim.

22.     SEA STAR's knowledge in preparing "the 'self billing reports'...that the information contained on those reports was false and misleading", as alleged in paragraph 37 of the Amended Counterclaim.

23.     SEA STAR's "reckless indifference as to the veracity of the information contained in the 'self billing reports'" during preparation, as alleged in paragraph 37 of the Amended Counterclaim.

24.     SEA STAR's preparation of the "inaccurate 'self billing reports' with the intention of defrauding Emerald", as alleged in paragraph 38 of the Amended Counterclaim.

25.     EMERALD's reliance "on the misrepresentations made by Sea Star in the 'self billing reports'", as alleged in paragraph 39 of the Amended Counterclaim.

26.     The "damages in excess of $4,000,000.00" that Emerald suffered "[a]s a result of Emerald's reliance on the fraudulent misrepresentation of Sea Star in the 'self billing reports'", as alleged in paragraph 40 of the Amended Counterclaim.

27.     SEA STAR's "duty to accurately account for the use of Emerald's Equipment and to ensure that it accurately reported and compensated Emerald for the use of the equipment", as alleged in paragraph 42 of the Amended Counterclaim.

28.     SEA STAR's "representations which have a tendency to deceive and

undermine confidence and are injurious to the public interest", as alleged in paragraph 44 of the Amended Counterclaim.

29.    SEA STAR's intention "to defraud Emerald when it provided Emerald with the 'self billing reports' grossly under reporting Sea Star's use of the Emerald Equipment", as alleged in paragraph 48 of the Amended Counterclaim.

30. EMERALD's justifiable "reliance upon Sea Star's fraudulently prepared 'self billing reports'", as alleged in paragraph 49 of the Amended Counterclaim.

31.    The "damages in excess of $4,000,000.00" alleged in paragraph 50 of the Amended Counterclaim.

32.    SEA STAR's "fiduciary duty to accurately report to Emerald the equipment usage and the costs incurred as a result of said usage", as alleged in paragraph 52 of the Amended Counterclaim.

33.    Each SEA STAR action "in a negligent and undue manner", as alleged in paragraph 53 of the Amended Counterclaim.

34.    SEA STAR's knowledge "that Emerald relied upon Sea Star to accurately report the usage of the Emerald Equipment and the cost incurred", as alleged in paragraph 54 of the Amended Counterclaim.

35.    SEA STAR's knowledge that EMERALD would "rely on the 'self billing reports' to determine the rental fees for the Emerald Equipment", alleged in paragraph 55 of the Amended Counterclaim.

36.    SEA STAR's knowledge – and EMERALD's factual bases for stating – "that an accurate report from Sea Star was the only reasonably available method for Emerald to determine

the actual usage of the Emerald Equipment", as alleged in paragraph 55 of the Amended Counterclaim.

37.    "Emerald's reliance upon Sea Star's 'self billing reports'... was necessary to maintain the relationship between the parties as provided for in the Equipment Rental Agreement", as alleged in paragraph 56 of the Amended Counterclaim.

38.    All damages "relating to Emerald's inability to collect the actual rents based on Sea Star's usage of the Emerald Equipment", as alleged in paragraph 57 of the Amended Counterclaim.

39.    All "information pertaining to the usage of Emerald Equipment while in the possession of Sea Star" that "remains solely in the possession of Sea Star", as alleged in paragraph 26 of the Amended Counterclaim.

40.    The identity and mode of preparation of all documents produced by EMERALD in response to SEA STAR's Request for Production of Documents dated December 19, 2006.

41.    The identity and mode of preparation of all documents described in SEA STAR's Request for Production of Documents dated December 19, 2006.

42.    All facts relating to EMERALD's allegations in the Amended Counterclaim.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May, 2007 a copy of the foregoing *RE-NOTICE OF TAKING DEPOSITION* was served on the parties listed below in the manner indicated:

**FIRST-CLASS MAIL**
GARY M. SCHILDHORN, ESQ.
Adelman Lavine Gold and Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103-2808

**FIRST-CLASS MAIL**
ALAN I. MOLDOFF, ESQ.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

**ELECTRONIC MAIL AND FIRST-CLASS MAIL**
Bradford J. Sandler, Esq.
Adelman Lavine Gold and Levin, P.C.
919 North Market Street
Suite 710
Wilmington, DE 19801
Email: adelman11@adelmanlaw.com

_____
Kathleen M. Miller (ID No. 2898)

05130|COS|10025573.WPD

**EXHIBIT "E"**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:04-CV-146-99HTS


SEA STAR LINE, LLC,
a limited liability company,

     Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

     Defendant.

_____/

### RE-NOTICE OF TAKING DEPOSITION

TO: **MICHAEL L. GORE, ESQ.**     **ALAN I. MOLDOFF, ESQ.**
    Shutts & Bowen LLP          Adelman Lavine Gold and Levin
    P.O. Box 4956                Suite 900
    Orlando, FL 32802-4956     Four Penn Center
                               Philadelphia, PA 19103-2808

    PLEASE TAKE NOTICE that the undersigned attorneys will take the deposition of:

NAME:    EMERALD EQUIPMENT LEASING, INC., by and through any one or more officers, directors, managing agents, or corporate designees having personal knowledge of and qualified to testify as to the matters specified in attached Exhibit "A" pursuant to Fed. R. Civ. P. 30(b)(6).

DATE:    WEDNESDAY, DECEMBER 8, 2004
TIME:    9:30 A.M.

PLACE:    Adelman Lavine Gold and Levin
              Suite 900
              Four Penn Center
              Philadelphia, PA 19103-2808
              Tel: (215) 568-7515

-1-

upon oral examination before Esquire Deposition Services, a Notary Public, or any other Notary Public or officer authorized by law to take depositions in the State of Florida.  The oral examination will continue from day to day until completed.  Each deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the applicable and governing rules.

THE SAID DEPONENT is to bring the following:  All documents responsive to Sea Star Line, LLC's Request for Production of Documents dated July 16, 2004.

IT IS HEREBY CERTIFIED that a true copy of the foregoing Notice of Taking Deposition was telefaxed and mailed to the above-named addressees this ____ day of December, 2004.

cc:  Esquire Deposition Services          ARMSTRONG & MEJER, P.A.
     15th Floor                            Suite 1111, Douglas Centre
     Philadelphia, PA 19103                2600 Douglas Road
     Telephone: (215) 988-9191             Coral Gables, Florida 33134
                                           (305) 444-3355

                                       By: _____
                                           TIMOTHY J. ARMSTRONG

liz\04pldgs\03-3621-029

-2-

## EXHIBIT "A"

Pursuant to Fed. R. Civ. P. 30(b)(6), Defendant, EMERALD EQUIPMENT LEASING, INC. ("EMERALD"), shall testify as to the facts relating to the following matters:

1. The relationship between EMERALD and MBC LEASING, INC. ("MBC").

2. All agreements between EMERALD and MBC relating to EMERALD equipment.

3. All communications between EMERALD and MBC regarding the subject matter of this litigation.

4. All communications between EMERALD and MBC relating to EMERALD equipment after February 1, 2002.

5. The relationship between EMERALD and SEA STAR LINE, LLC ("SEA STAR").

6. All communications between EMERALD and SEA STAR relating to EMERALD equipment.

7. Each oral contract between EMERALD and SEA STAR relating to rental of equipment.

8. Each written contract between EMERALD and SEA STAR relating to rental of equipment.

9. Negotiation and execution of the Equipment Rental Agreement dated as of July 31, 2002.

10. Termination of the Equipment Rental Agreement dated as of July 31, 2002.

11. The specific EMERALD equipment involved in the oral

contractual relationship between EMERALD and SEA STAR.

12.   The specific EMERALD equipment involved in the written contractual relationship between EMERALD and SEA STAR.

13.   Preparation and delivery of EMERALD billings for equipment involved in the oral contractual relationship between EMERALD and SEA STAR.

14.   Preparation and delivery of EMERALD billings for equipment involved in the written contractual relationship between EMERALD and SEA STAR.

15.   Payments relating to equipment involved in the oral contractual relationship between EMERALD and SEA STAR.

16.   Payments relating to equipment involved in the written contractual relationship between EMERALD and SEA STAR.

17.   EMERALD financial records relating to equipment involved in the oral contractual relationship between EMERALD and SEA STAR.

18.   EMERALD financial records relating to equipment involved in the written contractual relationship between EMERALD and SEA STAR.

19.   Dispatches of EMERALD equipment out of port terminals and depots on and after April 1, 2002.

20.   Disposition of all EMERALD equipment leased to NPR, Inc.

21.   All EMERALD equipment identified by NPR, Inc. as lost.

Terminal, Inc. pertaining to EMERALD equipment.

34. All communications between EMERALD and Greenwich Terminals, Inc. pertaining to EMERALD equipment on and after April 1, 2002.

35. All agreements between EMERALD and General Transportation Service, Inc. pertaining to EMERALD equipment on and after April 1, 2002.

36. All communications between EMERALD and General Transportation Service, Inc. pertaining to EMERALD equipment on and after April 1, 2002.

37. All communications between EMERALD and other persons relating to EMERALD equipment on and after April 1, 2002.

38. Generation of EMERALD schedules and reports relating to equipment "leased" by SEA STAR.

39. EMERALD responses to SEA STAR's "analysis" as to EMERALD equipment.

40. Preparation and execution of trailer interchange receipts and other documents relating to EMERALD equipment delivered to SEA STAR.

41. Preparation and execution of trailer interchange receipts and other documents relating to EMERALD equipment re-delivered by SEA STAR.

42. EMERALD disposition of all equipment located on SEA STAR's premises on and after April 27, 2002.

43. EMERALD disposition of all equipment returned to SEA

STAR's premises on and after April 27, 2002.

  44. Payments by EMERALD in connection with equipment removed from SEA STAR's premises on and after April 27, 2002.

  45. EMERALD equipment sold to SEA STAR on and after April 27, 2002.

  46. EMERALD equipment sold to parties other than SEA STAR on and after April 27, 2002.

  47. All EMERALD equipment held in non-SEA STAR depots, shipper pools, or shipper warehouses on April 27, 2002.

  48. All EMERALD equipment held in non-SEA STAR depots, shipper pools, and other facilities after April 27, 2002.

  49. EMERALD negotiations for SEA STAR's transportation of equipment from Puerto Rico to the Continental United States.

  50. All contracts between EMERALD and SEA STAR relating to transportation of EMERALD equipment from Puerto Rico to the continental United States.

  51. SEA STAR's alleged gross understatement of "self billing reports".

  52. SEA STAR's alleged failures to account for EMERALD equipment that SEA STAR had been using.

  53. All rent allegedly due to EMERALD from SEA STAR.

  54. EMERALD notifications of damage to equipment re-delivered by SEA STAR.

  55. SEA STAR's alleged loss, damage, theft, or destruction of EMERALD equipment.

56.    SEA STAR's alleged failure to deliver chassis, gensets, and containers subject to the Equipment Rental Agreement.

57.    EMERALD's determination that SEA STAR has not returned EMERALD equipment pursuant to EMERALD's demand.

58.    EMERALD's    alleged    damages    in    excess    of $4,000,000.00.

59.    EMERALD's response to SEA STAR's Request for Production dated July 16, 2004.

60.    The identity and mode of preparation of all documents described in and produced pursuant to SEA STAR's Request for Production of Documents dated July 16, 2004.

**EXHIBIT "F"**



Eckert Seamans Cherin & Mellott, LLC          TEL 215 851 8400
Two Liberty Place                                          FAX 215 851 8383
50 South 16th Street                                       www.eckertseamans.com
22nd Floor
Philadelphia, PA 19102

Alan I. Moldoff
Direct Dial: 215-569-5090
amoldoff@eckertseamans.com

May 4, 2007

## BY FIRST-CLASS MAIL AND TELECOPIER

Timothy J. Armstrong,  Esquire
Armstrong & Mejer
Suite 1111, Douglas Center
2600 Douglas Road
Coral Gables, FL  33134

Re:     **Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.**
        **U.S. District Court for the District of Delaware**
        **Case No. 05-CV-00245-(JJF)**

Dear Mr. Armstrong:

As you know, Sea Star Line, LLC has already taken a Fed.R.Civ.P. 30(b)(6) deposition of Emerald Equipment Leasing, Inc. ("Emerald") in this litigation.  You have now submitted a "Re-Notice of Taking Deposition" of Emerald pursuant to Rule 30(b)(6) scheduled for May 17, 2007.

Many, if not most, of the areas of testimony which Sea Star seeks to depose Emerald's representative, as set forth in Exhibit "A" attached to the Deposition Notice, have already been the subject of the prior deposition taken in this matter.  In order to avoid the necessity of Emerald filing a motion for a protective order, this letter is a request that you provide a revised notice which specifically identifies areas of testimony sought in the deposition which differ from the testimony covered in the prior deposition and which must also be limited to matters raised for the first time in the Amended Counterclaim filed in this matter.  I am certain that you will agree that your client is not entitled to take two depositions of the same witness on the same subject matter.

Thank you very much for your anticipated cooperation.

Very truly yours,

ALAN I. MOLDOFF

AIM/md

cc:     Emerald Equipment Leasing, Inc.
        Gary M. Schildhorn, Esquire

g:\393\10\letters\armstrong-md

**EXHIBIT "G"**

# ARMSTRONG & MEJER, P.A.

(WWW.ARMSTRONGMEJER.COM)

PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

e-mail: amejer@bbsector.net

***VIA TELEFAX AND U.S. MAIL***

May 11, 2007

TELEFAX NOS.   (215) 557-7922; (215) 851-8383

Alan I. Moldoff, Esq.
Eckert Seamans Chenin & Mellott, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

        Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

        I learned of your letter dated May 4, 2007 while I was en
route to San Juan for depositions in this case.   After the
deposition on Wednesday, you asked that I agree to limit the
Emerald Rule 30(b)(6) deposition to "subject matter" outside the
scope of the original Emerald deposition to avoid a motion for
protective order.   Although you contend that "most if not all of
the areas of testimony which Sea Star seeks to depose Emerald's
representative, as set forth in Exhibit 'A' attached to the
Deposition Notice, have already been the subject of the prior
deposition taken in this matter", you have provided no particulars,
either in your letter or during our discussion.   Undisputably your
client had not filed an Answer, Affirmative Defenses, or
Counterclaim, much less an Amended Counterclaim, at the time of
original deposition of Emerald's representative.

        You have recognized your failure to furnish specific
substantiation for your position, and I cannot divine your
thoughts.   Under the circumstances I shall not comply with your
demand to "provide a revised notice which specifically identifies
areas of testimony sought in the deposition which differ from the

Alan I. Moldoff, Esq.
May 11, 2007
Page 2

testimony covered in the prior deposition and which must also be
limited to matters raised for the first time in the Amended
Counterclaim filed in this matter." To reiterate, I believe In any
event the Court's denial of Emerald's earlier objection to further
discovery have mooted any issue which you attempt to raise.

As I indicated during our discussion, I am re-noticing the
Emerald Rule 30(b)(6) deposition for Wednesday, May 23, in light of
your letter and our discussion. Meanwhile, I request that you
contact your client and promptly produce correspondence with
persons such as Francisco Gonzales and Joseph Maqueda, as well as
inventories and other materials, that your client evidently has not
produced. I look forward to your anticipated cooperation.

Very truly yours,

Timothy J. Armstrong