UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| SEA STAR LINE, LLC, ) | |
| a limited liability company, ) | Civil Action No. 05-CV-245-JJF |
| ) | |
| Plaintiff, ) | |
| -vs- ) | |
| EMERALD EQUIPMENT LEASING, INC., ) | |
| a corporation, ) | |
| ) | |
| Defendant, ) | |
| -vs- ) | |
| SEA STAR LINE, LLC, ) | |
| ) | |
| Counter-Defendant. ) | |

## SEA STAR'S RESPONSE TO EMERALD'S MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS

Devoid of legal citation and record reference, the Motion of Emerald Equipment Leasing, Inc. ("Emerald") to Compel Production of Documents ("Motion")(D.I. 115) exceeds the four-page limit mandated in paragraph 5(a) of the Rule 16 Scheduling Order and therefore, should be stricken. Sea Star Line, LLC ("Sea Star") also requests that the Motion be denied for the following reasons:

1.  Emerald never "leased various equipment" to Sea Star pursuant to an "Equipment Lease Agreement", and no "leasing arrangement between Emerald and Sea Star" existed. Motion ¶¶ 2-4. Instead the "subject of this litigation" is the Equipment Rental Agreement, the express written terms of which govern Sea Star's rental of Emerald equipment.[1] App. B9 ¶ 15(a); App. B24.

2.  Before Sea Star purchased certain NPR, Inc. ("NPR") assets in the bankruptcy court, all Emerald equipment had been leased to NPR and other NPR/Emerald affiliates. NPR periodically generated computer reports, showing equipment locations and status. *E.g.,* App. B41. Although Emerald knew NPR-leased equipment had been lost, stolen, damaged, or permanently out of service,

---

[1] Exhibits referenced in this Response and the Response to Emerald's Motion to Compel Responses to Certain Interrogatories D.I. 114 ("Int. Motion"), filed contemporaneously herewith, are compiled in Sea Star's Combined Appendix and are referenced in both responses as "App. B__".

Emerald did not investigate or revise billing. App. B42-51.

3. On and after April 29, 2002, Sea Star began to rent certain "Emerald Equipment"[2], as needed. Moreover, Sea Star handled two other categories of equipment, which Emerald's Motion does not mention, much less differentiate: Sea Star completed NPR cargo shipments "in transit", an undertaking that necessarily involved equipment previously leased by NPR; Sea Star also stored previously leased equipment for lessors. *E.g.*, App. B8-9 ¶ 13 ("Sale Order"); App. B64-70. Holding that Sea Star was not NPR's successor in interest and did not assume any NPR liabilities, the Sale Order enjoined creditors from asserting or prosecuting claims against Sea Star on account of any NPR liability. App. B9 ¶ 15.

4. Sea Star dealt with and primarily addressed "self-billing reports" to MBC Leasing, Corp. ("MBC"), Emerald's secured equipment lender and the real party in interest, not to Emerald. *See* App. B2 ¶ 4(b). Through late 2003 Sea Star and MBC exchanged payments and credits for Sea Star's "reported usage of the Emerald Equipment" [Motion ¶¶ 5, 6] and storage of MBC/Emerald equipment. *E.g.*, App. B71-82.[3] In September 2003 MBC instructed an Emerald representative: "Just make sure you are not claiming payments for units and time periods covered under self billing reports from Sea Star." App. B85.

5. Disregarding the Sale Order and the Equipment Rental Agreement, Emerald's Motion confirms the belief that whatever equipment Sea Star allegedly "touched", Sea Star must have used. App. B86-88. Emerald does not disclose that Sea Star has reproduced thousands of

---

[2] Construed in the context of the Memorandum Opinion, the Emerald Request for Production must define "Emerald Equipment" as "any container, genset, chassis, reefer or other equipment covered by and subject to...the Equipment Rental Agreement." Motion, Ex. B ¶ 6.

[3] Emerald held bare legal title to–not a beneficial interest in–equipment. Not until February 25, 2004 did Emerald allegedly acquire a contingent "carve out" interest of "15% of any proceeds, net of expenses or other amounts disbursed to third parties," it would otherwise receive on account of settlement or judgment with respect to the claim against Sea Star. App. B83-84.

documents, as well as electronic data, responsive to Emerald requests before and after issuance of the Rule 16 Scheduling Order. *See* Int. Motion, Ex. C. Sea Star's continuing production encompasses not only equipment subject to the Equipment Rental Agreement but also equipment involved in NPR shipments "in transit" and in storage.

6. In regard to Request Nos. 5, 6, and 8, Sea Star has produced documentary and electronic equipment manifests, load and discharge reports, and depot and gate records, detailing equipment movements and locations. Emerald's contention that production has been limited to "Sea Star's version of its use of Emerald Equipment" [Motion ¶ 6] is at best unfounded. *See, e.g.*, Int. Motion, Ex. C; App. B89-107. Furthermore, acquiescence in Emerald's demand for "actual vessel manifests" would be *prima facie* illegal. *See* 19 C.F.R. §103.31(c).

7. Emerald cannot justify Request No. 10. To demand that Sea Star produce "all invoices and bills of lading" issued to its customers between April 27 and September 30, 2002 is not only burdensome and intrusive, but also superfluous. Sea Star has produced and continues to produce extensive documentary and electronic information that "include[s] the relevant equipment identification numbers". Thus, Emerald does not need other customer information. Additionally, Emerald is not entitled to fish for documents without some justifiable basis. *See In re ML Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 41 (D.Del. 1993)("While most discovery involves some 'fishing',....the hook must be appropriately baited"). Emerald has provided no basis for fishing into other customer information, let alone explain how the hook has been appropriately bated.

8. Likewise, Request No. 11 is overbroad, harassing, and outside the bounds of legitimate discovery. Sea Star's need for equipment at inception of the Equipment Rental Agreement never has been an issue; Sea Star long ago produced e-mails, correspondence, plans, and other responsive documents relating to equipment claimed by Emerald, including units involved in shipments in transit and located in terminals and depots. Emerald's blanket demand does not

disclose that Sea Star purchases and leases from other vendors were "far more than the equipment Sea Star reported using in its self-billing reports". Motion ¶ 12.

9. As stated in its response to Request No. 12, Sea Star produced documents relating to CSX Lines' rental of equipment. To its knowledge Sea Star has no other responsive documents.

10. Sea Star has produced the documents in its custody or control responsive to Request Nos. 23, 24, and 25 relating to Emerald and its equipment claims. Motion, Ex. A. Rationalizing its failure and refusal to produce documentation pertaining to equipment listed in Exhibits "A", "B", and "C" of Sea Star's Request for Production served on December 20, 2006 [Motion, Ex. B at ¶ 23-24], Emerald asserts: "Of course, this stands this litigation on its head. It is Sea Star that is in possession of such documents, not Emerald." Motion ¶ 14. Emerald's excuse begs the question: If Emerald does not have the documents relevant to listed claims that Sea Star requested, how does Emerald plan to bear its burden of proof?

11. Unquestionably Emerald's Request Nos. 26 through 42 are improper. Each demands work product, trial preparation materials, and trial exhibits. *Hickman v. Taylor,* 329 U.S. 495, 509-10 (1947). *Accord, Sporck v. Peil,* 759 F.2d 312, 315-17 (3rd Cir.), *cert. denied,* 474 U.S. 903 (1985); *Chimie v. PPG Indus., Inc.,* 218 F.R.D. 416, 420-21 (D.Del. 2003). In any event discovery is incomplete, and no final determination as to documents that Sea Star will or may introduce as evidence has been made.

WHEREFORE, Sea Star requests that the Motion be denied.

| | |
|---|---|
| May 29, 2007 | SMITH, KATZENSTEIN & FURLOW LLP |
| | |
| And | /s/ Kathleen M. Miller |
| Timothy J. Armstrong | Kathleen M. Miller (I.D. No. 2898) |
| Armstrong & Mejer, P.A. | P.O. Box 410 |
| Suite 1111 Douglas Centre | Wilmington, DE 19899 |
| 2600 Douglas Road | Phone: (302) 652-8400 |
| Miami, FL 33134 | Attorneys for Sea Star Line LLC |