ORIGINAL



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MURPHY MARINE SERVICES, | ) | Case Nos. 01-00926 |
| INC., *et al.*[1] | ) | through 01-00950 (MFW) |
| | ) | (Jointly Administered) |
| Debtors | ) | |

## ORDER AUTHORIZING SALE OF THE NPR ASSETS
## FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Upon the Debtors' Motion for Order Authorizing Sale of the NPR Assets (as

defined and described in the Sale Motion) Free and Clear of All Liens, Claims and

Encumbrances (the "Sale Motion"), and due and adequate notice having been given under the

circumstances; it appearing that the relief requested is in the best interest of the Debtors[2], their

estates and their creditors; and, after due deliberation and sufficient cause appearing therefore,

the Court hereby FINDS, DETERMINES AND CONCLUDES THAT:

1.     The Court has jurisdiction to hear and determine the Sale Motion and all

related matters pursuant to 28 U.S.C. §§ 1334 and 157.  Venue of this proceeding in this district

is proper pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (N) and (O).

---

[1] The Debtors are Murphy Marine Services, Inc., The Holt Group, Inc., B.H. Sobelman & Co., Inc., Borinquen Maintenance, Inc., Broadway Equipment Leasing Corp., C.R.T., Inc., Dockside International Fish Co., Dockside Refrigerated Warehouse, Inc., Emerald Equipment Leasing, Inc., Holt Cargo Systems, Inc., Holt Hauling & Warehousing System, Inc., New Port Stevedores, Inc. (f/k/a S.J.I.T., Inc.), NPR Holding Corporation, NPR, Inc., NPR-Navieras Receivables, Inc., NPR S.A., Inc., Oregon Avenue Enterprises, Incorporated, Pattison Avenue Warehousing Corp., Refrigerated Distribution Center, Inc., Refrigerated Enterprises, Inc., The Riverfront Development Corporation, San Juan International Terminals, Inc., 777 Pattison Ave., Inc., Triple Seven Ice, Inc., and Wilmington Stevedores, Inc.  Dockside Refrigerated Warehouse, Inc. and Emerald Equipment Leasing, Inc. are not parties to the Bidding Procedures Motion or the Sale Motion.

[2] Capitalized terms not defined herein shall take the meaning ascribed thereto in the Sale Motion

36895-001\DOCS_DE:45595.5

E 005951

2.      The findings and conclusions contained herein constitute the findings of fact and conclusions of law required to be entered by this Court with respect to the Sale Motion pursuant to Fed.R.Civ.P. 52, as made applicable herein by Fed.R.Bankr.P. 7052 and 9014.

3.      Notice of the Sale Motion was timely, properly given in compliance with the Bankruptcy Code and Rules, and reasonable and appropriate under the circumstances.

4.      The Debtors have demonstrated that the sale of the assets, which includes the M/V CAROLINA, No. 53099, M/V MAYAGUEZ, No. 517450, M/V HUMACAO, No. 514261, and the M/V GUAYAMA, No. 520694, (the "Vessels") (and collectively, the "Purchased Assets") to Sea Star Line, LLC, and its permitted assignees ("Buyer") pursuant to the Asset Purchase Agreement, dated April 1, 2002 (the "Asset Purchase Agreement") is based on sound business justifications, and such sale is in the best interest of the Debtors' estates.

5.      Buyer is a third party purchaser unrelated to any of the Debtors.

6.      Failure to approve the Sale Motion will cause irreparable damage to the Debtors and their estates.

7.      The sale of the Purchased Assets has been proposed and, if consummated, will have been consummated in good faith in accordance with Section 363(m) of the Bankruptcy Code.  Buyer is entitled to the protections afforded under Section 363(m) of the Bankruptcy Code.

8.      The sale of the Purchased Assets, as provided in this Order, is in compliance with the provisions of Sections 363(b), 363(f) and 365 of the Bankruptcy Code.

9.     The negotiations between Buyer and the Debtors have been in good faith, and the consideration being paid is fair value for the Purchased Assets.

10.    The Debtors have demonstrated sufficient justification to sell a substantial portion of their assets outside of the confirmation of a plan of reorganization.

11.    The Debtors have made significant and satisfactory efforts to realize the highest or best value for the Purchased Assets.

12.    The Debtors, in compliance with the Bidding Procedures Order, dated April 12, 2002 (the "Bidding Procedures Order"), solicited bids for the Purchased Assets in order to conduct an auction on April 24, 2002 (the "Auction"). Buyer's bid was the sole Qualifying Bid, as defined by the Bidding Procedures Order, received by the Bid Deadline. Accordingly, Buyer was determined to have submitted the highest and best offer for the Purchased Assets. Debtors have determined that the Buyer's bid for the Purchased Assets is the Successful Bid, as defined in the Bidding Procedures Order.

13.    The sale process was open and complete and reasonably calculated to yield the highest or otherwise best offer for the Purchased Assets.

14.    The consideration to be received by the Debtors from Buyer is fair and reasonable.

15.    The sale of assets does not amount to a consolidation, merger, *de facto* merger or similar restructuring of either or both of Buyer and the Debtors.

E 005953

36895-001\DOCS_DE:45595.5

16.     Buyer is only buying the Purchased Assets and is not a successor in interest to Debtors, nor does Buyer's acquisition of the Purchased Assets reflect a substantial continuity of the operations of the Debtors' business.

17.     The Debtors have satisfied the standard set forth in Section 363(f) for selling the Purchased Assets free and clear of all liens, as (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interests; (b) any secured lender so affected by the sale has consented to the asset sale; (c) any applicable lien on the Purchased Assets is in bona fide dispute, or (d) the proceeds of the sale of any property alleged to be subject to a trust fund claim of CSX Intermodal, Inc. shall be placed in a segregated interest-bearing account pending the determination of such trust fund claim pursuant to paragraph 7 of this Order.

18.     The sale of the Purchased Assets constitutes a sale in furtherance of effectuating a plan of reorganization, and all transfers in connection therewith shall be exempt from any and all stamp, value-added, transfer, recording, and other similar taxes (other than income taxes) and any transfer or recording fees or other similar costs incurred or assessed by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) in connection with the sale or transfer of the Purchased Assets.

19.     Consummation of the Asset Purchase Agreements is in the best interests of the Debtor, its estate, all creditors, equity security holders and other parties in interest.

IT IS HEREBY ORDERED THAT:

1.     Except as modified by this Order, the Sale Motion is granted and approved in its entirety.

E 005954

2.    All objections to the sale of the Purchased Assets that have not been withdrawn are overruled. The Debtors are authorized pursuant to Sections 105(a) and 363(b) and (f) of the Bankruptcy Code to sell the Purchased Assets to the Buyer in accordance with the Asset Purchase Agreement and this Order.

3.    The Debtors are hereby authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the sale of the Purchased Assets in accordance with the terms and conditions set forth in the Asset Purchase Agreement, including, without limitation, to convey to Buyer the Purchased Assets; (b) execute any document or take any action necessary or appropriate to consummate the sale to the Buyer of the Purchased Assets without further order of this Court; and (c) take any action to remove any liens of record against the Purchased Assets.

4.    Except as otherwise provided in this Order, the sale of the Purchased Assets, including the Vessels, shall be free and clear of all claims, charges, security interests, mortgages, liens, maritime liens, (whether recorded or not), encumbrances arising by operation of law or otherwise, options, pledges, conditional sales, rights of others, or restrictions, whether imposed by agreement, law, or otherwise. All rights, liens, and interests alleged in the Purchased Assets shall attach to the proceeds from the sale of those Purchased Assets, including the Vessels, with the same priority, dignity, and effect such rights, liens, and interests had in the Purchased Assets pursuant to maritime or any other applicable law immediately prior to the sale of the Purchased Assets, *including the rights, liens and interests of Wells Fargo Business Credit, Inc. ("Well Fargo").*

5.      Except as provided in paragraphs 6, 7 and 8 of this Order, the Debtors shall hold all proceeds from the sale of the Purchased Assets in a segregated interest-bearing account pending further Order of this Court, which shall determine the proper allocation of the proceeds from sale of the Purchased Assets, including the Vessels, valued at the time of the sale.

6.      Subject to disgorgement after notice and a hearing, on April 29, 2002, the Debtors are authorized and directed to pay all Obligations, as such term is defined in that certain Credit and Security Agreement dated January 23, 2002 ("Credit Agreement") by and between the Debtors and Wells Fargo from the proceeds received on account of the sale of the Purchased Assets.  Notwithstanding anything to the contrary in this Order, Wells Fargo reserves all rights, including, without limitation, the right to seek any deficiency, as a result of disgorgement or otherwise, of the payment of the Obligations under the Credit Agreement from any other proceeds from the sale of the Purchased Assets or other property of the Debtors subject to the liens and security interests of Wells Fargo under the Credit Agreement.  Notwithstanding any distribution of proceeds to Wells Fargo, nothing contained in this Order or payment of proceeds to Wells Fargo will alter the validity, extent, or priority of any liens and security interests of the creditors of the Debtors as they existed prior to the date of the entry of this Order.

7.      The Debtors shall deposit the actual amount owed up to a maximum of $800,000.00 ("Trust Fund Account") from the proceeds from sale of the Purchased Assets into a segregated interest-bearing account subject to any alleged trust fund claim of CSX Intermodal, Inc.  The funds held in the Trust Fund Account shall continue to be subject to the rights, liens

and interests of other creditors in the Purchased Assets to the extent that the funds are determined

to be property of the Debtors and not trust fund property of CSX Intermodal, Inc.

8.    To the extent that the Debtors do not have sufficient funds in their

operating account to pay all earned and unpaid wages, withholding taxes, vacation, and current

due employee related obligations through and including the date of closing on sale of the

Purchased Assets, then the Debtors shall be authorized to use up to $1,900,000.00 of the

proceeds from sale of the Purchased Assets, after payment of the Obligations to Wells Fargo

under paragraph 6 of this Order, to pay such claims.

9.    To the extent that Purchased Assets subject to the liens and security

interests of the Bank of Gloucester, CIT, GECC, or GE Capital are excluded from the sale, the

purchase price of the Purchased Assets may be adjusted downward up to a maximum amount of

$1,600,000.00 on an aggregate basis, or such lesser amount reasonably related to the value of

any such assets excluded from the sale.

10.    The payment of claims under paragraphs 6, 7 and 8 of this Order out of

proceeds from sale of certain of the Purchased Assets shall not prejudice the rights of the pre-

petition secured lenders for which First Union National Bank is agent (the "First Union Bank

Group") to argue that such claims also would be payable from other proceeds from sale of the

Purchased Assets and seek a reallocation of such proceeds applied under paragraphs 6, 7 and 8,

including the right to seek a replacement lien in accordance with existing orders entered in favor

of the First Union Bank Group or otherwise on such other proceeds from sale of the Purchased

36895-001\DOCS_DE:45595.5

E 005957

Assets. Nothing contained in this Order will alter the priorities of the liens and security interests of the creditors of the Debtors as they existed prior to the date of the entry of this Order.

11.     All liens recorded against the Purchased Assets shall, upon Closing, be deemed released and discharged as against the Purchased Assets with all such liens and interests to attach to the proceeds of the sale pursuant Paragraph 4 above, and all parties and other entities, including filing agents and officers, title agents and companies, recorders of mortgages and deeds of trust, administrative agencies, governmental units and other state, federal and local officers are authorized and specifically directed to remove any recorded liens against the Purchased Assets from their records without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than this Order.

12.     To the extent that General Electric Capital Corporation ("GECC") is determined to be an undersecured creditor with respect to the liens, claims, or encumbrances of GECC in the Purchased Assets or the proceeds from the sale of the Purchased Assets, GECC reserves all rights to seek to enforce any cross-collateralization provision of any loan or security agreement to which it and any of the Sellers are a party, subject to the liens of Wells Fargo granted in the Final DIP Order.

13.     Notwithstanding anything to the contrary in the Asset Purchase Agreement, to the extent that any equipment of Emerald Equipment Leasing, Inc. ("Emerald"), or any other lien or lessor creditor whose property is not being sold or transferred to Buyer, is located on property sold and assigned to the Buyer under the Asset Purchase Agreement, the Buyer shall cooperate in allowing Emerald or such other creditors to remove such property

during normal business hours as long as such removal will not unreasonably disrupt operations of the Buyer. In addition, the Buyer shall cooperate in removing any such equipment from Vessels in transit and store such equipment on leased premises at the final port of destination, to the extent such final destination is a leased premises sold and assigned to the Buyer under the Asset Purchase Agreement. Nothing contained in this Order shall prejudice any of Emerald's rights to seek disgorgement of funds based on any of its claims, as well as to seek the creation of a constructive trust in the proceeds from the sale of the Purchased Assets, nor the rights of the Debtors or any other party to contest such constructive trust.

14.    Closing of the sale of the Purchased Assets shall occur as set forth in the Asset Purchase Agreement approved by the Court herein. Debtors and Buyer may, by mutual agreement, transfer title or possession of any asset at a time subsequent to closing of the sale. All parties and other entities, including all filing agents and officers, administrative agencies, governmental units and other state, federal and local officers shall effect all transfers of the Purchased Assets without further order of the Court.

15.    Except as expressly provided in the Asset Purchase Agreement, Buyer has not assumed or otherwise become obligated for any of the Debtors' liabilities. Consequently, after closing of the sale to Buyer, all creditors of the Debtors, whether known or unknown, are hereby enjoined from asserting or prosecuting any claim or cause of action against Buyer or the Purchased Assets to recover on account of any liability owed by the Debtors.

36895-001\DOCS_DE:45595.5

E 005959

B60

16.    The Asset Purchase Agreement: (i) was proposed, negotiated, and entered into in good faith after arms-length bargaining of the parties; and (ii) provides the Debtors with the highest or otherwise best offer received for the Purchased Assets.

17.    The Buyer is a good faith purchaser entitled to the protections afforded a purchaser pursuant to 11 U.S.C. § 363(m).

18.    Pursuant to Section 1146(c) of the Bankruptcy Code, the making, delivery, filing or recording of any and all other instruments of conveyance or transfer of the Purchased Assets to evidence, effectuate or perfect the rights, transfers and interest contemplated by the Asset Purchase Agreement (the "Conveyances"), are exempt from and shall not be taxed under any federal, state or local law imposing a recording tax, stamp tax, transfer tax or similar tax (collectively, "Transfer Taxes"). Such instruments, orders and agreements transferring the Purchased Assets to Buyer shall contain the following endorsement:

> Because this [instrument] has been authorized pursuant to an order of the United States Bankruptcy Court for the District of Delaware, in contemplation of a plan of reorganization of the Grantor, it is exempt from transfer taxes, stamp taxes or similar taxes pursuant to 11 U.S.C. § 1146(c).

All filing and recording officers are hereby authorized and directed to accept for recording or filing, and to record or file immediately upon presentation thereof, the Conveyances, without the payment of any such Transfer Taxes and without the requirement or presentation of any affidavit or form with respect to any Transfer Tax regarding the Conveyances. All governmental authorities or taxing authorities shall be permanently enjoined from commencing or maintaining

10

E 005960

16895-001\DOCS_DH:45595.5

the Purchased Assets to argue their rights to the proceeds of the sale and the manner in which the proceeds of the sale should be allocated.

23.    Nothing in this Order shall be deemed to modify or impair any right or claim among the estates of the Debtors, including, but not limited to (a) any claims to the sale proceeds, and (b) any payment of the Obligations to Wells Fargo under the Credit Agreement.

24.    This Court retains jurisdiction to:

(a)    Interpret, implement and enforce the terms and provisions of this Order and the terms of the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

(b)    Compel delivery of the Purchased Assets to the Buyer;

(c)    Resolve any disputes arising under or related to the sale of the Purchased Assets to the Buyer, subject to the provisions of the Asset Purchase Agreement;

(d)    Protect Buyer, or any of the Purchased Assets, against any liens of any kind, including maritime liens, against the Purchased Assets after the transfer of the Purchased Assets to Buyer; and

(e)    Adjudicate any issue that may arise by any person or entity asserting a claim or cause of action against Buyer arising from Debtors' use of the Purchased Assets prior to the Closing Date, which shall include, but shall not be limited to, successor claims.

25.    This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

36895-001\DOCS_DE:45595.5

12

E 005962

Dated:  Wilmington, Delaware
        April 26, 2002

The Honorable Mary F. Walrath
United States Bankruptcy Judge

E 005963

36895-001\DOCS DE:45595.5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

FILED

2007 MAY 23 A1 10:14

IN RE:                              . Case Nos. 01-00926 thru
                                    .           01-00950 (MFW)
                                    .
MURPHY MARINE SERVICES,             .
   INC., et al,                     . 824 Market Street
                                    . Wilmington, Delaware 19801
              Debtor,               .
                                    . April 26, 2002
. . . . . . . . . . . . . . . . . . 9:37 a.m.


TRANSCRIPT OF OMNIBUS MOTION HEARINGS
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:              Pillsbury Winthrop LLP
                             By: RICHARD L. EPLING, ESQ.
                                 JESSICA FINK, ESQ.
                             One Battery Park Plaza
                             New York, New York 10004


For the Debtor:              Pachulski, Stang, Ziehl, Young &
                                Jones
                             By:  CHRISTOPHER LHULIER, ESQ.
                                  HARRY GARNER, ESQ.
                             919 N. Market St., 16th Floor
                             P. O. Box 8705
                             Wilmington, DE 19899


Audio Operator:              Donna Brown

   Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311   Fax No.   (609) 587-3599

56

1    everything in life, nothing is quite -- is quite as simple as

2    it seems.  There is more to the story than what I just told

3    you, which is -- the short answer of which is we are being

4    compensated, the estates are being compensated, for the goods

5    in transit, for the costs of transporting the goods.  The ships

6    that are being loaded today, when the account receivable is

7    generated, as I said a few minutes ago, will be a Sea Star

8    receivable and will be billed and collected by Sea Star.

9    However, Sea Star recognizes, and we have a memorandum

10   agreement with them to this effect, Sea Star recognizes that

11   there are goods that are in transit today.

12           So let's take the example, if you will, of a box or a

13   load that began in Chicago sometime this week, got -- was put

14   on a railroad or on a track chassis, brought to Philadelphia

15   and loaded on a ship at Packer Avenue today, and then is going

16   on to Puerto Rico and will be delivered to a customer somewhere

17   on the island tomorrow or next week.

18           We have incurred costs for that transportation up to

19   this point and we would -- we would if we were still owning the

20   business continue to incur those costs right up to the end

21   destination.  Sea Star is prepared to pay us as a closing

22   adjustment for the entire direct cost -- for our entire cost, I

23   should say, internal cost, of transporting that box and that

24   cargo from Chicago to the end destination in San Juan.

25           How did that get resolved -- or, how did that get

J&J COURT TRANSCRIBERS, INC.

1    arrived at?  One of our people, the president -- or, the

2    executive VP of MPR, Carl Fox, and Mr. Leach from Sea Star sat

3    down and developed a model.  And that model has essentially, I

4    think, I'm told, it's the last quarter's costs of shipping,

5    costs of delivering the service, on an average.  It's not Sea

6    Star's costs, it's not anybody else's costs but MPR's.  And

7    that was deemed to be the costs that were imputed to these

8    voyages, or these trips, that are still ongoing in the middle

9    of the closing -- I don't know what the number is exactly but

10   there is -- there is an imputed number that we'll get paid at

11   closing, and then it's subject to true up post closing based on

12   the actual cost of the voyages, or the trips to MPR.

13           Included -- the point to be made here is that

14   included in those -- in those costs of supplying services to

15   the goods are of course things like leasing costs and financing

16   costs as well as labor, materials and other things that go into

17   getting goods from, you know, a place -- a point in Chicago to

18   a point in San Juan.  And so while we're not getting the

19   receivable, the profit, if you will, from the load, we are in

20   fact getting compensated for the costs, which is I think what

21   the concern of Emerald and the others, the other equipment

22   lessors and lenders were of using that box, or using their box

23   to get -- to get a load from point A to point B.

24           THE COURT:  Well, does the cost include the rental of

25   the containers, whether or not the debtor has rejected those

J&J COURT TRANSCRIBERS, INC.

58

1  containers or not? Because I think the debtor acknowledged

2  that, for example, with respect to Emerald, to the extent the

3  debtor's still using it post rejection it may be obligated for

4  the rental cost of those.

5           MR. EPLING: We understand that there may be an

6  administrative claim accruing until we can get these boxes out

7  of service. That's understood. Again, Sea Star will hopefully

8  correct me if I -- if I am wrong, but I believe the model,

9  which is complicated and it has a lot of factors in it, does

10  include rental costs as one of the cost factors imputed to the

11  box moving in interstate and international commerce.

12           THE COURT: All right.

13           MR. EPLING: Your Honor, I had one other thing, as

14  long as I have the podium, that I wanted to bring to your

15  attention in the black line of the order. You may remember

16  from yesterday, this is -- this is paragraph eight of the order

17  on, I know the pages aren't numbered, but it's on the carryover

18  on top of the next page --

19           THE COURT: On --

20           MR. EPLING: -- paragraph --

21           THE COURT: -- today's or yesterday's?

22           MR. EPLING: On the -- on the black line I handed you

23  a little while ago.

24           THE COURT: Today's. All right.

25           MR. EPLING: That's the one I'm working on, today.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.  What page are you on again?

2          MR. EPLING:  Unfortunately, what I have isn't

3    numbered.  It's paragraph eight, ordering paragraph eight.

4          THE COURT:  Have it.

5          MR. EPLING:  There's a blank -- there was a blank in

6    there.  Mr. Hayes testified yesterday that we want to be sure

7    that we cover our payroll and our final day's expenses today

8    from the proceeds of sale in the event we can't do it from cash

9    flows.  We've essentially got our cash report in this morning,

10   and I can put him on the stand and he can testify as to this

11   but the number we need to carve out to be safe, to make sure we

12   cover our payroll taxes is a million four.

13         THE COURT:  Is a million four?

14         MR. EPLING:  Yes, ma'am.

15         THE COURT:  All right.

16         MR. EPLING:  That's all I have, Your Honor.

17         MR. HALLAM:  Your Honor, William Hallam for MBC

18   leasing.  I just want to get clarification.  On the -- on the

19   additional compensation that's to be paid by Sea Star, I just

20   want to be clear, that's going to be considered proceeds of

21   sale, so all this language in this order about interest

22   attaching -- called something else, some kind of adjustment

23   that's not dealt with, it's considered part of the purchase

24   price, is that correct?

25         MR. EPLING:  The debtors certainly consider it to be

                    **J&J COURT TRANSCRIBERS, INC.**

1  so, Your Honor.  Richard Epling.

2          THE COURT:  Okay.

3          MR. HALLAM:  One other thing, Your Honor, we filed

4  last week on Friday a motion for relief from stay.  We're gong

5  to face a point where even if the 30-day mark that Sea Star's

6  talking about, some of this equipment, my understanding in the

7  turnover in the industry is there will be equipment that's not

8  back by then.  And certainly at some point we're going to face

9  storage charges by Sea Star, and we're not in a position to

10  stop those -- stop those by going and taking our collateral.  I

11  had asked for -- filed an emergency motion to shorten time

12  earlier this week asking that we set our motion for relief from

13  stay and for Monday when we're back here on the Murphy Marine

14  sale.

15          There's really no evidence that the Court needs to

16  hear.  It knows all that there is to know, and I really would

17  ask the Court to grant that motion so that we can get in a

18  position where we can cut off any claim by Sea Star for storage

19  of things that -- I mean, we understand that these are going to

20  use till destination we aren't going to interfere with but

21  there's a lot of this that they aren't planning to use till

22  destination that's sitting in places that they're going to take

23  over effective three o'clock tomorrow morning, so I'd ask the

24  Court to grant the motion to shorten time.

25          THE COURT:  Any objection to that?

61

1              MR. FISCO:  Michael Fisco on behalf of the Committee,

2    Your Honor.  I have no objection.

3              THE COURT:  And the debtor?

4              MR. EPLING:  Not my debtor, Your Honor.

5              THE COURT:  Well, that's true.

6              MR. LEMISCH:  No objection, Your Honor, on behalf of

7    Emerald.

8              THE COURT:  All right.  Then I will grant the

9    expedited request and we'll hear it Monday.

10             MR. HALLAM:  Thank you, Your Honor.

11             MR. EPLING:  Your Honor, Richard Epling again.  Let

12   me amend something I said just a minute ago.  The million four

13   for payroll that I -- that I explained to the Court is in the

14   order?

15             THE COURT:  Yes.

16             MR. EPLING:  In arriving at that net number we may

17   have counted -- our CFO, Mr. Strike, may have counted, I don't

18   know the answer to this question, may have counted the money

19   from the true-up coming at the closing in -- as being committed

20   to payroll.  Since I believe that is still a proceed of the

21   sale we're only asking to use the proceed for the -- for the --

22   for the maintenance of payroll, or for making the last payroll.

23   I'm not sure it's material but I wanted to make sure I didn't

24   make a mistake here and tell you the wrong thing.

25             THE COURT:  Do we know what the true-up number is?

                  J&J COURT TRANSCRIBERS, INC.

Post Office Box 42550
Philadelphia, PA 19101-2550

FAX:  904-724-3007                                                    June 11, 2002

Mr. Phil Bates
SEA STAR
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216

Dear Mr. Bates:

Please remit a check in accordance with the attached letter from MBC Leasing, Corp.

Regards,

GREENWICH TERMINALS LLC

Thomas J. Holt, Jr.

TJH,JR/MKC
Enclosure (2 pages)

Telephone 856-742-3000 · Telefax 856-742-3291

EXHIBIT "D"

**MERCANTILE-SAFE DEPOSIT & TRUST COMPANY**

Scott H. Krieger
Senior Vice President
(410) 237-5694
Fax: (410) 237-5319

July 19, 2002

Mr. Phil Bates
Sea Star Line, LLC
100 Bell Tel Way
Suite 300
Jacksonville, FL 32216

Dear Phil:

Please be advised that Greenwich Terminals, LLC is authorized as MBC Leasing Corp.'s agent for the following purposes:

1.  Assembling and storing Emerald Leasing's equipment

2.  Soliciting purchasers and selling the Emerald Leasing equipment

The authorized representatives of Greenwich Terminals, LLC are:

Thomas Holt, Jr.
Arthur Davis
Martin McDonald

Please feel free to call me with any questions you may have. Thank you.

Sincerely,

Scott H. Krieger
Senior Vice President

cc:    Thomas Holt, Jr.

SHK:swl
S:1

Two Hopkins Plaza / P.O. Box 1451 / Baltimore, Maryland 21203
An Affiliate Mercantile Bankshares Corporation / Member FDIC

SE50578

B72

 **MBC LEASING CORP.**

June 10, 2002

Mr. Thomas Holt, Sr., President
Emerald Equipment Leasing Company
101 S. King Street
Gloucester City, New Jersey 08030

Dear Tom:

Any money due from Sea Star for use of any of containers, gensets, and chassis previously leased by Emerald Equipment Leasing to NPR, Inc. and Holt Cargo Systems for a purpose other than completing shipments in progress on April 27 when Sea Star purchased certain assets of NPR and Holt Cargo should be paid directly to MBC Leasing. Any money due from Sea Star for use of any of the Emerald equipment to complete shipments in progress on April 27 should be paid in accordance with the memorandum that MBC understands exists between Sea Star and NPR, Holt Cargo, and possibly other affiliates to be allocated in accordance with the Bankruptcy Court's ruling on the allocation of the proceeds of sale to Sea Star.

Any money due from Sea Star for use of any of the 700 forty foot dry van containers and the 283 forty-five foot dry van containers MBC previously leased to NPR and Holt Cargo after May 15, 2002 for a purpose other than completing shipments in progress on April 27 should also be paid directly to MBC. Note that MBC believes it is entitled to money due from Sea Star for any use of the MBC equipment on or after April 27, 2002 through May 15, 2002 for a purpose other than completing shipments in progress on April 27. However, NPR and Holt Cargo may disagree because rejection of the MBC lease was effective May 15, 2002. Consequently, MBC is not insisting that money due from Sea Star for any use of the MBC equipment on or after April 27, 2002 through May 15, 2002 for a purpose other than completing shipments in progress on April 27 be paid to it at this time, but reserves all claims to that money.

Payments to MBC should be sent to me at 2 Hopkins Plaza, 5th Floor, Baltimore, Maryland 21201.

Sincerely,

Scott H. Krieger
Treasurer & Assistant Secretary

SHK:sw
E:1

Two Hopkins Plaza / P.O. Box 1451 / Baltimore, Maryland 21203 / (410) 237-5955
Affiliate Mercantile Bankshares Corporation / Member FDIC

EXHIBIT "C"

## INDEMNITY AGREEMENT

This Indemnity Agreement ("AGREEMENT") is made of this 26th day of September, 2002 by and between MBC LEASING CORP., a Maryland corporation ("MBC"), and SEA STAR LINE, LLC, a Delaware limited liability company ("SEA STAR").

## EXPLANATORY STATEMENT

EMERALD EQUIPMENT LEASING, INC. ("EMERALD") leased 426 twenty foot steel dry van containers, 990 Onan refrigerator "gensets," 910 forty foot steel dry van containers, 1,457 forty foot steel high cube dry van containers, 945 forty-five foot steel dry van containers, 396 forty-five foot aluminum dry van containers, 972 refrigerated containers, and 6,741 chassis (the "EMERALD EQUIPMENT") to NPR, INC. and HOLT CARGO SYSTEMS, INC. ("HOLT CARGO") pursuant to an Equipment Lease Agreement made as of November 18, 1997.

MBC leased 700 forty foot dry van containers and 283 forty-five foot dry van containers (the "MBC EQUIPMENT") to NPR, INC. and HOLT CARGO pursuant to an Equipment Lease Agreement dated as of March 18, 1999.

EMERALD, NPR, INC., and HOLT CARGO are all the subject of proceedings under the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (the "BANKRUPTCY COURT") and known as "In re MUMA Services, Inc. (f/k/a Murphy Marine Services, Inc), Case Nos. 01-00926 through 01-00950 (Jointly Administered)" (the "BANKRUPTCY CASE").

On or about April 27, 2002, pursuant to an Order entered by the BANKRUPTCY COURT in the BANKRUPTCY CASE, SEA STAR purchased certain assets of NPR, INC. and HOLT CARGO, which assets did not include any of the EMERALD EQUIPMENT or the MBC EQUIPMENT. At the time that SEA STAR purchased assets, NPR, INC. and HOLT CARGO delivered certain of the EMERALD EQUIPMENT and the MBC EQUIPMENT into the possession of SEA STAR.

MBC has demanded that SEA STAR pay MBC for the use by SEA STAR of any EMERALD EQUIPMENT or MBC EQUIPMENT on or after April 27, 2002. Although SEA STAR is willing to pay for the use of such of the EMERALD EQUIPMENT and the MBC EQUIPMENT as SEA STAR has used on or after April 27, 2002 at the rates specified below, SEA STAR is unwilling to pay MBC unless it is assured that it will not be required to pay for the same use by any trustee appointed in the BANKRUPTCY CASE, any party named as a defendant in any interpleader action instituted by SEA STAR in the BANKRUPTCY CASE, the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE (the "COMMITTEE"), EMERALD, NPR, INC., HOLT CARGO, or any party claiming through or under them (jointly and severally, "COMPETING

1



CLAIMANTS"). MBC is willing to indemnify SEA STAR against claims by COMPETING CLAIMANTS on the terms and conditions set forth in this AGREEMENT to induce SEA STAR to pay MBC for the use of the EMERALD EQUIPMENT and the MBC EQUIPMENT on or after April 27, 2002 immediately.

NOW, THEREFORE, in consideration of the premises, the parties hereto agree as follows:

1.    Agreement to Pay for Use of Equipment. Upon execution of this AGREEMENT, SEA STAR will remit to MBC by certified check, cashier's check, or wire transfer: (a) for each item of the EMERALD EQUIPMENT used during the period of April 27, 2002 through and including July 31, 2002, the amount determined by multiplying the applicable daily rate specified on "Equipment Schedule A" attached hereto and incorporated herein (the "EMERALD SCHEDULE") by the number of days during that period in which such item of EMERALD EQUIPMENT was used; plus (b) for each item of the MBC EQUIPMENT used during the period of April 27, 2002 through and including July 31, 2002, the amount determined by multiplying the applicable daily rate specified on "Equipment Schedule B" attached hereto and incorporated herein (the "MBC SCHEDULE") by the number of days during that period in which such item of MBC EQUIPMENT was used after deduction of such reasonable charges as are due to SEA STAR for storage and handling of EMERALD EQUIPMENT and MBC EQUIPMENT. Beginning on August 31, 2002 and continuing on the last day of each month thereafter, SEA STAR shall remit to MBC for each item of EMERALD EQUIPMENT in SEA STAR'S possession during that month or portion thereof compensation at the daily rates specified on EMERALD SCHEDULE from the first day of the month through and including the earliest of: (a) the day on which SEA STAR purchases such item and pays the purchase price therefor; (b) the date on which SEA STAR makes such item available for removal from SEA STAR'S possession by MBC; or (c) the last day of that month after deduction of such reasonable charges as are due to SEA STAR for storage and handling of EMERALD EQUIPMENT. Beginning on August 31, 2002 and continuing on the last day of each month thereafter, SEA STAR shall remit to MBC for each item of MBC EQUIPMENT in SEA STAR'S possession during that month or portion thereof compensation at the daily rates specified on the MBC SCHEDULE from the first day of the month through and including the earliest of: (a) the day on which SEA STAR purchases such item and pays the purchase price therefor; (b) the date on which SEA STAR makes such item available for removal from SEA STAR'S possession by MBC; or (c) the last day of that month after deduction of such reasonable charges as are due to SEA STAR for storage and handling of MBC EQUIPMENT.

2.    Waiver of Further Claims By MBC for Use of Equipment. MBC acknowledges and agrees that the compensation rates set forth in "Equipment Schedule A" and "Equipment Schedule B" represent fair and reasonable compensation for the use of the EMERALD EQUIPMENT and the MBC EQUIPMENT by SEA STAR and that provided SEA STAR pays the amounts specified in Section 1 of this AGREEMENT for each item

2

of EMERALD EQUIPMENT and MBC EQUIPMENT that it has used during the
applicable period when and as due, subject to deductions specified in Section 1, MBC
will assert no further claims against SEA STAR for compensation for the use of the
EMERALD EQUIPMENT or the MBC EQUIPMENT by SEA STAR.

3.    <u>Effect of Agreement On Sea Star's Right to Possession</u>.    SEA STAR
acknowledges and agrees that nothing in this AGREEMENT is intended to or shall
confer on SEA STAR the right to possess or use any EMERALD EQUIPMENT or MBC
EQUIPMENT and that MBC reserves such rights, if any, as MBC may have to take
possession of the EMERALD EQUIPMENT and the MBC EQUIPMENT. MBC
acknowledges and agrees that nothing in this AGREEMENT shall constitute an
acknowledgment by SEA STAR of MBC'S right to take possession of the EMERALD
EQUIPMENT and the MBC EQUIPMENT. Notwithstanding the foregoing, MBC
acknowledges and agrees that if SEA STAR enters into a Rental Agreement with
EMERALD which is approved by MBC, in writing, MBC shall not interfere with SEA
STAR'S right to use or possession of any EMERALD EQUIPMENT that is the subject of
such agreement so long as SEA STAR complies with the terms and conditions of such
agreement. MBC acknowledges and agrees that if SEA STAR and MBC enter into an
Equipment Lease Agreement for the MBC EQUIPMENT or any portion thereof, MBC
will not interfere with SEA STAR'S use or possession of any MBC EQUIPMENT that is
the subject of such Equipment Lease Agreement so long as SEA STAR complies with
the terms and conditions of such Equipment Lease Agreement. Furthermore, MBC
shall not interfere with SEA STAR'S right to use or possession of any EMERALD
EQUIPMENT or MBC EQUIPMENT purchased by SEA STAR from MBC or from
EMERALD with MBC'S consent.

4.    <u>Agreement to Indemnify and Defend</u>.    Provided that SEA STAR provides MBC
with prompt written notice of any claims, causes of action, liabilities, or damages
asserted against SEA STAR by any COMPETING CLAIMANT relating to any
COMPETING CLAIMANT'S alleged entitlement to compensation for use of EMERALD
EQUIPMENT or MBC EQUIPMENT during any period for which SEA STAR has paid
MBC pursuant to this AGREEMENT (a "PROCEEDING"), MBC will defend the
PROCEEDING at its expense.    MBC acknowledges and agrees that if the
BANKRUPTCY COURT or any other court of competent jurisdiction (a "COURT")
determines in a PROCEEDING that a COMPETING CLAIMANT is entitled to be
compensated for use of any EMERALD EQUIPMENT or MBC EQUIPMENT for any
period for which SEA STAR has paid MBC pursuant to this AGREEMENT, within five
(5) business days after receipt by MBC of written demand by SEA STAR, MBC will
remit to SEA STAR by certified check, cashier's check, or wire transfer the lesser of: (a)
the amount to which the COURT determined the COMPETING CLAIMANT is entitled
for that period; or (b) the amount, net of deductions specified in Section 1, paid by SEA
STAR to MBC pursuant to this AGREEMENT for use of the pertinent item or items of
EMERALD EQUIPMENT and/or MBC EQUIPMENT during that period (the
"INDEMNITY PRINCIPAL AMOUNT"). In addition, if the COURT orders SEA STAR to
pay interest on any amount that it determines is due to a COMPETING CLAIMANT,

3

MBC shall remit to SEA STAR interest on the INDEMNITY PRINCIPAL AMOUNT calculated at the annual rate at which SEA STAR'S obligation to pay interest is to be calculated under the terms of the COURT'S order. Each party agrees to give the other party written notice of any proceeding before a COURT in which a COMPETING CLAIMANT is asserting a claim for compensation for use of any EMERALD EQUIPMENT and/or MBC EQUIPMENT by SEA STAR as soon as practicable after said party receives notice of such proceeding.

5.    Remedy of Sea Star In Event of Breach.    MBC acknowledges and agrees that if it fails to remit to SEA STAR any amount due under this AGREEMENT when and as due, interest shall accrue on the unpaid amount at an annual rate of ten percent (10%) from the date payment was due hereunder until the date of payment and that, in the event SEA STAR retains counsel to enforce rights and remedies against MBC as a result of MBC'S breach of this AGREEMENT, SEA STAR shall be entitled to recover from MBC in addition to all other amounts due hereunder all reasonable attorneys' fees and expenses incurred by SEA STAR as a result of MBC's breach.

6.    Amendment.    This AGREEMENT shall not be amended changed or modified except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

7.    Governing Law.    This AGREEMENT shall be governed by and construed in accordance with the laws of the State of Delaware.

8.    Counterparts.    This AGREEMENT may be executed in counterparts, all of which when taken together, shall constitute one and the same AGREEMENT.

9.    Headings.    The headings in this AGREEMENT are solely for convenience and are not intended to define, limit, or describe the scope of this AGREEMENT.

10.    Waiver of Jury Trial.    The parties hereto agree that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by any party to this AGREEMENT, or any of their successors or assigns, on or with respect to this AGREEMENT or which in any way relates, directly or indirectly, to the obligations of any of the parties hereto under this AGREEMENT, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDINGS. The parties acknowledge and agree that this provision is a specific and material aspect of the agreement between the parties and that the parties would not enter into this AGREEMENT if this provision, or any other provision of this AGREEMENT, were not contained herein.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT as of the date first above written with the specific intention of creating a document under seal.

4

WITNESS/ATTEST:                          MBC:

                                        MBC LEASING CORP.,
                                        A Maryland Corporation


*Jennifer Marshall*                      By: _____ (SEAL)
                                            Scott H. Krieger,
                                            Treasurer and Assistant Secretary


                                        SEA STAR:

                                        SEA STAR LINE, LLC,
                                        A _Delaware_ Limited Liability Company


*Phil Bells*                             By: _____ (SEAL)
                                        Name: _PHILIP V. BATES_
                                        Title: _SVP Operations_


5


**B78**

<u>ACKNOWLEDGEMENTS</u>

STATE OF MARYLAND, CITY/COUNTY OF _Baltimore_____, TO WIT:

I HEREBY CERTIFY that on this _20th_ day of _September_, 2002, before me, the undersigned Notary Public of the State of Maryland, personally appeared Scott H. Krieger, and acknowledged himself to be a Treasurer and Assistant Secretary of MBC LEASING CORP., a Maryland corporation, and that he, as such Treasurer and Assistant Secretary, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MBC LEASING CORP., by himself as Treasurer and Assistant Secretary.

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:
_5-5-03_

STATE OF FLORIDA, COUNTY OF DUVAL, TO WIT:

I HEREBY CERTIFY that on this _3_ day of _October_, 2002, before me, the undersigned Notary Public of the State and subdivision aforesaid, personally appeared _Philip V. Bates_, and acknowledged himself to be the _SVP Operations_ of SEA STAR LINE, LLC, a Delaware limited liability company, and that he, as such _SVP Operations_ being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of SEA STAR LINE, LLC, by himself as _SVP Operations_.

IN WITNESS MY Hand and Notarial Seal.

_Karen Nedd_ (SEAL)
NOTARY PUBLIC

My Commission Expires:
_8/25/03_

KAREN NEDD
Notary Public - State of Florida
My Commission Expires Aug 25, 2003
Commission # CC866224

6

# EQUIPMENT SCHEDULE

EMERALD EQUIPMENT LEASING, INC.

| EQUIPMENT TYPE | DAILY LEASE RATE | DAMAGE EXCLUSION | STIPULATED LOSS VALUE |
|---|---|---|---|
| 20' DV | $1.00 | $285.00 | $1,000.00 |
| 40' DV | $1.25 | $1,200.00 | $1,000.00 |
| 40' HV | $1.50 | $800.00 | $1,000.00 |
| 45' HV | $2.00 | $800.00 | $1,000.00 |
| 40' RV | $8.00 | $16,480.00 | $4,000.00 |
| 20' CH | $2.20 | $640.00 | $2,200.00 |
| 40' CH | $2.20 | $640.00 | $2,200.00 |
| 45' CH | $2.40 | $640.00 | $2,200.00 |
| Gen Sets | $4.50 | $640.00 | $2,200.00 |

19

TOTAL P.02

## EXHIBIT "A"

**Equipment Type:**
Up to 664 40' High Cube Containers: 1999 Hyundai (NPRU 675 series).

**Per Diem Rent:**
$1.15 *per diem* rate during initial five (5) year term (August 1, 2002-July 30, 2007).
Options out for any selected units: August 2005 with retroactive *per diem* rate increase @ $0.25; August 2006 with retroactive *per diem* rate increase @ $0.20.
*Per diem* rate @ $0.90 for each unit kept at Lessee's option during lease extension from August 1, 2007 to July 30, 2008.

**Damage Exclusion:**
Lessee is not responsible for the first $500.00 of repairs per unit at redelivery.

**Stipulated Loss Value:**
$1,850.00 for each unit prior to end of first five (5) years of Lease; $1,300.00 for each unit at conclusion of fifth (5th) or sixth (6th) year of Lease. Payment of Stipulated Loss Value to Lessor for any unit terminates *per diem* rent for that unit.

**Redelivery:**
*Per diem* rate after Wind-Down Period increases an additional $0.35 to *per diem* rate of $1.50.

**Off-Hire Depot Fee:**
$25.00 per unit redelivered to Lessor's designated depots at Jacksonville, San Juan, or other mutually agreed locations.

*pVB.*

## EXHIBIT "B"

**Equipment Types:**
Up to 264 45' High Cube Containers:
    163 UXXU 480, 481 series - 1997 SHUNDE
    101 SCSU 450 series - 1997 DAWANG

**Per Diem Rent:**
$1.40 *per diem* rate during initial five (5) year term (August 1, 2002-July 30, 2007).
Options cut for any selected units: August 2005 with retroactive *per diem* rate increase @ $0.15; August 2006 with retroactive *per diem* rate increase @ $0.10.
*Per diem* rate $1.10 for each unit kept during lease extension from August 1, 2007 to July 30, 2008.

**Damage Exclusion:**
Lessee is not responsible for the first $650.00 of repairs per unit at redelivery.

**Stipulated Loss:**
$1,850.00 for each unit prior to end of first (5) years of Lease; $1,300.00 for each unit at conclusion of fifth (5th) or sixth (6th) year of lease. Payment of Stipulated Loss Value to Lessor for any unit terminates *per diem* rent for that unit.

**Redelivery:**
*Per diem* rate after Wind-Down Period increases an additional $0.35 to *per diem* rate of $1.75.

**Off-Hire Depot Fee:**
$25.00 per unit redelivered to Lessor's designated depots at Jacksonville, San Juan, or other mutually agreed locations.

ρ√β.

**B82**

# ADELMAN LAVINE GOLD AND LEVIN

A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELORS AT LAW

LEWIS H. GOLD
ROBERT M. LEVIN
GARY M. SCHILDHORN
HARRY D. KLEIAN
GARY D. MESSER
STEVEN D. USDIN
RAYMOND H. LEMISCH
LEON K. DIXSON
ALAN I. MOLDOFF
KATHLEEN E. TOANT
WILLIAM K. HINCHMAN
VICTORIA THOMAS SHISLER
ROBERT J. LENAHAN
BRADFORD J. SANDLER
MARK PFEIFER
D. ANDREW BERTORELLI JR.
JENNIFER R. HOOVER

SUITE 900
FOUR PENN CENTER
PHILADELPHIA, PA 19103-2808
(215) 568-7515

FACSIMILE (215) 557-7022
lavine@lavine.com

SUITE 710
919 NORTH MARKET STREET
WILMINGTON, DE 19801
302-654-8200

February 25, 2004

## BY TELECOPIER (215-635-4771)

Storage Transfer L.L.C.
c/o Lorraine Robins
7900 Old York Road
Unit 812B
Elkins Park, PA 19027

Re:    **Contribution to the Emerald Estate**

Dear Ms. Robins:

I am advised that Storage Transfer L.L.C. ("Storage") has acquired the secured position of MBC Leasing Company in the Estate of Emerald Equipment Leasing, Inc. ("Emerald"). Emerald currently intends to prosecute certain substantial claims against Sea Star Lines, LLC. Storage has agreed to contribute to the Emerald estate 15% of any proceeds, net of expenses or other amounts disbursed to third parties, it would otherwise receive on account of its secured claim as a result of any settlement of the Sea Star claim or the collection of any judgment obtained upon prosecution of this claim. Storage has further agreed that these funds may be used by Emerald to fund a plan of reorganization and that Storage will not assert a deficiency claim against Emerald with respect to any proceeds contributed by Storage to the Emerald estate.

E68500

01-19-2007  15:59    From-                                    T-846  P.022/022  F-178

Storage Transfer L.L.C.
February 25, 2004
Page 2


Please execute this letter on the space provided below to indicate
Storage's agreement to the carveout from its secured claim in accordance with the terms
set forth above.

                              Very truly yours,


                              GARY M. SCHILDHORN

GMS.md
cc:    Mr. Thomas Holt, Sr.

c.\393\10\letters\storage transfer2

AGREED TO AND ACCEPTED BY:
STORAGE TRANSFER L.L.C.

By:
       Lorraine Robins,
       Its Sole Member


                                                                        E68501

4102375319
09/24/2003 16:25 FAX 4102375319      COLLATERAL REVIEW                          ☑001

# TELECOPY COVER SHEET



EXHIBIT

32

**MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY**
**2 HOPKINS PLAZA/P.O. BOX 1451**
**BALTIMORE, MARYLAND 21203**
**(410) 237-5784**
**(410) 237-5319 (FAX)**

DATE: 9/24/03

TO: Art Davis

FAX NUMBER: 856 - 742 - 9401

FROM: Scott Kroger      (410) 237-

NUMBER OF PAGES: _____ (Including cover sheet)

MESSAGE: Draft of Hallam's Response. Just please make sure you are not claiming payment for units and time periods covered under self billing reports from Sea Star. Thanks, Scott

# CONFIDENTIALITY NOTICE

*The documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone to arrange for return of the original documents to us.*

# WARNING

*Interception of telephonic communications could be a violation of Maryland and Federal laws.*

E 006788

1

1     UNITED STATES DISTRICT COURT
      MIDDLE DISTRICT OF FLORIDA
2        JACKSONVILLE DIVISION
      CASE NO. 3:04-CV-146-99HTS
3            - - -

      SEA STAR LINE, LLC,          :
4     a limited liability          :
      company,                     :
5     Plaintiff,                   :
                                   :
6     vs.                          :
                                   :
7     EMERALD EQUIPMENT            :
        LEASING, INC., a           :
8     corporation                  :
      Defendant.                   :
9            - - -

10          January 26, 2005

11           - - -

12     Oral deposition of LORRAINE
       T. ROBINS, held in the offices of
13     Adelman, Lavine, Gold and Levin, Suite
       900, Four Penn Center, Philadelphia,
14     Pennsylvania 19103, commencing at 9:30
       a.m., on the above date, before Pamela J.
15     Gober Bracic, a Federally-Approved
       Registered Professional Reporter and
16     Commissioner for the Commonwealth of
       Pennsylvania.
17           - - -

18

19

20

21

22     ESQUIRE DEPOSITION SERVICES
       15th Floor
23     1880 John F. Kennedy Boulevard
       Philadelphia, Pennsylvania 19103
24     (215) 988-9191

       ESQUIRE DEPOSITION SERVICES

2

1 A P P E A R A N C E S :

2

    ARMSTRONG & MEJER, P.A.
3   BY:  TIMOTHY J. ARMSTRONG, ESQUIRE
    Suite 1111, Douglas Center
4   2600 Douglas Road
    Coral Gables, Florida 33134
5   (305) 444-3355
    Counsel for the Plaintiff
6

7   ADELMAN, LAVINE, GOLD and LEVIN
    BY:  ALAN I. MOLDOFF, ESQUIRE
8   Suite 900
    Four Penn Center
9   Philadelphia, Pennsylvania  19103
    (215) 568-7515
10   Counsel for the Defendant

11

12     - - -

13

14

15

16

17

18

19

20

21

22

23

24

    ESQUIRE DEPOSITION SERVICES

LORRAINE T. ROBINS        63

1   started on a certain date.  And TIR

2   numbers were given on that comments

3   section, too.

4        Q.   Okay.

5        A.   The other inventory I had

6   was one from Marty McDonald, which he did

7   sign for, and that was for chassis and

8   gensets.  And I gave credit for that.

9        Q.   How did you give credit in

10  connection with the June 22nd inventory?

11       A.   I just billed it to June

12  22nd.

13       Q.   So if it was on the

14  inventory, you stopped your billing as of

15  June 22nd?

16       A.   That's correct.

17       Q.   Did you make any inquiry as

18  to whether any of the equipment of the

19  June 22nd inventory was in storage or had

20  been in storage prior to June 22nd?

21       A.   When I billed, I didn't bill

22  anything to Sea Star Line unless I had a

23  movement of some kind that they had

24  touched it.  If they had it, I billed it.

ESQUIRE DEPOSITION SERVICES

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

December 29, 2004

VIA FEDERAL EXPRESS

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

Enclosed are copies of Container and Equipment Interchange
Receipts, Bates stamped as SE18063-SE18243, SE18245-SE18247,
SE18249-SE18275, SE18277-SE18319, SE18321-SE18327, SE18329,
SE18331-SE18364, SE19204-SE19499, SE21000-SE21018, SE21020-SE21036,
SE21038-SE21047, SE21049-SE21063, SE21065-SE21081, SE21084-SE21224,
SE21228-SE21229, and SE21234-SE21244. These relate to claim
materials produced by your client during the litigation.

Very truly yours,

TIMOTHY J. ARMSTRONG

TJA:ea

Enclosures
liz\04ltrs\03-3621-062

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

October 8, 2004

VIA FEDERAL EXPRESS

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

        Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

        Enclosed are copies of additional computer documents that we
retrieved.  The Bates numbers and letters on equipment lists
correspond with Bates numbers of e-mails to which they were
attached.  Bates labeling on e-mail correspondence follows the
last number copied in the SE50000 series.  Some of these
documents may duplicate others previously produced and copied.

                            Very truly yours,

                            TIMOTHY J. ARMSTRONG

TJA:ea

Enclosures
liz\04ltrs\03-3621-046

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

December 7, 2004

VIA FEDERAL EXPRESS

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

Re: Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

Enclosed is a Bates stamped copy of the Equipment Rental Agreement. Although this Agreement is an Exhibit to the Complaint, the signed copy was not stamped. Also enclosed are copies of Maersk Newark Reports, Bates stamped as SE30472-SE30477, and Sea Star Container and Equipment Interchange Receipts, Bates stamped as SE19177-SE19185, SE19187-SE19353, and SE18029-SE18062. These relate to claim materials produced by your client during the litigation.

Very truly yours,

TIMOTHY J. ARMSTRONG

TJA:ea

Enclosures
liz\04ltrs\03-3621-052

B91

# ARMSTRONG & MEJER

### PROFESSIONAL ASSOCIATION
### ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE IIII DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

December 20, 2004

**VIA FEDERAL EXPRESS**

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

I was surprised to hear your client's representative deny that your client ever had access to the NPR Manifest for voyages in progress on April 27, 2002. As a courtesy, I am enclosing copies of the documents furnished to my client's equipment control personnel for those voyages. The Bates numbers are SE60000 through SE60098.

Perhaps these will assist your clients in identifying Emerald Equipment involved in shipments in process, progress, or transit as of the closing date. If you have questions, please contact the undersigned.

Very truly yours,

TIMOTHY J. ARMSTRONG

TJA:ea

Enclosure
liz\04ltrs\03-3621-057

B92

# ARMSTRONG & MEJER
### PROFESSIONAL ASSOCIATION
### ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

February 3, 2005

VIA FEDERAL EXPRESS

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

    Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

    Enclosed are copies of Container and Equipment Interchange Receipts, Bates stamped as SE21352-SE21385.  These relate to claim materials produced by your client during the litigation.

                       Very truly yours,

                       TIMOTHY J. ARMSTRONG

TJA:ea

Enclosures
liz\05ltrs\03-3621-005

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

January 6, 2005

Telefax No. 215-557-7922

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

In response to your telefax dated January 5, 2005, I am sending copies of documents responsive to your "missing attachments" list by Federal Express to you today. Among the documents are materials previously produced. Furthermore, as the e-mails disclose, others were sent to your client but not produced in response to Sea Star's Request for Production. Finally some of the copied documents involve third parties and their equipment, not subject to any Request for Production. Nevertheless, I am enclosing all documents located, including those that are duplicative.

I trust your reference to depositions of "Sea Star representatives" is inadvertent. You have noticed the depositions of Sea Star employees who have agreed to appear without subpoenas. These witnesses are testifying as individuals, not as "Sea Star representatives". Furthermore, they will not be subject to re-deposition.

If you have questions, please contact me.

Very truly yours,

TIMOTHY J. ARMSTRONG

B94

| EMAIL# | SEE ATTACHMENT# |
|--------|-----------------|
| SE50041 | SE50042 |
| SE50170 | SE50171-50172 |
| SE50185 | SE50157-50159 |
| SE50292 | SE50157-50159 |
| SE50315 | SE50315A-B |
| SE50580 | SE50273-287 |
| SE50606 | SE50606A-J |
| SE50766 | SE50766A-J |
| SE50779 | SE50779A-B |
| SE50797 | SE50797A-QQ |
| SE50819 | SE50819A-B |
| SE50833 | SE50819A-B |
| SE50867 | SE51055-51070 |
| SE50977 | SE50977A-D |
| SE51071 | SE51071A-I |
| SE51126 | SE51133-51134 |
| SE51151 | SE51151A |
| SE51179 | SE51181-51182 |
| SE51180 | SE51151A |
| SE51192 | |
| SE51227 | SE51227A-D |
| SE51250 | SE51251-51263 |
| SE51284 | SE51285 |
| SE51338 | SE20018-20020 |
| SE51352 | SE20021 |
| SE51380 | SE51380A |
| SE51474 | SAVED TO DISK |
| SE51506 | SE51508-51759 |
| SE51886 | SE51886A-F |
| SE51888 | SE51888A-B |
| SE51891 | SE51892-51894 |

| | |
|---|---|
| SE51912 | SE51912A-D |
| SE51919 | SE51923-51925 |
| SE51953 | SE52036-52037 |
| SE52038 | SE52039A-N |
| SE52053 | SE52050A-B |
| SE52054 | SE52050A-B |
| SE52058 | SE52058A |
| SE52075 | SE52075A |
| SE52080 | SE52083-52085 |
| SE52145 | SE52145A-N |
| SE52149 | SE52149A-G |
| SE52164 | SE52159A-J |
| SE52173 | SE52173A-G |
| SE52180 | SE52208A |
| SE52181 | SE52181A-II |
| SE52185 | SE52186-52188 |
| SE52190 | SE52191 |
| SE52204 | SE52204A-K |
| SE52209 | SE52208A |
| SE52217 | SE52208A |
| SE52257 | SE52257A |
| SE52263 | *no attachment* |
| SE52268 | SE52208A |
| SE52313 | SE52313A-D |
| SE52334 | SE52335A |
| SE52340 | SE52335A |
| SE52344 | |
| SE52376 | SE52335A & SE52376A-C |
| SE52409 | SE52409A |
| SE52491 | SE52492-52500 |
| SE52930 | SE50042 |
| SE52935 | |
| SE52939 | |

| | |
|---|---|
| SE52953 | SE51133-51134 |
| SE52954 | SE50262-50272 |
| SE52959 | A. R. |
| SE52961 | 2. 2 |
| SE52970 | SE52970A-C |
| SE52977 | SE52151A-J |
| SE52978 | } |
| SE52979 | } S-1 |
| SE53020 | A R |

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

March 9, 2005

VIA FEDERAL EXPRESS

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

Enclosed are additional copies of documents identified in my
January 6, 2005 letter that paragraph 1 of your February 25, 2005
letter lists as missing:

        SE50185 (SE50157-SE50159)
        SE50867 (SE50867A-SE50867K)(SE51055-SE51069)
        SE51070
        SE51126 (SE51133-SE51134)
        SE51338 (SE20018-20020)
        SE20021
        SE51506 (SE51508-SE51759)
        SE52038 (attachment same as SE52039)
        SE52053
        SE52054 (attachment same as SE52053)
        SE52106 (SE52090A-SE52090B)
        (SE52159A-SE52159J)
        SE52185 (SE52186-SE52188)
        SE52190 (SE52191)
        SE52209 (SE52208A)
        SE52491 (SE52492-SE52500)
        SE52953 (SE51133-SE51134)
        SE52954 (SE50262-SE50272)
        SE52977 (SE52151A-SE52151J)
        SE53020

Alan I. Moldoff, Esq.
March 9, 2005
Page 2

SE14226-SE14234

Also enclosed are additional copies of the following Container and Equipment Interchange Receipts/Inspection Reports ("TIRs") that you have identified as missing information or unreadable in paragraphs 2, 3, and 4 of your February 25, 2005 letter:

18035, 18037, 18038, 18065, 18078, 18087,
18106, 18123, 18133, 18134, 18144, 18150-53,
18157, 18161, 18163-64, 18176, 18179, 18193,
18202-03, 18216, 18218, 18227, 18249, 18266,
18304, 18306, 18330, 18341, 18343, 18345,
18355, 19190, 19192, 19194-95, 19197, 19204-
19353, 19359-19364, 19368, 19378, 19381,
19385, 19388, 19390-19395, 19398-19446,
19454, 19457, 19461-19499, 21002-21009,
21013, 21016, 21020, 21028, 21063, 21072,
21075, 21078, 21081, 21089-21244.

Included are documents having the Bates numbers identified in paragraph 5 of your letter, except SE18172. With respect to the date-stamped TIRs mentioned in paragraph 3 of your letter, the stamp machine records month, day, and time, not year.

Finally enclosed are copies of TIRs that are Bates numbered as SE19062, SE19062A, SE19072, SE19072A, SE19159, and SE19159A and relate to your client's claim materials. The TIRs identified as SE19062, SE19072, and SE19159 were produced previously and show "out" moves. Those identified as SE19062A, SE19072A, and SE19159A show both "out" and "in" moves for the same equipment. As Mr. Rooks has said, the TIRs are carbon-type forms.

If you still have problems reading particular TIRs, please contact me. We can agree on a date and time to inspect specified original TIRs in Jacksonville.

Very truly yours,

TIMOTHY J. ARMSTRONG

TJA:ea
liz\05ltrs\03-3621-014

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE IIII DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

April 12, 2005

TELEFAX AND MAIL

TELEFAX NO. (215) 557-7922

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

 Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

 Enclosed are copies of the following Bates stamped documents: SE13283A, SE13283B, SE13283C, and SE13283D.

Very truly yours,

TIMOTHY J. ARMSTRONG

TJA:ea

Enclosures
liz\05ltrs\03-3621-032

B100

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

May 17, 2005

**VIA FEDERAL EXPRESS**

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

    Re:  Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

    In response to your request, enclosed are copies of the
security company documents that I have obtained.  Many of these
have been produced previously.  Nevertheless, I have given them new
Bates numbers for convenience.  The Bates numbers are: SE35000-
SE35118.  If you have any questions, please contact me.

                    Very truly yours,

                    TIMOTHY J. ARMSTRONG

TJA:ea

Enclosures
liz\05ltrs\03-3621-045

# ARMSTRONG & MEJER
### PROFESSIONAL ASSOCIATION
### ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

August 18, 2005

<u>VIA FEDERAL EXPRESS</u>

Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin
Suite 900
Four Penn Center
Philadelphia, PA 19103

   Re: Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

  Enclosed are copies of Container & Equipment Interchange Receipt/Inspection Reports marked with Bates numbers: SE36094-SE36125, SE53156-SE53183. Also enclosed is a copy of an e-mail marked with Bates number SE36126. If you have any questions, please contact me.

      Very truly yours,

      TIMOTHY J. ARMSTRONG

TJA:ea

Enclosures
liz\05ltrs\03-3621-056

May 16, 2006

<u>Via Federal Express</u>

Alan I. Moldoff, Esquire
Adelman, Lavine, Gold & Levin
Suite 900, Four Penn Center
Philadelphia, PA 19103

Re: Sea Star Line, LLC-Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

Enclosed are copies of TIRs related to new claims schedules that your client submitted in January 2006 in connection with settlement negotiations. Bates Numbers for these documents are: SE53236-SE53712. If you have any questions, please contact me.

Very truly yours,


Timothy J. Armstrong

July 11, 2006

<u>Via Federal Express</u>

Alan I. Moldoff, Esquire
Adelman, Lavine, Gold & Levin
Suite 900, Four Penn Center
Philadelphia, PA 19103

      Re: Sea Star Line, LLC-Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

    Enclosed is a copy of the computer printout of the August 15, 2002 Puerto Nuevo inventory referenced in claims schedules that your client has submitted in connection with settlement negotiations. This document supplements the handwritten materials previously produced and pertains to all equipment, not only Emerald units. Bates Numbers for this inventory are: SE62000-SE62066.

    In reviewing the Emerald claims, Sea Star personnel also found two sets of documents with the same Bates numbers. Andrew Rooks advised Lorraine Robins of this situation. Enclosed is one set of the documents, remarked to show both the old and the new Bates numbers. The new Bates numbers are: SE54000-SE54118.

    If you have any questions, please contact me.

                 Very truly yours,

                 Timothy J. Armstrong

```
Transaction Report

Send
Transaction(s) completed

No. TX Date/Time  Destination            Duration P.#   Result   Mode

015 APR-19  16:34 12155577922           0'00'17" 002    OK      N  ECM
```

### ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

April 19, 2007

*VIA TELEFAX AND U.S. MAIL*

TELEFAX NO. (215) 557-7922

Alan I. Moldoff, Esquire
Adelman, Lavine, Gold & Levin
Suite 900, Four Penn Center
Philadelphia, PA 19103

      Re: Sea Star Line, LLC – Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

      Enclosed is a copy of an e-mail regarding unit TXXZ 170118. When Sea Star representatives sent the document to Arthur Davis, they used Bates number SE62066, duplicating a Bates number on a document that I sent you on July 11, 2006. To resolve the problem, the Bates number for this document is The Bates Number for this document is now SE62067. Please advise Mr. Davis.

                              Very truly yours,

                              Timothy J. Armstrong

p/ltrs/03-3621-012              B105

ARMSTRONG & MEJER
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

TELEPHONE (305) 444-3355
TELECOPIER (305) 442-4300

SUITE 1111 DOUGLAS CENTRE
2600 DOUGLAS ROAD
CORAL GABLES, FLORIDA 33134

April 19, 2007

*VIA TELEFAX AND U.S. MAIL*

TELEFAX NO. (215) 557-7922

Alan I. Moldoff, Esquire
Adelman, Lavine, Gold & Levin
Suite 900, Four Penn Center
Philadelphia, PA 19103

    Re: Sea Star Line, LLC - Emerald Equipment Leasing, Inc.

Dear Mr. Moldoff:

    Enclosed is a copy of an e-mail regarding unit TXXZ 170118.
When Sea Star representatives sent the document to Arthur Davis,
they used Bates number SE62066, duplicating a Bates number on a
document that I sent you on July 11, 2006. To resolve the problem,
the Bates number for this document is The Bates Number for this
document is now SE62067. Please advise Mr. Davis.

                      Very truly yours,

                      Timothy J. Armstrong

p/ltrs/03-3621-012

Comcast Webmail - Email Message                                    Page 1 of 1

---

| | |
|---|---|
| From: | "Lawrence Weber" <lweber@interpool.com> |
| To: | <lflorence@seastarline.com> |
| CC: | "Bill Lauderdale" <blauderdale@comcast.net> |
| Subject: | RE: TXXZ170118 |
| Date: | Thursday, March 08, 2007 3:11:16 PM |

---

Previously on hire to NPR terminated / recovered 8/5/2002
I do not have emerald leasing as a customer

-----Original Message-----
From: lflorence@seastarline.com [mailto:lflorence@seastarline.com]
Sent: Thursday, March 08, 2007 3:06 PM
To: Lawrence Weber
Cc: Bill Lauderdale
Subject: TXXZ170118


Please advise if chassis# TXXZ170118 was ever a good chassis number.
Did
this one belong to Emerald Leasing?


Thank you,
Lisa

---

# SE 62067

**B107**

063172

063200

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:04-CV-146-99HTS

SEA STAR LINE, LLC,
a limited liability company,

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

    Defendant.
_____/

## SEA STAR LINE, LLC RULE 26(a)(1) INITIAL DISCLOSURES

    Pursuant to the Case Management and Scheduling Order, Plaintiff, SEA STAR LINE, LLC ("SEA STAR"), submits the following Fed. R. Civ. P. 26(a)(1) initial disclosures:

    A.   **Individuals**.  The names, addresses, and telephone numbers insofar as known to SEA STAR of each individual likely to have discoverable information that the SEA STAR may use to support its claims are:

        Thomas Holt, Sr.
        101 S. King Street
        Gloucester City, NJ 08030
        Tel.: 856-742-3022
        (NPR & Emerald bankruptcies, MBC-Emerald relationship,
        contracts, correspondence, payments)

        Thomas Holt, Jr.
        101 S. King Street
        Gloucester City, NJ 08030
        Tel.: 856-742-3022
        (NPR & Emerald bankruptcies, MBC-Emerald relationship,
        contracts, correspondence, payments)

1

Thomas Hays, III
NachmanHaysBrownstein
822 Montgomery Ave.
Narbeth, PA 19072
Tel.:  610-660-0060
(NPR & Emerald bankruptcies, NPR-Emerald relationship,
contracts, correspondence, payments)

William Streich
(NPR & Emerald bankruptcies, NPR-Emerald relationship,
contracts, correspondence, payments)

Ted Gavin
NachmanHaysBrownstein
822 Montgomery Ave.
Narbeth, PA 19072
Tel.:  610-660-0060
(NPR & Emerald bankruptcies, NPR-Emerald relationship,
contracts, correspondence, payments)

Gary M. Schildhorn
Adelman Lavine Gold & Levin
Suite 900 Four Penn Center
Philadelphia, PA 19103
Tel.:  215-568-7515
(bankruptcy court hearings, orders)

Leo Holt
101 S. King Street
Gloucester City, NJ 08030
Tel.:  856-742-3022
(NPR  &  Emerald  bankruptcies,  contract  proposals,
correspondence)

Arthur Davis
101 S. King Street
Gloucester City, NJ 08030
Tel.:  856-742-3153
(NPR & Emerald bankruptcies, MBC-Emerald relationship,
equipment inventories, sales, contracts, communications,
billings, payments)

Lorraine Robins
101 S. King Street
Gloucester City, NJ 08030
Tel.:  856-742-3153
(equipment sales, communications, billings)

Martin McDonald
(equipment inventories, returns, sales, communications)

Frank Gonzalez
(equipment inventories, returns, sales, communications)

John Allen
Blount Island
Jacksonville, FL
(equipment returns, inventories, communications)

Robert Leetch
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216
Tel.: 904-855-1260
(NPR bankruptcy, MBC-Sea Star relationship, contracts,
correspondence, purchases, payments)

Carl Fox
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216
Tel.: 904-855-1260
(NPR & Emerald bankruptcies, NPR contracts)

Philip Bates
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216
Tel.: 904-855-1260
(MBC-Sea Star & Emerald-Sea Star relationships,
contracts, purchases, communications, billings, payments)

Andrew Rooks
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216
Tel.: 904-855-1260
(MBC-Sea Star & Emerald-Sea Star relationships,
contracts, inventories, purchases, communications,
billings, payments)

George Cervone
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216
Tel.: 904-855-1260
(NPR-Sea Star relationship, NPR-Emerald relationship,
inventories, deliveries, returns, communications)

John Emery
Caso Building
1225 Ponce de Leon Ave.
Suite 804
San Juan, PR 00919
Tel.: 787-721-2330
(contracts, communications, inventories, returns,
purchases)

3

**B113**

Barbara Davis
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216
Tel.:  904-855-1260
(inventories, deliveries, returns, communications)

Lisa Florence
100 Bell Tel Way, Suite 300
Jacksonville, FL 32216
Tel.:  904-855-1260
(inventories, deliveries, returns, communications)

Manuel Cabrera
Caso Building
1225 Ponce de Leon Ave.
Suite 804
San Juan, PR 00919
Tel.:  787-721-2330
(communications, inventories, returns, purchases)

William Lauderdale
12854 La Costa Court
Jacksonville, FL 32225
Tel.:  904-646-2953
(inventories, deliveries, returns, communications)

Joseph DaSilva
11656 S.W. 143 Ave.
Miami, FL 33186
Tel.:  305-408-9945
(inventories)

Scott Krieger
MBC Leasing Corp.
Two Hopkins Plaza
Baltimore, MD 21203
Tel.:  410-237-5694
(MBC-Sea Star & MBC-Emerald relationships, agencies,
contracts, sales, communications, billings, payments)

William Hallam
Gebhardt & Smith
9th Floor
World Trade Center
Baltimore, MD
Tel.:  410-752-5830
(MBC-Sea Star & MBC-Emerald relationships, contracts,
sales, communications)

4

Neil Perlmutter
Horizon Lines, LLC
Charlotte, NC
(chassis purchases)

B.   **Documents**.     A   description   by   category   and
location of all documents, data compilations, and tangible things
in SEA STAR's possession, custody or control that SEA STAR may use
to support claims are:

1.    Self-Billing Reports from April 2002 through April
2004 with backup documentation;

2.    Storage/Handling Invoices with backup documentation;

3.    Complete  Manifests  from  April  2002  through  April
2004;

4.    Equipment  Inventories:   Jaxport April 27, 2002; San
Juan June 22, 2002 and August 15, 2002; Showroom July 9, 2002;
Gensets July 9, 2002;

5.    Bill of Lading for carriage of Emerald equipment to
U.S. mainland from Puerto Rico;

6.    List of Emerald chassis sold To Horizon;

7.    List of Emerald chassis sold To SEA STAR;

8.    Bankruptcy court pleadings, orders, and transcripts;

9.    Closing Analysis and Memorandum;

10.   NPR Agreement dated April 26, 2002;

11.   Emerald Rental Agreement;

12.   MBC Indemnity Agreement;

13.   Documentation relating to Emerald claims, such as
trailer interchange receipts, e-mails, inventories, gate logs;

5

**B115**

14. Correspondence.

The foregoing documents may be reviewed in SEA STAR's offices or at another designated location in Jacksonville, Florida on reasonable notice.

C. **Computation**.   The following is a computation of damages presently claimed by SEA STAR:

1. **2003 Per Diem Reconciliation** – Net SEA STAR charges for Emerald equipment stored and handled total **$8,868.30** for 2003.

2. **2004 Account Summary** – SEA STAR charges for Emerald equipment stored and handled in its San Juan terminal total **$11,510.00** for January through May 2004.

3. **Chains and Binders** – SEA STAR's invoice, submitted to Emerald on July 9, 2003, is for the cost of chains and binders provided by SEA STAR for bundling of 394 Emerald chassis in San Juan.  SEA STAR provided 1182 sets of chains and binders, in which 787 sets have not been returned by Emerald.  Therefore, **$32,348.75** is due to SEA STAR.

4. **Ocean Freight Charges** – At Emerald's request in December 2003 and January 2004, SEA STAR shipped 63 Emerald reefers mounted on Emerald chassis from San Juan, Puerto Rico to Jacksonville, Florida. In addition, SEA STAR shipped 37 Emerald chassis from San Juan, Puerto Rico to Jacksonville, Florida. Total agreed ocean charges for these moves is **$49,650.00**.

5. **Overpayments** - After review of Emerald claim forms, SEA STAR currently estimates that SEA STAR overpaid Emerald for

units originally self-reported. Moreover, despite SEA STAR's repeated requests that Emerald remove all equipment, 28 Emerald containers and 52 Emerald chassis remain in storage at SEA STAR's terminal in San Juan. SEA STAR continues to invoice Emerald for the cost of the space ($1,302.00 per month) and will charge Emerald for handling upon removal.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this _____ day of June, 2004 to **MICHAEL L. GORE, ESQ.**, Shutts & Bowen LLP, P.O. Box4956, Orlando, FL 32802-4956, and **ALAN I. MOLDOFF, ESQ.**, Adelman Lavine Gold and Levin, Suite 900, Four Penn Center, Philadelphia, PA 19103-2808.

ARMSTRONG & MEJER, P.A.
Suite 1111, Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134
Telephone: (305) 444-3355
Telefax:   (305) 442-4300


_____
TIMOTHY J. ARMSTRONG

liz\04pldgs\03-3621-013

7

**B117**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of May, 2007 a copy of the foregoing **COMBINED APPENDIX TO SEA STAR'S RESPONSE TO EMERALD'S MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS AND SEA STAR'S RESPONSE TO EMERALD'S MOTION TO COMPEL RESPONSES TO CERTAIN INTERROGATORIES** was served on the parties listed below in the manner indicated:

**FIRST-CLASS MAIL**
GARY M. SCHILDHORN, ESQ.
ALAN I. MOLDOFF, ESQ.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

**ELECTRONIC MAIL**
Ronald S. Gellert, Esq.
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801
Email: rgellert@eckertseamans.com

/s/ Kathleen M. Miller
Kathleen M. Miller (ID No. 2898)

05130|COS|10026289.WPD