UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC, a limited liability company, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| EMERALD EQUIPMENT LEASING, INC., a corporation, | : | |
| | : | |
| Defendant/Plaintiff on the Counterclaim | : | Case No. 05-CV-00245-(JJF) |
| | : | |
| -vs- | : | |
| | : | |
| SEA STAR LINE, LLC | : | |
| | : | |
| Defendant on the Counterclaim | : | |

**EMERALD REPLY TO SEA STAR'S RESPONSE TO EMERALD'S MOTION FOR PROTECTIVE ORDER REGARDING RE-NOTICED DEPOSITION**

Defendant/Counterclaimant, Emerald Equipment Leasing, Inc. ("Emerald"), by its attorneys, Eckert Seamans Cherin & Mellott, LLC hereby replies to Sea Star Line, LLC's Response to Emerald's Motion For Protective Order Regarding Re-Noticed Deposition ("Sea Star's Response to Motion"), as follows:

**REPLY**

It is only with the utmost of irony, that Sea Star complains about Emerald's "chronic" efforts to obtain protective orders to preclude discovery by Sea Star in this matter. (See Sea Star's Response to Motion at Page 1). The entire thrust of this litigation focuses on honest and forthright disclosures from Sea Star about its use of thousands of pieces of Emerald equipment for an approximate 19-month period pursuant to an Equipment Rental Agreement, for which use

Sea Star has not paid Emerald and which equipment, in many instances, was never returned to Emerald. Emerald's efforts to compel Sea Star to account for its use of the Emerald equipment, has been like "pulling teeth". In attempting to "extract" this information from Sea Star, Emerald has been forced to file a Motion to Compel Responses to Certain Interrogatories (D.I. 114), a Motion to Compel Document Production (D.I. 115), and a Motion For Partial Summary Judgment Seeking an Accounting and For Further Relief Appointing a Master (D.I. 117)[1]. Three years after this litigation was commenced, Sea Star has yet to provide its version of the very facts that are pertinent to its resolution.

While Sea Star has consistently refused to provide, through discovery, the basic information concerning what this case is about (i.e., the equipment pieces which Sea Star leased, the dates of its lease of that equipment, and an accounting of the equipment which was never returned to Emerald),[2] Sea Star insists upon taking additional depositions, at great cost to the parties. Emerald, for its part, based on the voluminous documents obtained from Sea Star throughout discovery in this case, has provided Sea Star with Emerald's version of what Emerald believes delineates Sea Star's use of Emerald equipment for which it has not compensated Emerald. To date, Sea Star has steadfastly refused to provide Emerald with its version of its use of the Emerald equipment.

In any event, whatever efforts Emerald has made to obtain protective orders (which Sea Star characterizes as "chronic"), such efforts have been made for one purpose only. That is, to ensure that the same discovery is, at the very least, not taken twice. That was the thrust of the discovery motions held in Florida, mainly to avoid taking extensive discovery before the pleadings have been closed (pending the Florida Court's determination of Emerald's Motion to

---

[1] These motions are presently pending before the Court.
[2] See e.g. Sea Star refusal to Answer Interrogatory No. 1 as set forth in Emerald's Motion to Compel Response to Certain Interrogatories (D.I. 114).

Dismiss or Transfer Venue which was filed in the Florida Court) (D.I. 9). When Emerald sought some direction on this issue once this case was transferred to the United States District Court in Delaware, this Court recognized in its Memorandum Order dated October 26, 2006 (D.I. 98) that "there is some overlap between the discovery that was conducted by Sea Star in Florida and the discovery sought by Sea Star here." For this reason, this Court allowed the parties to "engage in a period of limited discovery" meant "to account for the issues which may have arisen since the Florida discovery was completed and to ensure that Sea Star has the opportunity to fully explore the obligations of Emerald's Amended Counterclaims in context, while simultaneously avoiding any prejudice to Emerald that might flow from retaking discovery which might have already been completed." Sea Star's renoticed 30(b)(6) deposition notice is not so limited.

Specifically, areas of testimony sought in Nos. 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 of the deposition notice[3], on its face, are all directly taken from the allegations set forth in the Emerald Complaint (see Exhibit "A" attached to Emerald's Motion For A Protective Order) filed in the Delaware Bankruptcy Court in March, 2004, at the inception of this case. Sea Star has always known of these claims and has taken deposition and discovery previously in all of these areas. Sea Star's utter arrogance in pretending otherwise by refusing to discuss appropriate limitations and proceeding as it has should not be countenanced. It should not be Emerald's burden to "fix" Sea Star's improper "re-noticed 30(b)(6) notice"; rather, Sea Star should serve proper notices in the first place instead of ignoring this Court's directive limiting discovery, Rule 26(b)(2) which prohibits duplicative discovery and Rule 30(a)(2) which limits the depositions of

---

[3] In addition, the area of testimony sought in No. 1 of the deposition notice relates to testimony taken directly from the deposition of Sea Star's own senior vice president of operations. See, Bates deposition transcript page 35 attached hereto as Exhibit "A". Moreover, areas of testimony sought in Nos. 4, 18 and 39, to the extent allowed, should relate only to facts which have arisen after the prior discovery was taken. In addition, areas of testimony sought in Nos. 40 and 41 are improper since many of the document requests referred to were duplicative of prior document requests. Finally, area of testimony No. 42 should be stricken since it clearly includes all the allegations previously raised, except for the tort counts of the Amended Counterclaim, which is covered by the other remaining areas of testimony in the deposition notice.

the same person twice.[4] In fact, the renoticed deposition under Rule 30(b)(6) is specifically and clearly prescribed by Rule 30(a)(2)(B) absent a court order or a stipulation between the parties, as Emerald stated in paragraph 21 of the Emerald Motion For Protective Order. Sea Star states in its Response to the Motion, (D.I. 123 at page 2) that "Emerald fails to cite judicial precedent for its position. Although Rule 30(a)(2)(B) should be sufficient authority, there is also judicial authority:

> The defendants contend that they had no obligation to obtain leave of court to conduct a second set of Rule 30(b)(6) depositions. In their view, Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions, especially where the second deposition relates to different topics than the first. The argument ignores the text, history, and purpose of the 1993 Amendment to Rule 30.
>
> The Federal Rules of Civil Procedure, which have the force of statutes, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 392 (7th Cir.2002), *cert. denied*, 540 U.S. 1068 (2003), are to be accorded "their plain meaning…and generally with them, as with a statute, "[w]hen we find the terms…unambiguous, judicial inquiry is complete…*Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989). The language of Rule 30(a)(2)(B) is neither vague nor fluid. Indeed, it could not be plainer: a party "*must* obtain leave of court" to take a second deposition "*if…the person to be examined already has been deposed in the case*". (Emphasis supplied). What Justice Holmes said long ago is an appropriate guide for decision: "the words of the statute are preemptory and must be obeyed. We do not apprehend any serious consequences, in view of the date of the change. But, whatever the consequences, we must accept the plain meaning of plain words." *United States v. Brown*, 206 U.S. 240, 244 (1907).
>
> Of course, the Rule directs that leave to take a successive deposition "shall" be granted, but only if the *court*-not an inevitably self-interested party-determines that the requested discovery is "consistent with the principles stated in Rule 26(b)(2)" -that is, whether it is unreasonably cumulative or duplicative, is obtainable from an alternative more convenient or less burdensome source, whether the party "seeking discovery" had ample opportunity by discovery to obtain the information sought or whether the burden of proposed discovery outweighs is likely benefit.

---

[4] Nothing in this Court's Memorandum Order (D.I. 98) suspended either Rule 26(b)(2) or Rule 30(a)(2).

> It is no answer to say that where there has been an amendment to a complaint, discovery is often allowed. "General propositions do not decide concrete cases," *Lochner v. New York*, 198 U.S. 45, 76 (1905) (Holmes, J., dissenting), FN5 and the fact that a party may ultimately be able to persuade a judge to allow successive depositions has absolutely nothing to do with the obligation to seek in the first instance a court's permission to take a "person" who has once been deposed.
>
> The defendants here issued their second Rule 30(b)(6) subpoenas without leave of the court, despite the unambiguous requirement of Rule 30(a)(2)(B). The notices and subpoenas are thus invalid. *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir.2001); *see also Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (denying motion seeking leave to re-depose a party for failure to comply with Rule 30(a)(2)(B)).

In re: Sulfuric Acid Antitrust Litigation, 2005 WL 1994105 (N.D. Illl.), Not Reported in F.Supp. 2d (see attached hereto as Exhibit "B"). The District Court in Sulfuric Acid Antitrust Litigation, supra, in analyzing Rule 30(a)(2)(B) further observed: "Not surprisingly, one of the leading treatises on federal practice concluded that '[t]he rule requiring leave of court to take a second deposition applies to an entity that is deposed pursuant to Rule 30(b)(6). Even though a party may be deposing a defendant corporate representative, it is still seeking a "second" deposition of the entity." 7 Moore's Federal Practice, §30.15[1] [c] at 30-30.3 (3d ed. 2005).

Finally, it should be noted that Sea Star's statement in its Response to the Motion (D.I. 123 at page 3) that "Emerald's claims evidently are changing" is nothing, if not misleading. Emerald's claims are that Sea Star used far more equipment for far more periods of time than it initially reported. In addition, Emerald claims Sea Star failed to return numerous pieces of equipment which it used. These claims have never changed. There are more than 6,000 pieces of equipment involved. Emerald's information as to Sea Star's use of this equipment has been gleaned from the voluminous discovery adduced in this case. As Emerald analyzes this discovery, Emerald has made various adjustments to its claims as to specific pieces of

equipment, providing Sea Star with detailed information for each piece of equipment for which it has made such adjustments and identifying the specific documents which Emerald believes supports its contentions that those pieces of equipment were used by Sea Star and for which Emerald was not compensated. These adjustments have been both up and down, i.e., where Emerald has received documentation through discovery which benefited Sea Star, Emerald reduced its claims accordingly. Sea Star does not need any further discovery from Emerald about these adjustments. It is Emerald, rather, who has yet to receive the requested discovery from Sea Star which would elicit from Sea Star its response to Emerald's accounting.

In sum, Sea Star's re-noticed 30(b)(6) deposition notice is wholly improper pursuant to Rule 30(a)(2)(B). To the extent, if any, allowed, it should be limited only to the tort counts (which were added allegations not originally included in Emerald's original Complaint). A protective order, as requested, by Emerald should be entered.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: _____
Ronald S. Gellert, Esq. (No. 4259)
Tara Lattomus, Esq. (No. 3515)
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801
302-425-0430

-and-

Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
215-851-8400

June 13, 2007         Counsel for Emerald Equipment Leasing, Inc.