UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,                    Civil Action No. 05-CV-245-JJF

          Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

          Defendant,

-vs-

SEA STAR LINE, LLC,

          Counter-Defendant.
_____/

### *Local Rule 16.3(c) Pretrial Order*

          Pursuant to the Rule 16 Scheduling Order dated November 3, 2006, the Order dated

September 6, 2007, and D. Del. LR 16.3(c), Plaintiff/Counter-Defendant, SEA STAR LINE, LLC

("SSL" or "Sea Star"), and Defendant/Counter-Plaintiff, EMERALD EQUIPMENT LEASING, INC.

("EEL" or "Emerald"), propose the following Pretrial Order:

          *1.     Statement of Nature of Action*

          (a) SSL:     SSL filed a Complaint pursuant to 28 U.S.C.A. §2201 and §2202,

seeking a declaration of the parties' rights and liabilities under an Equipment Rental Agreement

dated as of July 31, 2002 ("Rental Agreement"). The Rental Agreement covered certain containers,

chassis, and generator sets utilized for intermodal cargo carriage in maritime commerce that SSL on-

hired and off-hired at various times commencing April 29, 2002. In its Complaint SSL also asserted

{05130}

a claim against EEL for damages, based on breaches of maritime contracts of carriage with SSL with respect to shipment of goods on board SSL vessels. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

(b) EEL: EEL has filed an Answer and Affirmative Defenses to the Complaint (the "Answer") and an Amended Counterclaim (the "Counterclaim"). In the Answer, Emerald denies that declaratory judgment relief pursuant to U.S.C.A. Sections 2201 and 2202 is appropriate in this case. Furthermore, even if declaratory judgment relief is appropriate Emerald denies the specific declaratory judgment relief sought by Sea Star, as stated. Furthermore, as to the monetary relief sought in the Complaint, Emerald asserts, inter alia, rights of setoff and/or recoupment, as well as estoppel, waiver, Sea Star's breach of contract, unclean hands or other improper conduct by Sea Star. In the Counterclaim, EEL claims damages, based on assertions that SSL breached the Rental Agreement and committed various torts. Specifically, Emerald asserts that Sea Star failed to pay rental charges for various pieces of Emerald Equipment which Sea Star used. In addition, Emerald asserts that Sea Star owes to Emerald stipulated loss values for Emerald Equipment which Sea Star used but never returned to Emerald and adjusted stipulated loss values for Emerald Equipment used by Sea Star which was not returned by Sea Star pursuant to the Rental Agreement, but which Emerald recovered more than 60 days after termination of the Rental Agreement. Causes of action asserted by Emerald include breach of contract, turnover action, accounting, fraud, constructive fraud, fraudulent concealment, negligent misrepresentation and breach of fiduciary duty. SSL has filed an Answer and Affirmative Defenses to the Counterclaim.

2.    *Constitutional Or Statutory Bases of Federal Jurisdiction*

Sea Star asserts federal jurisdictional bases are 28 U.S.C.A. §§1333, 1337, and 1367

{05130}

alleging that the Complaint and Counterclaim involve maritime transactions and contracts, including bills of lading for ocean cargo shipments in non-contiguous domestic trades.

Emerald admits federal jurisdictional basis pursuant to 28 U.S.C.A. Section 1333. Emerald also contends federal jurisdictional basis includes 28 U.S.C.A. Section 1334.

### 3.    *Statement of Facts Which Are Admitted and Require No Proof*

The following facts are admitted and will require no proof at trial:

(a)    SSL, a Delaware limited liability company, is headquartered in Jacksonville, Florida.  As an ocean carrier, SSL transports cargo in interstate commerce.

(b)    Emerald, a Delaware corporation, is a named Debtor under Chapter 11 of the United States Bankruptcy Code, having filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date").

(c) Emerald was engaged in business as a lessor of equipment used by carriers in the oceangoing transportation business to transport goods, which equipment includes, inter alia, large containers, gen sets and refrigerated units, together with chassis used to move the containers to and from ships (the "Emerald Equipment").

(d)    Prior to the Petition Date, Emerald leased all of its shipping equipment to two companies, NPR, Inc. ("NPR") and Holt Cargo Systems, Inc.

(e)    NPR had been in business as an ocean carrier.

(f)    In April 2002 SSL entered into an Asset Purchase Agreement, as amended, with NPR and other entities which were also named Debtors in Chapter 11 proceedings.

(g)    In April 2002, NPR, filed a motion in the Bankruptcy Court seeking approval

{05130}

for the sale of substantially all of its assets.

      (h)     On April 26, 2002, the Bankruptcy Court entered an Order Authorizing Sale of NPR Assets Free and Clear of Liens, Claims and Encumbrances to SSL (the "Sale Order"). SSL did not assume the equipment lease between Emerald and NPR and Holt Cargo Systems, Inc.

      (i)     The lease with NPR and Holt Cargo Systems, Inc. of the Emerald Equipment was rejected as of April 18, 2002 by Order entered by the Bankruptcy Court on May 10, 2002.

      (j)     The closing in connection with the Sale Order occurred on April 27, 2002 at 3:00 a.m. (the "NPR Closing").

      (k)     After the Closing with NPR, Sea Star on-hired Emerald Equipment not involved in Shipments in Process (the parties dispute the scope of the term "Shipments in Process") on the date Sea Star's use began.

      (l)     Sea Star on-hired Emerald Equipment which was used for Shipments in Process on the date Sea Star's use for a new cargo movement began.

      (m)     On or about May 1, 2002, Sea Star and Emerald entered into an agreement (the "E-Mail Agreement").

      (n)     As of April 29, 2002, Sea Star commenced using certain pieces of Emerald Equipment in its shipping business

      (o)     On July 22, 2002, the Bankruptcy Court issued an Order allowing MBC, Emerald's secured creditor, to foreclose its security interest in the Emerald Equipment, effective as of April 29, 2002. The Order terminated the automatic stay in regard to equipment described in a November 20, 1997 Loan and Security Agreement between MBC and Emerald. The Order also authorized MBC to remove and sell the equipment, applying the proceeds to Emerald's indebtedness

{05130}

to MBC. MBC, however, did not immediately move to foreclose its interest in the Emerald Equipment.

(p)    MBC requested Sea Star to make payment for Sea Star's use of the Emerald Equipment directly to MBC. In connection therewith, MBC executed an Indemnity Agreement on September 28, 2002.

(q)    In September 2002, Sea Star and Emerald  executed the Rental Agreement which was dated as of July 31, 2002.

(r)    By a letter dated October 31, 2003, Emerald's attorney notified Sea Star that Emerald was exercising its rights to terminate the Rental Agreement in accordance with its terms.

(s)    Sea Star did not owe any rent for Emerald Equipment solely involved in Shipments in-Transit.

(t)    By Order entered on January 4, 2006, this Court granted Sea Star's request to deposit funds with the Clerk of the Court in the amount of $534,000.00 pursuant to Fed.R.Civ.P.67.

    **4.    *Issues of Fact Which Remain to Be Litigated, Most Are Mixed Questions of Fact and Law, and As Such, Are Deemed to be Included in The "Issues of Law which Remain to be Litigated" stated by the parties in paragraph 5 hereof.***

        SSL on its claims:

    (a)    What amount of damages is due to SSL from EEL;

        EEL on SSL's claims:

    (a)    Whether competent admissible evidence satisfies SSL's burden of proving its entitlement to each declaration sought by SSL in Count I of the Complaint.

    (b)    Whether competent admissible evidence satisfies SSL's burden of proving

{05130}

each EEL breach of its maritime contracts by failing and refusing to pay amounts due as alleged in Count II of the Complaint.

(c)    Whether competent admissible evidence satisfies SSL's burden of proving the specific damages to SSL caused by any breach of EEL's maritime contracts and SSL's right to recover such damages as alleged in Count II of the Complaint.

(d)    Whether competent admissible evidence satisfies SSL's burden of proving that Emerald owes SSL $92,318.05 with interest commencing on the date of each bill of lading and invoice included in the SSL account with Emerald as alleged in Count III of the Complaint.

(e)    Whether competent admissible evidence satisfies SSL's burden of proving that Emerald owes SSL $92,310.05 with interest commencing on the date of each bill of lading and invoice for goods delivered and services provided to Emerald as alleged in Count IV of the Complaint.

(f)    What were the obligations and duties of the parties with respect to equipment used for cargo shipments that were in transit at the time of the closing of SSL's purchase of the NPR assets?  To what extent were those obligations and duties performed?

(g)    What were the obligations and duties of the parties with respect to the storage of Emerald equipment by SSL?  To what extent were those obligations and duties performed?

(h)    What were the circumstances surrounding and the purpose of the "self-billing reports" set forth in paragraph 13 of the Complaint?

(i)    What were the circumstances surrounding the entry of the Equipment Rental Agreement set forth in paragraph 14 of the Complaint?

(j)    What were the circumstances surrounding termination of use of Emerald

{05130}

-6-

Equipment by SSL and the return of that equipment to each of the designated terminals set forth in the Emerald Rental Agreement?

(k)    Has SSL performed all conditions precedent required to initiate and maintain its Complaint and have all such conditions occurred as alleged in paragraph 20 of the Complaint?

(l)    Whether and to what extent is the relief sought in the Complaint barred, in whole or in part, by Emerald's rights of setoff and/or recoupment?

(m)    Whether and to what extent is the relief sought in the Complaint barred, in whole or in part, by the doctrine of estoppel and/or waiver?

(n)    Whether and to what extent is the relief in the Complaint barred, in whole or in part, due to Sea Star's breach of and/or failure to perform under applicable contracts between the parties?

(o)    Whether the Complaint is barred since Emerald did not breach any duty owed to Sea Star.

(p)    Whether, and to what extent, is Sea Star barred, by its own course of conduct, from recovery against Emerald on its Complaint.

(q)    Whether, and to what extent, is Sea Star barred from recovery on its Complaint since any losses allegedly suffered by Sea Star were caused by its own negligence?

(r)    Whether, and to what extent, is Sea Star barred from asserting any claims against Emerald under the doctrine of unclean hands?

(s)    Whether Sea Star is permitted to benefit from its own wrongdoing.

SSL on EEL's Counterclaim:

(a)    Whether competent admissible evidence satisfies EEL's burden of proving

each SSL breach of the Rental Agreement, a maritime contract, the specific damages to EEL caused

by such breach, and EEL's right to recover from SSL with respect to each piece of equipment

covered by the Rental Agreement.

   Maritime Jurisdiction: *see Interpool Ltd. v. Char Yigh Marine (Panama) S.A.,* 890
F.2d 1453, 1457 (9 Cir. 1989); *CTI-Container Leasing Corp. v. Oceanic Ops. Corp.,* 682 F.2d 377,
379-80 (2 Cir. 1982); *Interpool Ltd. v. Bernuth Agencies, Inc.,* 959 F. Supp. 644, 650 (S.D.N.Y.
1999).
   Burden of proof: *Cronos Containers, Ltd. v. Amazon Lines, Ltd.,* 121 F. Supp.2d 461,
464 (D. Md. 2000) (contract); *Maryland Nat'l Bank v. Traenkle,* 933 F. Supp. 1260, 1285 (D. Md.
1996) (fraud).
   (b) Whether SSL undertook an "obligation to report to Emerald its 'usage' of the

Emerald Equipment", as alleged in the Counterclaim.

   (c) Whether EEL "terminate[d] the Equipment Rental Agreement according to its

terms", as alleged in the Counterclaim, or anticipatorily repudiated the Rental Agreement.

   (d) What "chassis, gen sets and containers have not been returned by Sea Star to

Emerald pursuant to Emerald's demand on or before December 1, 2003 in accordance with the

provisions of paragraph 10 of the Equipment Rental Agreement", as alleged in the Counterclaim.

   (e) Whether EEL failures to fulfill conditions precedent, including but not limited

to requisite notices under paragraph 13(b)(iii) of the Rental Agreement, bar claims for stipulated loss

value and adjusted stipulated loss value against SSL asserted in the Amended Counterclaim.

   (f) Whether, to what extent, when, and how SSL "self-billing reports grossly

underreported Sea Star's usage of the Emerald Equipment", as alleged in the Counterclaim.

   (g) Whether, to what extent, when, and how SSL "prepared the 'self billing

reports' knowing that the information contained on those reports was false and misleading or

prepared the reports with reckless indifference as to the veracity of the information contained in the

{05130}

'self billing reports'", as alleged in the Counterclaim.

(h)    Whether, to what extent, when, and how SSL made "representations which have a tendency to deceive and undermine confidence and are injurious to the public interest", as alleged in the Counterclaim.

(i)    Whether, to what extent, when, and how SSL "prepared the inaccurate 'self-billing reports' with the intention of defrauding Emerald", as alleged in the Counterclaim.

(j)    Whether, to what extent, when, and how SSL "intended to defraud Emerald when it provided Emerald with the 'self billing reports' grossly under reporting Sea Star's usage of the Emerald Equipment", as alleged in the Counterclaim.

(k)    Whether, to what extent, when, and how SSL "in preparing 'self-billing reports' which were false and/or misleading acted in a negligent and undue manner," as alleged in the Counterclaim.

(l)    Whether and when SSL "had a duty to accurately account for the use of Emerald's Equipment and to ensure that it accurately reported and compensated Emerald for the use of the equipment", as alleged in the Counterclaim.

(m)    Whether, to what extent, when, and how EEL justifiably relied on SSL self-billing reports, including but not limited to "the defective information contained in the Sea Star 'self-billing reports'" and the "fraudulent misrepresentations made by Sea Star in the 'self billing reports'", as alleged in the Counterclaim.

(n)    Whether, to what extent, when, and how EEL justifiably relied on alleged "[o]ther indicia of fraudulent and/or misleading information supplied by Sea Star" described in the Counterclaim.

{05130}

(o)    Whether, to what extent, when, and how EEL justifiably relied on SSL "fraudulently prepared 'self billing reports'", as alleged in the Counterclaim.

(p)    Whether, to what extent, when, and how SSL undertook and "breached its fiduciary duty to Emerald", as alleged in the Amended Counterclaim.

(q)    Whether, to what extent, when, and how SSL was aware that EEL would rely on the 'self billing reports' to determine the rental fees for the Emerald Equipment", as alleged in the Counterclaim.

(r)    Whether, to what extent, when, and how SSL was aware that "an accurate report from Sea Star was the only reasonably available method for Emerald to determine the actual usage of the Emerald Equipment", as alleged in the Amended Counterclaim;

(s)    Whether, to what extent, when, and how EEL reliance upon Sea Star's 'self billing reports' was not only justified, it was necessary to maintain the relationship between the parties as provided for in the Equipment Rental Agreement", as alleged in the Counterclaim.

(t)    Whether, to what extent, when, and how EEL acquired rights to make each claim asserted in the Counterclaim against SSL.

(u)    Whether competent admissible evidence satisfies EEL's burdens of proving turnover, accounting, fraud, constructive fraud, fraudulent concealment, negligent misrepresentation, and breach of fiduciary duty, the specific damages to EEL proximately caused, and EEL's right to recover from SSL, if EEL can sustain a legal right to maintain and prosecute such claims for relief.

(v)    What damage has EEL sustained and proven with respect to each piece of equipment included in its claims against SSL.

(w)    Whether EEL claims against SSL are barred by waivers of alleged rights, such

{05130}

as self-billing reports and equipment return notices.

Failure to provide notice: *E.g., First Nat'l Bank v. DiDomenico*, 302 Md. 290, 487 A.2d 646, 649-50 (1985); *Maryland Nat'l Bank v. Wathen*, 288 Md. 119, 414 A.2d 1261, 1264-65 (1980).

(x)     Whether EEL is collaterally estopped from maintaining and enforcing claims against SSL by its acts and omissions.

(y)     Whether EEL engaged in fraudulent or other misconduct that bars claims against SSL.

EEL on its Counterclaim:

(a)     Which pieces of Emerald Equipment were used by Sea Star, other than for in-transit use?

(b)     What was the beginning date and end date for Sea Star's rental obligation for each piece of Emerald Equipment used by Sea Star?

(c)     Which pieces of Emerald Equipment used by Sea Star were not returned to Emerald.

(d)     What are the rental charges due from Sea Star for each piece of Emerald Equipment used by Sea Star?

(e)     What are the stipulated loss values due for each piece of Emerald Equipment used by Sea Star which were not properly returned to Emerald?

(f)     Did Sea Star provide to Emerald the proper notice for termination of the Emerald Equipment?  If so, what was the extent and nature of such notice.

(g)     What notice, if any, did Sea Star provide to Emerald of any Emerald Equipment allegedly seized in the Dominican Republic?

{05130}

–11–

(h)    Was the Equipment Rental Agreement modified by course of conduct of the parties and, if so, how?

(i)    Did Sea Star's conduct constitute a waiver of any of the provisions of the Equipment Rental Agreement and, if so, how?

(j)    Did Sea Star, either through its employees, agents or representatives, input information regarding its use of Emerald Equipment into the NPR computer system?

(k)    Did Sea Star, either through its employees, agents or representatives, input information related to its use of the Emerald Equipment into the HOLT computer system?

(l)    Does the computer generated information indicated on the move histories accurately reflect the movement of the Emerald Equipment?

(m)    In what manner, if any, did Sea Star notify Emerald of the Emerald Equipment it was storing at the Sea Star terminal which it was not using?

(n)    If Sea Star used Emerald's Equipment, is Sea Star obligated to pay Emerald rental charges and other charges under circumstances where a TIR has either been lost or not produced by Sea Star.


*5.    Issues of Law Which Remain to Be Litigated. Most Are Mixed Questions Of Fact And Law, And As Such, Are Deemed To Be Included In The "Issues of Fact Which Remain To Be Litigated" Stated By The Parties In Paragraph 4 Hereof.*

SSL on its claim:

(a)    Whether SSL is entitled to the declaratory relief requested in the Complaint;

(b)    Whether SSL is entitled to recover damages for EEL's breaches of contract

{05130}

(c)    Whether SSL is entitled to recover damages on an EEL open account;

(d)    Whether SSL is entitled to recover damages for goods and services that were provided to and for the benefit of EEL.

EEL on SSL's Claim:

(a)    Is Sea Star entitled to declaratory judgment relief in this case?

28 U.S.C.A. Section 2201

28 U.S.C.A. Section 2202

28 U.S.C.A. Section 1337

28 U.S.C.A. Section 1367

Cunningham Bros., Inc. v. Bail, 407 F.2d 1165 (7th Cir. 1969)

Crown Cork &Seal Co., Inc., 779 F. Supp. 33 (E.D. Pa. 1991)

(b)    Whether the contract by and between Emerald and Sea Star was modified by course of conduct of Emerald and Sea Star.

Cole v. Wilbanks, 171 A.2d 711 (Md. App. Ct. 1961)

Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 4245 (4th Cir. 2001)

Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc. 885 A.2d 381 (Md. App. Ct. 2005)

Hoffman v. Glock, 315 A.2d 551 (MD. App. Ct. 1974)

Fantle v. Fantle, 782 A.2d 377 (Md. App. Ct. 2001)

SSL on the Counterclaim:

(a)    Whether competent admissible evidence proves that EEL's alleged contingent derivative interest in a recovery against SSL confers standing and status as the real party in interest

{05130}

for purposes of Fed. R. Civ. P. 17(a), holding the substantive rights sought to be enforced in its

Counterclaim.

Standing, Real Party in Interest are: *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 428-32 (1972); *RTC v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.),* 16 F.3d 552, 567 (3 Cir. 1994)(no equity in property) ; *General Motors Acceptance Corp. v. Dykes (In re Dykes),* 10 F.3d 184, 188 (3 Cir. 1993); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 117-18 (2 Cir. 1991); *Hechinger Investment Co. of Delaware, Inc. v. All First Bank (In re Hechinger Investment Co. of Delaware, Inc.,* 282 B.R. 149, 164 (Bankr. D. Del. 2002); *In re ANC Rental Corp.,* 278 B.R. 714, 719 (Bankr. D. Del. 2002) ("While Section 1109 allows a creditor to be heard on any issue in a bankruptcy case, it does not change the general principle of standing that a party may assert only its own legal interest and not the interest of another"); *see Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 348 (3 Cir. 2001); *National City Bank of Minneapolis v. Lapides (In re Transcolor Corp.),* 296 B.R. 343, 360 (Bankr. D. Md. 2003); *Unifirst Bank for Savings, F.A. v. Park Timbers, Inc. (In re Park Timbers, Inc.),* 58 B.R. 647, 650 (Bankr. D. Del. 1985); Fed. R. Civ. P. 17(a); *T.A. Title Insurance Co. v. Lanpol, Sable & Makoroff (In re: Marcus Hook Development Park, Inc.),* 153 B.R. 693, 700-01 (Bankr. W.D. Pa. 1993) (citation omitted); *Akparewa v. Amoco Oil Co.,* 138 Md. App. 351, 369, 771 A.2d 508, 519 (Md. Ct. Spec. App. 2001), *quoting Boyd v. Hickman,* 114 Md. App. 108, 129, 689 A.2d 106 (1997)( "A 'real party in interest' must have 'an actual, real and justiciable interest susceptible of protection through litigation.'"); *Logan v. Becker (In re Intercity Management, Inc.),* 304 B.R. 250, 253-54 (Bankr. D. Md. 2003), *quoting Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093 (2 Cir. 1995) ("[W]hen creditors have...a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so."); *see Giddens v. D.H. Blair & Co., Inc. (In re A.R. Baron & Co.),* 280 B.R. 794 (Bankr. S.D.N.Y. 2002); *see Reliable Marine Boiler Repair, Inc. v. Matsan, Co.,* 325 F.Supp 58, 63 (S.D.N.Y. 1971)(where irrevocable assignment of proceeds effected, assignor no longer retained interest).

(b)    Whether EEL has failed to join indispensable parties, such as MBC Leasing, Inc. and Storage Transfer, LLC.

(c)    Whether EEL evaded  the "first filed" rule, which the bankruptcy court had upheld and enforced, and procured transfer to this Court by misrepresenting its status, interest and claims to the United States District Court for the Middle District of Florida, rendering jurisdiction and venue in this Court improper.

(d)    Whether applicable law substantiates and permits EEL claims for turnover,

{05130}

accounting, fraud, constructive fraud, fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, prejudgment interest, punitive damages, and attorney's fees asserted in the Counterclaim.

(e)   Whether the Court has subject matter jurisdiction over EEL tort-based claims asserted in the Counterclaim.

(f)   Whether EEL had legal rights to rely on SSL self-billing reports.

(g)   Whether the doctrine of collateral estoppel bars EEL claims asserted in the Counterclaim.

(h)   Whether the doctrine of judicial estoppel bars EEL claims asserted in the Counterclaim.

*E.g. Miller v. USA Waste Servs., Inc. (In re Eagle Enterprises, Inc.)*, 259 B.R. 73, 78-80 (Bkrptcy. E. D. Pa. 2001).

(i)   Whether anticipatory repudiation of the Rental Agreement bars EEL claims asserted in the Counterclaim.

(j)   Whether the economic loss doctrine bars all EEL extra-contractual claims asserted in the Counterclaim, including but not limited to the tort claims, which are not separate from and independent of those based on the Rental Agreement.

Economic Loss Doctrine: *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671, 678, 680 (3 Cir. 2002); *Odyssey Travel Center, Inc. v. Ro Cruises, Inc.* 262 F. Supp.2d 618, 627 (D. Md. 2003); *Huron Tool & Engineering Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541, 544 (1995);*Heckrotte v. Riddle*, 224 Md. 591, 595, 168 A.2d 879, 881-82 (Md. 1961).

(k)   Whether SSL is entitled to setoff all amounts due from EEL or MBC against claims asserted in the Counterclaim.

(l)   Whether SSL is entitled to a credit for all overpayments to MBC against

{05130}

claims asserted in the Counterclaim.

(m)    Whether paragraph 11 of the Rental Agreement, applicable maritime and

Maryland law, and judicial precedent bar EEL claims for punitive damages asserted in the

Counterclaim.

*E.g.*, *Barnes v. Gorman,* 536 U.S. 181, 187-88 (2002); *Biktasheva v. Red Square Sports, Inc.,* 366 F. Supp.2d 289, 295 (D. Md. 2005); *Odyssey Travel Center, Inc. v. Ro Cruises, Inc.* 262 F. Supp.2d 618, 630 (D. Md. 2003); *Maryland Nat'l Bank v. Traenkle,* 933 F. Supp. 1260, 1289 (D. Md. 1996).

(n)    Whether Article III, section 57, of the Maryland Constitution and judicial

precedent bar EEL claims for "interest at the rate set forth in the Equipment Rental Agreement"

asserted in the Counterclaim.

As to Prejudgment Interest:    Article III, section 57, of the Maryland Constitution (limiting interest rate to 6% in these type of contracts); *See Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 805 A.2d 1061, 1066, 1084-86 (2002); *Simpkins v. Ford Motor Credit Co.*, 160 Md. App. 1, 862 A.2d 471, 474-77 (Md. Ct. Spec. App. 2004); *Stroh v. Omni Arabians, Inc.*, 131 Md. App. 178, 748 A.2d 1015, 1018-20 (Md. Ct. Spec. App. 2000); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *Rockland Industries, Inc. v. E+E(US) Inc.*, 991 F. Supp. 468, 475 (D. Md. 1998)("The law in Maryland is clear that where damages are not liquidated, prejudgment interest is generally not awarded...."); *I.W. Berman Properties v. Porter Brothers, Inc.*, 276 Md. 1, 344 A.2d 65, 79 (1975)("The purpose of the allowance of prejudgment interest is to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due and the loss of income from such funds.); *The Hannah A. Lennen*, 77 F. Supp. 471, 472 (D. Del. 1948); *see In re Complaint of Bankers Trust Co.*, 658 F.2d 103, 109 (3 Cir. 1981) (substantial discrepancy between claim and recovery equivalent to bad faith); *Patterson Terminals, Inc. v. S.S. Johannes Frans*, 209 F. Supp. 705, 710 (E.D. Pa. 1962); *E.N. Fleischmann Lumber Corp. v. Resources Corp. Int'l*, 114 F. Supp. 843, 846-46 (D. Del. 1953), *aff'd*, 211 F.2d 204 (1954); *Kotsopoulos v. Asturia Shipping Co., S.A..* 467 F.2d 91, 94 (2 Cir. 1972)(admiralty case); *see Atlin v. Security-Connecticut Life Ins. Co.*, 788 F.2d 139, 142, 143 (3 Cir. 1986); *Reliable Marine Boiler Repair, Inc. v. Mastan Co.*, 325 F. Supp. 58, 64 (S.D.N.Y. 1971) (*res* in possession of court and no interest or other benefit to defendant from use); Fed R. Civ. P. 67.    *Accord*, *Hartford Accident & Indem. Co. v. Sharp*, 87 F.3d 89, 93 (3 Cir. 1996).

(o)    Whether the doctrine of unclean hands bars EEL claims asserted in the

Counterclaim.

{05130}

(p)    Whether EEL fraudulent misconduct bars claims asserted in the Counterclaim.

(q)    Whether the admiralty doctrine of laches and maritime and Maryland statutes of limitations bar claims asserted in the Counterclaim more than three years after accrual.

Cause-of-action accrual: *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.,* 834 A.2d 170, 176, 178 (Md. Ct. Spec. App. 2003), *cert. denied,* 841 A.2d 340 (2004); *Meiburger v. World Computer Sys. (In re The Maxima Corp.),* 277 B.R. 244, 248 (D. Md. 2002); Amendment: *Colao v. County Council of Prince George's Cnty.,* 697 A.2d 96, 106 (Md. 1997).

(r)    Whether EEL claims for attorney's fees asserted in the Counterclaim are barred.

EEL on its Counterclaim:

(a)    Whether Emerald is entitled to an accounting from Sea Star for its Use of the Emerald Equipment.

1 Am.Jur.2d Accounts and Accounting §54 (1994 & Supp. 2002).

Anderson v. Watson, 118 A. 569 (Md. App. Ct. 1922).

P.V. Properties, Inc. v. Rock Creek Village Associates Ltd. Partnership, 549 A.2d 403 (Md. App. Ct. 1988).

(b)    Whether Sea Star owed Emerald a fiduciary responsibility to accurately report its use of the Emerald Equipment.

P.F.C. Mgmt. Corp. v. Chomat, (In re Chomat), 216 B.R. 681 (Bankr. S.D. Fla. 1997);

In re Marchiando, 13 F.3d 1111 (7th Cir. 1994);

Travel Committee, Inc. v. Pan American World Airways, Inc., 603 A.2d 1301 (Md. App. Ct. 1992).

(c)    Whether Sea Star breach of fiduciary duty constitutes a tort.

Bohler-Uddeholm Am. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001).

F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc., Civ. A. No. 92-3900, 1994 WL

{05130}

594592, at *10 (D. N.J. Oct. 24, 1994)

    Insteel Indus., Inc. v. Costanza Contracting Co., Inc., 276 F. Supp.2d 479 (E.D. Va. 2003)


    (d)    Whether the breach of duty constitutes a tort for which, compensatory damages, punitive damages and/or attorney's fees may be recoverable.

    Thomassen Lincoln-Mercury, Inc. v. Goldbaum, 413 A.2d 218 (Md. App. 1980.

    A-T-O, Inc. v. Garcia, 374 So. 2d 533 (Fla. Dist. Ct. App. 3d Dist. 1979).

    Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633 (Md. App. Ct. 1992)

    **6.**    ***Lists of Pre-Marked Exhibits***

    Discovery is incomplete. To the extent they are able to identify Exhibits at this time, the parties submit, with the Court's permission, that they will exchange and file their exhibit lists on Tuesday, October 30. The parties will exchange and file their objections to exhibits on November 15, 2007. The exhibit lists will be identified as follows:

    (a)    SSL's List of Exhibits, including Bates numbers or deposition exhibit numbers, is attached as Schedule "A".

    (b)    EEL's List of Objections to SSL's Exhibits, including Fed. R. Evid. citations, is attached as Schedule "B".

    (c)    EEL's List of Exhibits, including Bates numbers or deposition exhibit numbers, is attached as Schedule "C".

    (d)    SSL's List of Objections to SSL's Exhibits, including Fed. R. Evid. citations, is attached as Schedule "D".

    With the Court's permission, the parties reserve the right to supplement the above lists no later that _____ (__) days before trial.

{05130}

–18–

7.     *Lists of Witnesses*

Discovery is incomplete.  To the extent they are able to identify witnesses at this time, the parties submit:

(a)     SSL's List of Witnesses is attached as Schedule "E".

(b)     EEL's List of Witnesses is attached as Schedule "F".

With the Court's permission, the parties will exchange and file their deposition designations on Tuesday, October 30, 2007 as follows:

(a)     SSL's deposition designations shall be listed on Schedule "G".

(b)     EEL's deposition designations shall be listed on Schedule "H".

With the Court's permission, the parties reserve the right to supplement the above lists no later that _____ (__) days before trial.

8.     *Brief Statement of What Plaintiff Intends to Prove*

SSL seeks and intends to prove its entitlement to the declarations of the parties' rights and liabilities under the Rental Agreement pursuant to 28 U.S.C.A. §2201 and §2202, as requested and specified in its Complaint.  Furthermore, SSL will prove that EEL failed to pay agreed bill-of-lading charges for ocean transportation of EEL equipment between San Juan, Puerto Rico and the continental United States, as well as charges for chains and binders used to bundle equipment.  SSL also will prove that EEL failed to pay charges for space provided by SSL pursuant to an Order Authorizing Sale of the NPR Assets Free and Clear of All Liens, Claims and Encumbrances, dated April 26, 2002, to store equipment claimed by EEL.  Although EEL allegedly terminated the Rental Agreement in late 2003, EEL did not comply with SSL's demands to remove all equipment from its terminals and depot areas, particularly the SSL terminal in San Juan, Puerto Rico.  During 2004 and

{05130}

2005, EEL representatives continued to store and sell equipment on SSL's premises and to instruct SSL personnel. EEL finally removed equipment from SSL's Puerto Nuevo terminal pursuant to the Order Approving Stipulation Between Sea Star Line, LLC and the Debtor Regarding Disposition of Certain Equipment, issued by the bankruptcy court on September 26, 2005. However, SSL will prove that EEL failed to pay bills for storage space and equipment handling.

Each element of SSL's damage claim, together with the principal amount presently sought is:

(a)    Storage and Handling:Net SSL charges for storage space and for equipment handling total $$32,249.00.00.

(b)    Chains and Binders:   In July 2003 SSL invoiced EEL for the cost of chains and binders that SSL furnished to bundle EEL chassis in San Juan. The principal amount due to SSL is $32,348.75.

(c)    Ocean Freight Charges: At EEL's request SSL shipped EEL equipment from San Juan, Puerto Rico to Jacksonville, Florida and Port Everglades, Florida. The principal amount of agreed ocean freight charges due to SSL is $49,650.00.

(d)    Overpayments: After review of EEL claim forms, SSL estimates that SSL overpaid $100,000.00 for EEL equipment originally included in self-billing reports.

**9.    *Brief Statement of What Defendant Intends to Prove***

Emerald denies that Sea Star is entitled to the declarations of the parties; rights and liabilities under the Rental Agreement pursuant to 28 U.S.C.A. Section 2201 and Section 2202, as requested and specified in the Complaint. Specifically, Emerald will show that the rights and liabilities under the Rental Agreement are to be construed and/or modified by the course of conduct

{05130}

of the parties commencing on April 29, 2002.

In addition, Emerald will object to any claims made by Sea Star for chains and binders used to bundle equipment, overpayments and/or charges for space provided by Sea Star pursuant to an Order Authorizing Sale of the NPR Assets Free and Clear of All Liens, Claims and Encumbrances dated April 26, 2002 to store equipment claimed by Emerald, since these claims were not pled in the Complaint and are raised herein for the first time. Furthermore, Emerald claims that any equipment for which Sea Star seeks storage charges was not returned to Emerald at the time of the termination of the Rental Agreement and was therefore properly treated by Emerald as "lost" pursuant to the Rental Agreement. In addition, to the extent any claims for damages asserted by Sea Star are allowed, Emerald is entitled to setoff in light of its substantial Counterclaim.

### 10.    Brief Statement By Counterclaimant

Emerald's Counterclaim asserts, and the evidence will show, substantial damages in excess of $4.7 million due to failure of Sea Star to pay for the rental of numerous pieces of equipment used by Sea Star pursuant to the Rental Agreement. In addition, Emerald asserts and the evidence will show that Sea Star owes to Emerald stipulated loss values for Emerald Equipment which Sea Star used but never returned to Emerald and adjusted stipulated loss values for Emerald Equipment used by Sea Star which was not returned by Sea Star pursuant to the Rental Agreement but which Emerald recovered more than 60 days after termination of the Rental Agreement. In support of its claims, Emerald will present substantial evidence which will show Sea Star's use of the Emerald Equipment for which it did not pay rent, and in numerous instances, never returned such equipment to Emerald.

Furthermore, Emerald will show that Sea Star undertook a duty to accurately report its

{05130}

usage of the Emerald Equipment and that Sea Star breached this duty. The evidence will show that Sea Star committed willful acts such as leasing Emerald Equipment to third parties in violation of the Rental Agreement, and further failed to account for such equipment or pay rental to Emerald for such equipment. Such willful acts, as well as the sheer magnitude of Sea Star's underreporting of its use of the Emerald Equipment on its self-billing reports constitute a reckless disregard of its duty to accurately prepare the self-billing reports, giving rise to not only compensatory damages for the lost rental and stipulated loss values, but punitive damages as well.

### 11.    *Amendments to Pleadings*

None at this time.

### 12.    *Certification of Settlement Efforts*

Counsel certify that the parties have engaged in settlement discussions and participated in mediation. To date the parties have not settled this matter.

### 16.    *Other Matters*

(a)    Pending Discovery: The following discovery remains pending:

Sea Star has an outstanding Notice of Deposition of Emerald, which is subject to EEL's pending Motion for Protective Order. The Court has delayed the deposition until the Court decides the issues raised by EEL and described below. Sea Star also has an outstanding subpoena duces tecum issued for Storage Transfer, Inc. and is attempting service. Subject to the Court's rulings and completion of these depositions, Sea Star may depose additional witnesses. In the event Sea Star is entitled to further depositions, Emerald reserves the right to take further depositions, as well.

Unless EEL voluntarily withdraws its Supplement to Initial Disclosures and its

{05130}

Further Supplement to Initial Disclosures, Sea Star intends to move for a ruling regarding their propriety. Sea Star also may seek to depose one or all of the witnesses recently identified by EEL.

EEL served discovery requests seeking information relating to, among other things, customers of Sea Star ("Customer Information"). Sea Star objected. On August 22, 2007, the Court ruled that EEL is required to select one (1) customer from the customer list provided by Sea Star and seek production of documents from that customer ("Customer Documents") for a limited period. EEL shall then submit the Customer Documents under seal to the Court for an in-camera review and to Sea Star for a response. After the Court's review and Sea Star's response, the Court will rule on EEL's Motion to Compel.

Emerald selected Baxter Healthcare from the customer list and had issued a subpoena. Baxter Healthcare has responded to the subpoena and produced documents. On October 25, 2007, EEL made its submission with respect to those documents.

(b) <u>Pending Motions</u>: The following motions are pending:

EEL's Motion for Protective Order seeking to limit the deposition of Emerald is also still pending.

EEL filed a Motion for Summary Judgment. Pursuant to Court Order, Sea Star will file a combined Answering Brief on Emerald's motion and its opening brief in support of its Motion for Summary Judgment within 10 days after the deposition of Emerald. Depending on the outcome of discovery, Sea Star may file other motions.

17.     *This Order shall control the subsequent course of the action unless modified by the*

*Court to prevent manifest injustice.*

DATED this 26 day of October, 2007.

SMITH, KATZENSTEIN & FURLOW, LLP

By: _____
Kathleen M. Miller (ID No. 2898)
The Corporate Plaza
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Tel: (302) 652-8400
Fax: (302) 652-8405

And

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134

Counsel for Sea Star Line, LLC

ECKERT SEAMANS CHERIN &
MELLOTT, LLC

By: Ronald S. Gellert by permission KMM
Ronald S. Gellert, Esq. (4259)
Tara L. Lattomus, Esq.
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801

And
Gary Schildhorn, Esq.
Alan I. Moldoff, Esq.
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

Counsel for Emerald Equipment Leasing,
Inc.

{05130}

-24-

## SCHEDULE E

## PLAINTIFF'S LIST OF TRIAL WITNESSES

Plaintiff, SEA STAR LINE, LLC ("SEA STAR"), submits the following list of persons who may testify as witnesses during trial:

1. Thomas Holt, Sr.
   10710 Ellicott Road
   Philadelphia, PA

2. Thomas Holt, Jr.
   10730 Meadow Lane
   Philadelphia, PA

3. Arthur Davis
   101 S. King Street
   Gloucester City, NJ

4. Mark P. Levins (deposition)
   101 S. King Street
   Gloucester City, NJ

5. Lorraine Robins
   7900 Old York Road
   Apt. 812 B
   Elkins Park, PA

6. Martin McDonald
   37 Ivanhoe Drive
   Manalapan, NJ

7. Francisco Gonzalez (deposition)
   Plaza 4, S.S.A. 11,
   Mansion del Sur,
   Toa Baja, Puerto Rico

8. John Allen (deposition)
   120 Gun Club Road
   Jacksonville, FL

9. Robert Leetch
   617 West Addison St.
   Chicago, IL

{05130}

10.  Carl Fox
     100 Bell Tel Way, Suite 300
     Jacksonville, FL

11.  Philip Bates
     100 Bell Tel Way, Suite 300
     Jacksonville, FL

12.  Andrew Rooks
     100 Bell Tel Way, Suite 300
     Jacksonville, FL

13.  George Cervone
     100 Bell Tel Way, Suite 300
     Jacksonville, FL

14.  John Emery
     100 Bell Tel Way, Suite 300
     Jacksonville, FL
     Suite 804
     San Juan, PR

15.  Barbara Davis

16.  Lisa Florence
     100 Bell Tel Way, Suite 300
     Jacksonville, FL

17.  Manuel Cabrera
     VIG Tower
     1225 Ponce de Leon Ave.
     Suite 804
     San Juan, PR

18.  Arturo Rodriguez
     VIG Tower
     1225 Ponce de Leon Ave.
     Suite 804
     San Juan, PR

19.  Ricardo Diaz
     VIG Tower
     1225 Ponce de Leon Ave.
     Suite 804
     San Juan, PR

20.  Joseph DaSilva
     11656 S.W. 143 Ave.

Miami, FL

21. Records Custodian
    Storage Transfer, LLC
    7900 Old York Road
    Elkins Park, PA

22. Records Custodian (deposition)
    Priority Ro-Ro, Inc.
    Mira Flores Avenue, Pier 15
    San Juan, Puerto Rico

23. Records Custodian (deposition)
    Luis A. Ayala Colon Sucrs., Inc.
    Puerto Nuevo
    San Juan, Puerto Rico

24. Records Custodian
    Horizon Lines of Puerto Rico, Inc.
    San Juan, Puerto Rico

25. Records Custodian
    MBC Leasing Corp.
    Two Hopkins Plaza
    Baltimore, MD

26. Scott Krieger
    MBC Leasing Corp.
    Two Hopkins Plaza
    Baltimore, MD

27. William Hallam
    Gebhardt & Smith
    9th Floor
    World Trade Center
    Baltimore, MD

28. Thomas Hays, III
    NachmanHaysBrownstein
    822 Montgomery Ave.
    Narbeth, PA

29. Gary M. Schildhorn
    Eckert Seamans Cherin & Mellott, LLC
    Two Liberty Place
    50 South 16th Street
    22nd Floor
    Philadelphia, PA 19102

{05130}

30. Joseph Maqueda (deposition)
    295 Palmas In way
    PMD 154- Suite 130
    Humacao, Puerto Rico 00791

31. Rebuttal witnesses.

32. Impeachment witnesses.

   Plaintiff may name additional witnesses identified during discovery.

## SCHEDULE F

## EMERALD'S LIST OF WITNESSES

Emerald intends to call some or all of the following witnesses at trial. The witnesses will testify live, except where otherwise indicated. Emerald reserves the right to call or designate testimony of anyone appearing on any other party's witness list, and reserves the right to amend this list, or to call additional witnesses, based on the witness lists and revisions to the witness list of Sea Star, the disposition of pending motions, further discovery, if any, and in view of events at trial.

| | |
|---|---|
| Tom Holt, Sr. | Live |
| Tom Holt, Jr. | Live |
| Lorraine Robins | Live |
| Arthur Davis | Live |
| Mark Levins | Live |
| Raymond Suesser | Live |
| Shalom Cohen | Live |
| Philip Bates | Live or Deposition |
| Andrew Rooks | Live or Deposition |
| George Cervone | Live or Deposition |
| Lisa Florence | Live or Deposition |
| Francisco Gonzalez | Deposition |
| John Allen | Deposition |
| Scott Krieger | Live |
| William Hallam | Live |
| Joseph Maqueda | Deposition |
| Neil Perlmutter | Live |
| William McGinnis | |
| Teddy Heinsen | Live or Deposition |
| Todd Wilson (Manager of MIS Dept.) or some other designated records custodian of CSX Railways | Live or Deposition |
| Records Custodian, Priority Ro-Ro, Inc. | Deposition |
| Records Custodian Luis A. Ayala Colon Sucrs. Inc. | Deposition |
| Records Custodian Horizon Lines of Puerto Rico, Inc. | |

| Records Custodian<br>MBC Leasing Corp. | |
|---|---|
| Rebuttal Witnesses | |
| Impeachment Witnesses | |