UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,   Civil Action No. 05-CV-245-JJF (LPS)

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

    Defendant,

-vs-

SEA STAR LINE, LLC,

    Counter-Defendant.
_____/

**SEA STAR LINE, LLC'S MOTION TO COMPEL RETURN OF PRIVILEGED
DOCUMENTS AND REMOVAL FROM COURT RECORD**

    Sea Star Line, LLC ("SSL") files this motion seeking to compel Emerald Equipment Leasing, Inc. ("EEL") to return privileged documents which were inadvertently disclosed. SSL also seeks an order directing the removal of those privileged documents from the docket and authorizing the filing of a corrected Exhibit B. In support of this motion, SSL states as follows:

**BACKGROUND**

    On November 30, 2007, SSL filed a Response to Emerald's Submission Regarding Baxter Health Care, Inc. (the "Response")(Dkt. No. 149). Attached as Exhibit B to the Response was a February 25, 2004 letter from Gary Schildhorn, Esquire, representing EEL, to Lorraine Robins

of Storage Transfer LLC, the purchaser EEL's secured credit from MBC Leasing, Inc., relating to a carveout of any recovery from SSL for the benefit of EEL (the "Letter"). The Letter was the only document SSL intended to include in Exhibit B.

The pdf file of Exhibit B, which was served on opposing counsel and filed with the Court, however, included three emails (the "Emails") between Mr. Armstrong, counsel for SSL, and employees of SSL, relating to this litigation. The first two emails, dated March 17, 2006, are an exchange between SSL and counsel relating to an allegation in the Amended Counterclaim asserted in this . The third is a February 9, 2006 email from Mr. Armstrong to a SSL employee, forwarding a February 7, 2006 email from Mr. Armstrong to another SSL employee, bringing him up to date on the litigation and discussing guidelines for possible settlement negotiations (the "February 2006 Email").

Neither SSL nor its counsel were aware that the Emails had been inadvertently included in Exhibit B until counsel for EEL informed counsel for SSL on December 14, 2007. After learning of the disclosure, SSL requested that EEL return the Emails.

By this motion, SSL seeks an order compelling EEL to return the Emails, to destroy all hard and electronic copies, preventing the substance of the Emails from being disclosed to EEL or anyone else, prohibiting EEL from using any information in the Emails in this litigation, removing the Emails from the docket and authorizing the filing of the correct Exhibit B.

## ARGUMENT

Federal Rule of Civil Procedure 26 allows parties to obtain discovery of any matter, *not privileged*, which is relevant to the claim or defense asserted in a case..... Fed.R.Civ.P. 26(b)(1)(emphasis added). The attorney-client privilege and work-product doctrine are two separate

principles intended to protect parties from unfettered discovery. *Maldonado v. New Jersey*, 225 F.D.R. 120, 127 (D.N.J. 2004). The privileges noted in Rule 26 are encompassed in Federal Rule of Evidence 501, which provides:

> Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness [or] person, ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness [or] person ...shall be determined in accordance with State law.

Fed.R.Evid. 501. Where, as here, a case is premised upon federal question jurisdiction, federal common law, not state law, will govern the evidentiary privileges. *Maldonado,* 225 F.D.R. at 127; *See* Memorandum Opinion, January 26, 2006 at 3 (D.I. 75)(EEL admits that jurisdiction exists under 28 U.S.C. 1333 (admiralty law)). This is true even where the claims asserted are both federal and state law claims. *Maldonado,* 225 F.D.R. at 127.

### The Attorney Client Privilege

The purpose of the attorney-client privilege is "'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observation of law and administration of justice.'" *Id. (citing Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 667, 66 L.Ed.2d 584 (1981)). The attorney-client privilege attaches if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of

>committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 127 (*citing In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979)). The privilege, of course, belongs to the client, who may waive it. *In re Hechinger Invst. Co. of De*, 303 B.R. 18, 24 (D.Del. 2003). The communications in the Emails clearly fall within the attorney-client privilege. Moreover, there can be no dispute that the disclosure of these privileged emails was inadvertent. *See Id.* at 25 (disclosure was inadvertent in that no decision maker meant for the disclosure to occur).

In this circuit courts will consider the following factors to determine whether an inadvertent disclosure constitutes a waiver of the privilege:

>1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;
>2) the number of inadvertent disclosures;
>3) the extent of the disclosure;
>4) any delay and measures taken to rectify the disclosure; and
>5) whether the overriding interests of justice would or would not be served by relieving the party of its error.

*Maldonado,* 225 F.D.R. at 128; *Miron v. BDO Seidman, LLP*, 2004 WL 3741931 *2 (E.D.Pa.)

These factors weigh in favor of a finding that the attorney-client privilege has not been waived. First, the Emails were not part of the thousands of pages of documents produced by SSL in this litigation. Thus, SSL has appropriate controls in place in connection with the production of documents to ensure that privileged documents are not produced. Here, through an unknown cause in the electronic conversion of documents, the Emails were inadvertently included in the pdf format of the Letter. The pertinent text of SSL's Response confirms, however, that the Letter should have been the only document in Exhibit B. To SSL's knowledge, the Emails have been the only privileged documents inadvertent disclosed in this litigation and they were attorney-client

communications concerning matters pending in this litigation and settlement discussions. Thus, the second and third factors weigh in favor of a finding that no waiver has occurred.

SSL did not realize the Emails were in Exhibit B until notified by EEL's counsel on December 14, 2007. SSL has taken prompt action to seek return of the Emails, and thus, the fourth factor also weighs in favor of SSL.

Finally, the Emails should be returned in the interest of justice. The inadvertent disclosure occurred here due to an unexplainable error in converting the Letter into a pdf document. Thus, the interest of justice would better be served by relieving SSL of this electronic error.

### The Work-Product Doctrine

The work-product doctrine is broader than the attorney-client privilege and is designed to "maintain legal professionalism by precluding attorneys from capitalizing on an adversary's work efforts." *Maldonado,* 225 F.D.R. at 131. The work-product doctrine promotes the adversary system by allowing attorneys to prepare their cases for litigation without fear that their work-product will be used against their client. *Westinghouse Electric Corp. v. The Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). The privilege may be waived by inadvertent disclosure of the privileged material. *In re Grand Jury*, 138 F.3d at 981. However, an inadvertent disclosure does not automatically waive the privilege. *Id.* In determining whether the disclosure constitutes a waiver, court will consider, among other things, the steps taken to remedy the disclosure and the delay in doing so. *Id.* Finally, the party asserting waiver of the privilege bears the burden to establish waiver. *Maldonado,* 225 F.D.R. at 132.

Here, there can be no dispute that the Emails, especially the February 2006 Email, constitute work-product. The Emails discuss counsel's thoughts on proposed settlement guidelines. Additionally, there can be no dispute that SSL acted promptly upon learning of the disclosure. The

same day that SSL learned of the disclosure, SSL asserted that the communications were privileged and requested that the documents be returned.  Further, within two business days of learning of the disclosure, SSL filed this motion.  Thus, SSL did not delay in asserting its rights.  Accordingly, the inadvertent disclosure of the Emails should not be found to amount to a waiver.

WHEREFORE, SSL requests an order be entered compelling EEL to return the Emails, to destroy all hard and electronic copies, preventing the substance of the Emails from being disclosed to EEL or anyone else, prohibiting EEL from using any information in the Emails in this litigation, removing the Emails from the docket and authorizing the filing of the correct Exhibit B.

SMITH, KATZENSTEIN & FURLOW LLP

December 18, 2007

_/s/Kathleen M. Miller_____
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone:  302-652-8400
Facsimile: 302-652-8405
E-mail: Kmiller@skfdelaware.com

OF COUNSEL:
Timothy J. Armstrong
Armstrong & Mejer, P.A.
Suite 1111 Douglas Centre
2600 Douglas Road
Miami, FL 33134
Telephone: 305-444-3355

*Attorneys for Sea Star Line LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of December, 2007 a copy of the foregoing SEA STAR LINE, LLC'S MOTION TO COMPEL RETURN OF PRIVILEGED DOCUMENTS AND REMOVAL FROM COURT RECORD was served on the parties listed below in the manner indicated:

***FIRST-CLASS MAIL and Email***
GARY M. SCHILDHORN, ESQ.
ALAN I. MOLDOFF, ESQ.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102
Email: amoldoff@eckertseamans.com

***First Class Mail***
Ronald S. Gellert, Esq.
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801

            __/s/Kathleen M. Miller_____
            Kathleen M. Miller (I.D. No. 2898)