IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEA STAR LINE, LLC, | : | |
| | : | |
| Plaintiff/ | : | |
| Counterclaim Defendant, | : | |
| | : | |
| v. | : | Civ. No. 05-245-JJF-LPS |
| | : | |
| EMERALD EQUIPMENT LEASING, INC., | : | |
| | : | |
| | : | |
| Defendant/ | : | |
| Counterclaim Plaintiff. | : | |

**MEMORANDUM ORDER**

Pending before the Court are various discovery issues that are within the scope of the order of reference from Judge Farnan to the undersigned magistrate judge. *See* Nov. 2, 2007 Order (D.I. 142) (referring Emerald's Amended Counterclaim to magistrate judge to "regulate and resolve all pretrial matters, up to and including the pretrial conference, subject to 28 U.S.C. § 636(b)(1)(B) and any further Order of the Court").[1]

Emerald Equipment Leasing, Inc. ("Emerald") is the Counterclaim Plaintiff/Defendant and Sea Star Line, LLC ("Sea Star") is the Counterclaim Defendant/Plaintiff. Emerald was in the

---

[1]Pursuant to Section 636, a magistrate may rule on discovery issues. *See, e.g., Haines v. Liggett Group, Inc.*, 975 F.2d 81 (3d Cir. 1992). Such orders are subject to review by a district court judge only for clear error of law or fact or abuse of discretion. *See id.*; *Scott Paper Co v. United States*, 943 F. Supp. 501 (E.D. Pa. 1996).

1

business of leasing equipment (e.g., containers, chassis). Sea Star leased equipment from Emerald to use in providing transportation services to Sea Star's customers. Emerald claims that Sea Star substantially underpaid Emerald for the Emerald equipment Sea Star used.

Further background relevant to this action will not be repeated here as it has been previously set forth in: (I) Judge Farnan's January 26, 2006 Memorandum Opinion (D.I. 75) and Order (D.I. 76); (ii) Judge Farnan's April 13, 2006 Memorandum Opinion (D.I. 186) and Order (D.I. 187); (iii) Judge Farnan's August 23, 2007 Order (D.I. 130); (iv) Judge Farnan's November 2, 2007 referral Order (D.I. 142); (v) Magistrate Judge Stark's December 13, 2007 Order (D.I. 155); and (vi) the transcript of the hearing conducted in this matter on December 20, 2007 (D.I. 158 at 4-40).

The pending discovery disputes include Emerald's renewed Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115) ("Documents Motion") and Emerald's Motion to Compel Sea Star Line, LLC's Responses to Certain Interrogatories (D.I. 114) ("Interrogatory Motion").[2] Judge Farnan denied Emerald's two motions on August 23, 2007, in deference to the limited third-party discovery Judge Farnan also ordered (i.e. the "Baxter test" discussed below). (D.I. 130)

---

[2] By letter dated October 24, 2007 (D.I. 143), having completed the third-party discovery ordered by Judge Farnan, Emerald renewed its Documents Motion and Interrogatory Motion. The Court finds that the motions have been properly renewed and that Sea Star has had a full and fair opportunity to present its position on the discovery sought by Emerald. See, e.g., Response to Emerald's Submission Regarding Baxter Health Care, Inc. (D.I. 149); Dec. 7, 2007 Letter from K. Miller re: Proposed Scheduling Order (D.I. 153); Dec. 20, 2007 Hrg. tr. (D.I. 158) at 80-94. The Court rejects Sea Star's assertion (D.I. 158 at 78-80) that this District's local rules require Emerald to file a new motion and require Sea Star to be given a chance to file a new response. See D. Del. LR 7.1.2 (providing that requests for relief must be presented to the Court by motion "[u]nless otherwise ordered" by the Court); D. Del. LR 1.1(d) ("The application of the Rules in any case or proceeding may be modified by the Court in the interests of justice.").

The "Baxter Test"

At a hearing held on August 22, 2007, Judge Farnan permitted Emerald to conduct limited third-party discovery with regard to Sea Star's record-keeping practices as a means to determine the scope of discovery going forward. *See* Aug. 22, 2007 Hrg. tr. (D.I. 131) at 20-30. What came to be known as the "Baxter test" arises from the fact that Sea Star essentially produces two sets of bills: (i) Sea Star sends bills to its customers (e.g. Baxter), charging for transporting its customers' cargo; these bills also include information from which Sea Star can determine the specific pieces of equipment it used to transport its customers' cargo (hereinafter "the vendor bills"); and (ii) Sea Star sends bills to Emerald (or Emerald's creditor), showing which Emerald equipment Sea Star has used, for which Sea Star must pay Emerald (hereinafter "self-bills"). Before ordering Sea Star to comply with what might be burdensome discovery requests, Judge Farnan ordered Emerald to obtain vendor bills from one of Sea Star's customers and report on the amount of discrepancy, if any, Emerald found between that customer's vendor bills and the relevant self-bills.

Judge Farnan explained to Emerald's counsel that the result of this test case would determine whether Emerald would be granted the discovery it was seeking by its Documents Motion and Interrogatory Motion:

> . . . What I want you to do, before I order [Sea Star] to do all the things you want [them] to do, which I may do, I think that you ought to come to me and be able to establish that, for instance, through bills of lading, that they short-changed you . . . . I want you to pick a customer, go to the customer for payments made to Sea Star, and establish that their customer has better records than they do to demonstrate that your records are correct. . . .

> Now if you establish that representatively, the argument you're making, on this broader scale, I'm gonna allow you to go after them and I'm gonna make them do a lot of work in their documents, but until I'm convinced that it's in their documents and that this path of Discovery you've chosen has some merit to it, in other words, it's gonna give us a fruitful result so you'll get some evidence for the trial, I'm not gonna order them to respond to the kind of broad questioning you've asked for. . . .
>
> . . . I'm saying show it to me by a vendor [i.e. a customer of Sea Star's]. That's all I'm asking you to do. If you show me what you're saying here today by a vendor in an isolated time frame, I'm going to allow you to have at them as broadly as you're asking.

(D.I. 131 at 20-21, 24)

Both parties agree that the Baxter vendor bills show that Sea Star used Emerald equipment that did not appear on the Sea Star self-bills. The Baxter documents show either 70 or 77 pieces of Emerald equipment used by Sea Star.[3] Both sides agree that 24 of these pieces of Emerald equipment that appear on the Baxter vendor bills do not appear on the self-bills Sea Star provided to Emerald. This translates into a 31-34% discrepancy between the vendor bills and the self-bills.

The Court finds that a discrepancy of this magnitude is sufficient to justify requiring Sea Star to provide additional discovery. Simply put, the Baxter test results show that Sea Star failed to tell Emerald about approximately one in every three pieces of Emerald equipment Sea Star used to transport Baxter cargo. These results strongly suggest that Sea Star has documents (e.g. vendor bills) that corroborate Emerald's claim that Sea Star used more Emerald equipment than it paid Emerald to use. Such documents are, at minimum, "relevant to the claim or defense" of

---

[3]In its written submission, Sea Star said the Baxter documents pertain to "at least 70 pieces of [Emerald] equipment." (D.I. 149 at 9) At the hearing, Sea Star argued that the Baxter vendor bills show 77 pieces of Emerald equipment being used by Sea Star. (D.I. 158 at 55)

4

the parties, and their production is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Sea Star objects to this conclusion primarily on the grounds that "Judge Farnan set the significant bar a lot higher" than 31-34%. (D.I. 158 at 55-56) In response to Sea Star's argument, it must first be pointed out that Judge Farnan refrained from ruling on whether Emerald passed the Baxter test and expressly referred that question to the magistrate judge. (D.I. 150 at 4-7) In any event, the Court believes that Judge Farnan would find that the 31-34% deviation between the Baxter vendor bills and Emerald's self-bills passes the test because Judge Farnan did not appear to ascribe significance to any particular figure. It is true that at one point Judge Farnan said: "I'm expecting to get a <u>dramatic result</u> from this effort by you on a vendor. <u>I'm expecting to see, like, a 50 percent deviation</u>." (D.I. 131 at 24 (emphasis added)) Elsewhere, however, Judge Farnan formulated a hypothetical in which he contemplated a 40% discrepancy and suggested this amount would satisfy the test. (D.I. 131 at 22) ("Then why did the customer pay them [Sea Star] for the other 40 percent? That's gonna cause me to really agree with you [Emerald] and make them [Sea Star] do a lot of work to get into their files, their invoicing, their accounting records."). In other places Judge Farnan spoke even more generally, stating: "If there's <u>a big deviation</u>, you [Sea Star] got a problem" and "If they [Emerald] show <u>a deviation</u>, then you're not being candid in Discovery, and you'll get hurt here." (D.I. 131 at 25, 29 (emphasis added))

Again, the Court believes that Judge Farnan would find 31-34% to be the type of "dramatic result" and "big deviation" he intended to require before ordering Sea Star to provide Emerald with additional discovery. In any event, this Court is satisfied that the results of the

Baxter test justify requiring Sea Star to produce additional discovery.[4]

Documents Motion

Based on the results of the Baxter test, Emerald has narrowed the document discovery it now seeks. While Emerald originally sought to compel documents responsive to twenty-six of its document requests (Nos. 5, 6, 8, 10-12, 23-42), Emerald now seeks to compel production only of documents sought by Request No. 5. (D.I. 158 at 70-71) Emerald has also crafted three new document requests, again tailored to the results of the Baxter test. (D.I. 151; D.I. 152; D.I. 158 at 68-70)

The Court will grant the document discovery Emerald seeks (though narrowing the time frame). The Court finds that Emerald's three requests for additional document discovery, and its original Request No. 5, seek documents that are relevant and reasonably calculated to lead to the discovery of admissible evidence.

Specifically, Sea Star is required to produce, within **twenty (20) days of the date of this Order**,[5] the following:

___

[4] Sea Star devoted much of its written response to the Baxter test to legal arguments challenging Emerald's ability even to litigate its counterclaims. (D.I. 149 at 1-9) Sea Star argued that Emerald "does not have the right to assert a claim for usage of the Emerald [e]quipment and thus, its request for additional discovery should be denied." (D.I. 149 at 3) While Sea Star's analysis is difficult to understand, to the extent Sea Star is arguing that Emerald lacks standing to press its counterclaims because a portion of the proceeds from any judgment will go to Emerald's creditors, or is arguing that Sea Star made payments to Emerald's creditors and therefore Emerald's counterclaims will fail, the Court is not persuaded that, at this time, these contentions are bases for denying discovery.

[5] While Federal Rule of Civil Procedure 34 ordinarily allows for 30 days to respond to requests for production of documents, that time frame may be shortened by court order. Here, given that: this case has been pending in one form or another since March 1, 2004; Emerald

A. All invoices, bills, or other similar documents between Sea Star and trucking companies used for the movement of containers to or from Baxter, for the time period April 29, 2002 through September 30, 2002. These documents should not just pertain to the specific Emerald equipment identified in the Baxter documents, but to all equipment.

B. A list identifying the five (5) largest trucking companies (by volume) used by Sea Star in the United States and the three (3) largest trucking companies used by Sea Star in Puerto Rico for the period April 29, 2002 through September 30, 2002. As to those five (5) largest trucking companies in the United States and the three (3) largest in Puerto Rico, Sea Star shall provide copies of all invoices exchanged between Sea Star and those companies for services rendered between April 29, 2002 and September 30, 2002.

C. Copies of all invoices exchanged between Sea Star and ET Heinsen, Sea Star's stevedoring company, used in the Dominican Republic, as well as any and all invoices from any company involved with loading, discharge or movement of any containers and/or chassis and/or gen sets from April 29, 2002 through September 30, 2002.

D. For the period May 1, 2002 through June 30, 2002, any and all copies of all original vessel manifests for each vessel that carried any containers, chassis or generators on Sea Star vessels directly, as an interline, or as a slot charter from or to any port.

Sea Star has objected to Emerald's original Request No. 5 as "overbroad, harassing, outside the scope of legitimate discovery, and not calculated to discovery of admissible evidence." (D.I. 115 Ex. A) The Court overrules these objections for the reasons already explained.

---

served its document request on Sea Star a year ago in December 2006 (D.I. 103-04); Emerald moved to compel production of documents sought by its document request more than seven months ago in May 2007 (D.I. 115); Judge Farnan put Sea Star on notice more than four months ago at the August 2007 hearing that, depending on the results of the Baxter test, Sea Star might have to do a lot of work to produce documents; the parties have agreed to a discovery cut-off of March 1, 2008, which is barely more than two months away; and trial will be held in April 2008, the Court finds ample reason to shorten the time allowed for responses to 20 days.

Starting with its response to Emerald's Documents Motion, Sea Star has asserted, without explanation, that providing Emerald copies of Sea Star's vessel manifests would be "prima facie illegal." (D.I. 119 at 3) The authorities to which Sea Star cites do not appear to be applicable. *See* 19 U.S.C.A. § 1431(c) (providing that certain information contained in vessel manifests "shall be available for public disclosure" unless exempted from disclosure by other statute or Secretary of Treasury makes finding on shipment-by-shipment basis that disclosure poses threat); 19 C.F.R. § 103.31(c) (delineating circumstances under which members of the public and others may examine vessel manifests in possession of Bureau of Customs and Border Protection); *see also generally Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1024 (D.C. Cir. 1999) (noting that the information contained in the carrier-prepared Inward Vessel Manifest is "regularly released for public distribution under Customs regulations"); *Gilda Indus., Inc. v. United States Customs and Border Prot. Bureau*, 457 F. Supp. 2d 6, 12 (D.D.C. 2006) (citing 19 U.S.C. § 1431 and 19 C.F.R. §103.31 and stating that "the [inward] vessel manifest information, unlike the Import Declaration, is available to the public"). Nor has Sea Star directed this Court to any authority that would preclude a court from ordering a litigant such as Sea Star from disclosing, in discovery, its copy of vessel manifests. Therefore, Sea Star's "prima facie illegal" objection to Request No. 5 is also overruled.[6]

Except as otherwise provided above, the Documents Motion is DENIED.

---

[6]To the extent Sea Star believes that, in order to comply with the statute and regulation it has cited, it must redact certain information in the vessel manifests and/or obtain modification of the confidentiality order already entered in this case (D.I. 135), it should work with Emerald to establish a mechanism to address these concerns. In the event the parties cannot resolve this issue themselves, they should present it to the Court pursuant to the procedures set forth in paragraph 4 of the Court's November 19, 2007 Order (D.I. 146).

Interrogatory Motion

The Interrogatory Motion sought to compel responses to six interrogatories (Nos. 1, 2, 4, 6, 8-9). At the hearing (D.I. 158 at 75) Emerald narrowed its request to an order compelling a response to Interrogatory No. 1, which seeks:

> As to each piece of Emerald [e]quipment for which Emerald has made a claim as alleged in the Counterclaim, please state whether Sea Star admits using such piece of Emerald [e]quipment and, if so, the date Sea Star first used the equipment, the date the piece of Emerald [e]quipment was returned by Sea Star to Emerald, and identify for each such piece of equipment any document which evidences Sea Star's initial use of that piece of equipment and the return of such piece of equipment to Emerald.

Sea Star objected to Interrogatory No. 1 as "overbroad, harassing, and not calculated to lead to discovery of admissible evidence." (D.I. 114 Ex. A at 2) The Court overrules these objections for the reasons set forth above. Sea Star had also objected that Emerald had failed to specify which pieces of equipment are at issue in Emerald's counterclaim (*see id.*), but Emerald assured the Court at the hearing that Sea Star has such a list (D.I. 158 at 75), and Sea Star did not argue otherwise or renew this objection.

Sea Star has also argued that to respond to Interrogatory No. 1 would be tantamount to responding to thousands of interrogatories, a number far exceeding the number of interrogatories authorized by the Federal Rules of Civil Procedure and the Scheduling Order in this case (D.I. 99). According to Sea Star, interrogatories just are not available in a case like this, where both parties agree that the subject matter of their dispute consists of thousands of pieces of equipment. (D.I. 158 at 87-88)

The Court does not agree. Sea Star's position is inconsistent with the spirit of the Rules of Civil Procedure, which are designed to eliminate surprise at trial. *See, e.g., Gary Plastic*

*Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re U.S. Truck Co. Holdings, Inc.)*, 756 F.2d 230, 236 (2d Cir. 1985) ("Discovery serves important purposes, such as avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying, and framing the issues involved, and enabling parties to obtain the factual information needed to prepare for trial. Rules governing discovery should be interpreted broadly to achieve those purposes.") (internal citation omitted); *Hercules Powder Co. v. Rohm & Haas Co.*, 4 F.R.D. 452, 453 (D. Del. 1946) ("[I]n determining a motion under Rule 34 and in framing its order, the court should be guided primarily by the spirit of the Federal Rules which requires that discovery before trial be made wherever possible.") (internal quotation marks omitted). Interrogatory No. 1 is a focused effort to flesh out the issue that will be the subject of trial: how much was each piece of equipment used and how much did Sea Star report it was used. If Emerald's claims that Sea Star vastly under-reported its use of Emerald's equipment have merit, Sea Star should not be able to avoid liability – or even increase the difficulty Emerald would have in proving liability – simply because Sea Star's misdeeds extended to a large number of pieces of equipment. *See generally* Fed. R. Civ. P. 33, Adv. Comm. Notes. (1993 Ams.) ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication. . . . [Moreover,] leave to serve additional interrogatories is to be allowed when consistent with Rule 26(b)(2). The aim is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device. In many cases it will be appropriate for the court to permit a larger number of interrogatories . . . .").

Finally, Sea Star now argues that to require it to answer Interrogatory No. 1 would

deprive it of attorney work product protection. (D.I. 158 at 67) This objection comes too late. Sea Star did not raise a work product objection in its original response to the interrogatory request or in its response to the Interrogatories Motion. (D.I. 118 at 3) Nor, in any event, has Sea Star met its burden to assert work product protection. *See* Fed. R. Civ. P. 26(b)(5)(A). Moreover, even if Sea Star's objection were not untimely, Fed. R. Civ. P. 26(b)(3) permits a party to obtain discovery of work product "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Under the circumstances described in this Order, it may be that Emerald could make such a showing.

Accordingly, with respect to Emerald's renewed Motion to Compel Sea Star Line, LLC's Responses to Certain Interrogatories (D.I. 114), Emerald's request regarding Interrogatory No. 1 is GRANTED, and Sea Star shall respond thereto **within twenty (20) days of the date of this Order**. *See supra* n.5. In all other respects, the Interrogatory Motion is DENIED.

Additional Discovery

Emerald intends to seek, at most, two additional depositions: (I) a records custodian, pursuant to Fed. R. Civ. P. 30(b)(6); and (ii) William Lauderdale. (D.I. 158 at 76-77) Sea Star has indicated that it may have objections to one or both of these depositions. (D.I. 158 at 89-90) At this point, when there has been neither a notice of deposition or a subpoena, there is nothing on which the Court can rule. If Emerald decides to seek to depose a records custodian and/or Mr. Lauderdale, and if Sea Star objects to one or both of these depositions, the parties should present

their dispute to the Court in accordance with the procedure set forth in paragraph 4 of the Court's November 19, 2007 Order (D.I. 146).

No depositions other than those of a records custodian or Mr. Lauderdale, or those that had been noticed or agreed-upon prior to December 20, 2007, shall be taken without leave of the Court. All discovery on the issues raised by Emerald's counterclaim shall be completed no later than March 1, 2008. Other than discovery that had been initiated prior to the December 20, 2007 hearing, or what has been compelled by this Order, no additional discovery is permitted.

Dated: December 28, 2007

_____
Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE