UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,

      Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

      Defendant,

-vs-

SEA STAR LINE, LLC,

      Counter-Defendant.
_____/

Civil Action No. 05-CV-245-JJF

### RE-NOTICE OF TAKING DEPOSITION

TO:
ALAN I. MOLDOFF, ESQ.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

Ronald S. Gellert, Esq.
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801

      **PLEASE TAKE NOTICE** that the undersigned attorneys will take the deposition of:

      EMERALD EQUIPMENT LEASING, INC. pursuant to Fed. R. Civ. P. 30(b)(6), by and

DATE:      January 25, 2008

TIME:      10:00 A.M.

PLACE:     Smith, Katzenstein & Furlow, LLP
           800 Delaware Avenue, 10th Floor
           Wilmington, DE 19801
           Tel: (302) 652-8400

upon oral examination before, a Notary Public, or any other Notary Public or officer authorized by law to take depositions in the State of Delaware. The oral examination will continue from day to day until completed. Each deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the applicable and governing rules.

Dated: January 16, 2008                SMITH, KATZENSTEIN & FURLOW LLP

                                       Kathleen M. Miller (I.D. No. 2898)
                                       800 Delaware Avenue
                                       P.O. Box 410
                                       Wilmington, DE 19899
                                       Telephone: 302-652-8400
                                       Facsimile: 302-652-8405
                                       E-mail: Kmiller@skfdelaware.com

OF COUNSEL:
Timothy J. Armstrong
Armstrong & Mejer, P.A.
2222 Ponce de Leon Boulevard
Penthouse Suite
Miami, FL 33134
Telephone: 305-444-3355                *Attorneys for Sea Star Line LLC*

## EXHIBIT "A"

Pursuant to Fed. R. Civ. P. 30(b)(6), Defendant, EMERALD EQUIPMENT LEASING, INC. ("EMERALD"), shall testify as to the facts relating to the following allegations in the Amended Counterclaim against SEA STAR LINE, LLC ("SEA STAR"):

1. SEA STAR's purchase of certain NPR assets included "NPR's bookings", as alleged in paragraph 7 of the Amended Counterclaim.

2. The specific locations of "the Emerald Equipment" involved in EMERALD claims "[a]t the inception of the lease between Emerald and Sea Star", as alleged in paragraph 12 of the Amended Counterclaim.

3. All communications between EMERALD and SEA STAR representatives relating to SEA STAR's provision of "monthly 'self-billing reports'", described in paragraph 14 of the Amended Counterclaim.

4. All communications between EMERALD representatives and SEA STAR relating to SEA STAR's undertaking of "the obligation to report to Emerald its 'usage' of the Emerald Equipment", alleged in paragraph 14 of the Amended Counterclaim.

5. EMERALD's discovery "that the 'self billing reports' prepared by Sea Star were grossly understated, failing, inter alia, to account for numerous pieces of Emerald Equipment which Sea Star had been using without paying rental charges to Emerald and failing to pay the appropriate amounts for usage of Equipment contained in the 'self-billing reports'", as alleged in paragraph 15 of the Amended Counterclaim.

6. EMERALD's exercise of "its right to terminate the Equipment Rental Agreement in accordance with its terms", as alleged in paragraph 16 of the

Amended Counterclaim.

7. SEA STAR's failure to pay "[r]ent due to Emerald", as alleged in paragraph 18(a) of the Amended Counterclaim.

8. SEA STAR's failure to pay "[l]oss incurred as a result of the loss, damage, theft or destruction of certain equipment", as alleged in paragraph 18(b) of the Amended Counterclaim.

9. SEA STAR's failure to "return numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement", as alleged in paragraph 19 of the Amended Counterclaim.

10. EMERALD's "damages in excess of $4,000,000.00", as alleged in paragraph 20 of the Amended Counterclaim.

11. EMERALD's "ongoing" work on "detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Equipment Rental Agreement", as alleged in paragraph 21 of the Amended Counterclaim.

12. Each EMERALD demand "that Sea Star return all Emerald Equipment to Emerald on or before December 1, 2003, in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement", as alleged in paragraph 23 of the Amended Counterclaim.

13. Each EMERALD's determination "that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement", as alleged in paragraph 24 of the Amended Counterclaim.

14. Each EMERALD's determination "that it believes the extent of rental charges

owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00", as alleged in paragraph 33 of the Amended Counterclaim.

15. EMERALD's belief "based upon its continuing investigation, that Sea Star used various pieces of Emerald Equipment which had never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rental totaling $1,800,000.00, as alleged in paragraph 33 of the Amended Counterclaim.

16. SEA STAR's "intent to defraud Emerald", as alleged in paragraph 34 of the Amended Counterclaim.

17. SEA STAR's "reckless indifference as to the truth of the matters contained in the 'self-billing reports'", as alleged in paragraph 34 of the Amended Counterclaim.

18. All schedules prepared by or on behalf of EMERALD and delivered to SEA STAR that relate to "Emerald Equipment used by Sea Star" and "specifically set forth the relevant equipment pieces, dates of usage, and other related information identifying the nature of the defective information contained in the Sea Star 'self-billing reports'", as alleged in paragraph 35 of the Amended Counterclaim.

19. All information received by EMERALD and communications between EMERALD and SEA STAR representatives relating to the TIRs that "Sea Star appears to have backdated", as alleged in paragraph 36(a) of the Amended Counterclaim.

20. All information received by EMERALD and communications between EMERALD and SEA STAR representatives relating to EMERALD's determination that "Sea Star subleased to CSX Line from May 15, 2002, to July 17, 2002, various pieces of Emerald Equipment",

as alleged in paragraph 36(b) of the Amended Counterclaim.

21. All information received by EMERALD, communications between EMERALD and SEA STAR representatives, and the "documentation" that "indicates that duplicate "self-billing reports' were prepared by Sea Star for the month of September 2002, indicating different amounts for the same month", as alleged in paragraph 36(d) of the Amended Counterclaim.

22. SEA STAR's knowledge in preparing "the 'self billing reports'...that the information contained on those reports was false and misleading", as alleged in paragraph 37 of the Amended Counterclaim.

23. SEA STAR's "reckless indifference as to the veracity of the information contained in the 'self billing reports'" during preparation, as alleged in paragraph 37 of the Amended Counterclaim.

24. SEA STAR's preparation of the "inaccurate 'self billing reports' with the intention of defrauding Emerald", as alleged in paragraph 38 of the Amended Counterclaim.

25. EMERALD's reliance "on the misrepresentations made by Sea Star in the 'self billing reports'", as alleged in paragraph 39 of the Amended Counterclaim.

26. The "damages in excess of $4,000,000.00" that Emerald suffered "[a]s a result of Emerald's reliance on the fraudulent misrepresentation of Sea Star in the 'self billing reports'", as alleged in paragraph 40 of the Amended Counterclaim.

27. SEA STAR's "duty to accurately account for the use of Emerald's Equipment and to ensure that it accurately reported and compensated Emerald for the use of the equipment", as alleged in paragraph 42 of the Amended Counterclaim.

28. SEA STAR's "representations which have a tendency to deceive and

undermine confidence and are injurious to the public interest", as alleged in paragraph 44 of the Amended Counterclaim.

29. SEA STAR's intention "to defraud Emerald when it provided Emerald with the 'self billing reports' grossly under reporting Sea Star's use of the Emerald Equipment", as alleged in paragraph 48 of the Amended Counterclaim.

30. EMERALD's justifiable "reliance upon Sea Star's fraudulently prepared 'self billing reports'", as alleged in paragraph 49 of the Amended Counterclaim.

31. The "damages in excess of $4,000,000.00" alleged in paragraph 50 of the Amended Counterclaim.

32. SEA STAR's "fiduciary duty to accurately report to Emerald the equipment usage and the costs incurred as a result of said usage", as alleged in paragraph 52 of the Amended Counterclaim.

33. Each SEA STAR action "in a negligent and undue manner", as alleged in paragraph 53 of the Amended Counterclaim.

34. SEA STAR's knowledge "that Emerald relied upon Sea Star to accurately report the usage of the Emerald Equipment and the cost incurred", as alleged in paragraph 54 of the Amended Counterclaim.

35. SEA STAR's knowledge that EMERALD would "rely on the 'self billing reports' to determine the rental fees for the Emerald Equipment", alleged in paragraph 55 of the Amended Counterclaim.

36. SEA STAR's knowledge – and EMERALD's factual bases for stating – "that an accurate report from Sea Star was the only reasonably available method for Emerald to determine

the actual usage of the Emerald Equipment", as alleged in paragraph 55 of the Amended Counterclaim.

37. "Emerald's reliance upon Sea Star's 'self billing reports'... was necessary to maintain the relationship between the parties as provided for in the Equipment Rental Agreement", as alleged in paragraph 56 of the Amended Counterclaim.

38. All damages "relating to Emerald's inability to collect the actual rents based on Sea Star's usage of the Emerald Equipment", as alleged in paragraph 57 of the Amended Counterclaim.

39. All "information pertaining to the usage of Emerald Equipment while in the possession of Sea Star" that "remains solely in the possession of Sea Star", as alleged in paragraph 26 of the Amended Counterclaim.

40. The identity and mode of preparation of all documents produced by EMERALD in response to SEA STAR's Request for Production of Documents dated December 19, 2006.

41. The identity and mode of preparation of all documents described in SEA STAR's Request for Production of Documents dated December 19, 2006.

42. All facts relating to EMERALD's allegations in the Amended Counterclaim.