IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEA STAR LINE, LLC                          :
                                            :
    Plaintiff/                             :
    Counterclaim Defendant,                 :
                                            :
v.                                          :    Civ. No. 05-245-JJF-LPS
                                            :
EMERALD EQUIPMENT LEASING, INC.             :
                                            :
    Defendant/                              :
    Counterclaim Plaintiff,                 :

**EMERALD RESPONSE TO OBJECTIONS AND MOTION TO
SET ASIDE MAGISTRATE'S MEMORANDUM ORDER
TOGETHER WITH REQUEST FOR SANCTIONS**

    The Defendant/Counterclaim Plaintiff Emerald Equipment Leasing, Inc. ("Emerald") hereby responds to Objections and Motion to Set Aside Magistrate's Memorandum Order (D.I. 165) (the "Motion to Set Aside Magistrate's Order") filed by Sea Star Line, LLC ("Sea Star"), and in support thereof, respectfully states as follows:

**Introduction**

    Sea Star's goal throughout this litigation has been to obstruct any effort by Emerald to obtain from Sea Star a true and accurate accounting of its use of the Emerald Equipment commencing April 29, 2002 and to be held accountable for such use to the extent it has not paid for that use. In this endeavor, unfortunately for Emerald (and its creditors), Sea Star has, to date, been remarkably successful. Hopefully, this will change.

    The procedural gamesmanship played by Sea Star began almost four (4) years ago when Sea Star, rather than respond to Emerald's request to set up a meeting at the Sea Star offices to examine Sea star's records, instead filed the "declaratory judgment action" which commenced this lawsuit in the Florida courts (D.I. 48). It has been noted by at least one court that a

declaratory judgment action should not be "a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." Hyatt Intern. Corp. v. Coco, 302 F.3d 707, 711-712 (7th Cir. 2002). Nonetheless, and although the Florida court transferred venue of the Sea Star declaratory judgment action to this Court, this tactic proved to be effective to tie this case up in the Florida courts for more than a year.

It is now several years later. The dispute is still the same. Emerald has still not had an opportunity to review the vessel manifests requested (as well as other documents it seeks), and, unfortunately, it appears Sea Star's tactics have also not changed. In its latest pleading, Sea Star objects to and seeks to set aside the discovery rulings embodied in a Memorandum Order dated December 28, 2007 rendered by Magistrate Judge Stark (the "Magistrate"). Upon examination of the Motion To Set Aside Magistrate's Order, it should become abundantly apparent that Sea Star's objections are wholly frivolous, and Emerald believes, sanctionable.

**Standard of Review**

By Order entered November 2, 2007 (D.I. 142), this Court referred the Amended Counterclaim of Emerald to the Magistrate "to regulate and resolve all pretrial matters, up to and including the pretrial conference, subject to 28 U.S.C. Section 636(b)(1)(B) and any further Order of the Court. 28 U.S.C. Section 636(b)(1)(A) provides in relevant part, as follows:

> A judge may designate a magistrate judge to hear and determine
> any pretrial matter pending before the Court....A judge of the court
> may reconsider any pretrial matter under this subparagraph (A)
> where it has been shown that the magistrate judge's order is clearly
> erroneous or contrary to law.

In likewise fashion, Rule 72(a) of the Federal Rules of Civil Procedure provides in relevant part:

> A magistrate judge to whom a pretrial matter and not dispositive of
> a case or defense of a party is referred to hear and determine shall

2

> promptly conduct such proceedings as are required and, when appropriate, enter into the record a written order setting forth the disposition of the matter....The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Accordingly, objections to the Memorandum Order in this case may only be made to the extent a party believes the findings in the Memorandum Order are "clearly erroneous or contrary to law". As will be demonstrated below, the objections raised in this case fall well below these standards.

**Sea Star's Objections Based on "Law of Case, Local Rules".**

First, Sea Star inexplicably complains that the Memorandum Order, by ruling on Emerald's renewed discovery motions, somehow conflicts with what Sea Star calls the "law of the case" and contravenes the "local rules". Specifically, Sea Star contends that the "law of the case" is the Order entered by this Court on August 23, 2007 (D.I. 130) (the "August 23, 2007 Order") in connection with Emerald's then pending discovery motions. This Order was entered after a hearing on August 22, 2007 at which time this Court permitted Emerald to conduct certain "limited third party discovery" as a test case by which Emerald's pending discovery motions could later be properly adjudicated. The August 23, 2007 Order, accordingly, provided that the Emerald discovery motions were denied "without prejudice in deference to the third party discovery to be conducted by Emerald Equipment Leasing, Inc." The additional "third party discovery" ordered by this Court as a "test case" involved documents obtained from Baxter Healthcare Corp. (the "Baxter test"). After the Baxter documents were received, Emerald reported back to this Court by letter dated October 24, 2007 (D.I. 143), as it was so directed. At a hearing on this matter on November 1, 2007 and as set forth by Order entered November 2, 2007 (D.I. 142), this Court, given the preliminary results of the Baxter test, referred the Amended Counterclaim of Emerald Equipment Leasing, Inc. to the Magistrate "to regulate and

3

resolve all pretrial matters, up to and including the pretrial conference, subject to 28 U.S.C. Section 636(b)(1)(B) and any further order of the Court." Upon referral of this matter to the Magistrate, and after a teleconference with the Magistrate on November 19, 2007 (D.I. 147), the Magistrate issued an Order entered on November 20, 2007 (D.I. 146) which, *inter alia*, requested submissions from both Sea Star and Emerald relating to the Baxter test case. In it's submissions, both to this Court by letter dated October 24, 2007 (D.I. 143), and in its submissions to the Magistrate on December 7, 2007 (D.I. 151 and D.I. 152), Emerald explicitly asked that its discovery motions be renewed. As a result, by Order entered December 13, 2007 (D.I. 155), the Magistrate scheduled a hearing to address, *inter alia*, the following:

>  1. The results of the "Baxter" test case.
>
>  2. The implication of the results of the "Baxter" test case for Emerald Equipment Leasing, Inc.'s renewed (i) Motion to Compel Sea Star, LLC's Responses to Certain Interrogatories (D.I. 114), specifically Interrogatory Nos. 1, 2, 4, 6, 8 and 9, and (ii) Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115), specifically Document Request Nos. 5, 6, 8, 10, 11, 12, 23-25, and 26-42, and whether the Court should grant or deny such renewed motions.
>
>  3. Emerald Equipment Leasing, Inc.'s three requests for additional document discovery as set forth in Emerald's Reply to Sea Star Line, LLC's Response to Emerald's Submission Regarding Baxter Healthcare, Inc. (D.I. 151), and whether the Court should grant or deny such requests.
>
>  4. The specific nature of any other additional discovery request(s) including the identity of any additional witness(es) to be deposed, and whether the court should grant or deny such requests for additional discovery.

How, in light of this background Sea Star can seriously contend that the Magistrate did not follow the "law of the case" or otherwise have authority to make the discovery rulings which it made in the Memorandum Order, is nothing short of perplexing. The purported "law of the case" was a discovery order which, by its terms was "without prejudice" and was specifically

made subject to further consideration after completion of the third party discovery ordered by this Court (i.e., the "Baxter test"). The Memorandum Order (granting certain discovery) accordingly, in no manner, shape or form conflicts with the August 23, 2007 Order. Moreover, as the Memorandum Order makes eminently clear, the renewal of the discovery motions by Emerald, although not raised by a formal written motion, under the circumstances presented herein, was entirely appropriate and afforded Sea Star a full opportunity to be heard. Sea Star fully presented its argument in opposition to the renewed discovery motions. The renewed discovery motions were clearly well within the Magistrate's authority to hear and determine. Sea Star's complaints otherwise are meritless.

**Sea Star's Objection Based on Threshold, Standing**

Second, Sea Star contends the Magistrate "misreads and misapprehends" Sea Star's legal arguments which challenge "Emerald's ability even to litigate its Counterclaims". If that were the case, it may be because Sea Star's "legal arguments" are, in fact, difficult to follow and Emerald believes, disingenuous.[1]

Sea Star has apparently latched upon language it found in an agreement (the "Loan Sale Agreement") between MBC Leasing, Inc. ("MBC") and Storage Transfer, Inc. ("Storage Transfer"), who are respectively, Emerald's predecessor lender and successor lender. The language in paragraph 6.3 of the Loan Sale Agreement (see attached as Exhibit "A") which Sea Star now says it believes to be dispositive of Emerald's claims for rent owed by Sea Star is as follows:

> Assignee [Storage Transfer] agrees not to assert any entitlement to compensation from Sea Star for use of Emerald Equipment during any period in which Sea Star has paid ASSIGNOR [MBC] pursuant to the Sea Star Indemnity.

---

[1] Emerald addressed these issues in its submission to the Magistrate replying to Sea Star's Response to Emerald's Submission Relating to the Baxter Documents (D.I. 151). Emerald will address those issues once more herein.

The reference to the "Sea Star Indemnity" is an Indemnity Agreement between MBC and Sea Star which was attached as an exhibit to the initial Sea Star Complaint filed in this matter (see Indemnity Agreement attached hereto as Exhibit "B"). The very same language included in the Loan Sale Agreement which Sea Star wants this Court to believe is somehow dispositive of Emerald's claim for rent is included in the Sea Star Indemnity. Specifically, paragraph 4 of the Sea Star Indemnity states in relevant part:

> Provided that Sea Star provides MBC with prompt written notice of any claims, causes of action, liabilities or damages asserted against Sea Star by any Competing Claimant relating to any Competing Claimants alleged <u>entitlement to compensation for use of Emerald equipment or MBC equipment during any period for which Sea Star has paid MBC pursuant to this Agreement</u> (a "Proceeding"), MBC will defend the Proceeding at its expense. [emphasis added]

Sea Star asserted, in its written submissions to the Magistrate regarding the Baxter test (D.I. 149), that the cited language in the Loan Sale Agreement means that Emerald does not have a right to assert any claim for usage of the Emerald Equipment at all since that usage was during the same time frame in which Sea Star was paying MBC. Indeed, a narrow literal reading of the cited language, if read in a total vacuum unrelated to the facts of this case may yield the interpretation Sea Star now alleges. But, as Emerald explained in its reply to the Sea Star submissions made to the Magistrate regarding the Baxter test (D.I. 151), the language cited by Sea Star clearly was meant not as Sea Star asserts, but rather simply to protect Sea Star from having <u>to pay twice</u> for the same usage of the same equipment for the same time; i.e., once to MBC and a second time to Emerald or any other claimant. Simply put, the purpose of this language was to insure that no other parties would make a claim against Sea Star for Sea Star's use of the Emerald equipment for which Sea Star already <u>paid</u> MBC. It would not, however,

include any Emerald equipment used by Sea Star for which use Sea Star did not pay MBC. No other construction could possibly be reasonable.

Sea Star is well aware of this. An e-mail dated 8/21/02 (Exhibit "C" attached hereto) from MBC's counsel to Sea Star's counsel during the negotiations of the Sea Star Indemnity in the third paragraph states:

> As Sea Star would have to defend, at its expense, a suit brought by a creditor who had not been named as a defendant in any interpleader action, if MBC agreed to provide a defense at its expense to claims by "any secured creditor" as you proposed, Sea Star would fare better than if it had never entered into the Indemnity Agreement. <u>The concept was simply that Sea Star not have to pay twice</u>. I have substituted interpleader defendants for secured creditors. [emphasis added].

Later, when Sea Star tried to present an indemnification claim to MBC based on the Emerald claims, MBC's counsel responded to Sea Star's counsel by a letter dated April 23, 2003 (Exhibit "D" attached hereto) reiterating that a claim for which MBC would be responsible to provide indemnity was only to ensure that Sea Star would not have to pay twice, stating in the second paragraph:

> MBC's initial obligation under the Indemnity Agreement, assuming that Sea Star provides it with prompt written notice, is an obligation to "defend" any "Proceeding" brought by a Competing Claimant against Sea Star. While the term "Proceeding" is defined broadly in the Indemnity Agreement, a "Proceeding" still <u>must involve an effort by a Competing Claimant to make Sea Star pay for use of Emerald Equipment for which it has already paid MBC</u>. The e-mails attached to the letter all relate to claims that Sea Star used Emerald Equipment after April 27, 2002 and failed to pay MBC or anyone else for that use. [emphasis added]

A subsequent letter from MBC's counsel to Sea Star's counsel dated September 25, 2003 again clearly restated this concept (see Exhibit "E" attach hereto), stating in part:

{M0628584.1}

> The mere fact that Emerald Equipment Leasing, Inc. ("Emerald") has asserted a claim against Sea Star for use of "Emerald Equipment" does not necessarily mean that the claim is a "competing claim."
>
> . . .
>
> What you omitted from your letter, of course, is that you acknowledged that Sea Star does not dispute that it has used Emerald Equipment, albeit less than Emerald claims, and not paid for that use. Consequently, Sea Star has breached the Indemnity Agreement. You also failed to mention that you declined to provide documentation concerning what Sea Star acknowledges it owes or documentation demonstrating why the claims asserted by sea Star are not valid or are "competing claims."

There has never been produced any subsequent document (to Emerald's knowledge) where Sea Star has ever taken any other position with respect to the Sea Star Indemnity nor has Sea Star ever (to Emerald's knowledge) expressed any other position to date.

The language cited by Sea Star in the Loan Sale Agreement simply reiterates the concept of "no double payment" contained in the Sea Star Indemnity so that Storage Transfer Inc. (to whom MBC sold its loan) would not assert a "competing claim" against Sea Star, i.e., a claim for Sea Star's use of Emerald equipment for which Sea Star <u>already paid</u> MBC. Emerald's claims, of course, are for Sea Star's use of Emerald's equipment for which <u>Sea Star did not pay MBC or anyone else</u>. Sea Star cannot make a "straight faced" argument that if it used Emerald equipment and failed to report it on their "self-billing reports" and therefore did not pay for that use, that now it should be absolved of any obligation or liability for that use. Sea Star must know this argument is absurd and is simply trying to confuse the Court with specious assertions to divert the attention of the Court from the real issue, i.e., Sea Star's use of Emerald equipment for which it did not pay rent, and in many instances did not return the equipment to Emerald.

**Sea Star's Objections Based on Production, Response Requirements**

Third, Sea Star objects, apparently substantively, to the specific discovery which the Memorandum Order directs Sea Star to provide (see pages 10-13 of the Motion to Set Aside Magistrate's Order). It appears that Sea Star's main complaint is that it does not believe the 34% discrepancy (i.e., 34% of the Emerald Equipment used by Sea Star to transport cargo for Baxter Healthcare was never disclosed on the Sea Star Self-Billing Reports and, accordingly, never paid for by Sea Star) is not a "significant" deviation. Without belaboring the point, Emerald believes a conclusion that 34% deviation is significant" is self-evident. The deviation speaks for itself. No other response should be necessary.

Moreover, the discovery requested by Emerald and ordered by the Magistrate was, in fact, in certain respects, a scaled down version of the original discovery requests in a manner which Emerald believes will provide the more "targeted" discovery requests which this Court had in mind when it first devised the Baxter test and then referred the matter to the Magistrate for his supervision. There is nothing unreasonable about the requests. Indeed, this Court specifically noted that if the Baxter documents showed a significant deviation, Sea Star would "have a lot of work to do" (see D.I. 131 at page 22). It has no cause for complaint.

The remainder of Sea Star's assertions in this section of its Motion to Set Aside Magistrate's Order appears to be nothing more than random statements or open questions without any explanation why any of those statements or questions are significant or have any impact at all on whether the discovery ordered was appropriate. Again, all Emerald seeks are documents which may reflect Sea Star's usage of Emerald Equipment for which Sea Star never paid rent. Whatever other points Sea Star may have been trying to raise, in this section of its Motion, its apparent lack of coherence impedes any further response. In any event, to the extent

9

a response was possible, Emerald did respond in its Reply to Sea Star Response to Emerald's Submission Regarding Baxter Healthcare, Inc. (D.I. 151).

**Sea Star Objections Relating to The Vessel Manifests**

Finally, Sea Star appears determined not to provide the vessel manifests requested. These are the documents which an Emerald representative thought he was going to review at the Sea Star offices some years ago. Instead, Sea Star filed suit and so far has avoided turning over these records. While Sea Star protests it has already produced 12,000 pages of the documents encaptioned "load summaries", the point is that Sea Star is controlling the nature of the documents supplied. Sea Star should not be the arbiter of what documents it wants to turn over. If the load summaries it provided are complete and accurate, that is fine. All Emerald is seeking is an opportunity to review a limited number (2 months) of the official vessel manifests to verify the load summaries provided.

Apparently, in a last ditch effort to avoid turning over the vessel manifests, Sea Star, for the first time, in a single sentence in its Response to Emerald's Motion to Compel Production of Documents (D.I. 119 at 3), raised an issue regarding the purported application of 19 C.F.R. Section 103.31 which regulates the release of information by U.S. Customs & Border Protection Bureau ("Customs"). The law and cases cited by Sea Star in its Motion to Set Aside Memorandum Order all relate to the release of certain specific information contained in vessel manifests by Customs. They do not relate to the specific information here (equipment numbers for containers, chassis and gen sets), nor do they appear to relate to or regulate information held by carriers such as Sea Star. And even if they did, the Magistrate in the Memorandum Order provided a mechanism for appropriate redaction (see Memorandum Order at n.6). Sea Star has not availed itself of such a procedure to allay its concerns. The Magistrate properly found that

these regulations control Customs, not Sea Star. Nothing in the federal regulations cited by Sea Star prohibits Sea Star from producing the manifests. And even if they did, the Memorandum Order specified an appropriate procedure to avoid any improper disclosures.

**Alleged "Clearly Erroneous Findings"**

At the end of the Motion to Set Aside Memorandum Order (pages 15-16), Sea Star lists various factual statements which Sea Star contends were "apparently adopted or found by the Magistrate" and which Sea Star further contends are "clearly erroneous". For a number of these "factual statements", Sea Star does not provide any explanation as to what it is about those statements which are "clearly erroneous", or in some instances, why this is relevant to the disposition made in the Memorandum Order. At any rate, Emerald responds to each of these alleged "clearly erroneous" statements as follows:

(a) Sea Star contends it was "clearly erroneous" for the Magistrate to find that "Sea Star sends bills to Emerald (or Emerald's creditor), showing which Emerald Equipment Sea Star has used, for which Sea Star must pay Emerald (hereinafter "self-bills")". It appears that Sea Star's only apparent "quibble" is that the payments were made to MBC, not to Emerald. First, this has absolutely nothing to do with the discovery dispute decided in the Memorandum Order. Moreover, the distinction is meaningless. As has been explained, the rental payments were made to MBC because MBC was Emerald's secured creditor which had an assignment of rents. There is nothing inappropriate about this. That doesn't mean the money is not owed to Emerald in the first place. Indeed, that is why Sea Star apparently insisted on MBC signing the Indemnity Agreement (see <u>supra</u>) before it agreed to pay the rent directly to MBC. Emerald does not know why Sea Star raises this issue.

(b)    Sea Star disputes that a "31-34% deviation" between the Baxter vendor bills and Sea Star self-bills passes the "Baxter test" and is "the type or "dramatic result" and "big deviation" [the court] intended to require before ordering Sea Star to provide Emerald with additional discovery." Emerald has already responded to this frivolous argument (see supra). Nothing further need be said.

(c)    Sea Star apparently disputes that "ET Heinsen" was "Sea Star's stevedoring company, used in the Dominican Republic". Sea Star provides no explanation as to why this is incorrect; nor does it have any relevance whatsoever to the dispute at hand. Whether ET Heinsein was Sea Star's stevedoring company or not, if Sea Star is in possession of any invoices exchanged between Sea Star and ET Heinsen pertaining to loading, discharge or movement of any containers and/or chassis and/or gen sets from April 19, 2002 through September 30, 2002, it should be turned over.

(d)    Sea Star finally disputes that "Sea Star has such a list" specifying "which pieces of equipment are at issue in Emerald's Counterclaim." This is astounding. Sea Star has, and has had, for some time, detailed "schedules", "spreadsheets", "invoices" (whatever Sea Star wants to call them) which specifically itemizes each piece of equipment that Emerald claims Sea Star used and for which it did not pay either any rent or the full amount of rent which it owes (as well as equipment not returned). The fact that, to the extent Emerald has received any documentation which would reflect another piece of equipment which was not included on a previous schedule which was then added throughout this litigation, does not alter the fact that Sea Star has such a schedule. To imply that Sea Star is not aware of the items of equipment at issue (because a very small number of equipment pieces may have been added or deleted when Emerald reviewed additional information through discovery) is just not genuine.

**Conclusion**

This Court, at a hearing on August 22, 2007, devised a test for ongoing discovery stating:

> "But I gotta get a handle on whose got this right breadth to this lawsuit and I only know one way to do it, test the movant's theory" (See D.I. 131 at page 26).

This Court continued, stating:

> "But what will happen is you run that test and show me what deviates from the vendor's records to his records and you'll either get a lot more information or you'll have a lot narrower scope of proof" (See D.I. 131 at page 30).

The "Baxter" test has concluded and both Emerald and Sea Star have had an opportunity to submit its position with respect to the documents produced. There is no question that the documents produced showed a 34% deviation between the Baxter documents and the Sea Star "self-billing reports". Clearly, there was substantial "underreporting" on the Sea Star self-billing reports. Emerald is entitled to the limited discovery requests it made. Sea Star has responded with obfuscation and delay. The Memorandum Order should be affirmed and Emerald believes, Sea Star's conduct should be sanctioned by awarding Emerald its counsel fees incurred in response to this Motion and to Sea Star's Motion to Extend Time (D.I. 169).

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: /s/ Ron Gell
Ronald S. Gellert, Esquire (No. 4259)
Tara L. Lattomus, Esquire (No. 3515)
300 Delaware Avenue, Suite 1210
Wilmington, De 19801
Phone: 302-425-0430
Fax:    302-425-0432

and

{M0628584.1}

Gary M. Schildhorn, Esquire
Alan I. Moldoff, Esquire
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Phone: 215-851-8400
Fax:    215-851-8383