**EXHIBIT A**

## LOAN SALE AND ASSIGNMENT AGREEMENT

This Loan Sale and Assignment Agreement ("AGREEMENT") is effectively dated as of November 1, 2003, by and between MBC Leasing Corp., a Maryland corporation ("ASSIGNOR"), and Storage Transfer, LLC, a Pennsylvania limited liability company ("ASSIGNEE"). The ASSIGNOR, pursuant to this AGREEMENT, has agreed to assign, transfer and set over to the ASSIGNEE, without recourse, warranty, representation or guaranty of any kind except as set forth below, all of the ASSIGNOR'S rights, title and interest in and to the "ASSIGNED DOCUMENTS, as defined in Recital 5 below and the loan evidenced thereby ("LOAN") and the ASSIGNEE has agreed to purchase the ASSIGNED DOCUMENTS and the LOAN on the terms and conditions set forth below.

### R E C I T A L S:

R1. Pursuant to a $35,000,000.00 Term Loan Promissory Note dated as of November 20, 1997 from Emerald Equipment Leasing, Inc. ("BORROWER") to the order of the ASSIGNOR (the "NOTE") and a Loan and Security Agreement dated as of November 20, 1997 by and between the BORROWER and the ASSIGNOR (the "LOAN AGREEMENT"), as amended by an Amendment to Loan and Security Agreement made as of December 31, 1997 by and between the BORROWER and the ASSIGNOR ("FIRST LOAN AMENDMENT") and a Second Amendment to Loan and Security Agreement made as of August 26, 1998 by and between the BORROWER and the ASSIGNOR ("SECOND LOAN AMENDMENT"), the ASSIGNOR extended a loan ("LOAN") in the maximum principal amount of Thirty-Five Million Dollars ($35,000,000.00) to the BORROWER.

R2. The indebtedness owed under the LOAN is secured by: (a) the liens and security interests granted by the BORROWER to the ASSIGNOR pursuant to the LOAN AGREEMENT; and b) the liens and security interests granted by the BORROWER to the ASSIGNOR in an Assignment of Lease As Security made as of November 20, 1997 by and between the BORROWER and the ASSIGNOR ("LEASE ASSIGNMENT").

R3. To perfect the security interests granted by the BORROWER in the LOAN AGREEMENT, ASSIGNOR had its lien noted on the titles to approximately six thousand (6,000) chassis. In addition, ASSIGNOR filed:

   a. Personal Property Mortgages and Affidavits ("MORTGAGES") in Puerto Rico;
   b. Financing Statement No. 199739486 filed on November 19, 1997 with the Delaware Secretary of State listing Emerald as Debtor and MBC as Secured Party;
   c. Financing Statement No. 1803975 filed on November 26, 1997 with the New Jersey Secretary of State listing Emerald as Debtor and MBC as Secured Party;
   d. Financing Statement No. 1804536 filed on December 3, 1997 with the New

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd

        e.    Jersey Secretary of State listing Emerald as Debtor and MBC as Secured Party;
Financing Statement No. 28240001 filed on November 19, 1997 with the Pennsylvania Secretary of the Commonwealth listing Emerald as Debtor and MBC as Secured Party;

        f.    Financing Statement No. 97 6000 filed on November 19, 1997 with the Philadelphia County Prothonotary listing Emerald as Debtor and MBC as Secured Party; and

        g.    Financing Statement No. ST97-3760 filed on November 19, 1997 with the Chester County, PA Prothonotary listing Emerald as Debtor and MBC as Secured Party (collectively, "FINANCING STATEMENTS").

R4. To perfect the security interests granted by the BORROWER in the LEASE ASSIGNMENT, ASSIGNOR: (a) filed the FINANCING STATEMENTS; (b) maintained continuous possession of the original Equipment Lease Agreement made as of November 18, 1997 by and between BORROWER, as lessor, and NPR, Inc. and Holt Cargo Systems, Inc., as lessees, the Amendment to Equipment Lease Agreement made as of December 31, 1997 by and among the BORROWER, NPR, Inc. ("NPR"), Holt Cargo Systems, Inc. ("CARGO"), the ASSIGNOR, The Holt Group, Inc. ("HGI"), Holt Hauling and Warehousing Systems, Inc. ("HAULING"), Wilmington Stevedores, Inc. ("WILMINGTON"), Murphy Marine Services, Inc. ("MURPHY"), The Riverfront Development Corporation ("RIVERFRONT"), NPR Holding Corporation ("HOLDING"), NPR-Navieras Receivables, Inc. ("NAVIERAS"), and NPR S.A., Inc. ("NSI"), and the Second Amendment to Equipment Lease Agreement made as of August 26, 1998 by and among the BORROWER, NPR, CARGO, the ASSIGNOR, HGI, HAULING, WILMINGTON, MURPHY, RIVERFRONT, HOLDING, NAVIERAS, NSI, NPR S.A., Inc., San Juan International Terminals, Inc., and SJIT, Inc.(collectively, "LEASE"); and (c) obtained NPR's and CARGO's acknowledgment of the assignment of the LEASE in a Lessees' Notice, Consent, and Acknowledgment made as of November 20, 1997 ("LESSEE'S CONSENT"), and an Acknowledgment and Ratification By Lessees dated ___ August, 1998 ("LESSEE'S RATIFICATION").

R5. The NOTE, the LOAN AGREEMENT, the FIRST LOAN AMENDMENT, the SECOND LOAN AMENDMENT, the LEASE ASSIGNMENT, the MORTGAGES, the FINANCING STATEMENTS, the LESSEES' CONSENT, and the LESSEES' RATIFICATION are hereafter referred to collectively as the "ASSIGNED DOCUMENTS."

<u>**WITNESSETH:**</u>

NOW, THEREFORE, in consideration of these premises, the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1.    Recitals. The Recitals set forth above are true and accurate in every respect and are hereby incorporated into this AGREEMENT by reference.

2. <u>Assignee's Agreement To Purchase The Loans And The Loan Documents</u>. The ASSIGNEE agrees to purchase the LOAN and the ASSIGNED DOCUMENTS from the ASSIGNOR on the date of execution of this AGREEMENT, which date shall be no later than November __, 2003 ("CLOSING DEADLINE"), for the sum of: (a) Six Hundred Fifty Thousand Dollars ($650,000.00) ("CASH PORTION"); plus (b) the "SEA STAR PORTION," as defined in Section 3 (collectively, "PURCHASE PRICE"). By executing this AGREEMENT, the ASSIGNEE confirms its agreement to purchase the LOAN and the ASSIGNED DOCUMENTS from the ASSIGNOR, prior to the CLOSING DEADLINE, for a sum equal to the PURCHASE PRICE and pursuant to the other terms and conditions set forth herein.

3. <u>Sea Star Portion</u>. The BORROWER alleges that Sea Star Lines, LLC ("SEA STAR") is indebted to the BORROWER for the use of certain equipment securing payment of the LOAN ("EMERALD EQUIPMENT"). ASSIGNOR contends that all accounts, chattel paper, contract rights, documents, general intangibles, and instruments arising from any of the EMERALD EQUIPMENT, including any amounts due from SEA STAR to the BORROWER ("RENT") is ASSIGNOR'S collateral as well. ASSIGNEE agrees to remit to ASSIGNOR as additional consideration for the sale of the LOAN ASSETS twenty percent (20%) of the net amount, after deduction of reasonable attorneys' fees and other reasonable collection expenses, of any RENT collected from SEA STAR or any amount paid by SEA STAR in settlement of claims for RENT and received by ASSIGNEE ("SEA STAR PORTION"). Payments of the SEA STAR PORTION to ASSIGNOR shall be made within five (5) business days after receipt by ASSIGNEE of any payment of RENT or payment in settlement of RENT. The ASSIGNEE'S obligation to pay the SEA STAR PORTION shall not terminate on the maturity date of the PURCHASE NOTE, but shall continue for so long as any claims for RENT remain outstanding and unresolved.

4. <u>Examination Of Assigned Documents</u>. The ASSIGNEE acknowledges that it has examined, or had an opportunity to and chose not to examine, copies of each of the ASSIGNED DOCUMENTS prior to the execution of this AGREEMENT.

5. <u>Sale Of Loans And Assigned Documents To ASSIGNEE</u>. If: (i) this AGREEMENT is appropriately executed, and acknowledged by the ASSIGNEE and delivered to the ASSIGNOR; (ii) the ASSIGNEE remits to ASSIGNOR by certified check or wire transfer the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) on or before the CLOSING DEADLINE to be applied to the CASH PORTION of the PURCHASE PRICE; and (iii) the ASSIGNEE delivers a promissory note in the amount of Four Hundred Thousand Dollars ($400,000.00) in the form attached hereto as Exhibit A ("PURCHASE NOTE") to ASSIGNOR to evidence ASSIGNEE'S obligation to pay the balance of the CASH PORTION of the PURCHASE PRICE on or before the CLOSING DEADLINE, the ASSIGNOR shall be deemed to have sold, assigned, and transferred to the ASSIGNEE, without recourse, warranty, representation, or guaranty of any kind, other than as specifically provided for in Section 7 of this AGREEMENT, all of the ASSIGNOR's right, title, and interest in and to the LOAN, the ASSIGNED DOCUMENTS, all of ASSIGNOR'S existing property and interests in collateral securing the LOAN (excluding, however, ASSIGNEE'S interest in the collateral that is the subject of "PENDING SALES"

as hereafter defined) and the proceeds of such PENDING SALES), and all existing claims against the BORROWER (collectively, "LOAN ASSETS"). If, however, the ASSIGNEE fails to remit to ASSIGNOR by certified check or wire transfer the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) on or before the CLOSING DEADLINE or fails to deliver the PURCHASE NOTE on or before the CLOSING DEADLINE, then the ASSIGNOR's agreement to sell the LOAN ASSETS to the ASSIGNEE pursuant to the terms and conditions of this AGREEMENT shall be null, void, and of no further force and effect. As used herein, the term "PENDING SALES" means, collectively: (a) the sales of EMERALD EQUIPMENT listed on Exhibit B-1 in which the bill of sale or schedule thereto is dated on or before October 31, 2003, but the proceeds were received by the ASSIGNOR after October 31, 2003; and (b) the sales of EMERALD EQUIPMENT listed on Exhibit B-2 for which the ASSIGNOR received the proceeds on or before October 31, 2003, but for which the ASSIGNOR had not yet delivered certificates of title or other documents necessary to convey the EMERALD EQUIPMENT to the purchasers prior to the November 1, 2003 effective date of this AGREEMENT.

    6.    Indemnification; Expense Allocation; Sea Star Claims.

        6.1.    Sea Star Indemnification. Pursuant to an Indemnity Agreement dated as of September 20, 2002 ("SEA STAR INDEMNITY"), ASSIGNOR agreed that if any trustee appointed in the case under the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (the "BANKRUPTCY COURT") and known as "In re MUMA Services, Inc. (f/k/a Murphy Marine Services, Inc), Case Nos. 01-00926 through 01-00950 (Jointly Administered)" ("BANKRUPTCY CASE"), any party named as a defendant in any interpleader action instituted by SEA STAR in the BANKRUPTCY CASE, the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE, BORROWER, NPR, CARGO, or any party claiming through or under them (jointly and severally, "COMPETING CLAIMANTS") asserted any claim, cause of action, liability, or damages against SEA STAR relating to any COMPETING CLAIMANT'S alleged entitlement to compensation for use of EMERALD EQUIPMENT during any period for which SEA STAR had paid ASSIGNOR pursuant to the SEA STAR INDEMNITY (a "PROCEEDING"), ASSIGNOR would defend the PROCEEDING at its expense. ASSIGNOR further agreed that if the BANKRUPTCY COURT or any other court of competent jurisdiction (a "COURT") determined in a PROCEEDING that a COMPETING CLAIMANT was entitled to be compensated for use of any EMERALD EQUIPMENT for any period for which SEA STAR had paid ASSIGNOR pursuant to the SEA STAR INDEMNITY, within five (5) business days after receipt by ASSIGNOR of written demand by SEA STAR, ASSIGNOR would remit to SEA STAR by certified check, cashier's check, or wire transfer: (a) the lesser of: (i) the amount to which the COURT determined the COMPETING CLAIMANT was entitled for that period; or (ii) the amount paid by SEA STAR to ASSIGNOR pursuant to the SEA STAR INDEMNITY for use of the pertinent item or items of EMERALD EQUIPMENT during that period (the "INDEMNITY PRINCIPAL AMOUNT"); plus (b) any interest on any INDEMNITY PRINCIPAL AMOUNT that a COURT determined was due to a COMPETING CLAIMANT. ASSIGNEE agrees that only in the event that MBC is obligated to indemnify SEA STAR under the SEA STAR INDEMNITY as a result of a PROCEEDING in which the COMPETING CLAIMANT is the ASSIGNEE, EMERALD or a

successor or assign of the ASSIGNEE or EMERALD (an "EMERALD CLAIMANT"), within five (5) business days after written demand by ASSIGNOR, ASSIGNEE will remit to ASSIGNOR by certified check or wire transfer the sum of: (a) any amount due from ASSIGNOR to SEA STAR under the SEA STAR INDEMNITY; plus (b) the amount of any costs or expenses, including reasonable attorneys' fees, incurred by ASSIGNOR in defending against any claim by such EMERALD CLAIMANT or in defending any claim asserted by SEA STAR under the SEA STAR INDEMNITY arising out of the claim of such EMERALD CLAIMANT; minus (c) the amount of any SEA STAR PORTION attributable to use of the pertinent item or items of EMERALD EQUIPMENT during the period that is the subject of such EMERALD CLAIMANT'S claim, if any, that the ASSIGNEE has paid to the ASSIGNOR. For purposes of illustration, if a COURT awards a particular EMERALD CLAIMANT One Hundred Fifty Dollars ($150.00) for use of container number XXX for the period of May 1, 2001 through May 4, 2001, ASSIGNEE has collected One Hundred Dollars ($100.00) in RENT from SEA STAR, net of collection expenses, for use of that same container during the same period and has remitted Twenty Dollars ($20.00) to ASSIGNOR, within five (5) business days after demand by ASSIGNOR, ASSIGNEE shall remit to ASSIGNOR One Hundred Thirty Dollars ($130.00) plus the amount of any costs or expenses, including reasonable attorneys' fees, incurred by ASSIGNEE in defending against the claim by such EMERALD CLAIMANT or in defending any claim asserted by SEA STAR under the SEA STAR INDEMNITY arising out of the claim of such EMERALD CLAIMANT.

6.2. Miscellaneous Indemnification. The ASSIGNEE shall pay, within five (5) business days after demand by ASSIGNOR, and shall indemnify and hold the ASSIGNOR harmless against, all costs and expenses of storing, insuring, maintaining, repairing, selling, or preparing for sale any of the EMERALD EQUIPMENT, including, without limitation, charges of Greenwich Terminals, LLC, incurred on or after November 1, 2003. ASSIGNOR shall use reasonable efforts to deliver: (a) Maine registrations; or (b) certificates of title or other documents necessary to convey the EMERALD EQUIPMENT to the purchaser in any transaction listed on Exhibit B-2. If the ASSIGNOR is: (a) unable to deliver Maine registrations or certificates of title or other documents necessary to convey the EMERALD EQUIPMENT to the purchaser in any transaction listed on Exhibit B-2; or (b) is able to deliver only Maine registrations and Maine registrations are not acceptable to the purchaser, the ASSIGNEE shall, upon request of the purchaser or the ASSIGNOR, either: (a) refund to the purchaser the purchase price previously paid to the ASSIGNOR as reflected on Exhibit B-2; or (b) deliver to such purchaser certificates of title or other documents necessary to convey to the purchaser substitute EMERALD EQUIPMENT acceptable to the purchaser. The ASSIGNEE shall indemnify and hold the ASSIGNOR harmless against, any and all claims asserted against the ASSIGNOR by purchasers in transactions listed on Exhibit B-2 and all costs and expenses incurred by the ASSIGNOR in connection with such claims, including reasonable attorneys' fees.

6.3. No Competing Claim Against Sea Star. ASSIGNEE agrees not to assert any entitlement to compensation from SEA STAR for use of EMERALD EQUIPMENT during any period for which SEA STAR had paid ASSIGNOR pursuant to the SEA STAR INDEMNITY.

7.  Representations And Warranties By ASSIGNOR. The ASSIGNOR represents and warrants to the ASSIGNEE as follows:

a. According to the ASSIGNOR'S books and records, as of October 31, 2003, the amount of advanced and unpaid principal due and owing by the BORROWER in connection with the LOAN is Two Million Eight Hundred Ninety-Two Thousand Six Hundred Sixty-Two Dollars and Sixteen Cents ($2,892,662.16), the amount of late charges due is Eight Hundred Twenty-One Thousand Nine Hundred Sixty-Nine Dollars and Seventy-Three Cents ($821,969.73), and the amount of accrued and unpaid interest due and owing is Nine Hundred Fifteen Thousand Five Hundred Thirty-Two Dollars and Sixty-One Cents ($915,532.61). The interest per diem for the LOAN is Seven Hundred Thirty-Four Dollars and Fifty-Six Cents ($734.56). However, the BORROWER may make additional payments on account of the LOAN after the date of this AGREEMENT and prior to the purchase of the LOAN ASSETS by the ASSIGNEE or ASSIGNOR may receive proceeds of PENDING SALES which will affect both the principal balance due and the rate at which interest accrues thereon. Furthermore, the ASSIGNOR is holding unapplied proceeds of sale of EMERALD EQUIPMENT pending receipt and payment of bills for expenses incurred before the November 1, 2003 effective date of this AGREEMENT that are the responsibility of the ASSIGNOR under this AGREEMENT and the responsibility of the BORROWER under the ASSIGNED DOCUMENTS. Following receipt and payment of such bills, the ASSIGNOR shall report to the ASSIGNEE the amount of the remaining unapplied cash, which ASSIGNOR warrants will not exceed Ninety Thousand Dollars ($90,000.00), and that amount shall be deemed to have been received by the ASSIGNEE and applied to reduce the balance due on the LOAN. At the time of the purchase of the LOAN ASSETS by the ASSIGNEE, the ASSIGNOR shall provide the ASSIGNEE with a further representation as to the balance due on the LOAN as of the date of such representation.

b. The ASSIGNOR has good title to, and is the sole owner of, each of the LOAN ASSETS, and the ASSIGNOR has not transferred, assigned, or hypothecated its interest in any of the LOAN ASSETS except that ASSIGNOR has sold participations in the LOAN to parties who have authorized ASSIGNOR to transfer the LOAN ASSETS to the ASSIGNEE on the terms and conditions set forth in this AGREEMENT.

c. The ASSIGNOR has full power and authority to execute, deliver, and perform its obligations under this AGREEMENT and all documents executed in connection herewith, and to sell the LOAN ASSETS to the ASSIGNEE, and the officer executing and delivering this AGREEMENT and any other documents in connection herewith on behalf of the ASSIGNOR has been duly authorized to do so, and this AGREEMENT and all such documents are (or shall be, upon execution and delivery) valid and binding obligations of the ASSIGNOR, enforceable against the ASSIGNOR in accordance with their respective terms.

d. Exhibits B-1, B-2, and C are, collectively, a true, complete, and accurate generic listing of all equipment in which EMERALD granted the ASSIGNOR security interests in the LOAN

AGREEMENT that ASSIGNOR has sold or agreed to sell pursuant to Article 9 of the Uniform Commercial Code.

    e.    Exhibit D is a true, complete, and accurate list of all items of equipment in which EMERALD granted the ASSIGNOR security interests in the LOAN AGREEMENT for which ASSIGNOR had original certificates of title reflecting EMERALD as owner and the ASSIGNOR as lienholder in its possession as of October 31, 2003. Since October 31, 2003, the ASSIGNOR has relinquished or agreed to relinquish certificates of title to items of equipment listed on Exhibit D only in sale transactions, the proceeds of which will be applied to the CASH PORTION of the PURCHASE PRICE.

    8.    <u>Representations And Warranties By ASSIGNEE</u>. In addition to the representations and warranties in Sections 11 and 22 of this AGREEMENT, the ASSIGNEE represents and warrants to the ASSIGNOR as follows:

    a.    The ASSIGNEE has full power and authority to execute, deliver, and perform its obligations under this AGREEMENT and all documents executed in connection herewith, and to purchase the LOAN ASSETS from the ASSIGNOR, and this AGREEMENT and all such documents are (or shall be, upon execution and delivery) valid and binding obligations of the ASSIGNEE, enforceable against the ASSIGNEE in accordance with their respective terms.

    b.    The ASSIGNEE is represented by counsel of its choice and has exercised its own independent judgment, as determined by it to be necessary and advisable, in its decision to enter into this AGREEMENT.

    c.    The ASSIGNEE has reviewed copies of each of the ASSIGNED DOCUMENTS prior to executing this AGREEMENT or has been afforded an opportunity to review such documents and elected not to do so.

    d.    The ASSIGNEE has not relied on any representations or warranties by the ASSIGNOR regarding the enforceability of the ASSIGNED DOCUMENTS, the creditworthiness of the BORROWER, the existence, nature, or value of any collateral for the LOAN, the existence, validity, or priority of any liens securing the LOAN, or any other matter not specifically set forth in Section 5 above.

    e.    The ASSIGNEE (either alone or with the ASSIGNEE's attorneys, accountants, or other advisors) possesses the requisite business and investment knowledge and experience to evaluate the potential risks and merits of its purchase of the LOAN ASSETS.

    f.    The ASSIGNEE has sufficient financial ability and net worth to bear the economic risk of its investment in the LOAN ASSETS for an indefinite period of time and to withstand a total loss of such investment.

   g. The ASSIGNEE is purchasing the LOAN ASSETS for his own account and not with a view toward transferring the LOAN ASSETS to any other party.

   h. The ASSIGNEE acknowledges that none of the LOAN ASSETS has been registered under any securities laws and agrees that he will not sell or transfer any of the LOAN ASSETS except in accordance with any applicable securities laws or in a transaction exempt from all securities laws.

  9. Closing. The parties hereto agree that they shall do the following things in the following order:

   a. Prior to the CLOSING DEADLINE, the ASSIGNEE shall execute and deliver the original AGREEMENT to the ASSIGNOR;

   b. The ASSIGNEE shall pay the CASH PORTION of the PURCHASE PRICE by remitting the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) to ASSIGNOR by certified check or wire transfer and delivering to the ASSIGNOR the PURCHASE NOTE;

   c. The ASSIGNEE shall then execute and deliver to the ASSIGNOR a Security Agreement in the form attached hereto as Exhibit "E" and incorporated by reference herein and such other documents as the ASSIGNOR may require to secure the ASSIGNEE'S obligations to the ASSIGNOR under the PURCHASE NOTE and authorize ASSIGNOR to file Financing Statements in the form attached hereto as Exhibit "F" and incorporated by reference herein;

   d. The ASSIGNOR shall execute and deliver to the ASSIGNEE, on or before the CLOSING DEADLINE, a fully executed copy of the AGREEMENT and the original NOTE endorsed as follows:

> "For value received, pay to the order of Storage Transfer, LLC, without recourse, representation, warranty, or guaranty of any kind, other than as set forth in Section 7 of the Loan Sale and Assignment Agreement dated as of November 1, 2003 by and between MBC Leasing Corp., a Maryland corporation, and Storage Transfer, LLC."

> MBC LEASING CORP.,
> A Maryland Corporation
>
> By: _____(SEAL)
>   Name: _____
>   Title: _____
>   Date: _____

  e. The ASSIGNOR shall execute and deliver to the ASSIGNEE such additional documents as are reasonably necessary to transfer ownership of the LOAN ASSETS to the ASSIGNEE, including UCC-3 assignments of the FINANCING STATEMENTS, provided, however, that nothing in this AGREEMENT shall require the ASSIGNOR to release its lien on any piece of EMERALD EQUIPMENT that is titled except upon: (a) payment in full of the CASH PORTION of the PURCHASE PRICE; (b) sale of such EMERALD EQUIPMENT by the ASSIGNEE; or (c) (i) sale of such EMERALD EQUIPMENT by the BORROWER; and (ii) the written request of the ASSIGNEE.

  f. The ASSIGNOR shall deliver to the ASSIGNEE all executed originals of the ASSIGNED DOCUMENTS; and

  g. The ASSIGNEE shall then execute and deliver to the ASSIGNOR a fully executed original Acknowledgment of Receipt of Original Loan Documents.

The occurrence of all of the events listed in this Section 9 shall be referred to as the "CLOSING."

  10. <u>Agreement to Pay Assignor's Expenses</u>. The ASSIGNEE shall pay all out-of-pocket expenses or costs incurred by the ASSIGNOR arising out of, pertaining to, or in any way connected with this AGREEMENT, any documents executed in connection herewith or transactions hereunder, or the purchase of the ASSIGNED DOCUMENTS and the LOAN by the ASSIGNEE including, without limitation, attorneys' fees and expenses incurred by the ASSIGNOR in obtaining advice or the services of its attorneys with respect to the structuring, drafting, negotiating, reviewing, amending, terminating, enforcing or defending of this AGREEMENT, or any portion hereof or any agreement or matter related hereto.

  11. <u>No Brokerage Fee</u>. The ASSIGNOR and the ASSIGNEE represent and warrant to one another that they have not employed the services of any broker or agent in connection with this transaction and that neither has any knowledge of any commission payable as a result this transaction.

  12. <u>Notices</u>. Any notice required or permitted by or in connection with this AGREEMENT shall be in writing and shall be made by facsimile (confirmed on the date the facsimile is sent by one of the other methods of giving notice provided for in this Section) or by hand delivery, by Federal Express, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate addresses set forth below or to such other address as may be hereafter specified by written notice by the respective parties. Notice shall be considered given as of the date of the facsimile or the hand delivery, one (1) calendar day after delivery to Federal Express or similar overnight delivery service, or three (3) calendar days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was sent as provided herein. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

If to the ASSIGNOR:

    MBC LEASING CORP.
    2 Hopkins Plaza, 5th Floor
    Baltimore, Maryland 21201
    Attention: Scott H. Krieger

If to the ASSIGNEE:

    STORAGE TRANSFER, LLC
    7900 Old York Road, A12B
    Elkins Park, Pennsylvania 19027

13.    <u>Waivers</u>. No waiver or indulgence by the ASSIGNOR or the ASSIGNEE at any time and from time to time shall constitute, unless specifically so expressed by the that party in writing, a future waiver of performance or exact performance by the other party.

14.    <u>No Third Party Beneficiary Rights</u>. No person not a party to this AGREEMENT shall have any benefit hereunder nor have third party beneficiary rights as a result of this AGREEMENT.

15.    <u>Binding Obligation</u>. This AGREEMENT shall be binding upon the parties hereto and their respective heirs, personal representatives, successors, and assigns.

16.    <u>Final Agreement</u>. This AGREEMENT and the various documents executed and delivered by the ASSIGNOR or the ASSIGNEE pursuant to this AGREEMENT contain the final and entire agreement and understanding of the parties with respect to the matters addressed herein or therein, and any terms and conditions not set forth in this AGREEMENT or the various documents executed and delivered by the ASSIGNOR or the ASSIGNEE pursuant to this AGREEMENT are not a part of the agreement and understanding of the parties hereto.

17.    <u>Amendment</u>. This AGREEMENT may be amended or altered only by a writing signed by the party to be bound by the change or alteration.

18.    <u>Choice Of Law</u>. The laws of the State of Maryland (excluding, however, conflict of law principles) shall govern and be applied to determine all issues relating to this AGREEMENT and the rights and obligations of the parties hereto, including the validity, construction, interpretation, and enforceability of this AGREEMENT and its various provisions and the consequences and legal effect of all transactions and events which resulted in the execution of this AGREEMENT or which occurred or were to occur as a direct or indirect result of this AGREEMENT having been executed.

19.    <u>Invalidity Of Any Part</u>. If any provision or part of any provision of this AGREEMENT shall

for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this AGREEMENT, and this AGREEMENT shall be construed as if such invalid, illegal, or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality, or unenforceability.

20.    Time. Time is of the essence with respect to this AGREEMENT and the terms and conditions hereof.

21.    Tense, Gender, Defined Terms, Captions, Effective Dates, Execution in Counterparts and Via Facsimile; Miscellaneous. As used herein, the plural shall refer to and include the singular, and the singular the plural, and the use of any gender shall include and refer to any other gender. All defined terms are completely capitalized throughout this AGREEMENT. All captions are for the purpose of convenience only. This AGREEMENT may be executed and delivered in counterparts, and signed counterparts may be delivered via facsimile, with all executed counterparts delivered via facsimile to be deemed to have the same force and effect as if bearing original signatures.

22.    Effect of Bankruptcy of the Borrower and Lessees. The ASSIGNEE acknowledges that he is aware that the BORROWER is the subject of a case under Chapter 11 of the United States Bankruptcy Code in the BANKRUPTCY COURT ("EMERALD CASE") and that NPR, CARGO, HGI, HAULING, WILMINGTON, MURPHY, RIVERFRONT, HOLDING, NAVIERAS, NSI, NPR S.A., Inc., San Juan International Terminals, Inc., and SJIT, Inc. are the subject of the BANKRUPTCY CASE. The ASSIGNEE further acknowledges that, as a result of the EMERALD CASE and the BANKRUPTCY CASE (collectively, "CASES"), some or all of the rights and remedies afforded by the ASSIGNED DOCUMENTS may be extinguished and that deadlines may be or may have been established in the BANKRUPTCY CASES for the filing of Proofs of Claim, the filing of Complaints seeking denial of discharge or a determination of dischargeability of debts, or other matters which, if not met, also may extinguish or impair rights and remedies afforded by the ASSIGNED DOCUMENTS. The ASSIGNEE acknowledges and agree that the ASSIGNOR has made no representations or warranties of any kind with respect to: (a) the ability of the ASSIGNEE to enforce any rights or remedies afforded by the ASSIGNED DOCUMENTS in the CASES or as a consequence thereof; (b) any action or failure to act by the ASSIGNOR in the CASES or as a consequence thereof; or (c) the likely effect of the CASES on the LOAN ASSETS. The ASSIGNEE has had the opportunity to conduct such investigations and examinations as he deems appropriate to assess the effect of the CASES on the LOAN ASSETS and the transactions contemplated in this AGREEMENT and agrees that the CASES shall not impair or affect his obligations to the ASSIGNOR under this AGREEMENT or any related document or agreement. The ASSIGNOR agrees that, notwithstanding the transfer of the ASSIGNED DOCUMENTS to the ASSIGNEE, the ASSIGNOR shall remain responsible for performing, and shall perform, any obligation to report or account to the debtor-in-possession or trustee, as applicable, in the CASES for any activity relating to the ASSIGNED DOCUMENTS or the collateral securing EMERALD'S obligations thereunder that occurred prior to November 1, 2003. The ASSIGNEE agrees that it shall be responsible for performing, and shall perform, any obligation to report or account to the debtor-in-possession or trustee,

as applicable, in the CASES for any activity relating to the ASSIGNED DOCUMENTS or the collateral securing EMERALD'S obligations thereunder that occurs on or after November 1, 2003 for which the ASSIGNOR otherwise would have been responsible had it continued to hold the ASSIGNED DOCUMENTS.

23. Release. The ASSIGNEE releases, acquits, exonerates and forever discharges the ASSIGNOR, all of the INDEMNIFIED LENDER PARTIES from any and all claims, causes of action, suits and damages (including claims for attorneys' fees) which the ASSIGNEE, jointly or severally, ever had or now have against any or all of the INDEMNIFIED LENDER PARTIES, jointly or severally, including, without limitation, all claims arising out of or related to the LOAN, the ASSIGNED DOCUMENTS, the administration thereof, or any acts or omissions of the ASSIGNOR relating thereto.

24. Waiver Of Trial By Jury. Each party to this AGREEMENT agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by or against either party hereto or any successor or assign of any party on or with respect to this AGREEMENT or any of the LOAN ASSETS or which in any way relates, directly or indirectly, to the sale of the LOAN ASSETS (or any of them) or any event, transaction, or occurrence arising out of or in any way connected with the sale of the LOAN ASSETS (or any of them), or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. EACH PARTY HERETO EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING. The ASSIGNOR and the ASSIGNEE acknowledge and agree that this provision is a specific and material aspect of the agreement among the parties hereto and that none of the parties hereto would enter into the transactions contemplated by this AGREEMENT if this provision were not part of their agreement.

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT under seal as of date first above written.

WITNESS/ATTEST:        ASSIGNOR:

                       MBC LEASING CORP.,
                       A Maryland Corporation

*Shirley Lee*          By: _____ (SEAL)
                       Name: Scott H. Krieger
                       Title: Treasurer / Asst Sec.

ASSIGNEE:

STORAGE TRANSFER, LLC,
A Pennsylvania Limited Liability Company

By: _____ (SEAL)
Name: _____
Title: _____

## ACKNOWLEDGMENTS

STATE OF MARYLAND, CITY/COUNTY OF _Baltimore_, TO WIT:

I HEREBY CERTIFY that on this _15th_ day of _December_, 2003, before me, the undersigned Notary Public of the State of Maryland, personally appeared _Scott H. Kriger_, and acknowledged himself to be a _Treas/Asst. Sec._, of MBC LEASING CORP., a Maryland corporation, and that he, as such _Treas/Asst Sec_ being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MBC LEASING CORP. by himself as _Treas/Asst Sec_.

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:
_5-1-07_

STATE OF __Pa__, CITY/COUNTY OF __Montgomery__, TO WIT:

I HEREBY CERTIFY that on this __4th__ day of __December__, 2003, before me, the undersigned Notary Public of the State of _____, personally appeared _____, and acknowledged himself to be a _____, of STORAGE TRANSFER, LLC, a Pennsylvania limited liability company, and that he, as such _____, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of STORAGE TRANSFER, LLC by himself as _____.

IN WITNESS MY Hand and Notarial Seal.

_____(SEAL)
NOTARY PUBLIC

My Commission Expires: _Miriam Baroff_

Notarial Seal
Miriam Baroff, Notary Public
Jenkintown Boro, Montgomery County
My Commission Expires Sept. 9, 2004
Member, Pennsylvania Association of Notaries

## Exhibit B-1

| Buyer | Bill of Sale Date | Funds Received | Amount Received |
|---|---|---|---|
| Jose Lorenzame | October 16, 2003 | November 10, 2003 | $650.00 |
| Jorge Diaz | October 22, 2003 | November 10, 2003 | $1,200.00 |
| Green Hills Spring Water | October 9, 2003 | November 10, 2003 | $2,850.00 |
| J. Maqueda & Associates, Inc. | October 8, 2003 | November 10, 2003 | $3,950.00 |
| J. Maqueda & Associates, Inc. | October 17, 2003 | November 10, 2003 | $13,200.00 |
| | | November 24, 2003 | $100.00 |
| Action Trophy | October 9, 2003 | November 24, 2003 | $400.00 |
| H-K Orintal | ?/ck dated 10/30/03 | November 24, 2003 | $1,500.00 |