**EXHIBIT B**

## INDEMNITY AGREEMENT

This Indemnity Agreement ("AGREEMENT") is made of this 28th day of September, 2002 by and between MBC LEASING CORP., a Maryland corporation ("MBC"), and SEA STAR LINE, LLC, a Delaware limited liability company ("SEA STAR").

## EXPLANATORY STATEMENT

EMERALD EQUIPMENT LEASING, INC. ("EMERALD") leased 426 twenty foot steel dry van containers, 990 Onan refrigerator "gensets," 910 forty foot steel dry van containers, 1,457 forty foot steel high cube dry van containers, 945 forty-five foot steel dry van containers, 396 forty-five foot aluminum dry van containers, 972 refrigerated containers, and 6,741 chassis (the "EMERALD EQUIPMENT") to NPR, INC. and HOLT CARGO SYSTEMS, INC. ("HOLT CARGO") pursuant to an Equipment Lease Agreement made as of November 18, 1997.

MBC leased 700 forty foot dry van containers and 283 forty-five foot dry van containers (the "MBC EQUIPMENT") to NPR, INC. and HOLT CARGO pursuant to an Equipment Lease Agreement dated as of March 18, 1999.

EMERALD, NPR, INC., and HOLT CARGO are all the subject of proceedings under the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (the "BANKRUPTCY COURT") and known as "In re MUMA Services, Inc. (f/k/a Murphy Marine Services, Inc), Case Nos. 01-00926 through 01-00950 (Jointly Administered)" (the "BANKRUPTCY CASE").

On or about April 27, 2002, pursuant to an Order entered by the BANKRUPTCY COURT in the BANKRUPTCY CASE, SEA STAR purchased certain assets of NPR, INC. and HOLT CARGO, which assets did not include any of the EMERALD EQUIPMENT or the MBC EQUIPMENT. At the time that SEA STAR purchased assets, NPR, INC. and HOLT CARGO delivered certain of the EMERALD EQUIPMENT and the MBC EQUIPMENT into the possession of SEA STAR.

MBC has demanded that SEA STAR pay MBC for the use by SEA STAR of any EMERALD EQUIPMENT or MBC EQUIPMENT on or after April 27, 2002. Although SEA STAR is willing to pay for the use of such of the EMERALD EQUIPMENT and the MBC EQUIPMENT as SEA STAR has used on or after April 27, 2002 at the rates specified below, SEA STAR is unwilling to pay MBC unless it is assured that it will not be required to pay for the same use by any trustee appointed in the BANKRUPTCY CASE, any party named as a defendant in any interpleader action instituted by SEA STAR in the BANKRUPTCY CASE, the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE (the "COMMITTEE"), EMERALD, NPR, INC., HOLT CARGO, or any party claiming through or under them (jointly and severally, "COMPETING

1


EXHIBIT "E"

CLAIMANTS"). MBC is willing to indemnify SEA STAR against claims by COMPETING CLAIMANTS on the terms and conditions set forth in this AGREEMENT to induce SEA STAR to pay MBC for the use of the EMERALD EQUIPMENT and the MBC EQUIPMENT on or after April 27, 2002 immediately.

NOW, THEREFORE, in consideration of the premises, the parties hereto agree as follows:

1. <u>Agreement to Pay for Use of Equipment</u>. Upon execution of this AGREEMENT, SEA STAR will remit to MBC by certified check, cashier's check, or wire transfer: (a) for each item of the EMERALD EQUIPMENT used during the period of April 27, 2002 through and including July 31, 2002, the amount determined by multiplying the applicable daily rate specified on "Equipment Schedule A" attached hereto and incorporated herein (the "EMERALD SCHEDULE") by the number of days during that period in which such item of EMERALD EQUIPMENT was used; plus (b) for each item of the MBC EQUIPMENT used during the period of April 27, 2002 through and including July 31, 2002, the amount determined by multiplying the applicable daily rate specified on "Equipment Schedule B" attached hereto and incorporated herein (the "MBC SCHEDULE") by the number of days during that period in which such item of MBC EQUIPMENT was used after deduction of such reasonable charges as are due to SEA STAR for storage and handling of EMERALD EQUIPMENT and MBC EQUIPMENT. Beginning on August 31, 2002 and continuing on the last day of each month thereafter, SEA STAR shall remit to MBC for each item of EMERALD EQUIPMENT in SEA STAR'S possession during that month or portion thereof compensation at the daily rates specified on EMERALD SCHEDULE from the first day of the month through and including the earliest of: (a) the day on which SEA STAR purchases such item and pays the purchase price therefor; (b) the date on which SEA STAR makes such item available for removal from SEA STAR'S possession by MBC; or (c) the last day of that month after deduction of such reasonable charges as are due to SEA STAR for storage and handling of EMERALD EQUIPMENT. Beginning on August 31, 2002 and continuing on the last day of each month thereafter, SEA STAR shall remit to MBC for each item of MBC EQUIPMENT in SEA STAR'S possession during that month or portion thereof compensation at the daily rates specified on the MBC SCHEDULE from the first day of the month through and including the earliest of: (a) the day on which SEA STAR purchases such item and pays the purchase price therefor; (b) the date on which SEA STAR makes such item available for removal from SEA STAR'S possession by MBC; or (c) the last day of that month after deduction of such reasonable charges as are due to SEA STAR for storage and handling of MBC EQUIPMENT.

2. <u>Waiver of Further Claims By MBC for Use of Equipment</u>. MBC acknowledges and agrees that the compensation rates set forth in "Equipment Schedule A" and "Equipment Schedule B" represent fair and reasonable compensation for the use of the EMERALD EQUIPMENT and the MBC EQUIPMENT by SEA STAR and that provided SEA STAR pays the amounts specified in Section 1 of this AGREEMENT for each item

2

of EMERALD EQUIPMENT and MBC EQUIPMENT that it has used during the applicable period when and as due, subject to deductions specified in Section 1, MBC will assert no further claims against SEA STAR for compensation for the use of the EMERALD EQUIPMENT or the MBC EQUIPMENT by SEA STAR.

3. <u>Effect of Agreement On Sea Star's Right to Possession</u>. SEA STAR acknowledges and agrees that nothing in this AGREEMENT is intended to or shall confer on SEA STAR the right to possess or use any EMERALD EQUIPMENT or MBC EQUIPMENT and that MBC reserves such rights, if any, as MBC may have to take possession of the EMERALD EQUIPMENT and the MBC EQUIPMENT. MBC acknowledges and agrees that nothing in this AGREEMENT shall constitute an acknowledgment by SEA STAR of MBC'S right to take possession of the EMERALD EQUIPMENT and the MBC EQUIPMENT. Notwithstanding the foregoing, MBC acknowledges and agrees that if SEA STAR enters into a Rental Agreement with EMERALD which is approved by MBC, in writing, MBC shall not interfere with SEA STAR'S right to use or possession of any EMERALD EQUIPMENT that is the subject of such agreement so long as SEA STAR complies with the terms and conditions of such agreement. MBC acknowledges and agrees that if SEA STAR and MBC enter into an Equipment Lease Agreement for the MBC EQUIPMENT or any portion thereof, MBC will not interfere with SEA STAR'S use or possession of any MBC EQUIPMENT that is the subject of such Equipment Lease Agreement so long as SEA STAR complies with the terms and conditions of such Equipment Lease Agreement. Furthermore, MBC shall not interfere with SEA STAR'S right to use or possession of any EMERALD EQUIPMENT or MBC EQUIPMENT purchased by SEA STAR from MBC or from EMERALD with MBC'S consent.

4. <u>Agreement to Indemnify and Defend</u>. Provided that SEA STAR provides MBC with prompt written notice of any claims, causes of action, liabilities, or damages asserted against SEA STAR by any COMPETING CLAIMANT relating to any COMPETING CLAIMANT'S alleged entitlement to compensation for use of EMERALD EQUIPMENT or MBC EQUIPMENT during any period for which SEA STAR has paid MBC pursuant to this AGREEMENT (a "PROCEEDING"), MBC will defend the PROCEEDING at its expense. MBC acknowledges and agrees that if the BANKRUPTCY COURT or any other court of competent jurisdiction (a "COURT") determines in a PROCEEDING that a COMPETING CLAIMANT is entitled to be compensated for use of any EMERALD EQUIPMENT or MBC EQUIPMENT for any period for which SEA STAR has paid MBC pursuant to this AGREEMENT, within five (5) business days after receipt by MBC of written demand by SEA STAR, MBC will remit to SEA STAR by certified check, cashier's check, or wire transfer the lesser of: (a) the amount to which the COURT determined the COMPETING CLAIMANT is entitled for that period; or (b) the amount, net of deductions specified in Section 1, paid by SEA STAR to MBC pursuant to this AGREEMENT for use of the pertinent item or items of EMERALD EQUIPMENT and/or MBC EQUIPMENT during that period (the "INDEMNITY PRINCIPAL AMOUNT"). In addition, if the COURT orders SEA STAR to pay interest on any amount that it determines is due to a COMPETING CLAIMANT,

MBC shall remit to SEA STAR interest on the INDEMNITY PRINCIPAL AMOUNT calculated at the annual rate at which SEA STAR'S obligation to pay interest is to be calculated under the terms of the COURT'S order. Each party agrees to give the other party written notice of any proceeding before a COURT in which a COMPETING CLAIMANT is asserting a claim for compensation for use of any EMERALD EQUIPMENT and/or MBC EQUIPMENT by SEA STAR as soon as practicable after said party receives notice of such proceeding.

5. <u>Remedy of Sea Star In Event of Breach</u>. MBC acknowledges and agrees that if it fails to remit to SEA STAR any amount due under this AGREEMENT when and as due, interest shall accrue on the unpaid amount at an annual rate of ten percent (10%) from the date payment was due hereunder until the date of payment and that, in the event SEA STAR retains counsel to enforce rights and remedies against MBC as a result of MBC'S breach of this AGREEMENT, SEA STAR shall be entitled to recover from MBC in addition to all other amounts due hereunder all reasonable attorneys' fees and expenses incurred by SEA STAR as a result of MBC's breach.

6. <u>Amendment</u>. This AGREEMENT shall not be amended changed or modified except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

7. <u>Governing Law</u>. This AGREEMENT shall be governed by and construed in accordance with the laws of the State of Delaware.

8. <u>Counterparts</u>. This AGREEMENT may be executed in counterparts, all of which when taken together, shall constitute one and the same AGREEMENT.

9. <u>Headings</u>. The headings in this AGREEMENT are solely for convenience and are not intended to define, limit, or describe the scope of this AGREEMENT.

10. <u>Waiver of Jury Trial</u>. The parties hereto agree that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by any party to this AGREEMENT, or any of their successors or assigns, on or with respect to this AGREEMENT or which in any way relates, directly or indirectly, to the obligations of any of the parties hereto under this AGREEMENT, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. **THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDINGS.** The parties acknowledge and agree that this provision is a specific and material aspect of the agreement between the parties and that the parties would not enter into this AGREEMENT if this provision, or any other provision of this AGREEMENT, were not contained herein.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT as of the date first above written with the specific intention of creating a document under seal.

| WITNESS/ATTEST: | MBC: |
|---|---|
| | MBC LEASING CORP., <br> A Maryland Corporation |
| *Jennifer Marshall* | By: _____(SEAL)<br>Scott H. Krieger,<br>Treasurer and Assistant Secretary |
| | **SEA STAR:** |
| | SEA STAR LINE, LLC,<br>A _Delaware_ Limited Liability Company |
| *Philip Bates* | By: _____(SEAL)<br>Name: PHILIP V. BATES<br>Title: SVP Operations |

## ACKNOWLEDGEMENTS

STATE OF MARYLAND, CITY/COUNTY OF _Baltimore_, TO WIT:

I HEREBY CERTIFY that on this _20th_ day of _September_, 2002, before me, the undersigned Notary Public of the State of Maryland, personally appeared Scott H. Krieger, and acknowledged himself to be a Treasurer and Assistant Secretary of MBC LEASING CORP., a Maryland corporation, and that he, as such Treasurer and Assistant Secretary, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MBC LEASING CORP., by himself as Treasurer and Assistant Secretary.

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:
_5-5-03_

(Seal: LAURA D. RUTHERFORD, NOTARY PUBLIC, BALTIMORE COUNTY, MD.)

STATE OF FLORIDA, COUNTY OF DUVAL, TO WIT:

I HEREBY CERTIFY that on this _3_ day of _October_, 2002, before me, the undersigned Notary Public of the State and subdivision aforesaid, personally appeared _Philip V. Bates_, and acknowledged himself to be the _SVP Operations_ of SEA STAR LINE, LLC, a Delaware limited liability company, and that he, as such _SVP Operations_ being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of SEA STAR LINE, LLC, by himself as _SVP Operations_.

IN WITNESS MY Hand and Notarial Seal.

_Karen Nedd_ (SEAL)
NOTARY PUBLIC

My Commission Expires:
_8/25/03_

```
KAREN NEDD
Notary Public - State of Florida
My Commission Expires Aug 25, 2003
Commission # CC866224
```

6

## EQUIPMENT SCHEDULE A

EMERALD EQUIPMENT LEASING, INC.

| EQUIPMENT TYPE | DAILY LEASE RATE | DAMAGE EXCLUSION | STIPULATED LOSS VALUE |
|---|---|---|---|
| 20' DV | $1.00 | $285.00 | $1,000.00 |
| 40' DV | $1.25 | $1,200.00 | $1,000.00 |
| 40' HV | $1.50 | $800.00 | $1,000.00 |
| 45' HV | $2.00 | $800.00 | $1,000.00 |
| 40' RV | $8.00 | $16,480.00 | $4,000.00 |
| 20' CH | $2.20 | $640.00 | $2,200.00 |
| 40' CH | $2.20 | $640.00 | $2,200.00 |
| 45' CH | $2.40 | $640.00 | $2,200.00 |
| Gen Sets | $4.50 | $640.00 | $2,200.00 |

19