UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,

      Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

      Defendant,

-vs-

SEA STAR LINE, LLC,

      Counter-Defendant.

_____/

Civil Action No. 05-CV-245-JJF

## SEA STAR LINE, LLC'S REPLY TO EMERALD'S RESPONSE TO OBJECTIONS AND MOTION TO SET ASIDE MAGISTRATE'S MEMORANDUM ORDER

That Emerald Equipment Leasing, Inc. ("EEL") would propound the allegations and accusations against Sea Star Line, LLC ("SSL") in its Response after the Rule 30(b)(6) deposition of Storage Transfer, Inc. ("Storage") is ironic. On the day EEL alleged that SSL filed a "declaratory judgment action" in the Middle District of Florida "rather than respond to Emerald's request to set up a meeting at the Sea Star offices to examine Sea Star's records" [D.I. 170 at 1]. Storage's designated representative identified a February 25, 2004 letter, in which EEL's attorney wrote: "Emerald currently intends to prosecute certain substantial claims against Sea Star Lines, LLC." D.I.

149 Ex. "B"; <u>Storage Deposition</u> Ex. S.T.-10. Moreover, EEL's Response fails to mention that on May 27, 2004, the District of Delaware bankruptcy court repudiated arguments resurrected in EEL's Response – *i.e.*, SSL's filing of its Complaint was improper. Applying the first-filed rule, the court dismissed the adversary proceeding filed by EEL. D.I. 24-2 at 4-5.[1]

Contrary to EEL's contention, discovery from MBC Leasing Corp. ("MBC") and Storage reveals that the dispute is not "still the same." D.I. 170 at 2. The MBC-Storage Loan Sale and Assignment Agreement produced by MBC expressly proscribes assertion of "any entitlement to compensation from SEA STAR for use of EMERALD EQUIPMENT during any period in which SEA STAR has paid ASSIGNOR pursuant to the SEA STAR INDEMNITY." D.I. 149 Ex. "C" at 5, ¶ 6.3; <u>Storage Deposition</u> Ex. S.T.-2. Furthermore, letters from EEL's attorneys to Storage disclose that any "carveout" in favor of EEL is subject to carveouts in favor of EEL's attorneys, as well as "expenses or other amounts disbursed to third parties." <u>Storage Deposition</u> Exs. S.T.-10, 11, 12.[2] According to Lorraine Robins, Storage's "sole member", expenses will encompass not only amounts paid to third parties but also her salary, which she has not determined. <u>Storage Deposition</u>. MBC also has moved for allowance and payment of administrative priority claims in the NPR bankruptcy proceeding. <u>Storage Deposition</u> Ex. S.T.-14.[3] Filed in January 2003, MBC's motion ostensibly covers "continued use of the Sea Star Emerald Equipment" through June 11, 2002. <u>Storage Deposition</u> Ex. S.T.-14 at 14-16.

---

[1] The Transcript is attached hereto as Ex. E.

[2] These deposition exhibits are attached thereto as Ex. A, B and C.

[3] Attached hereto as Ex. D.

1.     **<u>Law of Case, Local Rules.</u>**

The August 23, 2007 Order denied EEL's Motion to Compel Sea Star Line's Responses to Certain Interrogatories (D.I. 114) and Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115) without prejudice. D.I. 130. The Court's Order constitutes the law of the case, precluding any Magistrate discretion to accept, consider, and rule on any "renewed Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115)...and Motion to Compel Sea Star Line's Responses to Certain Interrogatories (D.I. 114)". D.I. 160 at 2. EEL acknowledges "the renewal of the discovery motions by Emerald [was] not raised by a formal written motion" [D.I. 170 at 5]; and this Court had confirmed on November 1, 2007 that EEL's October 24, 2007 letter (D.I. 143) was a "report," not a motion. Hearing Tr. 6 (Nov. 1, 2007). In noting that "[b]y letter dated October 24, 2007 (D.I. 143)," EEL renewed its "Documents Motion and Interrogatory Motion" and that "the motions have been properly renewed" [D.I. 160 at 2 n.2], the Magistrate clearly erred.

Assuming *arguendo* that the Magistrate would have authority to depart from applicable Local Rules in limited situations, the Memorandum Order articulates no rationale for disregarding the Court's statement that EEL's October 24, 2007 letter was a report, not a motion, and does not explain the intimations that its action has not unfairly prejudiced SSL and advances the "interests of justice." The Magistrate was not entitled to second-guess and overrule this Court's prior rulings. The Memorandum Order contravenes not only the August 23, 2007 Order but also applicable Local Rules, is contrary to law, and is clearly erroneous. *See* D.I. 165 at 3-4. To aver without legal or factual support that "[t]he renewed discovery motions were clearly well within the Magistrate's authority to hear and determine" [D.I. 170 at 5] is no response.

2. **Threshold, Standing.**

The MBC-Storage Loan Sale and Assignment Agreement and the other documents cited above speak for themselves. Indeed, EEL concedes that "a narrow literal reading of the cited language [paragraph 6.3 of the Loan Agreement], if read in a total vacuum unrelated to the facts in this case may yield the interpretation Sea Star now alleges." D.I. 170 at 6; *see* D.I. 165 at 6-8. Attempting to argue that "the language cited by Sea Star clearly was meant not as Sea Star asserts" [D.I. 170 at 6], EEL must import non-existent additional wording into the clear and unambiguous provision. EEL also relies on the separate MBC-Sea Star Indemnity Agreement dated September 20, 2002, to which neither Storage nor EEL was a party. EEL disregards paragraph 6.1 of the Loan Sale and Assignment Agreement, specifically relating to Storage obligations for SSL claims against MBC under the Indemnity Agreement – *i.e.*, "for Sea Star's use of the Emerald equipment for which Sea Star already paid MBC." D.I. 170 at 6 (underlining in original).

Again, EEL's utilization of parol evidence in an effort to alter agreements is impermissible. *See* D.I. 75 at 13-14. EEL's Response furnishes no factual or legal substantiation for inapplicability of the contractual prohibition against "assert[ing] any entitlement to compensation from SEA STAR for use of EMERALD EQUIPMENT during any period in which SEA STAR has paid ASSIGNOR pursuant to the SEA STAR INDEMNITY." D.I. 149 Ex. "C" at 5, ¶ 6.3. As the decisions cited by Sea Star confirm, EEL cannot be a real party in interest in regard to claims within the purview of paragraph 6.3 of the Loan Sale and Assignment Agreement under Maryland law, which governs the Loan Sale and Assignment Agreement and the Equipment Rental Agreement. D.I. 165 at 9. Whether or not some other party might have a legal interest in a claim against SSL for equipment use is immaterial and cannot buttress EEL's position. *See, e.g., In re ANC Rental Corp.,*

278 B.R. 714, 719 (Bankr. D. Del. 2002).

3. **Production, Response Requirements.**

With respect to the discovery test, the Court informed EEL's counsel: "I'm expecting to get a dramatic result from this effort by you on a vendor. I'm expecting to see, like, a 50 percent deviation." D.I. 131 at 24. After EEL's attorney alleged that Baxter-produced documents represented "a 42% discrepancy between Sea Star's actual use of Emerald equipment and its reported use of that equipment on its self-billing reports" [D.I. 143 at 2], the Court issued a limited reference Order. D.I. 142. Whether the "34% discrepancy" in the May 2002-September 2002 self-billing reports is material and is a significant deviation are issues for this Court to resolve. *See* D.I. 170 at 9.

If discovery as to equipment use remains relevant, SSL reiterates that the following requirements imposed on SSL by the Magistrate are contrary to law: Preparing lists and producing copies of documents described in the Memorandum Order [D.I. 160 at 6-7]; responding Interrogatory No. 1 "[a]s to each piece of Emerald [e]quipment for which Emerald has made a claim as alleged in the Counterclaim" after "Emerald assured the Court at the hearing that Sea Star has such a list" specifying "which pieces of equipment are at issue in Emerald's counterclaim..." [D.I. 160 at 9]; "narrowing the time frame" for compliance. Furthermore, EEL does not purport to explain how SSL can respond to Interrogatory No. 1, after Storage's representative admitted that Storage and EEL have continued to revise the claim schedules referenced in the Amended Counterclaim. *See* D.I. 165 at 10-13; D.I. 170 at 12. Apparently EEL has no answers.

4. **Vessel Manifests.**

Although EEL does not dispute that SSL long ago produced approximately 12,000

pages of its loading guides/equipment manifests, listing not only loaded but also empty cargo equipment, and that these documents were subjects of deposition testimony in December 2004 [D.I. 165 at 13], EEL continues to demand "these, what we call, original manifests. They are official documents." D.I. 158 at 61. Moreover, EEL's attorney complained to the Magistrate that 12,000 Bate-numbered pages comprising "loading reports or...equipment manifests" produced by SSL "are not the official original manifests that we're talking about that get filed with customs." D.I. 158 at 73. Manifestly EEL never has accepted any SSL "procedure to allay its concerns," such as its loading guides/equipment manifests. D.I. 170 at 10.

The conclusion that EEL has a private right of action to discover vessel cargo manifests filed with the federal government pursuant to 19 U.S.C. §1431 and 19 C.F.R. §103.31 contravenes canons of statutory construction and regulatory requirements for disclosure. D.I. 165 at 13-15. Neither the federal statutes nor the federal regulations support the Magistrate's position. Section 1431 specifies the vessel manifest information available for public disclosure and provides for regulation by the Secretary of the Treasury. 19 U.S.C. §1431(c), (d). Regulation subsections 103.31(a) and (c) identify categories of persons who may examine vessel manifests; the regulation promulgates procedures for examining and obtaining limited information from vessel manifests. The Magistrate has identified no statute that would give EEL a private cause of action to obtain the vessel manifests. *E.g., Swank v. Carnes,* 856 F.2d 1481, 1483 (11 Cir. 1988).

To reiterate, the assertion that "Sea Star [has not] directed this Court to any authority that would preclude a court from ordering a litigant such as Sea Star from ordering a litigant such as Sea Star from disclosing, in discovery, its copy of vessel manifests" (D.I. 160 at 8) begs the question. Section 103.31, which was cited during the Magistrate's hearing, states: "Members of the

public shall not be permitted to examine vessel manifests." 19 C.F.R. §103.31(c). *Gilda Industries v. U.S. Customs & Border Protection Bureau*, 457 F. Supp.2d 6 (D.D.C. 2006), concerned a claim under the Freedom of Information Act ("FOIA"); the court found that the information was exempt from disclosure. *Id.* at 13. In *Trans Pacific Policing Agreement v. U.S. Customs Service*, 177 F.3d 1022 (D.C. Cir. 1999), another FOIA case, the appellate court remanded for a determination as to segregability by the district court. Ordering SSL to produce file copies of vessel manifests filed with the federal government despite express prohibitions is contrary to law. If the Court deems any review necessary, the delivery of computer disks to the Magistrate for *in camera* inspection and redaction might comport with *Trans Pacific Policing Agreement*. Presumably the Magistrate would notify the appropriate federal agencies before releasing redacted materials.

5. **Clearly Erroneous Findings.**

Detailed in SLL's Motion are factual statements, apparently adopted or found by the Magistrate, that are clearly erroneous. D.I. 165 at 15-16.

## CONCLUSION

SSL respectfully requests that the Court approve its objections and set aside the Magistrate's Memorandum Order. In the event the Court upholds any part of the Memorandum Order, SSL requests that the Court extend the time for compliance. Finally SSL requests that the Court authorize SSL to deliver computer disks containing vessel manifests for the period May 1, 2002 through June 30, 2002 to the Court or the Magistrate for determination of segregability in the event the Court decides that production of any manifest information in addition to the loading

guides/equipment manifests previously produced has become necessary.

                                                  SMITH, KATZENSTEIN & FURLOW LLP

February 4, 2008                    /s/Kathleen M. Miller
                                                Kathleen M. Miller (I.D. No. 2898)
                                                800 Delaware Avenue, 10th Floor
                                                P.O. Box 410
                                                Wilmington, DE 19899
                                                Telephone: 302-652-8400
                                                Facsimile: 302-652-8405
                                                E-mail: Kmiller@skfdelaware.com

OF COUNSEL:
Timothy J. Armstrong
Armstrong & Mejer, P.A.
2222 Ponce de Leon Boulevard
Penthouse Suite
Miami, FL 33134
Telephone: 305-444-3355                  *Attorneys for Sea Star Line LLC*