## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

**SEA STAR LINE, LLC,**
**a limited liability company,**          Civil Action No. 05-CV-245-JJF

      **Plaintiff,**

-vs-

**EMERALD EQUIPMENT LEASING, INC.,**
**a corporation,**

      **Defendant,**

-vs-

**SEA STAR LINE, LLC,**

      **Counter-Defendant.**

_____/

### REPLY TO EMERALD EQUIPMENT LEASING, INC.'S RESPONSE
### TO SEA STAR LINE, LLC'S MOTION TO EXTEND TIME

      Outlining its discovery test, the Court charged Emerald Equipment Leasing, Inc. ("EEL") "to pick a customer, go to the customer for payments made to Sea Star, and establish that their customer has better records than they do to demonstrate that your records are correct." D.I. 131 at 21. After Sea Star Line, LLC ("Sea Star") pointed out omissions and discrepancies in EEL's October 24, 2007 report to the Court [D.I. 143; D.I. 149], EEL marked 65 of 70 pieces of EEL equipment referenced in Baxter documents as involved in shipments between April 29 and September 30, 2002 already were part of EEL claims. D.I. 151, Ex. "G." Sea Star is seeking reimbursement for overpayments with respect to 30 of the units. Included in EEL's Exhibit are references to Bates-numbered documents produced by Sea Star.

EEL has not explained, much less established, why and how the records produced by Baxter are better than those previously produced by Sea Star – and cited by EEL in its claims – and demonstrate that EEL's records are correct or why and how Sea Star's self-billing reports evidence a relevant significant deviation. *See* D.I. 131 at 24; D.I. 143 at 2. That EEL claims relate to 65 of the 70 pieces of equipment referenced in the documents produced by Baxter militates to the contrary. Nonetheless, regarding the documents listed in EEL's Reply [D.I. 151 at 8], the Magistrate has mandated:

> Specifically, Sea Star is required to produce, within **twenty (20) days of the date of this Order**[5], the following:
>
> A.    All invoices, bills, or other similar documents between Sea Star and trucking companies used for the movement of containers to or from Baxter, for the time period April 29, 2002 through September 30, 2002. These documents should not just pertain to the specific Emerald equipment identified in the Baxter documents, but to all equipment.
>
> B.    A list identifying the five (5) largest trucking companies (by volume) used by Sea Star in the United States and the three (3) largest trucking companies used by Sea Star in Puerto Rico for the period of April 29, 2002 through September 30, 2002. As to those five (5) trucking companies in the United States and the three (3) largest in Puerto Rico, Sea Star shall provide copies of all invoices exchanged between Sea Star and those companies for services rendered between April 29, 2002 and September 30, 2002.
>
> C.    Copies of all invoices exchanged between Sea Star and ET Heinsen, Sea Star's stevedoring company, used in the Dominican Republic, as well as any and all invoices from any company involved with loading, discharge or movement of any containers and/or chassis and/or gen sets from April 29, 2002 through September 30, 2002.
>
> D.    For the period May 1, 2002 through June 30, 2002, any and all copies of all original vessel manifests for each vessel that

> carried any containers, chassis or generators on Sea Star
> vessels directly, as an interline, or as a slot charter from or to
> any port.

D.I. 160 at 6-7 (footnote omitted).

> Responding to Sea Star's Motion to Extend Time, EEL now alleges:

> In fact, the documents requested by Emerald and which were ordered
> by the Magistrate in the Memorandum Order are, in certain respects,
> a more limited version of Emerald's Request for Production of
> Documents served on Sea Star in December, 2006 (D.I. 103-104).
> Although, the scope of certain records sought is enlarged to include
> all equipment used and not just Emerald equipment, the time frame
> for which such records has been substantially narrowed (*sic*).

D.I. 171 at 2. Other than a limitation of the production period sought by EEL in one instance, EEL

does not disclose the "certain respects" making the documentary production ordered by the

Magistrate "a more limited version of Emerald's Request for Production of Documents served on

Sea Star in December, 2006," which this Court rejected on August 23, 2007. D.I. 130. Indeed,

EEL's Reply acknowledges that "the scope of certain records sought is enlarged to include all

equipment used and not just Emerald equipment ...." D.I. 171 at 2.

Furthermore, EEL does not mention the Magistrate's requirement that Sea Star

respond to its "renewed" Interrogatory No. 1. D.I. 160 at 11. The Court considered EEL's motion

to compel with respect to its interrogatories "the one" that would "drive the decision" during the

August 22, 2007 hearing. D.I. 131 at 3. Having heard arguments, the Court advised EEL's attorney

that "your Interrogatories are awfully broad" and later denied its motion. D.I. 131 at 23; D.I. 130.

Contrary to EEL's contention, the parties have not agreed "that the discovery cutoff

date would be March 1, 2008." D.I. 171 at 2. The Memorandum Order moots prior projections of

discovery deadlines requested by the Magistrate. In any event, the Court bifurcated this case: the

trial in connection with Sea Star's Complaint, which had been tentatively scheduled in February 2008, precedes any trial "to be scheduled in connection with the Emerald Counterclaim ...." D.I. 171 at 2.

As detailed in Sea Star's Motion to Extend Time [D.I. 169] and Objections and Motion to Set Aside Magistrate's Memorandum Order [D.I. 165], good cause for granting an extension of time exists. On November 1, 2007, the Court cautioned: "I'm not so sure that there aren't a lot of blind alleys that can be gone down with regard to that discovery ...." D.I. 150 at 5. The Court accurately predicted:

> [T]here are some legal complexities with regard to what Emerald wants to do that really require a judicial ruling whether it's by Judge Stark or by myself. But if he does it, at least I can review it, because I think in the context of what Emerald wants to do, we're probably a ways off from being ready for trial.

D.I. 150 at 5.

EEL's unfounded, overreaching demands have exacerbated legal complexities envisioned by the Court. Characteristically, EEL chooses to ignore threshold issues. To "suggest[] that if Sea Star spent less time fighting the document requests and more time locating requested documents, it would not need the additional time" [D.I. 171 at 4] is specious. The issues are not only when, but also whether, Sea Star must provide the documents and Interrogatory No. 1 response pursuant to the Memorandum Order. D.I. 165. Thus, Sea Star reiterates its request that the Court extend the deadlines for documentary production and responses specified in the Magistrate's Memorandum Order, until the Court rules on Sea Star's Objections and Motion to Set Aside Memorandum Order. D.I. 165. If the Court permits any of the discovery, Sea Star requests that the Court order EEL to file a report detailing why and how the documents produced, as well as the

Baxter records, are better than those previously produced by Sea Star and demonstrate that EEL's records are correct and why and how Sea Star's self-billing reports evidence a relevant significant deviation in the context of the Equipment Rental Agreement.

SMITH, KATZENSTEIN & FURLOW LLP

February 7, 2008

_/s/Kathleen M. Miller_
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: 302-652-8400
Facsimile: 302-652-8405
E-mail: Kmiller@skfdelaware.com

OF COUNSEL:
Timothy J. Armstrong
Armstrong & Mejer, P.A.
2222 Ponce de Leon Boulevard
Penthouse Suite
Miami, FL 33134
Telephone: 305-444-3355

*Attorneys for Sea Star Line LLC*