# EXHIBIT "A"

Pursuant to Fed.R.Civ.P. 30(b)(6), Plaintiff/Counter-Defendant, Sea Star Line, LLC ("Sea Star"), shall testify as to all matters made reference to in the Emerald Equipment Leasing, Inc. ("Emerald") Amended Counterclaim (the "Amended Counterclaim") and the Sea Star Answer and Affirmative Defenses to Amended Counterclaim (the "Answer to the Amended Counterclaim") and specifically the facts relating to the following:

1. Sea Star's purchase of certain assets of NPR, Inc. as referred to in paragraph 7 of the Amended Counterclaim.

2. Additional equipment needed by Sea Star to move cargo in the course of its business as referred to in paragraph 8 of the Amended Counterclaim.

3. All communications between Emerald and/or MBC, Inc. ("MBC") representatives and Sea Star representatives relating to the E-Mail Agreement referred to in paragraph 9 of the Amended Counterclaim.

4. The implementation of the terms of the E-Mail Agreement referred to in paragraphs 9, 10 and 11 of the Amended Counterclaim.

5. The preparation, execution, implementation and meaning of the Equipment Rental Agreement (the "Equipment Rental Agreement") referred to in paragraph 11 of the Amended Counterclaim.

6. All communications between Emerald and/or MBC representatives and Sea Star representatives relating to the preparation, execution, implementation and meaning of the Equipment Rental Agreement.

{M0632073.1}

7. The specific locations of various equipment containers, chassis and gen sets owned by Emerald (the "Emerald Equipment") at the time of the inception of the leasing arrangement between Emerald and Sea Star as referred to in paragraph 12 of the Amended Counterclaim.

8. Any and all notifications, whether written or oral, given by Sea Star to Emerald at the time Sea Star commenced using any particular piece of Emerald Equipment as referred to in paragraph 13 of the Amended Counterclaim.

9. All communications between Emerald and/or MBC representatives and Sea Star representatives relating to Sea Star's provision of "monthly self-billing reports" referred to in paragraph 14 of the Amended Counterclaim.

10. All communications between Emerald and/or MBC representatives and Sea Star representatives relating to the preparation of bills in connection with Sea Star's use of the Emerald Equipment.

11. The mode and method of preparation of self-billing reports prepared by Sea Star in connection with the Emerald Equipment.

12. Any and all errors in the self-billing reports prepared by Sea Star in connection with the Emerald Equipment.

13. Sea Star's denial in its Answer to the Amended Counterclaim of the assertion that "at the inception of the Lease between Emerald and Sea Star, the Emerald Equipment was not in Emerald's possession; instead, all of the equipment was, _inter alia_, in terminals, in the possession of shippers, at inland depots or on board NPR vessels purchased by Sea Star" as alleged in paragraph 12 of the Amended Counterclaim.

14. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star undertook the obligation to report to Emerald its "usage" of the Emerald Equipment, as alleged in paragraph 14 of the Amended Counterclaim.

15. Sea Star's denial in its Answer to the Amended Counterclaim that Emerald discovered that the "self-billing reports" prepared by Sea Star were grossly understated, failing, <u>inter alia</u>, to account for numerous pieces of Emerald Equipment which Sea Star had been using without paying rental charges to Emerald and failing to pay the appropriate amounts of usage of equipment contained in the "self-billing reports" as alleged in paragraph 15 of the Amended Counterclaim.

16. Sea Star's denial in its Answer to the Amended Counterclaim that on or about October 31, 2003, Emerald exercised its rights to terminate the Equipment Rental Agreement in accordance with its terms, as alleged in paragraph 16 of the Amended Counterclaim.

17. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star is in breach of its obligations under the terms of the Equipment Rental Agreement as a result of its failure to pay rent due to Emerald and loss incurred as a result of the loss, damage, theft or destruction of certain equipment, as is alleged in paragraph 18 of the Amended Counterclaim.

18. Sea Star's denial in its Answer to the Amended Counterclaim that, after the termination of the Equipment Rental Agreement, Sea Star was required to return the equipment to Emerald at certain designated terminals as is alleged in paragraph 19 of the Amended Counterclaim.

19. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star has failed to return numerous chassis, gen sets and containers at lease termination, as provided for in the Equipment Rental Agreement, as is alleged in paragraph 19 of the Amended Counterclaim.

20. Sea Star's denial in its Answer to the Amended Counterclaim that as a result of Sea Star's breach of the Equipment Rental Agreement, Emerald has incurred damages in excess of $4,000,000.00, as is alleged in paragraph 20 of the Amended Counterclaim.

21. Sea Star's denial in its Answer to the Amended Counterclaim that Emerald has provided detailed invoices to Sea Star setting forth the amounts owed to Emerald under the Equipment Rental Agreement as is alleged in paragraph 21 of the Amended Counterclaim.

22. Sea Star's denial in its Answer to the Amended Counterclaim that numerous chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand in accordance with the Equipment Rental Agreement as is alleged in paragraph 24 of the Amended Counterclaim.

23. All information pertaining to Sea Star's usage of Emerald Equipment while in the possession of Sea Star as referred to in paragraph 26 of the Amended Counterclaim.

24. Any and all inventories prepared by Sea Star relating to the Emerald Equipment.

25. Any and all accountings prepared by Sea Star of its usage of the Emerald Equipment pursuant to the Equipment Rental Agreement.

26. The total rental payments made by Sea Star for its use of Emerald Equipment from April 29, 2002 through December 31, 2003.

27. Sea Star's denial in its Answer to the Amended Counterclaim that the information (or lack thereof) provided by Sea Star on its "self-billing reports", upon which Sea Star based its rental payments, was false and/or misleading as is alleged in paragraph 31 of the Amended Counterclaim.

28. Sea Star's denial in its Answer to the Amended Counterclaim that the self-billing reports grossly underreported Sea Star's usage of the Emerald Equipment on diverse dates between

April 29, 2002 and December 31, 2003 by: (i) failing to properly account for the full period of time Sea Star was responsible for rental payments for numerous items of Emerald Equipment which Sea Star acknowledged using; and (ii) by failing to account, at all, for various items of Emerald Equipment which Sea Star used, but which it never acknowledged using, as is alleged in paragraph 32 of the Amended Counterclaim.

29. Sea Star's denial in its Answer to the Amended Counterclaim that the extent of rental charges owed by Sea Star for Emerald Equipment it used, but for which it failed to accurately report on its self-billing report, total in excess of $3,000,000.00, as is alleged in paragraph 33 of the Amended Counterclaim.

30. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star used various pieces of Emerald Equipment which it never returned to Emerald, for which Sea Star owes Emerald a stipulated loss value and certain additional rentals totaling approximately $1.8 million dollars as is alleged in paragraph 33 of the Amended Counterclaim.

31. Sea Star's denial in its Answer to the Amended Counterclaim that the sheer magnitude of the huge discrepancy between Sea Star's reported usage of the Emerald Equipment (as shown on the Sea Star "self-billing reports"), and what Emerald contends was the actual Sea Star usage of Emerald Equipment, evidences an intent to defraud Emerald, or at the very least, a reckless indifference as to the truth of the matters contained in the "self-billing reports", as is alleged in paragraph 34 of the Amended Counterclaim.

32. Sea Star's denial in its Answer to the Amended Counterclaim that the schedules referred to in paragraph 35 of the Amended Counterclaim specifically set forth the relevant equipment pieces, dates of usage, and other related information identifying the nature of the defective information contained in the Sea Star "self-billing reports".

33. The circumstances surrounding Sea Star's creation of the terminal interchange receipts as referred to in paragraph 36(a) of the Amended Counterclaim.

34. The circumstances relating to Sea Star's sublease to a third party, CSX Line, from May 15, 2002 to July 17, 2002 of various pieces of Emerald Equipment as referred to in paragraph 36(b) of the Amended Counterclaim.

35. The circumstances surrounding the duplicate "self-billing reports" prepared by Sea Star for the month of September, 2002 indicating different amounts for the same month as is alleged in paragraph 36(c) of the Amended Counterclaim.

36. Sea Star's denial in its Answer to the Amended Counterclaim that Emerald had a right to and did in fact rely on the misrepresentations made by Sea Star in the self-billing reports as is alleged in paragraph 39 of the Amended Counterclaim.

37. Sea Star's denial in its Answer to the Amended Counterclaim that as a result of Emerald's reliance on the fraudulent misrepresentation of Sea Star in the "self-billing reports", Emerald suffered damages in excess of $4,000,000.00 as is alleged in paragraph 40 of the Amended Counterclaim.

38. Sea Star's denial in its Answer to the Amended Counterclaim that, in undertaking the obligation of providing "self-billing reports", Sea Star had a duty to accurately account for the use of Emerald Equipment and to ensure that it accurately reported and compensated Emerald for the use of the equipment, as is alleged in paragraph 42 of the Amended Counterclaim.

39. Sea Star's denial in its Answer to the Amended Counterclaim that it breached its duty to Emerald and that it failed to accurately account for the usage of Emerald Equipment and properly reimburse Emerald for that use, as is alleged in paragraph 43 of the Amended Counterclaim.

40. Sea Star's denial in its Answer to the Amended Counterclaim that as a result of Sea Star's inaccurate reporting of its use of the Emerald Equipment, whether intended to deceive Emerald or not, Sea Star has made representations which have a tendency to deceive and undermine confidence and are injurious to the public interests, as is alleged in paragraph 44 of the Amended Counterclaim.

41. Sea Star's denial in its Answer to the Amended Counterclaim that it owed a duty to Emerald to disclose its use of the Emerald Equipment as is alleged in paragraph 46 of the Amended Counterclaim.

42. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star failed to accurately disclose its use of the Emerald Equipment as is alleged in paragraph 47 of the Amended Counterclaim.

43. Sea Star's denial in its Answer to the Amended Counterclaim that it intended to defraud Emerald when it provided Emerald with the self-billing reports, grossly underreporting Sea Star's use of the Emerald Equipment as is alleged in paragraph 48 of the Amended Counterclaim.

44. Sea Star's denial in its Answer to the Amended Counterclaim that Emerald justifiably relied upon the fraudulently prepared "self-billing reports" as is alleged in paragraph 49 of the Amended Counterclaim.

45. Sea Star's denial in its Answer to the Amended Counterclaim that as a result of Emerald's reliance upon Sea Star's fraudulently prepared "self-billing reports" Emerald suffered damages in excess of $4,000,000.00, as is alleged in paragraph 50 of the Amended Counterclaim.

46. Sea Star's denial in its Answer to the Amended Counterclaim that it had a fiduciary duty to accurately report to Emerald the equipment usage and the cost incurred as a result of said usage, as is alleged in paragraph 52 of the Amended Counterclaim.

47. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star's actions in preparing "self-billing reports" which were false and/or misleading acted in a negligent and undue manner, thereby breaching its fiduciary duty to Emerald as is alleged in paragraph 53 of the Amended Counterclaim.

48. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star knew that Emerald relied upon Sea Star to accurately report the usage of the Emerald Equipment and the cost incurred, as is alleged in paragraph 54 of the Amended Counterclaim.

49. Sea Star's denial in its Answer to the Amended Counterclaim that Sea Star was aware that not only would Emerald rely on the "self-billing reports" to determine the rental fees for the Emerald Equipment, but was also aware that an accurate report from Sea Star was the only reasonably available method for Emerald to determine the actual usage of the Emerald Equipment, as is alleged in paragraph 55 of the Amended Counterclaim.

50. Sea Star's denial in its Answer to the Amended Counterclaim that Emerald's reliance upon Sea Star's "self-billing reports" was not only justified, it was necessary to maintain the relationship between the parties as provided for in the Equipment Rental Agreement, as is alleged in paragraph 56 of the Amended Counterclaim.

51. Sea Star's denial in its Answer to the Amended Counterclaim that Emerald, having relied upon the "self-billing reports" provided by Sea Star was damaged in that it was unable to collect the actual rents earned based on Sea Star's usage of the Emerald Equipment, as is alleged in paragraph 57 of the Amended Counterclaim.

{M0632073.1}

52. All facts relating to Emerald's allegations in the Amended Counterclaim and Sea Star's responses thereto set forth in the Answer to the Amended Counterclaim.

53. All facts relating to the First Defense through the Fourteenth Defense set forth by Sea Star in its Answer to the Amended Counterclaim.

54. The identity and mode of preparation of all documents produced by Sea Star in response to Emerald's discovery requests in this litigation.

55. The identity and mode of preparation of all documents described in Emerald's Request for Production of Documents to Plaintiff Sea Star Line, LLC in Accordance With Rule 16 Scheduling Order Issued on November 3, 2006.