

*Attorneys at Law*

The Corporate Plaza
800 Delaware Avenue, Suite 1000
P.O. Box 410
Wilmington, Delaware 19899
(Courier 19801)
Phone (302) 652-8400
Fax (302) 652-8405
www.skfdelaware.com

April 30, 2008

**By Hand Delivery**

The Honorable Leonard P. Stark
United States District Court
844 North King Street
Wilmington, DE 19801

Re:   Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.
      C.A. No.: 05-245 (JJF)(LPS)

Dear Judge Stark:

Substantial discrepancies between documents Emerald Equipment Leasing, Inc. ("EEL") acknowledged and produced in response to the Request for Production of Documents propounded by Sea Star Line, LLC ("SSL") and those EEL has been required to produce. That EEL's Objections and Response to Request for Production of Documents Propounded by Plaintiff, Sea Star Line, LLC, dated January 19, 2007, are, at best, incomplete and incorrect has become clear in light of subsequent depositions and other discovery. Enumerated examples are:

**Request No. 1**[1]: EEL produced paper copies of "updated schedules" — its spreadsheet "invoices" – relating to more than 6000 pieces of equipment in its claims. However, in a March 22, 2007 letter, EEL's attorney confirmed its refusal to provide the schedules in the electronic form in which they had been prepared and maintained, as required by Fed. R. Civ. P. 34(b). In April, May, and October 2007, EEL's attorneys sent SSL's attorneys paper copies of revised updated schedules. When SSL's attorneys requested the electronic forms of schedules received in October 2007, Lorraine Robins of Storage Transfer, LLC ("Storage") e-mailed electronic schedules. On January 25, 2008, Ms. Robins testified that the schedules produced in paper form and those e-mailed in electronic form are not the same: The paper version identified during her deposition was amended in August 2007, while the electronic version was amended in May 2006. Storage Depos. 68-69, 72-73. On February 12, 2008, Thomas Holt, Sr., EEL's corporate representative, did not know how the paper and electronic versions differ or which are the current schedules. EEL Depos. 113-17.

In March 2006 EEL's Answering Brief to SSL's Motion to Dismiss the Amended Counterclaim represented that EEL not only had attached an equipment schedule to the pleading but also had

---

[1] SSL's Requests are attached as Ex. A and EEL's responses are attached as Ex. B.

Page 2

supplied "[s]imilar schedules for thousands of other pieces of other pieces of equipment, based upon Emerald's investigation to date,... for other types of Emerald Equipment used by Sea Star, which includes 20 foot chassis, 45 foot chassis, 25 foot DV containers, 40 foot DV containers, 40 foot reefer containers, 40 foot HC containers, 45 foot HC container, and gen sets." D.I. 82 at 8. Nonetheless, Ms. Robins has admitted that she has continued to change the EEL schedules, adding equipment to the "invoices" and increasing amounts of its claims. Storage Depos. 59, 60, 63, 67, 74. Ms. Robins said: "I think I've stopped now ...." Id. at 70. Nonetheless, we understand this unique practice has not ceased.

EEL must comply with Rule 34 by producing the current updated schedule "invoices" in the electronic form in which the information has been compiled, prepared, and maintained. In addition EEL must comply with Rule 26(e) by supplementing and correct its disclosures and responses. The rules proscribe EEL's effort to saddle SSL with the burden to divine the changes that admittedly have been made and continue to be made. Therefore, EEL must supplement production in the proper form, specifying all changes in its "invoices."

**Request Nos. 3, 27**: EEL contends that the request as to inventories should be directed to MBC Leasing, Inc. ("MBC") or Storage and further states that all responsive documents were previously produced. Any EEL interest is merely a "carve out" of Storage's claims, given by Ms. Robins, "Its Sole Member." Storage Depos. Exs. 10, 11, 12. Furthermore, SSL has received documents from third parties that were prepared by or for EEL, which EEL has not produced. For example, in May 2007 after service of a subpoena, Joseph Maqueda produced copies of a December 4, 2004, Vega Alta inventory, as well as correspondence, photographs, and other materials. Maqueda Depos. 9, 43, Ex. 2(a); Storage Depos. 58, 79, Ex. 21. Also, in September 2007 after service of a subpoena, MBC produced a copy of a September 24, 2003 EEL inventory received from Arthur Davis, who has acted on behalf of both EEL and Storage. Storage Depos. 52-54, Ex. 20. EEL must correct its response and produce all EEL inventories.

**Request Nos. 4, 5**: EEL has not produced the documents pertaining to and identifying each piece of EEL equipment allegedly on-hired by SSL that according to its last movement record before April 29, 2002 entered or left an NPR terminal. Many MIT historical summaries produced by EEL lack any supporting documents relating to references in the MIT papers. EEL has possession of or access to the documents and must produce them. Fed. R. Evid. 1006.

**Request Nos. 9, 13, 14, 15**: EEL has not produced documents pertaining to and identifying EEL equipment that was in the possession of persons in the Dominican Republic after April 27, 2002 and at the inception of the Equipment Rental Agreement. Mr. Holt recalled that E.T. Heinsen transmitted equipment information directly to the mainframe in "Madison", New Jersey. EEL Depos. 26. According to Ms. Robins, E.T. Heinsen transmitted the data from his facility to Edison, N.J. and told her "that this was transmitted daily from him to Edison for all the loading and unloading or ships and movements of cargo directly into their computer." Storage Depos. 76. EEL has had possession of or access to such records and must produce them.

Page 3

**Request Nos. 12, 24**: EEL has not produced documents pertaining to the handwritten notes and computer-generated entries relating to alleged on-hire, off-hire, and movement of EEL equipment on MITs and other documents that Emerald Bates-stamped and produced. Among such documents would be the railroads', truckers', and depots' reports received by Ms. Robins. Fed. R. Evid. 1006.

**Request No. 16**: EEL has not produced records of electronic gate activities, particularly at Puerto Nuevo and Jaxport. A computer system developed and operated by a Holt company recorded such activities. EEL has had access to such records and must produce them.

**Request No. 25**: EEL contends that requests as to communications should be directed to MBC or Storage and further states that all responsive documents were previously produced. Again, any EEL interest is merely a "carve out" of Storage's claims. In response to subpoenas, Mr. Maqueda produced correspondence, photographs, and other materials; and MBC produced copies of Davis correspondence and inventory summaries. These parties' production indicate that EEL has failed to produce correspondence. EEL must correct its response and produce all such documents.

**Request No. 39**: EEL states that the documents relating to offers to sell, lease, or rent Emerald equipment to persons other that Sea Star after August 1, 2002 have been produced. After service of subpoenas, however, Mr. Maqueda produced materials related to offers; and MBC produced copies of correspondence related to offers. These parties' production indicates that EEL has failed to produce documents related to offers. EEL must correct its response and produce all such documents.

**Request No. 47**: EEL has not produced agreements by or on behalf of EEL, MBC, Storage, and NPR, other than copies of bills of sale, with persons in the Dominican Republic, including E.T. Heinsen. Although EEL contends that the request should be directed to MBC or Storage and further states that all responsive documents were previously produced, any EEL interest is merely a "carve out" of Storage claims. EEL must correct its response and produce all such documents.

**Request No. 56**: EEL did not produce documents relating to communications between MBC and Storage pertaining to EEL or EEL equipment. Although EEL contends that the request should be directed to MBC or Storage, any EEL interest is merely a "carve out" of Storage claims. Such documents have existed, given Storage's response to the subpoena duces tecum. EEL must withdraw its objection and produce the documents.

Respectfully,

Kathleen M. Miller
Kmiller@skfdelaware.com
(No. 2898)
KMM

cc: Alan I. Moldoff, Esquire (w/encl)(by fax)
Ronald Gellert, Esquire (by efiling)