**EXHIBIT "B"**



| | | |
|---|---|---|
| Amesq@aol.com | To | Alan I Moldoff/ESCM@ESCM |
| 04/18/2008 04:52 PM | cc | KMM@skfdelaware.com |
| | bcc | |
| | Subject | Re: Sea Star - Emerald |

History: This message has been replied to and forwarded.

Alan:

My client is reviewing the e-mail that you sent yesterday afternoon, and I shall respond on Monday. I do agree that issues must be resolved. As you know, depositions and other discovery have disclosed substantial discrepancies between documents Emerald Equipment Leasing, Inc. ("EEL") acknowledged and produced in response to the Request for Production of Documents propounded by Sea Star Line, LLC ("SSL") and those your client has been required to produce. That EEL's Objections and Response to Request for Production of Documents Propounded by Plaintiff, Sea Star Line, LLC, dated January, 19, 2007, are, at best, incomplete and incorrect has become clear. Enumerated examples are:

Request No. 1: EEL produced paper copies of "updated schedules" — its "invoices — but later refused to provide the information in the electronic form in which it has been prepared and maintained, as required by Fed. R. Civ. P. 34(b). In October 2007 EEL sent paper copies of revised updated schedules, then responded to a request by e-mailing electronic schedules. However, Lorraine Robins confirmed during the Storage Transfer deposition on January 25, 2008 that the spreadsheet schedules produced in paper form and those e-mailed in electronic form should have been but are not the same. Tom Holt, Sr., who testified as EEL's corporate representative on February 12, 2008, did not know which are the current schedules and how the paper and electronic versions differ. Although you commented that a telephone call could have resolved the discrepancy, you and your client have not identified and produced the current electronic schedules.

Responding to SSL's Motion to Dismiss the Amended Counterclaim in March 2006, you represented to the Court that EEL not only had attached an equipment schedule to the pleading but also had supplied "[s]imilar schedules for thousands of other pieces of other pieces of equipment, based upon Emerald's investigation to date, ... for other types of Emerald Equipment used by Sea Star, which includes 20 foot chassis, 45 foot chassis, 25 foot DV containers, 40 foot DV containers, 40 foot reefer containers, 40 foot HC containers, 45 foot HC container, and gen sets." Despite these representations I recently learned that none of the EEL's "invoices" have been current, complete, or correct. Admitting that she has continued to change the EEL schedules, Ms. Robins testified on January 25, 2008 that "I think I've stopped now ...." Nonetheless, I now understand your client's unique practice of amending its "invoices", including but not limited to adding equipment and increasing the amounts of its claims, has not ceased, even after Ms. Robins' deposition.

I reiterate prior requests that you and your client comply with Rule 34 by producing the current updated schedule "invoices" in the electronic form in which the information has been compiled, prepared, and maintained. In addition I request that your client fulfill its duty to supplement and correct its disclosures and responses, as required by Fed. R. Civ. P. 26(e). While the precept may seem "remarkable" to you, my client is not obligated to divine the changes that EEL admittedly has made and continues to make. Therefore, you not only must supplement production of documents and other information but also must specify all changes in the "invoices".

Request Nos. 3, 27: EEL contends that the request as to inventories should be directed to MBC Leasing, Inc. ("MBC") or Storage Transfer, LLC ("Storage") and further states that all responsive documents were previously produced. We know now that Emerald is merely Storage's "carve out" alter ego and cannot hide behind corporate facades. Furthermore, we know that in May 2007 after service of a subpoena, Joseph Maqueda produced copies of Emerald Vega Alta inventories given to him, as well as correspondence, photographs, and other materials Emerald is claiming stipulated loss values of particular

equipment listed in the inventory. Also, in September 2007 after service of a subpoena, MBC produced a copy of an inventory received from Arthur Davis. EEL must correct its response and produce all inventories.

Request Nos. 4, 5: EEL has not produced the documents pertaining to and identifying each piece of EEL equipment allegedly on-hired by SSL that according to its last movement record before April 29, 2002 entered or left an NPR terminal. Many of the MIT historical summaries produced by EEL lack any supporting documents relating to references in the MIT papers. EEL has possession of or access to the documents and must produce them.

Request Nos. 9, 13, 14, 15: EEL has not produced documents pertaining to and identifying EEL equipment that was in the possession of persons in the Dominican Republic after April 27, 2002 and at the inception of the Equipment Rental Agreement. Tom Holt, Sr., EEL's corporate representative, admitted that E.T. Heinsen transmitted equipment information directly to "Madison", New Jersey. Lorraine Robins confirmed that E.T. Heinsen transmitted the data from his facility to Edison, N.J. and told her "that this was transmitted daily from him to Edison for all the loading and unloading or ships and movements of cargo directly into their computer. EEL has had possession of or access to such records and must produce them.

Request No. 10: EEL has not produced documents pertaining to and substantiating the alleged grace period of 14 days after April 29, 2002 in the computation of rent with respect to in-transit cargo. Emerald must produce such documents.

Request Nos. 12, 24: EEL still has not produced documents pertaining to handwritten notes and computer-generated entries relating to alleged on-hire, off-hire, or movements of Emerald equipment on MITs and other documents that Emerald Bates-stamped and produced. Among such documents would be the railroads', truckers', and depots' reports received by Lorraine Robins.

Request No. 16: EEL has not produced records of electronic gate activities, particularly at Packer Avenue and Puerto Nuevo. EEL has had access to such records and must produce them.

Request No. 25: EEL contends that the request as to communications should be directed to MBC or Storage and further states that all responsive documents were previously produced. Again, we now know that EEL is merely Storage's "carve out" alter ego and may no longer hide behind any corporate facades. In response to a subpoena, Maqueda produced correspondence, photographs, and other materials in May 2007. Also, after service of a subpoena in September 2007, MBC produced copies of Davis's correspondence and inventory summaries. These parties' production reveals that EEL has failed to produce other correspondence. EEL must correct its response and produce all such documents.

Request No. 39: EEL states that the documents relating to offers to sell, lease, or rent Emerald equipment to persons other that Sea Star after August 1, 2002 have been produced. After service of a subpoena, however, Maqueda produced correspondence, photographs, and other materials related to offers. Also after service of a subpoena, MBC produced copies of correspondence related to offers. These parties' production indicates that EEL has failed to produce documents related to offers. EEL must correct its response and produce all such documents.

Request No. 47: EEL has not produced agreements by or on behalf of EEL, MBC, Storage Transfer, and NPR, other than copies of bills of sale, with persons in the Dominican Republic, including E.T. Heinsen. Although EEL contends that the request should be directed to MBC or Storage and further states that all responsive documents were previously produced, we know now that EEL is merely Storage's "carve out" alter ego for Storage and no longer may hide behind corporate facades.

Request Nos. 55, 56: EEL did not produce agreements and documents relating to communications between MBC and Storage pertaining to EEL or EEL equipment. Although EEL contends that the request should be directed to MBC or Storage, we know now that Emerald is merely Storage's "carve out" alter ego and no longer may hide behind corporate facades. We also know that such documents have existed,

given Storage's response to the subpoena duces tecum. EEL must withdraw its objection and produce the documents.

Request No. 63: EEL has not produced documents pertaining to its allegation that Sea Star purchased NPR "bookings". EEL must withdraw its objections and produce the documents.

I would appreciate confirmation that you will produce the materials on or before Monday, April 21, at 5:00 p.m. If we are unable to resolve the issues, I shall request a hearing. I look forward to your anticipated cooperation.
Regards,
Tim Armstrong


Timothy J. Armstrong, Esq.
Armstrong & Mejer, P.A.
Penthouse Suite
2222 Ponce de Leon Blvd.
Coral Gables, FL 33134
Telephone: 305-444-3355
Telefax: 305-442-4300
E-Mail: tarmstrong@armstrongmejer.com

In a message dated 4/17/2008 2:33:48 P.M. Eastern Daylight Time, AMoldoff@eckertseamans.com writes:

Kathy/Tim,

We have had some opportunity to review the various discovery responses made by Sea Star as ordered by Magistrate Stark. Upon our review so far, there are still issues which need to be resolved. They are:

1. Review of the new disk provided by Sea Star which is supposed to contain all original vessel manifests for the period May 1, 2002 through June 30, 2002 for each vessel that carried any containers, chassis, or generators on Sea Star vessels directly, as an interline, or as a slot charter from or to any port (the "Manifests") indicates that a substantial number of the Manifests provided are "blank", i.e., there is only a cover page and then no information following. I raised this issue several weeks ago after we received the first Manifest disk. The new disk provided by Sea Star has the same "blank" Manifests. No explanation for these "blank" Manifests has ever been provided.

2. In addition, there still appear to be missing Manifests. While the new Manifest disk Sea Star provided contained the "missing' Manifests we previously were able to identify, there still appear to be additional missing Manifests. For example, a cursory review of the documents provided by Baxter shows the transport of Baxter goods by Sea Star on voyages for which Manifests were not provided. These appear to include: Humacao 567 N; Mayaguez 565 N; and Elyun 257 N. We should not have to identify the voyages for Sea Star. Rather, Sea Star is supposed to comply with the Magistrate's discovery order to provide all Manifests for the relevant time period. It did not comply initially and it appears it still has not complied after its second attempt.

3. With respect to the 7 boxes of truck invoices recently provided relating