

**Smith**
**Katzenstein**
**Furlow** LLP

*Attorneys at Law*

The Corporate Plaza
800 Delaware Avenue, Suite 1000
P.O. Box 410
Wilmington, Delaware 19899
(Courier 19801)
Phone (302) 652-8400
Fax (302) 652-8405
www.skfdelaware.com

May 5, 2008

**By Hand Delivery**
The Honorable Leonard P. Stark
United States District Court
844 North King Street
Wilmington, DE 19801

Re:     *Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.*
        *C.A. No.: 05-245 (JJF)(LPS)*

Dear Judge Stark:

This is Sea Star Line, LLC's ("SSL") response to Emerald Equipment Leasing, Inc.'s ("EEL") letter
date April 30, 2008 regarding discovery issues.

On April 21, 2008, SSL responded in detail to EEL's allegations as to outstanding discovery issues
and requested certain information. EEL's attorney merely replied: "Emerald believes the responses
you provided below to the issues raised are inadequate ...." D.I. 184-3 at 11. Having reviewed
EEL's letter dated April 30, 2008, SSL submits:

**Trucker Invoices**

1.      EEL's assertions that "[i]n its initial March 3, 2008 document production, Sea Star copied
only the front page of the invoices" and provided only "partial invoices" are, at best, false. D.I. 184
at 1. Prior to and during the December 20, 2007 hearing, EEL "tailored" or "targeted" demands for
certain truckers' invoices to SSL. D.I. 151 at 8; D.I. 158 at 62. EEL's attorney represented "what
we've asked for is basically trucker information, because the trucker information has both the
containers and the chassises.... [T]he client [EEL] has said, you know what, if we could get the
trucker invoice, that will list the chassises...as well." D.I. 158 at 47. With respect to the five largest
trucking companies, the Court ordered that "Sea Star shall provide copies of all invoices exchanged
between Sea Star and those companies for services rendered between April 29, 2002 and September
30, 2002." D.I. 160 at 7.

The definition of "invoice" is "[a]n itemized list of goods or services furnished by a seller to a buyer,
usu. specifying the price and terms of sale ...." Black's Law Dictionary 833 (7 ed. 1999). In
compliance with the Court's Order, SSL personnel located its warehoused accounting files; they
extracted, copied, and provided 5870 invoices from these trucking companies for services rendered
during the relevant period. Attached as Exhibit "A" are examples of each trucker's invoices. These

May 5, 2008
Page 2

documents are not merely "the front page of the invoices" or "partial invoices." They are in fact the invoices.

Nevertheless, EEL evidently found that truckers' invoices did not "list the chassises." EEL's attorney later complained that "the primary issue is whether we are going to get the other documents **with** the trucker invoices which show all the equipment used, including chassis." D.I. 184-3 at 5 (emphasis added). Rather than raise issues regarding the Order's specific requirements or endure further accusations of manipulation [D.I. 158 at 60], SSL boxed and sent the original accounting files to Wilmington for EEL's inspection. The files include not only the invoices but also the other materials furnished by these truckers as "backup" or "accompanying" documentation to SSL.

EEL does not identify what "requested backup documentation" or "accompanying documentation" allegedly is missing from the SSL files. Whether or not "Emerald discovered that only about 20% of the invoices in question had the requested backup documentation" [D.I. 184 at 2], is immaterial. The explanation is simple: Undisputably the third-party truckers prepared and submitted invoices and whatever documentation they deemed necessary in billing SSL for movements. One trucker may have furnished copies of TIRs, while others may have supplied copies of documents such as booking notes. That the truckers' invoices and accompanying documentation may not satisfy EEL is not SSL's fault. Surely EEL cannot be accusing SSL of failing to produce not only the invoices but also the other documentation received from truckers and stored for several years in the ordinary course of business. Throughout this litigation SSL has produced thousands of TIRs, as well as depot records. If EEL believes the invoice information provided by truckers is incomplete, any recourse would be to the truckers.

2.      To determine the five largest truckers, SSL utilized its accounting records, which are based on "dollar amount of the invoices," not "number of loads moved and equipment pieces involved." D.I. 184 at 2. To search for truckers as EEL has suggested would require SSL to examine and analyze every piece of documentation from every trucker in the relevant time period and add up each piece moved. Clearly, this is an overly burdensome request. Based on its records, SSL has identified Eagle Systems as one of the five largest truckers during the relevant period. SSL has satisfied its obligations.

3.      Notwithstanding EEL's suspicions and suppositions, Caribbean Shipping Services Inc.'s invoices evidence its billings for trucking services. EEL "understanding" as to how "Caribbean is known in the industry" remains unsupported and irrelevant. *Id.*

## Vessel Manifests

EEL's contention that "numerous 'blank manifests'" appear in SSL's production either specifies non-SSL vessels, operated by third parties, or may concern manifests outside the May 1, 2002 through June 30, 2002 time frame of the Order. As to the "Simone J" and "Island Trader," for example, each "cover page" is in reference to a manifest that SSL does not have and is not in the SSL

May 5, 2008
Page 3

computer system; SSL long ago produced copies of the documentation prepared and provided by the carriers which operated these vessels. "Producer," "Hawaii," and "Discoverer" are Horizon Lines vessels. To the extent that SSL had received manifests from third-parties, SSL has produced those documents.

### Interrogatory No. 1

EEL's complaint as to Interrogatory No. 1 is unfounded. EEL produced paper copies of its "invoices," which are merely EEL's compilation of information on an excel spreadsheet. SSL requested that EEL produce the spreadsheets in electronic format. EEL refused. After many months, EEL finally produced the spreadsheets in electronic format. However, that version did not match the paper version previously produced by EEL. Apparently EEL has continued to revise its "invoices," which relate to over 6,000 pieces of equipment. SSL is concerned that as EEL continues to update its "invoices," SSL will have to go through the process of trying to determine what edits were made. Therefore, SSL suggested to EEL that a process needs to be put into place whereby SSL will be provided with updated "invoices" which make clear what edits have been made. Further, there needs to be an agreement on a deadline for edits to the "invoices" as it will be difficult for SSL to respond to continual updates prior to trial. SSL expressed these concerns with EEL's counsel. Because the same issue could arise with the exhibits to SSL's answer to interrogatory No. 1, SSL suggested that the process be agreed upon before the parties start exchanging electronic documents. This is a reasonable request, to which EEL has not provided a proposal. SSL has not refused to provide the requested information.

### Conclusion

According to EEL, less than 10% of the 5870 invoice copies, together with numerous other documents, produced by SSL – *i.e.,* "approximately 500 trucker invoices" – disclose "SSL's use of Emerald's equipment". D.I. 184 at 3. EEL alleges that "approximately 223 of these invoices included Emerald chassis which were never shown on Sea Star's self-billing reports" and that "approximately 28 of the chassis which appeared on the trucker invoices involved Emerald equipment which Emerald had not previously identified as equipment used by Sea Star and now must be added to Emerald's claim." *Id.* Until EEL makes a claim identifies such "catch me if you can" chassis, comprising less than ½% of the equipment involved in the trucker invoices, and makes a claim, SSL cannot respond. For instance, SSL cannot determine whether any of the 28 chassis was involved in shipments in process or was sold to SSL or another party. At best EEL's conclusion reveals that its contentions lack real substance.

Respectfully,

Kathleen M. Miller (2898)

cc:    Ronald Gellert, (w/encl.) by electronic filing
       Alan I. Moldoff, Esquire (w/encl)(by email)

05130|CORA|10043075.WPD

# Exhibit A



**ACIS** *All Coast Intermodal Services*

REMIT TO
P.O. DRAWER 505
GRIFFIN, GA 30224

CUSTOMER COPY
PLEASE INCLUDE
FREIGHT BILL NUMBER
ON ALL CORRESPONDENCE
AND REMITTANCES

| HIPPER | BILL DATE | DISPATCH DATE | BOOKING # | FREIGHT BILL # |
|---|---|---|---|---|
| SEA STAR<br>5860 WILLIAM MILLS ST<br>BLOUNT ISLAND TERMINAL<br>JACKSONVILLE FL  32226 | 5/24/02 | 5/22/02 | GUS85N0360 | FC149827 |

BILL OF LADING:

DRIVER:  CARVER H ROBERT           OUT:  5/22/02
                                    IN:    /   /
TRACTOR #:

| NSIGNEE | CONT 1: 3816 UXXU480026 | CONT 2: | | |
|---|---|---|---|---|

CUTLER HAMMER C/O DIAMOND
1500F CONTINNENTAL

CHARLOTTE NC  28273

| | 80 DESCRIPTION | CHARGES |
|---|---|---|
| | Freight Charges: | 400.00 |
| | FUEL SUR-CHARGE | 8.00 |

- TO                          5192

SEA STAR
100 BELL TEL WAY
SUITE 300
JACKSONVILLE FL  32216
C/O:

ENTERED
AUG   2002
BY THE DAY

TOTAL                        408.00

Billing Inquiries: (704)827-1109

SEE REVERSE SIDE

EAGLE SYSTEMS, INC.
1921 HECKSCHER DRIVE, #4
JACKSONVILLE, FL 32226

| ORIGINATING TERMINAL INFORMATION | INVOICE DATE 6/19/02 | CUSTOMER CODE 31345 | LOCATION 058 |
|---|---|---|---|
| ORDER NUMBER  ——43034—00 | RETURN DATE | | |

PLEASE REFER TO THIS NUMBER
IN ALL CORRESPONDENCE
INVOICE NO.

**BC058004303400**

| REFERENCE NUMBER V04954 | TRAILER/CONTAINER NUMBER STRU488543—8 | RELEASE NUMBER | SEAL NUMBER |
|---|---|---|---|

| SHIPPER | CONSIGNEE EAGLE SYSTEMS – JAX 1921 HECKSCHER DR. UNIT 4 JACKSONVILLE, FL 32218 | SPECIAL INSTRUCTIONS JAX/LAKE WALES,FL/JAX 48'HC |
|---|---|---|

INVOICE TO:

SEA STAR LINE, LLC
100 BELL TEI WAY SUITE 300
JACKSONVILLE, FL 32216

JUN 2 4 2002

PLEASE REMIT TO:

EAGLE SYSTEMS, INC.
P.O. BOX 2177
WENATCHEE, WA 98807—2177
(509) 884—7575

PAYABLE IN US FUNDS

| DESCRIPTION OF SERVICES | UNITS | RATE | CHARGES |
|---|---|---|---|
| JAX/LAKE WALES, FL/JAX | 1.00 | 400.00 | 400.00 |
| FUEL SURCHARGE 2% | 400.00 | .02 | 8.00 |

ENTERED

JUL 27 2002

BY: SUSAN

*do you want to add PO*

| TERMS: Net Payable Upon Receipt    LATE CHARGE: 1 1/2 % PER MONTH | TOTAL CHARGES > | 408.00 us funds |
|---|---|---|

---

**REMITTANCE SLIP – Please include with your payment – REMITTANCE SLIP**

| LOCATION 058 | INVOICE DATE 6/19/02 | CUSTOMER CODE 31345 | INVOICE NO. BC058004303400 |
|---|---|---|---|
| REFERENCE NUMBER IV04954 | | TRAILER/CONTAINER NUMBER STRU488543—8 | |

PLEASE REMIT TO:

EAGLE SYSTEMS, INC.
P.O. BOX 2177
WENATCHEE, WA 98807—2177
(509) 884—7575

INVOICE TO:

SEA STAR LINE, LLC
100 BELL TEI WAY SUITE 300
JACKSONVILLE, FL 32216

| | TOTAL CHARGES > | 408.00 |
|---|---|---|

# CARIBBEAN SHIPPING SERVICES INC.

# INVOICE

1505 DENNIS STREET
JACKSONVILLE, FLORIDA
32204
PHONE:  904-358-3200        FAX:  904-358-0032
EMAIL:

**CSS-30067T**

5/10/2002

| | | | | |
|---|---|---|---|---|
| TO | SEA STAR LINES<br>100 BELL TEL WAY SUITE 300<br>JACKSONVILLE, FL 32216 | | SHIPPER<br>CONSIGNEE | SMITHFIELD PACKING CO.<br>NORTHWESTERN SELECTA |

| | | |
|---|---|---|
| PIECES: | 1895 | |
| WEIGHT: | 48624.00 LB | |
| | 22101.82 KG | |
| DESCRIPTION: | LOAD# 4110/PO#4488/4446/ORDER#7095. | |
| ORIGIN: | JAX | |
| DESTINATION: | SJ | |
| CUST REF: | 4110 | |

| | |
|---|---|
| SHIPLINE: | SEASTA |
| VESSEL: | EL MORRO |
| VOYAGE: | 260 |
| DEPARTURE: | 5/10/2002 |
| BL: | PRMU595526 |
| HOUSE #: | |
| FILE #: | CSS-30067 |

JUL 0 3 2002

| CODE | DESCRIPTION | AMOUNT |
|---|---|---|
| REPO | REPOSITIONING CHARGES | 250.00 |

CS00084

Charleston

SE 75430

| | | |
|---|---|---|
| | **Total USD:** | **$ 250.00** |

COMMENTS:     REMIT TO: CARIBBEAN SHIPPING SERVICES
                        1505 DENNIS STREET
                        JACKSONVILLE, FL. 32204

.nit to:
Carolina National Transportation, Inc.

Carolina National Transportation, Inc.
P.O. Box 6197
Chicago, IL 60680-6197                                          PRO NUMBER: CNT-654253
(843)849-0451                    CONSIGNEE: SEA STAR LINES
                                            BLOUNT ISLAND
                                            JACKSONVILLE, FL 32099


        F R E I G H T   B I L L    SHIPPER: SHERWIN WILLIAMS
                                            400 WINTER HAVEN ROAD
BILL TO:  SEA STAR LINES LLC                WINTER HAVEN, FL 33880
          100 BEL TEL WAY
          SUITE 300             Requirements:
          Jacksonville, FL 32216

                                                ENTERED

                                              NOV 2 1 2002

                                                COOKIE

| Date Billed | Date Shipped | Delivery Date | Pro Number | Agent | | Customer Ref # |
|---|---|---|---|---|---|---|
| 7/17/2002 | 07/09/2002 | 07/10/2002 | CNT-654253 | CNJ | | NPRU675115 |

| of Pcs | Actual | Description | Units | Rate | Total |
|---|---|---|---|---|---|
| | 0 | Containerized Freight | 1 | 375.00 | 375.00 |
| | 0 | CONTAINER# NPRU 675115-9 | 0 | 0.00 | 0.00 |
| | 0 | BK# LL 15229 | 0 | 0.00 | 0.00 |
| | 0 | | 0 | 0.00 | 0.00 |
| | 0 | REF# Q-91 | 0 | 0.00 | 0.00 |

MS: All accounts due 15th day following purchase.    AMOUNT DUE    | 375.00
lure to make payment 30 days after date is basis for legal action
s with interest at 1-1/2% per month which is equal to 18% annum.
         White Copy is Original Freight Bill

                                              NOV 0 4 2002

                                              INTERMODAL

         PO  not  in the sys. 11/1              OCT 3 0 2002

                                              INTERMODAL

**H & M INTERNATIONAL TRANSPORTATION, INC.**

P.O. BOX 31524
HARTFORD, CT 06150-1524

(203)997-4400

INVOICE NO:    2195697

INVOICE DATE:  5/17/02
PAGE NO:       1
REF. NO.:      50

Bill to:

STAR LINE
BELL TELL WAY
SUITE 300
JACKSONVILLE   FL   32246

DELIVERED TO:

H&M

KEARNY       NJ 07032

ACCOUNT NO:  0146750

PIER   PACKER TML  S/S LINE  NAVIERAS    H & M REF #  31710

| PICKED UP | ACCT REF # | QTY | UNIT | DESCRIPTION | RATE | AMOUN |
|---|---|---|---|---|---|---|
| CONTAINER | CAXU 7059945 | OUR ORDER 2126943 | FULL | | | |
| 5/07/02 | | 1 | EA | DRAYAGE O/D | 82.00 | 82.0 |

BROKER:
PAPER REF#:
BL#:
PO#:

PICKED UP:  5/07/02
DELIVERED:  5/07/02
RETURNED:   5/07/02

ENTERED

OCT 02 2002

BY:  SUSAN

PLEASE MAKE CHECK PAYABLE TO —>   H & M INTERNATIONAL TRANS. INC.

**TERMS: NET UPON PRESENTATION**          **PLEASE PAY THIS AMOUNT**      $82.00

CUSTOMER COPY