IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEA STAR LINE, LLC<br><br>    Plaintiff/<br>    Counterclaim Defendant,<br><br>v.<br><br>EMERALD EQUIPMENT LEASING, INC.<br><br>    Defendant/<br>    Counterclaim Plaintiff, | Civ. No. 05-245-JJF-LPS |

**EMERALD'S MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR
SANCTIONS AGAINST SEA STAR LINES, LLC**

Emerald Equipment Leasing, Inc. ("Emerald"), by and through its undersigned counsel, Eckert Seamans Cherin & Mellott, LLC herein submits its Memorandum of Law in Support of Request For Sanctions Against Sea Star Lines, LLC ("Sea Star"), as follows:

## BACKGROUND

This law suit is driven by a basic set of underlying facts which underscore the importance of the production of documents by Sea Star in an honest and open fashion. As this Court is aware, Emerald entered into a leasing arrangement with Sea Star by which Emerald agreed to allow Sea Star to use its equipment which was scattered in various locations throughout the United States, Puerto Rico and the Dominican Republic. In return, Sea Star agreed to pay rental for the usage by Sea Star of any piece of Emerald Equipment at an agreed upon per diem rate with a thirty day minimum. The rental amounts owed by Sea Star were based upon Sea Star's "self-billing reports" whereby Sea Star recorded its usage of the Emerald equipment and paid rental charges based on its own reporting. Sea Star had sole control over the documents and data which would evidence its use of Emerald's equipment. Without an honest reporting by Sea Star

of its usage of the Emerald equipment, Emerald would not receive the amount of rent properly due. Very early on, it became quite apparent that the Sea Star self-billing reports, upon which it based its rental payments, were not just inaccurate but almost wholly wrong[1]. Given the totally unreliable nature of the Sea Star self-billing reports, Emerald has been forced to undertake its own accounting of Sea Star's use of the Emerald equipment through the discovery which Emerald has so far been able to obtain from Sea Star and third parties.

In short, discovery in this case is largely centered on Emerald's efforts to obtain from Sea Star, through Sea Star's own documents, a proper accounting of Sea Star's use of the Emerald equipment for which Sea Star owes rent. In so doing, Emerald must rely on Sea Star producing these documents in an honest and forthright manner.

1. **SEA STAR'S MOTION TO SET ASIDE THE MEMORANDUM ORDER PERTAINING TO CERTAIN DISCOVERY RULINGS IN THIS CASE RAISED MERITLESS ISSUES WHICH RESULTED IN UNNECESSARY DELAY AND EXPENSE**

By Memorandum Order (the "Memorandum Order") dated December 28, 2007 (D.I. 160), this Court resolved various discovery issues which were clearly within the scope of the November 2, 2007 Order of reference from the District Court Judge (Judge Farnan) to the Magistrate Judge. (D.I. 142). The Memorandum Order, inter alia, required Sea Star to produce, within twenty days from the date of said Order:

> A. All invoices, bills, or other similar documents between Sea Star and trucking companies used for the movement of containers to or from Baxter, for the time period April 29, 2002 through September 30, 2002. These documents should not just pertain to the specific Emerald equipment identified in the Baxter documents, but to all equipment.

---

[1] Sea Star has acknowledged that its self-billing reports are not accurate and has deposited with the Court Clerk's Office the sum of $534,500.00 (D.I. 74). Emerald's claim for rent and stipulated loss values is in excess of $4.7 million.

>  B.   A list identifying the five (5) largest trucking companies (by volume) used by Sea Star in the Untied States and the three (3) largest trucking companies used by Sea Star in Puerto Rico for the period April 29, 2002 through September 30, 2002. As to those five (5) largest trucking companies in the Untied States and the three (3) largest in Puerto Rico, Sea Star shall provide copies of all invoices exchanged between Sea Star and those companies for services rendered between April 29, 2002 and September 30, 2002.
>
>  C.   Copies of all invoices exchanged between Sea Star and ET Heinsen, Sea Star's stevedoring company, used in the Dominican Republic, as well as any and all invoices from any company involved with loading, discharge or movement of any containers and/or chassis and/or gen sets from April 29, 2002 through September 30, 2002.
>
>  D.   For the period May 1, 2002 through June 30, 2002, any and all copies of all original vessel manifests for each vessel that carried any containers, chassis or generators on Sea Star vessels directly, as an interline, or as a slot charter from or to any port.

An order of the magistrate judge, such as the Memorandum Order, is subject to review by a district court judge only for clear error of law or fact or abuse of discretion. See Hines v. Liggett Group, Inc., 975 F.2d 81 (3d Cir. 1992); Scott Paper Co. v. United States, 943 F.Supp. 501 (E.D. Pa. 1996).

Despite the high standard of review (i.e., "clear error of law or fact or abuse of discretion") which must be met before a magistrate's discovery rulings may be overturned, Sea Star, instead of providing the discovery as required by the Memorandum Order, filed with the district court its Objections and Motion to Set Aside Magistrate's Order (the "Sea Star Objections" at D.I. 165; see attached Exhibit "A" without exhibits. As a result, Emerald, rather than spending its time and resources reviewing the discovery which Sea Star should have provided, was instead forced to waste resources responding to the patently frivolous Sea Star Objections. See Emerald's Response to Objections and Motion to Set Aside Magistrate's Memorandum Order, together with Request for Sanctions (the "Emerald Response to Sea Star's

Objections is at D.I. 170; and attached as Exhibit "B" without exhibits). The contentions set forth by Sea Star in the Sea Star Objections may be summarized as follows:

> 1. The Memorandum Order, by ruling on Emerald's renewed discovery motions, conflicts with what Sea Star calls the "law of the case" and contravenes the "local rules", thereby being procedurally defective;
>
> 2. Since Sea Star believes that Emerald lacks "standing", the magistrate "misreads and misapprehends" Sea Star's legal arguments which challenge Emerald's ability to litigate its Counterclaim;
>
> 3. A 34% discrepancy (i.e., 34% of the Emerald equipment used by Sea Star to transmit cargo from Baxter Healthcare was never disclosed on the Sea Star self-billing reports and, accordingly, never paid for by Sea Star) is not a "significant" deviation;
>
> 4. A United States Customs and Border Protection Bureau regulation (19 C.F.R. Section 103.31 and statute, 19 U.S.C. Section 1431) prevented Sea Star from releasing vessel manifests, even though the Memorandum Order provided a mechanism for appropriate redaction, to the extent Sea Star thought necessary; and
>
> 5. A series of unrelated factual statements were "apparently adopted or found by the magistrate which Sea Star contends are "clearly erroneous".

Each of the aforesaid issues raised by Sea Star clearly lacked merit. And, in fact, the Memorandum Order issued by the district court ruling on the Sea Star Objections (the "Order Overruling Sea Star's Objections at D.I. 176, and attached hereto as Exhibit "C") stated as much: "The Court has considered Sea Star's Objections in the context of the parties submissions and Judge Stark's Memorandum Order and finds each of Sea Star's Objections lacks merit" (at Page1). Specifically, as to each objection raised by Sea Star, Judge Farnan found as follows:

> 1. Judge Stark afforded the parties a full and fair opportunity to present their positions on the relevant issues and therefore neither party had been prejudiced by the Court's consideration of the issues raised;
>
> 2. The "standing arguments" are not an impediment to discovery at this juncture; but rather to the extent Sea Star wished to

pursue such standing arguments, it should do so in the context of an appropriate dispositive motion for Judge Stark's consideration;

   3. There was no clear error in Judge Stark's finding that a 31-34% deviation between the vendor bills and self-bills is a significant discrepancy justifying the limited discovery sought by Emerald, especially since the Court forewarned Sea Star that discovery would be permitted in these types of circumstances;

   4. Sea Star had not demonstrated the applicability of the statute and related regulation to circumstances involving Court ordered discovery by litigant; and that in any event, Judge Stark provided the parties with an appropriate mechanism for any redactions in the vessel manifests which Sea Star believed may be required by law[2]; and

   5. Sea Star's remaining objections as to certain factual statements did not appear to be relevant to the discovery issues raised, and further that Sea Star did not offer a full explanation as to why those statements are incorrect or how they impacted the ordered discovery. (D.I. 176).

Emerald believes an impartial reading of the Sea Star Objections and Emerald's Response to Sea Star's Objections, in light of the Order Overruling Sea Star's Objections, make clear the meritless nature of the issues raised by Sea Star. Sea Star's obstinate resistance to providing the discovery requested resulted in a further delay of almost two months and substantial expenses. While the Emerald Response to Sea Star's Objections requested an imposition of sanctions for what Emerald believed to be frivolous arguments raised by Sea Star, the district court stated that "any award of sanctions should be considered by Magistrate Judge Stark in the first instance consistent with the Court's Order referring to him all pretrial matters" (D.I. 176; Exhibit "C" at page 3)." By Memorandum Order dated March 2, 3008 (D.I. 177) ruling on Sea Star Motion to Extend Time (D.I. 169), Magistrate Judge Stark stated that while Sea Star "was (and at all times remained) required to produce documents and respond to Emerald's Interrogatory No. 1

---

[2] Interestingly, when Sea Star finally produced the manifests, it did not seek any procedure for redaction despite its stated position that such redaction was required by law.

within twenty (20) days of December 28, 2007"..."So far as the Court is aware, Sea Star has not complied with these obligations". Observing that "the Court cannot turn back the clock, Sea Star was ordered to provide the discovery within ten (10) days" without further additional delay. As to requested sanctions, in an amount equal to Emerald's legal fees incurred in responding to Sea Star's Objections Judge Stark reserved on this issue, indicating "the Court will take up the issue of sanctions with counsel at a later date." (D.I. 177).

2. **SEA STAR'S SUBSEQUENT CONDUCT IN FINALLY PROVIDING THE DISCOVERY ORDERED BY THE COURT EVINCES A LACK OF GOOD FAITH**

If the meritless Sea Star Objections were not by itself enough to warrant an imposition of sanctions, however, the eventual production of discovery by Sea Star, which was, if anything, grudging and, at least in some respects, non-compliant, clearly confirms Sea Star's lack of good faith. First, Sea Star's production of "trucker invoices" involved the single pages of each invoice which did not include accompanying documents with these invoices to show the chassis identification numbers underlying the invoices. When Emerald reviewed these "invoices" it became apparent that various attachments were missing since some of the copies of the invoices produced were copied in a way that indicated that underlying attached documents behind the cover page invoices existed but were not part of the document production. The single page invoices were produced even though Sea Star had to have known that the underlying documentation contained the equipment identification numbers was what Emerald was requesting as made clear not only by the context of this case, but by the colloquy during the discovery hearing in this matter (D.I. 161). After a number of e-mail exchanges, Sea Star finally agreed to produce the full documents, which included not only the cover page invoices but the

underlying documentation.[3]  When the documents were produced, the invoices were interspersed with the underlying documents and which were in many instances attached thereto, making clear that Sea Star had to have gone to the extra trouble in its initial production of making sure only the single page invoices were copied without the accompanying documents.  To further underscore Sea Star's lack of good faith in this regard, Sea Star's letter response to this discovery dispute dated May 5, 2008 (D.I. 186 attached as Exhibit "D") sought to justify its single page invoice production relying on a Black's Law Dictionary definition of the word "invoice".  This hyper technical focus on "words", rather than "substance", seems to be Sea Star's pattern throughout this litigation.

Finally, when it came to Sea Star's identification of the five largest truckers (by volume), as ordered by the Court, Sea Star made its determination of "volume" based on the dollar amount of the invoices as opposed to the number of loads moved and equipment pieces involved.  Again, in the context of this case, Sea Star had to have known that it is the volume measured in terms of loads moved and equipment used which would provide the most relevant information in this case and if there was any ambiguity about what was requested, once more, colloquy before this Court at the time of the discovery hearing made clear what Emerald was seeking.  Simply put, for the reasons elucidated in Emerald's letter dated April 30, 2008 (D.I. 184 attached as Exhibit "E") detailing Sea Star's conduct in providing the ordered discovery, Emerald does not believe Sea Star acted in good faith in identifying the truckers whose invoices were to be produced.  As a result, additional expenses were incurred by Emerald in reviewing Sea Star's initial defective production and bringing this matter to the Court once again.

---

[3] Only about 20% of the invoices produced by Sea Star had any underlying documentation.  Sea Star has represented that this consists of all documents received by Sea Star from the truckers in connection with the produced invoices.

3.  **RELEVANT LAW**

Rule 37(a)(5) of the Federal Rules of Civil Procedure specifically provides that a court may order sanctions in the form of reasonable expenses and attorneys' fees incurred in connection with motions to compel discovery, unless, <u>inter alia,</u> the opposing party's non-disclosure, response or objection was substantially justified. Moreover, Rule 37(a)(4) provides that for the purposes of this subdivision (a), an invasive or incomplete non-disclosure, answer or response may be treated as a failure to disclose, answer or respond. In addition, Rule 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery including an order under Rule 37(a), the Court may issue further just orders which may include, <u>inter alia</u>, striking pleadings in whole or in part, staying further proceedings until the order is obeyed, rendering a default judgment against a disobedient party, or treating of contempt of court for failure to obey a discovery order. Finally, Rule 37(b)(2)(C) provides that instead of, or in addition to, the aforesaid relief, the Court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances making an award of expenses unjust.

In this case, as demonstrated above, Emerald believes Sea Star filed frivolous objections in connection with the ordered discovery in this case, as well as providing evasive or incomplete disclosure thereafter, at best. No substantial justification for Sea Star's objections and/or its grudging conduct in providing the ordered discovery can be shown.[4] A district court does not abuse its discretion in sanctioning a party by awarding costs based on a court's conclusion that the offending party's failure to comply with discovery requests is without justification and serves only to impede the discovery process and make life as difficult as possible for the other party.

---

[4] A substantial justification is one that "could satisfy a reasonable person". <u>Pierce v. Underhood</u>, 487 U.S. 552 (1988).

See Pan American Grain v. Puerto Rico Port Authority, 295 F.3d 108, 117 (1st Cir. 2002). Such clearly appears to be the case here. While Emerald does not, at this time, seek any of the enumerated harsher sanctions, Emerald does believe that an award of counsel fees incurred is clearly justified under these circumstances.

4.  **SANCTIONS REQUESTED**

For the foregoing reasons, Emerald seeks to be reimbursed for the time value of its professional fees incurred in connection with the following: (1) responding to the Sea Star Objections; (2) submitting this matter again to the Court to further compel compliance with the Memorandum Order; (3) preparing this submission seeking sanctions.[5] Counsel has reviewed its itemized time entries and requests sanctions in the amount of $17,230.00 which has been determined using counsel's normal hourly rates (see Exhibit "F"). Since the relevant recorded time entries examined run only until April 30, 2008, Emerald would request an additional sanction in the amount of $5,000.00 for work performed after April 30, 2008 in connection with the May 6 telephonic hearing on these discovery disputes and in preparing this submission seeking sanctions (in lieu of this estimate, Emerald would request it be permitted to submit updated time records when available).

5.  **CONCLUSION**

Emerald does not take lightly a request for imposition of sanctions. It has endured this difficult litigation for years, which largely consists of seeking relevant information from Sea Star to evidence Sea Star's use of thousands of pieces of Emerald equipment for which Sea Star is obligated to pay rent (or in instances where the equipment was never returned to Emerald, to pay

---

[5] While Emerald believes it was forced to incur substantial extra time and expense reviewing Sea Star's incomplete/unresponsive discovery documents necessitating duplicative time and effort, such time was not included in this request for sanctions, except to the limited extent necessary for the preparation of the various submissions to the Court in this regard.

stipulated loss values). If Sea Star had promptly and honestly accounted for its use of the Emerald equipment in the first place, none of this would have been necessary. The discovery involved is highly relevant. For instance, the truck invoices Emerald has recently received reveal a number of additional pieces of Emerald equipment used by Sea Star for which Sea Star has not paid rent. Sea Star's efforts to obstruct such discovery through meritless objections and incomplete or evasive production should not be countenanced.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: /s/ Ronald S. Gellert

Ronald S. Gellert, Esquire (No. 4259)
Tara L. Lattomus, Esquire (No. 3515)
300 Delaware Avenue, Suite 1210
Wilmington, De 19801
Phone: 302-425-0430
Fax:    302-425-0432

and

Gary M. Schildhorn, Esquire
Alan I. Moldoff, Esquire
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Phone: 215-851-8400
Fax:    215-851-8383