**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,              Civil Action No. 05-CV-245-JJF

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

    Defendant,

-vs-

SEA STAR LINE, LLC,

    Counter-Defendant.
_____/

### OBJECTIONS AND MOTION TO SET ASIDE MAGISTRATE'S MEMORANDUM ORDER

Pursuant to 28 U.S.C. §636 and Fed. R. Civ. P. 72, Counter-Defendant, Sea Star Line, LLC ("SSL"), moves to set aside the Magistrate's Memorandum Order dated December 28, 2007 (D.I. 160). SSL objects to the Order on the following grounds:

    1.    The Court's Order dated August 23, 2007 (D.I. 130), which constitutes the law of the case, and applicable Local Rules preclude any discretion to accept, consider, and rule on "renewed Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115)…and Motion to Compel Sea Star Line's Responses to Certain Interrogatories (D.I. 114)". D.I. 160 at 2.

1

Contradicting this Court, the Magistrate's conclusions that "[b]y letter dated October 24, 2007 (D.I. 143)," EEL renewed its "Documents Motion and Interrogatory Motion" and that "the motions have been properly renewed" (D.I. 130 at n.2) are clearly erroneous and contrary to law.

    2. The finding and conclusion that documents related to use of Emerald Equipment Leasing, Inc. ("EEL") equipment for any period during which SSL submitted self-billing reports to MBC Leasing Corp. ("MBC") and EEL is "relevant to the claim" and that "their production is reasonably calculated to lead to the discovery of admissible evidence" are clearly erroneous and contrary to law (D.I. 160 at 4-5). Furthermore, the Magistrate had no discretion to refuse consideration of SSL's factually supported "legal arguments challenging Emerald's ability even to litigate its counterclaims" – EEL's standing and its status as a real party in interest – for use of EEL equipment "during any period in which SEA STAR has paid ASSIGNOR [MBC] pursuant to the SEA STAR INDEMNITY" (D.I. 149 Ex. "C", ¶6.3). Consequently the conclusion that "the Court is not persuaded that, at this time, these contentions are bases for denying discovery" is clearly erroneous and contrary to law (D.I. 160 at n.4).

    3. Imposing requirements that SSL prepare lists and produce copies of documents described in the Memorandum Order (*Id.* at 6-7) and that SSL respond to Interrogatory No.1 "[a]s to each piece of Emerald [e]quipment for which Emerald has made a claim as alleged in the Counterclaim" after "Emerald assured the Court at the hearing that Sea Star has such a list" specifying "which pieces of equipment are at issue in Emerald's counterclaim..." (*Id.* at 9) are contrary to law.

    4. The conclusion that EEL has a private right of action to discover vessel cargo manifests filed with the federal government pursuant to 19 U.S.C. §1431 and 19 C.F.R. §103.31

2

contravenes canons of statutory construction and regulatory requirements for disclosure. Ordering SSL to produce such documents despite express prohibitions is contrary to law.

5. The following factual statements, apparently adopted or found by the Magistrate, are clearly erroneous:

(a) "Sea Star sends bills to Emerald (or Emerald's creditor), showing which Emerald equipment Sea Star has used, for which Sea Star must pay Emerald (hereinafter 'self-bills') (D.I. 160 at 3).

(c) "ET Heinsen" was "Sea Star's stevedoring company, used in the Dominican Republic" (*Id.* at 7).

(d) "Sea Star has such a list" specifying "which pieces of equipment are at issue in Emerald's counterclaim" (*Id.* at 9).

## MEMORANDUM

1. **Law of Case, Local Rules.**

The Magistrate was not writing on blank slate. In its Order dated August 23, 2007, the Court denied EEL's Motion to Compel Sea Star Line's Responses to Certain Interrogatories (D.I. 114) and Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115) without prejudice (D.I. 130). This Order, which constitutes the law of the case, precludes any Magistrate discretion to accept, consider, and rule on any "renewed Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115)...and Motion to Compel Sea Star Line's Responses to Certain Interrogatories (D.I. 114)" (D.I. 160 at 2). *E.g., Hamilton v. Leavy*, 322 F.3d 776, 776-78 (3d Cir. 2003); *Al Haddad Bros. Enterprises, Inc. v. M/S Agapi*, 635 F. Supp. 205, 208-

3

09 (D. Del. 1986); *see In re Paoli*, 221 F.3d 449, 458 (3d Cir. 2000)(review plenary).

Contrary to the Magistrate's conclusion, no "Discovery Motions" were pending at the time of the Magistrate's December 20, 2007 hearing. This Court had confirmed on November 1, 2007 that EEL's October 24, 2007 letter (D.I. 143) was a "report," not a motion (Nov. 1, 2007 Tr. at 6 (D.I. 150)). Moreover, EEL's allusion to "necessary discovery" in the October 24 letter left definitions, scope, and time-frame to conjecture. Manifestly the Magistrate was mistaken in noting that "[b]y letter dated October 24, 2007 (D.I. 143)," EEL renewed its "Documents Motion and Interrogatory Motion" and that "the motions have been properly renewed"(D.I. 130 at n.2).

The precept is long-established: "Rules of practice adopted by the United States District Courts...have the force and effect of law, and are binding upon the parties and the court which promulgated them until they are changed in the appropriate manner." *Woods Construction Co. v. Atlas Chem. Indus, Inc.*, 337 F.2d 888, 890 (10th Cir. 1964)(citations omitted). "A litigant has a right to rely upon the local rules, as the parties and the court are bound by them." *Id.* at 891. *Accord, Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers, Ltd.*, 650 F.2d 633, 636 n.4 (5th Cir. 1981). To "depart from the strictures of its own local procedural rules", a district court must have a sound rationale for doing so and must not unfairly prejudice a party that has relied on the local rule to its detriment. *United States v. Eleven Vehicles, Their Equipment & Accessories*, 200 F.3d 203, 214-15 (3d Cir. 2000). Assuming, *arguendo*, that the Magistrate would have authority to depart from applicable Local Rules in limited situations, the Memorandum Order articulates no rationale for disregarding the Court's statement that EEL's October 24, 2007 letter was a report, not a motion, and does not explain the intimations that its action has not unfairly prejudiced SSL and advances the "interests of justice." The Magistrate's rulings on non-existent motions contravene

4

not only the August 23, 2007 Order but also applicable Local Rules, are contrary to law, and are clearly erroneous. *See, Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91-92 (3d Cir. 1992)(standards of review).

    2.    **Threshold, Standing.**

The Magistrate misreads and misapprehends SSL's "legal arguments challenging Emerald's ability even to litigate its counterclaims" (D.I. 160 at 6). First, SSL's factually supported response to EEL's submission relates to EEL's claims for equipment use during a particular period, not to other claims included in the Amended Counterclaim. Second, SSL's premise is simple: Unless EEL is a real party in interest, having standing to assert compensation claims against SSL for use of EEL equipment during any period in which SSL paid MBC "pursuant to the SEA STAR INDEMNITY" (D.I. 149, Ex. "C" at 5, ¶ 6.3), documents and other information demanded by EEL, such as those related to self-billing reports, could not be "relevant to the claim" and their production would not be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

During the December 20, 2007 hearing, EEL's attorney advised the Magistrate:

> The overriding factual issue in this case is simply this: What pieces of equipment did Sea Star use, and therefore, incur an obligation to pay rent?

(D.I. 158 at 9). Asked about the number of pieces, he answered: "It's in excess of 5,000, 6,000, 7,000. I think our claim comprises about that number. I'm not exactly sure" (*Id.* at 9). Regarding "Baxter" test "implications for the outstanding discovery requests," the attorney said:

> The issue with respect to the amended counterclaim involves gathering of evidence to show Sea Star's use of Emerald equipment for which it has not paid Emerald.
> …

5

> What we're talking about here is evidence of Sea Star's use of the equipment....

(*Id.* at 41).

To substantiate determinations that documents related to use of EEL equipment for any period during which SSL submitted self-billing reports is "relevant to the claim" and that "their production is reasonably calculated to lead to the discovery of admissible evidence," the Magistrate cited Fed. R. Civ. P. 26(b)(1) (D.I. 160 at 4-5). This Rule limits discovery to

> any nonprivileged matter that is relevant to any party's claim or defense .... Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).

Manifestly the Magistrate assumed that the discovery demanded by EEL during the hearing is permissible: he concluded that "the Court is not persuaded that, at this time, these contentions are bases for denying discovery" (D.I. 160 at n.4). However, the Magistrate had no discretion to decline consideration of SSL's factually supported arguments as to EEL's status as real party in interest and standing to seek compensation for use of EEL equipment "during any period in which SEA STAR has paid ASSIGNOR [MBC] pursuant to the SEA STAR INDEMNITY." (D.I. 149, Ex. "C", ¶6.3). Having overlooked and refused to resolve requisite threshold issues, the Magistrate's discovery determinations with respect to SSL's alleged use of EEL equipment are clearly erroneous and contrary to law.

In this case EEL has not disclosed to this or any court the actual nature, extent, and limitations of its derivative interest in any claims asserted against SSL. After the Court issued its August 23, 2007 Order (D.I. 130), MBC produced a Loan Sale and Assignment Agreement ("Loan

Sale Agreement"), dated as of November 1, 2003, pursuant to SSL subpoena (D.I. 149 at 2). As outlined in the Response to Emerald's Submission Regarding Baxter Healthcare, Inc. (D.I. 149), EEL evidently knew long before moving to dismiss or transfer the case from the Middle District of Florida to this Court:

    (a)    EEL's purported $4,000,000 claim against SSL never existed. At most, the EEL bankruptcy estate acquired "15% of any proceeds, net of expenses or other amounts disbursed to third parties, [Storage Transfer, L.L.C. ("Storage")] would otherwise receive on account of its secured claim as a result of any settlement of the Sea Star claim or the collection of any judgment obtained upon prosecution of this claim" (D.I. 149, Ex. "B"). As Storage's "Sole Member," Lorraine Robins "AGREED TO AND ACCEPTED" this "carveout" (*Id.* at E68501).

    (b)    The Loan Sale Agreement expressly proscribes EEL's "claims that Sea Star used Emerald equipment to ship goods for its customers without reporting to Emerald on its 'self-billing reports' its use of such equipment and paying the appropriate rental and other charges due in connection with those pieces of equipment" (D.I. 143). The Loan Sale Agreement produced by MBC, EEL's secured creditor, imposed express limitations and conditions on the "claim" that MBC assigned to Storage (D.I. 149 at 2-3 & Ex. "C" at 3-5, ¶¶ 3, 5, 6).

MBC clearly and unambiguously withheld any assignment to Storage of claims against SSL for use of EEL equipment during any period in which SSL paid MBC pursuant to an Indemnity Agreement, executed by MBC to induce SSL's direct payment for use of EEL Equipment. (*Id.*, Ex. "H"). Dispositive of EEL's contentions and the Magistrate's Order, the Loan Sale Agreement provides:

> ASSIGNEE agrees not to assert any entitlement to compensation
> from SEA STAR for use of EMERALD EQUIPMENT during any

7

> period in which SEA STAR has paid ASSIGNOR pursuant to the SEA STAR INDEMNITY.

(*Id.*, Ex. "C" at 5, ¶ 6.3; *see* D.I. 149 at 3 n.2 & Exs. "D", "E", "H").

The EEL-SSL Equipment Rental Agreement ("Rental Agreement") "cover[ed] equipment in use at various times commencing April 29, 2002 (D.I. 149 Ex. "I" at 1). Under the Rental Agreement, "the lease term for each item of Equipment shall begin on the date when such Equipment is delivered to Lessee [SSL] or its agent and shall end on the date when such Equipment is taken off-hire pursuant to section 10 below" (D.I. 149, Ex. "I" at 1, ¶ 2). The Rental Agreement was expressly "subject and subordinate to any lease or security interest in favor of a third-party lessor or lender to Lessor" (*Id.*, Ex. "I" at 2, ¶ 4(b)).

Indisputably MBC, not EEL, was entitled to payments for use of EEL equipment during the period covered by SSL self-billing reports (*Id.*, Exs. "G", "H"; D.I. 158 at 15). Further confirmed by the documented chronology, the SSL-MBC mutual accounts and SSL self-billing reports reflecting use and purchases of EEL equipment, as well as storage and handling charges and payments, through early 2004 (*See, Id.* at 5).

Even if EEL had been Storage's undisclosed principal, the Loan Sale Agreement would bind EEL. *E.g., Sidarma Societa Italiana Di Armamento Spa, Venice v. Holt Marine Indus., Inc.*, 515 F. Supp. 1302, 1308 (S.D.N.Y. 1981), *aff'd*, 681 F.2d 802 (2d Cir. 1981). The "carveout" granted to EEL by Storage cannot encompass a greater claim – or interest – than that assigned to Storage by MBC. Having accepted "carveout" benefits derived from the Loan Sale Agreement, EEL, like Storage, is estopped from disregarding the explicit contractual limitations and prohibitions. In particular, EEL may not "assert any entitlement to compensation from SEA STAR for use of EMERALD EQUIPMENT during any period in which SEA STAR has paid ASSIGNOR

pursuant to the SEA STAR INDEMNITY" (D.I. 149, Ex. "C" at 5, ¶ 6.3). Thus, EEL cannot be a real party in interest in regard to claims within the purview of paragraph 6.3 of the Loan Sale Agreement. Under Maryland law, which governs the Loan Sale Agreement and the Rental Agreement, a "'real party in interest' must have 'an actual, real and justiciable interest susceptible of protection through litigation.'" *Akparewa v. Amoco Oil Co.*, 771 A.2d 508, 519 (Md. Ct. Spec. App. 2001), *quoting Boyd v. Hickman*, 689 A.2d 106 (1997); *see LaSalle Bank, N.A. v. Lehman Bros. Holdings, Inc.*, 237 F. Supp.2d 618, 632 (D. Md. 2002); Fed. R. Civ. P. 17(a). *See also* D.I. 149, Ex. "C" at 10, ¶ 18. Moreover, as a matter of contract and law, EEL never has had the requisite "personal stake in the outcome" of any controversy and has "no standing to sue," much less demand discovery, with respect to any matter covered by paragraph 6.3. *Baker vs. Carr*, 369 U.S. 186, 204 (1962). *Accord, Warth v. Seldin,* 422 U.S. 490, 498-99 (1975); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117-18 (2d Cir. 1991); *see Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 428-32 (1972); *General Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d 184, 188 (3d Cir. 1993)(focus on party); *National City Bank of Minneapolis v. Lapides (In re Transcolor Corp.)*, 296 B.R. 343, 360 (Bankr. D. Md. 2003); *In re ANC Rental Corp.*, 278 B.R. 714, 719 (Bankr. D. Del. 2002) ("general principle of standing that a party may assert only its own legal interest and not the interest of another").

MBC's production of the Loan Sale Agreement mooted any EEL "claim...that Sea Star's self-billing reports were false, inaccurately reporting the Emerald equipment it used" (D.I. 143 at 2). Because EEL is not a real party in interest and lacks standing to assert the claim for equipment usage, none of its demands could result in production of – or lead to discovery of – admissible evidence. Under the circumstances the Magistrate had no discretion to refuse consideration of SSL's

position; and his footnote refusal is contrary to law.

### 3. Production, Response Requirements.

As stated above, the Magistrate erred in ruling on discovery demands and objections encompassed by the August 23, 2007 Order, granting non-existent EEL motions, and refusing to consider whether and what EEL demands might comply with Fed. R. Civ. P. 26(b)(1). Also contrary to law are Memorandum Order requirements that SSL prepare lists and produce copies of documents described in the Memorandum Order (D.I. 160 at 6-7) and that SSL respond to Interrogatory No. 1 "[a]s to each piece of Emerald [e]quipment for which Emerald has made a claim as alleged in the Counterclaim" after "Emerald assured the Court at the hearing that Sea Star has such a list" specifying "which pieces of equipment are at issue in Emerald's counterclaim..." (D.I. 160 at 9), as well as the provision "narrowing the time frame" for compliance.

Having devised a test with respect to the discovery demanded by EEL, the Court informed EEL's counsel: "I'm expecting to get a dramatic result from this effort by you on a vendor. I'm expecting to see, like, a 50 percent deviation" (D.I. 131 at 24). The Court then issued an Order denying EEL's discovery motions without prejudice (*Id.*). After EEL's attorney alleged that Baxter-produced documents represented "a 42% discrepancy between Sea Star's actual use of Emerald equipment and its reported use of that equipment on its self-billing reports" (D.I. 143 at 2), the Court issued a limited reference Order (D.I. 142).

Examination of the Baxter documents disclosed that EEL's report to the Court overstated the self-billing omissions in its report to the Court. Nonetheless, Magistrate held that the "31-34% deviation between the Baxter vendor bills and Emerald's self-bills passes the [Baxter] test" and is "the type of 'dramatic result' and 'big deviation' [the Court] "intended to require before

10

ordering Sea Star to provide Emerald with additional discovery" (D.I. 160 at 5). How the deviation becomes significant remains unexplained.

It is axiomatic that the discovery sought by EEL must be "reasonably calculated to lead to the discovery of admissible evidence"; and "[a]ll discovery remains subject to limitations imposed by Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(1). Even with respect to permissible discovery, Rule 26(b)(2)(C) requires:

> ...[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative ...;
>
> (ii) the party making discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). Furthermore, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost" under Rule 26(b)(2)(B).

Even assuming *arguendo* that EEL could fashion any claim based on the Baxter "test" and "Sea Star's self-billing reports," SSL pointed out that the Magistrate must question why EEL only "identified 12 bills of lading which identified 12 separate pieces of Emerald equipment which were used by Sea Star to ship freight from or to Baxter" produced in response to the EEL subpoena and why EEL noted that "Equipment piece PRMU 650582 is not on the Emerald invoices since Emerald does not dispute the Sea Star self-billing reports for this particular piece of

equipment." (D.I. 143 at n.2). In its Reply to SSL's Response, EEL marked 65 pieces of EEL equipment involved in shipments between April 29 and September 30, 2002 and referenced in documents produced by Baxter that already have been part of EEL claims (D.I. 151, Ex. "G"). Included in the Exhibit are references to documents produced and Bates-numbered by SSL. With respect to 30 of the units involved in Baxter shipments, SSL is seeking reimbursement for overpayments.

The five pieces of equipment initially identified by EEL as omitted from SSL self-billing reports were located in a San Juan terminal formerly operated by NPR, Inc., an EEL affiliate from which SSL acquired certain assets pursuant to an April 26, 2002 bankruptcy order. According to SSL computer records furnished to EEL, three of the units were erroneously input into the system as shipper-owned on April 29, May 7, and May 18, 2002. EEL's *per diem* rental claims for the three units, which total $1,108.00, violate paragraph 6.3 of the Loan Sale Agreement. For the two other pieces of equipment on-hired but not included in self-billing reports, SSL long ago recognized responsibility to pay stipulated loss values specified in the Rental Agreement but has contested EEL's *per diem* rental claims.

Contrary to intimations in EEL's October 24 letter, deposition excerpts attached to SSL's Response attest that confusion and mistakes as to equipment ownership in the NPR terminal area were rampant before SSL purchased certain NPR assets (D.I. 149, Ex. "J" at 176-77). Francisco Gonzalez, an MBC employee who had worked at the San Juan pier for several years, testified that he and other workers recognized equipment marked with certain prefix lettering as belonging to "Navieras" or "NPR" (*Id.*, Ex. "J" at 17, 74, 174, 175-76). EEL was unknown. After the asset purchase, Gonzalez reminded his MBC supervisors

12

> that gonna be a lot of trouble, because we don't know what kind of equipment is belongs to us or belongs to Sea Star, because Sea Star purchased a lot of equipment. Because sometime we buy, I checked some numbers. No, that belongs to Sea Star. No, that belongs to me. And gets crazy sometimes.

(*Id.*, Ex. "J" at 68-69).

The Memorandum Order does not reveal that the Magistrate fulfilled responsibilities mandated by Rule 26(b). Indeed, the nature and scope of discovery requirements imposed by the Memorandum Order, as well as the lack of substantiation, indicate otherwise. The Magistrate even overruled SSL objections in prior discovery responses that were covered by the August 23, 2007 Order (D.I. 130) and deemed work-product objections, premised on EEL's arguments during the hearing, as "too late" (D.I. 160 at 8-11). Nowhere does the Memorandum Order recognize the legal effect of the Court's Order denying EEL's discovery demands. Even if discovery would be permissible, the Magistrate's unsupported conclusions are clearly erroneous and contrary to law.

4. **Vessel Manifests.**

SSL long ago produced approximately 12,000 pages of its loading guides/equipment manifests which listed not only loaded but also empty cargo equipment (D.I. 158 at 84-85). These documents were subjects of deposition testimony in December 2004. Nevertheless, EEL is demanding "these, what we call, original manifests. They are official documents" (*Id.* at 61). EEL complained to the Magistrate that 12,000 Bate-numbered pages comprising "loading reports or...equipment manifests" produced by SSL "are not the official original manifests that we're talking about that get filed with customs" (*Id.* at 73).

The conclusion that EEL has a private right of action to discover vessel cargo manifests filed with the federal government pursuant to 19 U.S.C. §1431 and 19 C.F.R. §103.31

contravenes canons of statutory construction and regulatory requirements for disclosure. To construe a statute, a court begins with the plain language. *DIRECTV Inc. v. Pepe,* 431 F.3d 162, 167 (3d Cir. 2005). Where "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" we cannot look further. *Id., quoting Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997). A court must attempt to give operative effect to every word. *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 166-67 (2004). *Accord, Lambert v. Blackwell,* 387 F.3d 210, 235 (3d Cir. 2004); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,* 295 F. Supp.2d 430, 436 n.12 (D. Del. 2003)(canons of construction that all statutory provisions intended to have meaning and to be given effect). The Supreme Court has stated:

> It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." ... A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme,"...and "fit, if possible, all parts into an harmonious whole" ....

*FDA v. Brown & Williamson Tobacco Co.,* 529 U.S. 120, 133 (2000), *quoting Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809 (1989); *Gustafson v. Alloyd Co.,* 513 U.S. 561, 569 (1995); *FTC v. Mandel Bros., Inc.,* 359 U.S. 385, 389 (1959). Reasonable interpretations of a statutory scheme by an agency with regulatory expertise in enforcement are entitled to some degree of deference. *National Ass'n of Homebuilders v. Defenders of Wildlife,* ___ U.S. ___, 127 S.Ct. 2518, 2534 (2007).

Neither 19 U.S.C. §1431 nor 19 C.F.R. §103.31 supports the Magistrate's position. Section 1431 specifies the vessel manifest information available for public disclosure and provides for regulation by the Secretary of the Treasury. 19 U.S.C. §1431(c), (d). Regulation subsections 103.31(a) and (c) identify categories of persons who may examine vessel manifests; the regulation

promulgates procedures for examining and obtaining limited information from vessel manifests. The Magistrate has identified no statute that would give EEL a private cause of action to obtain the vessel manifests. E.g., *Swank v. Carnes,* 856 F.2d 1481, 1483 (11th Cir. 1988).

To say that "Sea Star [has not] directed this Court to any authority that would preclude a court from ordering a litigant such as Sea Star from ordering a litigant such as Sea Star from disclosing, in discovery, its copy of vessel manifests" (D.I. 160 at 8) begs the question. Section 103.31, which was cited during the Magistrate's hearing, states: "Members of the public shall not be permitted to examine vessel manifests." 19 C.F.R. §103.31(c). *Gilda Industries v. U.S. Customs & Border Protection Bureau,* 457 F.Supp.2d 6, 13 (D.D.C. 2006), concerned a claim under the Freedom of Information Act ("FOIA")(the court found that the information was exempt from disclosure). In *Trans Pacific Policing Agreement v. U.S. Customs Service,* 177 F.3d 1022 (D.C. Cir. 1999), another FOIA case, the appellate court remanded for a determination as to segregability by the district court. Ordering SSL to produce file copies of vessel manifests filed with the federal government despite express prohibitions is contrary to law.

5. **Clearly Erroneous Findings.**

The following factual statements, apparently adopted or found by the Magistrate, are clearly erroneous:

(a) "Sea Star sends bills to Emerald (or Emerald's creditor), showing which Emerald equipment Sea Star has used, for which Sea Star must pay Emerald (hereinafter 'self-bills') (D.I. 160 at 3).

During the hearing before the Magistrate, EEL stated:

> This suit involves Emerald's claim that Sea Star substantially underpaid Emerald for use of this equipment, and therefore, owes

15

rental charges....

(D.I. 158 at 8, 9). Later EEL later admitted:

> Sea Star prepared these self-billing reports. They sent them to MPC (*sic*), our secured creditor. because they had an assignment of lease. They had relief from stay.
> They [MBC] were entitled to the proceeds....

(*Id.* at 15). At all material times, the acknowledged recipient of rental payments was MBC, not EEL.

   (b) The "31-34% deviation between the Baxter vendor bills and Emerald's self-bills passes the [Baxter] test" and is "the type of 'dramatic result' and 'big deviation' [the Court] "intended to require before ordering Sea Star to provide Emerald with additional discovery" (D.I. 160 at 5).

   (c) "ET Heinsen" was "Sea Star's stevedoring company, used in the Dominican Republic" (*Id.* at 7).

   (d) "Sea Star has such a list" specifying "which pieces of equipment are at issue in Emerald's counterclaim" (*Id.* at 9).

Responding to the Magistrate's inquiry whether EEL has "already provided...that full itemization to Sea Star," EEL said:

> Sea Star has the complete set of invoices,...which we update. When we get additional information, sometimes we correct in their favor.
> And when it's in our favor, we correct it to say that ....

(D.I. 158 at 17-18). "And much of this we've received from Sea Star in the discovery" (*Id.* at 21). Obviously EEL has continued to change its spreadsheets, which "we call...invoices" but are "schedules" (*Id.* at 45).

16

## CONCLUSION

SSL respectfully requests that the Court approve its objections and set aside the Magistrate's Memorandum Order. Further, SSL requests that the Court extend the time for compliance with the requirements of the Memorandum Order until the Court rules on SSL's objections and this Motion. Finally, SSL requests that the Court authorize SSL to deliver computer disks containing vessel manifests for the period May 1, 2002 through June 30, 2002 for determination of segregability in the event the Court decides that production of any manifest information is necessary in addition to the loading guides/equipment manifests previously produced.

|  |  |
|---|---|
|  | SMITH, KATZENSTEIN & FURLOW LLP |
| January 14, 2008 | /s/Kathleen M. Miller |
|  | Kathleen M. Miller (I.D. No. 2898) |
|  | 800 Delaware Avenue, 10th Floor |
|  | P.O. Box 410 |
|  | Wilmington, DE 19899 |
|  | Telephone: 302-652-8400 |
|  | Facsimile: 302-652-8405 |
|  | E-mail: Kmiller@skfdelaware.com |
| OF COUNSEL: |  |
| Timothy J. Armstrong |  |
| Armstrong & Mejer, P.A. |  |
| Suite 1111 Douglas Centre |  |
| 2600 Douglas Road |  |
| Miami, FL 33134 |  |
| Telephone: 305-444-3355 | *Attorneys for Sea Star Line LLC* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of January, 2008 a copy of the foregoing SEA STAR LINE, LLC'S OBJECTIONS AND MOTION TO SET ASIDE MAGISTRATE'S MEMORANDUM ORDER was served on the parties listed below in the manner indicated:

*Facsimile and Email*
ALAN I. MOLDOFF, ESQ.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102
Email: amoldoff@eckertseamans.com

*Efiling*
Ronald S. Gellert, Esq.
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801

　　　　　　　　　　　　　　　　　　/s/Kathleen M. Miller
　　　　　　　　　　　　　　　　　　Kathleen M. Miller (I.D. No. 2898)