**EXHIBIT "E"**

# ECKERT SEAMANS

Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801

TEL 302 425 0430
FAX 302 425 0432
www.eckertseamans.com

Ronald S. Gellert
Direct Dial: 215-569-8506
E-Mail:  rgellert@eckertseamans.com

April 30, 2008

Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Lockbox 26, Room 2325
Wilmington, DE  19801

Re:   **Sea Star Line, LLC v. Emerald Equipment Leasing, Inc.**
      **Case No. 05-CV-00245-(JJF)**

Dear Magistrate Judge Stark:

This letter is respectfully submitted on behalf of Emerald Equipment Leasing, Inc. ("Emerald") in accordance with the procedural guidelines set forth in paragraph 4 of Your Honor's Order dated November 19, 2007 in the above-referenced matter.

## Background

This dispute arises out of the discovery which this Court ordered Sea Star Line, LLC ("Sea Star") to produce in accordance with its Memorandum Order dated December 28, 2007 (Exhibit "A"). The Memorandum Order required that certain discovery including trucker invoices, vessel manifests and a response to Interrogatory No. 1, be provided within 20 days of the date of the Memorandum Order. Rather than provide the discovery, Sea Star filed an Objection to the Memorandum Order (the "Objection"). After considering Emerald's Reply to the Objection and Request For The Imposition of Sanctions, the Objection was overruled by Order of Judge Farnan dated February 21, 2008. A further Memorandum Order (the "Second Memorandum Order") was then issued on March 3, 2008 by Your Honor again ordering Sea Star to produce the requested discovery, this time within 10 days of the date of the second Memorandum Order. The Second Memorandum reserved the issues of sanctions for further proceedings. By cover letter dated March 3, 2008, and subsequently, Sea Star produced certain of the discovery as ordered. However, upon review, and after further various communications (Exhibit "B" is a series of e-mail exchanges between the parties outlining the efforts of the parties to resolve the discovery issues), certain issues still remain.

## Trucker Invoices

The Memorandum Order provided that Sea Star was to produce, inter alia, various trucker invoices. Disputes as to the trucker invoices remain as follows:

1.      In its initial March 3, 2008 document production, Sea Star copied only the front page of the invoices and did not supply attachments which Sea Star would have received from the truckers to show both the container and chassis identification numbers underlying the invoices. Importantly, identification of the equipment pieces was the whole purpose of the discovery request as Emerald's counsel made clear at the December 20, 2007 hearing on this matter (see Exhibit "C"). The partial invoices Sea Star provided, as it had to have known, were useless without this accompanying documentation. After an exchange of e-mails and discussion, Sea Star finally agreed to provide the additional documents.

**ECKERT
SEAMANS**

*Honorable Leonard P. Stark*
*April 30, 2008*
*Page 2*

However, when this additional information was received, Emerald discovered that only about 20% of the invoices in question had the requested backup documentation. Sea Star has responded that it provided the information in its files; however, no reasonable explanation is given as to why it would have the accompanying documentation for 20% of the invoices provided and not for the remaining 80% of the invoices. The additional information for the remaining 80% of the invoices is either in Sea Star's possession or is available to Sea Star and should be provided.

2.      Sea Star states it made a determination of the five largest truckers (by volume) used by Sea Star in the United States based on the dollar amount of the invoices as opposed to the number of loads moved and equipment pieces involved. As Sea Star is well aware, it is the number of loads moved and equipment pieces involved (rather than dollar amount) which would provide the most relevant information in this case. In fact, this, again, was specifically made clear by Emerald's counsel at the hearing in this matter (see Exhibit "C"). Rather than make an issue of this, however, Emerald reserved its right to further address this issue until after its analysis of the documents. Upon further review, Emerald has now become suspect about the selection of truckers made by Sea Star. As shown by the attached schedule prepared by Emerald of the trucking invoices received from Sea Star (Exhibit "D"), the amount of total invoices of Eagle Systems (459) is substantially less than that of the three larger truckers whose invoices were supplied by Sea Star, namely, All Coast (1938); Carolina National (1833) and H&M Trucking (1332). Moreover, there were no invoices from Eagle Systems for either August or September, 2002. Given the huge disparity in terms of number of Eagle Systems invoices provided as compared to the other trucker invoices, it appears suspect that Eagle Systems would be among Sea Star's five largest United States truckers, whether by dollar amount or otherwise.

3.      Emerald's suspicions about Sea Star's good faith increased even more when it reviewed the "fifth trucker" submitted by Sea Star. Sea Star provided invoices from only four United States truckers in its initial production. After Emerald complained, Sea Star provided "invoices" for its "fifth trucker", namely, Caribbean Shipping Service. It is Emerald's understanding that Caribbean is known in the industry as a "non vessel owner container carrier" which acts as a "freight forwarder". Such an entity is not a "trucker" in the traditional sense that it "trucks" goods; rather it contracts for the ocean shipment of goods and then usually engages a "trucker" to move the goods. Caribbean invoices, then, would not generally show any specific equipment, such as containers or chassis used to move the goods in question and were therefore useless. As such, Emerald does not believe Sea Star acted in good faith when it named Caribbean as one of its five largest "truckers". In order to resolve this dispute, Emerald would suggest Sea Star should provide at least two additional set of trucker invoices, which "truckers" Emerald will identify rather than leaving it to Sea Star's discretion.

**<u>Vessel Manifests</u>**

With its March 3, 2008 production, Sea Star provided Emerald a computer disk which contained a number of the vessel manifests requested. After review, however Emerald complained that: (1) it appeared a number of the manifests were "blank"; (2) certain manifests were missing; (3) certain manifests did not appear to be completed; and (4) at least one manifest could not be accessed (opened up") from the disk. In response, Sea Star advised there was some glitch with respect to the initial disk and, accordingly, provided a new manifest computer disk on April 8, 2008. Upon review of the new disk,

**ECKERT SEAMANS**

*Honorable Leonard P. Stark*
*April 30, 2008*
*Page 3*

although the identified "missing manifests" were produced and the other deficiencies apparently cured, there still appeared numerous "blank manifests". Specifically, at least the following vessel manifests were "blank": "Producer" – 5 blank manifests; "Humac" – 2 blank manifest; "Hawaii" – 4 blank manifests; "Guaya" - 5 blank manifests; "Simone J" – 13 blank manifests; "Discoverer" – 3 blank manifests; "Sunshine 2" – 3 blank manifests; and "Island Traider" – 7 blank manifests. In response to Emerald's complaints, Sea Star stated that Emerald did not identify the blank manifests in question (all Sea Star had to do was look at the disk they provided) and then stated that as to the "Simone J" and "Island Trader", the blank manifests are not in Sea Star's computer system (whatever that means). Respectfully, Emerald should not have to "beg" for this information. If Sea Star does not have these "blank" manifests, at the very least, Sea Star should explain why that is so. Moreover, as far as completeness of the manifests are concerned, it is noted that the manifests provided generally, but not always, show a "north" and "south" voyage. Where this is not so, Sea Star should provide an explanation.

**Interrogatory No. 1**

Sea Star provided a response to Interrogatory No. 1 by providing three schedules: one schedule listed information pertaining to equipment Sea Star admits using; one schedule identified equipment Sea Star says it never used; and a third schedule identifying equipment which Sea Star says it is still investigating (this schedule identifies thousands of pieces of equipment which Sea Star asserts amounts to only $450,000.00 of Emerald's claim). Putting aside the issue of Sea Star's incomplete response, Emerald has repeatedly asked that Sea Star provide its schedules in either "word" or "excel" format. They are unworkable in present form (see first page of each schedule attached as Exhibit "E"). Emerald is still waiting.

**Conclusion**

Out of the approximately 500 trucker invoices which Emerald identified as disclosing Sea Star's use of Emerald's equipment, approximately 223 of these invoices included Emerald chassis which were never shown on Sea Star's self-billing reports. Moreover, approximately 28 of the chassis which appeared on the trucker invoices involved Emerald equipment which Emerald had not previously identified as equipment used by Sea Star and now must be added to Emerald's claim. The documentation sought from Sea Star is not only highly relevant, it also indicates the "catch me if you can" nature of Sea Star's defense. These continuing discovery requests should be compelled. Furthermore, in light of the foregoing, Emerald again renews its request for the imposition of sanctions.

Respectfully,

Ronald S. Gellert

RSG/md
Encls.
cc:     Timothy J. Armstrong, Esquire (w/encls.)
        Kathleen M. Miller, Esquire (w/encls.)

**EXHIBIT "A"**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

SEA STAR LINE, LLC,                          :
                                             :
    Plaintiff/                           :
    Counterclaim Defendant,              :
                                             :
    v.                                   :    Civ. No. 05-245-JJF-LPS
                                             :
EMERALD EQUIPMENT LEASING, INC.,             :
                                             :
                                             :
    Defendant/                           :
    Counterclaim Plaintiff.              :

## MEMORANDUM ORDER

    Pending before the Court are various discovery issues that are within the scope of the

order of reference from Judge Farnan to the undersigned magistrate judge. *See* Nov. 2, 2007

Order (D.I. 142) (referring Emerald's Amended Counterclaim to magistrate judge to "regulate

and resolve all pretrial matters, up to and including the pretrial conference, subject to 28 U.S.C. §

636(b)(1)(B) and any further Order of the Court").[1]

    Emerald Equipment Leasing, Inc. ("Emerald") is the Counterclaim Plaintiff/Defendant

and Sea Star Line, LLC ("Sea Star") is the Counterclaim Defendant/Plaintiff.  Emerald was in the

---

[1]Pursuant to Section 636, a magistrate may rule on discovery issues. *See, e.g., Haines v. Liggett Group, Inc.*, 975 F.2d 81 (3d Cir. 1992).  Such orders are subject to review by a district court judge only for clear error of law or fact or abuse of discretion. *See id.*; *Scott Paper Co v. United States*, 943 F. Supp. 501 (E.D. Pa. 1996).

1

business of leasing equipment (e.g., containers, chassis). Sea Star leased equipment from Emerald to use in providing transportation services to Sea Star's customers. Emerald claims that Sea Star substantially underpaid Emerald for the Emerald equipment Sea Star used.

Further background relevant to this action will not be repeated here as it has been previously set forth in: (I) Judge Farnan's January 26, 2006 Memorandum Opinion (D.I. 75) and Order (D.I. 76); (ii) Judge Farnan's April 13, 2006 Memorandum Opinion (D.I. 186) and Order (D.I. 187); (iii) Judge Farnan's August 23, 2007 Order (D.I. 130); (iv) Judge Farnan's November 2, 2007 referral Order (D.I. 142); (v) Magistrate Judge Stark's December 13, 2007 Order (D.I. 155); and (vi) the transcript of the hearing conducted in this matter on December 20, 2007 (D.I. 158 at 4-40).

The pending discovery disputes include Emerald's renewed Motion to Compel Sea Star Line, LLC's Production of Certain Documents (D.I. 115) ("Documents Motion") and Emerald's Motion to Compel Sea Star Line, LLC's Responses to Certain Interrogatories (D.I. 114) ("Interrogatory Motion").[2] Judge Farnan denied Emerald's two motions on August 23, 2007, in deference to the limited third-party discovery Judge Farnan also ordered (i.e. the "Baxter test" discussed below). (D.I. 130)

---

[2]By letter dated October 24, 2007 (D.I. 143), having completed the third-party discovery ordered by Judge Farnan, Emerald renewed its Documents Motion and Interrogatory Motion. The Court finds that the motions have been properly renewed and that Sea Star has had a full and fair opportunity to present its position on the discovery sought by Emerald. *See, e.g.*, Response to Emerald's Submission Regarding Baxter Health Care, Inc. (D.I. 149); Dec. 7, 2007 Letter from K. Miller re: Proposed Scheduling Order (D.I. 153); Dec. 20, 2007 Hrg. tr. (D.I. 158) at 80-94. The Court rejects Sea Star's assertion (D.I. 158 at 78-80) that this District's local rules require Emerald to file a new motion and require Sea Star to be given a chance to file a new response. *See* D. Del. LR 7.1.2 (providing that requests for relief must be presented to the Court by motion "[u]nless otherwise ordered" by the Court); D. Del. LR 1.1(d) ("The application of the Rules in any case or proceeding may be modified by the Court in the interests of justice.").

2

The "Baxter Test"

At a hearing held on August 22, 2007, Judge Farnan permitted Emerald to conduct limited third-party discovery with regard to Sea Star's record-keeping practices as a means to determine the scope of discovery going forward. *See* Aug. 22, 2007 Hrg. tr. (D.I. 131) at 20-30. What came to be known as the "Baxter test" arises from the fact that Sea Star essentially produces two sets of bills: (i) Sea Star sends bills to its customers (e.g. Baxter), charging for transporting its customers' cargo; these bills also include information from which Sea Star can determine the specific pieces of equipment it used to transport its customers' cargo (hereinafter "the vendor bills"); and (ii) Sea Star sends bills to Emerald (or Emerald's creditor), showing which Emerald equipment Sea Star has used, for which Sea Star must pay Emerald (hereinafter "self-bills"). Before ordering Sea Star to comply with what might be burdensome discovery requests, Judge Farnan ordered Emerald to obtain vendor bills from one of Sea Star's customers and report on the amount of discrepancy, if any, Emerald found between that customer's vendor bills and the relevant self-bills.

Judge Farnan explained to Emerald's counsel that the result of this test case would determine whether Emerald would be granted the discovery it was seeking by its Documents Motion and Interrogatory Motion:

> ... What I want you to do, before I order [Sea Star] to do all the things you want [them] to do, which I may do, I think that you ought to come to me and be able to establish that, for instance, through bills of lading, that they short-changed you ... . I want you to pick a customer, go to the customer for payments made to Sea Star, and establish that their customer has better records than they do to demonstrate that your records are correct. ...

3

Now if you establish that representatively, the argument you're making, on this broader scale, I'm gonna allow you to go after them and I'm gonna make them do a lot of work in their documents, but until I'm convinced that it's in their documents and that this path of Discovery you've chosen has some merit to it, in other words, it's gonna give us a fruitful result so you'll get some evidence for the trial, I'm not gonna order them to respond to the kind of broad questioning you've asked for. . . .

. . . I'm saying show it to me by a vendor [i.e. a customer of Sea Star's]. That's all I'm asking you to do. If you show me what you're saying here today by a vendor in an isolated time frame, I'm going to allow you to have at them as broadly as you're asking.

(D.I. 131 at 20-21, 24)

Both parties agree that the Baxter vendor bills show that Sea Star used Emerald equipment that did not appear on the Sea Star self-bills. The Baxter documents show either 70 or 77 pieces of Emerald equipment used by Sea Star.[3] Both sides agree that 24 of these pieces of Emerald equipment that appear on the Baxter vendor bills do not appear on the self-bills Sea Star provided to Emerald. This translates into a 31-34% discrepancy between the vendor bills and the self-bills.

The Court finds that a discrepancy of this magnitude is sufficient to justify requiring Sea Star to provide additional discovery. Simply put, the Baxter test results show that Sea Star failed to tell Emerald about approximately one in every three pieces of Emerald equipment Sea Star used to transport Baxter cargo. These results strongly suggest that Sea Star has documents (e.g. vendor bills) that corroborate Emerald's claim that Sea Star used more Emerald equipment than it paid Emerald to use. Such documents are, at minimum, "relevant to the claim or defense" of

---

[3]In its written submission, Sea Star said the Baxter documents pertain to "at least 70 pieces of [Emerald] equipment." (D.I. 149 at 9) At the hearing, Sea Star argued that the Baxter vendor bills show 77 pieces of Emerald equipment being used by Sea Star. (D.I. 158 at 55)

4

the parties, and their production is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Sea Star objects to this conclusion primarily on the grounds that "Judge Farnan set the significant bar a lot higher" than 31-34%. (D.I. 158 at 55-56)  In response to Sea Star's argument, it must first be pointed out that Judge Farnan refrained from ruling on whether Emerald passed the Baxter test and expressly referred that question to the magistrate judge. (D.I. 150 at 4-7)  In any event, the Court believes that Judge Farnan would find that the 31-34% deviation between the Baxter vendor bills and Emerald's self-bills passes the test because Judge Farnan did not appear to ascribe significance to any particular figure.  It is true that at one point Judge Farnan said: "I'm expecting to get a <u>dramatic result</u> from this effort by you on a vendor. <u>I'm expecting to see, like, a 50 percent deviation</u>." (D.I. 131 at 24 (emphasis added))  Elsewhere, however, Judge Farnan formulated a hypothetical in which he contemplated a 40% discrepancy and suggested this amount would satisfy the test. (D.I. 131 at 22) ("Then why did the customer pay them [Sea Star] for the other 40 percent?  That's gonna cause me to really agree with you [Emerald] and make them [Sea Star] do a lot of work to get into their files, their invoicing, their accounting records.").  In other places Judge Farnan spoke even more generally, stating: "If there's <u>a big deviation</u>, you [Sea Star] got a problem" and "If they [Emerald] show <u>a deviation</u>, then you're not being candid in Discovery, and you'll get hurt here." (D.I. 131 at 25, 29 (emphasis added))

Again, the Court believes that Judge Farnan would find 31-34% to be the type of "dramatic result" and "big deviation" he intended to require before ordering Sea Star to provide Emerald with additional discovery.  In any event, this Court is satisfied that the results of the

Baxter test justify requiring Sea Star to produce additional discovery.[4]

Documents Motion

Based on the results of the Baxter test, Emerald has narrowed the document discovery it now seeks. While Emerald originally sought to compel documents responsive to twenty-six of its document requests (Nos. 5, 6, 8, 10-12, 23-42), Emerald now seeks to compel production only of documents sought by Request No. 5. (D.I. 158 at 70-71) Emerald has also crafted three new document requests, again tailored to the results of the Baxter test. (D.I. 151; D.I. 152; D.I. 158 at 68-70)

The Court will grant the document discovery Emerald seeks (though narrowing the time frame). The Court finds that Emerald's three requests for additional document discovery, and its original Request No. 5, seek documents that are relevant and reasonably calculated to lead to the discovery of admissible evidence.

Specifically, Sea Star is required to produce, within **twenty (20) days of the date of this Order**,[5] the following:

---

[4]Sea Star devoted much of its written response to the Baxter test to legal arguments challenging Emerald's ability even to litigate its counterclaims. (D.I. 149 at 1-9) Sea Star argued that Emerald "does not have the right to assert a claim for usage of the Emerald [e]quipment and thus, its request for additional discovery should be denied." (D.I. 149 at 3) While Sea Star's analysis is difficult to understand, to the extent Sea Star is arguing that Emerald lacks standing to press its counterclaims because a portion of the proceeds from any judgment will go to Emerald's creditors, or is arguing that Sea Star made payments to Emerald's creditors and therefore Emerald's counterclaims will fail, the Court is not persuaded that, at this time, these contentions are bases for denying discovery.

[5]While Federal Rule of Civil Procedure 34 ordinarily allows for 30 days to respond to requests for production of documents, that time frame may be shortened by court order. Here, given that: this case has been pending in one form or another since March 1, 2004; Emerald

A.    All invoices, bills, or other similar documents between Sea Star and trucking companies used for the movement of containers to or from Baxter, for the time period April 29, 2002 through September 30, 2002. These documents should not just pertain to the specific Emerald equipment identified in the Baxter documents, but to all equipment.

B.    A list identifying the five (5) largest trucking companies (by volume) used by Sea Star in the United States and the three (3) largest trucking companies used by Sea Star in Puerto Rico for the ·period April 29, 2002 through September 30, 2002. As to those five (5) largest trucking companies in the United States and the three (3) largest in Puerto Rico, Sea Star shall provide copies of all invoices exchanged between Sea Star and those companies for services rendered between April 29, 2002 and September 30, 2002.

C.    Copies of all invoices exchanged between Sea Star and ET Heinsen, Sea Star's stevedoring company, used in the Dominican Republic, as well as any and all invoices from any company involved with loading, discharge or movement of any containers and/or chassis and/or gen sets from April 29, 2002 through September 30, 2002.

D.    For the period May 1, 2002 through June 30, 2002, any and all copies of all original vessel manifests for each vessel that carried any containers, chassis or generators on Sea Star vessels directly, as an interline, or as a slot charter from or to any port.

Sea Star has objected to Emerald's original Request No. 5 as "overbroad, harassing, outside the scope of legitimate discovery, and not calculated to discovery of admissible evidence." (D.I. 115 Ex. A) The Court overrules these objections for the reasons already explained.

---

served its document request on Sea Star a year ago in December 2006 (D.I. 103-04); Emerald moved to compel production of documents sought by its document request more than seven months ago in May 2007 (D.I. 115); Judge Farnan put Sea Star on notice more than four months ago at the August 2007 hearing that, depending on the results of the Baxter test, Sea Star might have to do a lot of work to produce documents; the parties have agreed to a discovery cut-off of March 1, 2008, which is barely more than two months away; and trial will be held in April 2008, the Court finds ample reason to shorten the time allowed for responses to 20 days.

7

Starting with its response to Emerald's Documents Motion, Sea Star has asserted, without explanation, that providing Emerald copies of Sea Star's vessel manifests would be "prima facie illegal." (D.I. 119 at 3)  The authorities to which Sea Star cites do not appear to be applicable. *See* 19 U.S.C.A. § 1431(c) (providing that certain information contained in vessel manifests "shall be available for public disclosure" unless exempted from disclosure by other statute or Secretary of Treasury makes finding on shipment-by-shipment basis that disclosure poses threat); 19 C.F.R. § 103.31(c) (delineating circumstances under which members of the public and others may examine vessel manifests in possession of Bureau of Customs and Border Protection); *see also generally Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1024 (D.C. Cir. 1999) (noting that the information contained in the carrier-prepared Inward Vessel Manifest is "regularly released for public distribution under Customs regulations"); *Gilda Indus., Inc. v. United States Customs and Border Prot. Bureau*, 457 F. Supp. 2d 6, 12 (D.D.C. 2006) (citing 19 U.S.C. § 1431 and 19 C.F.R. §103.31 and stating that "the [inward] vessel manifest information, unlike the Import Declaration, is available to the public").  Nor has Sea Star directed this Court to any authority that would preclude a court from ordering a litigant such as Sea Star from disclosing, in discovery, its copy of vessel manifests.  Therefore, Sea Star's "prima facie illegal" objection to Request No. 5 is also overruled.[6]

Except as otherwise provided above, the Documents Motion is DENIED.

---

[6]To the extent Sea Star believes that, in order to comply with the statute and regulation it has cited, it must redact certain information in the vessel manifests and/or obtain modification of the confidentiality order already entered in this case (D.I. 135), it should work with Emerald to establish a mechanism to address these concerns.  In the event the parties cannot resolve this issue themselves, they should present it to the Court pursuant to the procedures set forth in paragraph 4 of the Court's November 19, 2007 Order (D.I. 146).

Interrogatory Motion

The Interrogatory Motion sought to compel responses to six interrogatories (Nos. 1, 2, 4, 6, 8-9). At the hearing (D.I. 158 at 75) Emerald narrowed its request to an order compelling a response to Interrogatory No. 1, which seeks:

> As to each piece of Emerald [e]quipment for which Emerald has made a claim as alleged in the Counterclaim, please state whether Sea Star admits using such piece of Emerald [e]quipment and, if so, the date Sea Star first used the equipment, the date the piece of Emerald [e]quipment was returned by Sea Star to Emerald, and identify for each such piece of equipment any document which evidences Sea Star's initial use of that piece of equipment and the return of such piece of equipment to Emerald.

Sea Star objected to Interrogatory No. 1 as "overbroad, harassing, and not calculated to lead to discovery of admissible evidence." (D.I. 114 Ex. A at 2) The Court overrules these objections for the reasons set forth above. Sea Star had also objected that Emerald had failed to specify which pieces of equipment are at issue in Emerald's counterclaim (*see id.*), but Emerald assured the Court at the hearing that Sea Star has such a list (D.I. 158 at 75), and Sea Star did not argue otherwise or renew this objection.

Sea Star has also argued that to respond to Interrogatory No. 1 would be tantamount to responding to thousands of interrogatories, a number far exceeding the number of interrogatories authorized by the Federal Rules of Civil Procedure and the Scheduling Order in this case (D.I. 99). According to Sea Star, interrogatories just are not available in a case like this, where both parties agree that the subject matter of their dispute consists of thousands of pieces of equipment. (D.I. 158 at 87-88)

The Court does not agree. Sea Star's position is inconsistent with the spirit of the Rules of Civil Procedure, which are designed to eliminate surprise at trial. *See, e.g., Gary Plastic*

9

*Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re U.S. Truck Co. Holdings, Inc.)*, 756 F.2d 230, 236 (2d Cir. 1985) ("Discovery serves important purposes, such as avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying, and framing the issues involved, and enabling parties to obtain the factual information needed to prepare for trial. Rules governing discovery should be interpreted broadly to achieve those purposes.") (internal citation omitted); *Hercules Powder Co. v. Rohm & Haas Co.*, 4 F.R.D. 452, 453 (D. Del. 1946) ("[I]n determining a motion under Rule 34 and in framing its order, the court should be guided primarily by the spirit of the Federal Rules which requires that discovery before trial be made wherever possible.") (internal quotation marks omitted). Interrogatory No. 1 is a focused effort to flesh out the issue that will be the subject of trial: how much was each piece of equipment used and how much did Sea Star report it was used. If Emerald's claims that Sea Star vastly under-reported its use of Emerald's equipment have merit, Sea Star should not be able to avoid liability – or even increase the difficulty Emerald would have in proving liability – simply because Sea Star's misdeeds extended to a large number of pieces of equipment. *See generally* Fed. R. Civ. P. 33, Adv. Comm. Notes. (1993 Ams.) ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication. . . . [Moreover,] leave to serve additional interrogatories is to be allowed when consistent with Rule 26(b)(2). The aim is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device. In many cases it will be appropriate for the court to permit a larger number of interrogatories . . . .").

Finally, Sea Star now argues that to require it to answer Interrogatory No. 1 would

deprive it of attorney work product protection. (D.I. 158 at 67)  This objection comes too late. Sea Star did not raise a work product objection in its original response to the interrogatory request or in its response to the Interrogatories Motion. (D.I. 118 at 3)  Nor, in any event, has Sea Star met its burden to assert work product protection. *See* Fed. R. Civ. P. 26(b)(5)(A). Moreover, even if Sea Star's objection were not untimely, Fed. R. Civ. P. 26(b)(3) permits a party to obtain discovery of work product "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Under the circumstances described in this Order, it may be that Emerald could make such a showing.

Accordingly, with respect to Emerald's renewed Motion to Compel Sea Star Line, LLC's Responses to Certain Interrogatories (D.I. 114), Emerald's request regarding Interrogatory No. 1 is GRANTED, and Sea Star shall respond thereto **within twenty (20) days of the date of this Order**. *See supra* n.5.  In all other respects, the Interrogatory Motion is DENIED.


Additional Discovery

Emerald intends to seek, at most, two additional depositions: (I) a records custodian, pursuant to Fed. R. Civ. P. 30(b)(6); and (ii) William Lauderdale. (D.I. 158 at 76-77)  Sea Star has indicated that it may have objections to one or both of these depositions. (D.I. 158 at 89-90) At this point, when there has been neither a notice of deposition or a subpoena, there is nothing on which the Court can rule. If Emerald decides to seek to depose a records custodian and/or Mr. Lauderdale, and if Sea Star objects to one or both of these depositions, the parties should present

their dispute to the Court in accordance with the procedure set forth in paragraph 4 of the Court's November 19, 2007 Order (D.I. 146).

No depositions other than those of a records custodian or Mr. Lauderdale, or those that had been noticed or agreed-upon prior to December 20, 2007, shall be taken without leave of the Court. All discovery on the issues raised by Emerald's counterclaim shall be completed no later than March 1, 2008. Other than discovery that had been initiated prior to the December 20, 2007 hearing, or what has been compelled by this Order, no additional discovery is permitted.

Dated: December 28, 2007

_____
Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE

12

**EXHIBIT "B"**

Alan I Moldoff/ESCM
03/19/2008 05:37 PM

To    amesq@aol.com

cc    kmiller@skfdelaware.com, gschildhorn@eckertseamans.com

bcc   lrobins@holtoversight.com

Subject   Sea Star - Emerald

**ECKERT
SEAMANS**
www.eckertseamans.com

Tim,

As we discussed yesterday at the time of the Sea Star 30 (b)(6) deposition, Sea Star is going to provide the the requested documentation for the fifth largest trucker used by Sea Star in the U.S. which was not previously provided in accordance with Magistrate's Memorandum Order. My understanding, based on what was disclosed during the deposition yesterday is that Sea Star made a determination of the five largest truckers(by volume) used by Sea Star in the United States based on the dollar amount of the invoices as opposed to the number of loads moved and equipment pieces involved, which as you know, is really what is at issue in this case. We reserve the right to further address this issue after our analysis of the documents. More importantly, however, at the moment, is the documents themselves which were supplied. Again, as was discussed at and during the deposition yesterday, Sea Star only supplied the front page of the invoices and did not supply any accompanying documents with the invoices which Sea Star would have received from the truckers which would show both the container and chassis identification numbers underlying the invoices. You are well aware that this information was the whole purpose of the discovery requests. This was specifically discussed at the hearing on this matter. Instead, Sea Star gave copies of partial invoices (without any accompanying documents) and not the originals, which included the relevant information. The documents, then, which should have been provided include the invoices which would include the accompanying documentation received by Sea Star with those invoices to show the equipment piece (chassis, containers and/or or gen sets) used. Please let me know by tomorrow whether this documentation will be immediately produced in full or whether we will require Court intervention. Thank you.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

Alan I Moldoff/ESCM
03/21/2008 01:11 PM

To    amesq@aol.com

cc

bcc   gschildhorn@eckertseamans.com

Subject   Sea Star - Emerald

**ECKERT SEAMANS**
www.eckertseamans.com

Tim,

With respect to the Supplemental Answer to Interrogatory No. 1, we would like to have this sent to us in Excel or Word format. Please let me know if you will provide this. Thanks.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice.  Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein.  Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties.  Please contact one of the Firm□s Tax partners if you have any questions regarding federal tax advice.

Alan I Moldoff/ESCM
03/21/2008 12:50 PM

To    Amesq@aol.com
cc    KMM@skfdelaware.com
bcc   gschildhorn@eckertseamans.com
Subject   Re: Sea Star - Emerald

**ECKERT
SEAMANS**
www.eckertseamans.com

Tim,

I received your 5 e-mails with attachments but have not yet reviewed them in detail. Please respond to my e-mail of 3/19/08 as to whether you will be producing the other documents which relate to the invoices. In other words, the invoices together with the backup documents containing the relevant information should be provided. I will be out of the office on Monday but in on Tuesday and I want to get this resolved one way or another.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice.  Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein.  Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties.  Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

Amesq@aol.com



Amesq@aol.com
03/21/2008 08:45 AM

To    AMoldoff@eckertseamans.com
cc    KMM@skfdelaware.com
Subject   Re: Sea Star - Emerald

Alan:
    Did you receive the documents through SE75820?
Regards,
Tim Armstrong

Alan I Moldoff/ESCM
03/26/2008 10:24 AM

**ECKERT SEAMANS**
www.eckertseamans.com

To   "Kathleen Miller" <KMM@skfdelaware.com>
cc   gschildhorn@eckertseamans.com
bcc  lrobins@holtoversight.com
Subject  Re: SSL 

Kathy,

The primary issue is whether we are going to get the other documents with the trucker invoices which show all the equipment used, including chassis. This is simply a yes or no. If it's "no", I want to call the Magistrate's office today to get a date and time for a hearing so we don't waste any more time. I have been asking for this since a week ago Friday. Please let me know on this. Thanks.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

"Kathleen Miller" <KMM@skfdelaware.com>

"Kathleen Miller"
<KMM@skfdelaware.com>
03/26/2008 08:54 AM

To   Alan I Moldoff/ESCM@ESCM
cc
Subject   SSL

Alan
Tim is tied up in mediation. We will get a response to you on each point tomorrow.

*Kathy*

Kathleen M. Miller

Alan I Moldoff/ESCM
04/01/2008 04:48 PM

**ECKERT**
**SEAMANS**
www.eckertseamans.com

To    KMM@skfdelaware.com
cc    gschildhorn@eckertseamans.com
bcc   lrobins@holtoversight.com
Subject   Sea Star - Emerald

Kathy,

As we discussed today, I am still waiting for an e-mail version of the exhibits to the Sea Star Response to Interrogatory No. 1 in Excel or Word format. Please let me know the status of this.

Also, as I mentioned to you previously, our review of the manifests on the disk produced by Sea Star indicates that there are numerous manifests, that when opened, are blank. For example, most of the voyages listed for the Simone J have "blank" manifests. Please find out why this is so and let me know. In addition, certain manifests do not appear to have end pages which would show the total counts for the equipment listed and as such appear to be incomplete manifests. Our review indicates that this is the case for at least the following manifests: Elyun 269 S; Elyun 273 S; Elmor 264 S; and Elmor 270 S. Also, the following manifests will not open: Crusader 64 S and Elmor 268 S. Furthermore, our review indicates that although load summaries were provided, there were no manifests provided for at least the following voyages: Hawaii 216 S; Guaya 584 N; Hu 565 N; Hu 567 S; Island Trader 12 N. Finally, attached is a list of voyages where we have so far determined that it appears we have received manifests but no load summaries. Please get back to me by Thursday with responses to these open issues regarding the missing/incomplete documentation. Thanks.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

Alan I Moldoff/ESCM
04/07/2008 01:49 PM

To   KMM@skfdelaware.com

cc   gschildhorn@eckertseamans.com

bcc

Subject   Fw: Sea Star - Emerald

**ECKERT
SEAMANS**
www.eckertseamans.com

Kathy,

I never got a response to the below inquiry regarding discovery. If I don't get a response today, we will have to call Magistrate Stark to set up conference call/hearing per his procedures.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice.  Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein.  Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties.  Please contact one of the Firm⎕s Tax partners if you have any questions regarding federal tax advice.

----- Forwarded by Alan I Moldoff/ESCM on 04/07/2008 01:46 PM -----

Alan I Moldoff/ESCM
04/01/2008 04:48 PM

To   Kathleen Miller

cc   gschildhorn@eckertseamans.com

Subject   Sea Star - Emerald

**ECKERT
SEAMANS**
www.eckertseamans.com

Kathy,

As we discussed today, I am still waiting for an e-mail version of the exhibits to the Sea Star Response to Interrogatory No. 1 in Excel or Word format. Please let me know the status of this.

Also, as I mentioned to you previously, our review of the manifests on the disk produced by Sea Star indicates that there are numerous manifests, that when opened, are blank. For example, most of the voyages listed for the Simone J have "blank" manifests. Please find out why this is so and let me know. In addition, certain manifests do not appear to have end pages which would show the total counts for the equipment listed and as such appear to be incomplete manifests. Our review indicates that this is the case for at least the following manifests: Elyun 269 S; Elyun 273 S; Elmor 264 S; and Elmor 270 S. Also, the

Alan I Moldoff/ESCM
04/17/2008 02:33 PM

**ECKERT SEAMANS**
www.eckertseamans.com

To   KMM@skfdelaware.com, amesq@aol.com
cc   gschildhorn@eckertseamans.com
bcc   lrobins@holtoversight.com
Subject   Sea Star - Emerald

Kathy/Tim,

We have had some opportunity to review the various discovery responses made by Sea Star as ordered by Magistrate Stark. Upon our review so far, there are still issues which need to be resolved. They are:

1. Review of the new disk provided by Sea Star which is supposed to contain all original vessel manifests for the period May 1, 2002 through June 30, 2002 for each vessel that carried any containers, chassis, or generators on Sea Star vessels directly, as an interline, or as a slot charter from or to any port (the "Manifests") indicates that a substantial number of the Manifests provided are "blank", i.e., there is only a cover page and then no information following. I raised this issue several weeks ago after we received the first Manifest disk. The new disk provided by Sea Star has the same "blank" Manifests. No explanation for these "blank" Manifests has ever been provided.

2. In addition, there still appear to be missing Manifests. While the new Manifest disk Sea Star provided contained the "missing' Manifests we previously were able to identify, there still appear to be additional missing Manifests. For example, a cursory review of the documents provided by Baxter shows the transport of Baxter goods by Sea Star on voyages for which Manifests were not provided. These appear to include: Humacao 567 N; Mayaguez 565 N; and Elyun 257 N. We should not have to identify the voyages for Sea Star. Rather, Sea Star is supposed to comply with the Magistrate's discovery order to provide all Manifests for the relevant time period. It did not comply initially and it appears it still has not complied after its second attempt.

3. With respect to the 7 boxes of truck invoices recently provided relating to the truckers Sea Star identified as the five largest (by volume) "trucking companies" used by Sea Star in the U.S., it appears that only about 20% of the invoices had any backup material/documentation to show the equipment pieces used. As you know, Sea Star initially provided only the cover sheet for the invoices without any of the additional information to show the equipment pieces used, which, of course, was the reason for the discovery in the first place. Now, although some of this back up documentation was finally provided, most of the invoices have none of the backup information to show the equipment pieces used similar to the documentation for approximately 20% of the invoices which was provided. Where is this additional information?

4. Furthermore, I am advised that one of the "trucking companies" for which Sea Star provided invoices - namely Carribean Shipping Services - is not really a "trucking company". Rather, it is my understanding Caribbean Shipping provides services which include engaging truckers to move the cargo. As such, it appears the invoices from Carribean Shipping will not identify the equipment pieces used to move the cargo since they are not the "trucker' moving the cargo. As you know, I earlier discussed my concern with you that apparently Sea Star identified the largest trucking companies by volume in terms of dollar amount of services provided, as opposed to measuring volume by quantity of loads moved. It is the quantity of moves which would identify the most equipment involved, as was the clear intent of the discovery request. The fact that Sea Star identified Carribean Shipping as a "trucking company", whose invoices would not contain any of the equipment information sought by Emerald, just adds to my concerns.

5. Finally, we still have not received the schedules attached to Sea Star's response to Interrogatory No. 1 in word or excel format. Furthermore, Sea Star still has not provided the requested information for all of the equipment identified on Schedule C of its response.

It has been weeks since the above information was supposed to have been supplied by Sea Star as ordered by Magistrate Stark. If a suffcient response to resolve these issues are not given by tomorrow,

Emerald will request that Magistrate Stark schedule a telepone hearing to resolve these issues.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.




Amesq@aol.com
04/21/2008 05:22 PM

To   Alan I Moldoff/ESCM@ESCM
cc   KMM@skfdelaware.com
bcc
Subject   Sea Star - Emerald

Alan:
    In response to your e-mail, I am furnishing the following information:

    1.  You have not identified the "substantial number of the Manifests provided" that allegedly are "blank". As to the "Simone J" and "Island Trader", each "cover page" is in reference to a manifest that is not in the Sea Star computer system; Sea Star long ago produced Bates-numbered copies of the documentation prepared and provided by the carriers for voyages during the relevant period. The "Hawaii" is a Horizon vessel, and Sea Star has no Horizon manifest for a voyage 216 north.

    2.  Your "cursory review" should have confirmed that the manifest for voyage 257 north is included in the disk that you received. To our knowledge voyages 565 north and 567 north are outside the period covered by the Order.

    3.  Sea Star initially provided – and you received – 5870 pages of invoices, not "only the cover sheet for the invoices", from the five trucking companies doing the greatest monetary volume of business with Sea Star during the relevant period. Rather that raise an issue regarding your definitions of "invoice", however, Sea Star accommodated your demands and sent Kathleen Miller, Esq., the actual files from which the invoices were extracted, copied, and Bates-stamped for inspection by you and your client. These files include not only the invoices but also the other materials furnished to Sea Star by the truckers. Whether or not the "backup documentation" to "most of the invoices have none of the backup information to show the equipment pieces used similar to the documentation for approximately 20% of the invoices which was provided", the predicate for your question as to "additional information" remains undisclosed. Are you now accusing Sea Star of failing to produce not only the invoices but also the other documentation received from truckers and stored for several years in the ordinary course of business? If you are not, your recourse would be to the truckers, as well as other materials previously produced.

    4.  Please disclose the factual basis for your assertion that "Caribbean Shipping Services – is not really a 'trucking company'". Whatever your concerns may be, your assumption that the documentation furnished by the truckers with their invoices necessarily would have been uniform or would "contain any of the equipment information sought by Emerald" is incorrect.

    5.  Under separate cover I am sending you updated Schedules to the answer to Interrogatory No. 1.
Regards,
Tim Armstrong



Timothy J. Armstrong, Esq.
Armstrong & Mejer, P.A.
2222 Ponce de Leon Blvd.
Penthouse
Coral Gables, FL 33134
Telephone: 305-444-3355
Telefax: 305-442-4300
E-Mail: tarmstrong@armstrongmejer.com

Alan I Moldoff/ESCM
04/23/2008 10:56 AM

**ECKERT
SEAMANS**
www.eckertseamans.com

To    Amesq@aol.com

cc    KMM@skfdelaware.com, gschildhorn@eckertseamans.com

bcc   lrobins@eckertseamans.com

Subject   Re: Sea Star - Emerald 

Tim,

Emerald believes the responses you provided below to the issues raised are inadequate. Please let me know when you or Kathy Miller will be available to contact Magistrate Stark's office today so we can schedule a conference call pursuant to the procedures Magistrate Stark set forth in his Order. Thanks.

PLEASE NOTE THAT AS OF JULY 17, 2007, MY PHONE NUMBER AND ADDRESS HAVE CHANGED AS SET FORTH BELOW.

Alan Moldoff, Esquire

Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

215-851-8450 (phone)
215-851-8383 (fax)
amoldoff@eckertseamans.com

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firms Tax partners if you have any questions regarding federal tax advice.

Amesq@aol.com

Amesq@aol.com
04/21/2008 05:22 PM

To    Alan I Moldoff/ESCM@ESCM

cc    KMM@skfdelaware.com

Subject    Sea Star - Emerald

Alan:
In response to your e-mail, I am furnishing the following information:

1. You have not identified the "substantial number of the Manifests provided" that allegedly are "blank". As to the "Simone J" and "Island Trader", each "cover page" is in reference to a manifest that is not in the Sea Star computer system; Sea Star long ago produced Bates-numbered copies of the documentation prepared and provided by the carriers for voyages during the relevant period. The "Hawaii" is a Horizon

**EXHIBIT "C"**

1

```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE


SEA STAR LINE, LLC, a        )
limited liability company,)
                             )
              Plaintiff,     )
                             )  C.A.  No. 05-CV-245-JJF
    v.                       )
                             )
EMERALD EQUIPMENT LEASING )
INC, a corporation,          )
                             )
              Defendant.     )
                             )
    v.                       )
                             )
SEA STAR LINE, LLC.,         )
                             )
Counterclaim Defendant.      )
```

COPY

```
              Thursday, December 20, 2007
              10:00 a.m.
              Courtroom 2A


           ,  844 King Street
              Wilmington, Delaware


BEFORE:    THE HONORABLE LEONARD P. STARK
           United States District Court Magistrate


APPEARANCES:

           SMITH, KATENSTEIN & FURLOW, LLP
           BY:  KATHLEEN M. MILLER, ESQ.

                 -and-

           ARMSTRONG & MEJER, P.A.
           BY:  TIMOTHY J. ARMSTRONG, ESQ.

                 Counsel for the Plaintiff
```

1          MR. ARMSTRONG:  Thank you.

2          THE COURT:  Thank you.

3          All right.  We'll, again, let's move

4     onto specifically if I find that you've passed

5     the Baxter test, where does that leave us on what

6     I would then be ordering Sea Star to do?

7          MR. MOLDOFF:  Let me start first

8     with the three limited requests that I had put

9     into, I think, my reply and into the proposed

10    order, because they really probably relate also

11    to some of the requests, in any event.

12          As I indicated previously, the

13    customer information only gives us containers.

14    And my client believes that documents that will

15    give us both containers and chassises -- and

16    there are a lot of chassises involved -- would be

17    even more helpful.

18          So the first of the limited requests

19    is to ask Sea Star to produce invoices or other

20    similar documents between Sea Star and trucking

21    companies which they used for the movement of the

22    containers to or from Baxter.

23          And I specifically state that these

24    bills, that these invoices, I guess I should say,

```
1     should not just pertain to the specific Emerald

2     equipment, but to all equipment.  And the reason

3     is that just because it's an Emerald container

4     doesn't mean that it needs an Emerald chassis.

5     It could be somebody else's container, and you

6     can use an Emerald chassis to move it.

7               So, you know, we received all this

8     information about all the various containers that

9     were involved with the movement of Baxter goods.

10    We would like the invoices, which will show us

11    the invoices, which will show us the chassises by

12    which all of those containers, whether they were

13    Emerald containers or not moved.  So that's the

14    first one.

15              Along the same line, in order to

16    make this manageable, my client has asked that

17    Sea Star identify its five largest trucking

18    companies by volume, meaning not by the dollar

19    amount, but by the amount of equipment moved,

20    which was used by Sea Star in the United States,

21    and three of the largest trucking companies by

22    volume used by Sea Star in Puerto Rico.  And,

23    again, we would like the same information.

24              Now, in my request again, to try to
```

```
 1    be reasonable and make it more manageable because

 2    a lot of this movement I think occurred

 3    initially.  I limited it to April 29th, 2002

 4    through September 30th, 2002, trying to make this

 5    manageable for Sea Star, for us.

 6              So that's the second request.

 7              The third one is with respect to

 8    stevedoring requests or invoices, and that is to

 9    ask for copies of all the invoices from ET

10    Heinz.  And that is a company that Sea Star used

11    as their stevedoring in the Dominican Republic,

12    as well as any other invoices from any other

13    stevedoring involved with the loading and

14    discharge or movement of containers, again in the

15    Dominican Republic, that I had -- I thought that

16    it could cover the whole period I have through

17    November 1st, 2003.

18              I think that is the last day that

19    they actually were supposed to be using the

20    equipment.  After that, they were supposed to

21    return it to us.

22              But, and that's the limited request.

23    That really takes care of the document requests,

24    except for number five, which is somewhat
```

**EXHIBIT "D"**

**Sea Star Line Document Production**
All Invoices from their Largest Truckers in the States
Period Covered May through September, 2002

| Trucker | Bates Numbers | Total Sheets | April | May | June | July | August | Sept | Other | Total | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ACIS | 71862-71939 | 78 | | 9 | 28 | 41 | | | | 78 | Nov.2001 |
| | 72127-72452 | 326 | | 3 | 32 | 45 | 158 | 91 | 24 | 329 | 276 Prev Apr 26 |
| | 72453-72533 | 81 | | | | 65 | 13 | | 3 | 81 | 69 Prev Apr 26 |
| | 72535-72806 | 272 | | | 29 | 51 | 101 | 91 | | 272 | |
| | 73747-74195 | 446 | 16 | 156 | 167 | 103 | 4 | | | 446 | |
| | 73760/61 and 73936 | 3 | | | 3 | | | | | 3 | |
| | 74196-74471 | 276 | 4 | 147 | 68 | 32 | | | | 276 | |
| | 74605-74673 | 69 | 5 | 45 | | | | | 19 | 69 | |
| | 74906-74947 | 387 | 52 | 229 | 69 | 32 | 1 | | 7 | 390 | 2Nov 5Mar |
| | **Total ACIS** | 1938 | 77 | 589 | 396 | 369 | 278 | 182 | 53 | 1944 | |
| Carolina Nat'l | 70001-70119 | 119 | | | | 119 | | | | 119 | |
| | 70120-70148 | 29 | | | | | | | 29 | 29 | All 2001 |
| | 70149-70499 | 351 | | | | 107 | 25 | 219 | | 351 | |
| | 70500-70999 | 500 | | | 114 | 146 | 240 | | | 500 | |
| | 71000-71197 | 198 | | | 198 | | | | | 198 | |
| | 71657-71861 | 205 | 132 | 73 | | | | | | 205 | |
| | 73256-73305 | 50 | | 4 | 46 | | | | | 50 | |
| | 73366-73746 | 381 | | 381 | | | | | | 381 | |
| | **Total Carolina** | 1833 | 132 | 458 | 358 | 372 | 265 | 219 | 29 | 1833 | |
| Eagle Systems | 71198-71656 | 459 | | 87 | 206 | 166 | | | | 459 | |

| Trucker | Bates Numbers | Total Sheets | April | May | June | July | August | Sept | Other | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| H & M Trucking | 71940-72126 | 187 | | 3 | 33 | 20 | 6 | 125 | | 187 |
| | 72807-73255 | 449 | | 114 | 105 | 193 | 37 | | | 449 |
| | 74472-74604 | 133 | | 27 | 2 | 104 | | | | 133 |
| | 74674-74905 | 231 | | | | 12 | 175 | 44 | | 231 |
| | 74948-74999 | 52 | | 8 | 8 | 1 | 35 | | | 52 |
| | 75000-75279 | 280 | | 26 | 13 | 166 | 49 | 26 | | 280 |
| | Total H & M | 1332 | | 178 | 161 | 496 | 302 | 195 | | 1332 |
| Grand Totals | | 5562 | 209 | 1312 | 1121 | 1403 | 845 | 596 | 82 | 5568 |

**EXHIBIT B**

| Unit_Number |
| --- |
| FFFZ049307 |
| FVICC047770 |
| FVIC083811 |
| JSCZ040516 |
| PRGS001000 |
| PRGS001002 |
| PRGS001004 |
| PRGS001014 |
| PRGS001017 |
| PRGS001022 |
| PRGS001034 |
| PRGS001035 |
| PRGS001036 |
| PRGS001037 |
| PRGS001039 |
| PRGS001040 |
| PRGS001042 |
| PRGS001045 |
| PRGS001046 |
| PRGS001047 |
| PRGS001051 |
| PRGS001056 |
| PRGS001057 |
| PRGS001060 |
| PRGS001061 |
| PRGS001063 |
| PRGS001064 |
| PRGS001065 |
| PRGS001066 |
| PRGS001067 |
| PRGS001069 |
| PRGS001070 |
| PRGS001072 |
| PRGS001074 |
| PRGS001076 |
| PRGS001077 |
| PRGS001078 |
| PRGS001079 |
| PRGS001080 |
| PRGS001081 |
| PRGS001087 |
| PRGS001088 |
| PRGS001089 |
| PRGS001096 |
| PRGS001101 |
| PRGS001102 |
| PRGS001103 |
| PRGS001104 |
| PRGS001107 |
| PRGS001108 |
| PRGS001113 |
| PRGS001120 |
| PRGS001123 |
| PRGS001126 |
| PRGS001127 |
| PRGS001135 |
| PRGS001136 |
| PRGS001137 |
| PRGS001138 |
| PRGS001139 |
| PRGS001140 |
| PRGS001144 |
| PRGS001149 |
| PRGS001154 |
| PRGS001159 |
| PRGS001162 |
| PRGS001169 |
| PRGS001173 |
| PRGS001177 |
| PRGS001183 |
| PRGS001184 |
| PRGS001198 |
| PRGS001201 |
| PRGS001202 |
| PRGS001204 |
| PRGS001205 |
| PRGS001206 |
| PRGS001211 |
| PRGS001215 |
| PRGS001219 |
| PRGS001220 |
| PRGS001222 |
| PRGS001224 |
| PRGS001225 |
| PRGS001232 |
| PRGS001237 |
| PRGS001239 |
| PRGS001242 |
| PRGS001246 |
| PRGS001252 |
| PRGS001261 |
| PRGS001262 |
| PRGS001265 |

EXHIBIT C

| Unit_Number |
|---|
| PRGS001287 |
| PRGS001288 |
| PRGS001291 |
| PRGS001317 |
| PRGS001318 |
| PRGS001322 |
| PRGS001324 |
| PRGS001327 |
| PRGS001334 |
| PRGS001346 |
| PRGS001347 |
| PRGS001368 |
| PRGS001378 |
| PRGS001383 |
| PRGS001386 |
| PRGS001387 |
| PRGS001392 |
| PRGS001396 |
| PRGS001403 |
| PRGS001419 |
| PRGS001420 |
| PRGS001421 |
| PRGS001423 |
| PRGS001438 |
| PRGS001442 |
| PRGS001445 |
| PRGS001462 |
| PRGS001464 |
| PRGS001465 |
| PRGS001466 |
| PRGS001469 |
| PRGS001474 |
| PRGS001501 |
| PRGS001502 |
| PRGS001521 |
| PRGS001528 |
| PRGS001531 |
| PRGS001535 |
| PRGS001539 |
| PRGS001540 |
| PRGS001541 |
| PRGS001544 |
| PRGS001550 |
| PRGS001552 |
| PRGS001553 |
| PRGS001555 |
| PRGS001557 |
| PRGS001559 |
| PRGS001562 |
| PRGS001571 |
| PRGS001572 |
| PRGS001576 |
| PRGS001581 |
| PRGS001588 |
| PRGS001591 |
| PRGS001596 |
| PRGS001601 |
| PRGS001602 |
| PRGS001605 |
| PRGS001609 |
| PRGS001611 |
| PRGS001613 |
| PRGS001616 |
| PRGS001617 |
| PRGS001621 |
| PRGS001622 |
| PRGS001625 |
| PRGS001633 |
| PRGS001635 |
| PRGS001640 |
| PRGS001641 |
| PRGS001649 |
| PRGS001654 |
| PRGS001656 |
| PRGS001659 |
| PRGS001661 |
| PRGS001662 |
| PRGS001669 |
| PRGS001677 |
| PRGS001678 |
| PRGS001680 |
| PRGS001681 |
| PRGS001685 |
| PRGS001687 |
| PRGS001688 |
| PRGS001691 |
| PRGS001697 |
| PRGS001701 |
| PRGS001704 |
| PRGS001705 |
| PRGS001706 |
| PRGS001710 |
| PRGS001711 |