UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE


SEA STAR LINE, LLC,
a limited liability company,                    Civil Action No. 05-CV-245-JJF(LPS)

     Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

     Defendant,

-vs-

SEA STAR LINE, LLC,

     Counter-Defendant.
_____/


### SEA STAR RESPONSE TO EMERALD MEMORANDUM
### IN SUPPORT OF REQUEST FOR SANCTIONS

SEA STAR LINE, LLC ("SEA STAR") submits the following response to the

Memorandum of Law in Support of Request for Sanctions filed by EMERALD EQUIPMENT

LEASING, INC. ("EEL"):

### BACKGROUND

EEL attempts to paint SEA STAR as dishonest by suggesting that the dispute between

the parties arose due to SEA STAR's dishonest reporting. D.I. 189 at 1-2. EEL further suggests that

SEA STAR has admitted to some dishonesty by depositing certain sums of money with the Court.

*Id.* at n.1. That SEA STAR has deposited funds with the Court pursuant to Fed. R. Civ. P. 67 cannot

suggest that SEA STAR acted improperly and is irrelevant to a request for the imposition of sanctions in connection with a discovery dispute. Thus, EEL's effort to cast Sea Star in a negative light fails.

In addition, EEL's depiction of the "basic set of underlying facts" is incomplete and incorrect. Whether EEL or its affiliate, NPR, Inc., scatter equipment "in various locations throughout the United States, Puerto Rico and the Dominican Republic" (D.I. 189 at 2) remains immaterial. Written contracts circumscribe the issues in this litigation.

After MBC Leasing Corp. ("MBC"), EEL's secured lender and lienor, gave required approval, SEA STAR and EEL signed an Equipment Rental Agreement (the "Rental Agreement"). D.I. 137, ¶ 3(q); D.I. 53, Ex. "B"; EEL I 106, Ex. 16. Terms and conditions of the Rental Agreement "cover equipment in use at various times commencing April 29, 2002." D.I. 137, ¶ 3(n); EEL I 196, Ex. 16. Among pertinent provisions are:

> 1. Equipment. Delivery of all equipment to Lessee or its agents by Lessor shall be effected and evidenced by signed and dated equipment interchange receipts and shall be subject to the terms and conditions of this Agreement.
>
> 2. Term. The lease term for each item of Equipment shall begin on the date when such Equipment is delivered to Lessee or its agent and shall end on the date when such Equipment is taken off hire pursuant to section 10 below. Unless the parties otherwise agree in writing, the minimum rental period for each item of Equipment shall be thirty (30) days....
>
> ...
>
> 10. Redelivery of Equipment.
>
> ...
>
> (b)    Upon redelivery of particular Equipment, the receiving terminal will execute an equipment interchange receipt....
>
> ...
>
> (e)    At the time of return, Equipment will be taken off hire; and rental charges will cease....

<u>EEL I</u> Ex. 16, ¶¶ 1, 2, 10(a), 10(e).

Expressly "subject and subordinate to any lease or security interest in favor of a third-party lessor or lender to Lessor" – *i.e.,* MBC , the Rental Agreement further requires:

> 14. <u>Applicable Law</u>. This Agreement shall be interpreted and the rights, liabilities and duties of the parties determined in accordance with the laws of the State of Maryland.
>
> 15. <u>Miscellaneous</u>. ...This Agreement contains the entire agreement between the parties and, subject to the provisions of section 1, may not be amended, altered or modified, except by a writing signed by the party to be bound.

<u>EEL I</u> Ex. 16, ¶¶ 4(b), 14, 15. No modifications or alterations of occurred. <u>EEL 1</u> 122.

In a Memorandum Opinion dated January 26, 2006, the Court "conclude[d] that a reasonable person reading the Equipment Rental Agreement would not find any ambiguity in its terms" and that "extrinsic evidence is not required to illuminate the meaning of the Equipment Rental Agreement because it is not ambiguous when viewed from the standpoint of a reasonable person." <u>D.I.</u> 75 at 12, 13. EEL acknowledged that "the Equipment Rental Agreement was the parties' formal documentation of the leasing arrangement ...." <u>D.I.</u> 75 at 13.

The Rental Agreement does not mention, much less require, "self-billing reports," which dealt with mutual accounts between SEA STAR and MBC. Moreover, EEL never was to "receive the amount of rent properly due." <u>D.I.</u> 189 at 2; <u>EEL I</u>[1] Exs. 12, 15; <u>D.I.</u> 158 at 15. Indisputably MBC, not EEL, was entitled to any payments or credits for use of EEL equipment during the period covered by SEA STAR self-billing reports and throughout the term of the Rental

---

[1]The December 8, 2004 deposition of Emerald Equipment Leasing, Inc. is abbreviated as "EEL I"; the (January 26, 2005) deposition of Lorraine Robins is abbreviated as "<u>Robins</u>"; the January 25, 2005 deposition of Thomas Holt, Sr. is abbreviated as "<u>Holt</u>."

Agreement.  EEL I 150, Exs. 12, 15; D.I. 149 Exs. G, H; D.I. 158 at 15.  As EEL corporate representatives have admitted, MBC "held the financial interests on the equipment" and paid all the bills.  Holt 34; EEL I 150.

Furthermore, contrary to EEL's contention, SEA STAR has not had sole control over "the documents and data" that would evidence use and disposition of EEL equipment.  D.I. 189 at 2.  To track equipment, EEL used a program prepared by Holt Oversight & Logistics and documentation received from third parties.  *E.g., Robins* 39, 43, 44, 73, 86, 89, 127, 166.  However, documents which were previously in EEL's control, but which EEL has not produced, apparently are unavailable.

## GOVERNING LAW

### Objections to Magistrate's Order

Neither *Hines v. Liggett*, 975 F.2d 81 (3d Cir. 1992), nor *Scott Paper Co. v. United States*, 943 F. Supp. 501 (E.D. Pa. 1996), supports EEL's assertion that "[a]n order of the magistrate judge, such as the Memorandum Order, is subject to review by a district court judge only for clear error of law or fact or abuse of discretion." D.I. 189 at 3.  In *Hines* the Third Circuit stated:  "It is undisputed that "the proper standard of review for discovery orders is the 'clearly erroneous or contrary to law' standard." *Hines v. Liggett, supra*, 975 F.2d at 92.  *Accord, Scott Paper Co. v. United States, supra*, 943 F. Supp. at 502.  The appellate court explained:

> Under (b)(1)(A), the standard of review is circumscribed: The district court is bound by the clearly erroneous rule in findings of facts; the phrase "contrary to law" indicates plenary review as to matters of law. *See also* Rule 72(a), Fed.R.Civ.P. ("Nondispositive Matters").

*Hines v. Liggett, supra*, at 91. *Scott* identified "abuse of discretion" as a third ground for overruling

a magistrate judge's decision in a nondispositive matter. *Scott Paper Co. v. United States, supra*, at 502 (citations omitted).

That 28 U.S.C §636(b)(1)(A) and Fed. R. Civ. P. 72(a) authorized SEA STAR's objections and requests for relief is undeniable. Citing no authority, EEL nonetheless argues that failure to meet the "high standard of review" required to overrule the Memorandum Order (D.I. 160) – *i.e.,* to show "that the magistrate judge's order is clearly erroneous or contrary to law" (D.I. 176 at 1) – renders the objections "patently frivolous." D.I 189 at 3. EEL's rationale leads to the conclusion that any objection denied on the merits becomes "patently frivolous."

Having reviewed the Objection and Motion to set Aside Magistrate's Memorandum Order (D.I. 165), Judge Farnan found:

1.     "[N]o clear legal error in Judge Stark's conclusion that Emerald's discovery motions were properly renewed.... [N]either party has been prejudiced by the Court's consideration of these issues." D.I. 165 at 1-2.

2.     No "impediment to discovery at this juncture" with respect to SEA STAR's standing arguments. Pursuit of such arguments should be "in the context of an appropriate dispositive motion for Judge Stark's consideration." *Id.* at 2.

3.     No demonstrated applicability of 19 U.S.C. § 1431(c) and 19 C.F.R. § 1431(c) "to circumstances involving court ordered discovery by a litigant." *Id.*

4.     "[N]o clear error in Judge Stark's finding that a 31-34% deviation between the vendor bills and self-bills is a significant discrepancy justifying the discovery sought by Emerald." *Id.*

5.     No apparent relevance of certain factual statements "to which Sea Star

refers...to the discovery issues raised." *Id.* at 3.

Predicated on its factual findings, the Court could not "conclude that Judge Stark's Order is clearly erroneous or contrary to the law." *Id.* The Court noted that "to the extent Emerald intends to maintain its request for sanctions against Sea Star, it should present that request to Judge Stark." D.I. 165 at 3 n.1. However, the Court did not find that SEA STAR's filing of an Objection and Motion was in bad faith or constituted an abuse of litigation or misuse of judicial process. *Flaherty v. M.A. Bruder & Sons, Inc.,* 202 F.R.D. 137, 141 (E.D. Pa. 2001). Nowhere in the Memorandum Order do the words "patently frivolous" or "frivolous" appear.

### Production of Documents

EEL asserts SEA STAR lacked good faith in copying the original "single page invoices" or "trucker invoices," which "involved the single pages of each invoice which did not include accompanying documents with these invoices to show the chassis identification numbers underlying the invoices." D.I. 189 at 6.[2] When SEA STAR retrieved the accounting files containing invoices from storage, EEL opted to obtain copies of the invoices, rather than review the files, which were initial made available in Jacksonville. D.I. 187 at 6-7. To comply with EEL's request, SEA STAR produced copies of 5870 invoices for services rendered during the relevant period. There was no attempt by SEA STAR to hide documents or act in bad faith. SEA STAR simply produced the copies that EEL requested. Had SEA STAR's motive been as EEL alleges, there would not have

---

[2]

Ostensibly EEL has abandoned the notion that the invoices are only "partial invoices" or "the front page of the invoices". D.I. 184 at 1. As EEL now acknowledges, the word "invoice" is well defined. D.I. 189 at 7 & Ex. D; D.I. 186 at 1. An accepted definition of a term such as "invoice" normally would facilitate understanding of instructions to identify and copy particular types of documents in voluminous files. Nevertheless, EEL inexplicably has determined that reference to "a Black's Law Dictionary definition of the word 'invoice'" is a "hyper technical focus" and "further underscore[s] Sea Star's lack of good faith." D.I. 189 at 7.

been copies of invoices with partial copies of documents behind the invoices.

Finding that many of the truckers' invoices do not list chassis, EEL demanded "the other documents **with** the trucker invoices which show all the equipment used, including chassis." D.I. 184-3 at 5 (emphasis added).[3] SEA STAR did not raise issues or complain, but rather packaged and sent the original accounting files to Wilmington for EEL's inspection. The seven boxes of files, containing not only the invoices previously copied by SEA STAR but also the other materials furnished by these truckers as "backup" or "accompanying" documentation, were made available and inspected by EEL. D.I. 187 at 10-11.

SEA STAR has explained that the five truckers submitted documentation they deemed necessary to bill SEA STAR for movements. To evidence their services, they furnished copies of TIRs or other documents, such as booking notes. D.I. 186 at 2; D.I. 187 at 8. As the records reviewed by EEL reveal, a trucker's documentary submissions for payment by SEA STAR may specify the container transported but not chassis or other equipment used. Throughout this litigation SEA STAR has produced thousands of TIRs, as well as depot gate logs and other records, which show the chassis and other equipment used by SEA STAR.

Nevertheless, EEL argues that SEA STAR's voluntary efforts to cooperate

---

[3]

Having both operated and hired trucking companies for many years, EEL representatives presumably have been aware that a trucker's invoice may identify only the particular cargo unit, such as a container or trailer, transported for a customer, not a chassis or other equipment used by the trucker. In regard to moves, SEA STAR has produced thousands of equipment interchange receipts ("TIRs"), as well as gate logs and other records received from depots. EEL's designated representatives have testified that an equipment interchange receipt "is a document that the parties execute to show that a piece of equipment was delivered or seized." EEL 1 108. In the Rental Agreement, the "equipment interchange receipt" would be a "TIR." EEL 1 114-15. It "is a document traditionally prepared by a marine terminal for when a piece of equipment goes in or out of that marine terminal." Holt 120; EEL 1 115. Equipment interchange receipts – or TIRs – are not invoices or other billing documents.

demonstrate lack of good faith. Indeed, EEL has expanded its accusations from alleging that "only about 20% of the invoices in question had the requested backup documentation" (D.I. 184 at 2) to alleging that "[o]nly about 20% of the invoices produced by Sea Star had any underlying documentation." D.I. 189 at 7 n.3. Having had ample opportunity to examine and copy original files (D.I. 178 at 10-11), EEL's misrepresentation that 80% of the invoices lack "any underlying documentation" is both unfounded and unjustifiable.

With respect to the five truckers, SEA STAR has had no intent to unilaterally revise the Memorandum Order (D.I. 165). D.I. 187 at 18. SEA STAR did not maintain "volume" records as to "number of loads moved and equipment pieces involved" (D.I. 184 at 2) for the period in question. To identify the five largest truckers, SSL utilized its account records, including payables and invoices, which show monetary volumes of business with vendors. On March 19, 2008, after reviewing SEA STAR's initial invoice production, EEL's attorney wrote:

> My understanding, based on what was disclosed during the deposition yesterday is that Sea Star made a determination of the five largest truckers (by volume) used by Sea Star in the United States, based on the dollar volume of the invoices as opposed to number of loads moved and pieces of equipment involved, which as you know, is really what is at issue in this case. We reserve the right to further address this issue after our analysis of the documents.

D.I. 184-3 at 2. EEL's attorney later said that he "thought maybe there is some correlation between the dollar amount and the volume in terms of moves and equipment ...." D.I. 187 at 14. If the attorney had objected to the procedure for identifying the five largest truckers, SEA STAR would have sought a ruling by the Court. Instead, in contravention of Fed. R. Civ. P. 37(a)(5)(A)(I), EEL's April 30, 2008 letter (D.I. 184) became EEL's vehicle "to further address the issue."

EEL bases its claims for professional fees on Fed. R. Civ. P. 37(a)(4)and(5) and Fed.

R. Civ. P. 37(b).  In regard to sanctions, the Supreme Court has stated:

> Rule 37(b)(2) contains two standards - one general and one specific -
> that limit a district court's discretion.  First, any sanction must be
> "just"; second, the sanction must be specifically related to the
> particular claim" which was at issue in the order to provide discovery.

*Insurance Corp. of Ireland, Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

After this Court issued the December 28, 2007 Memorandum Order (D.I. 160), SEA STAR timely filed an Objection and Motion to set Aside Magistrate's Memorandum Order (D.I. 165) and a Motion to Extend Time (D.I. 169).  On February 21, 2008, the Court overruled SEA STAR's objections and denied its Motion to Set Aside Magistrate's Memorandum Order.  D.I. 176. The March 3, 2008 Memorandum Order (D.I. 177) ordered production of documents within ten days. SEA STAR promptly complied.

EEL has failed to sustain its burden of proving that SEA STAR violated a duty to afford discovery ordered by this Court.  *See, e.g., Saudi v. Acomarit Maritimes Servs., S.A.,* 114 Fed. Appx. 449, 456 (3d Cir. 2004).  EEL's words are not evidence.  What EEL believes, suspects, or supposes is not substantiation for a conclusion that an alleged "failure to comply with discovery requests is without justification and serves only to impede the discovery process and make life as difficult as possible for the other party."  D.I. 189 at 8.

Of the 5870 invoice copies and numerous other documents produced by SEA STAR, EEL alleges that "approximately 500 trucker invoices" disclose "Sea Star's use of Emerald's equipment," that "approximately 223 of these invoices included Emerald chassis which were never shown on Sea Star's self-billing reports," and that "approximately 28 of the chassis which appeared on the trucker invoices involved Emerald equipment which Emerald had not previously identified as equipment used by Sea Star and now must be added to Emerald's claim."  D.I. 184 at 3.  In other

words, the April 30 letter indicates that EEL may make new claims for chassis comprising less than ½% of the equipment involved in the trucker invoices.

EEL's May 19, 2008 Memorandum changed "approximately 28 of the chassis" to "a number of additional pieces of Emerald equipment used by Sea Star for which Sea Star has not paid rent." In any event no issue as to sanctions exists. *See Flaherty v. M.A. Bruder & Sons, Inc., supra,* 202 F.R.D. at 141. After arguments as to SEA STAR's voluntary production, the Court informed EEL's attorney: "Mr. Moldoff, with those representations, I don't think there is anything more I can order them to do." D.I. 187 at 12.

Likewise, EEL has not shown that SEA STAR violated an order to provide a "list identifying the five (5) largest trucking companies (by volume) used by Sea Star in the United States...for the period April 29, 2002 through September 30, 2002" and to "provide copies of all invoices exchanged between Sea Star and those companies for services rendered between April 29, 2002 and September 30, 2002." D.I. 160 at 7. Although EEL "does not believe Sea Star acted in good faith in identifying the truckers whose invoices were to be produced" (D.I. 189 at 7), EEL proffers no proof. Even assuming an inadvertent violation of the Memorandum Order occurred, appropriate weighing of requisite factors would not sustain an award of sanctions. *E.g., Flaherty v. M.A. Bruder & Sons, Inc., supra,* 202 F.R.D. at 141-42.

Pursuant to the May 7, 2008 Order (D.I. 188), SEA STAR produced documents for Palmer Trucking and Aqua Gulf, the two additional entities designated by EEL. Between April 29 and September 30, 2002, Palmer Trucking's principal relationship with SEA STAR was as a provider of depot, repair, and shuttle services. Aqua Gulf's primary relationship with SEA STAR was as a shipper, for which SEA STAR carried cargo. Like Caribbean Shipping Services Inc., Aqua

Gulf billed SEA STAR for trucking, yet is known in the industry for other services as well. D.I. 184 at 2. Neither of EEL's chosen truckers furnished trucking services comparable in monetary volume or cargo moves with the five truckers that SEA STAR identified. Their billings and other documentary submissions support SEA STAR's common-sense correlation between the truckers' monetary charges and equipment moves.

Even if EEL could establish the necessary predicates for sanctions, its claims clearly are unreasonable. EEL seeks the imposition of attorney's fees related to the objections to the December 28, 2007 Memorandum Order, the May 6, 2008 teleconference with the Court, preparation of the sanctions motion, and $5,000 for unspecified work in May 2008. As stated above, sanctions would not be awardable simply because SEA STAR did not prevail in objecting to the Memorandum Order. Furthermore, many issues raised by EEL in connection with the May 6th teleconference were really "non-issues," resolved by SEA STAR's representation regarding its prior production. The time included by EEL also involves discussions with opposing counsel concerning discovery issues. To sanction a party for participating in efforts to resolve discovery disputes would be inappropriate. Presumably EEL's fee request includes time spent in responding to SEA STAR's discovery letter. There is no allegation, let alone a basis to find, that SEA STAR's requests regarding EEL's discovery deficiencies are sanctionable.

EEL has failed to sustain its burden to prove a violation of the Memorandum Order and an entitlement to sanctions in the legal, factual, and procedural context of this case. Therefore,

SEA STAR respectfully requests that the Court deny EEL's Motion for Sanctions.

Dated: June 2, 2008                    SMITH, KATZENSTEIN & FURLOW LLP

                                       Kathleen M. Miller (I.D. No. 2898)
                                       800 Delaware Avenue
                                       P.O. Box 410
                                       Wilmington, DE 19899
                                       Telephone: 302-652-8400
                                       Facsimile: 302-652-8405
                                       E-mail: Kmiller@skfdelaware.com

OF COUNSEL:                            *Attorneys for Sea Star Line LLC*

Timothy J. Armstrong
Armstrong & Mejer, P.A.
2222 Ponce de Leon Boulevard
Penthouse Suite
Miami, FL 33134
Telephone: 305-444-3355