## LOAN SALE AND ASSIGNMENT AGREEMENT

This Loan Sale and Assignment Agreement ("AGREEMENT") is effectively dated as of November 1, 2003, by and between MBC Leasing Corp., a Maryland corporation ("ASSIGNOR"), and Storage Transfer, LLC, a Pennsylvania limited liability company ("ASSIGNEE"). The ASSIGNOR, pursuant to this AGREEMENT, has agreed to assign, transfer and set over to the ASSIGNEE, without recourse, warranty, representation or guaranty of any kind except as set forth below, all of the ASSIGNOR'S rights, title and interest in and to the "ASSIGNED DOCUMENTS, as defined in Recital 5 below and the loan evidenced thereby ("LOAN") and the ASSIGNEE has agreed to purchase the ASSIGNED DOCUMENTS and the LOAN on the terms and conditions set forth below.

## R E C I T A L S:

R1.  Pursuant to a $35,000,000.00 Term Loan Promissory Note dated as of November 20, 1997 from Emerald Equipment Leasing, Inc. ("BORROWER") to the order of the ASSIGNOR (the "NOTE") and a Loan and Security Agreement dated as of November 20, 1997 by and between the BORROWER and the ASSIGNOR (the "LOAN AGREEMENT"), as amended by an Amendment to Loan and Security Agreement made as of December 31, 1997 by and between the BORROWER and the ASSIGNOR ("FIRST LOAN AMENDMENT") and a Second Amendment to Loan and Security Agreement made as of August 26, 1998 by and between the BORROWER and the ASSIGNOR ("SECOND LOAN AMENDMENT"), the ASSIGNOR extended a loan ("LOAN") in the maximum principal amount of Thirty-Five Million Dollars ($35,000,000.00) to the BORROWER.

R2.  The indebtedness owed under the LOAN is secured by: (a) the liens and security interests granted by the BORROWER to the ASSIGNOR pursuant to the LOAN AGREEMENT; and b) the liens and security interests granted by the BORROWER to the ASSIGNOR in an Assignment of Lease As Security made as of November 20, 1997 by and between the BORROWER and the ASSIGNOR ("LEASE ASSIGNMENT").

R3.  To perfect the security interests granted by the BORROWER in the LOAN AGREEMENT, ASSIGNOR had its lien noted on the titles to approximately six thousand (6,000) chassis. In addition, ASSIGNOR filed:

| | |
|---|---|
| a. | Personal Property Mortgages and Affidavits ("MORTGAGES") in Puerto Rico; |
| b. | Financing Statement No. 199739486 filed on November 19, 1997 with the Delaware Secretary of State listing Emerald as Debtor and MBC as Secured Party; |
| c. | Financing Statement No. 1803975 filed on November 26, 1997 with the New Jersey Secretary of State listing Emerald as Debtor and MBC as Secured Party; |
| d. | Financing Statement No. 1804536 filed on December 3, 1997 with the New |

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd

Jersey Secretary of State listing Emerald as Debtor and MBC as Secured Party;

e.   Financing Statement No. 28240001 filed on November 19, 1997 with the Pennsylvania Secretary of the Commonwealth listing Emerald as Debtor and MBC as Secured Party;

f.   Financing Statement No. 97 6000 filed on November 19, 1997 with the Philadelphia County Prothonotary listing Emerald as Debtor and MBC as Secured Party; and

g.   Financing Statement No. ST97-3760 filed on November 19, 1997 with the Chester County, PA Prothonotary listing Emerald as Debtor and MBC as Secured Party (collectively, "FINANCING STATEMENTS").

R4.  To perfect the security interests granted by the BORROWER in the LEASE ASSIGNMENT, ASSIGNOR: (a) filed the FINANCING STATEMENTS; (b) maintained continuous possession of the original Equipment Lease Agreement made as of November 18, 1997 by and between BORROWER, as lessor, and NPR, Inc. and Holt Cargo Systems, Inc., as lessees, the Amendment to Equipment Lease Agreement made as of December 31, 1997 by and among the BORROWER, NPR, Inc. ("NPR"), Holt Cargo Systems, Inc. ("CARGO"), the ASSIGNOR, The Holt Group, Inc. ("HGI"), Holt Hauling and Warehousing Systems, Inc. ("HAULING"), Wilmington Stevedores, Inc. ("WILMINGTON"), Murphy Marine Services, Inc. ("MURPHY"), The Riverfront Development Corporation ("RIVERFRONT"), NPR Holding Corporation ("HOLDING"), NPR-Navieras Receivables, Inc. ("NAVIERAS"), and NPR S.A., Inc. ("NSI"), and the Second Amendment to Equipment Lease Agreement made as of August 26, 1998 by and among the BORROWER, NPR, CARGO, the ASSIGNOR, HGI, HAULING, WILMINGTON, MURPHY, RIVERFRONT , HOLDING, NAVIERAS, NSI, NPR S.A., Inc., San Juan International Terminals, Inc., and SJIT, Inc.(collectively, "LEASE"); and (c) obtained NPR's and CARGO's acknowledgment of the assignment of the LEASE in a Lessees' Notice, Consent, and Acknowledgment made as of November 20, 1997 ("LESSEE'S CONSENT"), and an Acknowledgment and Ratification By Lessees dated ___ August, 1998 ("LESSEE'S RATIFICATION").

R5.  The NOTE, the LOAN AGREEMENT, the FIRST LOAN AMENDMENT, the SECOND LOAN AMENDMENT, the LEASE ASSIGNMENT, the MORTGAGES, the FINANCING STATEMENTS, the LESSEES' CONSENT, and the LESSEES' RATIFICATION are hereafter referred to collectively as the "ASSIGNED DOCUMENTS."

## WITNESSETH:

NOW, THEREFORE, in consideration of these premises, the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1.   Recitals. The Recitals set forth above are true and accurate in every respect and are hereby incorporated into this AGREEMENT by reference.

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd                    2

A-281

2.    <u>Assignee's Agreement To Purchase The Loans And The Loan Documents</u>.    The ASSIGNEE agrees to purchase the LOAN and the ASSIGNED DOCUMENTS from the ASSIGNOR on the date of execution of this AGREEMENT, which date shall be no later than November ___, 2003 ("CLOSING DEADLINE"), for the sum of: (a) Six Hundred Fifty Thousand Dollars ($650,000.00) ("CASH PORTION"); plus (b) the "SEA STAR PORTION," as defined in Section 3 (collectively, "PURCHASE PRICE").   By executing this AGREEMENT, the ASSIGNEE confirms its agreement to purchase the LOAN and the ASSIGNED DOCUMENTS from the ASSIGNOR, prior to the CLOSING DEADLINE, for a sum equal to the PURCHASE PRICE and pursuant to the other terms and conditions set forth herein.

3.    <u>Sea Star Portion</u>.   The BORROWER alleges that Sea Star Lines, LLC ("SEA STAR") is indebted to the BORROWER for the use of certain equipment securing payment of the LOAN ("EMERALD EQUIPMENT"). ASSIGNOR contends that all accounts, chattel paper, contract rights, documents, general intangibles, and instruments arising from any of the EMERALD EQUIPMENT, including any amounts due from SEA STAR to the BORROWER ("RENT") is ASSIGNOR'S collateral as well. ASSIGNEE agrees to remit to ASSIGNOR as additional consideration for the sale of the LOAN ASSETS twenty percent (20%) of the net amount, after deduction of reasonable attorneys' fees and other reasonable collection expenses, of any RENT collected from SEA STAR or any amount paid by SEA STAR in settlement of claims for RENT and received by ASSIGNEE ("SEA STAR PORTION"). Payments of the SEA STAR PORTION to ASSIGNOR shall be made within five (5) business days after receipt by ASSIGNEE of any payment of RENT or payment in settlement of RENT. The ASSIGNEE'S obligation to pay the SEA STAR PORTION shall not terminate on the maturity date of the PURCHASE NOTE, but shall continue for so long as any claims for RENT remain outstanding and unresolved.

4.    <u>Examination Of Assigned Documents</u>.   The ASSIGNEE acknowledges that it has examined, or had an opportunity to and chose not to examine, copies of each of the ASSIGNED DOCUMENTS prior to the execution of this AGREEMENT.

5.    <u>Sale Of Loans And Assigned Documents To ASSIGNEE</u>.   If: (i) this AGREEMENT is appropriately executed, and acknowledged by the ASSIGNEE and delivered to the ASSIGNOR; (ii) the ASSIGNEE remits to ASSIGNOR by certified check or wire transfer the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) on or before the CLOSING DEADLINE to be applied to the CASH PORTION of the PURCHASE PRICE; and (iii) the ASSIGNEE delivers a promissory note in the amount of Four Hundred Thousand Dollars ($400,000.00) in the form attached hereto as Exhibit A ("PURCHASE NOTE") to ASSIGNOR to evidence ASSIGNEE'S obligation to pay the balance of the CASH PORTION of the PURCHASE PRICE on or before the CLOSING DEADLINE, the ASSIGNOR shall be deemed to have sold, assigned, and transferred to the ASSIGNEE, without recourse, warranty, representation, or guaranty of any kind, other than as specifically provided for in Section 7 of this AGREEMENT, all of ASSIGNOR's right, title, and interest in and to the LOAN, the ASSIGNED DOCUMENTS, all of ASSIGNOR'S existing property and interests in collateral securing the LOAN (excluding, however, ASSIGNEE'S interest in the collateral that is the subject of "PENDING SALES"

as hereafter defined) and the proceeds of such PENDING SALES), and all existing claims against the BORROWER (collectively, "LOAN ASSETS"). If, however, the ASSIGNEE fails to remit to ASSIGNOR by certified check or wire transfer the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) on or before the CLOSING DEADLINE or fails to deliver the PURCHASE NOTE on or before the CLOSING DEADLINE, then the ASSIGNOR's agreement to sell the LOAN ASSETS to the ASSIGNEE pursuant to the terms and conditions of this AGREEMENT shall be null, void, and of no further force and effect. As used herein, the term "PENDING SALES" means, collectively: (a) the sales of EMERALD EQUIPMENT listed on Exhibit B-1 in which the bill of sale or schedule thereto is dated on or before October 31, 2003, but the proceeds were received by the ASSIGNOR after October 31, 2003; and (b) the sales of EMERALD EQUIPMENT listed on Exhibit B-2 for which the ASSIGNOR received the proceeds on or before October 31, 2003, but for which the ASSIGNOR had not yet delivered certificates of title or other documents necessary to convey the EMERALD EQUIPMENT to the purchasers prior to the November 1, 2003 effective date of this AGREEMENT.

    6.    <u>Indemnification; Expense Allocation; Sea Star Claims</u>.

    6.1.    <u>Sea Star Indemnification</u>. Pursuant to an Indemnity Agreement dated as of September 20, 2002 ("SEA STAR INDEMNITY"), ASSIGNOR agreed that if any trustee appointed in the case under the <u>United States Bankruptcy Code</u> pending in the United States Bankruptcy Court for the District of Delaware (the "BANKRUPTCY COURT") and known as "In re MUMA Services, Inc. (f/k/a Murphy Marine Services, Inc), Case Nos. 01-00926 through 01-00950 (Jointly Administered)" ("BANKRUPTCY CASE"), any party named as a defendant in any interpleader action instituted by SEA STAR in the BANKRUPTCY CASE, the Official Committee of Unsecured Creditors in the BANKRUPTCY CASE, BORROWER, NPR, CARGO, or any party claiming through or under them (jointly and severally, "COMPETING CLAIMANTS") asserted any claim, cause of action, liability, or damages against SEA STAR relating to any COMPETING CLAIMANT'S alleged entitlement to compensation for use of EMERALD EQUIPMENT during any period for which SEA STAR had paid ASSIGNOR pursuant to the SEA STAR INDEMNITY (a "PROCEEDING"), ASSIGNOR would defend the PROCEEDING at its expense. ASSIGNOR further agreed that if the BANKRUPTCY COURT or any other court of competent jurisdiction (a "COURT") determined in a PROCEEDING that a COMPETING CLAIMANT was entitled to be compensated for use of any EMERALD EQUIPMENT for any period for which SEA STAR had paid ASSIGNOR pursuant to the SEA STAR INDEMNITY, within five (5) business days after receipt by ASSIGNOR of written demand by SEA STAR, ASSIGNOR would remit to SEA STAR by certified check, cashier's check, or wire transfer: (a) the lesser of: (i) the amount to which the COURT determined the COMPETING CLAIMANT was entitled for that period; or (ii) the amount paid by SEA STAR to ASSIGNOR pursuant to the SEA STAR INDEMNITY for use of the pertinent item or items of EMERALD EQUIPMENT during that period (the "INDEMNITY PRINCIPAL AMOUNT"); plus (b) any interest on any INDEMNITY PRINCIPAL AMOUNT that a COURT determined was due to a COMPETING CLAIMANT. ASSIGNEE agrees that only in the event that MBC is obligated to indemnify SEA STAR under the SEA STAR INDEMNITY as a result of a PROCEEDING in which the COMPETING CLAIMANT is the ASSIGNEE, EMERALD or a

successor or assign of the ASSIGNEE or EMERALD (an "EMERALD CLAIMANT"), within five (5) business days after written demand by ASSIGNOR, ASSIGNEE will remit to ASSIGNOR by certified check or wire transfer the sum of: (a) any amount due from ASSIGNOR to SEA STAR under the SEA STAR INDEMNITY; plus (b) the amount of any costs or expenses, including reasonable attorneys' fees, incurred by ASSIGNOR in defending against any claim by such EMERALD CLAIMANT or in defending any claim asserted by SEA STAR under the SEA STAR INDEMNITY arising out of the claim of such EMERALD CLAIMANT; minus (c) the amount of any SEA STAR PORTION attributable to use of the pertinent item or items of EMERALD EQUIPMENT during the period that is the subject of such EMERALD CLAIMANT'S claim, if any, that the ASSIGNEE has paid to the ASSIGNOR. For purposes of illustration, if a COURT awards a particular EMERALD CLAIMANT One Hundred Fifty Dollars ($150.00) for use of container number XXX for the period of May 1, 2001 through May 4, 2001, ASSIGNEE has collected One Hundred Dollars ($100.00) in RENT from SEA STAR, net of collection expenses, for use of that same container during the same period and has remitted Twenty Dollars ($20.00) to ASSIGNOR, within five (5) business days after demand by ASSIGNOR, ASSIGNEE shall remit to ASSIGNOR One Hundred Thirty Dollars ($130.00) plus the amount of any costs or expenses, including reasonable attorneys' fees, incurred by ASSIGNEE in defending against the claim by such EMERALD CLAIMANT or in defending any claim asserted by SEA STAR under the SEA STAR INDEMNITY arising out of the claim of such EMERALD CLAIMANT.

      6.2.   <u>Miscellaneous Indemnification</u>. The ASSIGNEE shall pay, within five (5) business days after demand by ASSIGNOR, and shall indemnify and hold the ASSIGNOR harmless against, all costs and expenses of storing, insuring, maintaining, repairing, selling, or preparing for sale any of the EMERALD EQUIPMENT, including, without limitation, charges of Greenwich Terminals, LLC, incurred on or after November 1, 2003. ASSIGNOR shall use reasonable efforts to deliver: (a) Maine registrations; or (b) certificates of title or other documents necessary to convey the EMERALD EQUIPMENT to the purchaser in any transaction listed on Exhibit B-2. If the ASSIGNOR is: (a) unable to deliver Maine registrations or certificates of title or other documents necessary to convey the EMERALD EQUIPMENT to the purchaser in any transaction listed on Exhibit B-2; or (b) is able to deliver only Maine registrations and Maine registrations are not acceptable to the purchaser, the ASSIGNEE shall, upon request of the purchaser or the ASSIGNOR, either: (a) refund to the purchaser the purchase price previously paid to the ASSIGNOR as reflected on Exhibit B-2; or (b) deliver to such purchaser certificates of title or other documents necessary to convey to the purchaser substitute EMERALD EQUIPMENT acceptable to the purchaser. The ASSIGNEE shall indemnify and hold the ASSIGNOR harmless against, any and all claims asserted against the ASSIGNOR by purchasers in transactions listed on Exhibit B-2 and all costs and expenses incurred by the ASSIGNOR in connection with such claims, including reasonable attorneys' fees.

      6.3.   <u>No Competing Claim Against Sea Star</u>. ASSIGNEE agrees not to assert any entitlement to compensation from SEA STAR for use of EMERALD EQUIPMENT during any period for which SEA STAR had paid ASSIGNOR pursuant to the SEA STAR INDEMNITY.

7.    <u>Representations And Warranties By ASSIGNOR</u>.  The ASSIGNOR represents and warrants to the ASSIGNEE as follows:

a.    According to the ASSIGNOR'S books and records, as of October 31, 2003, the amount of advanced and unpaid principal due and owing by the BORROWER in connection with the LOAN is Two Million Eight Hundred Ninety-Two Thousand Six Hundred Sixty-Two Dollars and Sixteen Cents ($2,892,662.16), the amount of late charges due is Eight Hundred Twenty-One Thousand Nine Hundred Sixty-Nine Dollars and Seventy-Three Cents ($821,969.73), and the amount of accrued and unpaid interest due and owing is Nine Hundred Fifteen Thousand Five Hundred Thirty-Two Dollars and Sixty-One Cents ($915,532.61).  The interest per diem for the LOAN is Seven Hundred Thirty-Four Dollars and Fifty-Six Cents ($734.56).  However, the BORROWER may make additional payments on account of the LOAN after the date of this AGREEMENT and prior to the purchase of the LOAN ASSETS by the ASSIGNEE or ASSIGNOR may receive proceeds of PENDING SALES which will affect both the principal balance due and the rate at which interest accrues thereon.  Furthermore, the ASSIGNOR is holding unapplied proceeds of sale of EMERALD EQUIPMENT pending receipt and payment of bills for expenses incurred before the November 1, 2003 effective date of this AGREEMENT that are the responsibility of the ASSIGNOR under this AGREEMENT and the responsibility of the BORROWER under the ASSIGNED DOCUMENTS.  Following receipt and payment of such bills, the ASSIGNOR shall report to the ASSIGNEE the amount of the remaining unapplied cash, which ASSIGNOR warrants will not exceed Ninety Thousand Dollars ($90,000.00), and that amount shall be deemed to have been received by the ASSIGNEE and applied to reduce the balance due on the LOAN.  At the time of the purchase of the LOAN ASSETS by the ASSIGNEE, the ASSIGNOR shall provide the ASSIGNEE with a further representation as to the balance due on the LOAN as of the date of such representation.

b.    The ASSIGNOR has good title to, and is the sole owner of, each of the LOAN ASSETS, and the ASSIGNOR has not transferred, assigned, or hypothecated its interest in any of the LOAN ASSETS except that ASSIGNOR has sold participations in the LOAN to parties who have authorized ASSIGNOR to transfer the LOAN ASSETS to the ASSIGNEE on the terms and conditions set forth in this AGREEMENT.

c.    The ASSIGNOR has full power and authority to execute, deliver, and perform its obligations under this AGREEMENT and all documents executed in connection herewith, and to sell the LOAN ASSETS to the ASSIGNEE, and the officer executing and delivering this AGREEMENT and any other documents in connection herewith on behalf of the ASSIGNOR has been duly authorized to do so, and this AGREEMENT and all such documents are (or shall be, upon execution and delivery) valid and binding obligations of the ASSIGNOR, enforceable against the ASSIGNOR in accordance with their respective terms.

d.    Exhibits B-1, B-2, and C are, collectively, a true, complete, and accurate generic listing of all equipment in which EMERALD granted the ASSIGNOR security interests in the LOAN

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd            6

A-285

AGREEMENT that ASSIGNOR has sold or agreed to sell pursuant to Article 9 of the <u>Uniform Commercial Code</u>.

      e.    Exhibit D is a true, complete, and accurate list of all items of equipment in which EMERALD granted the ASSIGNOR security interests in the LOAN AGREEMENT for which ASSIGNOR had original certificates of title reflecting EMERALD as owner and the ASSIGNOR as lienholder in its possession as of October 31, 2003. Since October 31, 2003, the ASSIGNOR has relinquished or agreed to relinquish certificates of title to items of equipment listed on Exhibit D only in sale transactions, the proceeds of which will be applied to the CASH PORTION of the PURCHASE PRICE.

      8.    <u>Representations And Warranties By ASSIGNEE</u>. In addition to the representations and warranties in Sections 11 and 22 of this AGREEMENT, the ASSIGNEE represents and warrants to the ASSIGNOR as follows:

      a.    The ASSIGNEE has full power and authority to execute, deliver, and perform its obligations under this AGREEMENT and all documents executed in connection herewith, and to purchase the LOAN ASSETS from the ASSIGNOR, and this AGREEMENT and all such documents are (or shall be, upon execution and delivery) valid and binding obligations of the ASSIGNEE, enforceable against the ASSIGNEE in accordance with their respective terms.

      b.    The ASSIGNEE is represented by counsel of its choice and has exercised its own independent judgment, as determined by it to be necessary and advisable, in its decision to enter into this AGREEMENT.

      c.    The ASSIGNEE has reviewed copies of each of the ASSIGNED DOCUMENTS prior to executing this AGREEMENT or has been afforded an opportunity to review such documents and elected not to do so.

      d.    The ASSIGNEE has not relied on any representations or warranties by the ASSIGNOR regarding the enforceability of the ASSIGNED DOCUMENTS, the creditworthiness of the BORROWER, the existence, nature, or value of any collateral for the LOAN, the existence, validity, or priority of any liens securing the LOAN, or any other matter not specifically set forth in Section 5 above.

      e.    The ASSIGNEE (either alone or with the ASSIGNEE's attorneys, accountants, or other advisors) possesses the requisite business and investment knowledge and experience to evaluate the potential risks and merits of its purchase of the LOAN ASSETS.

      f.    The ASSIGNEE has sufficient financial ability and net worth to bear the economic risk of its investment in the LOAN ASSETS for an indefinite period of time and to withstand a total loss of such investment.

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd      7

g. The ASSIGNEE is purchasing the LOAN ASSETS for his own account and not with a view toward transferring the LOAN ASSETS to any other party.

h. The ASSIGNEE acknowledges that none of the LOAN ASSETS has been registered under any securities laws and agrees that he will not sell or transfer any of the LOAN ASSETS except in accordance with any applicable securities laws or in a transaction exempt from all securities laws.

9. <u>Closing</u>. The parties hereto agree that they shall do the following things in the following order:

a. Prior to the CLOSING DEADLINE, the ASSIGNEE shall execute and deliver the original AGREEMENT to the ASSIGNOR;

b. The ASSIGNEE shall pay the CASH PORTION of the PURCHASE PRICE by remitting the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) to ASSIGNOR by certified check or wire transfer and delivering to the ASSIGNOR the PURCHASE NOTE;

c. The ASSIGNEE shall then execute and deliver to the ASSIGNOR a Security Agreement in the form attached hereto as Exhibit "E" and incorporated by reference herein and such other documents as the ASSIGNOR may require to secure the ASSIGNEE'S obligations to the ASSIGNOR under the PURCHASE NOTE and authorize ASSIGNOR to file Financing Statements in the form attached hereto as Exhibit "F" and incorporated by reference herein;

d. The ASSIGNOR shall execute and deliver to the ASSIGNEE, on or before the CLOSING DEADLINE, a fully executed copy of the AGREEMENT and the original NOTE endorsed as follows:

> "For value received, pay to the order of Storage Transfer, LLC, without recourse, representation, warranty, or guaranty of any kind, other than as set forth in Section 7 of the Loan Sale and Assignment Agreement dated as of November 1, 2003 by and between MBC Leasing Corp., a Maryland corporation, and Storage Transfer, LLC."

MBC LEASING CORP.,
A Maryland Corporation

By: _____(SEAL)
        Name: _____
        Title: _____
        Date: _____

e.    The ASSIGNOR shall execute and deliver to the ASSIGNEE such additional documents as are reasonably necessary to transfer ownership of the LOAN ASSETS to the ASSIGNEE, including UCC-3 assignments of the FINANCING STATEMENTS, provided, however, that nothing in this AGREEMENT shall require the ASSIGNOR to release its lien on any piece of EMERALD EQUIPMENT that is titled except upon: (a) payment in full of the CASH PORTION of the PURCHASE PRICE; (b) sale of such EMERALD EQUIPMENT by the ASSIGNEE; or (c) (i) sale of such EMERALD EQUIPMENT by the BORROWER; and (ii) the written request of the ASSIGNEE.

f.    The ASSIGNOR shall deliver to the ASSIGNEE all executed originals of the ASSIGNED DOCUMENTS; and

g.    The ASSIGNEE shall then execute and deliver to the ASSIGNOR a fully executed original Acknowledgment of Receipt of Original Loan Documents.

The occurrence of all of the events listed in this Section 9 shall be referred to as the "CLOSING."

10.    Agreement to Pay Assignor's Expenses.  The ASSIGNEE shall pay all out-of-pocket expenses or costs incurred by the ASSIGNOR arising out of, pertaining to, or in any way connected with this AGREEMENT, any documents executed in connection herewith or transactions hereunder, or the purchase of the ASSIGNED DOCUMENTS and the LOAN by the ASSIGNEE including, without limitation, attorneys' fees and expenses incurred by the ASSIGNOR in obtaining advice or the services of its attorneys with respect to the structuring, drafting, negotiating, reviewing, amending, terminating, enforcing or defending of this AGREEMENT, or any portion hereof or any agreement or matter related hereto.

11.    No Brokerage Fee.  The ASSIGNOR and the ASSIGNEE represent and warrant to one another that they have not employed the services of any broker or agent in connection with this transaction and that neither has any knowledge of any commission payable as a result this transaction.

12.    Notices.  Any notice required or permitted by or in connection with this AGREEMENT shall be in writing and shall be made by facsimile (confirmed on the date the facsimile is sent by one of the other methods of giving notice provided for in this Section) or by hand delivery, by Federal Express, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective parties at the appropriate addresses set forth below or to such other address as may be hereafter specified by written notice by the respective parties.  Notice shall be considered given as of the date of the facsimile or the hand delivery, one (1) calendar day after delivery to Federal Express or similar overnight delivery service, or three (3) calendar days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was sent as provided herein.  If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given and shall be effective as of the date herein provided.

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd

9

If to the ASSIGNOR:

     MBC LEASING CORP.
     2 Hopkins Plaza, 5th Floor
     Baltimore, Maryland 21201
     Attention: Scott H. Krieger

If to the ASSIGNEE:

     STORAGE TRANSFER, LLC
     7900 Old York Road, A12B
     Elkins Park, Pennsylvania 19027

13.    Waivers. No waiver or indulgence by the ASSIGNOR or the ASSIGNEE at any time and from time to time shall constitute, unless specifically so expressed by the that party in writing, a future waiver of performance or exact performance by the other party.

14.    No Third Party Beneficiary Rights. No person not a party to this AGREEMENT shall have any benefit hereunder nor have third party beneficiary rights as a result of this AGREEMENT.

15.    Binding Obligation. This AGREEMENT shall be binding upon the parties hereto and their respective heirs, personal representatives, successors, and assigns.

16.    Final Agreement. This AGREEMENT and the various documents executed and delivered by the ASSIGNOR or the ASSIGNEE pursuant to this AGREEMENT contain the final and entire agreement and understanding of the parties with respect to the matters addressed herein or therein, and any terms and conditions not set forth in this AGREEMENT or the various documents executed and delivered by the ASSIGNOR or the ASSIGNEE pursuant to this AGREEMENT are not a part of the agreement and understanding of the parties hereto.

17.    Amendment. This AGREEMENT may be amended or altered only by a writing signed by the party to be bound by the change or alteration.

18.    Choice Of Law. The laws of the State of Maryland (excluding, however, conflict of law principles) shall govern and be applied to determine all issues relating to this AGREEMENT and the rights and obligations of the parties hereto, including the validity, construction, interpretation, and enforceability of this AGREEMENT and its various provisions and the consequences and legal effect of all transactions and events which resulted in the execution of this AGREEMENT or which occurred or were to occur as a direct or indirect result of this AGREEMENT having been executed.

19.    Invalidity Of Any Part. If any provision or part of any provision of this AGREEMENT shall

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd          10

for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this AGREEMENT, and this AGREEMENT shall be construed as if such invalid, illegal, or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality, or unenforceability.

20.    Time.  Time is of the essence with respect to this AGREEMENT and the terms and conditions hereof.

21.    Tense, Gender, Defined Terms, Captions, Effective Dates, Execution in Counterparts and Via Facsimile; Miscellaneous.  As used herein, the plural shall refer to and include the singular, and the singular the plural, and the use of any gender shall include and refer to any other gender. All defined terms are completely capitalized throughout this AGREEMENT. All captions are for the purpose of convenience only. This AGREEMENT may be executed and delivered in counterparts, and signed counterparts may be delivered via facsimile, with all executed counterparts delivered via facsimile to be deemed to have the same force and effect as if bearing original signatures.

22.    Effect of Bankruptcy of the Borrower and Lessees.  The ASSIGNEE acknowledges that he is aware that the BORROWER is the subject of a case under Chapter 11 of the United States Bankruptcy Code in the BANKRUPTCY COURT ("EMERALD CASE") and that NPR, CARGO, HGI, HAULING, WILMINGTON, MURPHY, RIVERFRONT , HOLDING, NAVIERAS, NSI, NPR S.A., Inc., San Juan International Terminals, Inc., and SJIT, Inc. are the subject of the BANKRUPTCY CASE.  The ASSIGNEE further acknowledges that, as a result of the EMERALD CASE and the BANKRUPTCY CASE (collectively, "CASES"), some or all of the rights and remedies afforded by the ASSIGNED DOCUMENTS may be extinguished and that deadlines may be or may have been established in the BANKRUPTCY CASES for the filing of Proofs of Claim, the filing of Complaints seeking denial of discharge or a determination of dischargeability of debts, or other matters which, if not met, also may extinguish or impair rights and remedies afforded by the ASSIGNED DOCUMENTS.  The ASSIGNEE acknowledges and agree that the ASSIGNOR has made no representations or warranties of any kind with respect to: (a) the ability of the ASSIGNEE to enforce any rights or remedies afforded by the ASSIGNED DOCUMENTS in the CASES or as a consequence thereof; (b) any action or failure to act by the ASSIGNOR in the CASES or as a consequence thereof; or (c) the likely effect of the CASES on the LOAN ASSETS.  The ASSIGNEE has had the opportunity to conduct such investigations and examinations as he deems appropriate to assess the effect of the CASES on the LOAN ASSETS and the transactions contemplated in this AGREEMENT and agrees that the CASES shall not impair or affect his obligations to the ASSIGNOR under this AGREEMENT or any related document or agreement.  The ASSIGNOR agrees that, notwithstanding the transfer of the ASSIGNED DOCUMENTS to the ASSIGNEE, the ASSIGNOR shall remain responsible for performing, and shall perform, any obligation to report or account to the debtor-in-possession or trustee, as applicable, in the CASES for any activity relating to the ASSIGNED DOCUMENTS or the collateral securing EMERALD'S obligations thereunder that occurred prior to November 1, 2003.    The ASSIGNEE agrees that it shall be responsible for performing, and shall perform, any obligation to report or account to the debtor-in-possession or trustee,

as applicable, in the CASES for any activity relating to the ASSIGNED DOCUMENTS or the collateral securing EMERALD'S obligations thereunder that occurs on or after November 1, 2003 for which the ASSIGNOR otherwise would have been responsible had it continued to hold the ASSIGNED DOCUMENTS.

23. <u>Release.</u> The ASSIGNEE releases, acquits, exonerates and forever discharges the ASSIGNOR, all of the INDEMNIFIED LENDER PARTIES from any and all claims, causes of action, suits and damages (including claims for attorneys' fees) which the ASSIGNEE, jointly or severally, ever had or now have against any or all of the INDEMNIFIED LENDER PARTIES, jointly or severally, including, without limitation, all claims arising out of or related to the LOAN, the ASSIGNED DOCUMENTS, the administration thereof, or any acts or omissions of the ASSIGNOR relating thereto.

24. <u>Waiver Of Trial By Jury.</u> Each party to this AGREEMENT agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by or against either party hereto or any successor or assign of any party on or with respect to this AGREEMENT or any of the LOAN ASSETS or which in any way relates, directly or indirectly, to the sale of the LOAN ASSETS (or any of them) or any event, transaction, or occurrence arising out of or in any way connected with the sale of the LOAN ASSETS (or any of them), or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. **EACH PARTY HERETO EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING.** The ASSIGNOR and the ASSIGNEE acknowledge and agree that this provision is a specific and material aspect of the agreement among the parties hereto and that none of the parties hereto would enter into the transactions contemplated by this AGREEMENT if this provision were not part of their agreement.

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT under seal as of date first above written.

WITNESS/ATTEST:                ASSIGNOR:

                               MBC LEASING CORP.,
                               A Maryland Corporation


By: _____ (SEAL)
Name: _Scott H. Kinney_
Title: _Treasurer / Asst Sec._

S:\WLH\18750.Emerald.Loan.Sale.Agr.11.wpd          12

A-291

ASSIGNEE:

STORAGE TRANSFER, LLC,
A Pennsylvania Limited Liability Company

By: _____ (SEAL)
Name: _____
Title: _____

## ACKNOWLEDGMENTS

STATE OF MARYLAND, CITY/COUNTY OF _Baltimore_, TO WIT:

I HEREBY CERTIFY that on this _15th_ day of _December_, 2003, before me, the undersigned Notary Public of the State of Maryland, personally appeared _Scott H. Kreiger_, and acknowledged himself to be a _Treas/Asst. Sec._, of MBC LEASING CORP., a Maryland corporation, and that he, as such _Treas/Asst-Sec_ being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MBC LEASING CORP. by himself as _Treas/Asst Sec._

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:
_5-1-07_

STATE OF _Pa_____ , CITY/COUNTY OF _Montgomery_ TO WIT:

    I HEREBY CERTIFY that on this _4th_ day of _December_____ , 2003, before me, the undersigned Notary Public of the State of _____ , personally appeared _____ , and acknowledged himself to be a _____ , of STORAGE TRANSFER, LLC, a Pennsylvania limited liability company, and that he, as such _____ , being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of STORAGE TRANSFER, LLC by himself as _____.

    IN WITNESS MY Hand and Notarial Seal.


                                  _____(SEAL)
                                       NOTARY PUBLIC

My Commission Expires:

        Notarial Seal
    Miriam Baroff, Notary Public
  Jenkintown Boro, Montgomery County
  My Commission Expires Sept. 9, 2004
Member, Pennsylvania Association of Notaries

## Exhibit B-1

| Buyer | Bill of Sale Date | Funds Received | Amount Received |
|---|---|---|---|
| Jose Lorenzame | October 16, 2003 | November 10, 2003 | $650.00 |
| Jorge Diaz | October 22, 2003 | November 10, 2003 | $1,200.00 |
| Green Hills Spring Water | October 9, 2003 | November 10, 2003 | $2,850.00 |
| J. Maqueda & Associates, Inc. | October 8, 2003 | November 10, 2003 | $3,950.00 |
| J. Maqueda & Associates, Inc. | October 17, 2003 | November 10, 2003 | $13,200.00 |
| | | November 24,2003 | $100.00 |
| Action Trophy | October 9, 2003 | November 24,2003 | $400.00 |
| H-K Orintal | ?/ck dated 10/30/03 | November 24,2003 | $1,500.00 |



 **Andrew Rooks**          To: ADavis@holtoversight.com
11/26/2003 12:29 PM       Subject: Repo of units to Jax

Art:

To confirm, Sea Star LLC will reposition 40 reefer containers on chassis from the SSL terminal in San Juan to the SSL terminal Jacksonville for $650.00 per set. A $25.00 mounting fee for each Emerald reefer container onto an Emerald Chassis in San Juan will also be charged.

SSL in San Juan will initiate a TIR for each set. This TIR will need to be signed by Frank Gonzalez prior to the unit being loaded on the ship. At discharge in Jacksonville, SSL will notify John Allen of GTS for pick up of the set. An outbound TIR will be prepared and will need to be signed prior to the unit leaving our terminal.

Please confirm that we will deduct the balance due for these charges from the $55,222.05 current balance due which is mentioned in my earlier correspondence of November 4, 2003. Please confirm if we will pay Emerald or MBC, as before. It is estimated that the charges for the Ocean Freight ($26,000) and mounting of the 40 units ($1,000) will be, about $27,000.

We will start loading these sets on our vessel this Monday, December 1, 2003 with discharge schedule in Jacksonville for Thursday, December 4, 2003.

Sincerely,

Andy Rooks
Director of Equipment
904 855-1278 Phone
904 725-9875 Fax

**EXHIBIT**

**Arthur Davis/holtoversight**        To    ARooks@seastarline.com
12/10/03 02:24 PM                    cc
                                     bcc
                            Subject    Emerald equipment at SJU

Andy

Please send 27 reefers on 27 chassis from SJU for delivery to JAX for our account as was
completed on the initial move of 40 units.

Thank you

Arthur

E 005874

**BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"**

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC SSLH | BL NO. 3003028357 | | Date: 12/16/03 |
|---|---|---|---|---|---|

SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE)
EMERALD EQUIPMENT LEASING  (USA61101)
101 SOUTH KING ST

GLOUCESTER CITY   NJ 08030

EXPORT REFERENCES

TAX STATUS

BOOKING NUMBER
**ELY424SU7517**

SHIPPER REFERENCE NO.

CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE)
EMERALD EQUIPMENT LEASING  (USA61101)
101 SOUTH KING ST

GLOUCESTER CITY   NJ 08030

SALES AGENT OR ICC (Complete Name, Address and Zip Code)    FREIGHT BROKER LIC.

NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS.
JOHN ALLEN   ()
904-923-3024

ALSO NOTIFY, ROUTING OR INSTRUCTIONS

| PIER SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL EL MORRO | VOY. NO 425 N | FLAG UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE JACKSONVILLE, FL | | DESTINATION PORT JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMU595001<br>TLI: 2002-00-0246 | 1  40RF | EMPTY RETURN<br>PRMU595001<br>PRMC171473 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC171473<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595001<br>PRMC171473 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595010<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595010<br>PRMC170715 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC170715<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595010<br>PRMC170715 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595085<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595085<br>PRMC171581 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC171581<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595085<br>PRMC171581 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595107<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595107<br>PRMC172405 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC172405<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595107<br>PRMC172405 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595144<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595144<br>PRMC171189 - CHASIS | 0 lbs<br>0 kgs | |

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P. O. BOX 409363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

SEA STAR

*Invoice Audited*

SHIPPER LOAD AND COUNT                FREIGHT COLLECT                COPY NON-NEGOTIABLE

Carrier's 1000 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's elected cargo value rate with limits specified in Clauses 23 and 24 on the reverse side or shipper selects Option (A) or (B) below

A   Ad Valorem - If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate for Shipper's cargo.
    Declared Value        $

B   Insurance Coverage - See Clause 20 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper may instruct Shipper's broker and arrange insurance at the applicable rates charged by Carrier.
    [Yes ] [No ]   Insured Value   $

Subject to Clause M of Conditions, if the shipment is to be delivered to the Consignee without recourse on the consignor, the consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
                                                    Signature of
                                                    Consignor

RECEIVED the goods or packages said to contain goods herein mentioned in apparent external good order and condition, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED. CARRIER HAS NOT INSPECTED CONTENTS OR SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILLS OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID

BY _____
        SEA STAR LINE, LLC

REVISED 2/02                                                                    Page 1 of 6

A-297                                    SE13300

**SEA STAR LINE, LLC**    COMBINED WAYBILL AND SHORT FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | | TAX BOND NO. | SCAC SSLH | BL NO. 3003028357 | | Date: 12/16/03 |
|---|---|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING   (USA61101) 101 SOUTH KING ST  GLOUCESTER CITY  NJ 08030 | | EXPORT REFERENCES | | | TAX STATUS | |
| | | BOOKING NUMBER ELY424SU7517 | | | SHIPPER REFERENCE NO. | |

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) | SALES AGENT OR ICC (Complete Name, Address and Zip Code)    FREIGHT BROKER LIC. |
|---|---|
| EMERALD EQUIPMENT LEASING   (USA61101) 101 SOUTH KING ST  GLOUCESTER CITY  NJ 08030 | |

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS. | ALSO NOTIFY, ROUTING OR INSTRUCTIONS |
|---|---|
| JOHN ALLEN   {} 904-923-3024 | |

| PIER SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL EL MORRO    VOY. NO 425 N    FLAG UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE JACKSONVILLE, FL | DESTINATION PORT JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMC171189 TLI: | 1  40CH | EMPTY RETURN PRMU595144 PRMC171189 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595163 TLI: | 1  40RF | EMPTY RETURN PRMU595163 PRMC171014 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC171014 TLI: | 1  40CH | EMPTY RETURN PRMU595163 PRMC171014 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595202 TLI: | 1  40RF | EMPTY RETURN PRMU595202 PRMC167772 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMZ167772 TLI: | 1  40CH | EMPTY RETURN PRMU595202 PRMC167772 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595205 TLI: | 1  40RF | EMPTY RETURN PRMU595205 PRMC170805 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC170805 TLI: | 1  40CH | EMPTY RETURN PRMU595205 PRMC170805 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595321 TLI: | 1  40RF | EMPTY RETURN PRMU595321 PRMC172615 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC172615 TLI: | 1  40CH | EMPTY RETURN PRMU595321 PRMC172615 - CHASIS | 0 lbs 0 kgs | |

*Invoice Audited*

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P. O. BOX 409363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

**SEA STAR**

| SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE |
|---|---|---|

* Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides the Shipper's interest cargo insurance with limits specified in Clauses 23 and 24 on the reverse side or shipper selects Options (A) or (B) below.

A  Ad Valorem - If Shipper declares a value as the space provided, Carrier's $500 limitation per container will not apply and carrier will charge the Ad Valorem rate for Shipper's cargo.
   Declared Value    $

B  Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper requests Shipper's interest cargo insurance at the applicable rates charged by Carrier.
   [ ] Yes   [ ] No    Insured Value   $

Subject to Clause All Conditions. If the shipment is to be delivered to the Consignee without recourse on the consignor, the consignors shall sign the following statement. The owner shall not make delivery of the shipment without payment of freight and all other lawful charges.
                                                                    Signature of
                                                                    Consignor

RECEIVED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HEREIN MENTIONED IN APPARENT GOOD ORDER AND CONDITION, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED.  CARRIER HAS NOT INSPECTED CONTENTS OF SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILL(S) OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

BY _____
                SEA STAR LINE, LLC

REVISED 3/02                                        Page 2 of 6

SE13301

**SEA STAR LINE, LLC**

COMBINED INLAND / OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCBC SSLH | BL NO. 3003028357 | | Date: 12/16/03 |
|---|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING  (USA61101)<br>101 SOUTH KING ST<br><br>GLOUCESTER CITY   NJ  08030 | EXPORT REFERENCES | | | TAX STATUS | |

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) | | BOOKING NUMBER<br>ELY424SU7517 | | SHIPPER REFERENCE NO. | |

| EMERALD EQUIPMENT LEASING  (USA61101)<br>101 SOUTH KING ST<br><br>GLOUCESTER CITY   NJ  08030 | SALES AGENT OR ICC (Complete Name, Address and Zip Code)    FREIGHT BROKER LIC. |

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS.) | ALSO NOTIFY, ROUTING OR INSTRUCTIONS |
|---|---|
| JOHN ALLEN   ()<br>904-923-3024 | |

| PIER<br>SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL          VOY. NO     FLAG<br>EL MORRO      425  N    UNITED STATES | PORT OF LOADING<br>SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE<br>JACKSONVILLE, FL | DESTINATION PORT<br>JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMU595335<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595335<br>PRMC171782 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC171782<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595335<br>PRMC171782 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595374<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595374<br>PRMC172917 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC172917<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595374<br>PRMC172917 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595457<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595457<br>PRMC170006 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC170006<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595457<br>PRMC170006 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595473<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595473<br>PRMC171822 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMC171822<br>TLI: | 1  40CH | EMPTY RETURN<br>PRMU595473<br>PRMC171822 - CHASIS | 0 lbs<br>0 kgs | |
| UNIT: PRMU595674<br>TLI: | 1  40RF | EMPTY RETURN<br>PRMU595674<br>PRMC172035 - CHASIS | 0 lbs<br>0 kgs | |

*Invoice Audited*

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P.O. BOX 405363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

SEA STAR

| SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE |
|---|---|---|

- Carrier's $500 functional liability per container shall apply, unless Carrier's tariff provides for Shipper's interest cargo insurance with limits specified in Clauses 23 and 24 on the reverse side or Shipper selects Option (A) or (B) below.

A. Ad Valorem - If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate to Shipper's cargo.
   Declared Value              $

B. Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper requests Shipper's Interest cargo insurance at the applicable rates charged by Carrier.
   [ ] Yes  [ ] No      Insured Value    $

Subject to Clause 6 of Conditions, if the shipment is to be delivered to the Consignee without recourse on the Consignor, the consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
                                                      Signature of
                                                      Consignee

RECEIVED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HEREIN DESCRIBED IN APPARENT EXTERNAL GOOD ORDER AND CONDITION,
UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED. (CARRIER HAS NOT INSPECTED CONTENTS OF SAID SEALED
PACKAGES.)

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON
THE FACE AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE
FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILLS OF LADING, ALL OF THE SAME
TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

BY _____
                          SEA STAR LINE, LLC

REVISED 2/02                                          Page 3 of 6

SEA STAR LINE, LLC    COMBINED INLAND/OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | | TAX BOND NO. | SCAC SSLH | BL NO. 3003028357 | | Date: 12/16/03 |
|---|---|---|---|---|---|---|

EMERALD EQUIPMENT LEASING  (USA61101)
101 SOUTH KING ST

GLOUCESTER CITY  NJ 08030

EXPORT REFERENCES

TAX STATUS

BOOKING NUMBER
ELY424SU7517

SHIPPER REFERENCE NO.

CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE)

EMERALD EQUIPMENT LEASING  (USA61101)
101 SOUTH KING ST

GLOUCESTER CITY  NJ 08030

SALES AGENT OR ICC (Complete Name, Address and Zip Code)    FREIGHT BROKER LIC.

NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS.)

JOHN ALLEN  {}
904-923-3024

ALSO NOTIFY, ROUTING OR INSTRUCTIONS

PIER  SAN JUAN, PUERTO RICO | PLACE OF RECEIPT

VESSEL  EL MORRO    VOY. NO 425 N    FLAG UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN

PORT OF DISCHARGE  JACKSONVILLE, FL | DESTINATION PORT JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL)

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMC172035 TLI: | 1 40CH | EMPTY RETURN PRMU595674 PRMC172035 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595681 TLI: | 1 40RF | EMPTY RETURN PRMU595681 PRMC170423 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC170423 TLI: | 1 40CH | EMPTY RETURN PRMU595681 PRMC170423 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595717 TLI: | 1 40RF | EMPTY RETURN PRMU595717 PRMC172164 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC172164 TLI: | 1 40CH | EMPTY RETURN PRMU595717 PRMC172164 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595724 TLI: | 1 40RF | EMPTY RETURN PRMU595724 PRMC170084 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC170084 TLI: | 1 40CH | EMPTY RETURN PRMU595724 PRMC170084 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595728 TLI: | 1 40RF | EMPTY RETURN PRMU595728 PRMC172821 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC172821 TLI: | 1 40CH | EMPTY RETURN PRMU595728 PRMC172821 - CHASIS | 0 lbs 0 kgs | |

*Invoice Audited*

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P.O. BOX 69363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

SEA STAR

SHIPPER LOAD AND COUNT    FREIGHT COLLECT    COPY NON-NEGOTIABLE

BY _____
SEA STAR LINE, LLC

REVISED 2/02

Page 4 of 6

A-300    SE13303

SEA STAR LINE, LLC   COMBINED INLAND/OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC | B/L NO. | Date: |
|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING  (USA61101) 101 SOUTH KING ST  GLOUCESTER CITY   NJ  08030 | | SSLH | 3003028357 | 12/16/03 |

EXPORT REFERENCES | TAX STATUS

BOOKING NUMBER: ELY424SU7517 | SHIPPER REFERENCE NO.

CONSIGNEE: EMERALD EQUIPMENT LEASING (USA61101) 101 SOUTH KING ST GLOUCESTER CITY NJ 08030

SALES AGENT OR ICC | FREIGHT BROKER LIC.

NOTIFY PARTY: JOHN ALLEN () 904-923-3024

ALSO NOTIFY, ROUTING OR INSTRUCTIONS

PIER: SAN JUAN, PUERTO RICO | PLACE OF RECEIPT
VESSEL EL MORRO  VOY. NO 425 N  FLAG UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN
PORT OF DISCHARGE JACKSONVILLE, FL | DESTINATION PORT JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL)

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMU595786 TLI: | 1  40RF | EMPTY RETURN PRMU595786 PRMC172230 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMZ172230 TLI: | 1  40CH | EMPTY RETURN PRMU595786 PRMC172230 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595795 TLI: | 1  40RF | EMPTY RETURN PRMU595795 PRMC170932 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC170932 TLI: | 1  40CH | EMPTY RETURN PRMU595795 PRMC170932 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595842 TLI: | 1  40RF | EMPTY RETURN PRMU595842 PRMC172606 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC172606 TLI: | 1  40CH | EMPTY RETURN PRMU595842 PRMC172606 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595901 TLI: | 1  40RF | EMPTY RETURN PRMU595901 PRMC171602 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMC171602 TLI: | 1  40CH | EMPTY RETURN PRMU595901 PRMC171602 - CHASIS | 0 lbs 0 kgs | |
| UNIT: PRMU595910 TLI: | 1  40RF | EMPTY RETURN PRMU595910 PRMC172411 - CHASIS | 0 lbs 0 kgs | |

THIS IS YOUR INVOICE REMIT PAYMENT TO: SEA STAR LINE LLC P.O. BOX 404363 ATLANTA, GA 30384-9363 PLEASE INCLUDE BL # ON YOUR REMITTANCE

*Invoice Audited*

SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE

SEA STAR LINE, LLC

REVISED 2/02   Page 5 of 6

A-301                    SE13304

SEA STAR LINE, LLC    FINISHED BLUE FORM LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | | TAX BOND NO. | SCAC SSLH | BL NO. 3003028357 | | Date: 12/16/03 |
|---|---|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING  (USA61101) 101 SOUTH KING ST GLOUCESTER CITY   NJ  08030 | | EXPORT REFERENCES | | | TAX STATUS | |
| | | BOOKING NUMBER ELY424SU7517 | | | SHIPPER REFERENCE NO. | |
| CONSIGNEE  (COMPLETE NAME, ADDRESS, AND ZIP CODE) EMERALD EQUIPMENT LEASING  (USA61101) 101 SOUTH KING ST GLOUCESTER CITY   NJ  08030 | | SALES AGENT OR ICC (Complete Name, Address and Zip Code)    FREIGHT BROKER LIC. | | | | |
| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS. JOHN ALLEN   {} 904-923-3024 | | ALSO NOTIFY, ROUTING OR INSTRUCTIONS | | | | |

| PIER SAN JUAN, PUERTO RICO | | PLACE OF RECEIPT | |
|---|---|---|---|
| VESSEL EL MORRO | VOY. NO 425 N   FLAG UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE JACKSONVILLE, FL | | DESTINATION PORT JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMC172411 TLI: | 1  40CH | EMPTY RETURN PRMU595910 PRMC172411 - CHASIS COMMENT: BILL TO : USA61101 EMERALD EQUIPMENT LEASING 101 SOUTH KING ST GLOUCESTER CITY, NJ 08030 ATT: ARTHUR DAVIS           AND USA61111 MBC LEASING CORP 2 HOPKINGS PLAZA PO BOX 1451 BALTIMORE, MD 21201 ATT: SCOTT KRIEGER TLI 2002-00-0246-0019 (004)  SEA STAR | 0 lbs 0 kgs | |

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P. O. BOX 409363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

*Invoice Audited*

| TARIFF ITEM NUMBER | CHARGES | | TOTAL | FREIGHT PAYABLE AT/BY: | 12 |
|---|---|---|---|---|---|
| OC FRT NORTHBOUND | 23 | 650.00 | 14,950.00 | EMERALD EQUIPMENT LEASING  (USA61101) 101 SOUTH KING ST GLOUCESTER CITY   NJ  08030 | |
| | TOTAL CHARGES: 14,950.00 | | | | |

SHIPPER LOAD AND COUNT                    FREIGHT COLLECT                    COPY NON-NEGOTIABLE

1. Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's interest negotiance with limits specified in Clauses 23 and 24 on the reverse side or Shipper selects Options (A) or (B) below.

A. Ad Valorem - If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate for Shipper's cargo.
Declared Value      $

B. Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured.  If cargo can be insured, Shipper redirects Shipper's inbound cargo insurance at the applicable rates charged by Carrier.
[ ] Yes   [ ] No      Insured Value  $

Subject to Clause 46 of Conditions, if the shipment is to be delivered to the Consignee without recourse on the consignor, the consignee shall sign the following statement.  The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
Signature of Consignor

THE CARRIER HAS RECEIVED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HEREIN, IN EXTERNAL APPARENT GOOD ORDER AND CONDITION, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED.  CARRIER HAS NOT INSPECTED CONTENTS OR SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIER'S TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILLS OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

BY _____
SEA STAR LINE, LLC

REVISED 2/02                                                                                    Page 6 of 6

SEA STAR LINE, LLC

NEITHER THIS RECEIPT NOR ANY LOCAL CUSTOMS OR OTHER BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | | TAX BOND NO. | SCAC<br>SSLH | BL NO.<br>3003026430 | | Date:<br>12/09/03 |
|---|---|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING   (USA61101)<br>101 SOUTH KING ST<br><br>GLOUCESTER CITY   NJ  08030 | | EXPORT REFERENCES | | | TAX STATUS | |
| | | BOOKING NUMBER<br>ELY423SU7533 | | | SHIPPER REFERENCE NO. | |
| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) | | SALES AGENT OR ICC (Complete Name, Address and Zip Code)     FREIGHT BROKER LIC | | | | |
| EMERALD EQUIPMENT LEASING   (USA61101)<br>101 SOUTH KING ST<br><br>GLOUCESTER CITY   NJ  08030 | | () | | | | |
| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS.<br>() | | ALSO NOTIFY, ROUTING OR INSTRUCTIONS | | | | |
| PIER<br>SAN JUAN, PUERTO RICO | | PLACE OF RECEIPT | | | | |
| VESSEL        VOY. NO     FLAG<br>EL YUNQUE      423  N    UNITED STATES | | PORT OF LOADING<br>SAN JUAN, PUERTO RICO | | POINT AND COUNTRY OF ORIGIN | | |
| PORT OF DISCHARGE<br>JACKSONVILLE, FL | | DESTINATION PORT<br>JACKSONVILLE, FL | | FINAL DESTINATION OF GOODS (NOT VESSEL) | | |

| PARTICULARS FURNISHED BY SHIPPER | | | | |
|---|---|---|---|---|
| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
| UNIT: PRMC1206593<br>TLI: 1 | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 120659 / PRMC 1202469 2ND DECK HOLD B / 27 | 0 lbs<br>0 kgs | |
| UNIT: PRMC1202469<br>TLI: | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 120659 / PRMC 1202469 2ND DECK HOLD B / 27 | 0 lbs<br>0 kgs | |
| UNIT: PRMC150143<br>TLI: | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 150143 / PRMC 1150044 2ND DECK HOLD B / 27 | 0 lbs<br>0 kgs | |
| UNIT: PRMC150044<br>TLI: | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 150143 / PRMC 1150044 2ND DECK HOLD B / 27 | 0 lbs<br>0 kgs | |
| UNIT: PRMC120466<br>TLI: | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 120466 / PRMC120647 – 2ND DECK HOLD C / 36 | 0 lbs<br>0 kgs | |
| UNIT: PRMC120647<br>TLI: | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 120466 / PRMC120647 – 2ND DECK HOLD C / 35 | 0 lbs<br>0 kgs | |
| UNIT: PRMC120670<br>TLI: | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 120670 / PRMC 120616 – 2ND DECK HOLD C / 37 | 0 lbs<br>0 kgs | |
| UNIT: PRMC120616<br>TLI: | 1  20CH | 1 BUNDLE OF CHASSIS<br>PRMC 120670 / PRMC 120616 – 2ND DECK HOLD C / 37 | 0 lbs<br>0 kgs | |

*Invoice Audited*

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P. O. BOX 409363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

SEA STAR

| SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE |
|---|---|---|

*   Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provisions for Shipper's interest cargo insurance with limits specified in Clauses 20 and 24 on the reverse side or shipper selects Options (A) or (B) below.
A   Ad Valorem - If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and Carrier will charge the Ad Valorem rate for Shipper's cargo.
        Declared Value    $
B   Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper instructs Shipper's interest cargo insurance at the applicable rates charged by Carrier.
        [ ] Yes   [ ] No    Insured Value  $

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPMENT OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THIS RECEIPT AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.
IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILL(S) OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHER(S) TO STAND VOID.

Subject to Clause #4 of Conditions, if the Shipment is to be delivered to the Consignee without invoice to the consignor, the consignee shall sign the following statement. The Carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Signature of Consignee

BY _____

SEA STAR LINE, LLC

REVISED 2/02

Page 1 of 2

A-303                                    SE13306

SEA STAR LINE, LLC          COMBINED INLAND/OCEAN (STRAIGHT) BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC **SSLH** | BL NO. 3003026430 | Date: 12/09/03 |
|---|---|---|---|---|

**SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE)**
EMERALD EQUIPMENT LEASING   (USA61101)
101 SOUTH KING ST

GLOUCESTER CITY   NJ  08030

EXPORT REFERENCES

TAX STATUS

BOOKING NUMBER
**ELY423SU7533**

SHIPPER REFERENCE NO.

**CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE)**
EMERALD EQUIPMENT LEASING   (USA61101)
101 SOUTH KING ST

GLOUCESTER CITY   NJ  08030

SALES AGENT OR ICC (Complete Name, Address and Zip Code)    FREIGHT BROKER LIC.
()

**NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS.**
()

ALSO NOTIFY, ROUTING OR INSTRUCTIONS

| PIER SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL EL YUNQUE   VOY. NO. 423 N   FLAG UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE JACKSONVILLE, FL | DESTINATION PORT JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | | MOVEMENT: PORT TO PORT BILL TO: USA61101 EMERALD EQUIPMENT LEASING 101 SOUTH KING ST GLOUCESTER CITY, NJ 08030 ATT: ARTHUR DAVIS AND USA61111 MBC LEASING CORP 2 HOPKINGS PLAZA PO BOX 1451 BALTIMORE, MD 21201 ATT: SCOTT KRIEGER NO S.E.D. REQUIRED–NO INDIVIDUAL SCHEDULE B NUMBER VALUED OVER $2,500 SECTION 30.55 (PAR. H) TLI 2002-00-0246-0020 (500) | *Invoice Audited* | |

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P. O. BOX 409363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

**SEA STAR**

| TARIFF ITEM NUMBER | CHARGES | TOTAL | FREIGHT PAYABLE AT/BY: | 12 |
|---|---|---|---|---|
| OC FRT NORTHBOUND | 16    325.00 | 5,200.00 | EMERALD EQUIPMENT LEASING   (USA61101) 101 SOUTH KING ST | |
| | TOTAL CHARGES: 5,200.00 | | GLOUCESTER CITY   NJ  08030 | |

| SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE |
|---|---|---|

* Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's internal cargo insurance with limits specified in Clauses 23 and 24 on the reverse side or shipper selects Options (A) or (B) below.

A   Ad Valorem– If Shipper declares a value to the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate for Shipper's cargo.
   Declared Value   $

B   Insurance Coverage – See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper requests Shipper's internal cargo insurance of the applicable rates charged by Carrier.
   [ ] Yes  [ ] No        Insured Value   $

Subject to Clause #8 of Conditions, if the shipment is to be released to the Consignee without recourse to the consignor, the consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Signature of
Consignor

RELEASED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HEREIN IDENTIFIED TO APPARENT GOOD ORDER AND CONDITION, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED. CARRIER HAS NOT INSPECTED CONTENTS OR SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILLS OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

BY _____

SEA STAR LINE, LLC

REVISED 2/02                                                         Page 2 of 2

SEA STAR LINE, LLC

CONTAINER/TRAILER COMBINED BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC | B/L NO. | DATE |
|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY  NJ  08030 | | SSLH | 3003025990 | 01-Dec-2003 |

| EXPORT REFERENCES | TAX STATUS |
|---|---|
| BOOKING NUMBER<br>ELM420SU6049 | SHIPPER REFERENCE NO. |

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) |
|---|
| EMERALD EQUIPMENT LEASING (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY  NJ  08030 |

Sales Agent or ICC (Complete Name, Address and Zip Code)          Freight Broker LIC.

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS.) | ALSO NOTIFY, ROUTING OR INSTRUCTIONS |
|---|---|
| JOHN ALLEN  ()<br>904-923-3024 | |

| PIER<br>SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL          VOY. NO          FLAG<br>EL MORRO          420      N   UNITED STATES | PORT OF LOADING<br>SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE<br>JACKSONVILLE, FL | DESTINATION PORT<br>JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMU5957100<br>TLI: 2002-00-0246 | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5959485<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5950301<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5955371<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5957435<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5954288<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5959612<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5956969<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5956260<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5958555<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |

*Invoice Audited*

| SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE |
|---|---|---|

Page 1 of 4

Signature of Consignor

SE13308

SEA STAR LINE, LLC    COMBINED INLAND / OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC | B/L NO. | DATE |
|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING   (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY   NJ  08030 | | SSLH | 3003025990 | 01-Dec-2003 |

| | EXPORT REFERENCES | TAX STATUS |
|---|---|---|

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) | BOOKING NUMBER | SHIPPER REFERENCE NO. |
|---|---|---|
| EMERALD EQUIPMENT LEASING   (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY   NJ  08030 | ELM420SU6049 | |

| | Sales Agent or ICC (Complete Name, Address and Zip Code) | Freight Broker LIC. |

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS. | ALSO NOTIFY, ROUTING OR INSTRUCTIONS |
|---|---|
| JOHN ALLEN  ()<br>904-923-3024 | |

| PIER | PLACE OF RECEIPT |
|---|---|
| SAN JUAN, PUERTO RICO | |

| VESSEL      VOY. NO | FLAG | PORT OF LOADING | POINT AND COUNTRY OF ORIGIN |
|---|---|---|---|
| EL MORRO        420 | N  UNITED STATES | SAN JUAN, PUERTO RICO | |

| PORT OF DISCHARGE | DESTINATION PORT | FINAL DESTINATION OF GOODS (NOT VESSEL) |
|---|---|---|
| JACKSONVILLE, FL | JACKSONVILLE, FL | |

### PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|---|
| UNIT: PRMU5959470<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5951627<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5958051<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5954396<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5951566<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5956911<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5959480<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5953044<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5958600<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5955031<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |

| SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE |
|---|---|---|

Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's interest cargo insurance with limits specified in Clauses 23 and 24 on the reverse side or shipper selects Option (A) or (B) below.

A    Ad Valorem – If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate for Shipper's cargo.
        Declared Value    $

B    Insurance Coverage – See Clause 23 on the reverse side and applicable bill to determine whether Shipper's cargo can be insured. If cargo can be insured, Ship or requests Shipper's interest cargo insurance at the applicable rates charged by Carrier.
[  ] Yes   [  ] No    Insured Value    $

RECEIVED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HERE IN MENTIONED IN APPARENT GOOD ORDER AND CONDITION, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED. CARRIER HAS NOT INSPECTED CONTENTS OR SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILL(S) OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

| | | |
|---|---|---|
| Subject to Clause 10 of Conditions, if the shipment is to be delivered to the Consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.<br><br>Signature of Consignor | REVISED 2/02<br><br>Page 2 of 4 | BY _____ SEA STAR LINE, LLC |

SE13309

SEA STAR LINE, LLC    COMBINED INLAND / OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC | BL NO. | DATE |
|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING    (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY   NJ  08030 | | SSLH | 3003025990 | 01-Dec-2003 |

| | EXPORT REFERENCES | | TAX STATUS | |
|---|---|---|---|---|

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) | BOOKING NUMBER | SHIPPER REFERENCE NO. |
|---|---|---|
| EMERALD EQUIPMENT LEASING    (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY   NJ  08030 | ELM420SU6049 | |

Sales Agent or ICC (Complete Name, Address and Zip Code)     Freight Broker LIC.

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS. | ALSO NOTIFY, ROUTING OR INSTRUCTIONS |
|---|---|
| JOHN ALLEN   ()<br>904-923-3024 | |

| PIER<br>SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL            VOY. NO            FLAG<br>EL MORRO         420        N  UNITED<br>                                        STATES | PORT OF LOADING<br>SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE<br>JACKSONVILLE, FL | DESTINATION PORT<br>JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|---|
| UNIT: PRMU595120<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5950739<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5952644<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5950596<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5956423<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5953281<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5953677<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5951041<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5959567<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5957353<br>TLI: | 1 | 40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |

| SHIPPER LOAD AND COUNT | FREIGHT COLLECT | COPY NON-NEGOTIABLE |
|---|---|---|

*   Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's interest cargo insurance with limits specified in Clauses 23 and 37 on the reverse side or shipper selects Options (A) or (B) below.

A   Ad Valorem - If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate for Shipper's cargo.
           Declared Value      $

B   Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured.  If cargo can be insured, Shipper requests Shipper's interest cargo insurance at the applicable rates charged by Carrier.
[ ] Yes  [ ] No     Insured Value   $

Subject to Clause 9d of Contents, if the shipment is to be delivered to the Consignee without recourse on the consignor, the consignee shall sign the following statement. The carrier shall not make delivery of this shipment without prepayment of freight and all other lawful charges.

RECEIVED THE GOODS OF PACKAGES SAID TO CONTAIN GOODS HEREIN MENTIONED IN APPARENT GOOD ORDER AND CONDITION, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED.  CARRIER HAS NOT INSPECTED CONTENTS OF SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIER'S TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ ORIGINAL BILL(S) OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

REVISED 2/03                    BY              SEA STAR LINE, LLC

Page 3 of 4                                                         Signature of<br>                                                                    Consignor

A-307                                        SE13310

SEA STAR LINE, LLC    COMBINED INLAND / OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC | BL NO. | | DATE |
|---|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING (USA72686) 101 SOUTH KING STREET GLOUCHESTER CITY  NJ  08030 | | SSLH | 3003025990 | | 01-Dec-200. |

| | EXPORT REFERENCES | TAX STATUS |
|---|---|---|

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) | BOOKING NUMBER | SHIPPER REFERENCE NO. |
|---|---|---|
| EMERALD EQUIPMENT LEASING (USA72686) 101 SOUTH KING STREET GLOUCHESTER CITY  NJ  08030 | ELM420SU6049 | |

| | Sales Agent or ICC (Complete Name, Address and Zip Code) | Freight Broker LIC. |
|---|---|---|

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS. | ALSO NOTIFY, ROUTING OR INSTRUCTIONS |
|---|---|
| JOHN ALLEN () 904-923-3024 | |

| PIER SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL          VOY. NO        FLAG EL MORRO        420      N  UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE JACKSONVILLE, FL | DESTINATION PORT JACKSONVILLE, FL | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMU5950831 TLI: | 1    40RF | EMPTY RETURN | 0 lbs 0 kgs | |
| UNIT: PRMU5955279 TLI: | 1    40RF | EMPTY RETURN | 0 lbs 0 kgs | |
| UNIT: PRMU5955601 TLI: | 1    40RF | EMPTY RETURN | 0 lbs 0 kgs | |
| UNIT: PRMU5955047 TLI: | 1    40RF | EMPTY RETURN | 0 lbs 0 kgs | |
| UNIT: PRMU595877 TLI: | 1    40RF | EMPTY RETURN | 0 lbs 0 kgs | |
| | | EMPTY RETURN - NO CHARGE MOVEMENT: PORT TO PORT NO S.E.D. REQUIRED--NO INDIVIDUAL SCHEDULE B NUMBER VALUED OVER $2,500 SECTION 30.55 (PAR. H) TLI 2000-00-0246-0019 (500) | | |

| TARIFF ITEM NUMBER | CHARGES | TOTAL | FREIGHT PAYABLE AT/BY: |
|---|---|---|---|
| OC FRT NORTHBOUND | 35    650.00 | 22,750.00 | EMERALD EQUIPMENT LEASING (4EMEQL01) |
| | TOTAL CHARGES: 22,750.00 | | |

SHIPPER LOAD AND COUNT          FREIGHT COLLECT          COPY NON-NEGOTIABLE

* Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's limited cargo insurance with limits specified in Clauses 23 and 24 on the reverse side or shipper selects Options (A) or (B) below.

A  Ad Valorum - If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorum rate for Shipper's cargo.
Declared Value  $

B  Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured.  If cargo can be insured, Shipper requests Shipper's limited cargo insurance at the applicable rates charged by Carrier.
] Yes  ] No        Insured Value  $

Subject to Clause 26 of Conditions, if this shipment is to be delivered to the Consignee without recourse on the consignor, the consignor shall sign the following statement. This carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

| | |
|---|---|
| | RECEIVED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HEREIN MENTIONED IN APPARENT GOOD ORDER AND CONDITION, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED. CARRIER HAS NOT INSPECTED CONTENTS OR SAID SEALED PACKAGES. THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIER'S TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C. IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED _____ (NUMBER) BILL(S) OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID. |
| Signature of Consignor | REVISED 2002          BY _____    SEA STAR LINE, LLC |

Page 4 of 4

A-308

SEA STAR LINE, LLC    COMBINED INLAND/OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | TAX BOND NO. | SCAC | BL NO. | DATE |
|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING   (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY   NJ  08030 | | SSLH | 3003025987 | 02-Dec-200 |

EXPORT REFERENCES | TAX STATUS

BOOKING NUMBER
**ELM420SU6049A**

SHIPPER REFERENCE NO.

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) |
|---|
| EMERALD EQUIPMENT LEASING   (USA72686)<br>101 SOUTH KING STREET<br><br>GLOUCHESTER CITY   NJ  08030 |

Sales Agent or ICC (Complete Name, Address and Zip Code)    Freight Broker LIC.

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS. |
|---|
| JOHN ALLEN  {}<br>904-923-3024 |

ALSO NOTIFY, ROUTING OR INSTRUCTIONS

| PIER | PLACE OF RECEIPT |
|---|---|
| SAN JUAN, PUERTO RICO | |

| VESSEL | VOY. NO | FLAG | PORT OF LOADING |
|---|---|---|---|
| EL YUNQUE | 421 | N  UNITED STATES | SAN JUAN, PUERTO RICO |

POINT AND COUNTRY OF ORIGIN

| PORT OF DISCHARGE | DESTINATION PORT | FINAL DESTINATION OF GOODS (NOT VESSEL) |
|---|---|---|
| JACKSONVILLE, FL | JACKSONVILLE, FL | |

**PARTICULARS FURNISHED BY SHIPPER**

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| UNIT: PRMU5952433<br>TLI:  2002-00-0246 | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5952648<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5955237<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5955140<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| UNIT: PRMU5958508<br>TLI: | 1    40RF | EMPTY RETURN | 0 lbs<br>0 kgs | |
| | | EMPTY RETURN - NO CHARGE<br><br>MOVEMENT; PORT TO PORT<br>NO S.E.D. REQUIRED--NO INDIVIDUAL SCHEDULE B NUMBER VALUED OVER<br>$2,500 SECTION 30.55 (PAR. H)<br>TLI 2000-00-0246-0019 (500) | | *Invoice Audited* |

| TARIFF ITEM NUMBER | CHARGES | TOTAL | FREIGHT PAYABLE AT/BY: |
|---|---|---|---|
| OC FRT NORTHBOUND | 5    650.00 | 3,250.00<br>TOTAL CHARGES: 3,250.00 | EMERALD EQUIPMENT LEASING   (4EMEQL01) |

SHIPPER LOAD AND COUNT            FREIGHT COLLECT                    COPY NON-NEGOTIABLE

Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's interest cargo insurance with limits specified in Clauses 23 and 24 on the reverse side or Shipper selects Options (A) or (B) below.

A    Ad Valorem - If Shipper declares a value in the space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate for Shipper's cargo.
Declared Value    $

B    Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured.  If cargo can be insured, Shipper requests Shipper's Interest cargo insurance at the applicable rates charged by Carrier.
☐ Yes  ☐ No    Insured Value    $

Subject to Clause six of Conditions, if the shipment is to be delivered to the Consignee without recourse on the consignor, the consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

RECEIVED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HERE IN MENTIONED IN APPARENT GOOD ORDER AND CONDITION UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED. CARRIER HAS NOT INSPECTED CONTENTS OR SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPMENT OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED        ORIGINAL BILL(S) OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

Signature of Consignor

REVISED 2/02          BY _____    SEA STAR LINE, LLC

A-309

**SEA STAR LINE, LLC**     COMBINED INLAND / OCEAN LONG FORM BILL OF LADING NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS, AND ZIP CODE) | | TAX BOND NO. | SCAC | BL NO. | | DATE |
|---|---|---|---|---|---|---|
| EMERALD EQUIPMENT LEASING   (USA61101) 101 SOUTH KING ST   GLOUCESTER CITY   NJ  08030 | | | SSLH | 3004037171 | | 27-Jan-2004 |

| | | EXPORT REFERENCES | | TAX STATUS | |
|---|---|---|---|---|---|

| CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE) | BOOKING NUMBER | | SHIPPER REFERENCE NO. |
|---|---|---|---|
| EMERALD EQUIPMENT LEASING   (USA61101) 101 SOUTH KING ST   GLOUCESTER CITY   NJ  08030 | ELY435SU3152 | | |
| | Sales Agent or ICC (Complete Name, Address and Zip Code) | | Freight Broker LIC. |

| NOTIFY PARTY (COMPLETE NAME, ADDRESS, ZIP CODE, TELEPHONE AND FAX NOS.) | ALSO NOTIFY, ROUTING OR INSTRUCTIONS |
|---|---|
| | |

| PIER SAN JUAN, PUERTO RICO | PLACE OF RECEIPT | |
|---|---|---|
| VESSEL   VOY. NO   FLAG EL YUNQUE    435    N  UNITED STATES | PORT OF LOADING SAN JUAN, PUERTO RICO | POINT AND COUNTRY OF ORIGIN |
| PORT OF DISCHARGE PORT EVERGLADES, FL. | DESTINATION PORT PORT EVERGLADES, FL. | FINAL DESTINATION OF GOODS (NOT VESSEL) |

PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| TLI:  2002-00-0246-0022 | 7    20CH | 7 BUNDLES OF 20FT CHASIS PRMC120154, 128, 102 PRMC120015, 217, 204 PRMC120198, 278, 171 PRMC120194, 376, 187 PRMC120149, 378, 158 PRMC120094, 011, 092 PRMC120349, 002, 368 NO S.E.D. REQUIRED–NO INDIVIDUAL SCHEDULE B NUMBER VALUED OVER $2,500 SECTION 30.55 (PAR. H) TLI 2002-00-0246-0022 (500) | lbs kgs | |

THIS IS YOUR INVOICE
REMIT PAYMENT TO:
SEA STAR LINE LLC
P O BOX 409363
ATLANTA, GA 30384-9363
PLEASE INCLUDE BL # ON
YOUR REMITTANCE

*Invoice Audited*

| TARIFF ITEM NUMBER | CHARGES | TOTAL | FREIGHT PAYABLE AT/BY: | 12 |
|---|---|---|---|---|
| OC FRT NORTHBOUND | 7     500.00 | 3,500.00 | EMERALD EQUIPMENT LEASING   (USA61101) 101 SOUTH KING ST   GLOUCESTER CITY   NJ  08030 | |
| | | TOTAL CHARGES: 3,500.00 | | |

SHIPPER LOAD AND COUNT          FREIGHT COLLECT                    COPY NON-NEGOTIABLE

Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's interest cargo insurance with limits specified in Clauses 22 and 24 on the reverse side or shipper selects Options (A) or (B) below.

A    Ad Valorem - If Shipper declares a value in this space provided, Carrier's $500 limitation per container will not apply, and carrier will charge the Ad Valorem rate for Shipper's cargo.
    Declared Value    $

B    Insurance Coverage - See Clause 23 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper insures Shipper's interest cargo insurance at the applicable rate charged by Carrier.
☐ Yes  ☐ No    Insured Value  $

RECEIVED THE GOODS OR PACKAGES SAID TO CONTAIN GOODS HERE IN MENTIONED IN APPARENT GOOD ORDER AND CONDITION, UNLESS OTHERWISE INDICATED, TO BE SHIPPED AS HEREIN PROVIDED. CARRIER HAS NOT INSPECTED CONTENTS OR SAID SEALED PACKAGES.

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANSSHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIER'S TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON D.C.

IN WITNESS WHEREOF, THE CARRIER OR ITS AGENT HAS SIGNED            ORIGINAL BILL(S) OF LADING, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED, THE OTHERS TO STAND VOID.

Subject to Clause 4b of Conditions, if the shipment is to be delivered to the Consignee without requiring an the consignor, the consignee shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

REVISED 3/02        BY                SEA STAR LINE, LLC

Signature of Consignee

Page 1 of 1

**SEA STAR LINE, LLC**
**SELF-BILLING REPORT**

**Billing Period:** 12/01/03 TO 12/31/03
**Owner:** EMERALD EQUIPMENT LEASING

| EQUIPMENT TYPE | TOTAL UNITS | PER DIEM | TOTAL AMOUNT |
|---|---|---|---|
| 20' CHASSIS | 1 | $2.20 | $68.20 |
| 40' CHASSIS | 1 | $2.20 | $68.20 |
| 45' CHASSIS | 1 | $2.40 | $74.40 |
| | 3 | | $210.80 |

| | | |
|---|---|---|
| **GRAND TOTAL:** | **3** | **$210.80** |

A-311                    SE815

**Self Billing Register**
**Billing Period  12-01-2003 TO 12-31-2003**
**Lessor:  EMERALD**
**CONTRACT NO:  EMED1**

| EQUIPMENT # | ON-HIRE DATE | ON-HIRE ORIGIN | ON-HIRE DEPOT | OFF-HIRE DATE | PER DIEM RATE | DAYS CHARGED IN BILLING PERIOD | AMOUNT | COMMENTS |
|---|---|---|---|---|---|---|---|---|
| CARGO TYPE:  40CH | | | | | | | | |
| PRMC045313 | 21-May-2002 | PRSJU | PTN | | 2.20 | 31 | $68.20 | OFFER TO PURCHASE PENDING |
| | | | | | | | $68.20 | |
| Total 40CH : | 1 | | | | | | | |
| CARGO TYPE:  45CH | | | | | | | | |
| PRMC150430 | 17-Jul-2002 | CALAX | GIS | | 2.40 | 31 | $74.40 | TO BE SWAPPED WITH PRMC150067 |
| | | | | | | | $74.40 | |
| Total 45CH : | 1 | | | | | | | |
| CARGO TYPE:  20CH | | | | | | | | |
| PRMC120421 | 30-May-2002 | PRSJU | PTN | | 2.20 | 31 | $68.20 | OFFER TO PURCHASE PENDING |
| | | | | | | | $68.20 | |
| Total 20CH : | 1 | | | | | | | |
| Total Units | 3 | | | | | | | |
| Total Offhired | 0 | | | | | | | |
| EOM Total: | 3 | | | | | Total Due to Emerald: | $210.80 | |



JANUARY 14, 2004

ARTURO

PLEASE STACK THE FOLLOWING 20FT
CHASSIS AND HAVE THE DELIVERED OT
PORT EVERGLADES

PRMC  120378    120414    120171    120187
       120094    120366    120349    120002
       120194    120278    120196    120158
       120377    120149    120102    120128
       120154    120092    120011    120204
       120217    120015

THERE IS NO REQUIREMENT FOR SPECIFIC CHASSIN
TO BE IN ANY SPECIFIC STACK

CHASSIS 120772  120492  120451 WILL BE
PICKED UP BY ENSCO CARIBE

DO NOT STACK OR DELIVER THE FOLLOWING CHASSIS
PRMC
120041    120145    120419    120028    120021
120362    120431    120262    120334    120374
120252    120211    120160    120089    120263
120687
UFCC 42211

THANK YOU

SE52415
A-313

01-19-2007   15:59   From-                                    T-646   P.021/022   F-178

## ADELMAN LAVINE GOLD AND LEVIN

A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELORS AT LAW

LEWIS N GOLD
ROBERT H. LEVIN
GARY M. SCHILDHORN
BARRY D. ELBAAN
GARY D. BRESLER
STEVEN H. KORN
RAYMOND H. LEMISCH
LEON R. JALSON
ALAN I. MOLDOFF
KATHERINE E. FORREST
WILLIAM R. HINCHMAN
VICTORIA CHARLES SNELSER
ROBERT J. LENAHAN
BRADFORD J. SANDLER
MARK PFEIFER
D. ANDREW BERTORELLI JR.
JENNIFER R. HOOVER

SUITE 900
FOUR PENN CENTER
PHILADELPHIA, PA 19103-2808
(215) 568-7515

FACSIMILE (215) 557-7022
la-gov@adlevin.com

SUITE 710
819 NORTH MARKET STREET
WILMINGTON, DE 19801
302-654-8200

February 25, 2004

### BY TELECOPIER (215-635-4771)

Storage Transfer L.L.C.
c/o Lorraine Robins
7900 Old York Road
Unit 812B
Elkins Park, PA 19027

        Re:    Contribution to the Emerald Estate

Dear Ms. Robins:

        I am advised that Storage Transfer L.L.C. ("Storage") has acquired the
secured position of MBC Leasing Company in the Estate of Emerald Equipment Leasing,
Inc. ("Emerald"). Emerald currently intends to prosecute certain substantial claims
against Sea Star Lines, LLC. Storage has agreed to contribute to the Emerald estate 15%
of any proceeds, net of expenses or other amounts disbursed to third parties, it would
otherwise receive on account of its secured claim as a result of any settlement of the Sea
Star claim or the collection of any judgment obtained upon prosecution of this claim.
Storage has further agreed that these funds may be used by Emerald to fund a plan of
reorganization and that Storage will not assert a deficiency claim against Emerald with
respect to any proceeds contributed by Storage to the Emerald estate.

*E68500*

01-19-2007   15:59    From-                          T-646   P.022/022   F-178

Storage Transfer L.L.C.
February 25, 2004
Page 2


Please execute this letter on the space provided below to indicate
Storage's agreement to the carveout from its secured claim in accordance with the terms
set forth above.

Very truly yours,

GARY M. SCHILDHORN

GMS.md
cc:    Mr. Thomas Holt, Sr.

g.\393\10\letters\storage transfer2

AGREED TO AND ACCEPTED BY:
STORAGE TRANSFER L.L.C.

By: _____
    Lorraine Robins,
    Its Sole Member

E68501

A-315

**FILED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION 2004 MAR 11 A 10:47

CASE NO. 3:04 CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE. FLORIDA

SEA STAR LINE, LLC,
a limited liability company,

    Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

    Defendant.

_____/

## COMPLAINT

    Plaintiff, SEA STAR LINE, LLC ("SEA STAR"), sues Defendant, EMERALD EQUIPMENT LEASING, INC. ("EMERALD"), and states:

    1.  This is an action for declaratory judgment and other relief pursuant to 28 U.S.C.A. §§2201 and 2202 and for damages. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Federal jurisdiction exists pursuant to 28 U.S.C.A. §§1333, 1337, and 1367.

    2.  SEA STAR is a limited liability company organized and existing under the laws of the State of Delaware. At all material times, SEA STAR has maintained its principal place of business in Jacksonville, Florida. As an ocean carrier, SEA STAR transports cargo in interstate commerce.

    3.  EMERALD, a Delaware corporation, is a named Debtor

1

under Chapter 11 of the United States Bankruptcy Code. At all material times, EMERALD has done substantial business with SEA STAR in the State of Florida. Such business includes but is not limited to delivery and return of equipment in the Port of Jacksonville, Florida, as well as carriage of equipment as cargo from the Port of San Juan, Puerto Rico to the Port of Jacksonville, Florida and Port Everglades, Florida.

4.    In April 2002 SEA STAR entered into an Asset Purchase Agreement, as amended, with NPR, INC. ("NPR"), a Delaware corporation, and other named Debtors in proceedings pending under Chapter 11 of the United States Bankruptcy Code. Subsequently EMERALD and MBC Leasing Corp. ("MBC"), its secured lender, objected to the proposed sale. Among expressed concerns were payments for equipment leased to NPR and used for cargo shipments that would be in process at the time of and after closing of the asset purchase ("shipments in process") and storage charges. Having heard arguments on April 26, 2002, the bankruptcy court overruled "the Emerald entities" objections and said that any rights would be preserved to argue against the sale proceeds.

5.    SEA STAR and NPR representatives agreed to payment and claim procedures and deadlines with respect to shipments in process. When NPR's counsel outlined the plan to the bankruptcy court, he confirmed that components of SEA STAR payments included NPR's projected equipment leasing and financing costs, labor, materials, and other factors involved in transporting shipments in

2

process from origin to destination points. Further, the attorney acknowledged that NPR might be subject to administrative claims, filed by owners and lessors of equipment used for shipments in process.

6. On April 26, 2002, the bankruptcy court issued an Order Authorizing Sale of the NPR Assets Free and Clear of All Liens, Claims and Encumbrances ("Sale Order"). Overruling all objections that had not been withdrawn, the Sale Order authorized SEA STAR's acquisition of specific NPR assets. SEA STAR had refused to acquire, assume, or accept assignment of any equipment agreements between EMERALD and NPR. As to equipment not purchased or leased by SEA STAR, the Sale Order states in part:

> Buyer [SEA STAR] shall cooperate in removing any such equipment from vessels in transit and store such equipment on leased premises at the final port of destination, to the extent such final destination is a leased premises sold and assigned to the Buyer under the Asset Purchase Agreement. Nothing contained in this Order shall prejudice any of Emerald's rights to seek disgorgement of funds based on any of its claims.
> ...
> After closing of the sale to Buyer, all creditors of the Debtors, whether known or unknown, are hereby enjoined from asserting or prosecuting any claim or cause of action against Buyer or the Purchased Assets to recover on account of any liability owed by the Debtors.

A copy of the Sale Order is attached as Exhibit "A".

7. Closing of the asset purchase occurred on April 27, 2002 at 3:00 a.m. In compliance with the Sale Order, SEA STAR

3

stored equipment located on or returned to premises acquired and leased by SEA STAR at final ports of destination pursuant to the Asset Purchase Agreement. SEA STAR and MBC agreed to a thirty (30) day grace period before storage charges would begin to accrue with respect to MBC and EMERALD equipment.

8. In accordance with procedures approved by the bankruptcy court, SEA STAR paid NPR all amounts due for shipments in process, including equipment expenses. NPR submitted no additional reimbursement claims. In Answers to Interrogatories dated July 9, 2002, NPR acknowledged that "[n]o amount is due to NPR from Sea Star for use of Emerald Equipment being used at the time of Closing" or "for the use of Emerald Equipment located on a vessel purchased by Sea Star at the time of Closing."

9. The bankruptcy court later issued an Order allowing MBC to foreclose its security interest in EMERALD equipment. Dated July 22, 2002 but effective as of April 29, 2002, the Order terminated the automatic stay in regard to certain equipment. The Order also authorized MBC to remove equipment from EMERALD's possession and to sell equipment, applying the proceeds to EMERALD's indebtedness to MBC. A copy of the Order is attached as Exhibit "B".

10. Throughout the remainder of 2002 and 2003, MBC controlled decisions communicated to SEA STAR concerning EMERALD equipment. A June 10, 2002 letter from Scott Krieger of MBC to Thomas Holt, Sr. of EMERALD confirmed:

4

Any money due from Sea Star for use of any of
containers, gensets, and chassis previously
leased by Emerald Equipment Leasing to NPR,
Inc. and Holt Cargo Systems for a purpose
other than completing shipments in progress on
April 27 when Sea Star purchased certain
assets of NPR and Holt Cargo shall be paid
directly to MBC Leasing. Any money due from
Sea Star for use of any of the Emerald
Equipment to complete shipments in progress on
April 27 shall be paid in accordance with the
Memorandum that MBC understands exists between
Sea Star and NPR, Holt Cargo, and possibly
other affiliates to be allocated in accordance
with the Bankruptcy Court's ruling on the
allocation of proceeds of sale to Sea Star.

A copy of the letter is attached as Exhibit "C". The following day

Thomas Holt, Jr. requested that SEA STAR "remit a check in

accordance with the attached letter from MBC Leasing, Corp." A

copy of the letter is attached as Exhibit "D".

11. In a June 19, 2002 letter, MBC's attorney wrote:

At the hearing on the approval of the
sale of assets of Holt Cargo and NPR to Sea
Star, MBC sought a temporary restraining order
to stop Sea Star from using any of the Emerald
Equipment after closing. The Court, however,
ruled that as long as Sea Star compensated the
Debtors for such use and cooperated with
Lessors and secured creditors in recovering
their equipment once shipments in progress at
the time of closing were completed, Sea Star
would be permitted to use assets that it was
not purchasing for purposes of completing
shipments in process. Lessors and secured
creditors were directed to assert their claims
for use of their equipment after closing
against the monies paid by Sea Star in the
hands of Debtors.
...

...[F]unds due for use of the Emerald
Equipment to complete shipments in process at
the time of closing should be remitted to the
Debtors and any additional funds due for use

5

of the Emerald Equipment after closing should
be remitted directly to MBC ....

A copy of the letter is attached as Exhibit "E".

12.   On September 28, 2002, MBC and SEA STAR entered into

an Indemnity Agreement, which provides in part:

(a)   "MBC is willing to indemnify SEA STAR against
claims by COMPETING CLAIMANTS [defined to include
EMERALD] on the terms and conditions set forth in this
AGREEMENT to induce SEA STAR to pay MBC for the use of
the EMERALD EQUIPMENT...on or after April 27, 2002
immediately."

(b)   Upon execution of the Agreement, SEA STAR would
remit to MBC payment "for each item of the EMERALD
EQUIPMENT used during the period of April 27, 2002
through and including July 31, 2002...after deduction of
such reasonable charges as are due to SEA STAR for
storage and handling of EMERALD EQUIPMENT ...."

(c)   Beginning August 31, 2002 and continuing on the
last day of each succeeding month, "SEA STAR shall remit
to MBC for each item of EMERALD EQUIPMENT in SEA STAR'S
possession during that month or portion thereof
compensation of the daily rates specified on the EMERALD
SCHEDULE from the first day of the month through and
including the earliest of: (a) the day on which SEA STAR
purchases such item and pays the purchase price therefor;
(b) the day on which SEA STAR makes such item available
for removal from SEA STAR'S possession by MBC; or (c) the
last day of the month after deduction of such reasonable
charges as are due to SEA STAR for storage and handling
of EMERALD EQUIPMENT...."

(d)   "MBC   acknowledges   and   agrees   that   the
compensation rates set forth in 'Equipment Schedule
A'...represent fair and reasonable compensation for the
use of the EMERALD EQUIPMENT...and that provided SEA STAR
pays the amounts specified in Section 1 of this AGREEMENT
for each item of EMERALD EQUIPMENT...that it has used
during the applicable period when and as due, subject to
deductions specified in Section 1, MBC will assert no
further claims against SEA STAR for compensation for the
use of the EMERALD EQUIPMENT...by SEA STAR."

(e)   "MBC acknowledges and agrees that if SEA STAR

6

enters into a Rental Agreement with EMERALD which is approved by MBC, in writing, MBC shall not interfere with SEA STAR'S right to use or possession of any EMERALD EQUIPMENT that is the subject of such agreement so long as SEA STAR complies with the terms and conditions of such agreement."

A copy of the Indemnity Agreement is attached as Exhibit "F".

13. On October 4, 2002, SEA STAR sent MBC a check in the amount of $184,084.93 for *per diem* use of EMERALD equipment from April 27 through July 31, 2002, less storage and handling. Enclosed with the payment were *per diem* self-billing report summaries, corresponding to detailed self-billing reports previously submitted. Also enclosed were detailed invoices for storage and handling.

14. After MBC approved the contract form and substance, SEA STAR and EMERALD signed an Equipment Rental Agreement ("EMERALD Agreement"). The EMERALD Agreement is a maritime contract pertaining to equipment used in connection with carriage of cargo onboard vessels in maritime commerce. A copy of the EMERALD Agreement is attached as Exhibit "G".

15. Terms and conditions of the EMERALD Agreement, dated as of July 31, 2002, "cover equipment in use at various times commencing April 29, 2002." For each item of equipment, the EMERALD Agreement provides in pertinent part:

(a) The lease term "shall begin on the date of delivery to SEA STAR and ends on the date of off-hire ...."

(b) Delivery "shall be effected and evidenced by signed and dated equipment interchange receipts".

7

(c)   SEA STAR shall redeliver equipment to EMERALD at Greenwich terminal, Philadelphia, Pennsylvania; SEA STAR terminal, Puerto Nuevo, San Juan, Puerto Rico; Greenwich terminal, Port of Jacksonville, Florida; or any other location as to which the parties have agreed in writing. At least 72 hours prior to actual redelivery, SEA STAR shall give EMERALD a written estimate of types and quantities of equipment which SEA STAR intends to redeliver at particular ports.

(d)   Upon redelivery the receiving terminal will execute an equipment interchange receipt. Equipment will be taken off hire, and rental charges will cease. If equipment is returned with damage exceeding the damage exclusion specified in Schedule "A", EMERALD will inform SEA STAR within 7 days after return.

16.   After the closing with NPR, SEA STAR on-hired EMERALD equipment not involved in shipments in process on the date SEA STAR's use began. SEA STAR on-hired EMERALD equipment delivered to SEA STAR's leased premises after shipments in process on the date SEA STAR's use for a new cargo movement began.

17.   SEA STAR redelivered on-hired EMERALD equipment in the following manner:

(a)   Philadelphia, PA: Upon return to the Greenwich receiving terminal and execution of an equipment interchange receipt, also known as a trailer interchange receipt ("TIR"), after SEA STAR's use;

(b)   San Juan, P.R.: Upon return to the SEA STAR receiving terminal and execution of an equipment interchange receipt or TIR after SEA STAR's use;

(c)   Jacksonville, FL: Upon return to the SEA STAR receiving terminal and execution of an equipment interchange receipt or TIR after SEA STAR's use prior to August 1, 2002, as shown by self-billing reports delivered to MBC and EMERALD; upon return to the Greenwich receiving terminal and execution of an equipment interchange receipt or TIR after SEA STAR's use on and after August 1, 2002;

8

   (d) <u>Other Designated Terminals</u>: Upon return to the receiving terminal and execution of an equipment interchange receipt or TIR after SEA STAR's use.

   18. In the Port of Jacksonville, no Greenwich terminal existed before August 1, 2002, since Jaxport had seized and locked the terminal after NPR ceased operations. SEA STAR arranged with Jaxport, and MBC paid, to rent acreage for temporary storage of redelivered EMERALD equipment. As of August 1, 2002, Greenwich occupied the former NPR terminal, where EMERALD equipment could be redelivered and stored. EMERALD equipment previously redelivered by SEA STAR and stored on the rented acreage eventually was moved to the Greenwich terminal.

   19. EMERALD equipment located on SEA STAR's premises but not on-hired by SEA STAR remained in storage pursuant to the Sale Order and SEA STAR'S agreement with MBC. Throughout 2002 and 2003, MBC and EMERALD continued to utilize SEA STAR facilities for storage of EMERALD equipment that they were trying to sell to third parties. Despite demand EMERALD still has not removed all equipment from SEA STAR's terminal in Puerto Nuevo, San Juan, Puerto Rico.

   20. SEA STAR has performed all conditions precedent required to initiate and maintain this action, or all such conditions have occurred.

<u>COUNT I</u>

   SEA STAR reiterates its allegations in paragraphs 1

9

through 20 above and further states:

21.  A dispute has arisen between SEA STAR and EMERALD as to the parties' rights and obligations under the EMERALD Agreement and the Sale Order.  SEA STAR seeks a declaration of its rights and other legal relations under the EMERALD Agreement and the Sale Order.  In particular, SEA STAR requests that the Court declare:

(a)  SEA STAR has no responsibility or liability for rental, damage, or loss of equipment subject to previous agreements between EMERALD and NPR that SEA STAR did not use pursuant to the EMERALD Agreement after closing of the asset purchase.

(b)  SEA STAR has no responsibility or liability to pay rent while EMERALD equipment was involved in shipments in process. For such equipment any SEA STAR on-hire and rental obligation began when SEA STAR signed an equipment interchange receipt or TIR for use--or other written evidence discloses SEA STAR's use at a particular time--after completion of a shipment in process.

(c)  Any SEA STAR on-hire and rental obligation for EMERALD equipment not involved in shipments in process began when SEA STAR signed an equipment interchange receipt or TIR for use--or other written evidence discloses SEA STAR's use at a particular time--on or after April 29, 2002.

(d)  SEA STAR has no responsibility or liability to pay rent for EMERALD equipment located and stored in a SEA STAR terminal as of or after closing and is entitled to compensation for storage after expiration of the 30-day grace period afforded for

10

EMERALD equipment.

(e)  Any SEA STAR on-hire and rental obligation for EMERALD equipment in the possession of or returned to third parties, such as non-SEA STAR depots, shipper pools, or shipper warehouses, as of and after closing began when SEA STAR signed an equipment interchange receipt, TIR, or other written order, removing such equipment from a depot or shipper pool or acknowledging receipt from a customer or delivering carrier for SEA STAR's use.  Otherwise, SEA STAR has no responsibility and is not obligated to pay rent for such equipment.

(f)  SEA STAR's obligation to pay rent for EMERALD equipment on-hired by SEA STAR ended at the following times:

(i)  Philadelphia, PA: Upon return to the Greenwich receiving terminal at Packer Avenue and execution of an equipment interchange receipt or TIR after SEA STAR's use of particular equipment;

(ii)  San Juan, P.R.: Upon return to the SEA STAR receiving terminal and execution of an equipment interchange receipt or TIR after SEA STAR's use of particular equipment;

(iii)  Jacksonville, FL: Upon return to the SEA STAR receiving terminal and execution of an equipment interchange receipt or TIR after SEA STAR's use prior to August 1, 2002, as shown by self-billing reports delivered to MBC and EMERALD; or upon return to the Greenwich receiving terminal on or after August 1, 2002 and execution of equipment interchange receipt or TIR after

11

SEA STAR's use of particular equipment;

(iv) <u>Other Designated Terminals</u>: Upon return to the receiving terminal and execution of an equipment interchange receipt or a TIR after SEA STAR's use of particular equipment.

(g)    In regard to EMERALD equipment shipped to or located in the Dominican Republic, SEA STAR is not obligated:

(i)    To accept responsibility or pay rent for EMERALD equipment involved in shipments in process;

(ii)    To accept responsibility or pay rent for EMERALD equipment stored or seized by third parties as of the closing;

(iii)    To accept responsibility or pay rent for EMERALD equipment stored or seized by third parties after the closing, unless a signed equipment interchange receipt or TIR discloses SEA STAR's use on or after April 29, 2002.

(h)    SEA STAR has no responsibility or liability for equipment damage claims not reported by EMERALD within seven (7) days after redelivery.

(i)    SEA STAR has no responsibility or liability for EMERALD lost equipment claims unless such equipment was not involved in shipments in process and a signed equipment interchange receipt or TIR discloses SEA STAR's use on or after April 29, 2002.

22.    SEA STAR further requests that the Court declare:

(a)    EMERALD's monetary claims are limited by the terms of the Sale Order and the EMERALD Agreement.

12

(b)    SEA STAR is entitled to reimbursement or credit for rent paid or credited with respect to EMERALD equipment while such equipment was involved in shipments in process.

(c)    EMERALD is liable to pay SEA STAR for storage of EMERALD equipment on SEA STAR's premises.

(d)    EMERALD is liable to pay SEA STAR for carriage of EMERALD equipment onboard SEA STAR vessels at EMERALD's request.

(e)    EMERALD is liable to pay SEA STAR for goods and services provided in connection with EMERALD equipment.

(f)    EMERALD is obligated to effect immediate removal of all EMERALD equipment from SEA STAR's premises.

WHEREFORE, Plaintiff demands judgment against Defendant for declaratory and other relief, together with costs of Court.

<u>COUNT II</u>

SEA STAR reiterates its allegations in paragraphs 1 through 20 above and further states:

23.    During 2003 and 2004, EMERALD entered into contracts of carriage with SEA STAR with respect to shipment of goods onboard SEA STAR vessels.  SEA STAR issued and delivered bills of lading for such shipments.

24.    EMERALD breached its maritime contracts by failing and refusing to pay amounts due.

25.    As a result of such breaches, SEA STAR has sustained damage.

WHEREFORE, Plaintiff demands judgment against Defendant

13

for actual damages, together with prejudgment and postjudgment interest, and costs of Court.

### COUNT III

SEA STAR reiterates its allegations in paragraphs 1 through 20 above and further states:

26.  EMERALD owes SEA STAR $92,318.05 that is due with interest commencing on the date of each bill of lading and invoice included in the SEA STAR account with EMERALD.

WHEREFORE, Plaintiff demands judgment for damages against Defendant.

### COUNT IV

SEA STAR reiterates its allegations in paragraphs 1 through 20 above and further states:

27.  EMERALD owes SEA STAR $92,318.05 that is due with interest commencing on the date of each bill of lading and invoice for goods delivered and services provided to EMERALD.

WHEREFORE, Plaintiff demands judgment for damages against Defendant.

ARMSTRONG & MEJER, P.A.
Suite 1111, Douglas Centre
2600 Douglas Road
Coral Gables, FL 33134
Telephone: (305) 444-3355
Telefax:   (305) 442-4300

By: _____
TIMOTHY J. ARMSTRONG

14

*S/I: PINN 24,965. CHGS 35.00*

## BILL OF SALE
(U.C.C. Sale)

KNOW ALL MEN BY THESE PRESENTS, that, pursuant to Section 9-610 of the Maryland Uniform Commercial Code, **Storage Transfer, LLC.** ("SELLER"), as secured creditor of Emerald Equipment Leasing, Inc. ("DEBTOR"), for the sum **One Hundred Fifty Seven Thousand Five Hundred Dollars** U.S. **($ 157,500.00 ),** the receipt and adequacy of which are hereby acknowledged, has granted, sold, conveyed, and transferred and by these presents does grant, sell, convey and transfer unto **Priority Ro Ro LLC,C/O E. T. Heinsen** (the "BUYER"), whose address is **George Washington Avenue, 353 Santo Domingo, DR.** all of the DEBTOR'S interests and all of the SELLER'S right, title and interest, as secured creditor, in and to the assets listed on Exhibit A (collectively, the ASSETS").

The ASSETS are transferred to the BUYER by the SELLER "where is," in "AS IS" condition and with all faults, WITHOUT ANY WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE, to have and to hold the same unto the BUYER, its successors and assigns forever. There is no warranty relating title, to possession, quiet enjoyment or the like.

The BUYER executes this BILL OF SALE for purposes of acknowledging the foregoing disclaimers of warranties. The BUYER further executes this BILL OF SALE to confirm the agreement of the BUYER that any federal, state or local sales, excise, use, transfer, or other tax, if any, imposed on, or resulting from, the transfer of the ASSETS by the SELLER to the BUYER, and any penalties, interest, or other related charges, whether imposed upon the SELLER or the BUYER under applicable law, shall be the responsibility of the BUYER. The BUYER agrees to indemnify the SELLER and hold the SELLER harmless from all such taxes and related charges.

The laws of the State of Pennsylvania shall govern this BILL OF SALE.

**EXHIBIT S.T.-9**
ROBINS – 1/2/08 - gli
www.DeposDE.com

A-330

30/APR/2004/FRI 02:46 PM   FERRIES DEL CARIBE      FAX No. 787 832 1640           P. 002
.16-04-04   11:15 809 221 8686          ET HEINSEN     ->17878311810                    Pag. 04

SENT BY: ;                          215 035 2351;       APR-18-04 12:54;        PAGE 4/9

IN WITNESS WHEREOF, the SELLER has caused these presents to be executed, sealed
and delivered in its name by its authorized representative on this 16 day of _April_, 2004.

SELLER:
STORAGE TRANSFER, LLC.

BY: _____ (SEAL)

Name: Arthur B. Davis
Title: Authorized Agent

BUYER:
PRIORITY ROVIO LLC C/O E. T. HEINSEN

BY: _____ (SEAL)
Name: _____

Title: _____

30/APR/2004/FRI 02:40 PM    FERRIES DEL CARIBE    FAX NO. 787 832 1040    P. 001
SENT BY: ;    215 635 2351;    APR-30-04 11:41;    PAGE 1/1

Sr, Nestor Gonzalez
Marine Express, Inc
Mayaguez, PR                        Fax 787-831-1810

Dear Nestor,

In response to our conversation of Thursday, April 29,2004 with regard to the bill of sale
dated April 16,2004 we would suggest the following payment schedule

| Date | Amount | |
|---|---|---|
| 5/03/04 | ~~$7,500.00~~  25,000 *new* (*AED*) | RECEIVED 24,965.00 |
| 5/24/04 | 25,000.00 | Received 24,965.00 5/24/04 |
| 6/14/04 | 25,000.00 | |
| 6/28/04 | 25,000.00 | |
| 7/06/04 | ~~25,000.00~~  $7,500 *new* (*AED*) | |

If you are agreeable to this payment schedule, we make this schedule part of the bill of
sale.

Accepted by buyer _____
Priority Ro/Ro LLC

Accepted by seller _____ 4/30/04
Storage Transfer, LLC
Arthur B Davis, Authorized Agent

| Emerald Chassis located with E T Heinsen | | | | | 04/14/04 |
| Prefix | Number | | Year | MFG | Serial | Cost |
|---|---|---|---|---|---|---|
| PRMC | 045043 | | 1976 | Trailmobile | P30458 | 1,300.00 |
| PRMC | 045245 | capture | | | | |
| PRMC | 045247 | | 1976 | Trailmobile | P30662 | 1,300.00 |
| PRMC | 045352 | | 1976 | Trailmobile | P30767 | 1,300.00 |
| PRMC | 045491 | | 1976 | Trailmobile | P30906 | 1,300.00 |
| PRMC | 150111 | capture | | | | |
| PRMC | 150118 | capture | | | | |
| PRMC | 150227 | | 1987 | Loadcraft | 1LDR45205HB873197 | 1,750.00 |
| PRMC | 150306 | | 1987 | Loadcraft | 1LDE45201HB873276 | 1,750.00 |
| PRMC | 150396 | | 1987 | Loadcraft | 1LDR45202HB873366 | 1,750.00 |
| PRMC | 150515 | | 1987 | Loadcraft | 1LDR45200XHB873485 | 1,750.00 |
| PRMC | 150560 | | 1987 | Loadcraft | 1LDR45200HB873530 | 1,750.00 |
| PRMC | 150608 | capture | | | | |
| PRMC | 150617 | | 1987 | Loadcraft | 1LDR45207HB873587 | 1,750.00 |
| PRMC | 150656 | | 1987 | Loadcraft | 1DLR45202HB873626 | 1,750.00 |
| PRMC | 150667 | capture | | | | |
| PRMC | 150674 | | 1987 | Loadcraft | 1LDR45204HB873644 | 1,750.00 |
| PRMC | 150733 | | 1987 | Loadcraft | 1LDR45205HB873703 | 1,750.00 |
| PRMC | 150744 | | 1987 | Loadcraft | 1LDR45205XHB873714 | 1,750.00 |
| PRMC | 150843 | | 1987 | Loadcraft | 1LDR45201HB873813 | 1,750.00 |
| PRMC | 150851 | capture | | | | |
| PRMC | 150925 | | 1987 | Loadcraft | 1LDR45207HB873895 | 1,750.00 |
| PRMC | 150926 | | 1987 | Loadcraft | 1LDR45209HB873896 | 1,750.00 |
| PRMC | 150957 | | 1987 | Loadcraft | 1LDR45205HB873927 | 1,750.00 |
| PRMC | 151040 | | 1987 | Loadcraft | 1LDR45201HB874010 | 1,750.00 |
| PRMC | 151132 | | 1987 | Loadcraft | 1LDR45206HB874102 | 1,750.00 |

A-333

| Emerald Chassis located with E T Heinsen | | | | | 04/14/04 |
|---|---|---|---|---|---|
| Prefix | Number | Year | MFG | Serial | Cost |
| PRMC | 151143 | 1987 | Loadcraft | 1LDR45200HB874113 | 1,750.00 |
| PRMC | 151162 | 1987 | Loadcraft | 1LDR45204HB874132 | 1,750.00 |
| PRMC | 151202 | 1987 | Loadcraft | 1LDR45205HB874172 | 1,750.00 |
| PRMC | 151228 | 1987 | Loadcraft | 1LDR45201HB874198 | 1,750.00 |
| PRMC | 151232 | 1988 | Loadcraft | 1LDR452R6JB900752 | 1,750.00 |
| PRMC | 151254 | 1988 | Loadcraft | 1LDR452R5JB900774 | 1,750.00 |
| PRMC | 151321 | 1988 | Loadcraft | 1LDR452R6JB900841 | 1,750.00 |
| PRMC | 151377 | 1988 | Loadcraft | 1LDR452RXJB900897 | 1,750.00 |
| PRMC | 151460 | capture | | | |
| PRMC | 170017 | 1987 | Loadcraft | 1LDE40206HB870018 | 1,650.00 |
| PRMC | 170077 | 1987 | Loadcraft | 1LDE40202HB870078 | 1,650.00 |
| PRMC | 170172 | 1987 | Loadcraft | 1LDE40207HB870173 | 1,650.00 |
| PRMC | 170176 | 1987 | Loadcraft | 1LDE40204HB870177 | 1,650.00 |
| PRMC | 170224 | 1987 | Loadcraft | | |
| PRMC | 170371 | capture | Loadcraft | | |
| PRMC | 170625 | capture | Loadcraft | | |
| PRMC | 170733 | 1987 | Loadcraft | 1LDE4020XHB870734 | 1,650.00 |
| PRMC | 170746 | 1987 | Loadcraft | 1LDE40208HB870747 | 1,650.00 |
| PRMC | 170933 | capture | Loadcraft | | |
| PRMC | 171229 | 1987 | Loadcraft | 1LDE40209HB871230 | 1,650.00 |
| PRMC | 171408 | 1987 | Loadcraft | 1LDE40204HB871409 | 1,650.00 |
| PRMC | 171433 | capture | Loadcraft | | |
| PRMC | 171514 | 1987 | Loadcraft | 1LDE40203HB871515 | 1,650.00 |
| PRMC | 171751 | 1987 | Loadcraft | 1LDE40206HB871752 | 1,650.00 |
| PRMC | 171752 | 1987 | Loadcraft | 1LDE40208HB871753 | 1,650.00 |
| PRMC | 171915 | capture | Loadcraft | | |
| PRMC | 171989 | capture | Loadcraft | | |

A-334

Emerald Chassis located with E T Heinsen

| Prefix | Number | | Year | MFG | Serial | Cost |
|--------|--------|--|------|-----|--------|------|
| PRMC | 172279 | | 1987 | Loadcraft | 1LDE40207HB872280 | 1,650.00 |
| PRMC | 172404 | | 1987 | Loadcraft | 1LDE40201HB872405 | 1,650.00 |
| PRMC | 172538 | capture | 1987 | Loadcraft | | |
| PRMC | 172750 | capture | 1987 | Loadcraft | | |
| PRMC | 172843 | | 1987 | Loadcraft | 1LDE40205HB872844 | |
| PRMC | 172871 | capture | 1987 | Loadcraft | | 1,650.00 |
| PRMC | 172944 | | 1987 | Loadcraft | 1LDE40200HB872945 | 1,650.00 |
| PRMZ | 085146 | | 1979 | Budd | 184603L | 1,300.00 |
| PRMZ | 088389 | | 1980 | Bertolini | B41322 | 1,300.00 |
| PRMZ | 173662 | | 1981 | Bertolini | 1BZ2C4124BT003029 | 1,300.00 |
| UFCC | 072495 | | 1976 | Strick | P615314 | 1,300.00 |
| UFCC | 085642 | | 1979 | Bertolini | B35884 | 1,300.00 |
| UFCC | 700900 | | 1978 | Theurer | N58239 | 1,300.00 |
| | | | | | | |
| | | | | | TOTAL PAYABLE | 79,750.00 |

04/14/04

A-335

Emerald Owned Equipment

Chassis captured in San Juan

| Prefix | Number | Year | Mfg | Serial | Capture Cost | Equipment Cost | Total Payable |
|--------|--------|------|-----|--------|--------------|----------------|---------------|
| PRMC | 045076 | 1976 | Trailmobile | P30491 | $ 350.00 | 1,300.00 | 1,650.00 |
| PRMC | 045126 | 1976 | Trailmobile | P30541 | $ 350.00 | 1,300.00 | 1,650.00 |
| PRMC | 045245 | 1976 | Trailmobile | P30660 | $ 350.00 | 1,300.00 | 1,650.00 |
| PRMC | 045313 | 1976 | Trailmobile | P30728 | $ 350.00 | 1,300.00 | 1,650.00 |
| PRMC | 120079 | 1987 | Loadcraft | 1LDC23202HB875960 | $ 350.00 | 1,200.00 | 1,550.00 |
| PRMC | 120122 | 1987 | Loadcraft | 1LDC23203HB876003 | $ 350.00 | 1,200.00 | 1,550.00 |
| PRMC | 120446 | 1987 | Loadcraft | 1LDC23207HB876327 | $ 350.00 | 1,200.00 | 1,550.00 |
| PRMC | 150111 | 1987 | Loadcraft | 1LDR45208HB873081 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150118 | 1987 | Loadcraft | 1LDR45200HB873088 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150582 | 1987 | Loadcraft | 1LDR45202XHB873552 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150608 | 1987 | Loadcraft | 1LDR45206HB873578 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150667 | 1987 | Loadcraft | 1LDR45207HB873637 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150807 | 1987 | Loadcraft | 1LDR45201HB873777 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150827 | 1987 | Loadcraft | 1LDR45207HB873797 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150851 | 1987 | Loadcraft | 1LDR45200HB873821 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 150895 | 1987 | Loadcraft | 1LDR45209HB873865 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 151153 | 1987 | Loadcraft | 1LDR45203HB874123 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 151460 | 1988 | Loadcraft | 1LDR452R8JB900980 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 151187 | 1987 | Loadcraft | 1LDR45209HB874157 | $ 350.00 | 1,750.00 | 2,100.00 |
| PRMC | 170036 | 1987 | Loadcraft | 1LDE4020XHB870037 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 170037 | 1987 | Loadcraft | 1LDE40201HB870038 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 170039 | 1987 | Loadcraft | 1LDE4020XHB870040 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 170224 | 1987 | Loadcraft | 1LDE40200HB870225 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 170371 | 1987 | Loadcraft | 1LDE40202HB870372 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 170625 | 1987 | Loadcraft | 1LDE40207HB870626 | $ 350.00 | 1,650.00 | 2,000.00 |

A-336

Emerald Owned Equipment

Chassis captured in San Juan

| Prefix | Number | Year | Mfg | Serial | Capture Cost | Equipment Cost | Total Payable |
|--------|--------|------|-----|--------|--------------|----------------|---------------|
| PRMC | 170843 | 1987 | Loadcraft | 1LDE40206HB870844 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 170933 | 1987 | Loadcraft | 1LDE40207HB870934 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 171220 | 1987 | Loadcraft | 1LDE40208HB871221 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 171433 | 1987 | Loadcraft | 1LDE40203HB871434 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 171531 | 1987 | Loadcraft | 1LDE40203HB871532 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 171915 | 1987 | Loadcraft | 1LDE4020XHB871916 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 171989 | 1987 | Loadcraft | 1LDE40200HB871990 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 172018 | 1987 | Loadcraft | 1LDE40207HB872019 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 172436 | 1987 | Loadcraft | 1LDE40203HB872437 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 172638 | 1987 | Loadcraft | 1LDE40200HB872539 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 172750 | 1987 | Loadcraft | 1LDE40209HB872751 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 172871 | 1987 | Loadcraft | 1LDE4020XHB872872 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMC | 172895 | 1987 | Loadcraft | 1LDE40202HB872896 | $ 350.00 | 1,650.00 | 2,000.00 |
| PRMZ | 040111 | 1977 | Budd | 149803L | $ 350.00 | 1,300.00 | 1,650.00 |
| TXXZ | 171527 | 1979 | Strick | P631989 | $ 350.00 | 1,300.00 | 1,650.00 |
| | | | | | | | |
| | | | | TOTAL PAYABLE | | | 77,750.00 |

## BILL OF SALE
### (U.C.C. Sale)

KNOW ALL MEN BY THESE PRESENTS, that, pursuant to Section 9-610 of the Maryland Uniform Commercial Code, **Storage Transfer, LLC.** ("SELLER"). as secured creditor of Emerald Equipment Leasing, Inc. ("DEBTOR"), for the sum **Seventy Three Thousand Seven Hundred Fifty Dollars** U.S. (**$ 73,750.00** ), the receipt and adequacy of which are hereby acknowledged, has granted. sold, conveyed, and transferred and by these presents does grant, sell, convey and transfer unto **Priority Ro Ro LLC,C/O E. T. Heinsen** (the "BUYER"). whose address is **George Washington Avenue, 353 Santo Domingo, DR.** all of the DEBTOR'S interests and all of the SELLER'S right, title and interest, as secured creditor, in and to the assets listed on Exhibit A (collectively, the ASSETS").

The ASSETS are transferred to the BUYER by the SELLER "where is," in "AS IS" condition and with all faults, WITHOUT ANY WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE, to have and to hold the same unto the BUYER, its successors and assigns forever. There is no warranty relating title, to possession, quiet enjoyment or the like.

The BUYER executes this BILL OF SALE for purposes of acknowledging the foregoing disclaimers of warranties.  The BUYER further executes this BILL OF SALE to confirm the agreement of the BUYER that any federal, state or local sales, excise, use, transfer, or other tax, if any, imposed on, or resulting from, the transfer of the ASSETS by the SELLER to the BUYER, and any penalties, interest, or other related charges, whether imposed upon the SELLER or the BUYER under applicable law, shall be the responsibility of the BUYER.  The BUYER agrees to indemnify the SELLER and hold the SELLER harmless from all such taxes and related charges.

The laws of the State of Pennsylvania shall govern this BILL OF SALE.

A-338

07-04-04   16:30 809 221 8686    ET HEINSEN    ->12156354771    Pag. 03

IN WITNESS WHEREOF, the SELLER has caused these presents to be executed, sealed and delivered in its name by its authorized representative on this 7 day of _April_, 2004.


SELLER

STORAGE TRANSFER, LLC.

BY: _____ (SEAL)

Name:  Arthur B. Davis
Title:  Authorized Agent


BUYER

PRIORITY RO/RO LLC C/O E. T. HEINSEN

BY: _____ (SEAL)
Name:  Edward T. Heinsen

Title: agent for Priority Rs/Ro

A-339

April 7, 2004

Schedule A

Sold to Priority Ro/Ro LLC C/O E. T. Heinsen
Delivered from San Juan, P. R.

(2) 40' Chassis
(1) 20' Container
(11) 45' Containers
(22) Referigerated Containers
(25) 40' Containers

Individual unit numbers per attached schedule.

Total amount due                              $ 73.750.00

Wire funds to

        Account of Storage Transfer, LLC
        Account number 9419286790
        Fleet Bank
        616 Old York Road
        Jenkintown Pa. 19046

        ABA #021202162

| List of equipment in San Juan Owned by Emerald Equipment Leasing to be sold to E.T. Heinsen | | | | Cont. Cost | Captured cost | Total cost |
|---|---|---|---|---|---|---|
| PRMU | 220209 20' | | | 600.00 | | 600.00 |
| PRMU | 450604 45' | | | 800.00 | | 800.00 |
| PRMU | 595117 40 ref. | √ | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595136 40 ref. | √ | | 1,600.00 | | 1,600.00 |
| PRMU | 595169 40 ref. | √ | | 1,600.00 | | 1,600.00 |
| PRMU | 595188 40 ref. | √ | | 1,600.00 | | 1,600.00 |
| PRMU | 595235 40 ref. | | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595382 40 ref. | | | 1,600.00 | | 1,600.00 |
| PRMU | 594408 40 ref. | √ | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595434 40 ref. | √ | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595502 40 ref. | | | 1,600.00 | | 1,600.00 |
| PRMU | 595513 40 ref. | √ | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595540 40 ref. | √ | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595658 40 ref. | | | 1,600.00 | | 1,600.00 |
| PRMU | 595663 40 ref. | | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595715 40 ref. | | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595742 40 ref. | √ | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595749 40 ref. | | | 1,600.00 | | 1,600.00 |
| PRMU | 595821 40 ref. | | | 1,600.00 | | 1,600.00 |
| PRMU | 595863 40 ref. | √ | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595919 40 ref. | | | 1,600.00 | | 1,600.00 |
| PRMU | 595934 40 ref. | | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595981 40 ref. | | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 595994 40 ref. | | captured | 1,600.00 | 250.00 | 1,850.00 |
| PRMU | 600166 40 st | | captured | 600.00 | 250.00 | 850.00 |
| PRMU | 600309 40 st | √ | | 600.00 | | 600.00 |
| PRMU | 600531 40 st | | | 600.00 | | 600.00 |
| PRMU | 600606 40 st | √ | captured | 600.00 | 250.00 | 850.00 |
| PRMU | 600622 40 st | √ | captured | 600.00 | 250.00 | 850.00 |
| PRMU | 600679 40 st | loaded | captured | 600.00 | 250.00 | 850.00 |
| PRMU | 600699 40 st | | captured | 600.00 | 250.00 | 850.00 |
| PRMU | 600723 40 st | √ | captured | 600.00 | 250.00 | 850.00 |
| PRMU | 600738 40 st | | captured | 600.00 | 250.00 | 850.00 |
| PRMU | 650013 45' | | captured | 800.00 | 250.00 | 1,050.00 |
| PRMU | 650427 45' | | captured | 800.00 | 250.00 | 1,050.00 |

A-341

| | | | ok | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PRMU | 650528 | 45' | | | | captured | 800.00 | 250.00 | 1,050.00 |
| PRMU | 650805 | 45' | | | | captured | 800.00 | 250.00 | 1,050.00 |
| PRMU | 650811 | 45' | | | loaded | | 800.00 | 250.00 | 1,050.00 |
| PRMU | 650884 | 45' | | | | captured | 800.00 | 250.00 | 1,050.00 |
| PRMU | 653049 | 45' | | | | | 800.00 | | 800.00 |
| PRMU | 653105 | 45' | | √ | | captured | 800.00 | 250.00 | 1,050.00 |
| PRMU | 653131 | 45' | | | | | 800.00 | | 800.00 |
| PRMU | 653395 | 45' | | √ | | | 800.00 | | 800.00 |
| PRMU | 673114 | 40HC | | | loaded | | 700.00 | | 950.00 |
| PRMU | 673234 | 40HC | | | | captured | 700.00 | 250.00 | 950.00 |
| PRMU | 673267 | 40HC | | √ | | | 700.00 | | 700.00 |
| PRMU | 673323 | 40HC | | √ | | captured | 700.00 | 250.00 | 950.00 |
| PRMU | 673533 | 40HC | | √ | | | 700.00 | 250.00 | 950.00 |
| PRMU | 674092 | 40HC | | √ | | | 700.00 | | 700.00 |
| PRMU | 674104 | 40HC | | √ | loaded | captured | 700.00 | 250.00 | 950.00 |
| PRMU | 674227 | 40HC | | √ | | captured | 700.00 | 250.00 | 950.00 |
| PRMU | 674366 | 40HC | | √ | | | 700.00 | | 700.00 |
| PRMU | 674576 | 40HC | | √ | | | 700.00 | | 700.00 |
| PRMU | 674686 | 40HC | | √ | | captured | 700.00 | 250.00 | 950.00 |
| PRMU | 674712 | 40HC | | √ | | | 700.00 | | 700.00 |
| PRMU | 600055-6 | 40'ST | | | | | 600.00 | | 600.00 |
| PRMU | 600617-4 | 40'ST | | | | | 600.00 | | 600.00 |
| PRMU | 673863-7 | 40HC | | √ | loaded | captured | 700.00 | 250.00 | 950.00 |
| PRMU | 674019-3 | 40HC | | √ | loaded | | 700.00 | | 700.00 |
| | | | | | | | 61,000.00 | 8,750.00 | 69,750.00 |

**Chassis in San Juan**

| | | ok | | | | | | price | captured | total |
|---|---|---|---|---|---|---|---|---|---|---|
| 170933 | | ok | √ | Loadcraft | captured | T212172 | Emerald | GO DR 5/25/02 | 350 | 2,000.00 |
| | | | | | | | | 1,650.00 | | |
| 171230 | | ok | | | captured | T212084 | Sea Star | sold 8/19/02 | | |
| 171731 | | ok | | | captured | T212396 | Sea Star | sold 8/19/02 | | |
| 171989 | | ok | √ | Loadcraft | captured | T212254 | Emerald | GI DR 5/3/02 | 350 | 2,000.00 |
| | | | | | | | | 1,650.00 | | |

**Total payable for containers and chassis**   73,750.00

A-342

Lorraine Robbins                    To: theinsen@Codetel.net.do
04/07/04 02:32 PM

                                    cc:
                                    Subject: Emerald Equipment

Dear Teddy

I have attached the bill of sale, including the list of equipment we are selling to you at this time.
Please sign and return to us via fax 215-635-4771 at once.

We have provided the information for the wire transfer of funds and expect that you shall live up to
your agreement and wire the funds on 4/8/04.

For your convenience we have also faxed a copy of this bill of sale to your office.

Based on your agreement and assurance of the above we have released the loaded containers At
Priority in San Juan.

Best Regards

Arthur

April 7 do bill of sale 3 d

EEL — SSC 

MAY 11, 2004

ARTULO
MANUEL

PLEASE DO NOT RELEASE ANY OF THE

EMERELD EQUIPMENT FROM YOUR LOCATION

IN SAN JUAN WITHONT MY SPECIFIC

RELEASE BY EITHER E MAL OR FAX

THANK YN

*Arth A Davis*

E 005009

EXHIBIT
63

Arthur Davis/holtoversight       To  arooks@seastarline.com
08/11/04 07:31 AM                cc
                                bcc  ale1234@aol.com
                            Subject  Chassis at San Juan

Andy

I understand there are some 40' Emerald chassis at your terminal in San Juan.  Please allow Jose' Duenas from Duenas Trailer to inspect these chassis.  If he decides to purchase these chassis, the terminal costs for TIR, stacking and gate will be for their account. I will keep you advised.

Thank you

Arthur

EXHIBIT S.T.-17
ROBINS – 1/2/08 - gli

www.DeposDE.com

EXHIBIT
NUMBER 10

E 005887



Arthur Davis/holtoversight    To  ARooks@seastarline.com
08/19/04 02:15 PM        cc
                   bcc
        Subject  Emerald Equipment San Juan

Andy:

I understan the following units are located at the SSL terminal in SJU.
Please release this equipment to Transporte Rivera Colfazo. Collazo is responsible for the
payment of any and all charges for theTerminal, loading, gate, etc.

Unit numbers are as follows:

Chassis

PRMC 045326, 171112, 172619, 172713, 172811, 172834, 172922

PRMZ 010794, 085419, 089723, 177605

Containers

PRMU 595862, 595124, 595048, 595875, 595546, 595009

      595143, 595062, 595586, 595393, 595736

In the event you have any questions in regard to this matter, please fell free to contact me at
215-205-3027.


Regards

Arthur

E 005888

A-346