## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,                    Civil Action No. 05-CV-245-JJF

      Plaintiff,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

      Defendant,

-vs-

SEA STAR LINE, LLC,

      Counter-Defendant.

_____/

### *Local Rule 16.3(c) Pretrial Order*

      Pursuant to the Rule 16 Scheduling Order dated November 3, 2006, the Order dated September 6, 2007, the Order dated April 29, 2008. and D. Del. LR 16.3(c), Plaintiff/Counter-Defendant, SEA STAR LINE, LLC ("SSL"), and Defendant/Counter-Plaintiff, EMERALD EQUIPMENT LEASING, INC. ("Emerald"), propose the following Pretrial Order with respect to the Complaint:

### *1.    Statement of Nature of Action*

      (a) SSL:    SSL filed a Complaint pursuant to 28 U.S.C.A. §2201 and §2202, seeking a declaration of the parties' rights and liabilities under an Equipment Rental Agreement dated as of July 31, 2002 ("Rental Agreement") and an Order Authorizing Sale of the NPR

{05130|AGR|10046754.DOC}

–1–

Assets Free and Clear of All Liens, Claims and Encumbrances ("Sale Order"). The Rental

Agreement covered certain containers, chassis, and generator sets utilized for intermodal cargo

carriage in maritime commerce that SSL on-hired and off-hired at various times commencing

April 29, 2002. In its Complaint SSL also asserted a claim against EMERALD for damages,

based on breaches of maritime contracts of carriage with SSL with respect to shipment of goods

on board SSL vessels. The matter in controversy exceeds the sum or value of $75,000.00,

exclusive of interest and costs.

(b) <u>EMERALD</u>:   EMERALD has filed an Answer and Affirmative Defenses

to the Complaint (the "Answer") and an Amended Counterclaim (the "Counterclaim"). The

Counterclaim, which seeks, <u>inter alia</u>, damages from SSL for rental charges and stipulated loss

values under the Rental Agreement has been bifurcated and is scheduled for trial on September

15, 2008. In the Answer, Emerald denies that declaratory judgment relief pursuant to U.S.C.A.

Sections 2201 and 2202 is appropriate in this case. Furthermore, even if declaratory judgment

relief is appropriate Emerald denies the specific declaratory judgment relief sought by SSL, as

stated. Rather, Emerald contends the basic terms of the Rental Agreement and Sale Order at

issue between the parties, as evidenced by, <u>inter alia</u>, the course of conduct of the parties, are not

generally in dispute. Furthermore, as to the monetary relief sought in the Complaint, Emerald

asserts, <u>inter alia</u>, rights of setoff and/or recoupment, as well as estoppel, waiver, SSL's breach of

contract, unclean hands or other improper conduct by SSL.

### 2.    *Constitutional or Statutory Bases of Federal Jurisdiction*

SSL asserts federal jurisdictional bases are 28 U.S.C.A. §§1333, 1337, and 1367

{05130|AGR|10046754.DOC}

alleging that the Complaint involves maritime transactions and contracts, including bills of lading for ocean cargo shipments in non-contiguous domestic trades.

Emerald admits federal jurisdictional basis pursuant to 28 U.S.C.A. Section 1333. Emerald also contends federal jurisdictional basis includes 28 U.S.C.A. Section 1334.

### 3.     *Statement of Facts Which Are Admitted and Require No Proof*

The following facts are admitted and will require no proof at trial:

(a)     SSL, a Delaware limited liability company, is headquartered in Jacksonville, Florida.  As an ocean carrier, SSL transports cargo in interstate commerce.

(b)     Emerald, a Delaware corporation, is a named Debtor under Chapter 11 of the United States Bankruptcy Code, having filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date").

(c)     Emerald was engaged in business as a lessor of equipment used by carriers in the oceangoing transportation business to transport goods, which equipment includes, inter alia, large containers, gen sets and refrigerated units, together with chassis used to move the containers to and from ships (the "Emerald Equipment").

(d)     Prior to the Petition Date, Emerald leased all of its Emerald Equipment to two companies, NPR, Inc. ("NPR") and Holt Cargo Systems, Inc.

(e)     NPR had been in business as an ocean carrier.

(f)     In April 2002 SSL entered into an Asset Purchase Agreement, as amended, with NPR and other entities which were also named Debtors in Chapter 11

{05130|AGR|10046754.DOC}

proceedings.

(g)     In April 2002, NPR, filed a motion in the Bankruptcy Court seeking approval for the sale of substantially all of its assets.

(h)     On April 26, 2002, the Bankruptcy Court entered the Sale Order which, inter alia, authorized the sale of substantially all of NPR's assets to SSL. SSL did not assume the equipment lease between Emerald and NPR and Holt Cargo Systems, Inc.

(i)     The lease with NPR and Holt Cargo Systems, Inc. of the Emerald Equipment was rejected as of April 18, 2002 by Order entered by the Bankruptcy Court on May 10, 2002.

(j)     The closing in connection with the Sale Order occurred on April 27, 2002 at 3:00 a.m. (the "NPR Closing").

(k)     At the time of the Closing, pieces of Emerald Equipment were in the possession of SSL and located at SSL terminals and depots, on SSL ships or in the hands of third parties such as truckers, customers and railroad lines.

(l)     After the Closing with NPR, SSL on-hired Emerald Equipment not involved in Shipments in Transit (the parties dispute the scope of the term "Shipments in Transit") on the date SSL's use began.

(m)     SSL on-hired Emerald Equipment which was used for Shipments in Transit on the date SSL's use for a new cargo movement began. As of April 29, 2002, SSL commenced using certain pieces of Emerald Equipment in its shipping business

(n)     On July 22, 2002, the Bankruptcy Court issued an Order allowing MBC,

{05130|AGR|10046754.DOC}

–4–

Emerald's secured creditor, to foreclose its security interest in the Emerald Equipment, effective as of April 29, 2002. The Order terminated the automatic stay in regard to equipment described in a November 20, 1997 Loan and Security Agreement between MBC and Emerald. The Order also authorized MBC to remove and sell the equipment, applying the proceeds to Emerald's indebtedness to MBC. MBC, however, did not immediately move to foreclose its interest in the Emerald Equipment but rather consented to Emerald's lease of such Emerald Equipment which SSL used on or after April 29, 2002, other than for shipments in transit use.

(o)     In light of its security interest in the Emerald Equipment, MBC requested SSL to make payment for SSL's use of the Emerald Equipment directly to MBC. In connection therewith, MBC and SSL executed an Indemnity Agreement on September 28, 2002.

(p)     In September 2002, SSL and Emerald executed the Rental Agreement which was dated as of July 31, 2002.

(q)     SSL self reported its use of the Emerald Equipment by way of "self-billing reports" which it provided to both MBC and Emerald. SSL made rental payments based on the self-billing reports.

(r)     Subsequently, disputes arose whereby Emerald contended that SSL was using far more Emerald Equipment than it was reporting on its self-billing reports and for which it was not making rental payments.

(s)     By a letter dated October 31, 2003, Emerald's attorney notified SSL that Emerald was exercising its rights to terminate the Rental Agreement in accordance with its terms.

{05130|AGR|10046754.DOC}

(t)   SSL did not and does not owe any rent for Emerald Equipment solely involved in Shipments in-Transit.

(u)   MBC, not Emerald, was entitled to receive – and did receive – the payments for use of EEL equipment during the period covered by the Rental Agreement.  In January 2003 MBC also filed a Motion for Allowance and Payment of Administrative Priority Claims in the NPR Bankruptcy proceeding.  MBC's motion covers "continued use of the Sea Star Emerald Equipment" through June 11, 2002.

(v)   Effective November 1, 2003, MBC, as assignor, executed a Loan Sale and Assignment Agreement ("Assignment Agreement") with Storage Transfer, LLC ("Storage"), as assignee.  The outstanding balance of MBC's loan to Emerald consisted of $2,892,662.16 principal; $821,969.73 late charges; and $915,532.61 interest.  Storage agreed to purchase the MBC loan for $650,000.00, plus 20% "of the net amount, after deduction of reasonable attorneys' fees and other reasonable collection expenses" of any amount received from Sea Star by Storage.  Entitled "No Competing Claim Against Sea Star", paragraph 6.3 of the Assignment Agreement states:

> ASSIGNEE [Storage] agrees not to assert any entitlement to compensation from SEA STAR for use of EMERALD EQUIPMENT during any period for which SEA STAR has paid ASSIGNOR [MBC] pursuant to the SEA STAR INDEMNITY [the MBC-SEA STAR Indemnity Agreement].

The Assignment Agreement defines "EMERALD EQUIPMENT" as "certain equipment securing payment of the LOAN" from MBC to EEL, which is evidenced by "the 'ASSIGNED DOCUMENTS', as defined in Recital 5 ...."  Storage received no other assignments from MBC.

{05130|AGR|10046754.DOC}

(w)    In a letter dated February 25, 2004, Gary M. Schildhorn, an Emerald

attorney, wrote Lorraine Robins of Storage:

> I am advised that Storage Transfer, L.L.C. ("Storage") has
> acquired the secured position of MBC Leasing Company in the
> Estate of Emerald Equipment Leasing, Inc. ("Emerald"). Emerald
> currently intends to prosecute certain substantial claims against Sea
> Star Lines LLC. Storage has agreed to contribute to the Emerald
> estate 15% of any proceeds, net of expenses or other amounts
> disbursed to third parties, it would otherwise receive on account of
> its secured claim as a result of any settlement of the Sea Star claim
> or the collection of any judgment obtained upon prosecution of this
> claim....

As Storage's "Sole Member", Ms. Robins "AGREED TO AND ACCEPTED" this "carveout" by

signing the letter.

(x)    According to Ms. Robins, Storage's expenses will include not only

amounts paid to third parties but also telephone, office equipment and rent, contract employees,

and her unspecified salary. Any carveout in favor of Emerald also is subject to another carveout

for EEL's legal fees, which Storage began paying after execution of the Assignment Agreement.

Storage cannot calculate whether Emerald would receive any carveout until collections are

complete, all expenses and legal fees are paid, and MBC receives its 20 percent. MBC is not a

party to any "carveout agreement" with Emerald or its attorneys.

(y)    At the time of the Sale Order, Emerald and its attorneys knew E.T.

Heinsen, C. por A., a former NPR agent in the Dominican Republic, was holding Emerald

Equipment, had filed a maritime lien claim in the NPR Bankruptcy Action, and refused to release

the Emerald Equipment. Subsequently Storage recovered and sold Emerald Equipment to E.T.

Heinsen. Emerald billed Sea Star for rent and "adjusted" Stipulated Loss Values.

{05130|AGR|10046754.DOC}

-7-

(z)    Emerald did not give Sea Star notice specified in paragraph 13(b)(iii) of the Rental Agreement prior to sales of Emerald Equipment for which Emerald claims Sea Star is responsible.  Emerald has asserted claims against Sea Star for rent and "adjusted" Stipulated Loss Values of such Emerald Equipment.

(aa)    Emerald has not paid Sea Star for use of its terminal facilities to store Emerald Equipment and for handling Emerald Equipment.

(bb)    Emerald has not paid Sea Star for carriage of Emerald Equipment onboard Sea Star vessels at Emerald's request and for goods and services provided in connection with EEL equipment, including chains and binders.

(cc)    Emerald does not dispute its obligation to pay SSL for the carriage of certain Emerald Equipment on board SSL vessels at Emerald's request; however, Emerald reserves the right to dispute the amount charged for such services and asserts rights of setoff in connection with sums Emerald assets it is owed by SSL as stated in the Emerald Counterclaim. Emerald denies it owes SSL for any other claims, including storage and handling charges for Emerald Equipment at SSL's terminal facilities or for good sand services provided in connection with Emerald Equipment, including chains and binders.

**4.    *Issues of Fact Which Remain to Be Litigated; Most Are Mixed Questions of Fact and Law, and As Such, Are Deemed to be Included in the "Issues of Law which Remain to be Litigated" stated by the parties in paragraph 5 hereof.***

SSL on its claims:

(a)    What amount of damages is due to SSL from EMERALD;

{05130|AGR|10046754.DOC}

−8−

(b)    Whether competent admissible evidence proves that EEL's alleged contingent derivative interest confers real-party-in-interest status on EEL to assert claims under the Rental Agreement against SSL, such as claims for rent of Emerald Equipment, for purposes of Fed. R. Civ. P. 17(a);

(c)    Whether the MBC-Storage Assignment Agreement precludes EEL's claims against SSL for compensation for use of Emerald Equipment during any period for which SSL has paid MBC under the MBC-SSL Indemnity Agreement.

EMERALD on SSL's claims:

(a)    Whether competent admissible evidence satisfies SSL's burden of proving its entitlement to each declaration sought by SSL in Count I of the Complaint. Specifically, it is Emerald's position that SSL's obligations under the Rental Agreement and the Sale Order are as follows:

(i)    SSL is responsible for rental charges under the Rental Agreement for any piece of the Emerald Equipment which competent evidence shows it used in the course of its business, other than equipment used solely for Shipments In Transit;

(ii)    SSL is not responsible for rental charges to Emerald under the Rental Agreement and/or the Sale Order for equipment used solely for Shipments In Transit;

(iii)    A signed TIR is conclusive evidence, but not exclusive evidence, of delivery of the Emerald Equipment. A TIR or other competent evidence may be used to show SSL's initial use of any piece of Emerald Equipment which would commence SSL's obligation to pay rental charges under the Rental Agreement;

{05130|AGR|10046754.DOC}

-9-

(iv)    Under the Rental Agreement, SSL must return the Emerald Equipment it used to Emerald (the lessor) at the designated terminals with the appropriate notice as set forth in the Rental Agreement before SSL's obligation to pay rental charges for such pieces of Emerald Equipment ends;

(v)    In San Juan, Puerto Rico, the return date for the return of any piece of Emerald Equipment used by SSL, is the date such equipment was returned to Emerald at the designated areas in the San Juan terminal after appropriate 72 hours notice to Emerald was given and so long as such piece of Emerald Equipment was not subsequently reused by SSL; and

(vi)    SSL is responsible for stipulated loss value under the Rental Agreement for any piece of Emerald Equipment it used and which competent evidence shows was not returned to and actually received by Emerald.

(b)    Whether competent admissible evidence satisfies SSL's burden of proving each EMERALD breach of its maritime contracts by failing and refusing to pay amounts due as alleged in Count II of the Complaint.

(c)    Whether competent admissible evidence satisfies SSL's burden of proving the specific damages to SSL caused by any breach of EMERALD's maritime contracts and SSL's right to recover such damages as alleged in Count II of the Complaint.

(d)    Whether competent admissible evidence satisfies SSL's burden of proving that Emerald owes SSL $92,318.05 with interest commencing on the date of each bill of lading and invoice included in the SSL account with Emerald as alleged in Count III of the Complaint.

(e)    Whether competent admissible evidence satisfies SSL's burden of proving

{05130|AGR|10046754.DOC}

that Emerald owes SSL $92,310.05 with interest commencing on the date of each bill of lading and invoice for goods delivered and services provided to Emerald as alleged in Count IV of the Complaint.

(f)    To the extent such issue may be heard in this portion of the bifurcated trial, what were the obligations and duties of SSL with respect to equipment used for cargo shipments that were in transit at the time of the closing of SSL's purchase of the NPR assets?  To what extent were those obligations and duties performed?

(g)    To the extent such issue may be heard in this portion of the bifurcated trial, what were the obligations and duties of SSL with respect to the storage of Emerald equipment by SSL?  To what extent were those obligations and duties performed?

(h)    What were the circumstances surrounding and the purpose of the "self-billing reports" set forth in paragraph 13 of the Complaint?

(i)    What were the circumstances surrounding the entry of the Equipment Rental Agreement set forth in paragraph 14 of the Complaint?

(j)    What were the circumstances surrounding termination of use of Emerald Equipment by SSL and the return of that equipment to each of the designated terminals set forth in the Emerald Rental Agreement?

(k)    Has SSL performed all conditions precedent required to initiate and maintain its Complaint and have all such conditions occurred as alleged in paragraph 20 of the Complaint?

(l)    Whether and to what extent is the relief sought in the Complaint barred, in

{05130|AGR|10046754.DOC}

whole or in part, by Emerald's rights of setoff and/or recoupment?

        (m)    Whether and to what extent is the relief sought in the Complaint barred, in whole or in part, by the doctrine of estoppel and/or waiver?

        (n)    Whether and to what extent is the relief in the Complaint barred, in whole or in part, due to SSL's breach of and/or failure to perform under applicable contracts between the parties?

        (o)    Whether the Complaint is barred since Emerald did not breach any duty owed to SSL.

        (p)    Whether, and to what extent, is SSL barred, by its own course of conduct, from recovery against Emerald on its Complaint.

        (q)    Whether, and to what extent, is SSL barred from recovery on its Complaint since any losses allegedly suffered by SSL were caused by its own negligence?

        (r)    Whether, and to what extent, is SSL barred from asserting any claims against Emerald under the doctrine of unclean hands?

        (s)    Whether SSL is permitted to benefit from its own wrongdoing.

**5.    *Issues of Law Which Remain to Be Litigated. Most Are Mixed Questions Of Fact And Law, And As Such, Are Deemed To Be Included In The "Issues of Fact Which Remain To Be Litigated" Stated By The Parties In Paragraph 4 Hereof.***

        SSL on its claim:

        (a)    Whether SSL is entitled to the declaratory relief requested in the Complaint;

{05130|AGR|10046754.DOC}

−12−

(b)    Whether SSL is entitled to recover damages for EMERALD's breaches of

contract        (c)    Whether SSL is entitled to recover damages on an EMERALD open

account;

(d)    Whether SSL is entitled to recover damages for goods and services that

were provided to and for the benefit of EMERALD.

EMERALD on SSL's Claim:

(a)    Is SSL entitled to declaratory judgment relief in this case?

28 U.S.C.A. Section 2201

28 U.S.C.A. Section 2202

28 U.S.C.A. Section 1337

28 U.S.C.A. Section 1367

Cunningham Bros., Inc. v. Bail, 407 F.2d 1165 (7th Cir. 1969)

Crown Cork &Seal Co., Inc., 779 F. Supp. 33 (E.D. Pa. 1991)

(b)    Whether the contract by and between Emerald and SSL may be and was

modified by course of conduct of Emerald and SSL.

Cole v. Wilbanks, 171 A.2d 711 (Md. App. Ct. 1961)

Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos,
264 F.3d 424 (4th Cir. 2001)

Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.
885 A.2d 381 (Md. App. Ct. 2005)

Hoffman v. Glock, 315 A.2d 551 (MD. App. Ct. 1974)

Fantle v. Fantle, 782 A.2d 377 (Md. App. Ct. 2001)

{05130|AGR|10046754.DOC}

—13—

(c)    How should the Rental Agreement be construed or interpreted?

(d)    Whether the Sale Order which was entered by the Bankruptcy Court, and which specifically provides, that the Bankruptcy Court retains jurisdiction to, *inter alia*, "interpret, implement and enforce the terms and provisions of this Order and the terms of the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith", may be the subject of a declaratory judgment action in this Court.

### 6.    *Lists of Pre-Marked Exhibits*

Attached are the parties' exhibit lists. With the Court's permission, the parties will exchange and file their objections to exhibits on June 30, 2008. The exhibit lists are and will be identified as follows:

(a)    SSL's List of Exhibits, including Bates numbers or deposition exhibit numbers, is attached as Schedule "A".

(b)    EMERALD's List of Objections to SSL's Exhibits, including Fed. R. Evid. citations, is attached as Schedule "B".

(c)    EMERALD's List of Exhibits, including Bates numbers or deposition exhibit numbers, is attached as Schedule "C".

(d)    SSL's List of Objections to SSL's Exhibits, including Fed. R. Evid. citations, is attached as Schedule "D".

With the Court's permission, the parties reserve the right to supplement the above lists no later that _____ (__) days before trial.

{05130|AGR|10046754.DOC}

-14-

7.   *Lists of Witnesses*

The parties submit the following witness lists:

(a)   SSL's List of Witnesses is attached as Schedule "E".

(b)   EMERALD's List of Witnesses is attached as Schedule "F".

With the Court's permission, the parties will exchange and file their deposition designations on Thursday, June 26, 2008 as follows:

(a)   SSL's deposition designations shall be listed on Schedule "G".

(b)   EMERALD's deposition designations shall be listed on Schedule "H".

With the Court's permission, the parties reserve the right to supplement the above lists no later that _____ (__) days before trial.


8.   *Brief Statement of What Plaintiff Intends to Prove*

SSL seeks and intends to prove its entitlement to the declarations of the parties' rights and liabilities under the Rental Agreement pursuant to 28 U.S.C.A. §2201 and §2202, as requested and specified in its Complaint. Furthermore, SSL will prove that EMERALD failed to pay agreed bill-of-lading charges for ocean transportation of EMERALD equipment between San Juan, Puerto Rico and the continental United States, as well as charges for chains and binders used to bundle equipment. SSL also will prove that EMERALD failed to pay charges for space provided by SSL pursuant to an Order Authorizing Sale of the NPR Assets Free and Clear of All Liens, Claims and Encumbrances, dated April 26, 2002, to store equipment claimed by

{05130|AGR|10046754.DOC}

EMERALD. Although EMERALD allegedly terminated the Rental Agreement in late 2003, EMERALD did not comply with SSL's demands to remove all equipment from its terminals and depot areas, particularly the SSL terminal in San Juan, Puerto Rico. During 2004 and 2005, EMERALD representatives continued to store and sell equipment on SSL's premises and to instruct SSL personnel. EMERALD finally removed equipment from SSL's Puerto Nuevo terminal pursuant to the Order Approving Stipulation Between SSL Line, LLC and the Debtor Regarding Disposition of Certain Equipment, issued by the bankruptcy court on September 26, 2005 but failed to pay bills for storage space and equipment handling.

Each element of SSL's damage claim, together with the principal amount presently sought is:

(a)  Storage and Handling:Net SSL charges for storage space and for equipment handling total $$32,249.00.00.

(b)  Chains and Binders:  In July 2003 SSL invoiced EMERALD for the cost of chains and binders that SSL furnished to bundle EMERALD chassis in San Juan. The principal amount due to SSL is $32,348.75.

(c)  Ocean Freight Charges:  At EMERALD's request SSL shipped EMERALD equipment from San Juan, Puerto Rico to Jacksonville, Florida and Port Everglades, Florida. The principal amount of agreed ocean freight charges due to SSL is $49,650.00.

(d)  Overpayments: After review of EEL claim forms, SSL estimates that SSL overpaid $100,000.00 for EEL equipment originally included in self-billing reports.

{05130|AGR|10046754.DOC}

**9.      *Brief Statement of What Defendant Intends to Prove***

Emerald denies that SSL is entitled to the declarations of the parties; rights and liabilities under the Rental Agreement pursuant to 28 U.S.C.A. Section 2201 and Section 2202, as requested and specified in the Complaint.  Specifically, Emerald will show that the rights and liabilities under the Rental Agreement are to be, interpreted, construed and/or modified by the course of conduct of the parties commencing on April 29, 2002, as set forth under Section 4(a) hereunder entitled "EMERALD on SSL's Claims".

In addition, Emerald will object to any claims made by SSL for chains and binders used to bundle equipment, and/or charges for space provided by SSL pursuant to an Order Authorizing Sale of the NPR Assets Free and Clear of All Liens, Claims and Encumbrances dated April 26, 2002 to store equipment claimed by Emerald, since these claims were not pled in the Complaint and are raised herein for the first time.  Furthermore, Emerald claims that any equipment for which SSL seeks storage charges was not returned to Emerald at the time of the termination of the Rental Agreement and was therefore properly treated by Emerald as "lost" pursuant to the Rental Agreement.  Moreover, Emerald disputes chains and binders were provided by SSL as alleged.  In addition, EMERALD admits it agreed to pay certain ocean freight charges for the carriage of certain Emerald Equipment on board SSL vessels, but reserves the right to dispute the amount alleged.  Finally, to the extent any claims for damages asserted by SSL are allowed, Emerald is entitled to setoff in light of its substantial Counterclaim.

{05130|AGR|10046754.DOC}

10.    **Amendments to Pleadings**

None at this time.


11.    **Certification of Settlement Efforts**

Counsel certify that the parties have engaged in settlement discussions and participated in mediation. To date the parties have not settled this matter.


12.    **Other Matters**

Pending Motions: The following motions are pending:

SSL's Motion for Partial Summary Judgment on the Complaint is pending.

Emerald disputes that portions of the SSL Motion For Partial Summary Judgment on the Complaint properly seek relief in connection with the SSL Complaint. Instead, Emerald contends certain issues raised in the Partial Summary Judgment Motion constitute asserted defenses to the Emerald Counterclaim. All pretrial matters with regard to the Emerald Counterclaim have been referred to Magistrate Judge Stark.

13.    *This Order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.*

DATED this _____ day of June, 2008.

SMITH, KATZENSTEIN & FURLOW, LLP


By:_____
Kathleen M. Miller (ID No. 2898)
The Corporate Plaza
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Tel: (302) 652-8400
Fax: (302) 652-8405

And

Timothy J. Armstrong
Armstrong & Mejer, P.A.
Penthouse Suite
2222 Ponce de Leon Blvd.
Coral Gables, FL 33134

Counsel for Sea Star Line, LLC


ECKERT SEAMANS CHERIN & MELLOTT, LLC


By:_____
Ronald S. Gellert, Esq. (4259)
Tara L. Lattomus, Esq.
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801

And
Gary Schildhorn, Esq.
Alan I. Moldoff, Esq.
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

Counsel for Emerald Equipment Leasing, Inc.
{05130|AGR|10046754.DOC}

–19–