# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

SEA STAR LINE, LLC,
a limited liability company,                    Civil Action No. 05-CV-245-JJF (LPS)

      Plaintiff/Counterclaim Defendant,

-vs-

EMERALD EQUIPMENT LEASING, INC.,
a corporation,

      Defendant/Counterclaim Plaintiff,

_____/

### *Local Rule 16.3(c) Pretrial Order*

      The Court has indicated that it will determine whether and what issues will be tried

on September 15, 2008, as well as the scope of trial, after reviewing the parties' Post-Trial Briefs

pertaining to trial on the Complaint.  Pursuant to the Rule 16 Scheduling Order dated November 3,

2006, the Order dated September 6, 2007, the Order dated April 29, 2008, the Order dated May 7,

2008, and D. Del. LR 16.3(c), Defendant/Counterclaim Plaintiff, EMERALD EQUIPMENT

LEASING, INC. ("Emerald"), and Plaintiff/Counterclaim Defendant, SEA STAR LINE, LLC ("Sea

Star"), propose the following tentative Pretrial Order[.1]

    ***1.***    ***Statement of Nature of Action***

    (a)  EEL:    Emerald has filed an Amended Counterclaim (the "Counterclaim").  In

the Counterclaim, Emerald claims damages, based on assertions that SSL breached the Equipment

Rental Agreement dated as of July 31, 2002 (the "Rental Agreement") and committed various torts

---

1  The Order dated April 29, 2008 bifurcated these proceedings by setting separate trial dates for the Declaratory
Judgment Complaint filed by SSL and for the Amended Counterclaim filed by Emerald.  Trial on the Declaratory
Judgment Complaint was held on July 7, 8 and 22, 2008.  This Pretrial Order relates only to the Amended

{05130}{||stip.DOC}

arising out of a separate duty undertaken by SSL to render accurate reporting of its usage of the equipment owned by Emerald (the "Self-billing Reports"). The Rental Agreement covered certain containers, chassis and generator sets (the "Emerald Equipment") utilized for intermodal cargo carriage in maritime commerce and which was in use at various times commencing April 29, 2002. Specifically, Emerald asserts that SSL failed to pay rental charges for numerous pieces of Emerald Equipment which SSL used. In addition, Emerald asserts that SSL is liable to Emerald for the stipulated loss values of Emerald Equipment which SSL used but never returned to Emerald and for adjusted stipulated loss values of Emerald Equipment used by SSL which was not returned by SSL pursuant to the Rental Agreement, but which Emerald recovered more than 60 days after termination of the Rental Agreement. Emerald is also entitled to interest at 18% on all amounts owed under the Rental Agreement. In addition, Emerald asserts SSL rendered false and misleading Self-billing Reports. Causes of action asserted by Emerald include breach of contract, turnover action, accounting, fraud, constructive fraud, fraudulent concealment, negligent misrepresentation and breach of fiduciary duty. SSL has filed an Answer and Affirmative Defenses to the Counterclaim.

(b) Sea Star: Express written provisions of the Sale Order, the Equipment Rental Agreement ("Rental Agreement") between Sea Star and Emerald, the Indemnity Agreement between Sea Star and MBC Leasing Corp ("MBC"), Emerald's secured lender and leinor, and the Loan Sale and Assignment Agreement ("Assignment Agreement") between MBC and Storage Transfer, LLC ("Storage") delineate, define, and limit the parties' rights and obligations. Nonetheless, Emerald has ignored the Sale Order's, the Rental Agreement's, and the Assignment Agreement's explicit requirements and limitations and has asserted claims which contravene their terms. Factually and

Counterclaim.
{05130}{||stip.DOC}

legally Sea Star's position is:

1.     Emerald is not a real party in interest and lacks the requisite "personal stake in the outcome" of any controversy to sue Sea Star.  Serving as a stalking horse, Emerald actually has attempted to assert alleged legal rights and interests of third parties, namely MBC and Storage, and has dealt with Sea Star "on behalf of the creditors."  Storage, its secured creditor, expects to collect any funds, which MBC anticipates sharing.

Even if Emerald could function as a real party in interest as to certain claims under the Rental Agreement, paragraph 6.3 of the Assignment Agreement withholds assignment to — and proscribes assertion by — Storage of any entitlement to compensation from Sea Star for use of Emerald equipment during any period in which Sea Star paid MBC.  The undefined, indeterminate derivative "carveout", given by Storage, can confer no greater right than Storage's rights under the Assignment Agreement.  Consequently Emerald is prohibited from asserting any claim for *per diem* rental of Emerald equipment.

2.     As a matter of law, the economic-loss rule precludes Emerald's tort claims, which are interwoven with its breach-of-contract claim; none is separate from and independent of the alleged breach of contract.  Even if Emerald could assert tort claims, the undisputed material facts confirm that Emerald began to contest Sea Star self-billing reports during summer 2002.  Moreover, MBC has been entitled to receive – and has received – all compensation under the Rental Agreement.  Thus, even if Emerald could prove all other essential elements of the torts asserted in the Amended Counterclaim, Emerald cannot prove reliance and damages.

3.     Since Emerald admittedly sold recovered equipment without prior notice to Sea Star, the Rental Agreement and Maryland law bar Emerald's claims for "Adjusted Stipulated

{05130}{||stip.DOC}

Loss Value". Furthermore, the Rental Agreement and Maryland law bar Emerald's claims for punitive damages.

4.    The Maryland statute of limitations bars claims that Emerald initially asserted in the Amended Counterclaim or in spreadsheet "invoices" more than three years after accrual.

## 2.    *Constitutional Or Statutory Bases of Federal Jurisdiction*

Emerald asserts federal jurisdictional basis pursuant to 28 U.S.C.A. Section 1334 and 157 and Sections 542 of Title 11 of the United States Code (the "Bankruptcy Code"). Emerald also contends federal jurisdictional basis includes 28 U.S.C.A. Section 1333.

Sea Star agrees that federal jurisdiction exists under 28 U.S.C. § 1133 but denies Emerald's assertion that jurisdiction exists under the Bankruptcy Code.

## 3.    *Statement of Facts Which Are Admitted and Require No Proof*

The following facts are admitted and will require no proof at trial:

(a)    Sea Star, a Delaware limited liability company, is headquartered in Jacksonville, Florida. As an ocean carrier, SSL transports cargo in interstate commerce.

(b)    Emerald, a Delaware corporation, is a named Debtor under Chapter 11 of the United States Bankruptcy Code, having filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 21, 2001 (the "Petition Date").

(c)    Emerald was engaged in business as a lessor of equipment used by carriers in the oceangoing transportation business to transport goods involves, inter alia, large containers, gen sets and refrigerated units, together with chassis used to move the containers to and from ships.

(d)    Prior to the Petition Date, Emerald leased all of its shipping equipment to two

companies, NPR, Inc. ("NPR") and Holt Cargo Systems, Inc.

(e)    NPR had been in business as an ocean carrier.

(f)    In April 2002, Sea Star entered into an Asset Purchase Agreement, as amended, with NPR and other entities, all of which were also named Debtors in Chapter 11 proceedings.

(g)    In April 2002, NPR filed a motion in the Bankruptcy Court seeking approval for the sale of assets.

(h)    On April 26, 2002, the Bankruptcy Court entered an Order Authorizing Sale of NPR Assets Free and Clear of Liens, Claims and Encumbrances to Sea Star (the "Sale Order"). Sea Star did not assume the equipment lease between Emerald and NPR and Holt Cargo Systems, Inc.

(i)    The lease with NPR and Holt Cargo Systems, Inc. of the Emerald Equipment was rejected as of April 18, 2002 by Order entered by the Bankruptcy Court on May 10, 2002.

(j)    On July 22, 2002, the Bankruptcy Court issued an Order allowing MBC, Emerald's secured creditor, to foreclose its security interest in the Emerald Equipment, effective as of April 29, 2002.  The Order terminated the automatic stay in regard to equipment described in a November 20, 1997 Loan and Security Agreement between MBC and Emerald.  The Order also authorized MBC to remove and sell the equipment, applying the proceeds to Emerald's indebtedness to MBC.  MBC, however, did not immediately move to foreclose its interest in the Emerald Equipment.

(k)    The closing in connection with the Sale Order occurred on April 27, 2002 at 3:00 a.m. (the "NPR Closing").

{05130}{|||stip.DOC}

(l)     As of April 29, 2002, SSL commenced using certain Emerald Equipment in its shipping business.

(m)     On or about May 1, 2002, Sea Star sent an e-mail regarding use of Emerald Equipment (the "E-Mail Agreement").

(n)     Certain Emerald Equipment was on board NPR vessels in transit at the time of the NPR closing.  This Emerald Equipment, other Emerald Equipment, and other equipment was used to complete shipments in transit ("Shipments in Transit").  Payment for use of equipment for Shipments in Transit was to be made by Sea Star to NPR, which has confirmed that Sea Star owes nothing for equipment used in Shipments in Transit.  Emerald has said that it does not claim any rent for Emerald Equipment used for Shipments in Transit for which Sea Star has already paid NPR (however, the identification of the equipment used for Shipments in Transit, the duration of Shipments in Transit, and Emerald's on-hire and off-hire calculations remain in dispute).

(o)     Sea Star on-hired Emerald Equipment which was used for Shipments in Transit on the date Sea Star's use for a new cargo movement began.

(p)     Sea Star on-hired Emerald Equipment not involved in Shipments in Transit on the date Sea Star's use began.

(q)     In September 2002, Sea Star and Emerald executed the Rental Agreement which was dated as of July 31, 2002.  The Rental Agreement, by its terms covered the Emerald Equipment in use at various times commencing April 29, 2002.

(r)     Sea Star undertook to report its usage of the Emerald Equipment by rendering the Self-billing Reports to MBC with copies to Emerald.

(s)     Some of the Self-billing Reports did not accurately reflect Sea Star's use of

certain Emerald Equipment.

       (t)    By a letter dated October 31, 2003, Emerald's attorney notified Sea Star that Emerald was exercising its rights to terminate the Rental Agreement in accordance with its terms.

       ***4.    Issues of Fact Which Remain to Be Litigated, Most Are Mixed Questions of Fact and Law, and As Such, Are Deemed to be Included in The "Issues of Law Which Remain to be Litigated" Stated by the Parties in Paragraph 5 hereof.***

       Emerald on its Counterclaim:

       (a)    Which pieces of Emerald Equipment were used by Sea Star, other than for in-transit use?

       (b)    What was the beginning date and end date for Sea Star's rental obligation for each piece of Emerald Equipment used by SSL?

       (c)    Which pieces of Emerald Equipment used by Sea Star were not returned to Emerald?

       (d)    What dates should be used to calculate the interest owed by Sea Star under the Equipment Rental Agreement?

       (e)    Whether the Self-billing Reports underreported Sea Star's usage of the Emerald Equipment, and if so, to what extent.

       (f)    Whether the information (or lack thereof) provided by Sea Star in its Self-billing Reports, upon which Sea Star based its rental payments, was false and/or misleading.

       (g)    Whether Sea Star had the obligation to correct the information (or lack thereof) provided by Sea Star on its Self-billing Reports, upon which Sea Star based its rental payments, when Sea Star learned that the Self-billing Reports were false and/or misleading.

{05130}{||stip.DOC}

(h)     Whether the magnitude of the discrepancy between Sea Star's reported usage of the Emerald Equipment (as shown on the Sea Star Self-billing Reports) and Sea Star's actual usage of the Emerald Equipment, evidences an intent to defraud Emerald, or at the very least, a reckless indifference as to the truth of the matters contained in the Self-billing Reports.

(i)     Whether Sea Star prepared the Self-billing Reports knowing that the information contained in those reports was false and misleading or prepared the reports with reckless indifference as to the veracity of the information contained in the Self-billing Reports.

(j)     Whether Sea Star prepared the inaccurate Self-billing Reports with the intention of defrauding Emerald.

(k)     Whether Emerald had a right to and did in fact rely on the misrepresentations made by Sea Star in the Self-billing Reports.

(l)     Whether, as a result of Emerald's reliance on the fraudulent misrepresentation of Sea Star in the Self-billing Reports, Emerald suffered damages, and if so, the extent and nature of such damages.

(m)     Whether Sea Star had a duty to accurately account to MBC and/or Emerald for its use of the Emerald Equipment on the Self-billing Reports.

(n)     Whether Sea Star breached its duty to Emerald in that it failed to accurately account for the usage of Emerald Equipment and properly reimburse Emerald for that use.

(o)     Whether, as a result of Sea Star's inaccurate reporting of its use of the Emerald Equipment, whether intended to deceive Emerald or not, Sea Star has made representations which have a tendency to deceive and undermine confidence and/or are injurious to the public interests.

{05130}{||stip.DOC}

(p)     Whether Sea Star had a fiduciary duty to accurately report to Emerald its usage of the Emerald Equipment.

(q)     Whether Sea Star's actions in preparing the Self-billing Reports breached its fiduciary duty to Emerald.

(r)     Whether Sea Star knew that Emerald relied upon Sea Star to accurately report the usage of the Emerald Equipment.

(s)     Whether Sea Star was aware that an accurate report from Sea Star was the only reasonable available method for Emerald to determine Sea Star's actual usage of the Emerald Equipment.

(t)     Whether Emerald's reliance upon Sea Star's Self-billing Reports was not only justified, it was necessary to maintain the relationship between the parties.

(u)     Whether Emerald, having relied upon the Self-billing Reports provided by Sea Star was damaged, and if so, the extent and nature of such damages.

(v)     Whether the source documents evidencing Sea Star's use of Emerald Equipment were in Sea Star's possession and would not generally be available for or delivered to Emerald.

By Sea Star (corresponding to the paragraphs above):

(a)     Sea Star agrees this is an issue to be tried.

(b)     Sea Star does not agree that this is an issue that Emerald is entitled to raise.

(c)     Sea Star does not agree that this is an issue that Emerald is entitled to raise, unless "used" means on-hired under the Rental Agreement.

(d)     Sea Star does not agree that this is an issue that Emerald is entitled to raise.

(e)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence mooted any related claim, as a matter of law.

(f)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence mooted any related claim, as a matter of law.

(g)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence mooted any related claim, as a matter of law.

(h)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence mooted any related claim, as a matter of law.

(i)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence mooted any related claim, as a matter of law.

(j)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence mooted any related claim, as a matter of law.

(k)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

(l)     Sea Star does not agree that this is an issue that Emerald is entitled to raise.

Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

       (m)    Sea Star does not agree that this is an issue that Emerald is entitled to raise.

       (n)    Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

       (o)    Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

       (p)    Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

       (q)    Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

       (r)    Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

       (s)    Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

       (t)    Sea Star does not agree that this is an issue that Emerald is entitled to raise.

Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

      (u)    Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

      (v) Sea Star does not agree that this is an issue that Emerald is entitled to raise.

**5.**     *Issues of Law Which Remain to Be Litigated.  Most Are Mixed Questions Of Fact And Law, And As Such, Are Deemed To Be Included In The "Issues Of Fact Which Remain To Be Litigated" Stated By The Parties In Paragraph 4 Hereof.*

      Emerald on its Counterclaim:

      (a)    Whether Sea Star is in breach of its obligations under the terms of the Rental Agreement as a result of its failure to pay the following: (i) rent due to Emerald; (ii) stipulated loss values (or adjusted stipulated loss values) as a result of Sea Star's failure to return Emerald Equipment to Emerald or due to loss, damage, theft or destruction of Emerald Equipment which Sea Star used, and (iii) interest due in accordance with the Rental Agreement.

      (b)    Where Sea Star had a duty to Emerald to accurately report its usage of Emerald Equipment, does the burden of proof switch to Sea Star once Emerald presents competent evidence that SSL used a piece of equipment?

      (c)    Where the source documents evidencing Sea Star's use of Emerald Equipment are produced by or available to Sea Star and not Emerald, does the burden of proof switch to Sea Star once Emerald presents competent evidence that Sea Star used a piece of equipment?

      (d)    Is Emerald entitled to a turnover of damages equaling the value of Emerald

{05130}{||stip.DOC}

Equipment which Sea Star had in its possession but did not return to Emerald.

(e)     Whether Emerald is entitled to an accounting from Sea Star for Sea Star's use of the Emerald Equipment.

1 Am.Jur.2d Accounts and Accounting §54 (1994 & Supp. 2002).

Anderson v. Watson, 118 A. 569 (Md. App. Ct. 1922).

P.V. Properties, Inc. v. Rock Creek Village Associates Ltd. Partnership, 549 A.2d 403 (Md. App. Ct. 1988).

(f)     Whether Sea Star owed Emerald a fiduciary responsibility to accurately report its use of the Emerald Equipment.

P.F.C. Mgmt. Corp. v. Chomat, (In re Chomat), 216 B.R. 681 (Bankr. S.D. Fla. 1997);

In re Marchiando, 13 F.3d 1111 (7th Cir. 1994);

Travel Committee, Inc. v. Pan American World Airways, Inc., 603 A.2d 1301 (Md. App. Ct. 1992).

(g)     Whether Sea Star's breach of fiduciary duty constitutes a tort.

Bohler-Uddeholm Am. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001).

F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc., Civ. A. No. 92-3900, 1994 WL 594592, at *10 (D.N.J. Oct. 24, 1994).

(h)     Whether Sea Star's breach of duty constitutes a tort for which, compensatory damages, punitive damages and/or attorney's fees may be recoverable.

Thomassen Lincoln-Mercury, Inc. v. Goldbaum, 413 A.2d 218 (Md. App. 1980).

A-T-O, Inc. v. Garcia, 374 So. 2d 533 (Fla. Dist. Ct. App. 3d Dist. 1979).

Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633 (Md. Appt. Ct. 1992).

Sea Star on the Counterclaim:

Corresponding to the paragraphs above:

(a)     Sea Star does not agree that Emerald is entitled to raise issues (i), (ii) to the extent Emerald's definition of "used" is not synonymous and coterminous with on-hired under the Rental Agreement, and (iii) to the extent Emerald attempts to claim interest that is not allowed under Maryland law.  Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that issue (i) is baseless and have mooted any related claim, as a matter of law.

(b)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless,  particularly to the extent Emerald's definitions of  "usage" and "used" are not synonymous and coterminous with on-hired under the Rental Agreement,  and have mooted any related claim, as a matter of law.

(c)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless, particularly to the extent Emerald's definitions of  "use" and "used" are not synonymous and coterminous with on-hired under the Rental Agreement, and have mooted any related claim, as a matter of law.

(d)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless, particularly to the extent Emerald's definitions of  "possession" is not synonymous and coterminous with on-hired under the Rental Agreement, and have mooted any

{05130}{||stip.DOC}

−14−

related claim, as a matter of law.

(e)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless, particularly to the extent Emerald's definition of "use" is not synonymous and coterminous with on-hired under the Rental Agreement, and have mooted any related claim, as a matter of law.

(f)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have mooted any related claim, as a matter of law.

(g)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless under Maryland law and have mooted any related claim, as a matter of law.

(h)     Sea Star does not agree that this is an issue that Emerald is entitled to raise. Moreover, testimony by Emerald's witnesses and documents in evidence have disclosed that the "issue" is baseless and have related claim, as a matter of law.

In addition, the Court already has tried issues related to the Complaint, will declare rights and obligations of the parties, and will determine whether and what issues will be tried in connection with the Amended Counterclaim.  Express written provisions of the Sale Order, Rental Agreement, Indemnity Agreement, and Assignment Agreement delineate and define Emerald's and Sea Star's rights and obligations. Nevertheless, Emerald has ignored the explicit judicial and contractual requirements and limitations and has asserted claims which contravene their terms.  In regard to the accounting and tort claims, Sea Star submits the following issues:

{05130}{||stip.DOC}

(a)  Whether Emerald is a real party in interest with the requisite "personal stake in the outcome" of any controversy to sue Sea Star;

(b)  Whether Emerald may serve as a stalking horse, attempting to assert alleged legal rights and interests of third parties, namely MBC and Storage, against Sea Star;

(c)  Whether Emerald's role has been to assist MBC and Storage in collections and liquidation of equipment and its dealings with Sea Star have been "on behalf of the creditors", namely, Storage, Emerald's secured creditor, which expects to collect any funds, and MBC, which anticipates sharing any collections;

(d)  Whether, assuming Emerald could function as a real party in interest as to certain claims under the Rental Agreement, paragraph 6.3 of the Assignment Agreement withholds assignment to — and proscribes assertion by — Storage of any entitlement to compensation from Sea Star for use of Emerald equipment during any period in which Sea Star paid MBC and for an accounting;

(e)  Whether the undefined, indeterminate derivative "carveout", given by Storage to Emerald, can confer no greater right than Storage's rights under the Assignment Agreement, prohibiting Emerald from asserting any claim for *per diem* rental of Emerald equipment;

(f)  Whether the economic-loss rule precludes Emerald's tort claims, which are interwoven with – and not separate from and independent of -- the breach-of-contract claim;

(g)  Whether Emerald can prove justifiable reliance on any alleged misrepresentations, given the undisputed material fact that Emerald began to contest Sea Star self-billing reports during summer 2002;

(h)  Whether Emerald can prove entitlement to and amount of damages proximately caused by any alleged misrepresentations, given the undisputed material fact that MBC was entitled to

receive – and did receive – all compensation from Sea Star for *per diem* rental of Emerald equipment during the period covered by the Rental Agreement and the self-billing reports;

(i)  Whether Emerald's admitted sales of recovered equipment without prior notice to Sea Star preclude claims for "Adjusted Stipulated Loss Value" against Sea Star under the Rental Agreement and Maryland law.

(j)  Whether the Rental Agreement and Maryland law bar Emerald's claims for punitive damages;

(k)  Whether the Rental Agreement and Maryland law preclude Emerald's claims for attorney's fees;

(l)  Whether the Maryland statute of limitations, Md. Cts. & Jud. Proc. Code Ann. §5-101, and the maritme doctrine of laches bar claims initially asserted by Emerald in the Amended Counterclaim and in Emerald spreadsheet "invoices"  more than three years after accrual;

(m)  Whether, to what extent, when, and how Emerald acquired rights to make each claim asserted in the Amended Counterclaim against Sea Star;

(n)   Whether competent admissible evidence satisfies Emerald's burdens of proving turnover, accounting, fraud, constructive fraud, fraudulent concealment, negligent misrepresentation, and breach of fiduciary duty, the specific damages to Emerald proximately caused, and Emerald's right to recover from Sea Star, if Emerald can sustain a legal right to maintain and prosecute such claims for relief;

(o)  Whether competent admissible evidence satisfies Emerald's burden of proving each Sea Star breach of the Rental Agreement, a maritime contract, the specific damages to Emerald caused by such breach, and Emerald's right to recover from Sea Star with respect to each piece of

equipment covered by the Rental Agreement;

(p)  What "chassis, gen sets and containers have not been returned by Sea Star to Emerald pursuant to Emerald's demand on or before December 1, 2003 in accordance with the provisions of paragraph 10 of the Equipment Rental Agreement", as alleged in the Amended Counterclaim;

(q)  What damage has Emerald sustained and proven with respect to each piece of equipment included in its claims against Sea Star;

.       (r)  Whether Emerald claims against Sea Star are barred by waivers of alleged rights;

(s)  Whether Emerald is collaterally estopped from maintaining and enforcing claims against Sea Star by its acts and omissions;

(t)  Whether Emerald engaged in fraudulent or other misconduct that bars claims against Sea Star;

(u)  Whether the doctrine of judicial estoppel bars Emerald claims asserted in the Amended Counterclaim;

(w)  Whether anticipatory repudiation of the Rental Agreement bars Emerald claims asserted in the Amended Counterclaim;

(x)  Whether Sea Star is entitled to setoff all amounts due from Emerald or MBC against claims asserted in the Amended Counterclaim;

(y)  Whether Sea Star is entitled to a credit for all overpayments against claims asserted in the Amended Counterclaim;

(z)  Whether the doctrine of unclean hands bars Emerald claims asserted in the Amended Counterclaim;

(aa)  Whether Maryland law and maritime law bar Emerald claims for attorney's fees

{05130}{||stip.DOC}

asserted in the Amended Counterclaim;

(bb)   Whether Article III, section 57, of the Maryland Constitution, maritime law, and judicial precedent bar Emerald claims for "interest at the rate set forth in the Equipment Rental Agreement", as asserted in the Amended Counterclaim.

**6.    *Lists of Pre-Marked Exhibits***

The exhibit lists, which may be amended or supplemented prior to the pretrial hearing and/or after the Court's ruling on Sea Star's Complaint seeking a declaration of the parties' rights and obligations, are identified as follows:

(a)    Emerald's Exhibits are described on attached Schedule "A".  The parties will exchange pre-marked exhibits by September 5, 2008.

(b)    Sea Star's Exhibits are described on attached Schedule "B".  The parties will exchange pre-marked exhibits by September 5, 2008.

**7.    *Lists of Witnesses***

The parties submit:

(a)    Emerald's List of Witnesses is attached as Schedule "C".

(b)    Sea Star's List of Witnesses is attached as Schedule "D".

With the Court's permission, the parties will exchange and file their deposition designations in accordance with the Post-Trial Brief procedures established by the Court after trial on the Complaint.

**8.    *Brief Statement By Emerald***

Emerald's Counterclaim asserts, and the evidence will show, substantial damages in excess of $2.9 million due to failure of Sea Star to pay for the rental of numerous pieces of

equipment used by Sea Star pursuant to the Rental Agreement.  In addition, Emerald asserts and the evidence will show that Sea Star owes to Emerald stipulated loss values for Emerald Equipment which Sea Star used but never returned to Emerald and adjusted stipulated loss values for Emerald Equipment used by Sea Star which was not returned by Sea Star pursuant to the Rental Agreement but which Emerald recovered more than 60 days after termination of the Rental Agreement totaling in excess of $1.7 million.  Further, Emerald is entitled to 18% interest on the unpaid rent and stipulated loss values.  In support of its claims, Emerald will present substantial evidence which will show Sea Star's use of the Emerald Equipment for which it did not pay rent, and in numerous instances, never returned such equipment to Emerald.

Furthermore, Emerald will show that Sea Star undertook a duty to accurately report its usage of the Emerald Equipment and that Sea Star breached its duty.  The parties knew that Emerald would not be able to determine when Sea Star commenced using Emerald Equipment and that Emerald would be relying on Sea Star's Self-billing Reports.  The evidence will show Sea Star committed willful acts such as leasing Emerald Equipment to third parties in violation of the Rental Agreement, and further failed to account for such equipment or pay rental to Emerald for such equipment. Such willful acts, as well as the sheer magnitude of Sea Star's underreporting of its use of the Emerald Equipment on its Self-billing Reports constitute a reckless disregard of its duty to accurately prepare the Self-billing Reports, giving rise to not only compensatory damages for the lost rental and stipulated loss values, but, other compensatory damages, punitive damages, and attorneys' fees.

### 9.    *Brief Statement by Sea Star:*

Express written provisions of the Sale Order, Rental Agreement, Indemnity Agreement, and

Assignment Agreement delineate and define the parties' rights and obligations. Nevertheless, Emerald has ignored the explicit judicial and contractual requirements and limitations and has asserted claims which contravene their terms. The evidence has shown and will show:

1. Emerald is not a real party in interest and lacks the requisite "personal stake in the outcome" of any controversy to sue Sea Star. Serving as a stalking horse, Emerald actually is attempting to assert alleged legal rights and interests of third parties, namely MBC and Storage, against Sea Star. Emerald's role has been to assist MBC and Storage in collections and liquidation of equipment; its dealings with Sea Star have been "on behalf of the creditors." Storage, its secured creditor, expects to collect any funds, which MBC anticipates sharing.

Even if Emerald could function as a real party in interest as to certain claims under the Rental Agreement, paragraph 6.3 of the Assignment Agreement withholds assignment to — and proscribes assertion by — Storage of any entitlement to compensation from Sea Star for use of Emerald equipment during any period in which Sea Star paid MBC. The undefined, indeterminate derivative "carveout", given by Storage, can confer no greater right than Storage's rights under the Assignment Agreement. Consequently Emerald is prohibited from asserting any claim for *per diem* rental of Emerald equipment.

2. As a matter of law, the economic-loss rule precludes Emerald's tort claims, which are interwoven with its breach-of-contract claim. None of the alleged torts is separate from and independent of the alleged breach of contract. Even assuming *arguendo* that Emerald could assert tort claims, the undisputed material facts confirm that Emerald began to contest Sea Star self-billing reports during summer 2002; and Emerald cannot sustain its burden to prove reliance on and damages proximately resulting from any alleged misrepresentations in Sea Star self-billing reports

by clear and convincing evidence..

3.    Since Emerald admittedly sold recovered equipment without prior notice to Sea Star, the Rental Agreement and Maryland law bar Emerald's claims for "Adjusted Stipulated Loss Value" against Sea Star.

4.    Maryland law, maritime law, and judicial precedent bar Emerald's claims for punitive damages against Sea Star.

5.    Maryland law and maritime law bar Emerald claims for attorney's fees asserted in the Amended Counterclaim;

6.    Article III, section 57, of the Maryland Constitution, maritime law, and judicial precedent bar Emerald claims for "interest at the rate set forth in the Equipment Rental Agreement", as asserted in the Amended Counterclaim.

### 10.    *Amendments to Pleadings*

None at this time.

### 11.    *Certification of Settlement Efforts*

Counsel certify that the parties have engaged in settlement discussions and participated in mediation.  To date the parties have not settled this matter.

### 12.    *Other Matters*

### 13.    *The Pre-Trial and Post-Trial Orders issued by the Court and this Order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice and subject to Orders issued by the Court after reviewing Post-Trial Brief in connection with the trial on the Complaint..*

DATED this _____ day of August, 2008.

{05130}{||stip.DOC}

**SMITH, KATZENSTEIN**                    Inc.
**& FURLOW LLP**

By:  /s/Kathleen M. Miller
Kathleen M. Miller (ID No. 2898)
The Corporate Plaza
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Tel: (302) 652-8400
Fax: (302) 652-8405

And

Timothy J. Armstrong
Armstrong & Mejer, P.A.
2222 Ponce de Leon Boulevard
Penthouse Suite
Miami, FL 33134

Counsel for Sea Star Line, LLC


**ECKERT SEAMANS CHERIN &**
**MELLOTT, LLC**

By: /s/ Ronald S. Gellert
Ronald S. Gellert (ID No. 4259)
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Tel: (302) 425-0430
Fax: (302) 425-0432

And
Gary Schildhorn
Alan I. Moldoff, Esq.
Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA 19102

Counsel for Emerald Equipment Leasing,

{05130}{||stip.DOC}