## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SEA STAR LINE, LLC, | : | |
| | : | |
| Plaintiff/ | : | |
| Counterclaim Defendant, | : | |
| | : | |
| v. | : | Civ. No. 05-245-JJF-LPS |
| | : | |
| EMERALD EQUIPMENT LEASING, INC., | : | |
| | : | |
| | : | |
| Defendant/ | : | |
| Counterclaim Plaintiff. | : | |

## MEMORANDUM ORDER

The counterclaims in this case have been referred to me for all pretrial purposes, which has primarily involved resolving various discovery disputes that have arisen between the parties. Emerald Equipment Leasing, Inc. ("Emerald") is the Counterclaim Plaintiff/Defendant and Sea Star Line, LLC ("Sea Star") is the Counterclaim Defendant/Plaintiff. Emerald was in the business of leasing equipment (e.g., containers, chassis). Sea Star leased equipment from Emerald to use in providing transportation services to Sea Star's customers. Emerald claims that Sea Star substantially underpaid Emerald for the Emerald equipment Sea Star used.

Although there are no discovery issues presently before me, I have previously reserved ruling on Emerald's request that Sea Star be sanctioned. Emerald initially requested sanctions (D.I. 170 at 13) when Sea Star filed objections (D.I. 165) to my initial discovery rulings (D.I. 160).[1] I deferred ruling on the matter, focusing the parties instead on getting discovery moving.

---

[1] The objections were overruled.  (D.I. 176)  In his ruling, Judge Farnan stated that "any award of sanctions should be considered by Magistrate Judge Stark in the first instance." (D.I.

1

(D.I. 177)  During a teleconference concerning additional discovery disputes that later arose

between the parties (D.I. 183, D.I. 184, D.I. 185, D.I. 186), I indicated that I was troubled by

what I had learned about Sea Star's conduct.  (D.I. 187 at 44-45)  I ordered the parties to brief

whether Sea Star should be sanctioned.  (D.I. 188)[2]  Having reviewed the parties' submissions

(D.I. 189, D.I. 190), I now rule that Sea Star's counsel will be sanctioned.

In my December 28, 2007 Memorandum Order ("Memorandum Order"), I ordered Sea

Star to produce within twenty days the following documents (among other things):

> A list identifying the five (5) largest trucking companies (by volume) used by Sea
> Star in the United States and the three (3) largest trucking companies used by Sea
> Star in Puerto Rico for the period April 29, 2002 through September 30, 2002.  As
> to those five (5) largest trucking companies in the United States and the three (3)
> largest in Puerto Rico, Sea Star shall provide copies of all invoices exchanged
> between Sea Star and those companies for services rendered between April 29,
> 2002 and September 30, 2002.

(D.I. 160 at 7)  I adopted this document request essentially verbatim from one that had been

proposed by Emerald (D.I. 151, D.I. 152, D.I. 158 at 68-70) after finding that the documents it

sought were relevant and reasonably calculated to lead to the discovery of admissible evidence

(D.I. 160 at 6).  On March 3, 2008, after Sea Star's objections to my Memorandum Order were

overruled (D.I. 176), I ordered Sea Star to produce the responsive documents within ten days

(D.I. 177).

---

176 at 3 n.1)

    [2]I stated: "I have to, in full candor, put everybody on fair warning that this is now
sounding like a case in which, Mr. Armstrong, your side is worthy of being sanctioned for how
you are handling discovery. . . .  I am not ruling that there are going to be sanctions, but I am
giving you fair warning, Mr. Armstrong, that I am troubled by some of the things that I have
heard today, but you can wait for my order which would give both sides a chance to be heard on
that."  (D.I. 188 at 44-45)

I later learned that although Sea Star produced documents within the ten-day period, what Sea Star produced was not fully consistent with what I had ordered. First, in identifying the five largest trucking companies it used, Sea Star did not rank the truckers "by volume," as my order required, but instead by dollar amount of the invoices Sea Star exchanged with the truckers. Second, the "invoices" Sea Star produced consisted just of the front pages of the invoices, without the supporting documentation that had been attached to the original invoices and which contained the information Sea Star knew Emerald was seeking. It is these two actions that I find to be sanctionable.

More specifically, with respect to how Sea Star was to determine the five largest trucking companies it used, there can have been no doubt that what I intended was that the truckers be ranked by Sea Star by the volume of the equipment moved, not by revenues. That the ranking should be done by volume was made clear repeatedly. It first came up when, just prior to our December 20, 2007 hearing, Emerald requested as one of its "additional tailored requests" for discovery that Sea Star produce documents relating to "its five largest trucking companies (by volume) used by" Sea Star. (D.I. 151 at 8 (emphasis added); *see also* D.I. 152 at 2 (proposed order)) During the December hearing, Emerald's attorney explained what he meant by "volume":

> . . . [M]y client has asked that Sea Star identify its five largest trucking companies by volume, meaning not by the dollar amount, but by the amount of equipment moved, which was used by Sea Star in the United States, and three of the largest trucking companies by volume used by Sea Star in Puerto Rico.

(D.I. 158 at 69) (emphasis added)  At least twice during the December hearing even Sea Star's counsel, Mr. Armstrong, referred to Emerald's request as seeking "the five truckers by volume."

3

(D.I. 158 at 80, 81) (emphasis added)  In granting Emerald's discovery request, my
Memorandum Opinion required Sea Star to produce documents relating to "the five (5) largest
trucking companies (by volume) used by Sea Star in the United States." (D.I. 160 at 7)
(emphasis added)

Contrary to my order, however, Sea Star produced documents for its five largest trucking
companies as ranked by dollar amount, not by volume of equipment moved. This was brought to
my attention in letters the parties wrote to me in April and May 2008 raising discovery disputes.
Sea Star's counsel explained:

> To determine the five largest truckers, SSL [i.e., Sea Star] utilized its accounting
> records, which are based on 'dollar amount of the invoices,' not 'number of loads
> moved and equipment pieces involved.' To search for truckers as EEL [i.e.,
> Emerald] has suggested would require SSL to examine and analyze every piece of
> documentation from every trucker in the relevant time period and add up each
> piece moved. Clearly, this is an overly burdensome request.

(D.I. 186 at 2) (emphasis added; internal citation omitted)  Of course, this was well past the point
when Emerald had "suggested" identifying truckers in this manner; it had already been more than
four months since I had ordered Sea Star to do it, and more than two months since Judge Farnan
had overruled Sea Star's objections to my order. During the May 6, 2008 discovery
teleconference, when I explained that it looked like Sea Star had "unilaterally revised my order
and decided to provide something different than what you were ordered to do," Sea Star's
counsel, Mr. Armstrong, did not disagree. Instead, he confirmed that "we provided the five
largest truckers by monetary volume during that period. That's the way that we keep our
records." (D.I. 187 at 17-18) (emphasis added); *see also* (D.I. 190 at 8) (Sea Star "utilized its
account records, including payables and invoices, which show monetary volumes of business

4

with vendors")

In its subsequent brief addressing sanctions, Sea Star insisted that it "had no intent to unilaterally revise the Memorandum Order." (D.I. 190 at 8)  But I find that the record supports no other conclusion.  My order unambiguously required that the truckers be identified "by volume."  To the extent anyone could doubt that "volume" referred to equipment, and not to money, any such uncertainty was clarified by Emerald's counsel's statement during the December hearing, expressly requesting (as I later granted) the five largest truckers "by volume, meaning not by the dollar amount, but by the amount of the equipment moved." (D.I. 158 at 69)

Sea Star's contention that it would be unduly burdensome to identify its largest truckers by volume of equipment moved (*see, e.g.*, D.I. 190 at 8) comes too late.  Sea Star did not raise this concern during the December 2007 hearing.  Nor did Sea Star include it among its objections to my December 28, 2007 Memorandum Order.  Nor did Sea Star say anything to me on this point in the period soon after I issued my March 3, 2008 order.  Even assuming compliance with my order would be unduly burdensome, the legitimate options available to Sea Star were either to comply notwithstanding the burden or bring its objections to the Court's attention.  Sea Star's decision to unilaterally rewrite the order to suit itself is simply impermissible.

Sea Star's conduct with respect to the requirement that it produce "invoices" was similarly improper.  Sea Star's counsel had to have understood that the whole point for seeking production of the invoices was to permit Emerald to identify which equipment had been used by Sea Star, including which chassis.  If, as apparently turned out to be the case, the equipment was not identified on the first page of the invoice but only on documents attached to the invoice, then the attached supporting documents should also have been produced.

During the December 2007 hearing, Emerald's counsel explained: "what we've asked for is basically trucker information, because the trucker information has both the containers and the chassises. And a large part of our claim is chassises. . . . But the client has said, you know what, if we could get the trucker invoice, that will list the chassises." (D.I. 158 at 47) I then clarified, "What you're looking for . . . is Sea Star documents that Sea Star exchanged with the truckers or shippers . . . that told the truckers or shippers what equipment was being used on their behalf," to which Emerald's counsel agreed. (*Id.* at 47-48) Shortly thereafter, Sea Star's counsel confirmed the fact that his client's "invoices or other documents happen to delineate some of that equipment" that Sea Star uses to provide transportation services to its customers. (*Id.* at 51) Then, when Emerald's counsel next spoke, he again described how he was looking for "documents that will give us both containers and chassis[] . . . We would like the invoices . . . which will show us the chassis[] by which all of those containers . . . moved." (*Id.* at 68-69)

In defending its decision to provide Emerald with only the first page of the invoices, and not the documents identifying the chassis and containers that were used to provide the transportation services to which the first pages of the invoices related, Sea Star argued that an "invoice" is defined as "'[a]n itemized list of good or services furnished by a seller to a buyer.'" (D.I. 186 at 1 (quoting *Black's Law Dictionary*)) Because the only service Sea Star provides is transportation services, the argument went, Sea Star's "invoices" consist only of the single page essentially showing where cargo was moved, not the equipment that was used to move it. However, as I explained to Sea Star's counsel during the May 2008 teleconference, "I fundamentally disagree with your view that the invoices were just the first page. Certainly what was understood by me and what was intended at the hearing and what was intended by my order

6

were the invoices plus the stuff that would be attached to it . . . ." (D.I. 187 at 7)

"It is well-settled that a court has discretion to issue sanctions for failure to comply with discovery orders." *Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986). Rule 37 of the Federal Rules of Civil Procedure contains several provisions applicable to the circumstances presented here. Fed. R. Civ. Proc. 37(a)(5)(A) provides that when a discovery motion is filed, and granted, subject to certain inapplicable exceptions, "the court must, after giving an opportunity to be heard, require . . . the party or attorney advising [the disobedient] conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Furthermore, "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4); *see also* Adv. Comm. Notes (1993) ("[E]vasive or incomplete disclosures and responses to interrogatories and production requests are treated as failures to disclose or respond. Interrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under subdivision (a)."). Additionally, pursuant to Fed. R. Civ. P. 37(b)(2)(A), "If a party or a party's officer . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Such further orders may include ordering "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to provide the ordered discovery. Fed. R. Civ. Proc. 37(b)(2)(C).

Various factors are "to be considered in evaluating the propriety of Rule 37 sanctions." *Ali*, 788 F.2d at 957.

7

These factors are: 1) the extent of the party's personal responsibility; 2) a history of dilatoriness; 3) whether the attorney's or party's conduct was willful or in bad faith; 4) meritoriousness of the claim (*i.e.*, whether the allegations in the pleadings support recovery); 5) prejudice to the other party; and 6) appropriateness of alternative sanctions.

*Id.*

I have considered each of these factors, in light of the record before me, and conclude that Sea Star's counsel, Mr. Armstrong, should be sanctioned in the amount of $15,000.00. It is clear from the correspondence, filings, and hearings before me that Mr. Armstrong is personally responsible for Sea Star's decisions to identify truckers by dollar amounts rather than volume and to produce only the first pages of the invoices without supporting documentation. While it is unclear whether Sea Star has been intentionally dilatory, there is no doubt, as Emerald observes, that Sea Star has exhibited "grudging conduct in providing the ordered discovery." (D.I. 189 at 8) Mr. Armstrong's interpretations of "volume" and "invoice" were plainly willful, as he himself has explained. Emerald's counterclaims are "meritorious" in the sense that Emerald will prevail at the upcoming trial if it can prove the truth of its allegations. The prejudice Emerald has suffered includes the increased expenditure of legal fees, the delay in receiving relevant and responsive documents, and the frustration in having to argue and fight with Sea Star for materials that should simply be produced. Finally, other sanctions – including the imposition of a greater monetary sanction or deeming certain facts to be admitted – would be more severe and, I believe, less appropriate.[3]

_____

[3]Emerald seeks sanctions of $22,230.00, which is the amount of professional fees incurred in connection with opposing Sea Star's objections to my discovery ruling, submitting the subsequent discovery disputes to the Court, and preparing its sanctions submission. (D.I. 189 at 9) I have reduced this number largely because although Sea Star's objections lacked merit, and may have been a tactic to delay providing discovery, I am not sanctioning Sea Star for its

My decision is fully in accord with the cases cited by Sea Star. *See Insurance Corp. of Ireland, Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 707 (1982) ("Rule 37(b)(2) contains two standards - one general and one specific - that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery."); *Flaherty v. M.A. Bruder & Sons, Inc.*, 202 F.R.D. 137, 141-42 (E.D. Pa. May 8, 2001) (applying *Ali* factors and finding, in circumstances unlike those presented here, that sanctions were not warranted).

It is true that Sea Star provided the supporting documentation before Emerald sought additional court intervention. (D.I. 186 at 2; D.I. 187 at 9-10, 12) It is also true that, rather than run to the Court, Emerald attempted to work with Sea Star to resolve the dispute about the identity of the five largest truckers, in part on the assumption that there may be a correlation between the dollar amount and the volume of moves and equipment. (D.I. 187 at 14)[4] Yet, coming after all that had already occurred -- including the December 2007 hearing, my December Memorandum Order, Judge Farnan's February 2008 overruling of Sea Star's objections to discovery, and my March 3, 2008 order again requiring production of these documents -- Sea Star should not have put Emerald in the position of having to choose between foregoing its access to discovery or bothering the Court with yet another dispute. Sea Star's obligation was to comply

_____

decision to file such objections.

[4]Sea Star makes much of the purported "common-sense correlation between the truckers' monetary charges and equipment moves." (D.I. 190 at 11) But if Sea Star thought discovery should be limited to its largest truckers as ranked by financial factors, rather than by volume of equipment used in transport, it should have raised this point with me long before it did. Even assuming Sea Star's monetary approach is better than the Court-ordered volume approach, it is the Court that makes that call. Having done so, Sea Star was required to comply with the Court order.

9

with my orders, not construct clever evasions to see how Emerald would respond.

Accordingly, Emerald's request for sanctions (D.I. 189) is GRANTED.  Sea Star's attorney, Mr. Armstrong, is directed to pay Emerald the sum of fifteen thousand dollars ($15,000.00) within ten (10) days of the date of this Order.

Dated: August 27, 2008

_____
Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE