# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

SEA STAR LINE, LLC,                          )
a limited liability company,                  )          Civil Action No. 05-CV-245-JJF
                                              )
      Plaintiff,                         )
                                              )
-vs-                                          )
                                              )
EMERALD EQUIPMENT LEASING, INC.,              )
a corporation,                                )
                                              )
      Defendant,                         )
                                              )
-vs-                                          )
                                              )
SEA STAR LINE, LLC,                          )
                                              )
      Counter-Defendant.                 )

## SEA STAR LINE, LLC'S POST TRIAL REPLY BRIEF

SMITH, KATZENSTEIN & FURLOW LLP
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone:  302-652-8400
Facsimile: 302-652-8405
E-mail: Kmiller@skfdelaware.com

OF COUNSEL:                                   *Attorneys for Sea Star Line, LLC*
Timothy J. Armstrong
ARMSTRONG & MEJER, P.A.
2222 Ponce de Leon Boulevard
Penthouse Suite
Miami, FL 33134
Telephone: 305-444-3355

September 2, 2008

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  Sea Star Is Entitled to Declarations of Legal Rights and Obligations under the
Rental Agreement and the Sale Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1.  Sea Star has no responsibility or liability for Emerald equipment
subject to previous agreements between Emerald and NPR
that Sea Star did not use pursuant to the Rental Agreement
after closing of the asset purchase. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2.  Emerald's delivery of each piece of Emerald equipment subject
to the Rental Agreement must have been effected and
evidence by an equipment interchange receipt
-- a TIR -- signed and dated on or after April 29, 2002. . . . . . . . . . . . . 11

3.  Redelivery of equipment subject to the Rental Agreement may have been
at Greenwich terminal, Philadelphia, Pennsylvania; Sea Star terminal,
Puerto Nuevo, San Juan, Puerto Rico; Greenwich terminal, Port of
Jacksonville, Florida; or any other location as to which the parties have
agreed in writing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4.  Redelivery of Emerald equipment subject to the Rental
Agreement may have been effected and evidenced by a
TIR signed by the Sea Star terminal, Puerto Nuevo, San Juan,
Puerto Rico, a designated receiving terminal, at which time
Emerald was required to off-hire the equipment... . . . . . . . . . . . . . . . . . 12

5.  Sea Star has no responsibility or liability to compensate
for use of Emerald equipment prior to or during
Shipments in Transit.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6.      The Sale Order imposes no obligation with respect to
        any lessor's equipment that on April 27, 2002, was not located
        on leased property acquired under the Asset Purchase Agreement;
        that was not involved in shipment to a "final port of destination"
        where Sea Star leased premises acquired under the Asset Purchase
        Agreement and Sale Order; that was returned to port or inland facilities by
        third parties, such as consignees, which had received shipments at final
        destinations outside ports. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7.      Sea Star has had no duty to "redeliver" or pay compensation
        for Emerald equipment that Sea Star "touched" but did not use,
        including but not limited to Emerald equipment which was
        involved in Shipments in Transit or held by third parties, such
        as E.T. Heinsen and inland depots, and was returned to port
        terminals or inland depots where Sea Star leased premises;
        Emerald equipment which entered NPR terminals prior to
        closing of the asset purchase; and Emerald equipment for
        which delivery under the Rental Agreement is not evidenced
        by a TIR, signed and dated by Sea Star for use
        on or after April 29, 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8.      Sea Star has had no duty to "redeliver" or pay for
        Emerald equipment involved in Shipments in Transit that
        third parties, such as consignees, did not return to port
        terminals or inland depots where Sea Star leased premises.
        Any Emerald recourse would be to the NPR
        bankruptcy estate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9.      For Emerald equipment involved in Shipments in Transit,
        any Sea Star on-hire obligation would begin when Sea Star
        signed a TIR for its use after completion
        of a Shipment in Transit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10.     Any Sea Star on-hire obligation for Emerald equipment
        in the possession of third parties, such as depots, shipper pools,
        shipper warehouses, or former NPR agents or stevedores,
        as of and after closing would begin when Sea Star signed a
        TIR removing such Emerald equipment from a depot or
        shipper pool or acknowledging receipt from a customer
        or delivering carrier for Sea Star's use.  Otherwise, Sea Star
        would have no responsibility for such equipment.  . . . . . . . . . . . . . . . . . 14

11.  Sea Star has no obligation to Emerald for *per diem* rent . . . . . . . . . . . . . 14

12.  Sea Star has no obligation for Emerald's adjusted Stipulated
     Loss Value claims unless a signed TIR discloses Sea Star's
     on-hire of such Emerald Equipment under the Rental
     Agreement on or after April 29, 2002; and there is no
     evidence of redelivery under the Rental Agreement . . . . . . . . . . . . . . . 16

13.  Sea Star has no obligation for Emerald's adjusted
     Stipulated Loss Value claims pertaining to Emerald
     equipment recovered and sold.  Emerald admittedly did
     not give Sea Star notice required by paragraph
     13(b)(iii) of the Rental Agreement prior to sales
     of Emerald equipment for which Emerald alleges
     Sea Star is responsible.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17


II.   Emerald Is Not a Real Party in Interest and Lacks Standing to Prosecute Claims
      Against Sea Star . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      A.   Equipment Rental Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      B.   Loan Sale & Assignment Agreement . . . . . . . . . . . . . . . . . . . . . . . . 18

III.  Emerald Is Not Entitled to Reserve  Objections Made at Trial and Has Waived
      Such Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## **TABLE OF AUTHORITIES**

Cases                                                                    Page(s)

*Anderson Adventures, LLC v. Sam & Murphy,* Inc.,
 932 A.2d 1186 (Md. Ct. Spec. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Attman/Glazer P.B. Co.,*
 594 A.2d at 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*BarGale Indus., Inc. v. Robert Realty Co.,*
 343 A.2d 529 (Md. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Bausch & Lomb Inc. v. Utica Mut. Ins. Co.,*
 625 A.2d 1021 (Md. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Canaras v. Lift Truck Servs., Inc.,*
 322 A.2d 866 (Md. App. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7, 8, 10, 16

*Cloverland Farms Dairy, Inc. v. Fry,*
 587 A.2d 527 (Md. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cochran v. Norkunas,*
 919 A.2d 700 (Md. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cochran v. Norkunas,*
 919 A.2d 700 (Md. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dahl v. Brunswick Corp.*
 356 A.2d 221 (Md. App. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Elgabri v. Lekas,*
 964 F.2d 1255 (1ˢᵗ Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Feick v. Thrutchley,*
 586 A.2d 3 (Md. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Freeman v. Stanbern Const. Co.,*
 106 A.2d 50 (Md. App. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*General Motors Acceptance Corp. v. Daniels,*
 492 A.2d 1306 (Md. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 16

*Gill v. Computer Equip. Co.,*
    292 A.2d 54 (Md. App. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Heat & Power Corp. v. Air Prods. & Chems., Inc.,*
    578 A.2d 1202 (Md. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Fine Paper Antitrust Litigation,*
    751 F.2d 562 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Interamerican Refining Corp. v. Texaco Maracaibo, Inc.,*
    307 F. Supp. 1291 (D. Del. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Kasten Constr. Co. v. Rod Enterprises,*
    301 A.2d 12 (Md. App. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Maslow v. Vanguri,*
    896 A.2d 408 (Md. Ct. Spec. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*New Jersey v. E.P.A.,*
    517 F.3d 574 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Norfolk Southern Ry. v. James N. Kirby,*
    Pty. Ltd., 543 U.S. 14, 32 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pacific Indem. Co. v. Interstate Fire & Cas. Co.,*
    488 A.2d 486 (Md. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Perpetual Financial Corp. v. United States,*
    61 Fed. Cl. 126, 143 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Phoenix Servs. Ltd. Partnership v. Johns Hopkins Hosp.,*
    892 A.2d 1185 (Md. Ct. Spec. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*Sagner v. Glenangus Farms,*
    198 A.2d 277 (Md. App. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*State v. Attman/Glazer P.B. Co.,*
    594 A.2d 138 (Md. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Taylor v. University Nat'l Bank,*
    282 A.2d 91 (Md. App. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Truck Ins. Exchange v. Marks Rentals, Inc.*,
    418 A.2d 1187 (Md. App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 14, 16

# PRELIMINARY STATEMENT

Emerald's[1] Post-Trial Answering Brief proves Sea Star's points. Contrary to Emerald's contention, this is not "[essentially...an 'accounting' case". D.I. 212 at 2.[2] Instead it is a maritime contract case, involving claims for declaratory and monetary relief. D.I. 1. Sea Star's Post-Trial Opening Brief delineates the material facts and applicable law that satisfy its *prima facie* burden of proof. *See* D.I. 208; Fed. R. Civ. P. 57; Tr. 2:56.

Rather than comply with the Court's directive to respond to each argument, however, Emerald has determined that "Sea Star has and continues to raise a myriad of mostly irrelevant, impertinent, or specious issues and arguments, both factually and legally, wholly lacking in any significance or merit." D.I. 212 at 2, 5. Emerald also asserts that "issues repeatedly raised by Sea Star are issues which Emerald does not dispute (and never has disputed)." D.I. 212 at 3. Having reached these conclusions, Emerald could have wasted no more "ink" [*Id.* at 2]; for the remaining pages of its brief afford scant insight as to factual and legal foundations for its position. Nevertheless, the Court has become cognizant of the vagaries and unspoken limitations in regard to Emerald's "vigorously agreeing" on issues, such as in-transit shipments, that it "does not dispute (and never has disputed)." *E.g.,* Tr. 1:53, 204, 2:38-40; *see* D.I. 212 at 6.

In the Emerald world, inconvenient documentary and testimonial facts detailed in Sea Star's Opening Brief are "wholly irrelevant, impertinent or without any significance to the 'real' issues in

---

[1]References to parties are defined in footnote 1 of Sea Star's opening brief.

[2]Relevant pages of the following depositions are attached: Emerald Equipment Leasing, Inc. "EM.I" - Ex. A; Emerald Equipment Leasing, Inc. "EM.II" - Ex. B; Storage Transfer, LLC "ST" - Ex. C; Philip Bates "PB" - Ex. D; Thomas Holt, Sr. "HSR" - Ex. E; Lorraine Robins "ROB" - Ex. F; Andrew Rooks "AR" - Ex. G.

1

this case;" they become "non-germane" and "nothing more than 'red herrings". D.I. 212 at 5. The

Answering Brief emphatically argues that "Emerald's claims against Sea Star are based on use of

equipment, i.e., if Sea Star used the Emerald Equipment in the course of its business, Sea Star must

pay rental charges for such use." D.I. 212 at 5-6 (underlining in original). To achieve its ends,

Emerald "deploys the logic of the Queen of Hearts, substituting [its] desires for the plain text" of the

Rental Agreement. *New Jersey v. E.P.A.,* 517 F.3d 574, 582 (D.C. Cir. 2008). Thus, Emerald either

ignores or revises material facts, applicable legal precepts, and controlling precedents. Indeed,

Emerald does not follow or distinguish judicial decisions cited in the Court's Memorandum

Opinions, Sea Star's Opening Brief, and its own Answering Brief.

## ARGUMENT

Emerald acknowledges execution of the Equipment Rental Agreement ("Rental Agreement"),

"dated as of July 31, 2002, which by its terms, covered equipment in use as of April 29, 2002." D.I.

212 at 7; *see Canaras v. Lift Truck Servs., Inc.,* 322 A.2d 866, 872 (Md. App. 1974)(retroactive

effect). To analyze the Rental Agreement, this Court engaged in the "objective interpretation of

contracts" under Maryland law. D.I. 75 at 10 (citation omitted); Tr.Ex. 17 ¶ 14. Dismissing

Emerald's original Counterclaim, the Court held:

> **[E]xtrinsic evidence is not required to illuminate the meaning of the**
> **Equipment Rental Agreement because it is not ambiguous when viewed from**
> **the standpoint of a reasonable person....** As Emerald acknowledges in its
> Counterclaim, the Equipment Rental Agreement was the parties' formal
> documentation of the leasing arrangement that had existed previously.... Further, the
> Equipment Rental Agreement has an Integration Clause expressing the parties' intent
> that the Equipment Rental Agreement be "the entire agreement between the parties."

D.I. 75 at 14 (references & citations omitted)(emphasis added).

When Sea Star moved to dismiss Emerald's Amended Counterclaim, the Court reiterated:

In its previous Memorandum Opinion, the Court concluded "that extrinsic evidence is not required to determine the meaning of the Equipment Rental Agreement, and Emerald cannot maintain its Counterclaim to the extent that it alleges a breach of the E-Mail Agreement because the E-Mail Agreement was subsumed by the Equipment Rental Agreement entered into by the parties." D.I. 75 at 14. Emerald has since amended its counterclaim to delete a claim for breach of the E-Mail Agreement, and the Court does not read the factual background of the Amended Counterclaim to be an attempt to reassert a claim for breach of the E-Mail Agreement. The factual recitation of the Amended Counterclaim is simply that, the factual predicate for the parties' dispute, and in this case, the factual predicate included the fact that the parties had entered into the E-Mail Agreement, even though the agreement cannot stand on its own for purposes of a breach of contract claim.

<u>D.I.</u> 86 at 3. The Memorandum Opinions are unequivocal, and the Court's conclusions are clear: The Rental Agreement's terms are unambiguous, and "extrinsic evidence is not required to illuminate" and determine its meaning.

Summarizing the objective theory of contract interpretation utilized by this Court, the Maryland Court of Special Appeals recently stated:

> To ascertain the parties' intent, courts "have long adhered to the objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation."... Under the objective law of contracts, when a contract is clear and unambiguous, "its construction is for the court to determine."...
> The "primary source for determining the intention of the parties is the language of the contract itself."... A court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean.... Put another way, "the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean." Instead, the "'test of what is meant is...what a reasonable person in the position of the parties would have thought' the contract meant."...

*Phoenix Servs. Ltd. Partnership v. Johns Hopkins Hosp.*, 892 A.2d 1185, 1223 (Md. Ct. Spec. App. 2006)(internal citations omitted). Decisions cited in Emerald's Answering Brief are in accord. *E.g.*, *General Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. App. 1985). *Accord, State*

*v. Attman/Glazer P.B. Co.,* 594 A.2d 138, 144 (Md. App. 1991).

A basic precept of contract construction is to construe a contract "in its entirety and, if reasonably possible, effect must be given to each clause or phrase so that a court does not cast out or disregard a meaningful part of the writing." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.,* 625 A.2d 1021, 1033 (Md. App. 1993)(citations omitted). "In the first instance, the inquiry is confined to analysis of the language used." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 488 A.2d 486, 489 (Md. App. 1985), *citing Truck Ins. Exchange v. Marks Rentals, Inc.*, 418 A.2d 1187, 1190 (Md. App. 1980)("language which is merely general in nature or imprecisely defined is not necessarily ambiguous"); *see Bausch & Lomb Inc.,* 625 A.2d at 1031 (words accorded "usual, ordinary, and accepted meaning"). Unless a court finds ambiguity, consideration of "extrinsic evidence which sheds light on the intentions of the parties at the time of the execution" remains impermissible. *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 578 A.2d 1202, 1208 (Md. App. 1990). Giving effect to the contract's plain meaning, the court does not contemplate any alleged subjective intent at the time of formation. *Cochran v. Norkunas,* 919 A.2d 700, 709-10 (Md. App. 2007). In *Cloverland Farms Dairy, Inc. v. Fry,* 587 A.2d 527, 530 (Md. App. 1991), a case cited by Emerald, the appellate court applied the objective test and found no ambiguity in a lease. *See Feick v. Thrutchley,* 586 A.2d 3, 4 (Md. App. 1991); *Kasten Constr. Co. v. Rod Enterprises,* 301 A.2d 12, 18 (Md. App. 1973).

Extracting only the last sentence in the second Memorandum Opinion quoted above, Emerald nonetheless notes:

> Emerald asserts that the Court did not find the entire Rental Agreement unambiguous, even though the quoted words from the Court's ruling in Sea Star's Opening Brief...can be interpreted in this manner. The issue in the Sea Star first Motion to Dismiss upon which the Court ruled related only to the merger clause. No other terms of the Rental Agreement were at issue — thus, the Court could not have

meant based only on the pleadings, that <u>all</u> of the terms of the Rental Agreement were unambiguous and that no parole (*sic*) evidence could ever be used to determine the intent of the parties in construing those other terms. Sea Star's use of words — such as the words it quotes from this Court's prior ruling, wholly taken out of context, and not understood in the circumstances in which they were used — is emblematic of Sea Star's use of words, giving "literal," but wholly unreasonable meaning to those words.

<u>D.I.</u> 212 at 4 n.2 (underlining in original).

Nowhere in its Answering Brief does Emerald explain how the Court failed to examine the entire Rental Agreement yet decided that extrinsic evidence is not required to illuminate or determine its meaning, much less identify "those other terms" that are ambiguous but Court did not consider. Emerald does not explain why the Court prefaced its reference to the Rental Agreement's "Integration Clause" — or merger clause — with the word "further", if "[n]o other terms of the Rental Agreement were at issue." <u>D.I.</u> 212 at 4 n.2; <u>D.I.</u> 75 at 13. Moreover, Emerald does not attempt to justify its disregard of judicial precedents cited in its Answering Brief. <u>D.I.</u> 212 at 11-12. Finally, Emerald proffers no enlightenment as to what words' literal meanings are "wholly unreasonable".

The Integration Clause expressly provides that the Rental Agreement "may not be amended, altered, or modified, except by a writing signed by the party to be bound." <u>Tr.Ex.</u> 17 ¶ 15(a); <u>Tr.</u> 1:195. Indisputably, no modifications, amendments, or alterations of the Rental Agreement occurred. <u>Tr.</u> 1:26, 194; <u>EM.I</u> at 122. Nevertheless, Emerald's Answering Brief cites cases involving issues of contractual modifications by the parties' subsequent course of dealings. Even if oral modification of the Rental Agreement would have been permissible, Emerald did not shoulder its burden of proving that the parties understood Sea Star waived the express requirement that any amendment or modification be in writing. *Freeman v. Stanbern Const. Co.*, 106 A.2d 50, 55 (Md.

App. 1954); *see Taylor v. University Nat'l Bank,* 282 A.2d 91, 93 (Md. App. 1971). Emerald introduced no evidence of Sea Star's intention to relinquish a known right or Sea Star's acts "that were inconsistent with an intention to insist upon enforcing such provision[]." *BarGale Indus., Inc. v. Robert Realty Co.,* 343 A.2d 529, 533 (Md. App. 1975). *Accord, Canaras,* 322 A.2d at 872.

Consistent with the Court's Memorandum Opinions, Andrew Rooks testified that the May 2, 2002 e-mail reflected an agreement "in principle to some of the terms and conditions of the usage of the Emerald equipment" and "a guideline for the usage of Emerald equipment until the rental agreement went into effect which would have superceded this." Tr. 1:85, 86. The parties planned and had discussed a more extensive and formal contract. PB at 53-54. *See also Canaras,* 322 A.2d at 872. Thomas Holt, Jr., who had complained in September 2002 that Emerald and Sea Star still had not signed a "simple lease", understood the Rental Agreement "basically took over — took the place of the [May 2, 2002 e-mail] in a more formal way." Tr. 1:130, 137; Tr.Ex. 72. However, Emerald's Answering Brief resurrects its discredited claim that the "e-mail agreement controlled Sea Star's usage of the Emerald Equipment until the Rental Agreement was executed." D.I. 212 at 7. *Contra, Canaras,* 322 A.2d at 872.

Emerald admits that "Sea Star has no obligation for Emerald Equipment it did not use under the Rental Agreement ...." D.I. 212 at 13.[3] Its owner and president, Thomas Holt, Sr., conceded that the Rental Agreement "refers to all equipment that Sea Star had of Emerald's" and governs the contractual relationship between Sea Star and Emerald. HSR at 126-27. Furthermore, he confirmed that he understood the Rental Agreement, which "speaks for itself." HSR at 29-31, 57, 125.

---

[3]Curiously Emerald opines that "Sea Star still has obligations under the Sale Order and/or common law." D.I. 212 at 13. Sea Star's summary judgement motion to dispose of Emerald's common law claims in the Amended Counterclaim is pending. D.I. 209, 210.

Contradicting his earlier admissions, however, Mr. Holt now contends: "You took over Emerald's equipment as of the closing. You either would return it within two weeks after the closing or you were using it. If you returned it, you would not be charged." EM.II at 101. Apparently, Mr. Holt has revived his "whole theory [which] was you were going to take the entire fleet," although he had known Sea Star "didn't need the entire fleet." HSR at 106. He purportedly "was never aware that [Sea Star] was storing Emerald's equipment" pursuant to the Sale Order and agreement with MBC. Tr. 1:206; *see* PB at 70.

As a matter of law, Mr. Holt's subjective assumptions and beliefs are not only unfounded but also immaterial. The Court's province is not to rewrite the Rental Agreement because Emerald has become dissatisfied with its terms. *E.g., Canaras,* 322 A.2d at 873; *Maslow v. Vanguri,* 896 A.2d 408, 420 (Md. Ct. Spec. App. 2006). Because the words of the Rental Agreement "have a plain and obvious meaning, all construction, in hostility with such meaning is excluded." *Norfolk Southern Ry. v. James N. Kirby, Pty. Ltd.,* 543 U.S. 14, 32 (2004); *see Attman/Glazer P.B. Co.,* 594 A.2d at 144; *Phoenix Servs. Ltd. Partnership,* 892 A.2d at 1223. Emerald is "bound by the contract itself, construed by the same rules of law which govern all other contracts." *Gill v. Computer Equip. Co.,* 292 A.2d 54, 58 (Md. App. 1972).

To bootstrap its claims for *per diem* rent and stipulated loss values, Emerald must introduce parol evidence expanding the definition of Sea Star equipment "use" beyond the Rental Agreement's explicit terms. The Rental Agreement specifies signed "equipment interchange receipts" -- TIRs-- as the operative documents for commencement and termination of Emerald equipment use. Tr.Ex. 17, ¶¶ 1, 2, 5, 10; *see* D.I. 208 at 22-25 & n.8. Construing the Rental Agreement in its entirety, Emerald's assertion that paragraph 5 "provides that a TIR is merely *conclusive* evidence of delivery

of the Emerald Equipment, not *exclusive* evidence of such delivery" is specious. D.I. 212 at 15 (italics in original).

Emerald's Answering Brief improperly includes "inventories" among "[v]arious source documents [that] would evidence Sea Star's use of the Emerald Equipment ...." D.I. 212 at 8. To track equipment moves, TIRs have been Sea Star's primary source documents. Tr. 1:65, 114. Sea Star sometimes used electronic gate logs, received from third-party depots which no longer utilized or did not furnish written TIRs. D.I. 208 at 22 n.8; Tr. 1:65. Neither the Rental Agreement nor the testimony referenced in the Answering Brief mentions "inventories" as Sea Star source documents. Sea Star periodically provided inventories of stored equipment to Emerald. PB 120. These are records of equipment location, not use.

Moreover, Emerald tries to redefine "use" through parol deposition testimony of Philip Bates and Andrew Rooks that is inadmissible. D.I. 212 at 8-9. *See Canaras,* 322 A.2d at 872. Answers to hypothetical questions that seek to elicit such evidence over objections [*See* PB at 92; Tr. 2:54] also are inadmissible. *E.g., General Motors Acceptance Corp.,* 492 A.2d at 1310-11 & n.3; *Truck Ins. Exchange,* 418 A.2d at 1190; D.I. 75 at 13-14. During trial, Mr. Rooks expressed his belief that the letter and "the spirit of the rental agreement" coincide. Tr. 2:54. A colloquy between Emerald's attorney and Mr. Rooks set the context:

> Q. Is it still Sea Star's position that if you used Emerald's equipment, other than in-transit, you owe money to Emerald for it?
> A. (over objection) Under the terms of the equipment rental agreement, absolutely.
> Q. You keep saying you understand the terms of the equipment rental agreement.
> A. Isn't that why we're here?

Tr. 2:52-53. The "audits and our review" to which Mr. Rooks then referred are Sea Star efforts to relate Emerald's claims to equipment usage subject to the Rental Agreement. Tr. 2:53. Mr. Rooks

never "agreed that, **notwithstanding the whatever the provisions of the Rental Agreement said,** if Sea Star used the Emerald Equipment, 'in the spirit of the agreement' Sea Star would be obligated to pay for that equipment." D.I. 212 at 8 (emphasis added). The record reference for this allegation in Emerald's Answering Brief is obviously incorrect.

Emerald acknowledged that Sea Star returns of equipment — *i.e.,* off-hire of individual units "effected and evidenced" by equipment interchange receipts signed and dated by the receiving terminal — occurred when equipment comes through the terminal gate and that the Sea Star terminal in San Juan was a designated receiving terminal, where TIRs signed by Sea Star personnel effected return and off-hire of Emerald equipment. EM.I at 114-15; Tr. 1:90; AR at 13, 72-75; Tr.Ex. 17 ¶ 10(a). No "language of the Rental Agreement" mentions, much less requires, an "Emerald" signature on the TIR. D.I. 212 at 18. According to Mr. Holt, "[t]he document speaks for itself on the redelivery of equipment." Whatever the Rental Agreement says is what the agreement was, "[a]s far as Emerald is concerned, yes." HSR at 125. No modifications, amendments, or alterations of the Rental Agreement occurred. Tr. 1:26, 194; EM.I at 122.

Although the Rental Agreement does not mention the "area in [Sea Star's] terminal called the J-Lot", Emerald's seeks to create a new definition of the word "terminal". Essentially, Emerald wants to construe "receiving terminal" as "the area in [Sea Star's] terminal called the J-Lot", solely for purposes of return of equipment to Sea Star's San Juan terminal under paragraph 10 of the Rental Agreement. D.I. 212 at 9. Emerald does not propose to revise the definition of any other terminal identified in paragraph 10 of the Rental Agreement. The predicates for its effort are internal communications between Mr. Rooks and other Sea Star personnel, not communications between Sea Star and Emerald representatives.

Understandably, Emerald would rather argue than shoulder its burden to prove the parties understood Sea Star waived the express requirement in paragraph 15(a) of the Rental Agreement that any amendment or modification be in writing. *Freeman*, 106 A.2d at 55; *see Taylor*, 282 A.2d at 93. Emerald introduced no evidence of Sea Star's intention to relinquish a known right or Sea Star's acts "that were inconsistent with an intention to insist upon enforcing such provision[]." *BarGale Indus.*, 343 A.2d at 533. *Accord, Canaras*, 322 A.2d at 872. Internal departmental policies are irrelevant parol evidence, inadmissible in regard to modification of the Rental Agreement.

I.   **Sea Star Is Entitled to Declarations of Legal Rights and Obligations under the Rental Agreement and the Sale Order**

Emerald's unsupported protests notwithstanding, Sea Star proved the existence of a substantial controversy.  Given the substantial sums in dispute and the parties' contradictory contractual interpretations, the controversy is indeed "live" and ripe for declaratory decision. Emerald's allegations and accusations in opposition to Sea Star's specific, enumerated requests for declarations of legal rights and obligations under the Rental Agreement and the Sale Order remain uncluttered by factual references or legal citations:

1.   **Sea Star has no responsibility or liability for Emerald equipment subject to previous agreements between Emerald and NPR that Sea Star did not use pursuant to the Rental Agreement after closing of the asset purchase.**

Irrespective of Emerald's current disclaimers, the documentary evidence and testimony speak for themselves regarding Lorraine Robins' procedures in preparing Emerald's spreadsheet invoices. *See* D.I. 212 at 14.  Ms. Robins did not even read the entire Rental Agreement, and she was unaware of the Sale Order.  To prepare spreadsheet "invoices" for purposes of Emerald's claims *sub judice*, Ms. Robins did not differentiate between Emerald equipment in use and in storage as of April 29,

2002. "When I billed, I didn't bill anything to Sea Star unless I had a movement of some kind that

they had touched it." ROB at 63. For example, Emerald charges include *per diem* rent, and in some

cases, stipulated loss values for equipment not used by Sea Star but stored in terminals or depots and

listed in inventories that Sea Star periodically provided. Billings also cover Emerald equipment that

depots and truckers having claims against NPR retained and refused to release but that she had

"released", as well as equipment involved in Shipments in Transit. *See* D.I. 208 at 20, 21-26, 28-29.

Given her *modus operandi*, Ms. Robins' allegation that she "had something that had Sea Star

touching the container and using the container" [ROB 118] in response to a single question strains

credulity. Even if she truly believed that "touch", "movement", and "use" are synonymous, Ms.

Robins would have been wrong. See also D.I. 208 at 21-22.

> **2.    Emerald's delivery of each piece of Emerald equipment subject to the Rental Agreement must have been effected and evidenced by an equipment interchange receipt – a TIR – signed and dated on or after April 29, 2002.**

Emerald's Answering Brief includes no substantiating references to the Rental Agreement

or any other part of the record for Emerald's notions that "it is clear from the language of the Rental

Agreement and circumstances of the parties at the time of execution of the Rental Agreement that

providing a signed equipment interchange receipt to evidence 'delivery' of Emerald's equipment was

the contractual responsibility of Sea Star" and that "Sea Star had a contractual duty to provide a

signed TIR to Emerald when it commenced its use of Emerald's equipment to conclusively

document the start of the rental period." D.I. 212 at 15. Likewise, Emerald does not provide any

references to support its other conclusory factual allegations. Characteristically, Emerald reveals no

legal or factual support for its assertion that "[t]o the extent Sea Star failed to prepare and provide

to Emerald a signed equipment interchange receipt a -- TIR-- for each piece of Emerald Equipment

it took delivery of and used in the course of business, Sea Star breached paragraph 1 of the Rental

Agreement." D.I. 212 at 16. The obvious reason for all these omissions must be that none exists.

In any event, Emerald has failed to comply with the Court's directive. The Court already has dealt

with the complaint by Emerald's attorney as to the wording of Sea Star's requested declaration. Tr.

2:59. *See also* D.I. 208 at 22-23.

> **3.      Redelivery of equipment subject to the Rental Agreement may have been at Greenwich terminal, Philadelphia, Pennsylvania; Sea Star terminal, Puerto Nuevo, San Juan, Puerto Rico; Greenwich terminal, Port of Jacksonville, Florida; or any other location as to which the parties have agreed in writing.**

*See* paragraph 4 below.

> **4.      Redelivery of Emerald equipment subject to the Rental Agreement may have been effected and evidenced by a TIR signed by the Sea Star terminal, Puerto Nuevo, San Juan, Puerto Rico, a designated receiving terminal, at which time Emerald was required to off-hire the equipment.**

Based on an effort to introduce and rely on inadmissible parol evidence, Emerald's response

must be stricken. *See* pages 8-10 *supra*. *See also* D.I. 208 at 24-25.

> **5.      Sea Star has no responsibility or liability to compensate for use of Emerald equipment prior to or during Shipments in Transit.**

*See* D.I. 208 at 5-6, 25-26.

> **6.      The Sale Order imposes no obligation with respect to any lessor's equipment that on April 27, 2002, was not located on leased property acquired under the Asset Purchase Agreement; that was not involved in shipment to a "final port of destination" where Sea Star leased premises acquired under the Asset Purchase Agreement and Sale Order; that was returned to port or inland facilities by third parties, such as consignees, which had received shipments at final destinations outside ports.**

Emerald's contention that the requested declaration should be denied because other lessors

"are not before this Court" is incomprehensible. D.I. 212 at 20.  No other lessor has implemented

the Robins "touch" theory for equipment billing or sued Sea Star. *See* pages 10-11 *supra*. *See also*

D.I. 208 at 5-8, 13, 21-22.

> **7.     Sea Star has had no duty to "redeliver" or pay compensation for Emerald equipment that Sea Star "touched" but did not use, including but not limited to Emerald equipment which was involved in Shipments in Transit or held by third parties, such as E.T. Heinsen and inland depots, and was returned to port terminals or inland depots where Sea Star leased premises; Emerald equipment which entered NPR terminals prior to closing of the asset purchase; and Emerald equipment for which delivery under the Rental Agreement is not evidenced by a TIR, signed and dated by Sea Star for use on or after April 29, 2002.**

Emerald's response reveals a lack of recognition, whether negligent or intentional, that

"touch" and "movement" are not synonymous with "use", either in common English language or the

Rental Agreement, and do not equate with "use" in the industry. *See* pages 10-11 *supra*. *See also*

D.I. 208 at 22-25.

> **8.     Sea Star has had no duty to "redeliver" or pay for Emerald equipment involved in Shipments in Transit that third parties, such as consignees, did not return to port terminals or inland depots where Sea Star leased premises.  Any Emerald recourse would be to the NPR bankruptcy estate.**

Emerald's speculation is immaterial.  Further, its baseless accusation that "Sea Star avoided

paying NPR" contravenes the evidence and must be stricken. *E.g.,* Tr. 3:6-20, 29-35, 40-41; PB at

70; Tr.Ex. *2; see* pages 8-10 *supra*. *See also* D.I. 208 at 5-8, 13, 23-25.

> **9.     For Emerald equipment involved in Shipments in Transit, any Sea Star on-hire obligation would begin when Sea Star signed a TIR for its use after completion of a Shipment in Transit.**

Emerald's response clearly contradicts the Rental Agreement, particularly paragraph 1. *See*

pages 10-11 *supra*. *See also* D.I. 208 at 5-6, 21-23, 25-27.

10.    Any Sea Star on-hire obligation for Emerald equipment in the possession of third parties, such as depots, shipper pools, shipper warehouses, or former NPR agents or stevedores, as of and after closing would begin when Sea Star signed a TIR removing such Emerald equipment from a depot or shipper pool or acknowledging receipt from a customer or delivering carrier for Sea Star's use.  Otherwise, Sea Star would have no responsibility for such equipment.

Again, Emerald's unsubstantiated response is "simply" non-responsive.  *See* pages 10-12

*supra.  See also* D.I. 208 at 28-29.  In the procedural and factual context of this case, any attempt to

divine Emerald's unexplained reference to "and/or common law duties" would be pure conjecture.

11.    **Sea Star has no obligation to Emerald for *per diem* rent.**

Emerald does not deny that its execution of the Rental Agreement required authorization by

MBC, Emerald's secured lender, or that the Rental Agreement is "subject and subordinate to any

lease or security interest in favor of a third-party lessor or lender to Lessor."  Tr. 1:190; EM.I at 106;

HSR at 115-16; Tr.Ex. 17 ¶ 4(b).  Further, Emerald does not dispute the pertinence of Indemnity

Agreement and the Assignment Agreement.  Tr.Ex. 19; Tr.Ex. 42; D.I. 137 ¶ 3(p).  *See Anderson*

*Adventures, LLC v. Sam & Murphy,* Inc., 932 A.2d 1186, 1195 (Md. Ct. Spec. App. 2007).  The

Court must construe the Rental Agreement in harmony with the Indemnity Agreement and the

Assignment Agreement.  *Truck Ins. Exchange,* 418 A.2d at 1191.

Entitled "No Competing Claim Against Sea Star," paragraph 6.3 states: "ASSIGNEE

[Storage] agrees not to assert any entitlement to compensation from Sea Star for use of EMERALD

EQUIPMENT during any period for which Sea Star has paid ASSIGNOR [MBC] pursuant to the

Sea Star INDEMNITY [MBC-Sea Star Indemnity Agreement].  Tr.Ex. 42 ¶ 6.3.  Storage received

no other assignments from MBC.

In its Answering Brief, Emerald has not challenged and does not controvert the evidence that

Sea Star paid MBC for use of Emerald equipment during the April 2002-December 2003 period pursuant to the Indemnity Agreement. Tr.Exs. 19, 61, 65-D. *See also* D.I. 208 at 12. Self-billing reports, recounting the mutual dealings between Sea Star and MBC, continued after termination of the Rental Agreement. In the Assignment Agreement, MBC has not merely omitted an assignment to Storage; paragraph 6.3 expressly prohibits assertion of any entitlement to compensation for use of Emerald equipment "during any period" for which Sea Star has paid MBC pursuant to the Sea Star Indemnity Agreement — *i.e.,* during the entire April 2002-December 2003 period. Ms. Robins' signature conclusively evidences Storage's stated agreement to the proscription. ST at 17. The undefined, indeterminate "carveout" granted Emerald by Storage cannot encompass a greater claim – or interest – than that specifically assigned to Storage by MBC. *See, e.g., Perpetual Financial Corp. v. United States,* 61 Fed. Cl. 126, 143 (2004) (incidental, contingent, remote interest).

How Emerald finds that "Sea Star astonishingly claims" [D.I. 212 at 24] that paragraph 6.3 of the Assignment Agreement means what it clearly states defies comprehension, as well as judicial decisions cited in Emerald's Answering Brief. *See* D.I. 212 at 11. Emerald cannot evade the effect of paragraph 6.3's prohibition by its unilateral interpretation of "[a]ny fair and reasonable reading of the Indemnity Agreement," to which it has never been a party. D.I. 212 at 24-25. Indeed, Emerald points to no language in paragraph 6.3 substantiating its contention that paragraph 6.3 "simply reiterates the concept of 'no double payment' contained in the Indemnity Agreement ...." D.I. 212 at 25-26. To accept Emerald's assertion would require deletion of the phrase "during any period" from paragraph 6.3 of the Assignment Agreement, eliminating the stated time provision in the paragraph. Such a construction contravenes the established precept that, "if reasonably possible, effect must be given to each clause (, phrase and word) so that a court will not find an interpretation

which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Dahl v. Brunswick Corp.,* 356 A.2d 221, 226 (Md. App. 1976). Reading the phrase "during any period" out of the Assignment Agreement would be manifest error. *Sagner v. Glenangus Farms,* 198 A.2d 277, 283 (Md. App. 1964).

To buttress its position, Emerald relies on two letters from "MBC" and "MBC's counsel". D.I. 212 at 25. During trial Emerald did not call the authors or any other qualified witness to testify and attempt to introduce the letters into evidence. Both letters are not only hearsay but also self-serving "lawyer talk". Furthermore, the letters evidently concern MBC indemnity obligations in connection with the Indemnity Agreement, not paragraph 6.3 of the Assignment Agreement. In fact, the letters predate the Assignment Agreement and are parol evidence, offered to explain or vary paragraph 6.3. Thus, the letters are inadmissible under Fed. R. Evid. 401, 402, 801, and 802. *Elgabri v. Lekas,* 964 F.2d 1255, 1261 (1st Cir. 1992); *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 586, 596-97 (3d Cir. 1984); *Interamerican Refining Corp. v. Texaco Maracaibo, Inc.,* 307 F. Supp. 1291, 1300 (D. Del. 1970); *see General Motors Acceptance Corp.,* 492 A.2d at 1310-11 & n.3; *Truck Ins. Exchange,* 418 A.2d at 1190; *Canaras,* 322 A.2d at 872. Therefore, Sea Star's objections should be sustained and the letters, Trial Exhibits 78 and 79, together with the reading of their contents, should not be admitted into evidence nor considered by the Court. Tr. 1:103-05, 112. *See also* D.I. 208 at 29-31.

> **12.    Sea Star has no obligation for Emerald Stipulated Loss Value claims unless a signed TIR discloses Sea Star's on-hire of such Emerald equipment under the Rental Agreement on or after April 29, 2002; and there is no evidence of redelivery under the Rental Agreement.**

*See* pages 8-12 *supra. See also* D.I. 208 at 6-7, 11-13, 20-27.

      13.    **Sea Star has no obligation for Emerald's adjusted Stipulated Loss Value claims pertaining to Emerald equipment recovered and sold. Emerald admittedly did not give Sea Star notice required by paragraph 13(b)(iii) of the Rental Agreement prior to sales of Emerald equipment for which Emerald alleges Sea Star is responsible.**

While "Emerald is not entitled to this requested declaration" [D.I. 212 at 27], Sea Star is. Before selling equipment that Emerald or Storage recovered, Emerald admittedly never delivered to Sea Star the notices required by paragraph 13(b)(iii) of the Rental Agreement yet asserts "Sea Star was not entitled to notice of the sale of any such equipment pursuant to the Rental Agreement." D.I. 212 at 28; Tr. 2:7-8. Indisputably, the sales did not comport with the Rental Agreement or Maryland law.

Paragraph 13(b)(iii) of the Rental Agreement clearly required Emerald to give Sea Star thirty (30) days' notice prior to any public or private sale of such equipment. Governing Maryland law, as well as the Rental Agreement, proscribes Emerald's adjusted stipulated loss value claims relating to Emerald equipment on-hired by Sea Star that Storage and Emerald recovered and sold without the prior notice mandated by paragraph 13(b)(iii). That Emerald allegedly "mitigated its damages" by selling recovered equipment and charging Sea Star an "adjusted stipulated loss value" [D.I. 212 at 28] is not a valid excuse or defense. *See also* D.I. 208 at 31-32.

Again attempting to bolster its position, Emerald relies on three letters written by its own attorney. D.I. 212 at 27. Although the author was present during trial, Emerald chose not to call him to testify and attempt to introduce the letters into evidence. The letters are not only hearsay and incomplete but also self-serving lawyer posturing during a dispute. Furthermore, such letters are irrelevant to Emerald's failures to deliver the pre-sale notices mandated by paragraph 13(b)(iii). Thus, the letters are inadmissible under Fed. R. Evid. 106, 401, 402, 801, and 802. *Elgabri,* 964 F.2d

at 1261; *In re Fine Paper Antitrust Litigation,*751 F.2d at 586; *Interamerican Refining Corp.,* 307 F. Supp. at 1300. Therefore, Sea Star's objections should be sustained and the letters, Trial Exhibits 84, 85, and 86, should not be admitted into evidence nor considered by the Court. Tr. 1:102, 112.

II.     **Emerald Is Not a Real Party in Interest and Lacks Standing to Prosecute Claims Against Sea Star**

A.     <u>Equipment Rental Agreement</u>

The threshold issue as to Emerald's claims must be whether Emerald is a real party in interest. That Emerald is "a party to the contract" [D.I. 212 at 28] — the Rental Agreement — cannot explain away lack of a justiciable interest, much less validate such an interest. *See* <u>D.I.</u> 208 at 29-31. Not only were the Rental Agreement and the Indemnity Agreement for the benefit of MBC, in paragraph 6.3 of the Assignment Agreement, MBC expressly prohibits Storage from asserting any entitlement to compensation for use of Emerald equipment "during any period" for which Sea Star has paid MBC pursuant to the Sea Star Indemnity Agreement.

Manifestly, Emerald does not have the requisite actual, real and justiciable interest susceptible of protection through litigation. As state earlier, Emerald serves as a stalking horse, attempting to assert alleged legal rights and interests of third parties — *e.g,,* MBC and Storage. Its undefined, indeterminate "carveout", granted by Storage for purposes of initiating this litigation, appears illusory. Tr.Ex. 49. Therefore, Emerald is not a real party in interest. D.I 208 at 13-14, 29-31, 34-35.

B.     <u>Loan Sale & Assignment Agreement</u>

If Sea Star has "unreasonably construed" the clear and unambiguous wording of the Indemnity Agreement or the Assignment Agreement and if its "arguments lack any reasonable basis,

are unwarranted by existing law, and, under the circumstances, presented here, wholly frivolous" [D.I 212 at 29-30], Emerald should be able to furnish a myriad of record references and judicial precedents sustaining its assertions. Instead, Emerald's Answering Brief is strangely devoid of legal or factual citations to sustain its position. Sea Star reiterates that, even assuming *arguendo* Emerald could demonstrate a legal right to maintain any claims, Emerald cannot be a real party in interest to maintain *per diem* rental claims against Sea Star. *See* Tr.Ex. 17 ¶ 4(b); Tr.Ex. 42 ¶ 6.3.

Under the Indemnity Agreement, MBC, not Emerald, was entitled to receive — and did receive — the compensation for use of Emerald equipment during the period covered by the Rental Agreement and Sea Star self-billing reports. Tr.Exs. 8, 17; EM.I at 91-92; EM.II at 42; D.I. 158 at 15. Sea Star and MBC exchanged payments and credits throughout the term of the Rental Agreement. Self-billing reports reflecting their mutual dealings continued through December 2003. Emerald was not entitled to compensation from Sea Star for use of the Emerald equipment pursuant to the Rental Agreement and "never got a dime." Tr. 1:198. *See also* D.I. 208 13-15 *supra*.

No undefined, indeterminate "carveout" granted Emerald by Storage can encompass a greater claim – or interest – than that specifically assigned to Storage by MBC. Emerald, like Storage, is bound by the Assignment Agreement and may not disregard the explicit contractual limitations and prohibitions. Thus, contractually and legally, Emerald lacks the requisite "personal stake in the outcome" of any controversy to sue Sea Star with respect to any matter covered by paragraph 6.3, including a claim for *per diem* rent. *See also* D.I. 208 at 34-35.

### III.    Emerald Is Not Entitled to Reserve  Objections Made at Trial and Has Waived Such Objections

The Court's instructions are clear: "[A]ny matter relied on in the second portion of the

presentation where there has been an objection lodged in the transcript, you should state the objection and support for the objection. And then of course, in the alternate briefing, any response to the objection can be made." Tr. 2:57. Emerald has not been entitled to decide whether it would comply with the unambiguous terms stated by the Court or would "incorporate[] herein the objections as stated in the record, so as not to waive those objections." D.I. 212 at 30. Since the option purportedly exercised was non-existent, Emerald has waived all objections.

## CONCLUSION

In its Answering Brief, Emerald does not rely on competent, admissible evidence to rebut the claims in Sea Star's Complaint. Clearly, Emerald has shown no right to modify, augment, and redefine specific written terms which express and define the letter and spirit of the Rental Agreement and the Sale Order. To the contrary, the Answering Brief manifests Emerald's efforts to remove restraints imposed by the clear and unambiguous language of the Rental Agreement and the Sale Order, creating conditions "when a word means exactly what [Emerald] chooses it to mean, neither more nor less." Therefore, Sea Star requests the Court: (a) declare the parties' rights and obligations in accordance with the Rental Agreement and the Sale Order, as outlined in paragraphs 1 through 13 above; (b) declare Emerald is not a real party in interest; (c) declare the absolute proscription in the Assignment Agreement binds Emerald and precludes asserting that Emerald is a legitimate real party in interest with respect to *per diem* rental claims against Sea Star, assuming Emerald has a legal right to maintain any claims; (d) sustain Sea Star's objections and rule inadmissible Trial Exhibits 78, 79, 84, 85, and 86, together with related testimony as to their contents; and (e) hold that Emerald has waived objections to all testimony and exhibits introduced by Sea Star for non-compliance with the Court's directive.

September 2, 2008

SMITH, KATZENSTEIN & FURLOW LLP

/s/ Kathleen M. Miller
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone:  302-652-8400
Facsimile: 302-652-8405
E-mail: Kmiller@skfdelaware.com

*Attorneys for Sea Star Line, LLC*

OF COUNSEL:
Timothy J. Armstrong
ARMSTRONG & MEJER, P.A.
2222 Ponce de Leon Boulevard
Penthouse Suite
Miami, FL 33134
Telephone: 305-444-3355