## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SEA STAR LINE, LLC,                     :
                                        :
      Plaintiff/                      :
      Counterclaim Defendant,         :
                                        :
    v.                              :   Civ. No. 05-245-JJF-LPS
                                        :
EMERALD EQUIPMENT LEASING, INC.,        :
                                        :
                                        :
      Defendant/                      :
      Counterclaim Plaintiff.         :

## REPORT AND RECOMMENDATION REGARDING COUNTERCLAIM DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE AMENDED COUNTERCLAIM

## I.    INTRODUCTION

Pending before the Court is the Motion for Partial Summary Judgment on the Amended

Counterclaim filed by Counterclaim Defendant/Plaintiff Sea Star Line, LLC ("Sea Star") (D.I.

209) (the "Summary Judgment Motion"). The Summary Judgment Motion has been fully briefed

by both Sea Star and Counterclaim Plaintiff/Defendant Emerald Equipment Leasing, Inc.

("Emerald"). This motion is within the scope of the order of reference from Judge Farnan to the

undersigned magistrate judge. *See* Nov. 2, 2007 Order (D.I. 142) (referring Emerald's Amended

Counterclaim to magistrate judge to "regulate and resolve all pretrial matters, up to and including

the pretrial conference, subject to 28 U.S.C. § 636(b)(1)(B) and any further Order of the Court").

For the reasons explained below, I recommend that Sea Star's Summary Judgment Motion be

denied in all respects.[1]

---

[1]Pursuant to the November 2, 2007 referral order (D.I. 142), as well as 28 U.S.C. § 636, my authority with respect to the case-dispositive motion for summary judgment is limited to issuing a Report and Recommendation.

## II.     BACKGROUND

Much has transpired in this case.  In reviewing the pending motion, the Court does not

write on a blank slate.  Further relevant background has been previously set forth in: (i) Judge

Farnan's January 26, 2006 Memorandum Opinion (D.I. 75) and Order (D.I. 76); (ii) Judge

Farnan's April 13, 2006 Memorandum Opinion (D.I. 86) and Order (D.I. 87); (iii) Judge

Farnan's November 2, 2007 referral Order (D.I. 142); (iv) the transcript of the hearing I

conducted in this matter on December 20, 2007 (D.I. 158 at 4-40); (v) Judge Farnan's February

21, 2008 Memorandum Order (D.I. 176); and (vi) Judge Farnan's September 19, 2008 Opinion

(D.I. 220) ("Opinion") and Order (D.I. 221).

## III.     STANDARD OF REVIEW

A grant of summary judgment is appropriate only where "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

n.10 (1986).  "When considering whether there exist genuine issues of material fact, the court is

required to examine the evidence of record in the light most favorable to the party opposing

summary judgment, and resolve all reasonable inferences in that party's favor."  *Wishkin v.

Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The "mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury

2

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).   Moreover, "[i]t is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49 (internal quotation marks omitted).

## IV.     DISCUSSION

### A.     Standing

Sea Star first argues that Emerald is not a real party in interest and lacks standing; that is, Emerald lacks the requisite "personal stake in the outcome" of any controversy to prosecute claims against Sea Star.  (D.I. 210 at 17)  Specifically, Sea Star contends that "[s]erving as a stalking horse, Emerald actually is attempting to assert alleged legal rights and interests of third parties, namely MBC [its secured lender] and Storage [its secured creditor]."  (*Id.*)  According to Sea Star, "Emerald's role has been to assist MBC and Storage in collections and liquidation of equipment; its dealings with Sea Star has been 'on behalf of the creditors.'  Storage . . . expects to collect any funds, which MBC anticipates sharing."  (*Id.*)  Moreover, according to Sea Star, "[e]ven if Emerald could function as a real party in interest as to certain claims under the Rental Agreement, paragraph 6.3 of the Assignment Agreement withholds assignment to - and

proscribes assertion by - Storage of any entitlement to compensation from Sea Star for use of Emerald equipment during any period in which Sea Star paid MBC. Emerald's undefined, indeterminate derivative 'carveout' rights can be no greater than Storage's rights under the Assignment Agreement." (*Id.*) Consequently, Sea Star, continues, "Emerald is prohibited from asserting any claim for *per diem* rental of Emerald equipment." (*Id.*)

In response, Emerald points out that the Court has already ruled on these issues of "real party in interest" and "standing." (D.I. 222 at 1 n.1, 16 n.6) Subsequent to Sea Star's filing its Summary Judgment Motion, but prior to completion of briefing on it, Judge Farnan resolved these issues in connection with post-trial briefing following the July, 2008 trial on Sea Star's declaratory judgment complaint. (D.I. 220 and 221) Therefore, Emerald insists, these issues are "no longer extant and [are] now moot." (D.I. 222 at 1 n.1, 16 n.6)[2]

In his September 19, 2008 Opinion, Judge Farnan held:

> [T]he Court rejects Sea Star's argument that Emerald lacks standing to pursue its Amended Counterclaim against Sea Star on the basis of either Fed. R. Civ. P. 17(a) or constitutional standing requirements, and therefore, the Court likewise concludes that Sea Star is also not entitled to a declaratory judgment that Sea Star has no obligation to Emerald for per diem rent under the Rental Agreement to the extent that declaration implicates the Rule 17(a) and standing issues.

(D.I. 220 at 13)

Elsewhere in his Opinion, Judge Farnan added:

> In the context of adjudicating Sea Star's standing arguments, the Court has concluded that Sea Star is not entitled to a declaratory judgment that it has no

---

[2]Sea Star "understands that some of the issues raised in its opening brief in support of its Motion for Summary Judgment (filed on August 14, 2008) were subsequently decided by the Court in its September 19, 2008 Opinion." (D.I. 224 at 1 n.2) Nonetheless, Sea Star continued in its reply brief to argue all of the issues it had raised in its opening brief "so as to preserve its position." (*Id.*)

obligation to Emerald for per diem rent under the Rental Agreement to the extent that requested declaration implicates Fed. R. Civ. P. 17(a) or constitutional standing issues.  In addition, the Court agrees with Emerald that the Assignment and Indemnification Agreements between Sea Star and non-parties are not relevant to this dispute, and should not be considered in the context of adjudicating the parties' rights and responsibilities under the Rental Agreement. Indeed, the express terms of the provisions to which Sea Star directs the Court do not encompass claims by Emerald for equipment Sea Star used, but did not pay anyone, including MBC.  Section 6.3 of the Assignment Agreement pertains only to claims by Storage, not Emerald, and precludes Storage from "assert[ing] any entitlement to compensation from Sea Star for use of Emerald Equipment during any period for which Sea Star has paid ASSIGNOR [MBC] pursuant to the Sea Star INDEMNITY."  (Exh. 42.)  The Sea Star Indemnity also refers to the obligations of MBC vis-a-vis Sea Star, and does not preclude Emerald from asserting claims for Sea Star's use of equipment, which have been unpaid to anyone.  Accordingly, the Court declines to issue Sea Star's requested declaration, because it does not fairly and accurately characterize Sea Star's responsibility for Emerald equipment it used, but has not paid any entity for such use.

(D.I. 220 at 13 n.2, 31-32)

Because I find that Judge Farnan has already fully addressed and determined Sea Star's standing issues, I recommend that the Summary Judgment Motion be denied with respect to these issues.

### B.      Tort Claims - Independent Legal Duty/Economic Loss Doctrine

Sea Star next argues that, as a matter of law, Emerald has not asserted and cannot prove tort claims against Sea Star.  (D.I. 210 at 17, 23-26; D.I. 224 at 10-13)  Sea Star contends that "the economic-loss rule precludes Emerald's tort claims, which are interwoven with its breach-of-contract claim.  None of the alleged torts is separate from and independent of the alleged breach of contract."  (D.I. 210 at 17)

Sea Star advanced the same argument in a Motion to Dismiss Emerald's Counterclaim. (D.I. 57 at 13-15)  By that earlier motion, Sea Star sought dismissal of Emerald's tort claims

5

(fraud, constructive fraud, fraudulent concealment, and negligent misrepresentation/breach of

fiduciary duty) on the grounds that these claims could not survive under the independent legal

duty/economic loss doctrine because Emerald's original Counterclaim incorporated the breach-

of-contract paragraphs into each tort count. (*Id.*) This is the same "interwoven" theory currently

posited. (*Id.*)

In his January 26, 2006 Opinion addressing Sea Star's motion to dismiss, Judge Farnan

stated:

> Reviewing the circumstances alleged in this case in light of the case law
> cited by the parties, the Court concludes that dismissal of Emerald's fraud claims
> is not appropriate at this juncture. As Emerald points out, the Equipment Rental
> Agreement makes no provisions for self-billing. Rather, under the Equipment
> Rental Agreement, the lease term begins on the date when the equipment is
> delivered to the Lessee and ends when the equipment is returned pursuant to
> section 10. Emerald has alleged, however, that the equipment was already in
> place at the time Sea Star purchased the assets of NPR, Inc. Emerald has further
> alleged that Sea Star's usage was determined by self-billing and that Emerald
> relied on Sea Star to accurately report its usage. Emerald has also alleged that Sea
> Star intentionally under-reported its usage of Emerald equipment. *At this*
> *juncture, the Court concludes that Emerald has pled sufficient facts to establish*
> *distinct torts arising independently of the contractual obligations such that the*
> *claims are not definitively barred by the economic loss doctrine.* Accordingly, the
> Court will deny Sea Star's Motion to Dismiss Emerald's tort claims on this
> ground.

(D.I. 75 at 26) (emphasis added)

Subsequently, in its Motion for Partial Dismissal of the Amended Counterclaim and for

an Extension of Time to Respond to the Remainder of the Complaint ("Motion for Partial

Dismissal"), Sea Star again sought to dismiss Emerald's tort claim claims. (D.I. 80, 81 at 6-9)

While again attesting to its steadfast belief that Emerald's tort claims could not "survive under

the economic loss doctrine," Sea Star acknowledged that "the Court has already ruled on Sea

Star's economic loss doctrine argument and [therefore] Sea Star w[ould] not re-assert it here."

(D.I. 81 at 6 n.2)  Thereafter, Judge Farnan denied Sea Star's Motion for Partial Dismissal.  (D.I.

86, 87).

As Emerald has observed in its response to the Summary Judgment Motion, Sea Star "has

offered no new facts or arguments" in connection with its economic loss doctrine argument.

(D.I. 222 at 20-26)  Consequently, I agree with Emerald that "this Court's prior ruling on this

issue should control as the law of the case."  (*Id*. at 21)  I therefore recommend that the Summary

Judgment Motion be denied with respect to these issues.

### C.    Tort Claims - Fraud

Further to Emerald's tort claims, Sea Star argues that "[e]ven if Emerald could assert tort

claims, the *undisputed material facts confirm* that Emerald began to contest Sea Star self-billing

reports during summer 2002 and cannot prove [the essential fraud element of] reliance."  (D.I.

210 at 17-18) (emphasis added)  Emerald disagrees, contending that the record shows that

Emerald can demonstrate reliance.  (D.I. 210 at 17-18, 26-28; D.I. 222 at 26-29; D.I. 224 at 1, 13-

15)  In particular, Emerald insists that it:

> did not have the manpower or ability to monitor Sea Star's use of the Emerald
> Equipment since at the inception of the usage agreement, that equipment was
> scattered all over the country and in Puerto Rico and the Dominican Republic.
> The record is clear that Emerald had to and did rely on Sea Star's self billing
> reports until it became clear that those reports did not just contain some errors, but
> were, in fact fraudulent.

(D.I. 222 at 29)

I agree with Emerald.  *See, e.g.*, D.I. 222 at 26-29 (excerpting testimony of Tom Holt, Sr.,

President of Emerald, with respect to Emerald's purported repeated reliance on Sea Star's self-

billing reports). With genuine issues of material fact existing on the element of reliance, I recommend that the Summary Judgment Motion be denied in this regard.

## D. "Adjusted Stipulated Loss Value"

Sea Star also argues that the Rental Agreement and Maryland law bar Emerald's "Adjusted Stipulated Loss Value" claims. (D.I. 210 at 18) According to Sea Star, Emerald never delivered to Sea Star the notices required by paragraph 13(b)(iii) of the Rental Agreement before selling equipment that Emerald or Storage recovered. (D.I. 210 at 18, 28-29; D.I. 224 at 15) Sea Star further contends that governing Maryland law proscribes Emerald's Adjusted Stipulated Loss Value claims relating to such equipment. (*Id.*)

In response, Emerald asserts that the Rental Agreement does not bar its Adjusted Stipulated Loss Value claims. (D.I. 222 at 29-30) Emerald explains, too, that the Maryland law cited by Sea Star as purportedly barring such claims is irrelevant because it pertains only to secured transactions under the U.C.C. Just as importantly, these issues, too, have already been raised and briefed in connection with the July, 2008 trial on Sea Star's complaint. (*Id.*) Emerald believes Judge Farnan's September 19, 2008 Opinion resolved the challenge to Emerald's "adjusted stipulated loss value" claims. (*Id.* at 1 n.1) Again, I agree with Emerald.

In connection with the recent bench trial, Sea Star requested that the Court declare that "Sea Star has no obligation for Emerald's adjusted Stipulated Loss Value claims pertaining to Emerald equipment recovered and sold. Emerald admittedly did not give Sea Star notice required by paragraph 13(b)(iii) of the Rental Agreement prior to sales of Emerald equipment for which Emerald alleges Sea Star is responsible." (D.I. 220 at 33) In his post-trial Opinion, Judge Farnan addressed this very same issue:

8

Sea Star contends that it is entitled to this requested declaration based on paragraph 13(b)(iii) of the Rental Agreement.  Sea Star contends that Emerald never provided notice to Sea Star that it was going to sell equipment it considered "lost" under the provisions of the Rental Agreement, and therefore, Emerald is not entitled to recover on claims for equipment that Emerald recovered, but sold without notice to Sea Star.

. . . .

. . . In pertinent part, paragraph 13 of the Rental Agreement . . . provides:

> 13.     Events of Default.
>
> * * *
>
> (b)     Upon the occurrence of any default by Lessee [Sea Star] under this Agreement, Lessor [Emerald] shall (except to extent otherwise required by law) be entitled to:
>
> * * *
>
> (iii)Elect to sell any or all Equipment after giving thirty (30) days' notice to Lessee at one or more public or private sales and recover the sum of the Stipulated Loss Values of such Equipment, all rent owed through the rent payment immediately preceding the date of such notice, all costs and expenses incurred in searching for, taking, removing, keeping, storing, repairing and restoring and selling such Equipment, all other amounts owed by Lessee under this Agreement, whether as additional rent, indemnification, or otherwise, and all costs and expenses, including reasonable legal fees, incurred by Lessor as a result of Lessee's default under this Agreement after deducting all amounts received by Lessor in connection with such public or private sales. . . .

(Exh. 17 at ¶13(b)(iii).)

9

Reading the applicable provisions of the Rental Agreement, in particular paragraph 13(b) (iii), the Court concludes that Emerald was required to give Sea Star notice before any public or private sale of the equipment, and based on the testimony of Arthur Davis at trial, it appears that Emerald did not give Sea Star the required notice. However, a basic principle of contract law is that not every breach of duty by one party to a contract discharges the duty of performance by the other. John Edward Murray, Jr., Murray on Contracts § 107 at 678 (4th ed. 2001). Only breaches which are material may excuse the other's performance. Id.; Final Analysis Communication Services. Inc. v. General Dynamics Corp., 253 Fed. Appx. 307, 313, 2007 WL 3230733, *5 (4th Cir. 2007) (applying Maryland law and noting that "[i]t is well established that a material breach by one party to a contract excuses the other party from performance"). *At this juncture, the parties have not briefed this issue, and in the Court's view, it is an issue best left for resolution in the context of adjudicating Emerald's Amended Counterclaim, because it may impact the amount of damages to which Emerald is entitled.* In light of the foregoing, the Court cannot conclude that Sea Star's requested declaration is an accurate statement of the parties' rights and obligations under the Rental Agreement, and therefore, the Court declines to issue Sea Star's thirteenth requested declaration.

(D.I. 220 at 33-36) (emphasis added)

In the present circumstances, I conclude that Judge Farnan's decision that the final resolution of the adjusted stipulated loss issue is "best left for resolution in the context of adjudicating Emerald's Amended Counterclaim" requires that this issue be resolved by trial. Whether Emerald's apparent failure to give Sea Star notice was a material breach of the Rental Agreement is not, in this case, an issue I can resolve on a summary judgment motion. The materiality, if any, of Emerald's (apparent) failure to provide notice remains, even after Judge Farnan's Opinion, an issue the parties have not briefed. Thus, I recommend denial of the Summary Judgment Motion as it relates to the adjusted stipulated loss values.

## E.     Punitive Damage Claims

Sea Star further argues that the Rental Agreement and Maryland law bar Emerald's claims for punitive damages.  (D.I. 210 at 18, 29; D.I. 224 at 16)  It relies on paragraph 11(b) of the Rental Agreement which provides that "[u]nder no circumstances shall either party be liable to the other party for exemplary damages."  (D.I. 194 at A-138)

Emerald responds that its claims seeking punitive damages are not related to breach of the Rental Agreement.  (D.I. 222 at 30-31)  Rather, Emerald seeks punitive damages only in connection with its tort causes of action.  (*Id.*)  Emerald further states that the Maryland law cited by Sea Star applies only to breach of contract claims, making it inapplicable to the punitive damage claims here.  (*Id.*)

Here again, Emerald is correct.  Punitive damages may be available if Emerald proves an intentional tort with bad faith.  *See e.g.*, *Biktasheva v. Red Square Sports,* Inc., 366 F. Supp. 2d 289, 295 (D. Md. 2005) ("In a tort action, a plaintiff must prove that a defendant had actual malice in order to obtain punitive damages . . . [I]n an action for fraud, the defendant's actual knowledge of falsity, coupled with his intent to deceive the plaintiff by means of the false statement, constitutes the actual malice required to support an award of punitive damages.") (internal quotation marks omitted).  Accordingly, I recommend that the Summary Judgment Motion be denied with respect to this issue.

## F.     Maryland Statute of Limitations

Finally, Sea Star argues that "the Maryland statute of limitations bars claims initially asserted in the Amended Counterclaim and in Emerald spreadsheet 'invoices' more than three years after accrual."  (D.I. 210 at 18; *see also* D.I. 210 at 30-31, D.I. 224 at 17)  Sea Star

11

complains that "Emerald has continued to create and revise 'invoices', adding new claims and

equipment, long after filing and without seeking to amend the Amended Counterclaim." (D.I.

210 at 30)  Sea Star continues: "[w]ith respect to such claims, the relation-back doctrine is

inapposite." (D.I. 210 at 18; *see also* D.I. 210 at 30-31, D.I. 224 at 17)

      However, Judge Farnan's April, 2006 Opinion denying Sea Star's Motion

for Partial Dismissal rejected these same statute of limitations arguments. (D.I. 86)  There, Judge

Farnan wrote:

> As for Sea Star's statute of limitations argument, the Court likewise concludes that
> Sea Star is not entitled to relief.  Federal Rule of Civil Procedure 15(c)(2)
> provides that:
>
>> An amendment of a pleading relates back to the date of the
>> original pleading when the claim or defense asserted in the
>> amended pleading arose out of the conduct, transaction or
>> occurrence set forth or attempted to be set forth in the original
>> pleading.
>
> In the Court's view, the claims in the Amended Counterclaim sufficiently relate
> back to the conduct set forth in the original pleading.  See, e.g., Kansa
> Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas, 20 F.3d 1362,
> 1367 (5th Cir. 1994) (recognizing that "once litigation involving a particular
> transaction has been instituted, the parties should not be protected by a statute of
> limitations from later asserted claims that arose out of the same conduct set forth
> in the original pleadings"); Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1543
> (8th Cir. 1996) (recognizing that Rule 15(c) should be liberally construed so that
> amendments relate back to the date of the original pleading if they are related to
> the general fact situation alleged in the original pleading).  Accordingly, the Court
> cannot conclude, at this juncture, that Sea Star's claims are time-barred.

(D.I. 86 at 5-6)

      It is true that Judge Farnan also stated that he would "not preclude Sea Star from raising

its statute of limitations defense during summary judgment proceedings, if it bec[ame] apparent

during discovery that some or all of Emerald's counterclaims [we]re time-barred." (*Id.* at 6 n.2)

However, as Emerald has explained, nothing has changed to warrant deviation from the Court's

previous conclusion in this matter with respect to the statute of limitations:

Emerald's counterclaim filed on April 27, 2005 (D.I. 53) sets forth various
causes of action asserting both breach of contract claims under the Rental
Agreement and various tort claims based on Sea Star's fraudulent conduct. The
amended counterclaim filed on February 15, 2006 (D.I. 79), was precipitated by
the Order in connection with Sea Star's first motion to dismiss (D.I. [56]), and
inter alia, pled with more specificity the claim asserted in support of the tort cause
of action. It did not add any new causes of action.

. . . [Sea Star's] contention apparently is that . . . each new or additional
piece of equipment which Emerald (through the protracted discovery process)
discovers Sea Star used but did not pay for or include in their self billing reports
creates a "new cause of action." Such contention is meritless. The causes of
action, breach of the Rental Agreement and fraud, have already been timely
asserted. It is not new breaches of contract or fraudulent conduct which is being
added. Rather, it is the extent of the damages for both the breach of contract
action and the fraud action, which have been and are continuously being updated
as a result of the ongoing discovery.

. . . .

[Sea Star's] contention that by adding specificity to its fraud counts in the
amended counterclaim, Emerald somehow is asserting new causes of action
implicating the statute of limitations is equally as meritless. . . . These are not
"new facts and different transactions" for which an amended pleading will not
relate back to the original pleading.

(D.I. 222 at 31-33)[3]

I do not see anything about Emerald's updated claims that would deprive Emerald of the

---

[3]*See, e.g.*, *In re Global Link Telecom Corp.,* 327 B.R. 711, 716 (Bankr. D. Del. 2005)
("To permit relation back, Rule 15 requires that the proposed amended claims arise out of the
conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.
The rationale of Rule 15(c) focuses on the notice given by the general fact situation stated in the
original pleading. Generally, an amended complaint will relate back if it merely adds a new legal
ground for relief, changes the date and location of the transaction alleged, . . . spells out the
details of the transaction originally alleged, . . . [or] merely increas[es] the ad damnum clause . . .
None of those amendments affects the quality of the notice given by the general fact situation
alleged in the original pleading.") (internal citations and quotation marks omitted).

relation back doctrine.  Rather, Emerald's ability to state claims with greater specificity as it has

obtained (with much unfortunate resistance from Sea Star) discovery is entirely proper and

predictable.  Sea Star had adequate, timely notice of Emerald's claims.  For these reasons I

conclude that the Amended Counterclaim is not time-barred and should proceed to trial.  I

therefore recommend that the Summary Judgment Motion be denied as to this issue.


**V.      RECOMMENDED DISPOSITION**

Based on the foregoing, I recommend that the Court DENY Sea Star's Summary

Judgment Motion.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within ten (10) days after being served with a copy of this Report and Recommendation.  Fed. R.

Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the

right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79

(3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on

the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.


Dated: October 29, 2008

Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE

14