IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEA STAR LINE, LLC, | : |
|     Plaintiff/<br>    Counterclaim Defendant, | : |
| v. | :    Civ. No. 05-245-JJF-LPS |
| EMERALD EQUIPMENT LEASING, INC., | : |
|     Defendant/<br>    Counterclaim Plaintiff. | : |

**MEMORANDUM ORDER REGARDING SANCTIONS**

This matter is now before me on remand from Judge Farnan's order vacating and remanding my previous ruling imposing sanctions on the attorney for Sea Star Line, LLC ("Sea Star" or "SSL"), Mr. Timothy Armstrong. As explained below, I again impose sanctions.

Background

1. On December 20, 2007, the Court held a hearing regarding discovery disputes, among them being Sea Star's objections to the request of Emerald Equipment Leasing, Inc. ("Emerald") that "SSL . . . identify its five largest trucking companies (by volume) used by SSL in the United States and the three largest trucking companies (by volume) used by SSL in Puerto Rico. As to those five largest trucking companies in the United States and the three largest in Puerto Rico, SSL should provide copies of all invoices from those trucking companies during the relevant time period." (D.I. 151 at 8; *see also* D.I. 152 at 2 (proposed order).) In describing this request, Emerald's counsel explained "my client has asked that Sea Star identify its five largest

trucking companies by volume, meaning not by the dollar amount, but by the amount of equipment moved." (D.I. 158 at 69)

2. On December 28, 2007, I granted Emerald's request and ordered that Sea Star produce: "A list identifying the five (5) largest trucking companies (by volume) used by Sea Star in the United States . . . for the period April 29, 2002 through September 30, 2002. As to those five (5) largest trucking companies . . . Sea Star shall provide copies of all invoices exchanged between Sea Star and those companies for services rendered between April 29, 2002 and September 30, 2002." (D.I. 160 at 7) ("Discovery Order").

3. On May 6, 2008, during a discovery teleconference to consider, among other things, Emerald's concerns with Sea Star's production to date, including with respect to the discovery request described above regarding Sea Star's top truckers, Mr. Armstrong, counsel for Sea Star, explained: "we provided the five largest truckers by monetary volume during that period. That's the way our records are kept." (D.I. 187 at 18)

4. On August 27, 2008, following briefing, I entered an order sanctioning Mr. Armstrong $15,000 ("Sanctions Order") (D.I. 213) for violation of the Discovery Order. In particular, I held that two actions were sanctionable:

> First, in identifying the five largest trucking companies it used, Sea Star did not rank the truckers 'by volume,' as my order required, but instead by dollar amount of the invoices Sea Star exchanged with the truckers. Second, the 'invoices' Sea Star produced consisted just of the front pages of the invoices, without the supporting documentation that had been attached to the original invoices and which contained the information Sea Star knew Emerald was seeking.

(D.I. 213 at 3) I further held: "Sea Star's contention that it would be unduly burdensome to identify its largest truckers by volume of equipment moved comes too late." (D.I. 213 at 5 (internal citation omitted); *see also id.* at 9 n.4 ("[I]f Sea Star thought discovery should be limited

to its largest truckers as ranked by financial factors, rather than by volume of equipment used in transport, it should have raised this point with me long before it did.").

5. On November 3, 2008, Judge Farnan overruled Sea Star and Mr. Armstrong's objections (D.I. 218) to the Sanctions Order. (D.I. 231).

6. However, on December 17, 2008, Judge Farnan granted Sea Star and Mr. Armstrong's Motion for Reconsideration, vacating the Sanctions Order. (D.I. 240) ("Reconsideration Order") In his Reconsideration Order, Judge Farnan explained that "Sea Star and Mr. Armstrong [have] clarif[ied] that their Objection[s] . . . rest on . . . the lack of individual notice to Mr. Armstrong that he might personally be subject to sanctions." (D.I. 240 at 2) Finding "this case presents a close question," Judge Farnan held "in order to erase any ambiguity . . . and to ensure Mr. Armstrong a fair opportunity to be heard personally on the issue of sanctions," the Sanctions Order would be vacated and the matter "remand[ed] . . . to the Magistrate Judge for more comprehensive treatment." (D.I. 240 at 2-3)

The Supplemented Record

7. Based on the record then before me, in the Sanctions Order I concluded:

> It is clear from the correspondence, filings, and hearings before me that <u>Mr. Armstrong is personally responsible for Sea Star's decisions</u> to identify truckers by dollar amounts rather than volume and to produce only the first pages of the invoices without supporting documentation . . . . Mr. Armstrong's interpretations of 'volume' and 'invoice' were plainly willful, as he himself has explained.

(D.I. 213 at 8) (emphasis added)

8. On remand, Sea Star and Mr. Armstrong have supplemented the record with an affidavit from Neil Perlmutter, Sea Star's CFO. (D.I. 243, Ex. A) Perlmutter describes Sea Star's efforts to comply with the Discovery Order:

> To determine the five largest trucking companies by number of pieces moved I talked with Mike Last, an assistant vice president of Sea Star's intermodal department. The intermodal department is responsible for dispatching loads, which, generally speaking, involves receiving a booking, find[ing] a trucking company to make the move and coordinating the move. Therefore, the intermodal department has knowledge about what trucking companies were used and the type of services provided by the those companies.
>
> I asked the intermodal department to identify the five largest truckers by volume (i.e., number of pieces of equipment moved) during the relevant time period. Mr. Last and another employee, based on their knowledge, provided me with names of the companies that they believed were within the five largest by number of pieces moved. I was advised that there was no electronic mechanism within that department to make such a determination. I asked the accounts payable department to run a list of trucking companies by volume of revenue paid for the relevant time period. I then took this list back to Mr. Last. We discussed the trucking companies that were at the top of the list. Based on his knowledge of the trucking companies and the services provided by each, Mr. Last, who has worked in Sea Star's intermodal department during the relevant time period, advised me that he believed that the five largest trucking companies on the accounts payable list were also the five largest companies in terms of pieces of equipment moved during the relevant time period.
>
> Sea Star believes that the method used to identify the five largest [truckers] by volume was the only realistic manner to comply with the Court's order. Sea Star used approximately 75 trucking companies during the relevant time period. There was no uniformity in format of the invoices provided by the trucking companies. There was no electronic method to determine the number of pieces of equipment involved in a transport.

Perlmutter Aff. ¶¶ 7-9 (internal paragraph numbers omitted)

      9.      The Perlmutter Affidavit establishes that the decisions I discussed in my Sanctions Order were not "solely" the decisions of Mr. Armstrong. Rather, they were joint decisions in which Mr. Perlmutter and Mr. Last of Sea Star were also involved. Accordingly, any sanctions imposed for these decisions should be assessed against Mr. Armstrong and Sea

Star jointly and payable by either or both. *See Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995) ("Any sanctions imposed against [an attorney] should . . . be imposed solely because of her own improper conduct without considering the conduct of the parties or any other attorney.").

Sea Star's And Mr. Armstrong's Treatment Of The Discovery Order Warrants Sanction

10. It is now established, through the Perlmutter Affidavit, that compliance with the Discovery Order would have been extremely burdensome if not impossible.

11. It is now further established that the failure to comply with the Discovery Order – in that Sea Star failed to identify the top five truckers by volume of equipment moved, rather than by dollar amount, and failed to produce anything beyond the first pages of the invoices without supporting documentation – was not the result of decisions made solely by Mr. Armstrong. Rather, employees of Sea Star, including Messrs. Perlmutter and Last, also participated in those decisions.

12. It remains true, however, that no one on behalf of Sea Star explained to Emerald at the time production was made that Sea Star had, in effect, unilaterally modified what had been ordered by the Discovery Order.[1]

13. It also remains true that no one on behalf of Sea Star sought relief from the Court from what may have been an unduly burdensome Discovery Order.

14. Sanctions are an appropriate remedy for Sea Star and Mr. Armstrong's willful violation of the Discovery Order.

---

[1] As Emerald observes: "to the extent either Sea Star or Armstrong believed that they were unable to identify the five largest trucking companies (by volume) – meaning identification of the largest trucking companies by number of pieces of equipment moved – then it should have, at the very least, notified Emerald of that fact at the time the documents were produced." (D.I. 247 at 4) Instead, Sea Star's unilateral modification of the Court's order was only "disclosed after the fact and confirmed by Emerald during the course of a subsequent Rule 30(b)(6) deposition." *Id.*

Amount Of Sanctions

15.  In connection with the sanctions issue, Emerald has been required to file: (i) an opening brief in support of its request for sanctions (D.I. 189); (ii) a response to objections and motion to vacate or set aside the order awarding sanctions (D.I. 223); (iii) a response to the motion for rehearing and reargument on the memorandum order overruling objections and denying the motion to vacate the order awarding sanctions (D.I. 238); and (iv) a memorandum on remand regarding sanctions (D.I. 247). None of these efforts would have been necessary had Sea Star complied with the Discovery Order or, alternatively, sought appropriate relief from the Court if compliance was unduly burdensome or impossible.

16.  It is appropriate to require Sea Star and/or Armstrong to pay Emerald's reasonable expenses incurred in the preparation and filing of the above-cited documents. *See Martin*, 63 F.3d at 1263 (noting "Rule 37 authorizes . . . 'reasonable expenses' resulting from the failure to comply with discovery").

Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

a.  Sanctions against Sea Star and its attorney, Mr. Armstrong, are warranted and are hereby awarded.

b.  Given the mutual responsibility for the willful violation of the Discovery Order, the sanctions ordered here are assessed against both Sea Star and Mr. Armstrong. The sanctions may be paid in whole or in part by Sea Star and/or Mr. Armstrong.

c.  The amount of the sanctions will be an amount equal to the reasonable expenses incurred by Emerald in connection with preparation and filing of D.I. 189, 223, 238, and 247, up to a maximum total of $15,000.

d.  The parties shall meet and confer and file a proposed order establishing the amount described in c. above or proposing a method and schedule for determining this amount. The parties' proposed order shall be filed no later than June 15, 2009.

Dated: May 26, 2009

_____
Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE